EXCERPTED

# EXHIBIT 5

Page 1

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

In the Matter of:           )
                            ) File No. D-03450-A
GENAUDIO, INC.              )

WITNESS:  Jim Wei-Kung Mattos

PAGES:    1 through 293

PLACE:    Securities and Exchange Commission

          1961 Stout Street

          Denver, Colorado 80294

DATE:     Monday, February 9, 2015

    The above-entitled matter came on for hearing, pursuant to notice, at 9:05 a.m.

Diversified Reporting Services, Inc.

(202) 467-9200

```
                                                          Page 2
 1     APPEARANCES:
 2
 3     On behalf of the Securities and Exchange Commission:
 4         JENNIFER OSTROM, ESQ.
 5         KURT GOTTSCHALL, ESQ.
 6         Securities and Exchange Commission
 7         Division of Enforcement
 8         1961 Stout Street
 9         Denver, Colorado 80294
10         (303) 844-1000
11
12     On behalf of the Witness:
13         MICHAEL P. McCLOSKEY, ESQ.
14         WILSON ELSER MOSKOWITZ
15         EDELMAN & DICKER LLP
16         655 West Broadway, Suite 900
17         San Diego, California  92101
18         (619) 321-3200
19
20
21
22
23
24
25
```

```
                                                          Page 3
 1                     C O N T E N T S
 2
 3     WITNESS:                       EXAMINATION
 4     Jim Wei-Kung Mattos                 6
 5
 6     EXHIBITS   DESCRIPTION              IDENTIFIED:
 7     65     Testimony subpoena            9
 8     66     Document subpoena             9
 9     67     Background Questionnaire     17
10     68     Document Bates numbered     138
11            JM 1992 through 1995 (E-mail)
12     69     Document Bates numbered     154
13            JM 2152 (E-mail)
14     70     Document Bates numbered     158
15            JM 2191 (E-mail)
16     71     Document Bates numbered     166
17            JM 4182 and 4183 (E-mail)
18     72     Document Bates numbered     174
19            JM 3863 through 3866 (E-mail)
20     73     Document Bates numbered     177
21            SEC 6 through 9 (Letter)
22     74     Document Bates numbered JM 3473   179
23            (E-mail)
24     75     Document Bates numbered JM 5081   193
25            (E-mail)
```

```
                                                          Page 4
 1                   C O N T E N T S (CONT.)
 2
 3     EXHIBITS   DESCRIPTION              IDENTIFIED:
 4     76     Document Bates numbered JM 3418   195
 5            Through 3420 (E-mail)
 6     77     Document Bates numbered     198
 7            D-P-230 through 235 (E-mail)
 8     78     Document Bates numbered     205
 9            JM 7207 through 7212 (E-mail)
10     79     Document Bates numbered     216
11            JM 7203 through 7206 (E-mail)
12     80     Document Bates numbered     218
13            JM 7198 through 7200 (E-mail)
14     81     Document Bates numbered     220
15            JM 10636 through 10639 (E-mail)
16     82     Excerpt from testimony of    231
17            Victor Tiscareno, 12/3/14 (E-mail)
18     83     Document Bates numbered     236
19            JM 7073 through 7075 (E-mail)
20     84     Document Bates numbered     247
21            JM 11476 through 11481 (E-mail)
22     85     Document Bates numbered     256
23            JM 11148 through 11151 (E-mail)
24     86     Document Bates numbered     258
25            JM 11713 through 11724  (E-mail)
```

```
                                                          Page 5
 1                   C O N T E N T S (CONT.)
 2
 3     EXHIBITS   DESCRIPTION              IDENTIFIED:
 4     87     Document Bates numbered     273
 5            JM 15076 and 15077 (E-mail)
 6     88     Document Bates numbered     274
 7            JM 16793 and 16794 (E-mail)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 6

1             PROCEEDINGS
2       MS. OSTROM:  Let's go on the record at
3  9:05 a.m. on February 9th of 2015.
4       Would you please raise your right hand.
5  Whereupon,
6             JIM WEI-KUNG MATTOS,
7  being first duly sworn in the above cause, was
8  examined and testified as follows:
9             EXAMINATION
10  BY MS. OSTROM:
11    Q   Would you please state and spell your full
12  name for the record.
13    A   My name is Jim Wei-Kung Mattos.  It is
14  J-i-m W-e-i, hyphen, K-u-n-g, M-a-t-t-o-s.
15    Q   And my name is Jennifer Ostrom.  And with
16  me is Kurt Gottschall.  And we are both officers of
17  the United States Securities and Exchange Commission
18  for purposes of this proceeding.  And this is an
19  investigation by the Commission in the the matter of
20  GenAudio, Inc., to determine whether there have been
21  violations of certain provisions of the federal
22  securities laws.  However, the facts developed in
23  this investigation might constitute violations of
24  other federal or state civil or criminal laws.
25       And prior to the opening of the record you

Page 7

1  were provided with a copy of the formal order of
2  investigation in this matter.  And it will be
3  available for your examination during the course of
4  this proceeding.
5       Mr. Mattos, have you had an opportunity to
6  review the formal order?
7    A   I have.
8    Q   And also prior to the opening of the
9  record you were provided with a copy of the
10  Commission's Supplemental Information Form, and a
11  copy of that notice has been marked as
12  Exhibit No. 1.  And, Mr. Mattos, have you had the
13  opportunity to read Exhibit No. 1?
14    A   I have.
15    Q   Do you have any questions concerning the
16  notice?
17    A   No.
18    Q   And I want to highlight for you
19  Paragraph B2 of the Form 1662.  It reads as follows,
20  You may be represented by counsel who also
21  represents other persons involved in the
22  Commission's investigation.  This multiple
23  representation, however, presents a potential
24  conflict of interest if one client's interests are
25  or may be adverse to another's.  If you are

Page 8

1  represented by counsel who also represents other
2  persons involved in the investigation, the
3  Commission will assume that you and counsel have
4  discussed and resolved all issues concerning
5  possible conflicts of interest.  The choice of
6  counsel and the responsibility for that choice is
