EXCERPTED

# EXHIBIT 7

# In The Matter Of:

*Securities and Exchange Commission v.*
*Taj Jerry Mahabub, et al.*

---

*James T. Devine*
*July 19, 2016*

---

*Behmke Reporting and Video Services, Inc.*
*160 Spear Street, Suite 300*
*San Francisco, California  94105*
*(415) 597-5600*

Original File 29781Devine.txt
**Min-U-Script® with Word Index**

Securities and Exchange Commission v.　　　　　　　　　　　　　　　　　　　　　　　　　James T. Devine
Taj Jerry Mahabub, et al.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　July 19, 2016

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2               FOR THE DISTRICT OF COLORADO
 3
 4   - - - - - - - - - - - - - - - -
 5   SECURITIES AND EXCHANGE          )
 6   COMMISSION,                      )
 7        Plaintiff,                  )  CASE NO.
 8   v.                               )  1:15-cv-02118-CBS-WJM
 9   TAJ JERRY MAHABUB, GENAUDIO,     )
10   INC., and ASTOUND HOLDINGS,      )
11   INC.,                            )
12        Defendants.
13   - - - - - - - - - - - - - - - -
14
15
16       VIDEOTAPED DEPOSITION OF JAMES T. DEVINE
17                TUESDAY, JULY 19, 2016
18
19
20
21                     BEHMKE REPORTING AND VIDEO SERVICES, INC.
22                                      BY:  BARBARA J. CASTILLO
23                                    160 SPEAR STREET, SUITE 300
24                               SAN FRANCISCO, CALIFORNIA 94105
25                                               (415) 597-5600
```

Page 2

```
 8       Videotaped Deposition of JAMES T. DEVINE,
 9   taken  on behalf of Plaintiff, at 869 Mercury
10   Circle, Lone Tree, Colorado, commencing at 10:04
11   A.M., TUESDAY, JULY 19, 2016, before Barara J.
12   Castillo, Registered Merit Reporter, Certified
13   Realtime Reporter and Notary Public within and
14   for the State of Colorado.
```

Page 3

```
 1   APPEARANCES OF COUNSEL:
 2   FOR PLAINTIFF:
 3       SECURITIES AND EXCHANGE COMMISSION
 4       BY: DANIELLE R. VOORHEES, ATTORNEY AT LAW
 5           LESLIE HENDRICKSON HUGHES, ATTORNEY AT LAW
 6       1961 Stout Street, Suite 1700
 7       Denver, Colorado 80294
 8       Telephone: (303)844-1000
 9       Email: voorheesd@sec.gov
10
11   FOR DEFENDANT, TAJ JERRY MAHABUB:
12       HOLMES, TAYLOR & JONES, LLP
13       BY: ANDREW B. HOLMES, ATTORNEY AT LAW
14       617 South Olive Street, Suite 1200
15       Los Angeles, California 90014
16       Telephone:  (213) 985-2200
17       Email:  abholmes@htjlaw.com
18
19   FOR DEFENDANT GENAUDIO, INC. AND JAMES T. DEVINE:
20       WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
21       BY: DAVID J. AVENI, ATTORNEY AT LAW
22       655 West Broadway, Suite 900
23       San Diego, California 92101
24       Telephone:  (619) 881-3326
25       Email: david.aveni@wilsonelser.com
```

Page 4

```
 1   APPEARANCES OF COUNSEL - (CONTINUED):
 2   FOR DEFENDANT ASTOUND HOLDINGS, INC.
 3   - (TELEPHONICALLY):
 4       BENZ LAW GROUP
 5       BY: JENNIFER YUEN, ATTORNEY AT LAW
 6       12021 Wilshire Boulevard, Suite 256
 7       Los Angeles, California 90025
 8       Telephone: (818) 371-8800
 9       Email:  jenniferk.yuen@gmail.com
10
11   ALSO PRESENT:
12       MARYVONNE TOMPKINS, VIDEOGRAPHER
```

Securities and Exchange Commission v.  
Taj Jerry Mahabub, et al.

James T. Devine  
July 19, 2016

Page 5

