EXCERPTED

# EXHIBIT 217

# In The Matter Of:

*Securities and Exchange Commission v.*
*Taj Jerry Mahabub, et al.*

---

*Jim Wei-Kung Mattos*
*July 22, 2016*

---

*Behmke Reporting and Video Services, Inc.*
*160 Spear Street, Suite 300*
*San Francisco, California  94105*
*(415) 597-5600*

Original File 29803Mattos.txt
Min-U-Script® with Word Index

| Securities and Exchange Commission v. Taj Jerry Mahabub, et al. | Jim Wei-Kung Mattos July 22, 2016 |
|---|---|

Page 1

```
 1         IN THE UNITED STATES DISTRICT COURT
 2              FOR THE DISTRICT OF COLORADO
 3
 4   - - - - - - - - - - - - - - - -
 5   SECURITIES AND EXCHANGE       )
 6   COMMISSION,                   )
 7              Plaintiff,         ) CASE NO.
 8   V.                            ) 1:15-cv-02118-CBS-WJM
 9   TAJ JERRY MAHABUB, GENAUDIO,  )
10   INC., and ASTOUND HOLDINGS,   )
11   INC.,                         )
12              Defendants.        )
13   - - - - - - - - - - - - - - - -
14
15
16       VIDEOTAPED DEPOSITION OF JIM WEI-KUNG MATTOS
17                  FRIDAY, JULY 22, 2016
18
19
20
21          BEHMKE REPORTING AND VIDEO SERVICES, INC.
22      BY:  KIMBERLY J. WALDIE, CSR NO. 8696, NVCCR 720
23                     160 SPEAR STREET, SUITE 300
24                   SAN FRANCISCO, CALIFORNIA 94105
25                                       (415) 597-5600
```

Page 2

```
 8       Videotaped deposition of JIM WEI-KUNG MATTOS,
 9   taken on behalf of Plaintiffs, at the Courtyard by
10   Marriott, 6855 South Virginia Street, Reno, Nevada,
11   commencing at 9:07 A.M., FRIDAY, JULY 22, 2016, before
12   Kimberly J. Waldie, Certified Shorthand Reporter No.
13   8696, pursuant to Notice of Deposition.
```

Page 3

```
 1   APPEARANCES OF COUNSEL:
 2   FOR PLAINTIFF:
 3       SECURITIES AND EXCHANGE COMMISSION
 4       BY: DANIELLE R. VOORHEES, ATTORNEY AT LAW
 5           LESLIE HENDRICKSON HUGHES, ATTORNEY AT LAW
 6       1961 Stout Street, Suite 1700
 7       Denver, Colorado 80294
 8       Telephone: (303)844-1000
 9       Email: voorheesd@sec.gov
10
11   FOR DEFENDANT, TAJ JERRY MAHABUB:
12       HOLMES, TAYLOR & JONES, LLP
13       BY: ANDREW B. HOLMES, ATTORNEY AT LAW
14       617 South Olive Street, Suite 1200
15       Los Angeles, California 90014
16       Telephone:  (213) 985-2200
17       Email:  abholmes@htjlaw.com
18
19   FOR DEFENDANT GENAUDIO, INC. AND JAMES T. DEVINE:
20       WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
21       BY: MICHAEL P. McCLOSKEY, ATTORNEY AT LAW
22       655 West Broadway, Suite 900
23       San Diego, California 92101
24       Telephone:  (619) 321-6200
25       Email: Michael.mccloskey@wilsonelser.com
```

Page 4

```
 1   APPEARANCES OF COUNSEL - (CONTINUED):
 2   FOR DEFENDANT ASTOUND HOLDINGS, INC.
 3   - (TELEPHONICALLY):
 4       BENZ LAW GROUP
 5       BY: JENNIFER YUEN, ATTORNEY AT LAW
 6       12021 Wilshire Boulevard, Suite 256
 7       Los Angeles, California 90025
 8       Telephone: (818) 371-8800
 9       Email:  jenniferk.yuen@gmail.com
10
11   ALSO PRESENT:
12       JEFF WALDIE, VIDEOGRAPHER, CCVS
```

