# In The Matter Of:

*Securities and Exchange Commission v.*
*Taj Jerry Mahabub, et al.*

---

*Taj Jerry Mahabub*
*Vol. 1*
*January 19, 2017*

---

*Behmke Reporting and Video Services, Inc.*
*160 Spear Street, Suite 300*
*San Francisco, California 94103*
*(415) 597-5600*

Original File 30906Mahabub.txt
Min-U-Script® with Word Index

Case 1:15-cv-02118-WJM-SKC   Document 62-3   Filed 04/28/17   USDC Colorado   Page 2 of 15

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub - Vol. 1
January 19, 2017

**Page 1**

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                  FOR THE DISTRICT OF COLORADO
 3
 4    - - - - - - - - - - - - - - -
 5    SECURITIES AND EXCHANGE      )
 6    COMMISSION,                  )
 7                Plaintiff,       )
 8                                 ) CASE NO.
 9    v.                           ) 1:15-cv-02118-CBS-WJM
10                                 )
11    TAJ JERRY MAHABUB, GENAUDIO, )
12    INC., and ASTOUND HOLDINGS,  )
13    INC.,                        )
14                Defendants.      )
15    - - - - - - - - - - - - - - -
16
17          VIDEOTAPED DEPOSITION OF TAJ JERRY MAHABUB
18                  THURSDAY, JANUARY 19, 2017
19                   PAGES 1 - 256; VOLUME 1
20
21            BEHMKE REPORTING AND VIDEO SERVICES, INC.
22         BY: PAULA A. PYBURN, CSR NO. 7304, RPR, CLR
23                   160 SPEAR STREET, SUITE 300
24                 SAN FRANCISCO, CALIFORNIA 94105
25                         (415) 597-5600
```

**Page 2**

```
 8          Videotaped deposition of TAJ JERRY MAHABUB,
 9    VOLUME 1, taken by Plaintiff, at 444 South Flower
10    Street, Suite 900, Los Angeles, California,
11    commencing at 10:17 a.m., on THURSDAY, JANUARY 19,
12    2017, before Paula A. Pyburn, Certified Shorthand
13    Reporter No. 7304, RPR, CLR, pursuant to Notice.
```

**Page 3**

```
 1    APPEARANCES OF COUNSEL:
 2    FOR PLAINTIFF SECURITIES AND EXCHANGE COMMISSION:
 3         SECURITIES AND EXCHANGE COMMISSION
 4         BY:  DANIELLE R. VOORHEES, TRIAL COUNSEL
 5              LESLIE HENDRICKSON HUGHES, TRIAL COUNSEL
 6         1961 Stout Street, Suite 1700
 7         Denver, Colorado 80294
 8         Telephone: (303) 844-1000
 9         Email:  voorheesd@sec.gov
10                 hugheslj@sec.gov
11
12    FOR DEFENDANT TAJ JERRY MAHABUB:
13         HOLMES, TAYLOR & JONES LLP
14         BY:  ANDREW B. HOLMES, ATTORNEY AT LAW
15         617 South Olive Street, Suite 1200
16         Los Angeles, California 90014
17         Telephone:  (213) 985-2200
18         Email:  abholmes@htjlaw.com
```

**Page 4**

```
 1    APPEARANCES OF COUNSEL - (CONTINUED):
 2    FOR DEFENDANT GENAUDIO, INC.:
 3         WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
 4         BY:  MICHAEL P. MCCLOSKEY, ATTORNEY AT LAW
 5         655 West Broadway, Suite 900
 6         San Diego, California 92101
 7         Telephone: (619) 881-3326
 8         Email:   michael.mccloskey@wilsonelser.com
 9
10    FOR DEFENDANT ASTOUND HOLDINGS, INC.
11    - (A.M. SESSION):
12         BENZ LAW GROUP
13         BY:  JEFFREY BENZ, ATTORNEY AT LAW
14         12021 Wilshire Boulevard, Suite 256
15         Los Angeles, California 90025
16         Telephone: (310) 570-2774
17         Email:  jeffreybenz@gmail.com
18
19    ALSO PRESENT:
20         CASEY HOWELL, VIDEOTAPE OPERATOR
```

Case 1:15-cv-02118-WJM-SKC   Document 62-3   Filed 04/28/17   USDC Colorado   Page 3 of 15

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub - Vol. 1
January 19, 2017

Page 5

```
 1                    INDEX
 2  THURSDAY, JANUARY 19, 2017
 3  TAJ JERRY MAHABUB - VOLUME 1              PAGE
 4      Examination by MS. VOORHEES            14
 5  P.M. SESSION                              153
 6      Examination resumed by MS. VOORHEES   153
 7
 8
 9                   -oOo-
10
11
12      QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER:
13              PAGE         LINE
14                  NONE.
15
16
17
18
19
20
21
22
23
24
25
```

Page 6

```
 1                  EXHIBITS
 2          TAJ JERRY MAHABUB - VOLUME 1
 3  Number         Description                 Page
 4  Exhibit 199   DECEMBER 11, 2008, CONFIDENTIAL
 5                PRIVATE PLACEMENT MEMORANDUM,
 6                GENAUDIO, INC., BATES NOS.
 7                GA006483 THROUGH GA006585
 8                - 103 pages                   35
 9
10  Exhibit 200   March 25, 2009, Confiden
11                CONFIDENTIAL PRIVATE
12                PLACEMENT MEMORANDUM,
13                GENAUDIO, INC., BATES NOS.
14                GA007367 THROUGH GA007453
15                - 87 pages                    40
16
17  Exhibit 201   EMAIL CHAIN, BATES NOS.
18                SEC-ELLIOTT-E-0002589
19                THROUGH SEC-ELLIOTT-E-000292
20                - 4 pages                     40
21
22  Exhibit 202   EMAIL CHAIN, BATES NOS.
23                SEC-MAHABUBJ-E-0007972
24                THROUGH SEC-MAHABUBJ-
25                E-0007979 - 8 pages           49
```

Page 7

