**EXCERPTED**

# EXHIBIT 238

Page 1

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

In the Matter of:        )
                         )  File No. D-03450-A
GENAUDIO, INC.           )

WITNESS:   Victor Tiscareno
PAGES:     1 through 180
PLACE:     Securities and Exchange Commission
           Byron G. Rogers Federal Building
           1961 Stout Street
           Denver, Colorado 80294
DATE:      Wednesday, December 3, 2014

    The above-entitled matter came on for hearing, pursuant to notice, at 9:10 a.m.



Diversified Reporting Services, Inc.
(202) 467-9200

Page 1

1  UNITED STATES SECURITIES AND EXCHANGE COMMISSION
2
3  In the Matter of:           )
4                              ) File No. D-03450-A
5  GENAUDIO, INC.              )
6
7  WITNESS:  Victor Tiscareno
8  PAGES:    1 through 180
9  PLACE:    Securities and Exchange Commission
10           Byron G. Rogers Federal Building
11           1961 Stout Street
12           Denver, Colorado 80294
13 DATE:     Wednesday, December 3, 2014
14
15    The above-entitled matter came on for hearing,
16 pursuant to notice, at 9:10 a.m.
17
18
19
20
21
22
23
24           Diversified Reporting Services, Inc.
25                  (202) 467-9200

Page 2

1  APPEARANCES:
2
3  On behalf of the Securities and Exchange Commission:
4      JENNIFER OSTROM, Senior Counsel
5      U.S. Securities and Exchange Commission
6      Denver Regional Office
7      Byron G. Rogers Federal Building
8      1961 Stout Street, Suite 1700
9      Denver, Colorado 80294
10     Telephone:  (303) 844-1049
11     E-mail:  ostromj@sec.gov
12
13     KURT L. GOTTSCHALL, Staff Attorney
14     U.S. Securities and Exchange Commission
15     Denver Regional Office
16     Byron G. Rogers Federal Building
17     1961 Stout Street, Suite 1700
18     Denver, Colorado 80294
19     Telephone:  (303) 844-1049
20     E-mail:  gottschallk@sec.gov
21
22
23
24
25

Page 3

1  APPEARANCES (continued):
2
3  On behalf of the Witness:
4      JOHN R. ELTRINGHAM, ESQ
5      Martin, Davis, PLLC
6      1200 Westlake Avenue North
7      Suite 604
8      Seattle, Washington 98109
9      Telephone:  (206) 829-8619
10     E-mail:  jeltringham@martindavislaw.com
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 4

1                C O N T E N T S
2  WITNESS:                                   PAGE
3  Victor Tiscareno                              5
4
5  EXHIBITS    DESCRIPTION                 IDENTIFIED
6  1       Commission Supplemental              7
7          Information Form
8  2       Copy of the Subpoena                 7
9  3       Bates numbered GA3660-3662, Apple,  52
10         Inc. Confidentiality Agreement,
11         dated July 1, 2009
12 4       Bates numbered SEC1-SEC5, an        108
13         e-mail dated August 30, 2013
14 5       Bates GA140, a letter dated March   151
15         15, 2010
16 6       Bates numbered GA487-634, private   155
17         placement memorandum for GenAudio,
18         dated March 15, 2010
19 7       Bates GA5351-5353, letter to        163
20         shareholders of GenAudio,
21         August 1st of 2010, from
22         Mr. Mahabub
23 8       Bates GA3572-3574, chain of         171
24         e-mails to Mr. Mahabub to
25         Ron Isaac

Page 5

1       P R O C E E D I N G S
2       MS. OSTROM:  Let's go on the record at
3  9:10 a.m., on December 3, 2014.  Would you
4  please raise your right hand?  Do you swear to tell
5  the truth, the whole truth, and nothing but the
6  truth?
7       THE WITNESS:  I do.
8  Whereupon,
9            VICTOR M. TISCARENO
10 was called as a witness and, having been first duly
11 sworn, was examined and testified as follows:
12            EXAMINATION
13      BY MS. OSTROM:
14   Q    And would you please state and spell your
15 full name for the record?
16   A    Victor Manuel Tiscareno, V-I-C-T-O-R,
17 M-A-N-U-E-L, Tiscareno, T-I-S-C-A-R-E-N-O.
18   Q    And my name is Jennifer Ostrom, and with me
19 today is Kurt Gottschall.  We are officers of the
20 Commission for purposes of this proceeding.  And
21 this is an investigation by the United States
22 Securities and Exchange Commission in GenAudio,
23 Inc., to determine whether there have been
24 violations of certain provisions of the federal
25 securities laws.

Page 6

1       However, the facts developed in
2  this investigation might constitute violations of
3  other federal or state civil or criminal laws.
4       And prior to the opening of the record, you
5  were provided with a copy of the formal order of
6  investigation in this matter and it will be
7  available for your examination during the course of
8  this proceeding.
9       And, Mr. Tiscareno, have you had an
10 opportunity to review the formal order?
11   A    This one here?
12   Q    Yes.
13   A    Briefly, yes.
14   Q    Do you want to read it again?
15   A    Well, we just went over -- I mean, this is
16 the first time I've seen it.
17   Q    Yes.  Are you okay?  You've seen it?
18   A    Yes.
19      MR. ELTRINGHAM:  Yes.
20      BY MS. OSTROM:
21   Q    And then also prior to the opening of the
22 record you were provided with a copy of the
23 Commission Supplemental Information Form, and a
24 copy of that notice has now been marked as Exhibit
25 Number 1.