7  yours.
8       Do you understand this?
9    A   I do.
10    Q   And, Mr. Mattos, are you represented by
11  counsel today?
12    A   Yes.
13       MS. OSTROM:  And would counsel please
14  identify himself for the record.
15       MR. McCLOSKEY:  Michael McCloskey.
16       MS. OSTROM:  Could you please give us your
17  address.
18       MR. McCLOSKEY:  655 West Broadway,
19  9th floor, San Diego, California 92121.
20       MS. OSTROM:  Mr. McCloskey, are you
21  appearing today as counsel for Mr. Mattos as well as
22  represent GenAudio?
23       MR. McCLOSKEY:  Yes.
24       BY MS. OSTROM:
25    Q   Mr. Mattos, if you want to go off the

Page 9

1  record today, please advise me of your desire to do
2  so and I will decide at that time whether to ask the
3  reporter to go off the record.  She won't go off the
4  record at your request or your counsel's request,
5  only our request.  So if you need a break or need to
6  speak with your counsel, please tell me.  Okay?
7    A   Okay.
8    Q   And I'll ask you a number of questions
9  today.  If you don't understand or hear something
10  that I ask you, please tell me.  I'll rephrase it or
11  repeat it as necessary.  Okay?
12    A   Yes.
13    Q   And please allow me to complete the
14  question before you begin your answer so that we're
15  not both speaking at once.  All right?
16    A   Yes.
17    Q   And also, then, the last thing is that if
18  you could please answer audibly.  It makes it so
19  that she can make the record rather than a head nod
20  or a shake.  Okay?
21    A   Understood.
22        (SEC Exhibits 65 and 66 were marked
23         for identification.)
24       BY MS. OSTROM:
25    Q   Mr. Mattos, in front of you is a copy

Page 18

1   GenAudio. Those were mostly correct, but I actually
2   had forgotten that I had put them onto LinkedIn. So
3   if you prefer a more accurate representation, I can
4   read that off for you.
5       Q   And which question are you referring to?
6       A   This would have been --
7       Q   Go ahead and take your time and look. On
8   Page 10 there's an -- employment activities start.
9       A   Correct. So this would have been Page 10,
10  Question 35. If you -- like I said, if you'd like,
11  I can read off the actual dates of my various
12  positions.
13      Q   Yeah. I think that would be helpful for
14  us to get it correct. Thank you.
15      A   Let me just pull up the LinkedIn.
16      Q   Of course.
17      A   I don't usually use LinkedIn very often.
18  I had forgotten that I had captured that information
19  more accurately there. Okay. Let's see. I will --
20  in accordance with the question I'll go ahead and go
21  from the most current position to the previous
22  positions.
23      Q   Sure. That's fine.
24      A   So from -- from October 2014 to present my
25  position is corporate secretary and senior vice

Page 19

1   president of corporate communications and investor
2   relations for our new title, which is Astound
3   Holdings Incorporated.
4           And then from the period of May 2012 to
5   October 2014 same title, corporate secretary and
6   senior vice president of corporate communications,
7   and investor relations for GenAudio.
8           And then from the period of March 2006 to
9   June 2012 I was the support services manager of
10  GenAudio.
11          And from the period of August 2004 to
12  February 2006 my title was director of sales for
13  GenAudio.
14      Q   Okay. So you became secretary and senior
15  vice president at the same time of GenAudio?
16      A   No. Corporate secretary, that position
17  was not given to me until March, I believe, of 2014.
18      Q   Okay.
19      A   But I had changed my title on LinkedIn to
20  reflect that.
21      Q   I understand.
22      A   Yeah.
23      Q   Okay. So you were promoted to senior vice
24  president of corporate communications of GenAudio in
25  May of 2012?

Page 20

1       A   Correct.
2       Q   Okay. And what did you do as director of
3   sales?
4       A   Well, when I originally came onboard with
5   the company, one of my priority tasks was helping to
6   bring investors onboard to help raise funds to get
7   the company off the ground. At that time because of
8   my almost 20-year background in sales, it seemed
9   like an appropriate title. But as we started the
10  company, we initially did not have an actual product
11  to sell. So I, in essence, moved to Colorado in
12  September -- no, excuse me, August -- no, September
13  of 2005 to, in essence, help Jerry, you know, get
14  the company off the ground as a startup. And at
15  that time I was basically just filling in wherever I
16  could.
17      Q   Okay.
18      A   So although my title says director of
19  sales, really support services manager I would say
20  would be a more accurate representation of my actual
21  job functions at that time.
22      Q   And what kinds of things, just in general,
23  did you do to support Mr. Mahabub in the business?
24      A   Primarily, like I said, helping to bring
25  awareness through new investors, office managerial

Page 21

1   things, record keeping. Basically, in essence,
2   everything that does not include hardcore
3   accounting, does not include software engineering
4   and does not include audio engineering.
5       Q   And did you have anything to do with
6   keeping track of the stock sales?
7       A   Only insofar as managing records. The
8   stock sales themselves were primarily recorded by
9   Jim Devine, who has been our VP of finance for --
10  oh, jeez. I want to say maybe he came onboard 2007
11  time frame.
12      Q   And so --
13      A   Maybe 2006.
14      Q   What records did you keep?
15      A   Well, I'm -- I helped in -- and to this
16  date I still manage all of the hard records. So as
17  we would, you know, raise money for the company, I
18  would make sure that we had, you know, obviously all
19  the PPMs on file, Private Placement Memorandum, make
20  sure that we had all of the various investor
21  documents that were -- would be required by law.
22  That type of thing.
23      Q   So was it Mr. Devine, then, that kept
24  track of the actual sales of stock to people --
25      A   That is correct.