```
 1                       INDEX
 2  TUESDAY, JULY 19, 2016
 3  JAMES T. DEVINE                                PAGE
 4      Examination by MS. VOORHEES                  12
 5  P.M. SESSION                                    153
 6      Examination resumed by MS. VOORHEES         153
 7      Examination by MR. HOLMES                   272
 8      Examination by MS. VOORHEES                 280
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 7

```
 1                  EXHIBITS - (CONTINUED)
 2                     JAMES T. DEVINE
 3  Number           Description                    Page
 4  Exhibit 5  SEC Attestation and Form D for
 5             GenAudio, Inc., 11/19/10; Bates
 6             Nos. SEC 334 - 7 pages                135
 7
 8  Exhibit 6  GenAudio, Inc. Schedule of
 9             Financing; Bates Nos., GA 000997
10             through GA 001002 - 6 pages           136
11
12  Exhibit 7  GenAudio, Inc. Common Stock
13             Transfer Ledger; Bates Nos.
14             001816 through GA 001852
15             - 35 pages                            142
16
17  Exhibit 8  GenAudio Board of Directors
18             Minutes July 29, 2010 Meeting;
19             Bates Nos. GA 002940 through GA
20             002946 - 11 pages                     163
21
22
23
24
25
```

Page 6

```
 1                      EXHIBITS
 2                     JAMES T. DEVINE
 3  Number           Description                    Page
 4  Exhibit 1   E-mail and attachment from Dell
 5              Skluzak to Jennifer Ostrom,
 6              8/8/14; Bates Nos. SEC-Skluzak-E
 7              0000001 through 0000002
 8              - 61 pages                            81
 9
10  Exhibit 2   Confidential Private Placement
11              Memorandum for GenAudio, Inc.,
12              3/15/10; Bates Nos. GA 000487
13              through 000634 - 148 pages            93
14
15  Exhibit 3   GenAudio stock certificate for
16              Sarah Bushong-Weeks, 7/28/10;
17              Bates Nos. GA 001144 through GA
18              001148 - 5 pages                     129
19
20  Exhibit 4   SEC Attestation and Form D for
21              GenAudio, Inc., 8/19/10; Bates
22              Nos. SEC 334 - 7 pages               131
23
24
25
```

Page 8

```
 1                  EXHIBITS - (CONTINUED)
 2                     JAMES T. DEVINE
 3  Number           Description                    Page
 4  Exhibit 9   Unanimous Written Consent of The
 5              Board of Directors of GenAudio,
 6              Inc.; Bates Nos. GA 002932
 7              through GA 001939 - 8 pages          166
 8
 9  Exhibit 10  Confidential Private Placement
10              Memorandum for GenAudio, Inc.,
11              4/22/11; Bates Nos. GA 004731
12              through GA 004807 - 77 pages         172
13
14  Exhibit 11  SEC Attestation and Form D for
15              GenAudio, Inc., 5/16/11; Bates
16              Nos. SEC 334 - 7 pages               180
17
18  Exhibit 12  GenAudio, Inc. Board of
19              Directors Meeting Minutes,
20              5/15/12; Bates Nos. GA 002139
21              through GA 002174 - 36 pages         183
22
23
24
25
```

| Securities and Exchange Commission v. | James T. Devine |
|---|---|
| Taj Jerry Mahabub, et al. | July 19, 2016 |

Page 9

```
 1                EXHIBITS - (CONTINUED)
 2                   JAMES T. DEVINE
 3   Number           Description              Page
 4   Exhibit 13 Letter from the Board of
 5              Directors of Astround Holdings
 6              to GenAudio Shareholder,
 7              11/4/14; Bates Nos. AST 000030
 8              through 000034 - 5 pages         209
 9
10   Exhibit 14 Letter from the Board of
11              Directors of Astound Holdings to
12              GenAudio Shareholder, 2/25/15;
13              Bates Nos. AST 000025 through
14              000027 - 3 pages                 216
15
16   Exhibit 15 E-mail from Jerry Mahabub to
17              multiple people, 5/2/10; Bates
18              Nos. JM 002093 through 002095
19              - 3 pages                        227
20
21   Exhibit 16 E-mail string, top message from
22              Victor Tiscareno to Dell
23              Skluzak, 10/30/13; Bates Nos.
24              SEC 0000001 through 0000005
25              - 5 pages                        227
```