Case 1:15-cv-02118-WJM-SKC   Document 58-68   Filed 04/28/17   USDC Colorado   Page 4 of 5

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Jim Wei-Kung Mattos
July 22, 2016

Page 17

1   Q. Do you socialize?
2   A. No.
3   Q. When was the last time you spoke to him?
4   A. Last time I spoke with him directly would have
5   been November of 2015.
6   Q. And when you spoke to him in November of 2015,
7   were you face-to-face or on the phone?
8   A. On the phone.
9   Q. Okay. What did you talk about?
10  A. I don't recall.
11  Q. Did you talk about the SEC litigation?
12  A. Not directly, no. This was just prior to my
13  resignation from the -- from the company --
14  Q. All right.
15  A. -- as an employee of GenAudio.
16  Q. Did you talk about your resignation?
17  A. No. We literally did not speak after my
18  resignation had been submitted.
19  Q. All right. Were you friends with Mr. Mahabub
20  at any point in time?
21  A. I would characterize our relationship as -- as
22  friends, yeah, over the course of the 11 years or so
23  that I was with the company.
24  Q. Why are you no longer characterizing yourself
25  as a friend of Mr. Mahabub's?

Page 18

1   A. My decision to sever the relationship stemmed
2   largely from what was happening with the company, both
3   the SEC lawsuit as well as other factors.
4   Q. What were the factors other than the SEC
5   lawsuit?
6   A. I hadn't been paid in almost four -- actually,
7   by the time my resignation was honored as per my
8   employment contract, there was -- there was a 90-day
9   grace period or period until that took full effect -- I
10  had not been paid in over four years by the company.
11  Q. You had not been paid at all?
12  A. I hadn't received my salary, no.
13  Q. Okay.
14  A. Yeah.
15  Q. Had --
16  A. I have -- I have records that state that the
17  last -- I'm -- I'm owed back salary from approximately
18  January of 2012 up until early March of 2016.
19  Q. What's your understanding as to why you weren't
20  paid during that four-year time period?
21  A. There was not -- there was not adequate money
22  in the company in terms of revenue or other means.
23  Q. Did you receive other payments other than your
24  salary from the company?
25  A. I did very occasionally receive compensation

Page 19

1   for out-of-pocket expenses.
2   Q. What about the lawsuit, the SEC litigation,
3   caused you to sever your relationship with Mr. Mahabub?
4   A. It became very evident that the ability for the
5   company to conduct any measurable business moving
6   forward was going to be hindered by the lawsuit itself.
7   Q. Did you believe that the SEC lawsuit was
8   Mr. Mahabub's fault?
9   A. I believe the content listed within the lawsuit
10  was his responsibility, yes.
11  Q. And what do you mean by that? What content?
12  A. Oh, as far as, you know, I -- I guess the
13  allegations that there were fraudulent
14  misrepresentations about certain business development
15  partners over time.
16  Q. And why do you say that those
17  misrepresentations were Mr. Mahabub's responsibility?
18  A. Mr. Mahabub was solely responsible for all
19  business development. He was very careful and measured
20  at making sure that it was compartmentalized. There was
21  no other either executive or senior manager, to my
22  knowledge, that had any measurable interactions with any
23  business development partners.
24  Q. Other than the misrepresentations that are
25  alleged in the lawsuit, was there anything else in the

Page 20

1   lawsuit that you believed was Mr. Mahabub's
2   responsibility?
3   A. That would be the primary one.
4   Q. Other than the SEC lawsuit and the fact that
5   you hadn't been paid for nearly four years, was there
6   anything else that you -- that caused you to sever your
7   relationship with Mr. Mahabub?
8   A. The relationship itself had become strained
9   early -- earlier in 2015.
10  Q. And why is that?
11  A. It's -- Mr. Mahabub had become involved in a
12  new relationship with a woman that he, I believe, or I
13  understand that he had been engaged to be married, and
14  he for all intents and purposes checked out. He was
15  very difficult to get ahold of by phone. He was
16  traveling extensively both within the U.S. and abroad
17  for that -- that -- you know, for the purposes of that
18  relationship.
19  Q. Anything else that caused you to sever your
20  relationship with Mr. Mahabub?
21  A. No. Those are the primary ones.
22  Q. You said that you last spoke to him in November
23  of 2015. Have you communicated with him in any other
24  way since then?
25  A. No. He attempted to reach out to me once by

Securities and Exchange Commission v.  
Taj Jerry Mahabub, et al.