```
 1              EXHIBITS - (CONTINUED)
 2          TAJ JERRY MAHABUB - VOLUME 1
 3  Number         Description                 Page
 4  Exhibit 203   EMAIL CHAIN, BATES NOS.
 5                SEC-TISCARENOV-E-0000325
 6                THROUGH SEC-TISCARENOV-
 7                E-0000326 - 2 pages           68
 8
 9  Exhibit 204   8/10/09 EMAIL FROM JERRY
10                MAHABUB TO GARY SMITH, ETC.,
11                BATES NOS. SEC-MAHABUBJ-E-
12                0022806 THROUGH
13                SEC-MAHABUBJ-E-0022882
14                - 78 pages                    69
15
16  Exhibit 205   EMAIL CHAIN, BATES NOS.
17                347APL-00000608 THROUGH
18                347APL-00000621 - 14 pages    81
19
20  Exhibit 206   EMAIL CHAIN, BATES NOS.
21                SEC-MAHABUBJ-E-0023716
22                THROUGH SEC-MAHABUBJ-
23                E-0023729 - 14 pages          81
24
25
```

Page 8

```
 1              EXHIBITS - (CONTINUED)
 2          TAJ JERRY MAHABUB - VOLUME 1
 3  Number         Description                 Page
 4  Exhibit 207   EMAIL CHAIN, BATES NOS.
 5                GA006846 THROUGH GA006850,
 6                - 5 pages                    111
 7
 8  Exhibit 208   EMAIL CHAIN, BATES NOS.
 9                SEC-TISCARENOV-E-0000946
10                THROUGH SEC-TISCARENOV-
11                E-0000954 - 9 pages          125
12
13  Exhibit 209   EMAIL CHAIN, BATES NOS.
14                SEC-MAHABUBJ-E-0023474
15                THROUGH SEC-MAHABUBJ-
16                E-0023489 - 16 pages         126
17
18  Exhibit 210   EMAIL CHAIN, BATES NOS.
19                JM000378 THROUGH JM000380
20                - 3 pages                    138
21
22  Exhibit 211   EMAIL CHAIN, BATES NOS.
23                JM000727 THROUGH JM000279
24                - 3 pages                    173
25
```

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub - Vol. 1
January 19, 2017

Page 9

```
 1            EXHIBITS - (CONTINUED)
 2        TAJ JERRY MAHABUB - VOLUME 1
 3  Number         Description              Page
 4  Exhibit 212   EMAIL CHAIN, BATES NOS.
 5                SEC-TISCARENOV-E-0001047
 6                THROUGH SEC-TISCARENOV-
 7                E-0001048 - 2 pages       183
 8
 9  Exhibit 213   EMAIL CHAIN, BATES NOS.
10                SEC-MAHABUBJ-E-0019545
11                THROUGH SEC-MAHABUBJ-
12                E-0019549 - 5 pages       183
13
14  Exhibit 214   EMAIL CHAIN, BATES NOS.
15                JM002048 THROUGH JM002052
16                - 5 pages                 197
17
18  Exhibit 215   EMAIL CHAIN, BATES NOS.
19                SEC-TISCARENOV-E-0001119
20                THROUGH SEC-TISCARENOV-
21                E-0001120 - 2 pages       209
22
23  Exhibit 216   EMAIL CHAIN, BATES NOS.
24                JM002045 THROUGH JM002046
25                - 2 pages                 218
```

Page 10

```
 1            EXHIBITS - (CONTINUED)
 2        TAJ JERRY MAHABUB - VOLUME 1
 3  Number         Description              Page
 4  Exhibit 217   5/6/10 EMAIL FROM JERRY
 5                MAHABUB TO BOB COOVER, ETC.,
 6                BATES NOS. JM002017 THROUGH
 7                JM002020 - 4 pages        223
```

Page 11

```
 1         PREVIOUSLY MARKED EXHIBITS
 2        TAJ JERRY MAHABUB - VOLUME 1
 3  Number         Description              Page
 4  Exhibit 16    EMAIL CHAIN, BATES NOS.
 5                SEC0000001 THROUGH
 6                SEC0000005 - 5 pages      244
 7
 8  Exhibit 21    EMAIL CHAIN, BATES NOS.
 9                JM002096 THROUGH JM002099
10                - 4 pages                 105
11
12  Exhibit 23    10/19/09 EMAIL FROM JERRY
13                MAHABUB TO VICTOR TISCARENO,
14                ETC., BATES NOS.
15                SEC-TISCARENOV-E-0000635
16                THROUGH SEC-TISCARENOV-
17                E-0000636 - 2 pages       112
18
19  Exhibit 27    EMAIL CHAIN, BATES NOS.
20                SEC-TISCARENOV-E-0000992
21                THROUGH SEC-TISCARENOV-E
22                - 0000993 - 2 pages       138
```

Page 12

```
 1    PREVIOUSLY MARKED EXHIBITS - (CONTINUED)
 2        TAJ JERRY MAHABUB - VOLUME 1
 3  Number         Description              Page
 4  Exhibit 28    EMAIL CHAIN, BATES NOS.
 5                JM001041 THROUGH JM001046
 6                - 6 pages                 153
 7
 8  Exhibit 30    3/21/10 EMAIL FROM JERRY
 9                MAHABUB TO VICTOR TISCARENO,
10                ETC., BATES NOS.
11                347APL-00000315 THROUGH
12                347APL-00000316 - 2 pages 173
13
14  Exhibit 71    EMAIL CHAIN WITH ATTACHMENT,
15                BATES NOS.  SEC-
16                TISCARENOV-E-0000114 THROUGH
17                SEC-TISCARENOV-E-0000118
18                - 5 pages                 31
19
20  Exhibit 72    GENAUDIO, INC., BOARD OF
21                DIRECTORS TELEPHONIC MEETING
22                MINUTES FROM SEPTEMBER 25TH,
23                2009, BATES NO. GA006254
24                - 1 page                  100
```

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub - Vol. 1
January 19, 2017

Page 57