Page 7

1       (SEC Exhibit No. 1 was marked
2       for identification.)
3       MS. OSTROM:
4   Q    And, Mr. Tiscareno, have you had the
5  opportunity to read Exhibit Number 1?
6   A    Yes.
7   Q    And do you have any questions concerning
8  the notice?
9   A    No.
10  Q    And, Mr. Tiscareno, are you represented by
11 counsel today?
12  A    Yes, I am.
13      MS. OSTROM:  And would counsel please
14 identify himself for the record?
15      MR. ELTRINGHAM:  John Eltringham.
16      MS. OSTROM:  Could you please spell your
17 last name for the record?
18      MR. ELTRINGHAM:  Sure.  E-L-T-R-I-N-G-H-A-M.
19      MS. OSTROM:  And could you tell us what
20 firm you're with and an address?
21      MR. ELTRINGHAM:  Of counsel at the firm
22 Martin Davis, 1200 Westlake Avenue North, Suite
23 604, Seattle, Washington 98109.
24      MS. OSTROM:  Thank you.  And Mr. Eltringham,
25 are you representing counsel for Mr. Tiscareno

Page 8

1  today?
2       MR. ELTRINGHAM:  I am, yes.
3       MS. OSTROM:  Thank you.
4       BY MS. OSTROM:
5   Q    And if you want to go off the record,
6  Mr. Tiscareno, please advise me that you want to,
7  and I'll decide at that time whether to ask the
8  reporter to do so.  She won't go off the record at
9  your request or your counsel's, but only at our
10 request.  So if you need to speak with your counsel
11 or take a break just make sure you tell me.  Okay?
12  A    Sure.
13  Q    And then the other thing is I'm going to be
14 asking a lot of questions today.  And if you don't
15 understand something or don't hear something that I
16 ask, please tell me.  I'll rephrase it, repeat it,
17 whatever we need, to make sure we understand each
18 other.
19      And the other thing is, please allow me to
20 ask the question completely before you answer so we
21 don't talk over each other for the record, and then
22 also if you could please speak audibly when you
23 answer, saying yes or no with an answer, rather
24 than a nod of the head so that again it shows up on
25 the transcript.  Okay?

Page 105

1  Apple had purchased us.
2      And I said: Purchased us? What are you --
3  what are you talking about? Well, yeah. You know,
4  so he kind of explained. Yeah, that, you know, we
5  were -- we were going to get purchased and -- and
6  the deal fell through. And I said: Who told you
7  that? Well, Jerry did or, you know, that that's,
8  if I recall, he said Jerry. Or, you know, if he
9  didn't, it was still implied that that's who it
10 was.
11     It was just -- and so here's a guy that I
12 just met, and I couldn't help but straighten out
13 somebody on a misconception. I said: Wow, no, no.
14 That never happened. It just -- it just didn't go
15 that way. And I thought that's kind of strange.
16 Where did he get that story?
17     MR. GOTTSCHALL: How did Mr. Mattos react
18 when you told him that's not what had happened?
19     THE WITNESS: He was -- he was -- he was --
20 he acted surprised, honestly.
21     MR. GOTTSCHALL: Did the conversation
22 continue?
23     THE WITNESS: He tried to explain that the
24 company was worth, you know, a billion dollars. I
25 said, a billion dollars? Yeah, but that's how it

Page 106

1  actually happened. A billion dollars? How do you
2  come up with a billion dollars? I think the
3  thing's worth at best five million, maybe. Maybe
4  in the condition the company's in. No revenue in
5  the time it's been in business, no forward moving
6  revenue. And I said: Got to be -- got to just try
7  to unload this thing quickly.
8      It was becoming evident, here's a new guy.
9  I'd only been out on a couple of trips. Okay?
10 Didn't know anything about the company really.
11 Jerry's a nice guy, you know, outgoing, colorful,
12 engaging. But anyway, the -- back to the
13 conversation is that, you know, he -- he went up to
14 the military thing. And then if the Apple thing
15 had gone, it'd been, you know, no, that never
16 happened. Well, I think he said, yes, it did. I
17 said, no, it didn't happen.
18     Not -- I set up all those meetings and I
19 wasn't -- oh, and I think -- I think he mentioned,
20 and I'm not 100 percent sure, but somebody along
21 the way has mentioned that -- that -- that Steve
22 Jobs was at the meeting. No, there was no Steve
23 there at the meeting. I said -- I said, Now, that
24 doesn't mean he didn't contact somebody else. It
25 wasn't at any of the meetings I did.