```
                                                    Page 290
 1   to do with helping GenAudio fulfill its document
 2   production under the document subpoena?
 3      A   Well, no.  Not under GenAudio or myself.
 4   I believe he was subpoenaed to produce his own
 5   documents.  He did that independently of myself.
 6      Q   Did you talk with him about it then?
 7      A   No.
 8      Q   Okay.  Because --
 9      A   He knew I was producing documents, but --
10      Q   Okay.
11      A   -- as far as -- I was going to give you
12   everything.  That's all that had to be said.
13      Q   The reason why I ask is just clarifying,
14   because you said you had discussed document
15   production with Mr. Mahabub, so I wanted to make
16   sure if there were any more details behind that.
17      A   Well, it was very -- it was a daunting
18   process, so there were comments along those lines.
19      Q   I understand. Okay.  And, Mr. Mattos, we
20   have no further questions at this time.  We may,
21   however, call you again to testify in this
22   investigation.  And should this be necessary, we
23   will contact you through your counsel.
24      A   Okay.
25      Q   Do you wish to clarify anything or add
```

```
                                                    Page 291
 1   anything to the statements you've made today?
 2      A   Not at this time.
 3          MS. OSTROM:  Let's go off the record at
 4   4:30 p.m., February 9th of 2015.
 5          (Whereupon, at 4:30 p.m. the proceedings
 6   were adjourned.)
 7
 8              * * * * *
```

```
                                                    Page 292
 1                PROOFREADER'S CERTIFICATE
 2
 3   In the Matter of:   GENAUDIO, INC.
 4   Witness:       Jim Wei-Kung
 5   File Number:   D-03450-A
 6   Date:          January 9, 2015
 7   Location:      Denver, CO
 8
 9
10       This is to certify that I, Nicholas Wagner,
11   (the undersigned), do hereby swear and affirm
12   that the attached proceedings before the U.S.
13   Securities and Exchange Commission were held
14   according to the record and that this is the
15   original, complete, true and accurate transcript
16   that has been compared to the reporting or recording
17   accomplished at the hearing.
18
19
20
21   _____    _____
22   (Proofreader's Name)     (Date)
```