Page 11

 1     TUESDAY, JULY 19, 2016; 10:04 A.M.
 2         **THE VIDEOGRAPHER:** Here begins the Video
 3   Number 1 in the deposition of James T. Devine in the
 4   matter of Securities and Exchange Commission versus
 5   Taj Jerry Mahabub, et al., in the United States
 6   District Court for the District of Colorado, Case
 7   Number 1:15-CV-02118-CBS-WJM.
 8         Today's date is Tuesday, July 19, 2016.
 9   The time on the video is 10:04.  The video operator
10   today is Maryvonne Tompkins, contracted by Behmke
11   Reporting & Video Services, Inc., 160 Spear Street,
12   Suite 300 in San Francisco, California.  The video
13   deposition is taking place at 869 Mercury Circle in
14   Lone Tree, Colorado 80124, and was noticed by
15   Danielle Voorhees, Esquire, of the Securities and
16   Exchange Commission.
17         Counsel, please voice-identify yourself
18   and the party you represent, please.
19         **MS. VOORHEES:** Danielle Voorhees and
20   Leslie Hughes on behalf of the Securities and
21   Exchange Commission.
22         **MR. AVENI:** David Aveni on behalf of
23   GenAudio and also representing the deponent.
24         **MR. HOLMES:** Andrew Holmes on behalf of
25   Jerry Mahabub.

Page 10

```
 1                EXHIBITS - (CONTINUED)
 2                   JAMES T. DEVINE
 3   Number           Description              Page
 4   Exhibit 17 E-mail string, top message from
 5              Mark Bobak to multiple people,
 6              1/29/14; Bates Nos.
 7              SEC-ELLIOTT-E 0000565 through
 8              0000581 - 17 pages               239
 9
10   Exhibit 18 E-mail string, top message from
11              Dell Skluzak to Mike Elliott,
12              1/26/14; Bates Nos.
13              SEC-ELLIOTT-E 0000034 through
14              0000102 - 79 pages               253
15
16   Exhibit 19 Mahabub Exhibit D; Bates Nos.
17              SEC-ELLIOTT-E 0004073 through
18              0004078 - 6 pages                268
19
20   Exhibit 20 Spreadsheet entitled Non-Cash;
21              - 1 page                         276
22
23
24
25
```

Page 12

 1         **THE VIDEOGRAPHER:** And on the phone,
 2   please.
 3         **MS. YUEN:** Jennifer Yuen on behalf of
 4   Astound Holdings, Inc.
 5         **THE VIDEOGRAPHER:** The court reporter
 6   today is Barbara Castillo, certified shorthand
 7   reporter, contracted by Behmke Reporting and Video
 8   Services, will identify and please swear in the
 9   witness.
10             JAMES T. DEVINE,
11   being first duly sworn in the above cause, was
12   examined and testified as follows:
13             EXAMINATION
14   BY MS. VOORHEES:
15      Q    Mr. Devine, can you please state and spell
16   your last name?
17      A    James T. Devine, D-e-v-i-n-e.
18      Q    Thank you, Mr. Devine.  Are you
19   represented by counsel in this matter?
20      A    Yes, I am.
21      Q    And who's your counsel?
22      A    David Aveni.
23      Q    Thank you, Mr. Devine.  Have you testified
24   under oath before?
25      A    Yes.

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

James T. Devine
July 19, 2016

Page 49

1  A  I think one year we had year-end bonuses.
2  It might have been 2000-- it might have been 2008 we
3  did.  I don't recall how much they were, though.
4  They weren't extravagant, you know.
5     Q  What's -- approximately how much?
6     A  5,000, 3,000, something like that.
7     Q  All right.  Do you recall receiving any
8  other bonuses from GenAudio, Inc.?
9     A  No.
10    Q  What about stock or warrants or options?
11 Did you ever receive any of that type of
12 compensation?
13    A  I had warrants, yes.
14    Q  Okay.  And how did you obtain your
15 warrants?
16    A  Board of directors awarded them.
17    Q  And when was that?
18    A  Well, there were various awards.  2006 or
19 2007 I believe I got some and 2000-- I'd have to go
20 back and look.  2008, 2009.  They were, you know,
21 incremental.
22    Q  Okay.  And those were awarded to you based
23 on a board of directors' decision?
24    A  Yeah.
25    Q  Okay.  What were your duties under your

Page 50

1  employment agreement?  What job duties were you
2  responsible for at GenAudio?
3     A  Well, my title was vice president of
4  finance.  And later on I became secretary.  And, you
5  know, I did the accounting and -- and projections,
6  you know, worksheets, projections, issued the stock
7  certificates, kept the stock ledger, transfer ledger,
8  those sorts of things.
9     Q  Did anybody else also perform those duties
10 with you?
11    A  No.
12    Q  Who was your supervisor?
13    A  Jerry Mahabub.
14    Q  Anybody else that you reported to?
15    A  No.
16    Q  And is that true for the entire time you
17 were employed by GenAudio, Inc.?
18    A  Yeah.
19    Q  Did you ever supervise anyone at GenAudio,
20 Inc., anyone under you?
21    A  Well, yeah, I guess it was the office
22 manager and at times, you know, Jim Mattos.  And then
23 there was another gal that worked there, Melissa
24 Gonzales.  She worked in the office.  She did
25 marketing.