Jim Wei-Kung Mattos  
July 22, 2016

Page 221

1   300, San Francisco, California. Going off the record.
2   The time is 2:58 p.m.
3        (Comments off the record by the reporter.)
4        MR. HOLMES: Wait. Before we do that, we should
5   figure out the transcript so he knows what to do with
6   it.
7        Jim, normally this is something your attorney
8   would handle for you or talk about, but you are going to
9   get a chance to review the written booklet of the
10  testimony. And typically there's a stipulation that
11  says that, you know -- if you don't do a stipulation,
12  then, you know a bunch of things happen that the court
13  reporter has to do. But if we do a stipulation, then
14  what we do is relieve the court reporter of some of her
15  normal duties, and then we have the deposition
16  transcript sent to you so that you can review it, make
17  any changes that you think need to be made. Sometimes
18  the response comes out opposite you thought it would be
19  or whatever the change might be. Then you sign off on
20  changes, and you send it back to counsel for the SEC.
21       THE WITNESS: Okay.
22       MR. HOLMES: You have a certain amount of time to do
23  that in. And I want to just sort of invite you to tell
24  us how much time you need and what process would work
25  for you.

Page 222

1        MR. McCLOSKEY: Typically it's 30 days. Are you
2   all right with it being signed under penalty of perjury
3   as opposed to going out, getting the signature
4   notarized?
5        MS. VOORHEES: Yeah, yes, that's fine. We can do it
6   under penalty of perjury. We can provide you a copy of
7   the transcript. If we give you 30 days, is that
8   sufficient to review?
9        THE WITNESS: That should be sufficient, yes.
10       (Discussion off the record.)
11       MR. HOLMES: So, Jim, what that means is you'll get
12  it, and then within 30 days of getting it, you are
13  expected to send back whatever changes you have to the
14  court reporter.
15       THE WITNESS: Okay. That's fine.
16       MR. HOLMES: If you don't do that, then the
17  assumption is you're fine with it as is.
18       THE WITNESS: Okay. So no changes, then just don't
19  send it back?
20       MR. HOLMES: Right. But it's important to read it
21  because sometimes --
22       THE WITNESS: No. I will.
23       MR. McCLOSKEY: I'd ask you if you have no changes,
24  say you have no changes. That we way affirm --
25       THE WITNESS: Okay. Thank you.

Page 223

1        THE REPORTER: Counsel, what would you like to
2   order?
3        MS. VOORHEES: Whatever is in our standard order.
4        THE REPORTER: Ms. Yuen, would you like a copy?
5        MS. YUEN: No.
6        THE REPORTER: Okay. And, Mr. Holmes?
7        MR. McCLOSKEY: I'll get you one.
8        MR. HOLMES: No, not right now.
9        MR. McCLOSKEY: I'll get a copy.
10       (At 3:01 P.M., the deposition proceedings
11  concluded.)
12
13          -------------------------------
14          JIM WEI-KUNG MATTOS

Page 224

1   STATE OF CALIFORNIA    )
2                          ) ss.
3   COUNTY OF EL DORADO    )
4        I hereby certify that the witness in the
5   foregoing deposition, JIM WEI-KUNG MATTOS, was by me
6   duly sworn to testify to the truth, the whole truth, and
7   nothing but the truth, in the within-entitled cause;
8   that said deposition was taken at the time and place
9   herein named; that the deposition is a true record of
10  the witness's testimony as reported by me, a duly
11  certified shorthand reporter and a disinterested person,
12  and was thereafter transcribed into typewriting by
13  computer.
14       I further certify that I am not interested in
15  the outcome of the said action, nor connected with, nor
16  related to any of the parties in said action, nor to
17  their respective counsel.
18       IN WITNESS WHEREOF, I have hereunto set my hand
19  this 28th day of July, 2016.
20  Reading and Signing was:
21  _X_ requested ___ waived ___ not requested
22
23       [signature]
24
25       KIMBERLY J. WALDIE, CSR 8696