```
 1    MR. HOLMES: Huh-uh.
 2    THE WITNESS: I don't think so.
 3  BY MS. VOORHEES:
 4    Q. So you do not have the drives?
 5    A. No.
 6    Q. And you have not gotten rid of the drives?
 7    A. I don't believe so.
 8       Right?
 9    Q. Okay.
10    MR. HOLMES: No. They're maintained.
11    MS. VOORHEES: Okay.
12    Q. Mr. Mahabub, why didn't you produce these
13  emails to the SEC's investigative staff?
14    A. I did not realize they existed on my
15  computer until after the computer had fried, you
16  know? And then I sent it in to Andrew, and there
17  was mail identities that were on there that were --
18  like, showed deeply hidden.
19       You know, the thing is, is, whenever you
20  have a laptop, you only have so much hard drive
21  space. And as you -- like, already my computer is
22  running out of hard -- my new one is running out.
23  I got to go get a larger drive for it.
24       So as you -- as you run out of space, you
25  certainly can't go and import in other identities
```

Page 58

```
 1  or even search for them to import them in because
 2  you don't have the space to do it.
 3       So what I usually would do is zip up the
 4  mail identities and put them in a folder. And
 5  then, as my desktop would become cluttered, I'd
 6  collapse it down, call it "Desktop," slam it into a
 7  folder and -- so there are, like, folders within
 8  folders within folders, basically. It's -- not
 9  very organized.
10       So I didn't realize that they were there,
11  or else I would have -- I would have produced them.
12    Q. Okay.
13    A. Yeah.
14    Q. When did you realize they were there?
15    A. Not until afterwards. After my computer
16  fried, then I -- I knew that they were there.
17    Q. When was that?
18    THE WITNESS: When was that, Andrew? Do you
19  remember?
20    MS. VOORHEES: Andrew cannot testify.
21    MR. HOLMES: Yeah. You have -- you have to
22  give the best testimony you can. If you can't
23  remember --
24    THE WITNESS: I don't remember, yeah.
25  ///
```

Page 59

```
 1  BY MS. VOORHEES:
 2    Q. Did you remember prior to the summer?
 3  Prior to the summer of 2016?
 4    A. No.
 5    Q. All right. If you can now focus on
 6  Exhibit 202, Mr. Mahabub. So these emails are a
 7  little difficult to read because of the way they
 8  were produced to us; so this is the best we've got.
 9       If you could go down to the paragraph that
10  begins, "I had a few calls with Apple last week."
11       Do you see that?
12    A. I do, yes.
13    Q. Okay. So it says (as read):
14          I had a few calls with Apple last
15       week, and aside from Victor and myself
16       working on the strategy-related
17       topics, one of the new contacts I was
18       recently introduced to will be the
19       person who decides how we move forward
20       after reviewing the technical
21       disclosure document our dev, d-e-v,
22       team is preparing.
23       Do you see that?
24    A. I do.
25    Q. Who was the new contact?
```

Page 60