Page 107

1      And I'll tell you after that, I just kind
2  of let it -- well, I thought the man had it wrong.
3  That's all. I didn't know anything else about the
4  company. And he acted surprised and I thought, oh,
5  okay, I just straightened out a guy. Maybe I --
6  you know, a guy I just met. But it was just so --
7  it was so way out in left field. I go, no, you
8  better straighten up that story.
9      BY MS. OSTROM:
10 Q  Do you remember when the Denver meeting was
11 in relation to the other two meetings?
12 A  They were kind of spaced out about a month
13 apart from each other it seemed.
14 Q  Do you know if Denver was the last one, the
15 first one? Do you remember?
16 A  I think it was the second one.
17 Q  Okay.
18 A  Because he did Seattle, Denver, St. Louis.
19 That's the way I remember.
20 Q  Okay.
21     MR. GOTTSCHALL: In that conversation you
22 had with Mr. Mattos in Denver, did he indicate to
23 you why he thought the potential Apple acquisition
24 had GenAudio valued at a billion dollars?
25     THE WITNESS: Again, I'm trying to

Page 108

1  recollect the whole, you know, step-by-step here
2  conversation. But it was basically GenAudio was
3  worth a lot of money because it had all these
4  potential fields of use, military, theatrical,
5  consumer electronics. I mean, automotive.
6      I mean, it was like a litany or a list of
7  -- of uses. And with all these -- all these fields
8  of use, that there's got to be, you know, $100
9  million worth of business in each one of these with
10 the same piece of software.
11     And somewhere in that conversation, I don't
12 know the beginning, the end, the middle, that's --
13 they said -- he said something about the Apple
14 acquisition or Apple -- if Apple had purchased us
15 or bought us, or -- and I just -- I just --
16 unfortunately, my -- I just instinctively tried to
17 straighten out the story.
18         (SEC Exhibit No. 4 was marked
19         for identification.)
20     BY MS. OSTROM:
21 Q  So, Mr. Tiscareno, if you could look at
22 Exhibit Number 4 and identify that for the record.
23 And you can go ahead and start looking at that.
24 Exhibit Number 4 is Bates numbered SEC1 through
25 SEC5. And we'll go through this, but I'll identify

Page 109

1  it for the record that on the top of the first page
2  of Exhibit Number 4, is an e-mail from Victor
3  Tiscareno dated August 30th of 2013.
4      A   Uh-huh.
5      Q   Let me identify it without you saying it
6  and then I'll ask you.  Okay?  So the e-mail is
7  from Victor Tiscareno dated October 30th of 2013 to
8  Dell Skluzak which is on your list.
9          And, Mr. Tiscareno, have you had a chance
10 to look at Exhibit Number 4?
11     A   I'm going go to reread what I wrote.
12     Q   Yes.  Please do.  Please do.
13     A   Because I couldn't find my copy after we
14 had our discussion.
15         MR. GOTTSCHALL:  And actually, we'd
16 encourage you to read the entirety of Exhibit 4.
17         MS. OSTROM:  Yes.
18         MR. GOTTSCHALL:  I'll just note for the
19 record that it appears to be -- to start with an
20 e-mail from Mr. Mahabub to various folks at
21 GenAudio in an e-mail dated May 6th of 2010.
22 That -- and that that e-mail was forwarded to you
23 by Mr. Skluzak in October of 2013, and that then
24 you replied to Mr. Skluzak.  So we'd encourage you
25 to read all three e-mails, because we're going to,

Page 110

1  as you could imagine, go through this in some
2  detail.
3          THE WITNESS:  Well, I've read this a number
4  of times and the -- you know, this stuff here at
5  the bottom is -- is -- is his letter to his team,
6  so I -- you can go ahead and start.
7          BY MS. OSTROM:
8      Q   So you've read it?
9      A   At some point I've read it, yeah.  If
10 you're going to go line by line, I guess I'll
11 revisit that.
12     Q   Okay.  Now, did you receive this e-mail
13 from Dell Skluzak?  And what I'm referring to is
14 where on the middle of the first page of Exhibit
15 Number 4, it says, on October 30, 2013, Dell
16 Skluzak wrote, "Vic found an old case of GenAudio
17 files.  Can you comment on the e-mail below?
18 Thanks, Dell."
19         Did you receive that from Mr. Skluzak?
20     A   Yes.
21     Q   Do you know Mr. Skluzak?
22     A   I know him.  I know him mostly by phone
23 calls I have, so I've met him personally twice for
24 sure and extended, you know, time.  And -- and
25 maybe once here at the Denver meeting in a

Page 111

1  passing --
2      Q   The shareholders --
3      A   -- interaction.
4      Q   The shareholders meeting we were just
5  talking about?
6      A   Yes.
7      Q   Okay.
8      A   But it was in maybe a passing handshake or
9  something, interaction.
10     Q   How did -- how did Mr. Skluzak get your
11 e-mail address to forward this e-mail to you?
12     A   Well, at some point, you know, there was --
13 I guess there was some -- again, I was not involved
14 with any of what was going on at GenAudio, and
15 apparently it was a big turmoil there.  And at --
16 at some point Dell Skluzak got into a position with
17 the company of being president, at least being
18 president of the company.  And so he reached out,
19 was reaching out to all the previous -- all the
20 business development folks.
21         And -- and so one of them was me.  I -- you
22 know, I don't know if he got my phone number from
23 somebody or e-mail or whatever.  But he finally
24 introduced himself, hi, I'm so and so, a friendly
25 introduction.  And he was just -- he was just