Page 51

1     Q  Okay.  When did you supervise the office
2  manager?  What years?
3     A  Oh, when I was there.
4     Q  Okay.
5     A  Yeah.
6     Q  And what -- who was that person?
7     A  Jim Mattos.
8     Q  Oh, that was Jim Mattos.  Okay.
9     A  Yeah.  But he reported to Jerry too.  It
10 was kind of a -- there wasn't any official lines of
11 communication in terms of, you know, who reported to
12 who.
13    Q  Okay.
14    A  Everybody reported to Jerry basically.
15    Q  All right.  Everybody ultimately reported
16 to Jerry Mahabub?
17    A  Yeah.
18    Q  Did you direct Mr. Mattos in any of the
19 job duties he was performing?
20    A  Yeah.
21    Q  Which ones?
22    A  Filing.
23    Q  All right.  And what do you mean by
24 "filing"?
25    A  Well, he -- you know, the vendor files,

Page 52

1  the personnel files, the investor files.
2     Q  Okay.  So Mr. Mattos, like, physically
3  filed documents?
4     A  Yes.
5     Q  And you would tell him how to do that?
6     A  Yes.
7     Q  Okay.  Anything else that you directed Jim
8  Mattos in doing?
9     A  No.
10    Q  In 2009 -- well, let's start in October
11 of 2008.  So from October of 2008 through 2009, where
12 did you physically work?
13    A  At the office.
14    Q  Okay.  In Englewood?
15    A  Yes.
16    Q  And then what about after September 2009
17 when the lease was up, where did you physically work
18 after that?
19    A  Out of my house.
20    Q  So was that true in 2010, 2011 and 2012?
21    A  (Deponent nodded head.)
22    Q  Is that a yes?
23    A  Yes.
24    Q  Okay.  Did anybody else work out of your
25 home with you for GenAudio, Inc.?

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

James T. Devine
July 19, 2016

Page 125

1   A   I don't recall how it went, whether he was
2   checking them or not.
3   Q   (BY MS. VOORHEES)  Okay.  What about the
4   second page of the subscriber questionnaire, so it's
5   the one with the Bates 551.
6   A   Yeah.
7   Q   Did you review any of this information?
8   A   No.
9   Q   So if you look back to Page 549, at the
10  very bottom where it says, The subscription for
11  securities of GenAudio, Inc., by the above-named
12  subscribers is accepted this, blank, day of, blank,
13  comma, 2010.
14  A   Right.
15  Q   Would you fill that in?
16  A   Yeah.
17  Q   Okay.  And then you would sign it?
18  A   Yeah.
19  Q   And did you ever reject any subscriptions?
20  A   No.
21  Q   Okay.  And did you ever check anything
22  before you accepted the subscriptions other than the
23  signature page?
24  A   To see if they're -- if they had paid for
25  their shares.

Page 126

1   Q   All right.
2   A   Yeah.
3   Q   So you did wait for payment to come in?
4   A   Yeah.
5   Q   Anything else that you did before
6   accepting the subscription?
7   A   No.  Not that I recall.  You know, we
8   just, you know, got this and, you know, just went off
9   of that.
10  Q   All right.  Mr. Devine, I assume if wire
11  transfers came in they went directly to the Wells
12  Fargo account; is that correct?
13  A   Yes.
14  Q   The 952 account?  What about checks?  Did
15  you ever receive checks for the 2010 offering?
16  A   We may have.  I don't recall.  For the
17  most part, people wired in.  Some people did send
18  checks.  And I don't recall if they sent them for
19  this particular offering, but that would be notated
20  in the bank records, whether it was a wire or whether
21  it was a deposit.
22  Q   Do you still have copies of the bank
23  statements for those Wells Fargo accounts that you
24  were using during the 2010 offering?
25  A   Yes.