```
 1    A. I don't remember.
 2    Q. The very top, I think, the top of this
 3  email starts about halfway down the page with (as
 4  read):
 5          Hello, Team. This email and all of
 6       its content is to be considered
 7       company confidential.
 8       Do you see where I'm at?
 9    A. No.
10    Q. Okay. If you go down under -- do you see
11  where it says "Forward: Wednesday at 11:30 a.m.
12  Pacific"?
13    A. Oh, yes.
14    Q. Okay. You see where it starts with
15  "Hello, Team"?
16    A. Yes.
17    Q. Based on that, can you tell me who you
18  would be sending this email to?
19    A. Any emails that I ever sent that were
20  related to Apple were sent to team members. Or
21  every -- there might have been once or twice where
22  I would have sent it out to someone who I was
23  interested in soliciting to join the board of
24  directors. That's it.
25    MR. HOLMES: She wants identification of who
```

Case 1:15-cv-02118-WJM-SKC   Document 62-3   Filed 04/28/17   USDC Colorado   Page 6 of 15

Securities and Exchange Commission v.                                    Taj Jerry Mahabub - Vol. 1
Taj Jerry Mahabub, et al.                                                         January 19, 2017

Page 61

1   the team is.
2       THE WITNESS: Oh.
3       MR. HOLMES: Make sure you listen to the
4   question.
5       THE WITNESS: I -- I can't even tell you.
6   Melissa Gonzales, Jim Mattos, Paul Powers,
7   Mark Bobak -- it would have been team members and
8   board members.
9   BY MS. VOORHEES:
10      Q.  When you say "team members," you mean
11  people who worked for GenAudio?
12      A.  Or on the board of GenAudio, yeah.
13      Q.  And that could include people who are
14  actually employed by GenAudio or who were
15  contracting --
16      A.  Or consultants, exactly, full-time
17  consultants.
18      Q.  Okay.
19      A.  Yeah, you bet.
20      Q.  All right. So if you could go to the next
21  page, then, of Exhibit --
22      A.  But consultants were all under, you know,
23  heavy NDAs with us or had software -- developer
24  agreements executed with us that would have
25  prevented them from -- if I said, "Keep this

Page 62

1   internal and confidential," that meant keep it
2   internal and confidential.
3       Q.  All right. If you could take a look at
4   the second page. I'm starting in sort of the end
5   of what I think is the first paragraph --
6       A.  Yep.
7       Q.  -- where you see it says (as read):
8           Most likely I will have one or two
9           additional calls with Apple after
10          their review, and if I get the green
11          light, actual integration development
12          and testing will commence.
13      A.  Yeah.
14      Q.  Do you see that?
15      A.  I do.
16      Q.  All right. "Actual integration
17  development and testing," was that work that was to
18  be done by Apple?
19      A.  No. By us.
20      Q.  Okay. If you go down to the next
21  sentence, it says (as read):
22          I believe this could realistically
23          happen within two to four weeks.
24          Do you see that?
25      A.  The integration test, yes.

Page 63

1       Q.  Okay. What was your basis for saying
2   that?
3       A.  We had already ported the code to run
4   across about every platform -- or every operating
5   system that they had at that time. So getting
6   handed a -- an API or a kext, as Ron Isaac handed
7   to us --
8       THE REPORTER: Or a what?
9       THE WITNESS: A kext, k-e-x-t. It's called a
10  kernel extension, which is an embedded way to embed
11  into a Macintosh product line.
12      MR. HOLMES: Jerry -- Jerry, when she does
13  that, she just wants you to repeat exactly what you
14  said. If you add more things, it's more than she
15  needed.
16      THE WITNESS: Okay. Okay.
17          So I'm not sure exactly what your question
18  is. I think -- I think my point that I'm making
19  here is that we're pretty much self-ported; so
20  to -- to tighten down the nuts and bolts into a
21  kernel extension or into any type of API that we
22  might receive for OSX or iOS would be a matter of
23  weeks, is the point I was making there.
24  BY MS. VOORHEES:
25      Q.  Okay. If you could skip down, there's a

Page 64

1   series of sentences that say, "Do I believe."
2           If you could go down to the one that says
3   (as read):
4           Do I believe that Apple could be a
5           strong potential buyer of GenAudio in
6           its entirety? Yes.
7       A.  Absolutely.
8       Q.  Do you see that?
9       A.  Yes.
10      Q.  Okay. What was your basis for that?
11      A.  Discussions that I had had and, you know,
12  they seemed to be very interested in the
13  technology. I had written several emails to Victor
14  and Ron and other contacts that I had. And, you
15  know, they -- they certainly didn't go against
16  anything that I was saying to them; that's for
17  sure.
18      Q.  All right. The next -- if you skip down
19  two, it says (as read):
20          Do I believe that if someone does
21          not invest at this point in time that
22          they are foolish? Yes.
23          And what did you mean by that?
24      A.  That means that at the time, I honestly
25  believed that we were going to be doing a deal with

Case 1:15-cv-02118-WJM-SKC   Document 62-3   Filed 04/28/17   USDC Colorado   Page 7 of 15

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub - Vol. 1
January 19, 2017

Page 65

1  Apple based on the communications I had with my
2  points of contact that I was working with there.
3   Q.  Okay. And that's as of July of 2009, you
4  thought that?
5   A.  Yep, exactly. But, you know, like I said,
6  this was meant to go to internal team members; this
7  wasn't meant to be distributed to anyone external
8  to the team, or else it would have been.
9   Q.  If you go down to the next paragraph, it
10 says (as read):
11         We need investors and need them
12     now.
13  A.  Yep.
14   Q.  Why were you writing that?
15   A.  Because we were out of money. And in
16 order to port code and hire on the right team and
17 the right dev staff, and there were a couple other
18 additional software engineering people that I
19 needed to bring on board at the time, and you can't
20 bring those people on unless you have money.
21   Q.  Okay. If you could go to the next page.
22 So I'm now on the Bates page 7974.
23  A.  Yeah.
24   Q.  And go down to what I think is the first
25 full paragraph. It says (as read):

Page 66

1         Everyone keep their eye on the
2     prize and, if possible, bring
3     potential investors to the table,
4     please, preferably through the common
5     stock offering.
6     Do you see that?
7  A.  Yes.
8   Q.  All right. So you were asking your team
9  to help bring potential investors to the table;
10 correct?
11  A.  Through the common stock offering. What
12 I'm saying is, don't bring them to the table
13 through anything here. They have to read the
14 common stock offering, the risk factors associated
15 with the offering; that this is -- you know, this
16 is internal team member confidential stuff, but if
17 you know anyone that might be interested in
18 investing, you know, give them the common stock
19 or -- at the time, the logistics were, you know, go
20 to Jim Mattos, and Mattos would then forward them
21 the common stock offering.
22   Q.  Okay. So when -- so your parenthetical
23 that says "preferably through the common stock
24 offering," you're referring to the process by which
25 the investors would be provided with the offering

Page 67

1  documents?
2   A.  With information to determine whether or
3  not it was an investment that they want to invest
4  in or not, because this obviously isn't surrounded
5  by the appropriate risk factors and disclaimers in
6  the language that are needed.
7   Q.  Okay. You say "preferably." Was there
8  another alternative?
9   A.  Yeah, a term sheet. So if there's a
10 potential that someone knew someone that wanted to
11 invest something, a little larger amounts, you
12 know, maybe the company would look at what's called
13 a term sheet, if I remember, is what it's referred
14 to as.
15         So if -- if someone wanted to -- you know,
16 one of our employees said, "Hey, Jerry, here is my
17 Uncle Joe. You know, he wants to invest
18 $10 million." Right? Which never happened. But
19 if it ever happened, you know, we'd -- we'd
20 entertain a term sheet at that time.
21         So it would either be through a common
22 stock offering or through a potential for a term
23 sheet. Again, you know, we never had any term
24 sheet offers to the table; it was all through the
25 offerings.

Page 68

1   Q.  Okay. So you never had any term sheets?
2   A.  No.
3   Q.  Okay. Were there any other alternatives
4  other than term sheet and common stock offering?
5   A.  No. No. There was a term sheet with a
6  group called GenAudio Term Sheet Investment Group,
7  which is a B.S. group set up by Mark Bobak and