Page 112

1  trying to right the ship and trying to put his team
2  together.  He was president of the company at that
3  moment.  And he -- he reached out.  Gave me a call,
4  and he started to tell me about, you know, all the
5  stuff that was going on.  Wow, you know, that was
6  my reaction.
7      Q   Were you talking about what was going on
8  was the -- the -- the fight for control of the
9  company?
10     A   Yes.
11     Q   Okay.
12         MR. GOTTSCHALL:  What was your
13 understanding as to why Mr. Skluzak was reaching
14 out to you as a former business consultant of
15 GenAudio?
16         THE WITNESS:  He was just trying to find
17 out who the players were before the -- you know, he
18 knew I was -- put together a couple deals.  And he
19 also really wanted to contact me, ask me what I
20 thought about Michael Franzi because he thought
21 Michael Franzi would make a good CEO.  What do you
22 think of Michael?  I mean, it was just -- it was
23 very pleasant conversation and not --
24         BY MS. OSTROM:
25     Q   Did Mr. Skluzak tell you he was going to

Page 177

1  Q  And has he spoken to you since then about
2  the investigation at any point?
3  A  Absolutely not.
4  Q  And other than your wife and your counsel,
5  have you spoken with anyone regarding the fact that
6  you are appearing here today?
7  A  No.
8  Q  And have you -- do you know of anyone else
9  who has been subpoenaed or testified in this
10 investigation?
11 A  No.
12 Q  And, Mr. Tiscareno, we have no further
13 questions at this time.  We may, however, call you
14 again to testify in this investigation and should
15 this be necessary we will contact you through your
16 counsel.  And is there anything that you would wish
17 to clarify or add to the statements you have made
18 today?
19 A  Circle back to my e-mails, I gave you my
20 main e-mail.  I have some very, very old accounts I
21 didn't think were important.
22 Q  You mean, your actual e-mail addresses?
23 A  Yeah.
24 Q  That's fine.  If we need those, we'll
25 contact you.

Page 178

1  A  Okay.
2  Q  Don't worry about -- that's fine.
3  A  I can't think of anything else unless you
4  have other questions.
5      MS. OSTROM:  No, I think that's it.  So we
6  will go off the record at 2:40 p.m., on December 3rd
7  of 2014.
8      (Whereupon, at 2:40 p.m. the proceedings
9  concluded.)
10         * * * * *

Page 179

1  REPORTER'S CERTIFICATE
2
3
4  I, Theresa L. Mendez, reporter, hereby certify that the
5  foregoing transcript of 180 pages is a complete, true and
6  accurate transcript of the testimony indicated, held on
7  December 3, 2014, at Denver, Colorado. in the matter of:
8  Genaudio, Inc..
9
10
11 I further certify that this proceeding was recorded by me,
12 and that the foregoing transcript has been prepared under my
13 direction.
14
15
16
17         Date: _____
18         Official Reporter: _____
19         Diversified Reporting Services, Inc.

Page 180

1  PROOFREADER'S CERTIFICATE
2
3  In the Matter of:   GENAUDIO, INC.
4  Witness:       VICTOR TISCARENO
5  File Number:   D-03450-A
6  Date:          DECEMBER 3, 2014
7  Location:      DENVER, CO
8
9
10     This is to certify that I, Beth Roots,
11 (the undersigned), do hereby swear and affirm
12 that the attached proceedings before the U.S.
13 Securities and Exchange Commission were held
14 according to the record and that this is the
15 original, complete, true and accurate transcript
16 that has been compared to the reporting or recording
17 accomplished at the hearing.
18
19
20
21 _____    _____
22 (Proofreader's Name)      (Date)

Page 179

1                    REPORTER'S CERTIFICATE
2
3
4    I, Theresa L. Mendez, reporter, hereby certify that the
5    foregoing transcript of 180 pages is a complete, true and
6    accurate transcript of the testimony indicated, held on
7    December 3, 2014, at Denver, Colorado. in the matter of:
8    Genaudio, Inc..
9
10
11   I further certify that this proceeding was recorded by me,
12   and that the foregoing transcript has been prepared under my
13   direction.
14
15
16
17                          Date: 12/9/14
18              Official Reporter: [signature]
19              Diversified Reporting Services, Inc.
20
21
22
23
24
25

Page 180

1   PROOFREADER'S CERTIFICATE
2
3   In the Matter of:    GENAUDIO, INC.
4   Witness:             VICTOR TISCARENO
5   File Number:         D-03450-A
6   Date:                DECEMBER 3, 2014
7   Location:            DENVER, CO
8
9
10        This is to certify that I, Beth Roots,
11   (the undersigned), do hereby swear and affirm
12   that the attached proceedings before the U.S.
13   Securities and Exchange Commission were held
14   according to the record and that this is the
15   original, complete, true and accurate transcript
16   that has been compared to the reporting or recording
17   accomplished at the hearing.
18
19
20
21   _____          12/9/14
22   (Proofreader's Name)           (Date)
23
24
25

THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION

In the Matter of:           )
                            )   File No. D-03450-A
GENAUDIO, INC.              )

WITNESS:    Victor Tiscareno
PAGES:      181 through 254
PLACE:      Martin Davis, PLLC
            1200 Westlake Avenue North, Suite 604
            Seattle, WA 98109
DATE:       Wednesday, April 29, 2015

   The above entitled matter came on for hearing, pursuant to notice, at 1:05 p.m.