Page 127

1   Q   Where do you have them?
2       MR. AVENI:  What -- are you asking -- do
3   you need to go off the record to talk to me?  She's
4   asking you -- you said you physically have these
5   records.  She's just asking you where you're
6   maintaining them.  That's okay; you can answer that
7   question.
8       But if you need to talk to me about an
9   issue, we can go off the record.  Do you need to talk
10  about a privilege issue?
11      THE DEPONENT:  No, not a privilege issue.
12  They're right over in the corner.
13  Q   (BY MS. VOORHEES)  Okay.  So you still
14  have them?
15  A   Yeah.
16  Q   You actually still have physical copies of
17  them?
18  A   Yeah.
19  Q   Okay.  And, again, I don't want to get
20  into any communications with your counsel --
21  A   No.  That's all right.  That's fine.
22  Q   -- but have you talked to anybody about
23  not providing those documents to the Commission?
24  A   No.  No.  Not at all.
25  Q   During the 2010 offering, did you do

Page 128

1   anything to check whether investors in GenAudio were
2   accredited investors?
3   A   No.
4   Q   Do you know what that term means?
5   A   Yes.
6   Q   Okay.  What does it mean to you?
7   A   Well, you have to meet a certain criteria,
8   and I believe, from my old days, it was like 200,000
9   a year in salary for two years or more; net worth of
10  a million dollars, not including your -- your
11  residential property.
12  Q   And you did not check that during the 2010
13  offering?
14  A   No.
15  Q   Okay.  Are you aware of anyone on behalf
16  of GenAudio, Inc., checking that during the 2010
17  offering?
18  A   No.  I -- I'm not aware that they did or
19  they did not.
20      MS. VOORHEES:  Thank you.  Just a second.
21  I want to make sure.
22      MS. HUGHES:  Sure.
23      MS. VOORHEES:  All right.  There we go.
24      THE DEPONENT:  Are we done with this?
25      MS. VOORHEES:  Yes, for now.  Thank you.

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

James T. Devine
July 19, 2016

Page 133

1  Q  Did you authorize counsel to E-file it
2  with your signature?
3  A  Yes.
4  Q  And which attorney would that have been?
5  A  Ben Huber.
6  Q  Okay.  If you go to the second-to-last
7  page, which is in Box 14, where it says Investors, do
8  you see that?
9  A  Yes.
10 Q  And do you see there's two paragraphs.
11 The first says, Select if securities in the offering
12 have been or may be sold to persons who do not
13 qualify as accredited investors.  Number of such
14 nonaccredited investors who have invested in the
15 offering.
16 A  Yes.
17 Q  And do you see that there's no checkmark,
18 and there's nothing in that first box?
19 A  Correct.
20 Q  Do you know why?
21 A  I'm not aware --
22 Q  Okay.
23 A  -- why it's not there.
24 Q  Okay.  Did you do anything to check the
25 number of investors, that 41?

Page 134

1  A  Well, I would have had the information.
2  Q  You would have had those files?
3  A  Yeah.
4  Q  Okay.  And did you do anything to make
5  sure that number was right?
6  A  In what respect?
7  Q  Well, here, let me back up.  How was this
8  form actually prepared?
9  A  I would get the number of investors that
10 invested in that period, and I believe I also
11 submitted the state that they were from.
12 Q  Okay.
13 A  To -- to the law firm.  Then they would
14 prepare this.
15 Q  Okay.  And then did you see the Form D
16 before it was actually filed?
17 A  Yes.
18 Q  Okay.  And did you do anything to review
19 the Form D before it was filed?
20 A  I'd look at it, you know.  But it was
21 based on information that I gave, and that was 41 --
22 I believe at that point there must have been 41
23 investors that purchased shares.
24 Q  Okay.  So you don't have any reason to
25 doubt that number?

Page 135

1  A  Yeah.
2  Q  All right.
3     (Exhibit Number 5 was marked.)
4  Q  (BY MS. VOORHEES)  All right.  Mr. Devine,
5  I'm handing you what's been marked as Exhibit 5.
6  Deposition Exhibit 5 is a certified copy of another
7  Form D for GenAudio, Inc.
8  A  Okay.
9  Q  And, again, if you'll go to the last page
10 of Exhibit 5, that last line you were looking at, do
11 you see that this one is dated 2010-11-19?
12 A  Yes.
13 Q  And it has your name as the signature and
14 name of signer?
15 A  Yes.
16 Q  And was this prepared in the same manner
17 as what you just described with Exhibit 4?
18 A  Yes.
19 Q  Okay.  And did you authorize counsel to
20 file it with your name?
21 A  Yes.
22 Q  Okay.  Do you know why in Item 14 on the
23 second-to-last page there is no disclosure of
24 nonaccredited investors?
25 A  I see there is none.