8  Dell Skluzak in a -- a way for them to start their
9  hostile takeover when they were -- but that's the
10 only term sheet group, as far as I remember.
11   Q.  Okay.
12     THE WITNESS: Slow down? Okay, yeah, sorry.
13         (Whereupon, Exhibit 203 was marked for
14         identification by the Court Reporter.)
15     THE WITNESS: Oh, you guys dug these up, huh?
16 This is great.
17 BY MS. VOORHEES:
18   Q.  All right. Mr. Mahabub, you've been
19 handed what's been marked as Exhibit 203. It's
20 email correspondence. The first page is Bates
21 labeled SEC-TiscarenoV-E-000325.
22         Do you recognize Exhibit 203?
23  A.  Yes.
24   Q.  Okay. And this is email correspondence
25 between you and Victor Tiscareno; correct?

Case 1:15-cv-02118-WJM-SKC   Document 62-3   Filed 04/28/17   USDC Colorado   Page 8 of 15

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub - Vol. 1
January 19, 2017

Page 181

1  you know, Naval Warfare Center. I worked with a
2  lot of people back then. The United States Army in
3  Huntsville, Alabama. Missile Research Development
4  Engineering Center. You name it, they ended up in
5  licensing deals.
6      MR. HOLMES: Slow down a little bit. The
7  reporter is having a hard time keeping up.
8      THE WITNESS: Okay.
9      Well, the point is, is, when you hit this
10 particular stage, which is embedded-level
11 integration, it usually means either a sales
12 contract, a licensing deal, a hardware --
13 something, you know?
14     And, you know, that's where we were,
15 'cause, obviously, a kernel extension, a vendor
16 kernel extension, which is what we were handed by
17 Ron Isaac, is -- is basically an embedded-level
18 integration. That is a full-blown embedded
19 integration when you get handed a kernel extension
20 into a product.
21 BY MS. VOORHEES:
22  Q. Did you ever talk to Mr. Isaac about what
23 the term "vendor" meant in Apple parlance?
24  A. Did not, no. I mean, I think "vendor" --
25 everyone knows what the word "vendor" means, you

Page 182

1  know? I mean, it's -- pretty common term to use in
2  business.
3   Q. Did you ever talk to anybody at Apple
4  about what the term meant?
5   A. No. That -- that would kind of be like --
6  I don't know if that would be considered rude or,
7  like, condescending towards someone, you know. A
8  vendor means vendor. It's an English word in the
9  English dictionary. I think everyone knows what it
10 means.
11  Q. In your previous employment, had you ever
12 been involved in tech-based licensing with Apple?
13  A. No.
14  Q. If you go down to the second-to-last
15 paragraph in the email we've been looking at, that
16 first email on Exhibit 211.
17  A. This page here?
18  Q. Yes. It says (as read):
19      Let's get some fuel for the ship.
20  A. Yeah.
21  Q. (As read):
22      Any help from all of you with this
23      financing effort would be great.
24  A. Uh-huh.
25  Q. What did you mean by that?

Page 183

1   A. That means if you guys know anybody out
2  there that may have an interest or is an investor,
3  please introduce them to me or Jim Mattos, and we
4  will take it from there and make sure that they are
5  provided with the correct investment materials to
6  make a -- an informed investment decision.
7      But, of course, they were -- as I told
8  everyone, you're not -- if you're not Jim Mattos,
9  me, or Paul Powers, do not -- you know, just say,
10 "Hey, look, if you're interested, I can introduce
11 you to this guy or that guy."
12     And then, after the introduction is made,
13 from there we will hand them materials that they
14 can make a decision whether or not to invest.
15     That's -- that's pretty much the modis
16 operandi that -- that we did things on. That way
17 we tried to avoid being here, sitting here with you
18 and -- apparently it didn't work.
19     We did our best.
20     Is that it for these two?
21  Q. Yes.
22  A. Okay.
23     (Whereupon, Exhibit 212 and
24     Exhibit 213 was marked for
25     identification by the Court Reporter.)

Page 184

1      MR. HOLMES: Oh.
2      THE WITNESS: All right. Thanks.
3      MS. VOORHEES: Did I give you too many?
4      MR. HOLMES: Yeah.
5      MS. VOORHEES: Sorry.
6      MR. HOLMES: Give me too many things, like, I
7  get confused.
8  BY MS. VOORHEES:
9   Q. All right. Mr. Mahabub, you've been
10 handed two new exhibits. The first is Exhibit 212.
11 It's an email chain Bates-labeled SEC-TiscarenoV-E-
12 0001047.
13     Do you recognize Exhibit 212?
14  A. I do, yes.
15  Q. Okay.
16  A. Same answer, you know, as before.
17  Q. Okay. So you don't recall Exhibit 212,
18 but you have no reason to doubt that you sent and
19 received the emails as indicated?
20  A. That's correct, yes.
21  Q. Thank you.
22     And Exhibit 213 is email correspondence.
23 It is Bates-labeled SEC-MahabubJ-E-0019545.
24     Do you recognize Exhibit 213?
25  A. Same answer.

Case 1:15-cv-02118-WJM-SKC Document 62-3 Filed 04/28/17 USDC Colorado Page 9 of 15

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub - Vol. 1
January 19, 2017

Page 253

1  deposition of Jerry Mahabub. The time is 3:51.
2      Please proceed.
3      MS. VOORHEES: All right.
4      Q. Mr. Mahabub, before -- I think after we
5  actually went off the record last time, you said
6  you thought you maybe had 30 minutes left to give
7  us in the deposition?
8      A. Around there.
9      Q. Okay. So given that, and given that the
10 parties have agreed that we can reconvene this
11 deposition on February 8th, 2017, in Denver, we're
12 going to go ahead and conclude the deposition for
13 today.
14     A. Okay. That --
15     Q. We will issue an amended notice that will
16 have you appear at our office in Denver on
17 February 8th, 2017.
18     A. Okay.
19     Q. Okay?
20     A. That's great, yeah.
21     MS. VOORHEES: All right. Thank you.
22         Counsel, anything else?
23     MR. MCCLOSKEY: So stipulated. We'll see you
24 on the 8th.
25     MR. HOLMES: Yeah.

Page 254

1      MS. VOORHEES: Okay. Sounds good. Thank you.
2      THE WITNESS: Oh, wait. And we just pick up
3  where we left off or --
4      MR. HOLMES: Yeah. Yeah.
5      MS. HUGHES: We also wanted to stipulate that
6  the court reporter did not need to put on her
7  address, business address and those things at the
8  beginning and end of the deposition.
9      THE REPORTER: For the federal rule read on?
10     MS. HUGHES: Yes.
11     MR. HOLMES: So stipulated.
12     MR. MCCLOSKEY: So stipulated.
13     MS. VOORHEES: Agreed.
14     THE VIDEOGRAPHER: This concludes today's
15 deposition of Jerry Mahabub. The number of DVDs
16 used was three. The original media will be
17 retained at Behmke Reporting & Video Services,
18 Incorporated, located at 160 Spear Street,
19 Suite 300, San Francisco, California.
20         We're going off the record. The time is
21 3:52.
22         (Off video record.)
23     THE REPORTER: Do you guys need certified
24 copies?
25     MR. HOLMES: No, I don't.

Page 255

1      Do you want -- are you getting a certified
2  copy?
3      MR. MCCLOSKEY: You guys get the original.
4      MS. VOORHEES: We noticed it. We will get the
5  original.
6      MR. MCCLOSKEY: Yes, I want a certified copy.
7      THE REPORTER: Does anyone need a rough draft?
8      MS. VOORHEES: Whatever our order is. We'll
9  have to get back to you on that.
10         (At 3:54 p.m., the deposition
11         proceedings adjourned to February 8,
12         2017.)
13
14
15
16     _____
17         TAJ JERRY MAHABUB
18
19
20
21
22
23
24
25

Page 256

1  STATE OF CALIFORNIA  )
2                      ) ss
3  COUNTY OF RIVERSIDE  )
4      I hereby certify that the witness in the
5  foregoing deposition, TAJ JERRY MAHABUB,, was by me
6  duly sworn to testify to the truth, the whole truth and
7  nothing but the truth, in the within-entitled cause;
8  that said deposition was taken at the time and place
9  herein named; and that the deposition is a true record
10 of the witness's testimony as reported by me, a duly
11 certified shorthand reporter and a disinterested
12 person, and was thereafter transcribed into typewriting
13 by computer.
14     I further certify that I am not interested in
15 the outcome of the said action, nor connected with nor
16 related to any of the parties in said action, nor to
17 their respective counsel.
18     IN WITNESS WHEREOF, I have hereunto set my
19 hand this 27th day of January, 2017.
20 Reading and Signing was:
21 _X_ requested ___ waived ___ not requested
22
23         _Paula A. Pyburn_
24
25     PAULA A. PYBURN, CSR NO. 7304, RPR, CLR

# In The Matter Of:

*Securities and Exchange Commission v.*
*Taj Jerry Mahabub, et al.*

*Taj Jerry Mahabub*
*Vol. 2*
*February 8, 2017*

*Behmke Reporting and Video Services, Inc.*
*160 Spear Street, Suite 300*
*San Francisco, California 94105*
*(415) 597-5600*

Original File 31006MahabubV2.txt
Min-U-Script® with Word Index

Case 1:15-cv-02118-WJM-SKC   Document 62-3   Filed 04/28/17   USDC Colorado   Page 11 of 15

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub - Vol. 2
February 8, 2017

Page 257