                Diversified Reporting Services, Inc.
                        (202) 467 9200

Page 182

1  APPEARANCES:
2
3  On behalf of the Securities and Exchange Commission:
4      JENNIFER OSTROM, ESQ. (Via telephone)
5      Securities and Exchange Commission
6      1801 California Street
7      Suite 4800
8      Denver, Colorado
9      (303) 844-1047
10
11 On behalf of the Witness:
12     JOHN R. ELTRINGHAM, ESQ.
13     MartinDavis, PLLC
14     1200 Westlake Avenue North, Suite 604
15     Seattle, Washington 98109
16     (206) 829-8619
17
18
19
20
21
22
23
24
25

Page 183

1              C O N T E N T S
2
3  WITNESS:                    EXAMINATION
4  Victor Tiscareno                185
5
6  EXHIBITS:   DESCRIPTION         IDENTIFIED
7   125        Email string        199
8   126        Email string        219
9   127        Email string        224
10  128        Email string        227
11  129        Email string        238
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 184

1              P R O C E E D I N G S
2       MS. OSTROM:  Let's go on the record at
3  1:05 p.m. on April 29th of 2015.  My name is
4  Jennifer Ostrom.  And I am an officer of the
5  United States Securities and Exchange Commission
6  for purposes of this proceeding.  We are today
7  resuming the examination of Victor Tiscareno
8  which was adjourned on December 3rd of 2014.
9       Would counsel please identify himself.
10      MR. ELTRINGHAM:  Good afternoon.
11 John R. Eltringham, E-l-t-r-i-n-g-h-a-m, attorney
12 for Mr. Tiscareno.
13      MS. OSTROM:  The testimony today is
14 pursuant to a Commission subpoena, which has been
15 previously marked as Exhibit Number 2.
16      And, Mr. Tiscareno, do you understand
17 that you remain under oath?
18      MR. TISCARENO:  Yes.
19      MS. OSTROM:  Let the record reflect
20 that a copy of the formal order of investigation
21 in this matter will be available for examination
22 during the course of this proceeding today.
23 Whereupon,
24          VICTOR TISCARENO
25 was recalled as a witness and, having been

Page 185

1  previously duly sworn, was examined and testified
2  further as follows:
3              EXAMINATION
4      BY MS. OSTROM:
5      Q   And, Mr. Tiscareno, did provide to your
6  counsel some documents to produce to us?
7      A   Yes.
8      Q   And could you please describe the
9  documents that you produced to us, just in
10 general?
11     A   They were copies of my emails I
12 received while working for Apple.
13     Q   And where were these documents located?
14     A   They were on an archive hard disk that
15 I had, external archive.
16     Q   And did you withhold any documents from
17 us?
18     A   No.
19     Q   Jerry Mahabub testified that from 2009
20 through when you left Apple in February of 2011
21 you and he had almost daily phone calls; is that
22 accurate?
23     A   I don't know about daily.  Often.
24     Q   Okay.  More than weekly?
25     A   I would say weekly would be fair.

2 (Pages 182 to 185)

Page 186

1  Q  Okay.
2  A  Would be fair.
3  Q  Okay. If you could look at what has
4  already been marked as Exhibit Number 119.
5  A  Here it is right here.
6     MR. ELTRINGHAM: Yes. Mr. Tiscareno
7  has it in his hand.
8     BY MS. OSTROM:
9  Q  And, Mr. Tiscareno, did you produce
10 Exhibit 119 to the staff?
11 A  Yes.
12 Q  And did you receive this email from
13 Jerry Mahabub on or about October 19th of 2009?
14 A  Yes.
15 Q  And then keeping that Exhibit Number
16 119 in front of you. Could you please look at
17 Exhibit Number 120.
18    MR. ELTRINGHAM: Yes, he has it.
19    BY MS. OSTROM:
20 Q  And, Mr. Tiscareno, what I wanted to
21 tell you is that a different version of the email
22 in Exhibit Number 119 was produced to us by Jim
23 Mattos, a GenAudio employee.
24 A  Yes.
25 Q  I'm going to point out some of the

Page 187

1  differences in the email that you produced and
2  the one produced by Mr. Mattos and ask you some
3  questions about those differences. If you see
4  anything else in the emails that you want to
5  comment on, and that I don't ask you about,
6  please do so.
7     If you look at page three of Exhibit
8  Number 120.
9  A  I'm there.
10 Q  Did you receive this email beginning on
11 page three, which is Bates Number GA6848, of
12 Exhibit Number 120 from Jerry Mahabub?
13 A  No.
14 Q  Did you authorize Jerry Mahabub to
15 change the email that he sent you before
16 forwarding it on to his employees?
17 A  No.
18 Q  If you looked at Exhibit Number 120 and
19 in comparison to Exhibit Number 119. On Exhibit
20 Number 120 the to line shows that the email is to
21 Victor Tiscareno, Michael Hailey, Ronald Isaac,
22 Timothy Cook and Phillip Schiller. Is it
23 accurate that the email, the genuine email, that
24 you produced to us it was only sent to Victor
25 Tiscareno, Michael Hailey and Ronald Isaac?