Page 136

1  Q  Okay.  Do you know why there are none?
2  A  I'm not aware of why.
3     (Exhibit Number 6 was marked.)
4  Q  (BY MS. VOORHEES)  All right.  Mr. Devine,
5  I'm going to hand you what's been marked as
6  Deposition Exhibit 6.  This is a document
7  Bates-labeled GA-000997 through 1002.  Mr. Devine, do
8  you recognize Exhibit 6?
9  A  Yeah.
10 Q  What is it?
11 A  Schedule of financing.
12 Q  All right.  Did you prepare Exhibit 6?
13 A  I believe I did.
14 Q  All right.  And why?
15 A  Maybe it was at somebody's request.  I
16 don't recall why I prepared this.
17 Q  When did you prepare it?
18 A  There is no date, is there?  Well, I'd say
19 sometime in 2014.
20 Q  Okay.  And that's because it seems to go
21 up to then?
22 A  Yeah.  Exactly.
23 Q  All right.  Let's look at the first page
24 of Exhibit 6.  You see the little chart that says,
25 Year?

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

James T. Devine
July 19, 2016

Page 161

 1  A    Mahabub Stock Sales, I believe.
 2  Q    And did you provide that separate
 3  spreadsheet to Mr. Mahabub?
 4  A    Not that I'm aware of.  I don't think he
 5  ever asked for it.
 6  Q    Do you still have it?
 7  A    Yeah, electronically.
 8  Q    All right.  So when Mr. Mahabub would sell
 9  some of his personal shares, Mr. Mahabub would
10  provide you with the contract that -- the share
11  purchase agreement contract?
12  A    Yeah.
13  Q    Okay.  Would you receive anything else?
14  A    No.
15  Q    Okay.  Did you receive a subscription
16  agreement?
17  A    No.  There was no subscription agreement.
18  It wasn't an original issue --
19  Q    Okay.
20  A    -- by the company.
21  Q    What about a subscriber questionnaire?
22  A    No.
23  Q    Did you receive any documents related to
24  the proxy rights?
25  A    That was part of the contract.

Page 162

 1  Q    Okay.  So that was in the contract?
 2  A    Yeah.  I believe it was an addendum to the
 3  contract.
 4  Q    Did you do anything to check whether the
 5  investors to whom Mr. Mahabub was selling his
 6  personal shares were accredited investors?
 7  A    No.
 8  Q    Do you know if anybody checked that?
 9  A    Not that I'm aware of.
10  Q    For the investors who purchased shares --
11  Mr. Mahabub's personal shares, did you provide them
12  with any information about GenAudio?
13  A    No.
14  Q    Did you issue share certificates to those
15  certificates?
16  A    Did I issue shares?  Yes.
17  Q    How would you get those to the investors?
18  A    Mail them.
19  Q    Mail?  Did you ever keep a list of
20  unaccredited investors or nonaccredited investors?
21  A    No.
22  Q    Mr. Devine, were you ever a board member?
23  A    No.
24  Q    Were you ever asked to be a board member?
25  A    No.

Page 163

 1  Q    To your knowledge was Jim Mattos ever a
 2  board member?
 3  A    No, not to my knowledge.
 4  Q    Did you attend the GenAudio board members?
 5  A    No.
 6  Q    Ever?
 7  A    I -- when Dale and Mark, they expanded the
 8  board, then I took the minutes.
 9  Q    Okay.
10  A    But before that, no.
11  Q    So in 2010 and 2011 and 2012, you did not
12  attend?
13  A    No.
14  Q    Okay.  And you didn't keep the minutes?
15  A    No.
16       (Exhibit Number 8 was marked.)
17  Q    (BY MS. VOORHEES)  Mr. Devine, I'm going
18  to hand you what's been marked as Deposition
19  Exhibit 8.  Do you recognize Exhibit 8?
20  A    Let's see here.
21       MS. HUGHES: Is there a Bates number on
22  there?
23       MS. VOORHEES: Oh, I'm sorry.  Yes.  Thank
24  you.  This is previously marked as Investigative
25  Exhibit 99, and it is Bates-labeled GA-002940