```
 1            IN THE UNITED STATES DISTRICT COURT
 2               FOR THE DISTRICT OF COLORADO
 3
 4   - - - - - - - - - - - - - - -
 5   SECURITIES AND EXCHANGE      )
 6   COMMISSION,                  )
 7            Plaintiff,          )
 8                                ) CASE NO.
 9   v.                           ) 1:15-cv-02118-CBS-WJM
10                                )
11   TAJ JERRY MAHABUB, GENAUDIO, )
12   INC., and ASTOUND HOLDINGS,  )
13   INC.,                        )
14            Defendants.         )
15   - - - - - - - - - - - - - - -
16
17       VIDEOTAPED DEPOSITION OF TAJ JERRY MAHABUB
18             WEDNESDAY, FEBRUARY 8, 2017
19             PAGES 257 - 541; VOLUME 2
20
21        BEHMKE REPORTING AND VIDEO SERVICES, INC.
22            BY:  BARBARA J. CASTILLO, RMR, CRR
23                   160 SPEAR STREET, SUITE 300
24                SAN FRANCISCO, CALIFORNIA 94105
25                            (415) 597-5600
```

Page 258

```
 8       Videotaped deposition of TAJ JERRY MAHABUB,
 9   VOLUME 2, taken by Plaintiff, at 1691 Stout Street
10   Street, Suite 1700, Denver, Colorado, commencing
11   at 9:23 A.M., on WEDNESDAY, FEBRUARY 8, 2017,
12   before Barbara J. Castillo, Registered Merit Reporter,
13   Certified Realtime Reporter and Notary Public within
14   and for the State of Colorado, pursuant to Notice.
```

Page 259

```
 1   APPEARANCES OF COUNSEL:
 2   FOR PLAINTIFF SECURITIES AND EXCHANGE COMMISSION:
 3       SECURITIES AND EXCHANGE COMMISSION
 4       BY:  DANIELLE R. VOORHEES, TRIAL COUNSEL
 5            LESLIE HENDRICKSON HUGHES, TRIAL COUNSEL
 6       1961 Stout Street, Suite 1700
 7       Denver, Colorado 80294
 8       Telephone: (303) 844-1000
 9       Email:  voorheesd@sec.gov
10               hugheslj@sec.gov
11
12   FOR DEFENDANT TAJ JERRY MAHABUB:
13       HOLMES, TAYLOR & JONES LLP
14       BY:  ANDREW B. HOLMES, ATTORNEY AT LAW
15       617 South Olive Street, Suite 1200
16       Los Angeles, California 90014
17       Telephone:  (213) 985-2200
18       Email:  abholmes@htjlaw.com
```

Page 260

```
 1   APPEARANCES OF COUNSEL - (CONTINUED):
 2   FOR DEFENDANT GENAUDIO, INC.:
 3       WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
 4       BY:  MICHAEL P. MCCLOSKEY, ATTORNEY AT LAW
 5       655 West Broadway, Suite 900
 6       San Diego, California 92101
 7       Telephone: (619) 881-3326
 8       Email:   michael.mccloskey@wilsonelser.com
 9
10   ALSO PRESENT:
11       WALT MATHERN, VIDEOGRAPHER
```

Case 1:15-cv-02118-WJM-SKC   Document 62-3   Filed 04/28/17   USDC Colorado   Page 12 of 15

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub - Vol. 2
February 8, 2017

Page 261