Page 188

1  A  That's correct.
2  Q  And then on -- continuing on Exhibit
3  Number 120, there's a line that says, hi Michael,
4  Phil Ron, Tim and Vic. And the genuine email,
5  Exhibit Number 119, says hi Michael, Ron and Vic.
6  Is that accurate that it should hi Michael, Ron
7  and Vic?
8  A  That's correct.
9  Q  Okay. And then the next line shows --
10 it says, Tim, great to meet you on the phone the
11 other day. Glad you enjoyed the demo and we are
12 anxious to move forward to the next step. And
13 these are two sentences that are included in
14 Exhibit Number 120, but not in Exhibit Number
15 119.
16    Is it correct that you never saw those
17 lines in any email to you?
18 A  That is correct.
19 Q  Did you ever see any emails from Mr.
20 Jerry Mahabub to Tim Cook?
21 A  I never saw. No.
22 Q  Okay. And then if you go down two more
23 lines it says Vic, Phil, Michael, do you see that
24 on Exhibit 120?
25 A  Yes.

Page 189

1  Q  And then on Exhibit Number 119, which
2  you produced to us, it only says Vic. Is that
3  the accurate email?
4  A  Yes.
5  Q  And on Exhibit Number 119 that you
6  produced to us it says, Vic, will call you
7  tomorrow. Is that the extent of the email that
8  you received from Mr. Mahabub as to that line?
9  A  Yes.
10 Q  Okay. And on Exhibit Number 120 it
11 continues after will call you tomorrow, it says
12 morning at 9:00 a.m. PST for the conference call
13 with the three of you. Was there ever a
14 conference call with yourself, Phil Schiller and
15 Michael Hailey and Mr. Mahabub?
16 A  No.
17 Q  Did you ever see any emails from Mr.
18 Mahabub to Phil Schiller?
19 A  No.
20 Q  Who is Tim Cook?
21 A  Tim Cook then or now?
22 Q  Give me both if you don't mind.
23 A  He was chief operating officer of Apple
24 at that time.
25 Q  Yes.

```
                                    Page 230                                              Page 232
 1   So, that's -- that's the way I read this.         1   not the one that's in Exhibit Number 64?
 2       Q   Okay.                                     2       A   Yes.  If I sent it to you, that's --
 3       A   And it's -- yeah.                         3   that's correct.
 4       Q   And then in the last email on Exhibit     4       Q   Okay.  And then the one that's actually
 5   128 is an email from Mr. Mahabub to yourself.     5   got a lot more differences in it is the one
 6   Did you receive this email from Mr. Mahabub?      6   directly above that.  The one that you sent.  And
 7       A   Is this on the front page?  What page     7   on page 1159 of Exhibit Number 128 there is the
 8   is it on?                                         8   email that you sent to Mr. Mahabub where it
 9       Q   Yes.  Exhibit Number 128, the very        9   stops -- where it starts, it says thank you for
10   page.                                            10   your thoughtful email.
11       A   Yes.  Yes.                               11           Do you see that one?
12       Q   Okay.  And then if could you look at    12       A   I do see that.
13   Exhibit Number 64, keeping Exhibit 128 in front 13       Q   Okay.  If you look at Bates Number JM
14   of you.                                         14   2161 of Exhibit Number 64.
15       A   Okay.  Got it.                          15       A   Yes.
16       Q   Exhibit Number 64 is a different       16       Q   The very bottom.
17   version of the email than Exhibit Number 128 that 17     A   Yes.
18   was produced to us by Mr. Mattos of GenAudio.   18       Q   You will see the email.
19   And one thing I was going to make sure you see is 19     A   Yes.
20   starting on 2162, JM 2162.                      20       Q   And this one starts out and says thank
21       A   Yes.                                    21   you for your thorough email.  The word thoughtful
22       Q   That is the beginning of the first     22   was changed to thorough.  And if you look at
23   email in Exhibit 128.  And, to my knowledge, the 23   that, and looking at the entire email that's
24   only difference between the emails occurs on page 24  purportedly from you, is it correct that that was
25   JM 2166.                                        25   actually modified from the email that you really

                                    Page 231                                              Page 233
 1       A   Okay.                                     1   did send to Mr. Mahabub?
 2       Q   And if you look at that last full         2       A   Yes, it was modified.
 3   paragraph.  I know it's hard for these -- for you 3       Q   Okay.  Did you authorize Mr. Mahabub to
 4   to read these.  It says perhaps you should        4   change the email that you sent to him before
 5   forward this email to directly to Steve, and that 5   forwarding it on to his employees?
 6   our thoughts on the Pixar/Dolby gig is simply not 6       A   No.
 7   the right way to go.                              7       Q   And looking at the modified email, the
 8           Do you see that?                          8   second page of it, JM 2162.  And in particular
 9       A   I see that.                               9   where it really starts becoming something
10       Q   Okay.  And if you look at Exhibit      10   different is the fifth line down, after through
11   Number 128, and it's the Bates Number that's   11   my two-channel earphones.  Do you see that?
12   1161?                                          12       A   I do.
13       A   Okay.                                  13       Q   Okay.  It says and have forwarded this
14       Q   And that sentence, which is the genuine 14  to the rest of the senior team.  Was there any
15   email, says perhaps you should let Steve Jobs  15   basis in fact for that statement?
16   know about our professional audio tools, and that 16     A   Okay.  So, let me find it on -- this is
17   the Pixar/Dolby gig is simply not the right way 17   on --
18   to go.                                         18       Q   Yes.
19       A   I see that.                            19       A   -- 2162?
20       Q   And my belief is, as -- as -- as I look 20      Q   Yes.
21   through this, is that's the only difference    21       A   All right.  I see where I've -- I've
22   between the two emails.  But looking at those two 22  written that on my email.  Okay.  I see this.
23   emails, is it correct that the one that you    23   Okay. I see it.
24   actually received from Mr. Mahabub is the one  24       Q   Right.  You said that you had -- you
25   that you produced to us in Exhibit Number 128 and 25  had listened to it.
```