Page 164

 1  through 2946.  Thank you.
 2  A    I don't really recognize it, but yeah, I
 3  can see it's from the -- from a board meeting.
 4  Q    (BY MS. VOORHEES)  Okay.  And you see in
 5  the paragraph that is numbered one on the first page
 6  of Exhibit 8 --
 7  A    Right.
 8  Q    -- it says that you asked for questions.
 9  Do you recall attending this meeting?
10  A    Well, okay.  When you say "attend,"
11  oftentimes -- or not oftentimes, occasionally, they
12  would ask me to get on the phone, see if anybody had
13  any financial questions, and then I -- you know, I
14  didn't participate in any other business.
15  Q    Okay.
16  A    So, you know, from that perspective, yes.
17  Q    Okay.  Great.  So if you could, then,
18  turn, Mr. Devine, to the third page of Exhibit 8,
19  which is Bates-labeled 2942.  Do you see that that's
20  a scanned copy of an e-mail from Paul Powers?
21  A    Right.
22  Q    Who's Paul Powers?
23  A    He was on our board of directors, and I
24  think at the time -- I'm not sure, but I think he was
25  the chief operating officer also.

Case 1:15-cv-02118-WJM-SKC   Document 53-7   Filed 03/24/17   USDC Colorado   Page 10 of 11

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

James T. Devine
July 19, 2016

Page 177

1  involvement in anyone's use of the AstoundSound
2  studio in California?
3     A    No.
4     Q    If you go to the next page, so Page 61 of
5  the PPM, it's Bates Page 4794.
6     A    Yeah.
7     Q    Do you see that for additional
8  information, it directs people to Mr. Mahabub?
9     A    Yes.
10    Q    Do you know why it wasn't you for this
11 PPM?
12    A    Jerry's call.  He wanted to have them
13 contact him rather than me.
14    Q    Okay.  Did you have any involvement in the
15 drafting of the subscription agreement that's
16 Exhibit A?
17    A    Maybe the bank information.
18    Q    Okay.  So if you go to Exhibit B to the
19 subscription agreement, the payment instructions --
20    A    Yeah.
21    Q    Okay.
22    A    But I don't see -- I don't believe it's
23 changed from the last one.  No, it's the same.
24    Q    Okay.  Was your involvement in the process
25 for gathering the subscriptions the same for the 2011

Page 178

1  offering as it was for the 2010 offering?
2     A    When you say "gathering" --
3     Q    When -- you walked us through the process
4  for gathering the signature page to the subscription
5  agreements --
6     A    Yes.  Yes.
7     Q    -- and then you signed it, correct?
8     A    Yes.
9     Q    And then you would issue the shares,
10 correct?
11    A    That is correct.
12    Q    Okay.  Was that all the same in 2011?
13    A    Yes.
14    Q    Okay.  Did you do anything in 2011 to
15 review the confidential subscriber questionnaires?
16    A    No.
17    Q    Did you do anything to check whether the
18 investors were accredited?
19    A    Not that I recall.
20    Q    Are you aware of anyone at GenAudio doing
21 anything to check to see whether investors were
22 accredited?
23    A    I'm not sure if Jim Mattos looked at them
24 or not, to be honest with you.
25    Q    All right.  Exhibit B to the PPM starts on

Page 179

1  Page 4807.  Actually I guess it's the only page.
2     A    Yes.
3     Q    And that's the financial statement as of
4  March 31st, 2011, correct?
5     A    Correct.
6     Q    Did you prepare this document?
7     A    Yes.
8     Q    And there's profit and loss sheet and then
9  a balance sheet, correct?
10    A    Correct.
11    Q    And did you leave anything off when you
12 created these?
13    A    No.
14    Q    Okay.  Did you create them out of
15 QuickBooks?
16    A    Yes.
17    Q    All right.  Other than what we just
18 covered, Mr. Devine, and what you previously
19 testified to regarding the 2010 offering, did you
20 have any other involvement in this 2011 offering by
21 GenAudio, Inc.?
22    A    Not other than the items that we discussed
23 and if there was any items in -- you know, there
24 could be items in there that I haven't seen.  But if
25 it was accounting items, I would have provided that,

Page 180

1  yes.
2     Q    Okay.  Were the financial statements that
3  are on the last page of Exhibit 10, were they
4  accurate as of March 31st, 2011?
5     A    Well, they would have -- you know,
6  whatever there was there, yes.
7     Q    Okay.
8     A    I mean, you know, I don't remember if I
9  had to go back and make prior year corrections on
10 anything.  But as of that time, yes, they were
11 correct.
12         (Exhibit Number 11 was marked.)
13    Q    (BY MS. VOORHEES)  All right.  Mr. Devine,
14 I'm going to hand you what's been marked as
15 Exhibit 11.  It is a certified copy of a Form D
16 received by the commission on May 16, 2011, for
17 GenAudio, Inc.  And, Mr. Devine, if you flip to the
18 second page of Exhibit 11, do you recognize the form
19 of this document?
20    A    Yes.
21    Q    And if you go to the last page of
22 Exhibit 11, do you see that your name is listed --
23    A    Yes.
24    Q    -- for the signature and the name of
25 signer?