```
 1                    INDEX
 2  WEDNESDAY FEBRUARY 8, 2017
 3  TAJ JERRY MAHABUB - VOLUME 2            PAGE
 4      Examination By MS. VOORHEES          270
 5  P.M. SESSION                             386
 6      Examination resumed by MS. VOORHEES  386
```

Page 262

```
 1                   EXHIBITS
 2        TAJ JERRY MAHABUB - VOLUME 2
 3   Number        Description              Page
 4   Exhibit 262   Email string, top message
 5                 from Jerry Mahabub to
 6                 littlebadass19@yahoo.com,
 7                 5/29/10; Bates Nos.
 8                 SEC-MahabubJ-E-0023379
 9                 through 0023389 - 11 pages  288
10
11   Exhibit 263   Audio Transcription, Pages 1
12                 through 56 - 56 pages       296
13
14   Exhibit 264   Letter from Jerry Mahabub to
15                 Shareholder, 8/28/10; Bates
16                 Nos.  SEC0000006 through
17                 0000009 - 4 pages           339
18
19   Exhibit 265   Email from Jerry Mahabub to
20                 Victor Tiscareno, 9/6/10;
21                 Bates No.
22                 SEC-TiscarenoV-E-0001264
23                 - 1 page                    376
```

Page 263

```
 1              EXHIBITS - (CONTINUED)
 2        TAJ JERRY MAHABUB - VOLUME 2
 3   Number        Description              Page
 4   Exhibit 266   Email string, top message
 5                 from Jerry Mahabub to Paul
 6                 Powers and Mark Bobak,
 7                 9/7/10; Bates No.
 8                 SEC-MahabubJ-E-0005677
 9                 through 0005680 - 4 pages   376
10
11   Exhibit 267   GenAudio Shareholder
12                 Progress Report, February
13                 26, 2011; Bates Nos.
14                 GA005317 through 005339
15                 - 23 pages                  393
16
17   Exhibit 268   Email string, top message
18                 from Jerry Mahabub to Jay
19                 Rifkin and Phil Rodriguez,
20                 9/30/11; Bates No.
21                 SEC-MahabubJ-E-0020185
22                 through 0021086 - 2 pages   413
```

Page 264

```
 1              EXHIBITS - (CONTINUED)
 2        TAJ JERRY MAHABUB - VOLUME 2
 3   Number        Description              Page
 4   Exhibit 269   Transcript of audio file
 5                 - 32 pages                  435
 6
 7   Exhibit 270   Printout of slides; Bates
 8                 Nos. SEC-Skluzak-E-0000392
 9                 through 0000425 - 34 pages  446
10
11   Exhibit 271   Affidavit of Jerry Mahabub
12                 in Support of Plaintiff's
13                 Response - 12 pages         458
14
15   Exhibit 272   Defendant Astound Holdings,
16                 Inc.'s Response to Plaintiff
17                 Securities and Exchange
18                 Commission's Second Request
19                 for Production of Documents
20                 and First Interrogatories
21                 Dated November 10, 2016
22                 - 7 pages                   494
```

Case 1:15-cv-02118-WJM-SKC   Document 62-3   Filed 04/28/17   USDC Colorado   Page 13 of 15

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub - Vol. 2
February 8, 2017

Page 265

```
 1           PREVIOUSLY MARKED EXHIBITS
 2              TAJ JERRY MAHABUB - VOLUME 2
 3    Number          Description                  Page
 4    Exhibit 31    Email string, top message
 5                  from Gary Smith to
 6                  psavio@genaudioinc.com;
 7                  5/25/10; Bates No. JM002158
 8                  through 002167 - 10 pages       273
 9
10    Exhibit 32    Email string, top message
11                  from Jerry Mahabub to Victor
12                  Tiscareno, 5/25/10; Bates
13                  Nos.
14                  SEC-TiscarenoV-E-0001158
15                  though 0001162 - 5 pages        273
16
17    Exhibit 34    Email string, top message
18                  from Jim Mattos to Jerry
19                  Mahabub, 10/27/14; Bates
20                  Nos. JM002515 through 002518
21                  - 4 pages                       315
22
23
24
25
```

Page 266

```
 1        PREVIOUSLY MARKED EXHIBITS - (CONTINUED)
 2              TAJ JERRY MAHABUB - VOLUME 2
 3    Number          Description                  Page
 4    Exhibit 35    Email string, top message
 5                  from Jerry Mahabub to Victor
 6                  Tiscareno, 7/2/10; Bates
 7                  Numbers
 8                  SEC-TiscarenoV-E-0001218
 9                  through 0001221 - 4 pages       315
10
11    Exhibit 37    Letter from Jerry Mahabub to
12                  GenAudio Shareholders,
13                  8/1/10; Bates No. GA005351
14                  through 005353 - 3 pages        330
15
16    Exhibit 40    Email string, top message
17                  from Dell Skluzak to
18                  Jennifer Ostrom, 11/20/14;
19                  Bates Nos.
20                  SEC-Scluzak-E-0000905
21                  through 0000911 - 7 pages       404
22
23
24
25
```

Page 267

```
 1        PREVIOUSLY MARKED EXHIBITS - (CONTINUED)
 2              TAJ JERRY MAHABUB - VOLUME 2
 3    Number          Description                  Page
 4    Exhibit 74    Compilation exhibit of a
 5                  stock certificate and other
 6                  documents; Bates Nos.
 7                  Mahabub001659 through 001671
 8                  - 13 pages                      468
 9
10    Exhibit 138   Email string, top message
11                  from Jerry Mahabub to Victor
12                  Tiscareno, 9/1/10 - 9 pages     350
13
14    Exhibit 139   Email string, top message
15                  from Jerry Mahabub - 4 pages    361
16
17    Exhibit 170   Email string, top message
18                  from Richard DeVaul to Jerry
19                  Mahabub, 4/6/11; Bates Nos.
20                  347APL-00000066 through
21                  00000069 - 4 pages              397
22
23
24
25
```

Page 268