14 (Pages 230 to 233)

Page 238

```
 1  from.
 2      Q    Then if you could have the court
 3  reporter handed 1218 through 1221 of Mr.
 4  Tiscareno's production and we'll mark it as
 5  Exhibit 129.
 6              (SEC Exhibit No. 129 was
 7              marked for identification.)
 8           COURT REPORTER: Okay. He's got it.
 9           MS. OSTROM: Okay. And I'm going to go
10  ahead and I'm going to identify this for -- this
11  for the record. It's going to take a little bit
12  of time because it's a lengthy -- there's several
13  emails back and forth. Exhibit Number 129 is
14  Bates Numbered SEC-TiscarenoV-E1218 through 1221.
15  The first email in this chain begins on page 1220
16  at the bottom. It's on May 5th of 2010 from Jerry
17  Mahabub to Vic. Then on the same page on June
18  30th of 2010 Victor Tiscareno sent a message to
19  Jerry Mahabub.
20           And then on the previous page, 1219,
21  on June 30th 2010, Mr. Mahabub is writing to Vic.
22  Above that on July 1st of 2010 Victor Tiscareno
23  sends a message to Mr. Mahabub. Then on July 1st,
24  2010, Jerry Mahabub is writing to Vic.
25           And then on the front page of Exhibit
```

Page 239

```
 1  Number 129, which is Bates Numbered 1218, there
 2  is an email on July 2nd of 2010 from Victor
 3  Tiscareno to Jerry Mahabub. And then at the top
 4  it's an email from Jerry Mahabub to Victor
 5  Tiscareno dated July 2nd of 2010, re: technical
 6  presentations.
 7           BY MS. OSTROM:
 8      Q    And, Mr. Tiscareno, please feel free to
 9  look at this entire chain of emails, but my first
10  question is did you produce this to the staff?
11      A    Yes. I believe I sent this to you.
12      Q    Okay. And did you receive and send the
13  various emails that are here in Exhibit 129?
14           And do you remember the circumstances
15  under which Mr. Mahabub first met Barry Corlett?
16      A    I'm going to say it was probably at
17  the -- close to the very beginning. We -- I --
18  if I recall the first emails, I think it started
19  in January 2007, based on research. And at some
20  point in the very -- or we had an introduction
21  with Barry Corlett.
22      Q    Okay.
23      A    I invited him --
24      Q    Okay.
25      A    -- to meet Jerry.
```

Page 240

```
 1      Q    Gotcha.
 2      A    So, I'm not sure of exact dates, but
 3  yes.
 4      Q    Okay. That's -- that's fine. So, he
 5  had -- he had met him quite some time before
 6  2010?
 7      A    Yes.
 8      Q    Okay.
 9      A    Probably.
10      Q    And if you could keep Exhibit 129 in
11  front of you, and also then if you could look at
12  Exhibit Number 90, please.
13      A    All right.
14      Q    And if you could look on Exhibit Number
15  90, the very last page, which is Bates Numbered
16  JM 2518.
17      A    Yes.
18      Q    And if could you compare that bottom
19  email to the one on page 1220 of Exhibit 129.
20  And then tell me when you've looked at --
21      A    1220?
22      Q    Yeah. 1220.
23      A    Yeah. Okay. I'm -- I'm there with you
24  now. I'm with you.
25      Q    So, have you had your chance to look at
```

Page 241

```
 1  both of them?
 2      A    Yes.
 3           MR. ELTRINGHAM: Yes, he has.
 4      A    Yes.
 5      Q    Okay. Okay. Then, Mr. Tiscareno, just
 6  so you know a different version of the email than
 7  Exhibit Number 129 was produced to us by Mr.
 8  Mattos of GenAudio, and those are in Exhibit
 9  Number 90.
10      A    Uh-huh.
11      Q    And if look at the email on page 2518
12  of Exhibit Number 90, this purports to be an
13  email from Victor Tiscareno to Jerry Mahabub, and
14  it says I have a meeting with Steve and our
15  internal acoustics R&D expert tomorrow. Is the
16  latest and greatest prezo that I have to date? I
17  think it is. How did the Disney meeting go?
18           Was that modified from what your actual
19  email was?
20      A    Yes. It was modified.
21      Q    And you never sent that email; correct?
22      A    I never sent that email.
23      Q    Did you authorize Jerry Mahabub to
24  change the email that you sent to him before
25  forwarding it on to his employees?
```