Case 1:15-cv-02118-WJM-SKC   Document 53-7   Filed 03/24/17   USDC Colorado   Page 11 of 11

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.
James T. Devine
July 19, 2016

Page 281

 1     **MR. HOLMES:** I believe it was.  I'll go
 2  back and look to see where it is.  I was looking at
 3  an electronic version of it, but I believe there's a
 4  PDF version that was produced.
 5     **MS. VOORHEES:** Okay.  But you don't know
 6  what the number is?
 7     **MR. HOLMES:** Not offhand, I'm sorry.  I'll
 8  look for it.
 9     **MS. VOORHEES:** Okay.
10     Q    (BY MS. VOORHEES)  Mr. Devine, when did
11  **you create Exhibit 20?**
12     A    2013.
13     Q    **Okay.  You think you created it in 2013?**
14     A    You know, I'd have to go back and look at
15  the date stamp on the worksheet.
16     Q    **Okay.  Do you still have this worksheet?**
17     A    I believe I do.
18     Q    **Okay.  Do -- why were you creating this**
19  **document?**
20     A    I was asked to by somebody.
21     Q    **Do you know who?**
22     A    No.  I don't remember.
23     Q    **What's the backup documentation for this**
24  **document?  What did you use to create it?**
25     A    The accounts off of QuickBooks.

Page 282

 1     Q    **Okay.**
 2     **MS. VOORHEES:** We have no further
 3  questions.
 4     **THE VIDEOGRAPHER:** The time is 5:21.  We
 5  are going off the record.  This will conclude the
 6  deposition for today.
 7     (Discussion off the record.)
 8     **MS. VOORHEES:** Counsel, do you want an
 9  opportunity to review the deposition -- for the
10  witness to review the deposition?
11     **THE VIDEOGRAPHER:** You guys don't need
12  this on video?
13     **MS. VOORHEES:** We don't need it --
14     **MR. AVENI:** We don't need it on video.
15     **MS. VOORHEES:** -- video.  Oh, I'm sorry.
16     **THE VIDEOGRAPHER:** If you're not on video,
17  you don't need your microphone.  Sorry to interrupt.
18     **MS. VOORHEES:** Counsel, do you and the
19  witness want an opportunity to review the deposition?
20     **MR. AVENI:** Yes, please.
21     **MS. VOORHEES:** Okay.  We'll do that within
22  30 days of receipt of the transcript by counsel.
23     **MR. AVENI:** The court reporter will send
24  it to me.  I will send it to Mr. Devine.  Mr. Devine
25  will make any changes, send it back to me.  And do

Page 283

 1  you want me to hold on to the original?
 2     **MS. VOORHEES:** We'll receive the original
 3  transcript, I believe, correct?  You'll receive a
 4  copy.
 5     **MR. AVENI:** That's fine.
 6     **MS. VOORHEES:** Yes.  So then send me any
 7  addendum or changes.
 8     **MR. AVENI:** Okay.
 9     **MS. VOORHEES:** Thank you.
10     (Deposition concluded at 5:23 p.m. on July
11     19, 2016. )
12
13
14     _____
15        JAMES T. DEVINE

Page 284

 1  STATE OF COLORADO)
 2           )  ss.     REPORTER'S CERTIFICATE
 3  COUNTY OF DENVER )
 4     I hereby certify that the witness in the
 5  foregoing deposition, JAMES DEVINE, was by me duly
 6  sworn to testify to the truth, the whole truth, and
 7  nothing but the truth, in the within-entitled cause;
 8  that said deposition was taken at the time and place
 9  herein named; that the deposition is a true record of
10  the witness's testimony as reported by me, a duly
11  certified shorthand reporter and a disinterested
12  person, and was thereafter transcribed into
13  typewriting by computer.
14     I further certify that I am not interested
15  in the outcome of the said action, nor connected
16  with, nor related to any of the parties in said
17  action, nor to their respective counsel.
18     IN WITNESS WHEREOF, I have hereunto set my
19  hand this 28th day of July, 2016.
20  Reading and Signing was:
21  Requested
22     *Barbara J. Castillo*
23
24     BARBARA J. CASTILLO, RMR, CRR
25     STATE OF COLORADO