```
 1        PREVIOUSLY MARKED EXHIBITS - (CONTINUED)
 2              TAJ JERRY MAHABUB - VOLUME 2
 3    Number          Description                  Page
 4    Exhibit 198   GenAudio Inc. Common Stock
 5                  Transfer Ledger; Bates Nos.
 6                  GA001816 through 001852 - 37
 7                  - 37 pages                      462
 8
 9    Exhibit 242   Email string, top message
10                  from Jerry Mahabub, 7/3/09;
11                  Bates Nos.
12                  SEC-MahabubJ-E_0023817
13                  through 0023827 - 11 pages      436
14
15    Exhibit 257   Email string, top message
16                  from Jerry Mahabub to Dell
17                  Skluzak, 7/6/12; Bates No.
18                  SEC-ELLIOTT-E-0002702
19                  - 1 page                        502
20
21    Exhibit 258   Email from Jerry Mahabub to
22                  Dell Skluzak, 1/5/13; Bates
23                  No. SEC-ELLIOTT-E-0002703
24                  - 1 page                        513
25
```

**Page 481**

1  that are completed by the investors.
2    A    Yes.
3    Q    I'm not seeing that in connection with
4  your personal sales.
5    A    No sub-agreements, yeah.
6    Q    Okay. So there's no subscription
7  agreement with your personal sales; is that correct?
8    A    I think most the people that invested in
9  my --
10   Q    I'm sorry, can you just say yes or no. Is
11 that correct, there was no subscription agreement
12 that went along with your personal sales?
13   A    A purchase agreement, not a subscription
14 agreement, yeah.
15   Q    Okay. An investor questionnaire where
16 they fill out the information about their
17 accreditation sales?
18   A    No.
19   Q    That doesn't happen in your personal
20 sales?
21   A    To an extent it does, but not directly.
22   Q    Okay. No actual physical document?
23   A    No.
24   Q    **Okay. All right. So go ahead. Now tell**
25 **me how you did evaluate accreditation.**

**Page 482**

1    A    **So most of them that came and invested**
2  **through my personal stock sale deal had either, A,**
3  **invested in a company offering and filled out an**
4  **investor questionnaire so we knew they were**
5  **accredited, or, B if they didn't and I talked to**
6  **them, you know, I'd just make sure that it was, you**
7  **know -- if something went wrong it was money they**
8  **could lose, this, that or the other, what's their net**
9  **worth, was it over a million, do him -- him and their**
10 **spouse or whatever make 300,000 per year or him -- I**
11 **think it was like 200,000 per year or 300,000 per**
12 **year if I remember what the accreditation standards**
13 **were. So I'd just ask the questions and make sure**
14 **they were.**
15   Q    Did you do that with Mr. Marvin?
16   A    I believe so, yes.
17   Q    Was he accredit- ---
18   A    I think he was investing in the company
19 first. I can't remember.
20   Q    Okay. Was he accredited?
21   A    I think so, yeah, or else -- I believe so.
22   Q    How -- what did you do to keep track of
23 these oral conversations that you were having with
24 investors?
25   A    Not much. I mean, they were friends and

**Page 483**

1  family, so it was personal stock sale. It didn't
2  dilute the other shareholders, so, you know, it
3  pretty much didn't affect the company. It only
4  affected me.
5    Q    Okay. And I'm trying to just focus on the
6  accreditation point. Is there something -- some
7  document or something that we could go look at to see
8  whether or not the investors who purchased your
9  personal shares were accredited?
10   A    I think the document you have to look at
11 there would be in the corporation files if they
12 filled out a subscription agreement.
13   Q    Okay. If they also invested in the
14 company?
15   A    Yes.
16   Q    But otherwise there would not be a
17 document?
18   A    There would not be a document, that's
19 right.
20   Q    What -- tell me about the transfer of
21 money. When investors purchased your personal stock
22 what happened with the money?
23   A    They would wire transfer it to my account
24 or send a check.
25   Q    Okay. To your personal account?

**Page 484**

1    A    Yes.
2    Q    Which account?
3    A    I've had so many banks. Back then I would
4  have had -- let's see, U.S. Bank would have been back
5  then and -- and also I think Wells Fargo, I believe.
6  I can't remember who I moved to after U.S. Bank. I
7  think Wells Fargo.
8    Q    Okay. So if investors bought your
9  personal shares, the money went into your personal
10 account?
11   A    That's right.
12   Q    Okay. And then you would transfer it to
13 GenAudio?
14   A    Or Astound Studios.
15   Q    Or Astound Studios?
16   A    Yeah.
17   Q    Did you keep any of the money?
18   A    A little bit, yeah, obviously because I
19 wasn't paying -- getting paid. So there was a small
20 portion that I kept, but the only reason why was
21 because of my understanding that I wasn't obligated
22 to have to loan money to the company or -- no
23 obligation to the company and the shareholders or the
24 board to have to loan my personal money to the
25 company, but that's what I chose to do with it.

Case 1:15-cv-02118-WJM-SKC   Document 62-3   Filed 04/28/17   USDC Colorado   Page 15 of 15

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub - Vol. 2
February 8, 2017

Page 541

1  STATE OF COLORADO )
2           ) ss.
3  COUNTY OF DENVER )
4           I hereby certify that the witness in the
5  foregoing deposition, TAJ JERRY MAHABUB, was by me
6  duly sworn to testify to the truth, the whole truth,
7  and nothing but the truth, in the within-entitled
8  cause; that said deposition was taken at the time and
9  place herein named; that the deposition is a true
10 record of the witness's testimony as reported by me,
11 a duly certified shorthand reporter and a
12 disinterested person, and was thereafter transcribed
13 into typewriting by computer.
14          I further certify that I am not interested
15 in the outcome of the said action, nor connected
16 with, nor related to any of the parties in said
17 action, nor to their respective counsel.
18          IN WITNESS WHEREOF, I have hereunto set my
19 hand this 13th day of February, 2017.
20 Reading and Signing was:
21 Requested
22
23          *Barbara J. Castillo* (signature)
24
25          BARBARA J. CASTILLO, RMR, CRR