Page 250

1   talk to Mr. Bobak?
2       A   I don't recall him ever being on an
3   email thread, but that -- that's -- I --
4       Q   And -- and -- and that's fine, because
5   that was going to be my next question. But did
6   you -- did you ever talk to him in that 2010/2011
7   time period?
8       A   No.
9       Q   Okay. And since we last spoke, Mr.
10  Tiscareno, have you spoken with anyone regarding
11  this investigation?
12      A   Yes.
13      Q   And who have you spoken with other than
14  your counsel, obviously?
15      A   I have reached out to Michael Franze to
16  see if he had any emails. Because I was looking
17  for emails. And that's -- and I've also chatted
18  with Michael Henein if he had any information.
19  But, you know, again I was scrambling for -- I --
20  I didn't have any emails, I didn't think.
21      Q   And did -- was Mr. Henein, did he talk
22  to you about?
23      A   Well, it was -- it really was just
24  that -- that he had heard from Jerry. But
25  that -- that, you know there was some issues

Page 251

1   that had developed.
2       Q   Did he say in any detail what those
3   issues were?
4       A   Well, that -- that -- that, apparently,
5   there was some investigation of this -- on this?
6       Q   Okay. And did Mr. Henein give you
7   anything?
8       A   No, he didn't actually.
9       Q   Okay.
10      A   I mean not that -- you know, that
11  wasn't -- you -- you might appreciate this,
12  that -- that, you know, at -- at -- when GenAudio
13  had gone -- apparently, had some issues with
14  their board, then Mr. Skluzak was reaching out to
15  all parties. And then as far as this goes, you
16  know, this is before we -- anyone knew that --
17  you know, anyway we just - - the -- the -- the
18  discussion never went down to details, I'll say
19  it that way.
20      Q   Okay. And prior to your seeing the
21  emails that Mr. Mattos produced to us from
22  GenAudio, did you know that Mr. Mahabub had
23  modified so many of your emails?
24      A   I had no idea.
25      Q   And, Mr. Tiscareno, at this time is

Page 252

1   there anything that you want to add to what
2   you've already said today or clarify?
3       A   Actually, you know, it's a
4   disappointment really. That's -- that's all I can
5   add.
6       Q   What in particular are you referring
7   to?
8       A   Well, I'm disappointed that -- that
9   this - - this was done -- well, that -- that so
10  many people are involved in something that, you
11  know, that -- I don't know what to say. There
12  was this undercurrent that was going on, and
13  unbeknownst to probably a lot of people and --
14  and here I am learning about this with -- with
15  these emails. I had no idea.
16          MS. OSTROM: And, Mr. Tiscareno we have
17  no further questions at this time. We may,
18  however, call you again to testify in this
19  investigation. And should this be necessary we
20  will contact you through your counsel.
21          And we will go off the record at
22  2:37 p.m. on April 29th of 2015.
23          (Whereupon, at 2:37 p.m., the
24  examination was concluded.)
25              * * * * *

Page 253

1                   PROOFREADER'S CERTIFICATE
2
3   In the Matter of:   GENAUDIO, INC.
4   Witness:        Victor Tiscareno
5   File Number:    D-03450-A
6   Date:           Wednesday, April 29, 2015
7   Location:       Seattle, WA 98109
8
9       This is to certify that I, Donna S. Raya,
10  (the undersigned), do hereby swear and affirm that
11  the attached proceedings before the U.S. Securities
12  and Exchange Commission were held according to the
13  record and that this is the original, complete, true
14  and accurate transcript that has been compared to the
15  reporting or recording accomplished at the hearing.
16
17  _____     _____
18  (Proofreader's Name)        (Date)

19 (Pages 250 to 253)


```
                                                          Page 253
```

1                    PROOFREADER'S CERTIFICATE

2

3    In the Matter of:    GENAUDIO, INC.

4    Witness:             Victor Tiscareno

5    File Number:         D-03450-A

6    Date:                Wednesday, April 29, 2015

7    Location:            Seattle, WA 98109

8

9             This is to certify that I, Donna S. Raya,

10   (the undersigned), do hereby swear and affirm that

11   the attached proceedings before the U.S. Securities

12   and Exchange Commission were held according to the

13   record and that this is the original, complete, true

14   and accurate transcript that has been compared to the

15   reporting or recording accomplished at the hearing.

16

17   _____        _____5/12/15_____

18   (Proofreader's Name)            (Date)

19

20

21

22

23

24

25

```
 1                         CERTIFICATE
 2
 3        I,        J.P.         , do hereby certify that
 4   pursuant to the Rules of Civil Procedure, the witness
 5   named herein appeared before me at the time and place
 6   set forth in the caption herein; that at the said
 7   time and place, I reported all testimony adduced and
 8   other oral proceedings had in the foregoing matter;
 9   and that the foregoing transcript pages constitute a
10   full, true and correct record of such testimony
11   adduced and oral proceeding had and of the whole
12   thereof.
13
14        IN WITNESS HEREOF, I have hereunto set my hand
15   this    6th    day of        May        ,  2015 .
16
17
18
19        [signature: JP]
20   _____
21        J.P
22
23
24
25
```