# EXHIBIT 245

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 1 | GenAudio is a Colorado corporation with its principal place of business in Centennial, Colorado and it engages in the development and marketing of software that creates three-dimensional audio, which it calls "AstoundSound." *See* Answers ¶ 19. | Undisputed | | |
| 2 | Mahabub is a resident of Broomfield, Colorado.  Answers ¶ 18. | Undisputed | | |
| 3 | Mahabub is the founder of GenAudio and became its CEO in 2006.  He served as GenAudio's CEO and Chairman of the Board from 2009 to 2012.  Ex. 1, Mahabub Inv. 48:22 – 51:4 (Feb. 5 and 12, 2015); Ex. 2, Mahabub Dep. 459:24 – 460:5 (Jan. 19 and Feb. 8, 2017). | Undisputed | 901 (Obj. 1) | SEC Resp. to Evidentiary Objections at ¶ 1. |
| 4 | Between November 2009 and April 2012, Mahabub had the right to vote a majority of GenAudio's securities and controlled the GenAudio Board.  *See* Ex. 3 at 9 and GA000523; Ex. 4 at 9 and 43. | Undisputed | | |
| 5 | Between 2009 and May 2012, Jim Wei-Kung Mattos was the Support Services Manager of GenAudio and his "primary functions [for GenAudio] were to continue to raise money for the company, reaching out through friends and family [and] to manage company records …." Ex. 5, Mattos Inv. 19:8-10 (Feb. 9, 2015); Ex. 6, Mattos Dep. 24:15-22 (July 22, 2016). | Undisputed | 901 (Obj. 1) | SEC Resp. to Evidentiary Objections at ¶ 1. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 6 | Mattos and Mahabub were primarily responsible for bringing in investors to GenAudio, including through the sales of Mahabub's personal stock.  Ex. 6, Mattos Dep. 69:18 - 70:3 (addressing Ex. 46), 155:24 – 156:19, and 159:17-25. | Disputed. Only Mahabub was primarily responsible for capital raises. Ex. 217, Mattos Dep. 19:16-23 ("Mr. Mahabub was solely responsible for all business development. … There was no other either executive or senior manager, to my knowledge, that had any measurable interactions with any business development partners.") | | Defendants cite testimony that does not stand for the proposition that only Mahabub was responsible for "capital raises."  It stands for the proposition that Mahabub was responsible for "fraudulent misrepresentations about certain business development partners over time" and that "the content listed within the [SEC's enforce-ment action against Mahabub] was his responsibility[.]"  Ex. 217, Mattos Dep. 19:7 – 23. |
| 7 | Between 2009 and 2012, James T. Devine was GenAudio's Vice President of Finance and his job duties included accounting, issuing stock certificates, and maintaining GenAudio's stock transfer ledger.  Ex. 7, Devine Dep. 49:25 – 50:8 (July 19, 2016). | Undisputed | | |
| 8 | Between 2009 and 2012, GenAudio financed its operations primarily through the sale of debt and equity securities in private offerings.  Answers ¶ 24. | Undisputed | | |
| 9 | During that time, GenAudio was consistently insufficiently funded.  Ex. 2, Mahabub Dep. at 155:12-15 ("So that -- that was problematic for this company, you know, pretty much since inception, is we just couldn't seem to raise enough money to -- to get where we need to go."). | Undisputed | | |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 10 | Mahabub encouraged GenAudio Board members and employees to assist with finding investors for GenAudio. Answers ¶ 111. | Undisputed | | |
| 11 | In doing so, Mahabub touted an investment in GenAudio as a good decision. <u>Ex. 8</u> at 6 ("Do I believe that if someone does not invest at this point in time that they are foolish?  Yes.  Yes.  And YES!  We need investors, and we need them now."); <u>Ex. 9</u> at 1, 3 ("Time to get some $$$ …  And someone would not want to invest at this stage in the game, or increase there [sic] shareholder position because why?" and "if any of you feel like helping out with this effort, I would certainly appreciate it.  It's not like you are doing your friends and family a bad thing by getting them into GenAudio …"); <u>Ex. 10</u> at 1 ("Any help from all of you with this financing effort would be great."). | Undisputed | | |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 12 | GenAudio needed investor funds to continue to develop technology and to permit Mahabub to travel and attend conferences. Ex. 2, Mahabub Dep. at 65:15-20 (addressing Ex. 8, "And in order to port code and hire on the right team and the right dev staff, and there were a couple other additional software engineering people that I needed to bring on board at the time, and you can't bring those people on unless you have money."); *id.* at 155:7-11 (addressing Ex. 9, "I was trying to keep the team pumped and get the money that we needed … half of our achilles heel that we always had was we never had enough money to cross the bridge to where we needed to go to."). | Undisputed | | |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 13 | In explaining why he made certain statements encouraging the GenAudio's employees, contractors, and Board (collectively, the "GenAudio Team") to assist in fundraising, Mahabub testified:<br><br>I mean, it takes money to do business. You can't -- certainly can't fly for free and stay in hotel rooms for free with team members, or attend Game Developer Conference or CES for free either.  Those all cost money.  And in order to have money, you usually have to either raise money or you're independently wealthy, and I burned through all my money already.<br><br>*Id.* at 172:25 – 173:12 (addressing Ex. 9) (emphasis added). | Undisputed | | |
| 14 | GenAudio has not registered an offering of securities under the Securities Act.  Answers ¶¶ 19, 130, 131. | Undisputed | | |
| 15 | Between November 2009 and April 2012, Mahabub sold approximately 3,316,300 shares of GenAudio stock to approximately 83 investors, raising approximately $2.3 million ("Mahabub Sales") when no registration statement was filed or in effect for the transactions.  Declaration of Tracy W. Bowen and Ex. 11. | Disputed on the basis the evidence is inadmissible. (See Objections #4). | 901<br>801<br>1002<br>(Obj. 4) | SEC Resp. to Evidentiary Objections at ¶ 4. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 16 | In connection with the Mahabub Sales, Mahabub and investors executed a Stock Sale and Purchase Agreement, and an Irrevocable Proxy Agreement; however, investors did not complete subscription agreements or investor questionnaires that addressed whether or not the investor was accredited and Mahabub did not maintain documentation regarding whether or not investors were accredited. Ex. 2, Mahabub Dep. 476:11 – 477:20, 480:22 – 481:23 and 483:5-19. | Disputed. Some, possibly all, investors that executed an agreement with Mahabub previously invested with GenAudio through a company offering and filled out an investor questionnaire. Mahabub relied upon that to determine whether the investors were accredited. Ex. 87 (Mahabub Depo. Vol. 2) 481:24–482:5. Further, Mahabub can only speculate as to whether some investors had not previously filled out an investor questionnaire. *Id.* 482:5–14. Mahabub also had personal relationships with many investors, and knew them to be accredited. (Mahabub Decl., ¶¶ 4-5.) | | The cited evidence does not dispute the stated fact.  Further, paragraphs 4 and 5 of Mahabub's Declaration do not demonstrate personal knowledge about each of the investor's income in the two years preceding each stock purchase or the amount of investor's assets at the time of each purchase and should therefore not be considered.  *See* Fed.R.Evid. 602. |
| 17 | GenAudio mailed share certificates to Mahabub Sales investors.  Ex. 7, Devine Dep. 162:10-18. | Undisputed. | | |
| 18 | Mahabub used a substantial portion of the proceeds of the Mahabub Sales to loan money to GenAudio or to pay creditors on GenAudio's benefit.  In exchange for its debt to Mahabub, GenAudio provided Mahabub with additional shares.  Ex. 12 at ¶ 8; Ex. 2, Mahabub Dep. 460:25 – 461:8 and 464:8-18. | Undisputed. | | |
| 19 | From approximately March to August 2010, GenAudio offered and sold GenAudio stock when no registration statement was filed or in effect for the transactions (the "2010 Offering"). Answers ¶ 130. | Undisputed. | | |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 20 | From approximately April 2011 to April 2012 GenAudio offered and sold GenAudio stock when no registration statement was filed or in effect for the transactions ("2011-2012 Offering"). Answers ¶ 131. | Undisputed. | | |
| 21 | During the 2010 Offering, GenAudio offered and sold approximately 1,171,000 common shares, raising approximately $3,513,000.  Answers ¶¶ 35; 78; 130; Ex. 13 at 1-4; Ex. 7, Devine Dep. 136:4-19 (Devine prepared Ex. 13). | Undisputed. | | |
| 22 | During the 2011-2012 Offering, GenAudio offered $2,100,000 of common shares of GenAudio and sold approximately 330,000 shares, raising approximately $990,000.  Answers ¶¶ 94; 131; Ex. 13 at 5-6. | Undisputed. | | |
| 23 | During the 2010 Offering, GenAudio sold shares to more than seventy investors in various states.  *See* Answers at ¶¶ 35; 130. | Undisputed. | | |
| 24 | During the 2011-2012 Offering, GenAudio sold shares to around twenty investors in various states.  *See* Answers ¶ 94. | Undisputed. | | |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 25 | GenAudio solicited prospective investors for the 2010 Offering by, among other things, disseminating, via email, a private placement memorandum ("PPM") and letter signed by Mahabub dated March 15, 2010 (collectively, "2010 Offering Materials").  Answers ¶ 36; Ex. 3; Ex. 14. | Undisputed. | | |
| 26 | GenAudio solicited prospective investors for the 2011-2012 Offering through a letter to investors electronically signed by Mahabub, and a PPM dated April 22, 2011 ("2011-2012 Offering Materials").  *See* Answers ¶¶ 95-96; Ex. 4; Ex. 15. | Undisputed. | | |
| 27 | GenAudio is unable to provide information as to the number of investors it solicited to invest in its 2010 and 2011-2012 Offerings.  Ex. 16 at GenAudio Resp. to Request No. 1 (GenAudio unable to locate and produce emails, metadata, or numbered PPMs evidencing investors solicited during the 2010 and 2011-2012 Offerings). | Undisputed. | | |
| 28 | Mahabub assisted with the preparation of the 2010 and 2011-2012 Offering Materials, reviewed those Offering Materials, and was a member of the Board that approved those Offering Materials.  Answers ¶¶ 37, 96. | Undisputed. | | |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 29 | During the 2010 and 2011-2012 Offerings, Mahabub solicited potential investors at public presentations he called "road shows." Ex. 17 at 1; Ex. 18 at 1, ¶ 6 (Mahabub emailed 20 PPMs and handed out 16 PPMs in connection with a road show); Ex. 19 at 1 (Mahabub "gearing up" to make calls to "convert[] road show attendees into actual investors"); Ex. 20 at 5 (investor writing, "at the SEA roadshow I was told GenAudio was in great need of Cash or things could get ugly by May"). | Disputed on the basis the evidence is inadmissible. (See Objections #5). | 901 801 (Obj. 5) | SEC Resp. to Evidentiary Objections at ¶ 5. |
| 30 | GenAudio used telephones, the Internet, and the mails in connection with the 2010 and 2011-2012 Offerings.  Answers ¶ 135. | Undisputed. | | |
| 31 | GenAudio did not provide an audited balance sheet to investors in the 2010 or 2011-2012 Offerings.  Answers ¶ 137. | Undisputed. | | |
| 32 | In connection with the 2010 Offering, at least one GenAudio investor wrote "N/A" on the portion of the Confidential Subscriber Questionnaire ("Questionnaire") that addressed accreditation and investment experience.  Ex. 21 at 4-5. | Disputed on the basis the evidence is inadmissible. (See Objections #7). | 901 (Obj. 7) | SEC Resp. to Evidentiary Objections at ¶ 7. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 33 | In connection with the 2010 Offering, other GenAudio investors failed to complete the portion of the Questionnaire that addressed accreditation.  *See* <u>Ex. 22</u> at 4-5; <u>Ex. 23</u> at 4-5; <u>Ex. 24</u> at 4; <u>Ex. 25</u> at 4. | Disputed on the basis the evidence is inadmissible. (See Objections #8). | 901 (Obj. 8) | SEC Resp. to Evidentiary Objections at ¶ 8. |
| 34 | At least one investor who invested in the 2011-2012 Offering on multiple occasions repeatedly failed to complete the portion of the Questionnaire that addressed accreditation.  *See* <u>Ex. 26</u> at 4, 9, 14, and 19. | Disputed on the basis the evidence is inadmissible. (See Objections #9). | 901 (Obj. 9) | SEC Resp. to Evidentiary Objections at ¶ 9. |
| 35 | Beyond sending and receiving the Questionnaires, GenAudio did not do anything to determine investor accreditation.  *See* <u>Ex. 2</u>, Mahabub Dep. at 488:24 - 489:24 and 490:25 – 491:23; <u>Ex. 6</u>, Mattos Dep. 169:18 – 170:7 (addressing investor file documents included in Ex. 14) and 171:17-19; <u>Ex. 7</u>, Devine Dep. 127:25 – 128:3 and 178:14-19. | Disputed. Mattos reviewed the Questionnaires to ensure investor qualified as accredited and if Questionnaire incomplete, normally contact the investor to complete it. Ex. 6, Mattos Dep. 169:23-171:4. | | Mattos testified that "[p]erhaps once or twice" he followed up with investors to "let them know they needed to resubmit the paperwork."  Ex. 6, Mattos Dep. 170:21 – 171:4. |
| 36 | Mattos admitted that he "overlooked" a few Questionnaires that were not completed.  <u>Ex. 6</u>, Mattos Dep. 169:18 – 170:20. | Undisputed. | | |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 37 | Emails from Mattos during the 2010 Offering also reveal that GenAudio was willing to accept investments from non-accredited investors.  *See* <u>Ex. 27</u> ("new investors are required to be accredited investors; however, those restrictions do not apply to current investors"); <u>Ex. 28</u> ("any group investments on your family's behalf should be kept track [sic] internally.  GenAudio can not [sic] officially know anything about it due to SEC laws regulating unaccredited investors"). | Disputed on the basis the evidence is inadmissible. (See Objections #10). The cited evidence demonstrates GenAudio's allegiance to the accredited investor requirement. Ex. 27 (Rosenblatt was prior investor already known to be accredited, thus the reference to new investors required to be accredited); Ex. 28 (Mattos acknowledging SEC regulations in reference to aggregate investment by family pooling). | 901 (Obj. 10) | SEC Resp. to Evidentiary Objections at ¶ 10. |
| 38 | Mahabub was GenAudio's primary point of contact with Apple and controlled the dissemination of the information about dealings with Apple to GenAudio's Board, employees, shareholders, and prospective investors.  Answers ¶¶ 38, 124. | Undisputed. | | |
| 39 | Mahabub and GenAudio used the term "LCEC" in some shareholder communications to refer to Apple.  Answers ¶ 57. | Undisputed. | | |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 40 | Mahabub used body language and other "hints" to lead investors to understand that the LCEC was Apple. *See* Ex. 29 at 3 ("the super sharp investors will pick up on my body language" and "[t]his may entice investors that take a peek at our offering wondering why we are all of a sudden being so quiet … (not blah blah blah-ing about Apple in any way shape or form) with strong confidence is a good thing"); Ex. 30, Skluzak Dep. at 46:15 – 25 (Feb. 7, 2017) (explaining Mahabub that would refer to "the fruit with a piece of – bite out of it" and "[i]t was also a big inference when [Mahabub] said he met with Steve Jobs"); Ex. 31, Powers Inv. 110:9 – 15 (Feb. 27, 2015) (Mahabub would "refer to [the LCEC] as the fruit company"). | Disputed on the basis the evidence is inadmissible. (See Objections ##1, 2, and 11). | 901 (Obj. 1, 2, and 11) | SEC Resp. to Evidentiary Objections at ¶¶ 1, 2, 11. |
| 41 | Numerous investors knew that "the LCEC" was Apple.  *See, e.g.*, Ex. 31, Powers Inv. 110:2 – 111:14; Ex. 32, Skluzak Inv. 52:8 – 53:2 and 55:4 – 56:6 (Dec. 15, 2014); Ex. 33, Elliott Inv. 24:16-23 ("everybody just knew it was Apple"). | Disputed on the basis the evidence is inadmissible. (See Objections #1). | 901 (Obj. 1) | SEC Resp. to Evidentiary Objections at ¶ 1. |
| 42 | During the relevant time period, Mahabub provided email updates to the GenAudio Team, including Board members that were also GenAudio investors.  *See* Mahabub Answer ¶ 50; Ex. 2, Mahabub Dep. 61:10 – 19 and 72:1 – 7 (addressing Ex. 43, explaining he always blind carbon copied the Board); Ex. 3 at GA000523 (listing Directors who were also shareholders). | Undisputed. | | |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 43 | Some of Mahabub's emails to the GenAudio Team (including Mattos) included "forwarded" emails that Mahabub had exchanged with Apple employees and sometimes Mahabub altered those "forwarded" emails to add or delete text.  *See* <u>Ex. 2</u>, Mahabub Dep. 74:16 – 23 (addressing <u>Ex. 43</u>, "There were from time to time alterations that I had made, yes.  But I can't tell you for sure if I did … I don't know.  But apparently so.  If there's alterations here, it means I did."). | Undisputed. | | |
| 44 | Mahabub testified that he altered the emails to "entice" or "inform" the GenAudio Team.  <u>Ex. 2</u>, Mahabub Dep. 148:1-23 (addressing Ex. 44). *See also id.* at 80:14-24 (addressing <u>Ex. 43</u> and explaining that forwarding the email from Apple, without alterations, would not have kept the GenAudio Team motivated because it "[d]idn't have the strength to it"). | Mahabub altered the emails to keep employees motivated to work when low on funds and high on energy with much to accomplish. Ex. 2, Mahabub Dep. 80: 14-24; 148:12-23 ("I think … there were times when I made alterations to keep the team members motivated…"); Mahabub Decl., ¶¶ 9-11.) | | |
| 45 | For example, on March 21, 2010, Mahabub altered his email correspondence to Apple as set forth in the demonstrative below (alterations highlighted).  Demo. at 8; comparing <u>Ex. 10</u> at 1 to <u>Ex. 34</u> at 1. | Disputed on the basis the evidence is inadmissible. (See Objections ##3 and 12). | 901 (Obj. 3, 12) | SEC Resp. to Evidentiary Objections at ¶¶ 3, 12. |
| 46 | Victor Tiscareno was a senior audio and acoustic engineer at Apple until February 2011, and he was Mahabub's primary contact at Apple. <u>Ex. 35</u>, Tiscareno Inv. 11:5-9, 11:15-23, and 12:20-25 (Dec. 3, 2014 and Apr. 29, 2015); <u>Ex. 1</u>, Mahabub Inv. 70:2-5. | Disputed on the basis the evidence is inadmissible. (See Objections #1). | 901 (Obj. 1) | SEC Resp. to Evidentiary Objections at ¶ 1. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 47 | In 2009 and 2010, Mahabub also met and communicated with Michael Hailey, who was a product market manager with Apple for the iPod, iPhone, and iPad product lines, and Ronald Isaac, who was a signal processing engineer and acoustician technologist with Apple. Ex. 36, Hailey Inv. 8:17-19, 10:24-12:9, 16:7-19, and 17:6-9 (Apr. 21, 2015); Ex. 37, Isaac Inv. 8:17-25 (Apr. 15, 2015); Ex. 1, Mahabub Inv. 69:23-70:5 (regarding Isaac) and 153:23-154:2 (regarding Hailey). | Disputed on the basis the evidence is inadmissible. (See Objections #1). | 901 (Obj. 1) | SEC Resp. to Evidentiary Objections at ¶ 1. |
| 48 | On or about July 1, 2009, Mahabub executed Apple's standard non-disclosure agreement ("NDA") on behalf of GenAudio.  See Answers ¶ 29. | Undisputed. | | |
| 49 | During 2009 and 2010, Mahabub visited the Apple campus to meet with Tiscareno and other Apple employees, exchanged emails with Tiscareno, Hailey, and Isaac, and worked to create demonstrations of GenAudio's technology on Apple devices.  See generally Exs. 34, 48, 50, 53-56 cited and discussed below. | Undisputed. | | |
| 50 | During 2009, 2010, and until August 24, 2011, Steve Jobs was the CEO of Apple.  See Ex. 38, Isaac Dep. 184:7-10 and 196:1-3 (Jan. 13, 2017). | Undisputed. | | |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 51 | Mahabub never met with Jobs regarding GenAudio or its technology. Ex. 1, Mahabub Inv. 144:8 – 12 ("Q: Did you ever meet with Steve Jobs? A: No. Q: Ever? A: No."); Ex. 2, Mahabub Dep. 29:25 – 30:2 ("Q: Mr. Mahabub, you never met Steve Jobs, the former CEO of Apple; correct? A: That's correct.") and 417:6-7 (never met with Jobs regarding AstoundSound). *But see* Ex. 2, Mahabub Dep. at 417:3 – 432:5 (describing a chance encounter with Jobs in the Apple cafeteria, which did not involve any substantive communication). | Undisputed. | | |
| 52 | Jobs was not involved in Apple's dealings with GenAudio, and Apple employees did not discuss GenAudio with Jobs. *See* Ex. 35, Tiscareno Inv. 137:5-7, 139:23 – 140:5, 194:17-19, and 235:17-24; Ex. 39, Tiscareno Dep. 311:21-25 (Dec. 16, 2016); Ex. 36, Hailey Inv. 24:7 – 25:5; Ex. 37, Isaac Inv. 30:3 – 31:4; Ex. 40 at 1. | Disputed.  Each of the Statements of Fact in paragraphs 52 – 60 rely on inadmissible deposition and/or investigation testimony as well as unauthenticated emails and are thus disputed on the basis the evidence is inadmissible. (See Objections ##1 – 3 and 12 - 16). | 901 801 (Obj. 1 – 3, 12 – 16) | SEC Resp. to Evidentiary Objections at ¶¶ 1 – 3, 12 - 16. |
| 53 | During 2009, 2010, and 2011, Philip Schiller was the Senior Vice President of Worldwide Marketing at Apple.  *See* Ex. 39, Tiscareno Dep. 211:21-23. | Disputed.  Each of the Statements of Fact in paragraphs 52 – 60 rely on inadmissible deposition and/or investigation testimony as well as unauthenticated emails and are thus disputed on the basis the evidence is inadmissible. (See Objections ##1 – 3 and 12 - 16). | 901 801 (Obj. 1 – 3, 12 – 16) | SEC Resp. to Evidentiary Objections at ¶¶ 1 – 3, 12 - 16. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 54 | Mahabub never met or communicated with Schiller regarding GenAudio or its technology. <u>Ex. 2</u>, Mahabub Dep. 432:20-433:2 (addressing <u>Ex. 41</u>); <u>Ex. 39</u>, Tiscareno Dep. 311:1-14; <u>Ex. 36</u> Hailey Inv. 22:25-24:6; <u>Ex. 37</u>, Isaac Inv. 29:14-17. | Disputed.  Each of the Statements of Fact in paragraphs 52 – 60 rely on inadmissible deposition and/or investigation testimony as well as unauthenticated emails and are thus disputed on the basis the evidence is inadmissible. (See Objections ##1 – 3 and 12 - 16). | 901 801 (Obj. 1 – 3, 12 – 16) | SEC Resp. to Evidentiary Objections at ¶¶ 1 – 3, 12 - 16. |
| 55 | During 2009, 2010 and part of 2011, Timothy Cook was the Chief Operating Officer of Apple; he became Apple's CEO in August 2011. *See* <u>Ex. 35</u>, Tiscareno Inv. 189:20-190:2. | Disputed.  Each of the Statements of Fact in paragraphs 52 – 60 rely on inadmissible deposition and/or investigation testimony as well as unauthenticated emails and are thus disputed on the basis the evidence is inadmissible. (See Objections ##1 – 3 and 12 - 16). | 901 801 (Obj. 1 – 3, 12 – 16) | SEC Resp. to Evidentiary Objections at ¶¶ 1 – 3, 12 - 16. |
| 56 | Mahabub never met or communicated with Cook regarding GenAudio or its technology. <u>Ex. 2</u>, Mahabub Dep. 31:2-11 (Mahabub does not believe he met Cook and does not recall communicating with Cook about GenAudio or its technology); <u>Ex. 35</u>, Tiscareno Inv. 190:11-191:8; <u>Ex. 39</u>, Tiscareno Dep. 311:15-20; <u>Ex. 36</u>, Hailey Inv. 22:22-24:6; <u>Ex. 37</u>, Isaac Inv. 29:25-30:2. | Disputed.  Each of the Statements of Fact in paragraphs 52 – 60 rely on inadmissible deposition and/or investigation testimony as well as unauthenticated emails and are thus disputed on the basis the evidence is inadmissible. (See Objections ##1 – 3 and 12 - 16). | 901 801 (Obj. 1 – 3, 12 – 16) | SEC Resp. to Evidentiary Objections at ¶¶ 1 – 3, 12 - 16. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 57 | In August and September 2009, Mahabub emailed the GenAudio Team and represented that GenAudio was close to entering into licensing negotiations and a "big licensing deal" with Apple, and he altered emails from Apple to make it appear as if Mahabub had been in contact with Schiller and other high-level Apple employees. *Compare* Ex. 42 at 2-3 to Ex. 43 at 1; *compare* Ex. 44 at 4 to Ex. 45 at 1; *see also* Demo. at 1-3. | Disputed.  Each of the Statements of Fact in paragraphs 52 – 60 rely on inadmissible deposition and/or investigation testimony as well as unauthenticated emails and are thus disputed on the basis the evidence is inadmissible. (See Objections ##1 – 3 and 12 - 16). | 901 801 (Obj. 1 – 3, 12 – 16) | SEC Resp. to Evidentiary Objections at ¶¶ 1 – 3, 12 - 16. |
| 58 | In October and November 2009, Mahabub emailed the GenAudio Team false and altered emails that made it appear that he had communicated with Schiller and Cook, GenAudio had received "the green light" on "the technical … side of the coin," and Mahabub would be meeting with Jobs. Ex. 46 at 1; *compare* Ex. 47 at 3-4 to Ex. 48 at 1; *compare* Ex. 49 at 2 to Ex. 50 at 1; *see also* Demo. at 4-6. | Disputed.  Each of the Statements of Fact in paragraphs 52 – 60 rely on inadmissible deposition and/or investigation testimony as well as unauthenticated emails and are thus disputed on the basis the evidence is inadmissible. (See Objections ##1 – 3 and 12 - 16). | 901 801 (Obj. 1 – 3, 12 – 16) | SEC Resp. to Evidentiary Objections at ¶¶ 1 – 3, 12 - 16. |
| 59 | On February 12, 2010, Mahabub emailed the GenAudio Team false and altered emails that made it appear that he had met with Schiller who discussed a "project … for Christmas product roll-out"; that "Apple is still very interested in licensing Astound for their products"; and that Apple employees were working towards getting a deal "ok'd by the big man."  *Compare* Ex. 51 at 1-2 to Ex. 52 at 1; *see also* Demo. at 7. | Disputed.  Each of the Statements of Fact in paragraphs 52 – 60 rely on inadmissible deposition and/or investigation testimony as well as unauthenticated emails and are thus disputed on the basis the evidence is inadmissible. (See Objections ##1 – 3 and 12 - 16). | 901 801 (Obj. 1 – 3, 12 – 16) | SEC Resp. to Evidentiary Objections at ¶¶ 1 – 3, 12 - 16. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 60 | Following the issuance of the 2010 Offering, Mahabub emailed the GenAudio Team false and altered emails on March 21, 2010 that made it appear that he was communicating with Schiller; Schiller was "hoping for – a fall product rollout"; and Apple and Mahabub had discussed an "embedded level integration process". *Compare* Ex. 10 at 1 to Ex. 34 at 1; *see also* Demo. at 8. | Disputed.  Each of the Statements of Fact in paragraphs 52 – 60 rely on inadmissible deposition and/or investigation testimony as well as unauthenticated emails and are thus disputed on the basis the evidence is inadmissible. (See Objections ##1 – 3 and 12 - 16). | 901 801 (Obj. 1 – 3, 12 – 16) | SEC Resp. to Evidentiary Objections at ¶¶ 1 – 3, 12 - 16. |
| 61 | In early April 2010, Mahabub became aware of the scheduling of an internal meeting at Apple regarding GenAudio's technology.  *See* Ex. 53 at 2 (Mahabub writing, "[i]n an effort to get 'two thumbs up' from your meeting so we can continue to move forward …"). | Disputed on the basis the evidence is inadmissible. (See Objections #17). Mahabub was aware of the internal meeting long before April 2010. Mahabub and Tiscareno worked on demos to be used at that meeting in late 2009. Ex. 203 (Tiscareno and Mahabub discussing with Mahabub the preparation of demos to be shown to "the man", Ex. 152, Tiscareno Dep. 140:18-141:21 (Tiscareno confirming Ex. 203 relates to preparation of demos to be shown at the internal meeting). | 901 (Obj. 17) | SEC Resp. to Evidentiary Objections at ¶ 17. |
| 62 | In correspondence between Mahabub and Tiscareno, neither indicated that the meeting would involve Jobs, Schiller, or Cook; instead, Mahabub referenced Tiscareno's upcoming meeting with an "exec."  *Id.* at 1; Ex. 54; Ex. 55; Ex. 56 at 2. | Disputed on the basis the evidence is inadmissible. (See Objections #18). Mahabub and Tiscareno used several terms in their correspondence to describe the individual who would receive the presentation on May 6, 2010, including "the exec.", "the big exec.", and "the man." *See* SOF ¶ 142.2 Mahabub also testified Tiscareno and Hailey told him the meeting was with "Jobs." SOF ¶ 144. Tiscareno and Hailey may have intended to tell him the meeting was with "Joz." SOF ¶ 143.Prior to this litigation, Mahabub did not know anyone named "Jozwiak" or "Joz" worked at Apple. Mahabub Decl., ¶ 24. | 901 (Obj. 18) | SEC Resp. to Evidentiary Objections at ¶ 18. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 63 | On April 8, 2010, Mahabub sent a few members of the GenAudio Team false and altered emails that made it appear that Tiscareno stated "Phil let us know earlier that this might be postponed until early next week.  Apparently Steve is planning on going out of town with his family for the weekend" and that Mahabub stated "[t]oo bad … although, that might be better given that Steve will be relaxed from having a weekend getaway with his family.  Perhaps this is why Phil is rescheduling for next week."  *Compare* Ex. 57 at 1-2 to Ex. 58 at 1; *see also* Demo. at 9-11. | Disputed on the basis the evidence is inadmissible. (See Objections #19). | 901 (Obj. 19) | SEC Resp. to Evidentiary Objections at ¶ 19. |
| 64 | On April 30, 2010, while he was attending a conference for investment bankers and broker-dealers, Mahabub sent prospective investors an email that falsely stated that the LCEC was "looking to acquire GenAudio's tech for integration into their entire lineup of product offerings" and "we are now waiting to when [sic] we will initiate negotiations, pending the CEO of the LCEC to approve the integrated product rollout strategy and the technical implementation strategy that will be presented to the CEO next week!!!"  Ex. 59 at 4. | Disputed on the basis the evidence is inadmissible. (See Objections #20). The email was sent to one investor only. Other than Cohen, Mahabub speculates who else may have received. Ex. 150, Mahabub Dep., 200:12-202:10. Mahabub's email was not false as he believed the statements were reasonable under the circumstances. *Id.*, 205:2-19 (reasonable to believe Apple looking to acquire GenAudio technology for integration); 207:4-20 (reasonable to believe awaiting CEO approval of integrated product rollout strategy and technical implementation strategy). *See* SOF ¶ 131, 134, 136, 137, 138, 140-146. | 901 (Obj. 20) | Exhibit 59 was not "sent to one investor only," the end of Mahabub's April 30, 2010 email states "[y]ou should all receive a hard copy of this presentation deck under your door later on this evening …."  Ex. 59 at 4.  Further, Defendants' argument that these statements were not false simply because Mahabub allegedly believed the statements is incorrect and irrelevant; such belief is an issue of scienter, not falsity.  *See* GA Opp'n Resp. SOF ¶ 64.\n\nSEC Resp. to Evidentiary Objections at ¶ 20. |
| 65 | After receiving the email, an investor purchased 5,000 shares for $15,000. *See id.* at 1; Ex. 13 at 2, row 4. | Disputed on the basis the evidence is inadmissible. (See Objections #21). | 901 801 (Obj. 21) | SEC Resp. to Evidentiary Objections at ¶ 21. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 66 | On May 5, Mahabub sent Tiscareno materials that he suggested Tiscareno use at the meeting with "the exec," and he offered to attend the meeting; however, Tiscareno declined the offer, explaining "this is not that kind of demo.  [Hailey] and I are pitching this as a concept …." and "[o]nce we get the go ahead that this is a great idea, then the questions will be, 'well, what about the other technologies, have we reviewed them? etc.'  <u>Then we sort of start over internally.</u>…  <u>We have to get to first base</u>…."  <u>Ex. 55</u>; <u>Ex. 56</u> at 1 (emphasis added). | Disputed on the basis the evidence is inadmissible. (See Objections #22). | 901 801 (Obj. 22) | SEC Resp. to Evidentiary Objections at ¶ 22. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 67 | In the morning and early afternoon of May 6, 2010, Mahabub sent emails to the GenAudio Team regarding the upcoming meeting at Apple which falsely represented that Schiller and Jobs were involved. <u>Ex. 60</u> at 1-2. | Disputed on the basis the evidence is inadmissible. (See Objections #23). Mahabub honestly and reasonably believed Schiller and Jobs were involved. Mahabub Decl., ¶¶ 23–24; *See* SOF ¶ 131, 134, 136, 137, 138, 140-146. | 901 (Obj. 23) | Mahabub presents no genuine issue as to his belief that Schiller was ever involved in Apple's communications with GenAudio. In his declaration, Mahabub states, without providing any details: "While I subjectively believed Schiller was one of those I met with at Apple, I later learned that it wasn't Schiller, but someone else, and I remembered his name incorrectly." (ECF No. 61 at ¶ 23).  During his investigative testimony, Mahabub claimed that he had confused Schiller and Hailey.  *See* Ex. 234, Mahabub Inv. Tr. 133:2 – 136:6. Not surprisingly, this argument has since been abandoned given that Mahabub added Schiller's name to email correspondence that also included Michael Hailey. *See* Ex. 10.  Further, the SEC's Motion cites numerous, separate communications prior to May 6, 2010 in which Mahabub references Schiller.  *See* Exs. 42; 44; 46; 47; 49; 51; 57; and 60. Mahabub's self-serving claim of mistake is insufficient to rebut the evidence cited in support of the SEC's Motion.<br><br>SEC Resp. to Evidentiary Objections at ¶ 23. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 68 | Late in the evening of May 6, 2010, Mahabub sent the GenAudio Team a purported "transcription" of a phone call between him and Tiscareno.  After repeatedly instructing that the email be deleted, Mahabub set forth his purported conversation with Tiscareno, which included representations that Tiscareno stated that "Steve thought the technology was so extraordinary …. I believe he wants to explode this technology into the world" and "[Steve] instructed all of us to be in a no radio period" and "I can say that [Steve] is anxious to meet you in person when we have things figured out on our end." Mahabub then concluded the email by stating "[a]t least we have some time to put our strategy together and get our pawns in order for the asset acquisition or licensing battle." <u>Ex. 40</u> at 2-5. | Disputed on the basis the evidence is inadmissible. (See Objections #24). | 901 (Obj. 24) | SEC Resp. to Evidentiary Objections at ¶ 24. |
| 69 | Mahabub then forwarded the email that contained the false "transcription" to an investor. *Id.* at 1. | Disputed on the basis the evidence is inadmissible. (See Objections #24). | 901 (Obj. 24) | SEC Resp. to Evidentiary Objections at ¶ 24. |
| 70 | Receipt of the false "transcription" "affirmed [the investor's] willingness to purchase 40,000 shares of stocks" in the 2010 Offering, because "[i]t just confirmed that the decision I had made to purchase the stocks was a good decision." <u>Ex. 30</u>, Skluzak Dep. 134:9-14 (addressing <u>Ex. 40</u>). | Disputed on the basis the evidence is inadmissible. (See Objections #2). Also, Skluzak did not rely on the "transcription" to purchase shares as he had purchased prior to receiving it. Ex. 218, Skluzak Dep., 59:23-60:5 ("I had already made my determination ... prior to this date, sometime in April, that I was going to invest.") | 901 (Obj. 2) | SEC Resp. to Evidentiary Objections at ¶ 2. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 71 | On October 30, 2013, Tiscareno received a copy of the May 6, 2010 "transcription" from a GenAudio investor and responded "OMG!" and went on to explain "I never discussed anything about Steve Jobs or any other board member at Apple.  I never discussed this with Steve Jobs.  Period!" and "This letter is pure fabrication."  Ex. 40 at 1. | Disputed on the basis the evidence is inadmissible. (See Objections #25). | 901 801 (Obj. 25) | SEC Resp. to Evidentiary Objections at ¶ 25. |
| 72 | On May 25, 2010, Mahabub emailed the GenAudio Team and represented that Tiscareno was contacting him despite the "no radio period" and forwarded emails that he altered to make it appear as if Tiscareno wrote "Steve has us looking very deep into other audio technology so he can better understand why yours is so much better" and "I have forwarded your email on to Steve.  He said he will give it a listen in his home theater.  This just might be what you need to get him to support this from the Pixar angle."  *Compare* from Ex. 61 at 2-5, 9 to Ex. 62; *see also* Demo. at 12-14. | Disputed on the basis the evidence is inadmissible. (See Objections ##3 and 26). | 901 (Obj. 3, 26) | SEC Resp. to Evidentiary Objections at ¶¶ 3, 26. |
| 73 | In May 2010, Mahabub and GenAudio created an investor presentation that was emailed to investors; during the presentation, Mahabub falsely stated that "the CEO of the LCEC finally met with senior marketing and technical management and we have the green light to move forward."  Ex. 63 at 54:8-10 (emphasis added).  *See also* Ex. 17 (email transmitting presentation). | Disputed on the basis the evidence is inadmissible. (See Objections ##5 and 27). Mahabub reasonably believed his statement about the LCEC's CEO was true. *See* SOF ¶ 131, 134, 136-138, 140-146. | 901 801 1002 (Obj. 5, 27) | SEC Resp. to Evidentiary Objections at ¶¶ 5, 27. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 74 | The presentation and email also discussed GenAudio's 2010 Offering and encouraged investors to review the PPM and attached valuation report. *See* Ex. 63 at 54-55; Ex. 17 at 1. | Disputed on the basis the evidence is inadmissible. (See Objections ##5 and 27). Mahabub reasonably believed his statement about the LCEC's CEO was true. *See* SOF ¶ 131, 134, 136-138, 140-146. | 901 801 1002 (Obj. 5, 27) | SEC Resp. to Evidentiary Objections at ¶¶ 5, 27. |
| 75 | On July 2, 2010, Mahabub emailed the GenAudio Team false and altered emails that made it appear that Jobs wanted to meet with Mahabub and Jobs was involved in evaluating GenAudio's technology. *Compare* Ex. 64 to Ex. 65; *see also* Demo. at 15-17. | Disputed on the basis the evidence is inadmissible. (See Objections ##3 and 28). | 901 801 (Obj. 3, 28) | SEC Resp. to Evidentiary Objections at ¶¶ 3, 28. |
| 76 | On or about August 1, 2010, GenAudio sent investors a letter that was electronically signed by Mahabub and stated, in part, that the LCEC's CEO had requested a "hand-shake" meeting, and "I can say that we are still moving forward with confidence and plan on carrying it through all the way to the end, which could result in a significant revenue generating license deal or the potential for acquisition of the technology or the company." Ex. 66 at 2; Answers ¶ 72 (admitting Mahabub sent a letter to GenAudio shareholders on or about August 1, 2010). | Undisputed. | | |
| 77 | Mahabub also explained in this letter that the 2010 Offering would be closing at the end of August, "and it has been very successful thus far with the vast majority of investments coming from our existing shareholders.… Many of you have continued to invest over and over again…." Ex. 66 at 3. | Undisputed. | | |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 78 | Apple never told Mahabub or GenAudio that it planned to incorporate GenAudio's technology in any of its new product roll-outs. Ex. 39, Tiscareno Dep. at 313:4-11, 314:12 – 315:17; Ex. 38, Isaac Dep. 193:24 – 194:11; Ex. 67, Hailey Dep. 97:1 – 98:3, 151:19-22, and 154:11-17. | Disputed on the basis the evidence is inadmissible. (See Objections #2). Mahabub testified he spoke with Tiscareno regarding a Christmas product roll-out. Ex. 150, Mahabub Dep. 143:24-144:33, 310:21-311:11; *see also* SOF ¶ 124. | 901 (Obj. 2) | The fact that "Mahabub testified he spoke with Tiscareno regarding a Christmas product roll-out" does not dispute the fact that "Apple never told Mahabub or GenAudio that it planned to incorporate GenAudio's technology in any of its new product roll-outs."<br><br>SEC Resp. to Evidentiary Objections at ¶ 2. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 79 | Apple never indicated that it was interested in licensing GenAudio's technology or acquiring GenAudio or GenAudio's technology. Ex. 35, Tiscareno Inv. 73:9 – 74:5; Ex. 36, Hailey Inv. 29:7 – 30:3; Ex. 37, Isaac Inv. 36:24 – 39:11. | Disputed on the basis the evidence is inadmissible. (See Objections #1). Mahabub testified he had a conversation with Isaac about licensing. Ex. 150, Mahabub Dep. 95:9-97:16. Mahabub also reasonably believed for *many* reasons that Apple was interested in acquiring its technology. *See, e.g.,* SOF ¶¶ 109, 110, 111, 118, 124, 127, 128, 130, 131, 134-158. | 901 (Obj. 1) | The cited evidence does not dispute the stated fact.  Also, Mahabub's testimony regarding licensing only confirms the unreasonableness of assuming any type of "deal" was occurring in the near term:  [Isaac] said, "Well, we're not going to pay you a per unit royalty, you know that." That's exactly what he said, quote-unquote, to me.  So -- and I'm, like, "Well, I understand." You know, to me, I mean, maybe I thought -- I don't exactly know what that meant.  Could that have meant that maybe they're looking to acquire us if they're not going to pay you a per unit royalty? Because how else do you -- they either license your technology or they buy it out.  Right?  If they're not going to pay a per unit royalty, then that kind of almost implies something else.  Or maybe they are going to pay a lump sum.  I don't know.  All I know is that that comment was made.  And I told him, I said, "That's okay."  And he said, "Well, when we get to that stage, we'll figure it out."  That's exactly what he told me in the conference room.  Ex. 235, Mahabub Dep. at 96:13 – 97:11.  SEC Resp. to Evidentiary Objections at ¶ 1. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 80 | Apple and GenAudio had no negotiations about Apple licensing GenAudio's technology or acquiring GenAudio or its technology.  Ex. 39, Tiscareno Dep. 166:17-20, 173:3-6, 307:19-308:10, 312:4-313:21, and 317:5-318:8; Ex. 35, Tiscareno Inv. 73:9-74:5; Ex. 38, Isaac Dep. 184:11-21, 189:8-192:23, 195:15-25; Ex. 67, Hailey Dep. 90:8-20, 91:8-18, 93:7-19, 149:1-150:7, and 155:9-156:13. | Disputed on the basis the evidence is inadmissible. (See Objections ##1 and 2). Mahabub testified he had conversations with Tiscareno and Isaac regarding licensing and product rollout. Ex. 150, Mahabub Dep. 95:9-97:16, 143:24-144:33, 310:21-311:11; *see also* SOF ¶ 124 (Mahabub sending negotiation emails to Apple); Tiscareno and Isaac never told Mahabub they would not be the ones to negotiate any deal with GenAudio. SOF ¶¶ 128, 129. | 901 (Obj. 1, 2) | The cited evidence does not dispute the stated fact.  *See* Reply SOF ¶¶ 78 and 79.  SEC Resp. to Evidentiary Objections at ¶ 1, 2. |
| 81 | On December 16, 2009, Apple employee Hailey responded to the November 28, 2009 email from Mahabub referencing a potential "deal" between Apple and GenAudio, and stated, in part, "[w]e're making progress and building our story, but this is not something we can execute overnight.  The business side of things would come into play after we have exec buy-in on the product side." Ex. 50 at 2. | Disputed on the basis the evidence is inadmissible. (See Objections #29). | 901 801 (Obj. 29) | SEC Resp. to Evidentiary Objections at ¶ 29. |
| 82 | On January 5, 2010, Hailey responded to an email from Mahabub and informed him that "[w]ith respect to timeframe, we are pretty serious about looking at audio quality across the board and this will take time – definitely more than a couple of months." Ex. 68 at 2. | Disputed on the basis the evidence is inadmissible. (See Objections #30). | 901 801 (Obj. 30) | SEC Resp. to Evidentiary Objections at ¶ 30. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 83 | On September 25, 2009, GenAudio held a telephonic meeting of the Board and during the meeting, Mahabub "noted that a deal with Apple is highly probable based on the many meetings and Apple's responses to date." Ex. 69 at ¶ 7; Ex. 2, Mahabub Dep. 101:22-25 (addressing Ex. 69). | Disputed on the basis the evidence is inadmissible. (See Objections #31). | 901 (Obj. 31) | SEC Resp. to Evidentiary Objections at ¶ 31. |
| 84 | On November 9, 2009, GenAudio and Mahabub, through Mattos, sent GenAudio's investors an email drafted and electronically signed by Mahabub, which stated, in part:  "It should be kept very confidential and nothing is assured yet, but as shareholders you should be aware that there is a strong possibility that the Company may be acquired within the next 6 months in light of our extensive discussions with a global industry leader in consumer electronics[]" and "[p]lease continue to tell people about our Company and directing [sic] them to our website[.]" Ex. 70 at 2.  *See also* Answers at ¶ 52. | Undisputed. | | |
| 85 | Following this November 9, 2009 email, Mahabub, with the assistance of Mattos, began selling Mahabub's personal shares of GenAudio to investors.  Ex. 71 at 2 ("Mattos brought in 225k, and I have brought in over 750K USD from previous round investors and some new ones"). | Disputed on the basis the evidence is inadmissible. (See Objections #32). | 901 (Obj. 32) | SEC Resp. to Evidentiary Objections at ¶ 32. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 86 | GenAudio and Mahabub sent prospective investors a March 15, 2010 letter, in the 2010 Offering Materials, that represented, "[t]his offering is being conducted to provide bridge capital until we can 'ink' a deal with a large consumer electronics company (referred to as the 'LCEC' throughout the PPM)...." Ex. 14. | Disputed that it was sent to prospective investors as the letter is addressed only to current shareholders to secure bridge capital. Ex. 14. | | Defendants "dispute" that the March 15, 2010 letter was sent to "prospective investors," alleging "the letter is addressed only to current shareholders to secure bridge capital." All of GenAudio shareholders were also prospective investors who the Defendants repeatedly solicited, many of whom repeatedly invested additional funds. *See, e.g.*, Ex. 11; Ex. 72 at 1 (as of August 28, 2010, the 2010 Offering had raised $2.7 million "with the vast majority of investments coming from existing shareholders …. If any of you are considering the prospect of increasing your stake, you only have a few days left to make that decision."); Ex. 82 at 22 ("If you are one of our accredited investors and would like to discuss a follow-on investment in the company, please feel free to contact me directly"). |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 87 | GenAudio and Mahabub represented in the 2010 Offering PPM that:<br><br>[T]he Company is optimistic that the LCEC will eventually want access to our AstoundSound Technology for their products.  It is unclear what structure such access would take, but the Company believes the LCEC would either (i) integrate a portion of our AstoundSound Technology, namely ASE, into multiple product lines through a licensing arrangement or (ii) acquire all of our AstoundSound Technology or, at least, that portion the LCEC deems necessary for its integration plans.<br><br>Ex. 3 at 21. | Undisputed. | | |
| 88 | On or about August 28, 2010, GenAudio sent investors a letter that was electronically signed by Mahabub and began by stating that the 2010 Offering had raised $2.7 million "with the vast majority of investments coming from existing shareholders.… If any of you are considering the prospect of increasing your stake, you only have a few days left to make that decision." Ex. 72 at 1. | Each of the Statements of Fact in paragraphs 88 – 89 rely on an inadmissible unauthenticated letter and are thus disputed on the basis the evidence is inadmissible. (See Objections #33). | 901 (Obj. 33) | SEC Resp. to Evidentiary Objections at ¶ 33. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 89 | The letter also stated, "[w]e are moving forward with confidence with the LCEC.  However, due to the NDA we have signed with them, we cannot provide specific details at this time.  Based on the aforementioned factors, we hope you understand that our position grows stronger with each passing day. I can say that our anticipation of a buyout would be the most probable case when and if we ink a deal and come to terms with the LCEC." *Id.* at 4. | Each of the Statements of Fact in paragraphs 88 – 89 rely on an inadmissible unauthenticated letter and are thus disputed on the basis the evidence is inadmissible. (See Objections #33). | 901 (Obj. 33) | SEC Resp. to Evidentiary Objections at ¶ 33. |
| 90 | On September 6, 2010, Mahabub sent an email to two Board members, representing that he was forwarding "my latest cattle prod to Vic and Apple" and forwarding an email that Mahabub altered to make it appear as if he had strenuously pushed Tiscareno to "ink" a deal with GenAudio. *Compare* Ex. 73 to Ex. 74; *see also* Demo. at 18-19. | Disputed on the basis the evidence is inadmissible. (See Objections ##3 and 34). | 901 (Obj. 3, 34) | SEC Resp. to Evidentiary Objections at ¶¶ 3, 34. |
| 91 | On or about September 23, 2010, Mahabub attended a demonstration at Apple with Dr. Andrew Bright, who was an Apple employee with a Ph. D. in Acoustics, Tiscareno, and Isaac. *See* Ex. 75 at 1. | Disputed on the basis the evidence is inadmissible. (See Objections #35). | 901 801 402 (Obj. 35) | SEC Resp. to Evidentiary Objections at ¶ 35. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 92 | The meeting did not go well due to an argument between Mahabub and Bright, and was Mahabub's last substantive meeting with Apple. *See id.*; Ex. 35, Tiscareno Inv. 68:14-71:7; Ex. 39, Tiscareno Dep. 232:5-9; 255:10-21 (regarding Exs. 75 and 81); Ex. 38, Isaac Dep. 146:1-147:2; 158:10-159:18. | Disputed on the basis the evidence is inadmissible. (See Objections ##1 and 2). Disputed that it was Mahabub's last substantive meeting with Apple. The meeting was not Mahabub's last substantive meeting with Apple. Mahabub continued to work substantively with both the iPhone/iPod/iPad division and the Mac division, and had many more substantive discussions with them in-person, by email, and by phone. SOF ¶¶ 110, 156, 157, 159-161. | 901 (Obj. 1, 2) | The evidence cited by Mahabub in Defendants' SOF ¶¶ 110, 156, 157, and 159-161 does not establish <u>substantive</u> meetings between Mahabub and Apple and does not rebut the testimony cited in the Motion's SOF ¶ 92.  *See* Ex. 35, Tiscareno Inv. 68:14-71:7; Ex. 39, Tiscareno Dep. 232:5-9; Ex. 225, Tiscareno Dep. 255:10-21 (regarding Exs. 75 and 81); Ex. 38, Isaac Dep. 146:1-147:2; 158:10-159:18.  SEC Resp. to Evidentiary Objections at ¶ 1, 2. |
| 93 | In February 2011, Tiscareno left Apple. *See* Answers ¶ 31. | Undisputed. | | |
| 94 | On or about December 8, 2010, GenAudio sent investors a letter that was drafted and electronically signed by Mahabub and in a section entitled "<u>The LCEC</u>," stated, in part, "I met with their CEO and gave him a demo of our technology, and he stated, "I really like your technology and look forward to seeing you again in the future. Although they are moving very slow, we are still on their radar screen, and remain very optimistic for a deal in the second or third quarter of 2011." Ex. 74 at 11. | Disputed on the basis the evidence is inadmissible. (See Objections #36). Ex. 74 is not a December 8, 2010 letter to investors by GenAudio. | 901 (Obj. 36) | SEC Resp. to Evidentiary Objections at ¶ 36.  *See also* Ex. 241, which is the December 8, 2010 that should have been attached to support Mot. SOF ¶ 94. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 95 | Mahabub has admitted the statement was false. Ex. 1, Mahabub Inv. 507:9 - 19 (addressing Ex. 74).  *See also* Ex. 39, Tiscareno Dep. 323:21 – 324:12. | Disputed on the basis the evidence is inadmissible. (See Objections #1 and 2). Ex. 74 is not a December 8, 2010 letter sent to investors by GenAudio. Misstates Mahabub's testimony on this document. Also, in the cited testimony, Mahabub was only addressing whether he ever met with Steve Jobs. He did not testify as to whether anything else in the referenced statement was accurate, and in particular he did not admit the statement that GenAudio remains "very optimistic . . ." was false. | 901 (Obj. 1, 2) | The correct exhibit is attached as Exhibit 241.  In testifying regarding Exhibit 241, and in response to the question "Did you meet with Steve Jobs" Mahabub stated "Not that I remember, no. And I'm not sure why -- I think I -- that's -- that's a mistake in what I wrote there.  I don't think I meant to say that.  Why I didn't catch it, I have no idea.  But no, I never met with their CEO." Ex. 1, Mahabub Inv. 507:9 -19.<br><br>SEC Resp. to Evidentiary Objections at ¶ 1, 2. |
| 96 | On or about February 26, 2011, GenAudio sent investors a letter that was drafted and electronically signed by Mahabub and claimed that GenAudio, "will continue to support the development efforts with the LCEC with the hope that it will lead to a major transaction for GenAudio and its shareholders in the not so distant future." Ex. 82 at GA005331 – 32. | Disputed on the basis the evidence is inadmissible. (See Objections #37). | 901 (Obj. 37) | SEC Resp. to Evidentiary Objections at ¶ 37. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 97 | GenAudio and Mahabub also stated in the February 26, 2011 letter that "If you are one of our accredited investors and would like to discuss a follow-on investment in the company, please feel free to contact me directly…. While we cannot make any guarantees, we are very confident this will be the last money raised before achieving self-sustaining revenues given our inked revenue generating license deals, near-term licensing potential deals, and upcoming massive global branding." *Id.* at GA005337. | Disputed on the basis the evidence is inadmissible. (See Objections #37). | 901 (Obj. 37) | SEC Resp. to Evidentiary Objections at ¶ 37. |
| 98 | On March 29, 2011, GenAudio and Mahabub, through Mattos, sent GenAudio's investors a letter that stated that GenAudio would be signing a new set of "evaluation and development" agreements with the LCEC, which would "completely prohibit" Mahabub and GenAudio from disclosing any further information about the LCEC, or even using the term "LCEC." The email concluded: "Believe me when I tell all of you that I wish I could disclose what is going on, however, the fact of the matter is I cannot." Ex. 76 at 5-6. | Disputed on the basis the evidence is inadmissible. (See Objections #38). | 901 (Obj. 38) | SEC Resp. to Evidentiary Objections at ¶ 38. |
| 99 | Beyond the July 2009 NDA, GenAudio never entered into any agreements with Apple. *See* Ex. 1, Mahabub Inv. 102:25-105:15 (the only agreement between Apple and GenAudio was the NDA). | Disputed on the basis the evidence is inadmissible. (See Objections #1). | 901 (Obj. 1) | SEC Resp. to Evidentiary Objections at ¶ 1. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 100 | On April 22, 2011, GenAudio sent investors the 2011-2012 Offering materials, which omitted information about Apple or "the LCEC." <u>Ex. 15</u>. | Disputed on the basis the evidence is inadmissible. (See Objections #39). Ex. 15 is not 2011-2012 Offering materials. | 901 (Obj. 39) | SEC Resp. to Evidentiary Objections at ¶ 39. |
| 101 | Between November 2009 and April 2012, GenAudio and Mahabub did not inform investors that Mahabub's substantive communications with Apple personnel were almost always limited to mid-level engineering and marketing employees. *See supra* §§ II.E.i and ii, ¶¶ 46 - 56. | Disputed on the basis the evidence is inadmissible. (See Objections ##1-3 and 12-16). Mahabub met with some senior Apple personnel. Mahabub also reasonably believed Tiscareno was a senior Apple employee. SOF ¶¶ 153, 154. | 901 801 (Obj. 1 - 3, 12 - 16) | Mahabub's September 23, 2010 meeting with Andrew Bright and Barry Corlett is insufficient to create a genuine issue of material fact as to the fact that Defendants "did not inform investors that Mahabub's substantive communications with Apple personnel were <u>almost always</u> limited to mid-level engineering and marketing employees." *See* Defs. SOF ¶ 153; *see also* Mot. SOF ¶ 92.<br><br>SEC Resp. to Evidentiary Objections at ¶¶ 1 – 3, 12 - 16. |
| 102 | Between November 2009 and April 2012, GenAudio and Mahabub did not inform investors that Apple and GenAudio had no negotiations to license GenAudio's technology or to acquire GenAudio or its technology. *See supra* at p. 17 § II.F.i., ¶¶ 78 - 80. | Disputed on the basis the evidence is inadmissible. (See Objections ##1 and 2). *See* response to SOF ¶¶ 78-80. | 901 (Obj. 1, 2) | SEC Resp. to Evidentiary Objections at ¶ 1, 2. |
| 103 | Between November 2009 and April 2012, GenAudio and Mahabub did not inform investors that Apple never told Mahabub or GenAudio that it planned to incorporate GenAudio's technology in any of its new product roll-outs. *See supra* § II.F.i., ¶ 78. | Disputed on the basis the evidence is inadmissible. (See Objections #2). *See* response to SOF ¶ 78. | 901 (Obj. 2) | SEC Resp. to Evidentiary Objections at ¶ 2. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 104 | Between September 2010 and April 2012, GenAudio and Mahabub did not inform investors that in September 2010, Mahabub conducted a demonstration to Apple personnel that went poorly.  *See supra* § II.G., ¶ 91-92. | Disputed on the basis the evidence is inadmissible. (See Objections ##1 and 2). Ex. 15 is not 2011-2012 Offering materials. | 901 (Obj. 1, 2) | SEC Resp. to Evidentiary Objections at ¶ 1, 2. |
| 105 | Investors received and reviewed GenAudio's Offering Materials.  <u>Ex. 77</u>, Elliott Dep. 35:11-14 and 65:25-66:5 (Apr. 8, 2015) (discussing 2010 PPM); <u>Ex. 32</u>, Skluzak Inv. 50:21-52:7 (2010 Offering) and 162:9-163:7 (2011-2012 Offering). | Disputed on the basis the evidence is inadmissible. (See Objections ##1 and 2). | 901 (Obj. 1, 2) | SEC Resp. to Evidentiary Objections at ¶ 1, 2. |
| 106 | GenAudio's and Mahabub's shareholder updates were important to investors.  *See* <u>Ex. 78</u>, Eldridge Inv. 37:15 – 38:2 (explaining he purchased additional shares because of shareholder updates regarding Apple) (Apr. 6, 2015); <u>Ex. 33</u>, Elliott Inv. 26:5-27:2 (based on shareholder updates, understood Mahabub met Jobs and there were ongoing negotiations with Apple); <u>Ex. 79</u>, Bobak Inv. 31:16-22 and 74:6-24 (after updates came out, shareholders would ask Bobak if they should invest additional money) (Mar. 3, 2015). | Disputed on the basis the evidence is inadmissible. (See Objections #1). | 901 (Obj. 1) | SEC Resp. to Evidentiary Objections at ¶ 1. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | SEC's SOF | Defs.' Resp. to SEC's SOF | Defs. FRE Objections | SEC's Reply to Defs.' Resp. |
|---|---|---|---|---|
| 107 | Investors purchased shares from Mahabub and GenAudio based on representations about Apple's alleged dealings with GenAudio, including Mahabub's oral representations.  *See* Ex. 78, Eldridge Inv. 16:24-19:9 and 30:11-31:18; Ex. 30, Skluzak Dep. at 29:12-30:4.  *See also* Ex. 80, Herdt Inv. 23:25-24:17 and 29:14-30:8 (Apr. 10, 2015). | Disputed on the basis the evidence is inadmissible. (See Objections #2). | 901 (Obj. 2) | SEC Resp. to Evidentiary Objections at ¶ 2. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defs. SOF |
|---|---|---|
| 108 | GenAudio's discussions with Apple regarding GenAudio's AstoundSound technology began in late 2006. Ex. 151; Ex. 152, Tiscareno Dep. 46:21-47:1.1 | Undisputed. |
| 109 | The discussions between GenAudio and Apple regarding GenAudio's technology were extensive. Ex. 151, Tiscareno Dep. 152:2-154:14 (Tiscareno saying there were "a lot" of communications with GenAudio by November 2009), 267:20-23 (the discussions were "fairly extensive"), 269:2-6 (Tiscareno demonstrated GenAudio's technology to a lot of Apple employees); Ex. 150, Mahabub Dep. 206:13-16. | Disputed as to the characterization as "extensive." Mahabub ultimately engaged in "fairly extensive" communications with Tiscareno; however, he only met with Isaac three or four times, met with Hailey two to four times over the course of approximately a year, and never met with Schiller, Cook, or Jobs regarding GenAudio.  Ex. 152, Tiscareno Dep. 267:20 – 23; Ex. 37, Isaac Inv. Tr. 14:16 – 20; Ex. 36, Hailey Inv. Tr. 16:15 – 22; Mot. SOF ¶¶ 50 - 56. |
| 110 | Mahabub met in-person with Apple personnel at Apple's offices at least 15 times, the last of which was on December 1, 2010. Ex. 153 (prepared during testimony of Victor Tiscareno to reflect the dates of at least 15 in-person meetings, based on emails, calendar entries, and deposition testimony), Ex. 152, Tiscareno Dep. 56:4-20; *Meeting 15:* Ex. 168, Ex. 152, Tiscareno Dep. 259:13-25. | Undisputed, though the SEC objects to Exhibit 153 as hearsay. |
| 111 | Mahabub and Apple personnel had extensive other contacts, including many phone calls, and exchanged hundreds upon hundreds, if not thousands of emails regarding GenAudio's technology. Ex. 152, Tiscareno Dep. 25:25-26:5; 29:17-30:3; Ex. 169, Isaac Dep. 46:1-2, 47:2-5; Ex. 150, Mahabub Dep. 92:11-15. | Disputed as to the characterization as "extensive." Mahabub and Tiscareno had many phone calls and may have exchanged "hundreds upon hundreds, if not thousands of emails regarding GenAudio's technology;" however, he only met with Isaac three or four times, met with Hailey two to four times over the course of approximately a year, and never met with Schiller, Cook, or Jobs regarding GenAudio. See SEC Resp. SOF ¶ 109. |
| 112 | GenAudio had separate discussions with both the iPhone/iPod/iPad division and the Macintosh (or "Mac") division at Apple. Tiscareno served as GenAudio's primary point of contact for the iPhone/iPod/iPad division, and Isaac was the primary person working with GenAudio from the Mac division. Ex. 170, Isaac Inv. 13:17-14:2. | Undisputed for purposes of the Motion. |
| 113 | Tiscareno was not substantively involved in the discussions between GenAudio and the Apple Mac" division or in the Mac division's evaluation of GenAudio's technology and integration of GenAudio's technology into Mac products. Ex. 152, Tiscareno Dep. 110:5-14, 22-24, 150:6-8; Ex. 169, Isaac Dep. 49:5-16. | Undisputed for purposes of the Motion. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defs. SOF |
|---|---|---|
| 114 | When vendors contact Apple to engage in discussions of the vendors' technology, the ultimate goal of those discussions from the vendor's perspective is to reach an agreement with Apple to buy that technology, either through a licensing agreement, or a partnership/acquisition, and the purpose from Apple's perspective also is due to the potential for such an agreement. Ex. 152, Tiscareno Dep. 30:14-23; 50:14-51:3; Ex. 171, Hailey Inv. 32:23-33:4. | Undisputed for purposes of the Motion. |
| 115 | From the beginning of the discussions between GenAudio and Apple, Mahabub made clear to Apple that his goal was to reach a licensing agreement or acquisition of GenAudio's technology. Ex. 172 at 2; Ex. 173, Ex. 152, Tiscareno Dep. 70:23-71-7. | Undisputed for purposes of the Motion. |
| 116 | During its discussions and work with Apple, GenAudio successfully integrated its technology into Apple products. Ex. 169, Isaac Dep. 44:1-11, 117:16-118-24 (Isaac acknowledging GenAudio accomplished full embedded level integration by November 2009), 136:3-9, 175:21-176:21 (integration of GenAudio's technology was completed on the most complicated line of Mac computers and minimal effort would be needed to integrate the technology onto other types of Mac computers). | Undisputed for purposes of the Motion. |
| 117 | GenAudio and Apple executed a Non-Disclosure Agreement in July 2009. Mahabub Decl. ¶ 12. | Undisputed. |
| 118 | Apple discussed with GenAudio the potential need for GenAudio to sign additional non-disclosure agreements on multiple occasions in 2010 and 2011. Ex. 176 ("I need the new NDA to review as well that we discussed"); Ex. 177 at 1; Ex. 178 at 1; Ex. 179; Ex. 180 at 2; Ex. 181 at 1, 2 (Apple proposing further "evaluation agreements" with GenAudio); Ex. 169, Isaac Dep. 171:23-172:14, 173:12-24. | Disputed.  Tiscareno did not recall discussing additional NDAs with Mahabub and was confused about the various correspondence on the issue and Isaac sent Mahabub an email (Ex. 181) referring Mahabub to another Apple employee regarding "all the necessary evaluation agreements," but did not otherwise communicate with Mahabub about such agreements.  Ex. 225, Tiscareno Dep. 238:1 – 246:25 (at 243:22 – 24 "I really don't know what this was NDA … who's messed up on this – it was me, Ron, or Jerry."); Ex. 169, Isaac Dep. 171:23 – 173:24. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defs. SOF |
|---|---|---|
| 119 | Mahabub believed because GenAudio had already signed Apple's standard non-disclosure agreement, the fact Apple wanted GenAudio to execute further non-disclosure agreements meant those additional proposed agreements would be even more restrictive, and indicated Apple was interested in a licensing agreement or acquisition of GenAudio's technology. Ex. 150, Mahabub Dep. 97:17-20, 98:18-21; Mahabub Decl. ¶ 25. | Disputed.  There was no foundation for any belief that Apple had "indicated Apple was interested in a licensing agreement or acquisition of GenAudio's technology."  Apple never told Mahabub that it was interested in a licensing deal or in acquiring GenAudio's technology.  Mahabub's conduct supports a finding that he knew there was no foundation for such belief, and he set out to deceive his team and investors to hide that fact.  *See* Mot. SOF ¶¶ 78 - 82; *see also* Ex. 224, Isaac Dep. 32:3 – 13 ("A  We never discussed business opportunities with Jerry, never.  Q  But he mentioned it a number of times, right?  A I do not recall that, and I wouldn't have even actually entertained it; not to the -- to the least of it."); Ex. 38, Isaac Dep. 189:8 – 16; Ex. 226, Hailey Dep. 157:4 - 9. |
| 120 | Regarding GenAudio's March 15, 2010 letter to potential investors stating that GenAudio's 2010 stock offering "is being conducted to provide bridge capital until we can 'ink' a deal with a large consumer electronics company (referred to as the 'LCEC' throughout the PPM)," Tiscareno testified that there was nothing inaccurate regarding that statement. Ex. 152, Tiscareno Dep. 194:5-6, 195:4-21, 199:20-25 (discussing SEC Ex. 14). | Disputed.  Tiscareno did not agree that there was nothing inaccurate about the statement and he lacks foundation to testify as to the truth or falsity of GenAudio's offering materials, which is indicated by the cited testimony and the testimony surrounding the cited testimony including a set of questions and answers:  "Q.  Is there anything else, looking at this, that you find inaccurate?  A.  Well, it's I mean, I'd have to sit down and read everything line by line.  Q.  I'm just talking about the second paragraph.  A. Oh.  No.  Q.  Ok.  A.  … I mean, … I can think of opinions that you didn't ask about.  But it's just opinions that the document – that I've never read before, really."  Ex. 225, Tiscareno Dep. 199:20 – 200:5; *see generally id.* at 194:5 – 200:10. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defs. SOF |
|---|---|---|
| 121 | Regarding GenAudio's March 15, 2010 Private Placement Memorandum, which states as follows:<br><br>[GenAudio] is optimistic that the LCEC will eventually want access to our AstoundSound technology for their products. It is unclear what structure such access would take, but the Company believes the LCEC would either (i) integrate a portion of our AstoundSound Technology, namely ASE, into multiple product lines through a licensing arrangement or (ii) acquire all of our AstoundSound Technology or, at least, that portion the LCEC deems necessary for its integration plans<br><br>Tiscareno testified the statements are accurate. Ex. 152, Tiscareno Dep. 203:11-13, 204:6-7, 205:2-207:22 (discussing SEC Ex. 3 at 21). | Disputed.  Tiscareno's testimony begins with describing this section of the PPM as "[p]retty generous statements" and concludes with "[y]eah, I guess" as to their fairness and accuracy, demonstrating his lack of foundation and lack of complete agreement with the statements.  Ex. 152, Tiscareno Dep. 205:4 – 206:15 (discussing Ex. 3 at 21). |
| 122 | By August 2009, Tiscareno and Mahabub were working closely together regarding GenAudio's technology and the two communicated frequently. Ex. 152, Tiscareno Dep. 118:14-16, 120:5-8; Ex. 185 ("I . . . feel that we have become friends . . . .") | Undisputed for purposes of the Motion. |
| 123 | Mahabub repeatedly wrote to his contacts at Apple regarding his view that most of the work needed to implement GenAudio's technology into Apple products was completed and that GenAudio's technology could be included quickly into Apple products for sale to consumers. GenAudio's contacts at Apple did not tell Mahabub they disagreed with his view, which further encouraged Mahabub to believe his statements were correct. Ex. 189 ("[I]t is already for the most part done. . . . [I]t is in fact a very real and attainable goal for X-Mas product rollout if we work hard and fast[]!"); Ex. 152, Tiscareno Dep. 127:10-20, 128:20-24 ("Q: Did you talk to Mr. Mahabub about whether you agreed with that statement? . . . A. No, I never called him on those things."); 130:5-8; 134:10-16 (regarding Mahabub's frequent comments of this nature). | Disputed.  GenAudio's contacts at Apple did not "encourage" Mahabub to believe that GenAudio's technology could be included quickly into Apple products for sale to consumers; therefore, it was not reasonable for Mahabub to believe that Apple was anywhere near including GenAudio products into Apple products for sale to consumers.  Mahabub's conduct supports a finding that he knew there was no foundation for such belief, and he set out to deceive his team and investors to hide that fact. *See* Mot. SOF ¶¶ 78 – 82. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defs. SOF |
|---|---|---|
| 124 | Mahabub also repeatedly wrote to his contacts at Apple regarding his understanding that Apple's interest in GenAudio's technology, and its evaluation of GenAudio's technology was sufficiently advanced that a license agreement or acquisition would be completed between GenAudio and Apple in the near future, or that he was optimistic such a deal would take place soon. Again, GenAudio's contacts at Apple did not tell Mahabub that they disagreed with his view, which further encouraged Mahabub to believe his statements were correct. Ex. 193 (Mahabub saying in November 2009, "Hopefully Mac Division signs off on this and we can get moving on to the next step, especially if there is any hope of having this done by Macworld from the Marketing side, it would only make sense that we start to figure out the deal structure between Apple and GenAudio sooner rather than later."); Ex. 152, Tiscareno Dep. 143:5-12, 144:10-11, 145:1-12 (Tiscareno did not tell Mahabub his statement about the timeline of a possible deal was unrealistic); Ex. 190; Ex. 191 at 3 (Mahabub stating the path forward is simple: "1. Ink a licensing deal . . . 2. Hand over the actual AstoundAPI . . . 3. Ready to Ship."); Ex. 194 ("This would be a phenomenal time for Apple to consider putting out an Astound integrated set of product offerings for their Christmas product rollout"); Ex. 195; Ex. 196; Ex. 152, Tiscareno Dep. 250:2-251:15 (Tiscareno agrees that in September 2010 Mahabub appeared to believe discussions between GenAudio and Apple were moving forward in a manner that was "optimistic" for GenAudio); Ex. 197; Ex. 152, Tiscareno Dep. 262:17-263:7 (discussing Ex. 197); Ex. 169, Isaac Dep. 169:16-170:19 (Isaac did not respond to Ex. 197); Ex. 192 at 13 (Mahabub writing in September 2009, "I hope we can get this done on the fast track – potentially for inclusion in Apple's X-Mas product rollout strategy?); Ex. 169, Isaac Dep. 71:13-72:11; Ex. 199 (Mahabub stating he hopes there will be "multiple products from Apple incorporating AstoundSound" by the time of the upcoming WWDC conference); Ex. 169, Isaac Dep. 122:2-8, 125:15-17, 127:17-129:2 (Isaac did not read Mahabub's email in Ex. 199 and did not respond to it), 134:23-25 (Isaac did not pay attention to many of Mahabub's emails); Ex. 169, Isaac Dep. 207:10-19 (Isaac confirming he never discussed with Mahabub how long it might take to incorporate GenAudio's technology into Apple products); Ex. 150, Mahabub Dep. 64:4-17, 143:24-144:33 (Mahabub had discussion with Tiscareno regarding a Christmas product rollout); Ex. 219, Mahabub Dep. 310:21-311:11 (same). | Disputed that "GenAudio's contacts at Apple did not tell Mahabub that they disagreed with his view, which further encouraged Mahabub to believe his statements were correct." Mahabub's conduct supports a finding that he knew there was no foundation for such belief, and he set out to deceive his team and investors to hide that fact.  *See* Mot. SOF ¶¶ 66, 81-82.  *See also* SEC Resp. SOF ¶ 119. |
| 125 | Mahabub believed GenAudio was going to reach a deal with Apple for GenAudio's technology. Ex. 150, Mahabub Dep. 64:20-65:5, 94:24-95:1, 109:23-24, 110:2-4, 103:6-16, 181:9-20, 205:2-19. | Undisputed for purposes of the Motion with respect to the time period November 2009 to September 24, 2010. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defs. SOF |
|---|---|---|
| 126 | Mahabub testified he also had a conversation with Isaac in which Mahabub said "we need to figure out how we're going to license this to you; right?" and that Isaac responded "Well, we're not going to pay you a per unit royalty, you know that." This conversation led Mahabub further to believe a licensing deal would be reached with Apple. Ex. 150, Mahabub Dep. 95:9-97:16. | Undisputed that Mahabub provided such testimony, but disputed that this conversation could have led Mahabub to reasonably believe that Apple would enter into a licensing deal with GenAudio.  *See* Reply SOF ¶ 79. |
| 127 | On November 28, 2009, Mahabub sent his contacts at Apple a lengthy email in which he sought to negotiate the terms of a transaction with Apple for GenAudio's technology, including its architecture, price, patent ownership, and timing of its close. Ex. 190; Ex. 152, Tiscareno Dep. 173:3-7 (discussing Ex. 190: "Q: So [Mahabub's] trying to negotiate with you. You're just not negotiating back. A: Yeah.") | Undisputed for purposes of the Motion. |
| 128 | After Tiscareno received Mahabub's November 28, 2009 email, Tiscareno ignored it; he did not tell Mahabub that his attempt to negotiate a deal with Apple was premature or that his understanding of Apple' intent was misplaced. Ex. 152, Tiscareno Dep. 164:13-165:8, 167:17, 25-168:6; 173:3-7. Tiscareno also did not tell Mahabub that Tiscareno would not be responsible for any negotiation on behalf of Apple. Ex. 152, Tiscareno Dep. 174:22-175:24; Mahabub Decl. ¶ 26. | Undisputed for purposes of the Motion. |
| 129 | Isaac never told Mahabub that Isaac lacked the authority to make a decision about any business deal with GenAudio on the Mac side. ). Ex. 169, Isaac Dep. 160:22-161:10 ("[M]aking business decisions was way above my pay grade, and that remains a very accurate statement. Q: Do you recall ever telling that to Mr. Mahabub? A: No, I do not."). | Undisputed for purposes of the Motion. |
| 130 | Hailey did respond to Mahabub's November 28, 2009 email. In Hailey's response, he confirmed Apple is "interested in [GenAudio's] technology" and said "[w]e're making progress and building our story, but this is not something we can execute overnight. The business side of things would come into play after we have exec buy-in on the product side." Ex. 190 at 2. | Undisputed for purposes of the Motion. |
| 131 | Following Hailey's response to the November 28, 2009 email, Mahabub was focused on what Hailey had referred to as the "executive buy-in" as a "final milestone" to be reached before a deal with Apple could be reached for GenAudio's technology. Ex. 201; Ex. 152, Tiscareno Dep. 178:18-179:9 ("final milestone"); Ex. 190 at 1 (Mahabub asking when "exec buy-in might take place" and asking for a "ball park figure" on timing). | Undisputed for purposes of the Motion. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defs. SOF |
|---|---|---|
| 132 | After Hailey's response, Mahabub still believed "executive buy-in" at Apple could be obtained within the next few months. Ex. 188, Hailey Dep. 100:24-101:22 (Q: And you wrote that because it seems Mr. Mahabub thought the time frame would be faster than a couple of months, right? A: Correct."); *see also* Ex. 164 at 2 (Mahabub thanking Hailey for disclosing "the more realistic timeframe" and suggesting he still thought it could occur within 3-6 months). | Disputed.  The cited Hailey testimony merely confirms that Hailey wrote "this will take time, definitely more than a couple of months" to correct Mahabub's incorrect assumption that the time frame would be faster, and the cited Exhibit 164 does not establish that Mahabub communicated that he still believed 3 to 6 months was realistic, he writes "much appreciated you disclosing to me the more realistic timeframe.  This will help me to determine the forward direction of GenAudio over the next 3 to 6 months.  <u>Of course, if anything changes, and the timeline is compressed/shortened, please inform me ASAP about this</u> as Apple takes priority over everything else we are doing …" therefore, absent indication from Apple that the timeframe was shortened/compressed, Mahabub had no reason to believe that anything would occur within months. Ex. 164 (emphasis added); Ex. 188, Hailey Dep. 100:24-101:22. |
| 133 | In November 2009, Mahabub hired an intellectual property valuation specialist to value GenAudio's technology under several scenarios in anticipation of negotiations with Apple over a licensing agreement or acquisition. Ex. 198 at 39. | Undisputed for purposes of the Motion. |
| 134 | On May 6, 2010, Tiscareno and Hailey gave a demonstration of GenAudio's technology to a senior executive at Apple named Greg Joswiak. Ex. 152, Tiscareno Dep. 214:10-215:20 (confirming the meeting occurred on May 6, 2010). | Undisputed for purposes of the Motion. |
| 135 | Greg Joswiak, who was the Vice President of iPod/iPhone in the Marketing Department, is among the most senior executives at Apple. Ex. 216 (org. chart showing top Apple executives as of 2011, including Joswiak in the same role as in 2010); Ex. 152, Tiscareno Dep. 211:11-21, 212:3-214:2 (Tiscareno acknowledging "it doesn't get any higher than that"). | Undisputed for purposes of the Motion. |
| 136 | Greg Joswiak is known at Apple by the nickname "Joz", and both Tiscareno and Hailey refer to Joswiak using the "Joz" nickname. Ex. 152, Tiscareno Dep. 180:4, 208:21, 210:9-21; Ex. 188, Hailey Dep. 15:20-21, 144:25-145:10; Ex. 171, Hailey Inv. 18:5-7. | Undisputed for purposes of the Motion. |
| 137 | This May 6, 2010 meeting was when the "executive buy-in" at Apple would be determined. Ex. 152, Tiscareno Dep. 179:3-180:8. | Undisputed for purposes of the Motion. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defs. SOF |
|---|---|---|
| 138 | As a result, the May 6, 2010 presentation to Greg Joswiak was a "make-or-break" meeting regarding Apple's interest in GenAudio's technology. If Joswiak did not give a "green light" to continue with GenAudio, then discussions between GenAudio and Apple's iPhone/iPod/iPad division regarding potential use of GenAudio's technology in iPhone/iPod/iPad devices would end. Ex. 152, Tiscareno Dep. 218:13-17, 219:6-14. | Undisputed for purposes of the Motion. |
| 139 | Tiscareno also needed the May 6, 2010 meeting to result in a green light for Tiscareno to keep spending time related to GenAudio. Ex. 152, Tiscareno Dep. 221:1-222:7. | Undisputed for purposes of the Motion. |
| 140 | Mahabub's contacts at Apple told him how important this May 6, 2010 meeting was, and Mahabub understood discussions with the iPhone/iPod/iPad division would end if the meeting did not result in a green light for the project. Ex. 202 ("Trying to line you up with as much fire power as possible so we get a green light to continue to move forward!"), Ex. 152, Tiscareno Dep. 179:3-180:8, 219:6-14. | Undisputed for purposes of the Motion. |
| 141 | Tiscareno testified if he used a term such as "the big man" Tiscareno probably meant it as a reference to Steve Jobs without expressly using Steve's name. Ex. 152, Tiscareno Dep. 156:2-16. ("And, you know, if I – if I used them myself, it was probably – that's wink-wink – that's who it is.") | Undisputed for purposes of the Motion. |
| 142 | Mahabub worked with Tiscareno to prepare for the May 6, 2010 presentation. During those discussions, Tiscareno and Mahabub referred to the executive who would receive the presentation as "the man", "the executive", "the exec.", and "the big exec." (as an abbreviation for the "big executive"). Ex. 203 (Tiscareno discussing with Mahabub the preparation of demos of GenAudio's technology for someone at Apple whom Tiscareno refers to as "the man"); Ex. 202 ("the executive"), Ex. 204 ("the exec."), Ex. 205 ("the exec at Apple"), Ex. 206 ("the big exec at Apple"), Ex. 152, Tiscareno Dep. 208:19-209:7; Ex. 150, Mahabub Dep. 188:22-189:1 ("the big man"). | Dispute that Tiscareno referred to the executive as "the big exec." Exhibit 206 contains that reference, but is an email from Mahabub. |
| 143 | Tiscareno and Hailey may also have told Mahabub that the meeting was with "Joz", without using Greg Joswiak's actual name. Ex. 171, Hailey Inv. 33:11-17 ("We may have said that we – that we were going to pitch to Jaws.") | Undisputed for purposes of the Motion that they "may" have told him, though the fact also supports the proposition that they may not have told him. |
| 144 | Mahabub testified that when he spoke with Tiscareno and Hailey by phone in advance of the May 6 meeting, he had understood they told him the meeting was with "Jobs," meaning Steve Jobs, and Mahabub believed the May 6 presentation was to Steve Jobs. Ex. 150, Mahabub Dep. 189:1-3, 190:7-21, 221:19-223:7, 227:14-228:2; Ex. 219, Mahabub Dep. 290:12-291:3, 323:2-22 | Undisputed that Mahabub provided this testimony. |
| 145 | Mahabub has never heard the name Greg Joswiak, and was not told the May 6, 2010 meeting was with someone with that name. Ex. 150, Mahabub Dep. 217:13-25, 252:12-15. | Undisputed for purposes of the Motion. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defs. SOF |
|---|---|---|
| 146 | Mahabub testified that around February 2010, he also had a conversation with Tiscareno in which Tiscareno said words to the effect that "Michael [Hailey] and I want to make sure we have no hang-ups when we push this to the top, and we both are confident that we can get this okayed by the big man if we play our cards right." Ex. 150, Mahabub Dep. 142:15-143:2. | Undisputed that Mahabub provided this testimony. |
| 147 | The only individuals present during the May 6, 2010 meeting were Tiscareno, Hailey, and Greg Joswiak. Mahabub was not invited to attend and did not participate. Ex. 152, Tiscareno Dep. 217:22-25. | Undisputed for purposes of the Motion. |
| 148 | At the May 6 meeting, Joswiak "agreed that there was value in exploring ways to enhance the listening experience for people using iPods and iPhones" and thought there was value in continuing the exploration Ex. 188, Hailey Dep. 114:20-115:4, 117:15-19. | Undisputed for purposes of the Motion, but Hailey's description of Joswiak's response is hearsay and Joswiak's response does not suggest that Apple moved forward with GenAudio. Tiscareno testified that, in fact, his work on GenAudio was generally "dead in the water" after this meeting. *See* Ex. 225, Tiscareno Dep. 219:15 – 220:17 and 228:14 – 230:8. |
| 149 | After the May 6, 2010 meeting, Tiscareno and Mahabub continued to engage in substantive work in connection with possible use of GenAudio's technology on products for Apple's iPod/iPhone/iPad division. Ex. 152, Tiscareno Dep. 223:23-224:18; Ex. 208; Ex. 166 (Mahabub email to Tiscareno in July 2010 regarding work on a revised demonstration application); Ex. 176; Ex. 209; Ex. 178 (discussing continued work on the app for the iPad; Ex. 195; Ex. 167; Ex. 152, Tiscareno Dep. 253:11-16 (discussing Ex. 167 and admitting it reflects additional work being done in connection with GenAudio's technology in September 2010 related to the iPad); Ex. 168; Ex. 152, Tiscareno Dep. 258:18-259:9 ("Q: Does this reflect that there was still some more work being done on the iPad and iPod side? A: That's what it says here."); Ex. 197; Ex. 152, Tiscareno Dep. 260:1-18; Ex. 210; Ex. 152, Tiscareno Dep. 263:17-265:2 (Tiscareno admitting he was performing work connected to GenAudio technology in January 2011 and that it appears the work related to the iPad); Ex. 211; Ex. 169, Isaac Dep. 147:11-148:8 (Mahabub presentation given to Andrew Bright and Barry Corlett on September 23, 2010 was to demonstrate GenAudio's technology on both the iPad side and the Mac side; Corlett worked on audio architecture in the iPod division; the meeting was held in the iPod building); | Disputed. Tiscareno testified that he did not keep moving forward with GenAudio after May 6, 2010 and "I can't say 100 percent, but I believe at that point we were dead in the water," and "Q: Did you ever tell that to Jerry Mahabub? A: I – oh, he knew." He also testified that any work done may have related to "Ron [Isacc]." Ex. 225, Tiscareno Dep. 219:15 – 220:17 and 228:14 – 230:8. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defs. SOF |
|---|---|---|
| 150 | Any belief by Tiscareno that all of his post-May 6 work regarding GenAudio technology could have involved work for the Mac division rather than for the iPhone/iPod/iPad division is mistaken. Ex. 169, Isaac Dep. 141:22-142:12 (Isaac does not believe Ex. 208 relates to work done in connection with the Mac division); 148:12-149:2 (The potential NDA discussed in Ex. 176 does not relate to work being done on the Mac side); 165:22-166:8; 161:16-162:6 (same for Ex. 211); 150:21-152:4 (same for Ex. 178); 152:6-153:20 (same for Ex. 167). | Disputed.  See SEC Resp. SOF ¶ 149. |
| 151 | Mahabub believed the May 6, 2010 meeting had resulted in the critical "green light" to continue toward a transaction regarding GenAudio's technology and that discussions with the iPhone/iPod/iPad division were still moving forward. Ex. 219, Mahabub Dep. 300:22-301:15; Ex. 194 (Mahabub writing in July 2010 that "This would be a phenomenal time for Apple to consider putting out an Astound integrated set of product offerings for their Christmas product rollout"); Ex. 209; Ex. 197; Ex. 152, Tiscareno Dep. 262:17-263:7. | Disputed.  There was no foundation for Mahabub to believe that there was any "critical green light" and, in fact, his conduct supports a finding that he knew there was no such green light and he set out to deceive his team and investors to hide that fact.  The SEC objects to the citation to Tiscareno's deposition on the basis that Tiscareno has no foundation to testify as to Mahabub's state of mind.  *See* Mot. SOF ¶¶ 68-69; Ex. 152, Tiscareno Dep. 262:16 ("I don't know what he was thinking"). |
| 152 | Tiscareno does not recall ever telling Mahabub that based on the May 6, 2010 meeting, in Tiscareno's view, the discussions between GenAudio and the iPhone/iPod/iPad division at Apple had come to an end and would not continue. Ex. 152, Tiscareno Dep. 225:3-226:4, 228:6-229:20. | Undisputed for purposes of the Motion. |
| 153 | On September 23, 2010, Mahabub made a presentation to a number of Apple employees, including Andrew Bright, who was a very senior Apple employee, and Barry Corlett, who also was a senior Apple employee. Ex. 169, Isaac Dep. 146:1-3, 147:3-16; Ex. 152, Tiscareno Dep. 255:10-21. | Undisputed for purposes of the Motion. |
| 154 | Mahabub understood Tiscareno also was a senior employee at Apple. Ex. 150, Mahabub Dep. 38:3-7; Ex. 152, Tiscareno Dep. 20:3-15 (Tiscareno's title was "Senior Engineer" for Audio and Acoustic). | Undisputed for purposes of the Motion, though Mahabub's conduct in falsifying correspondence and making untrue statements about Apple executives evidences that he understood that Tiscareno was not senior enough to enter into a licensing or acquisition transaction with GenAudio.  *See generally* Mot. SOF ¶¶ 50 – 76 (describing fraudulent conduct regarding Apple executives). |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defs. SOF |
|---|---|---|
| 155 | After the September 23, 2010 meeting, nobody at Apple ever said to Mahabub that the Mac division had decided to end discussions with GenAudio or end further evaluation of GenAudio's technology. Ex. 169, Isaac Dep. 158:10-159:24. | Disputed. Isaac testified that he could not recall one way or the other if he told Mahabub that Mahabub's exchange with Bright "was not a very good exchange to be had with a senior Apple engineer." Isaac further explained that Mahabub's exchange with Bright "was a huge red flag … and it's not something I would have been proud of and would have retreated me quite a bit, quite honestly, to the point even that I wouldn't have wanted [Bright] seeing me exchange or mention [Mahabub]." Ex. 38, Isaac Dep. 159:8 – 18; Ex. 169, Isaac Dep. 158:20 – 25. |
| 156 | After the September 2010 meeting with Bright and Corlett, Apple and GenAudio continued to conduct work in connection with GenAudio's technology related to the Mac division. Ex. 212; Ex. 169, Isaac Dep. 162:17-165:15; Ex. 168; Ex. 169, Isaac Dep. 166:10-21; Ex. 197 ("I can now update the iPad/iPod and Mac side apps with the new processing that solves many issues we had with the current implementations you have . . . .") | Undisputed for purposes of the Motion, though no work was substantive. *See* Mot. SOF ¶ 92; Reply SOF ¶ 92. |
| 157 | After September 2010, work also continued between GenAudio and Tiscareno on the iPhone/iPod/iPad side. Ex. 168; Ex. 152, Tiscareno Dep. 258:18-259:9; Ex. 169, Isaac Dep. 165:22-166:8; Ex. 197; Ex. 152, Tiscareno Dep. 260:1-18; Ex. 210; Ex. 152, Tiscareno Dep. 263:17-265:2. | Undisputed for purposes of the Motion, though no work was substantive. *See* Mot. SOF ¶ 92; Reply SOF ¶ 92. |
| 158 | In early 2011, Apple's Advanced Technology Group conducted a further evaluation of audio technology in connection with Mac computers, including GenAudio's technology, and discussed that evaluation with GenAudio, including the possibility of signing an "evaluation agreement" with GenAudio. Ex. 181; Ex. 169, Isaac Dep. 170:24-173:24. | Disputed. Isaac testified that he does not recall whether or not GenAudio was part of the evaluation by the "Advanced Technology Group" and no further agreements were ever sent by Apple to GenAudio. Ex. 169, Isaac Dep. 174:1 – 8; Mot. SOF ¶ 99. |
| 159 | When Tiscareno left Apple in February 2011, he informed Mahabub that his supervisor, Jesse Dorogusker, was "fully aware and engaged with the project" relating to GenAudio. Ex. 214 | Undisputed for purposes of the Motion. |
| 160 | Mahabub testified he met with Dorogusker on two occasions regarding GenAudio's technology. Ex. 219, Mahabub Dep. 394:25-396:24. | Undisputed that Mahabub provided this testimony. |
| 161 | Mahabub was scheduled to meet again with Isaac on March 14, 2011. Although Mahabub went to Apple's campus for the meeting as scheduled, Isaac was unable to attend because he was delayed by car trouble. Instead, Isaac and Mahabub scheduled a meeting to talk by phone. Ex. 215. | Disputed that Mahabub and Isaac scheduled a time to talk by phone. The cited exhibit consists of Mahabub asking Isaac what his schedule looks like for a phone call, but does not schedule a call. Ex. 215. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defs. SOF |
|---|---|---|
| 162 | Apple's Mac division ultimately did not reach a deal with GenAudio for its technology because while some within Apple were supportive of that type of technology, others at Apple were not. As a result, interest in GenAudio's technology slowly fizzled out over time. Ex. 169, Isaac Dep. 176:22-177:23. | Undisputed for purposes of the Motion. |
| 163 | The Mac division never explained to Mahabub that interest in GenAudio's technology had fizzled out and that the Mac division would not be continuing to move forward with GenAudio. Ex. 169, Isaac Dep. 177:20-178:16. | Undisputed for purposes of the Motion. |
| 164 | GenAudio's March 15, 2010 Private Placement Memorandum, and the March 15, 2010 letter that accompanied it, included meaningful cautionary language regarding the risks facing GenAudio, including that GenAudio had not consummated any deal with Apple, and the specific fact there was no guarantee that such deal would be reached in the future. Ex. 198 at 5, 21, 39 (discussing the valuation report prepared in anticipation of negotiations for a deal with the LCEC, and stating, "there is no guarantee or assurance that any actual transactions will occur or that consummated transactions will result in the revenues projected in the Valuation Report, and the Company and its management make no representations or warranties concerning the same"), 40-49; SEC Ex. 14 (March 15, 2010 letter accompanying the Private Placement Memorandum). | Disputed.  This is a legal conclusion and not a statement of fact.  As discussed herein, GenAudio's documents did not include cautionary language that was "meaningful" or sufficient to nullify Defendants' misstatements and omissions made throughout GenAudio's offering documents, investor communications and GenAudio Team emails during the relevant period, including prior to and during March 2010. |
| 165 | GenAudio investors knew in 2011 that a deal with the LCEC, or Apple, had not been consummated. Investors knew this because of the passage of time without an announcement a deal had been reached. Investors' purchases of stock after that time were not based on any statements from GenAudio regarding discussions with, or a potential deal with Apple. That there would be no deal with Apple also was made clear during presentations to investors in early 2012. Declaration of George Marvin dated April 27, 2017, ¶ 3; Mahabub Decl., ¶ 27. | Undisputed that in 2011 GenAudio investors knew that a deal with the LCEC, or Apple, had not been consummated and "[t]hat there would be no deal with Apple" was made clear to some investors during some presentations in early 2012.  Disputed that, as a blanket statement, "[i]nvestors' purchases of stock after [2011] were not based on any statements from GenAudio regarding discussions with, or a potential deal with Apple."  In March 2011, Mahabub falsely claimed that GenAudio and Apple would be entering into a new set of agreements that would prohibit them from update investors regarding the LCEC and the Defendants then issued the 2011-2012 Offering Materials, which made material omissions.  *See* Mot. SOF ¶¶ 98; 100-104. |
| 166 | Some investors who purchased shares during 2010 to 2012 did not make their purchase decisions based on statements from GenAudio regarding discussions with, or the possibility of a deal with Apple. Declaration of Julie Eastwood dated April 28, 2017, ¶ 4. | Undisputed for purposes of the Motion. |
| | | |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defs. SOF |
|---|---|---|
|  | Paragraphs 167 through 180 are intentionally omitted by Defendants. |  |
|  |  |  |
| 181 | With one possible exception, the "GenAudio Team Emails,"3 the emails that Mahabub sent out detailing his communications and interactions with Apple, were sent only to GenAudio Team members. The exceptions were sent to people "who [Mahabub] was interested in soliciting to join the board of directors." "GenAudio Team" members, as used in this context, means GenAudio employees, full-time consultants, and board members. SOF ¶¶ 57–60, 63, 67–68, 72, 75 (referring to recipients of these emails as the "GenAudio Team Mahabub Decl. ¶¶ 7–8; Ex. 87 (Mahabub Depo. Vol. 1) 60:17–24, 61:5–17. | Undisputed for purposes of the Motion that "[w]ith one possible exception, the 'GenAudio Team Emails,' the emails that Mahabub sent out detailing his communications and interactions with Apple, were sent only to GenAudio Team members." Disputed that "[t]he exceptions were sent to people 'who [Mahabub] was interested in soliciting to join the board of directors.'"  Mahabub "sponsored" Skluzak onto the GenAudio Board in 2012 and Skluzak joined the Board in April 2012 – nearly two years after Mahabub forwarded Skluzak the falsified transcription.  Ex. 227, Skluzak Dep. 69:4 – 6; 89:17 – 20. |
| 182 | The only exception the SEC identified is Exhibit 40, which Mahabub also forwarded to Skluzak. Mahabub Decl. ¶ 8; Ex. 40 at 1. *See also* SOF ¶¶ 209-12 (addressing Skluzak). | Undisputed for purposes of the Motion. |
| 183 | The GenAudio Team Emails were not intended to be distributed beyond internal team members. *I.e.*, they were confidential. Mahabub Decl. ¶¶ 12–15; Ex. 87 (Mahabub Depo. Vol. 1) 65:5–9. | With the exception of Exhibit 40, undisputed for purposes of the Motion.. |
| 184 | The GenAudio Team knew they were not supposed to forward the GenAudio Team Emails to anyone else. Mahabub Decl. ¶¶ 12–15; Ex. 40 at 1, 2 ("You must delete this email after you read it" and "DELETE THIS EMAIL AFTER YOU READ IT – DO FOLLOW MY INSTRUCTIONS"). | Disputed.  The cited evidence does not reflect the knowledge or understanding of the GenAudio Team.  *See also* SEC Resp. SOF ¶¶ 187 and 214. |
| 185 | None of the GenAudio Team Emails ask, or suggest, that the recipients forward the emails to people outside the GenAudio team, including potential investors. Exs. 8, 9, 10, 40, 42, 44, 46, 47, 49, 51, 57, 60, 61, 64, 73. | Undisputed for purposes of the Motion. |
| 186 | With the possible exception of Exhibit 40,4 the MSJ does not identify any occasion where any recipient of Mahabub's GenAudio Team Emails forwarded the emails to non-team members or potential investors. SOF ¶¶ 43, 57–60, 63, 67–69, 72, 75. | Undisputed for purposes of the Motion. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defs. SOF |
|---|---|---|
| 187 | With the possible exception of Skluzak's purchase of GenAudio stock (SOF ¶ 70), the MSJ does not identify any GenAudio stock purchases that it alleges were based on the GenAudio Team Emails. SOF ¶¶ 43, 57–60, 63, 67–69, 72, 75.; Exs. 8, 9, 10, 40, 42, 44, 46, 47, 49,51, 57, 60, 61, 64, 73. | Disputed and irrelevant.  While the SEC is not required to prove reliance and is therefore not required to tie specific untrue statements to specific purchases, the SEC does allege that the GenAudio Team emails were "in connection with" the purchase and sale of securities and "in the offer and sale" of securities, and that the false information spread by Defendants – through the GenAudio Team emails and other untrue statements – influenced investment decisions.  Further, Mattos testified that he did convey positive information from "team updates" to investors "[i]n a very basic sense" and that "the vast majority" of investors knew that the LCEC was Apple.  *See* Ex. 228, Mattos Inv. 143:9 – 149:23. |
| 188 | Mahabub is not aware of any instance where a recipient of the GenAudio Team Emails purchased GenAudio stock based on the emails or their contents. Mahabub Decl. ¶ 19. | Undisputed for purposes of the Motion, but irrelevant. |
| 189 | Nor did Mahabub intend for anyone to invest based on the contents of the GenAudio Team Emails. Mahabub Decl. ¶¶ 9, 20. | Disputed.  The record reflects that Mahabub's false statements were made in connection with a scheme that included raising investor funds to continue to permit GenAudio to operate and, therefore, maintain Mahabub's lifestyle.  *See* Mot. SOF ¶¶ 10 – 13 and 40; Exs. 8, 9, and 10 (asking the GenAudio Team for assistance with fundraising); Ex. 40 (forwarding the false transcription to Skluzak); Ex. 30, Skluzak Tr. at 29:12 – 30:5 (describing oral conversations with Mahabub about Jobs and Apple). |
| 190 | The MSJ does not allege that any of Mahabub's recipients of the GenAudio Team Emails forwarded the emails to anyone who was not a member of the GenAudio Team.5SOF ¶¶ 57–60, 63, 67–68, 72, 75 (referring to recipients of these emails as the "GenAudio Team"). | With the exception of Exhibit 40, undisputed for purposes of the Motion, but irrelevant. |
| 191 | With the exception of Exhibits 8, 9, and 10, Mahabub's primary purpose in sending the GenAudio Team Emails was to keep the GenAudio Team motivated during a difficult, and exhausting, start-up stage and software development process. Mahabub Decl. ¶¶ 9–10; SOF ¶ 44. | Disputed.  The record reflects that Mahabub's false statements were made in connection with a scheme that included raising investor funds to continue to permit GenAudio to operate and, therefore, maintain Mahabub's lifestyle.  *See* Mot. SOF ¶¶ 10 – 13. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defs. SOF |
|---|---|---|
| 192 | During the 2009 to 2012 timeframe, GenAudio, like most tech sector start-ups, was characterized by a high stress work-environment. High turnover and low morale were constant problems. These problems were exacerbated by (as is typical at many start-ups) inconsistent payment of wages. Mahabub Decl. ¶ 10. | Undisputed for purposes of the Motion. |
| 193 | It is common in the software development industry to go to great lengths to motivate employees. Mahabub Decl. ¶ 11. | Disputed.  Mahabub's allegation is inadmissible as irrelevant (Fed.R.Evid. 401 and 402), confusing and misleading (Fed.R.Evid. 403), lacking foundation (Fed.R.Evid. 901), and providing impermissible opinion testimony (Fed.R.Evid. 701). |
| 194 | With the exception of Exhibits 8, 9, and 10, the MSJ does not allege that any of the GenAudio Team Emails contain requests to GenAudio employees from Mahabub for help finding investors. SOF ¶¶ 11–12. | Undisputed for purposes of the Motion. |
| 195 | When a GenAudio Team member knew someone who might be interested in purchasing GenAudio stock, the company's standard practice was to have the team member tell the potential investor to contact Mahabub or Mattos, who would provide the potential investor with the company's investment materials. Mahabub Decl. ¶¶ 18, 20; Ex. 87 (Mahabub Depo. Vol. 1) 183:1–18 (this was the company's "modis [sic] operandi"). | Undisputed for purposes of the Motion. |
| 196 | None of the GenAudio Team Emails ask the recipients to forward them to potential investors. Exs. 8, 9, 10, 40, 42, 44, 46, 47, 49, 51, 57, 60, 61, 64, 73. | Undisputed for purposes of the Motion. |
| 197 | Mahabub did not intend or anticipate that the recipients of the GenAudio Team Emails to forward them to potential investors. Mahabub Decl. ¶ 13. | Undisputed for purposes of the Motion, but irrelevant.  Mahabub's conduct, including his communications with the GenAudio Team and with investors, evidences that he did intend for the content of the emails to reach investors.  *See* SEC Resp. SOF ¶ 189. |
| 198 | With the possible (and disputed) exception of Skluzak's receipt of Exhibit 40,6 Mahabub was not aware, at the time, of any instance where a member of the GenAudio Team forwarded one of the GenAudio Team Emails to a potential investor. Mahabub Decl. ¶ 15. | Undisputed for purposes of the Motion. |
| 199 | The GenAudio Team Emails were internal corporate communications. Mahabub Decl. ¶ 13. | With the exception of Exhibit 40, undisputed for purposes of the Motion. |
| 200 | The GenAudio Team Emails were not distributed to the public or included among materials provided to potential investors in the 2010 Offering or the 2011-2012 Offering. Mahabub Decl. ¶ 16. | Undisputed for purposes of the Motion. |
| 201 | Apart from Exs. 8, 9, and 10, the MSJ does not identify any GenAudio Team Email where Mahabub asks for help finding investors from the GenAudio Team. SOF ¶¶ 11, 12, 57–60, 63, 67–68, 72, 75. | Undisputed for purposes of the Motion. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defs. SOF |
|---|---|---|
| 202 | None of the GenAudio Team emails ask the recipients to invest in GenAudio. Mahabub Decl. ¶¶ 17–18; Ex. 87 (Mahabub Depo. Vol. 1) 182:14–183:20 (re Ex. 10, requests for help with financing meant, if team members knew any investors who might be interested in GenAudio, Mahabub and/or Mattos would like to talk to them). | Disputed.  Nothing in the exhibits limits the solicitation to non-recipients.  Exhibit 9 touts GenAudio as a good investment to the recipients and states "[t]ime to go back into fund raising mode, and if any of you feel like helping out with this effort, I would certainly appreciate it.  It's not like you are doing your friends and family a bad thing by getting them into GenAudio at this stage in the game." Exhibit 10 states "Any help from all of you with this financing effort would be great."  Exs. 9 and 10; *see also* Reply SOF ¶ 86. |
| 203 | Nothing in Exhibits 8, 9, and 10 asked GenAudio Team members to personally invest in GenAudio. Mahabub Decl. ¶ 18; Exs. 8, 9, and 10; Ex. 87 (Mahabub Depo. Vol. 1) 182:14–183:20 (re Ex. 10, requests for help with financing meant, if team members knew any investors who might be interested in GenAudio, Mahabub and/or Mattos would like to talk to them). | Disputed.  See response to paragraph 202 above. |
| 204 | Mahabub believed all the optimistic representations in Exhibits 8, 9, and 10 at the time he made them. Those statements, concerning his beliefs regarding the value of an investment in GenAudio, that the SEC highlights in Exhibits 8, 9, and 10 accurately reflected Mahabub's opinions at the time he sent these emails. Mahabub Decl. ¶¶ 21–23; Ex. 8 at 2; Ex. 9 at 1; Ex. 10 at 1.. | Disputed.  Mahabub's conduct in falsifying documents and making untrue statements evidences his disbelief and the exaggeration of the value of any investment in GenAudio.  Mahabub encouraged investment in GenAudio to raise money to fund his business, which in turn funded his lifestyle.  *See* Mot. SOF ¶¶ 10 - 13; SEC Resp. SOF ¶ 207 (Mahabub falsified a portion of the email); SEC Resp. SOF ¶ 205. |
| 205 | The alterations that the SEC highlighted in the forwarded email in Ex. 10 (see MF 45) were not included in the original email that Mahabub sent to Tiscareno et al. Nonetheless, they were understood by Mahabub to be factually accurate and reflected other conversations Mahabub had with Tiscareno and other Apple employees. Mahabub Decl. ¶ 23; Ex. 10 at 1; Ex. 83 at 8. | Disputed.  Mahabub's conduct in falsifying documents and making untrue statements evidences his disbelief.  Mahabub never communicated with Schiller regarding GenAudio, Schiller had no involvement with GenAudio, and Apple never told Defendants that it planned to incorporate GenAudio's technology in any of its new product roll-outs.  *See* Mot. SOF ¶¶ 54; 78. |
| 206 | Nothing in Exhibits 8, 9, and 10 asked GenAudio Team Members to convey information concerning a possible deal between GenAudio and Apple to potential shareholders. Exs. 8, 9, 10. | Disputed.  The Exhibits all encourage the GenAudio team to solicit investors based on GenAudio's current status, about which Mahabub was providing material, untrue information.  *See* Mot. SOF ¶¶ 10 – 11; Ex. 8, 9, and 10. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defs. SOF |
|---|---|---|
| 207 | Exhibits 8 and 9 do not contain any altered correspondence between Mahabub and Apple employees. Mahabub Decl. ¶ 22; Exs. 8, 9. | Disputed.  Mahabub altered the July 6, 2009 email from Barry Corlett to Mahabub.  *Compare* Ex. 242 at 1 ("Hi Jerry, Thanks.  I am out travelling this week.  I will attend to this when I'm back on the 13th.  thanks, - Barry") to Ex. 8 at 13 (including numerous additional sentences, including "Both Victor and I have been very impressed with the way you have handled yourself up to this point, answered our high level questions, and the demo was very compelling."). |
| 208 | While Exhibit 10 contains altered correspondence from Mahabub to Apple employees, the alterations appear within Mahabub's correspondence to Apple employees. Exhibit 10 does not contain any correspondence from Apple employees to Mahabub. Mahabub Decl. ¶ 23; Ex. 10. | Undisputed, but irrelevant. |
| 209 | Skluzak decided to invest in GenAudio in April, 2010, well before he received Ex. 40 on May 6, 2010. Ex. 85 (Skluzak Depo.) 58:3–60:5. | Undisputed for purposes of the motion, but irrelevant. |
| 210 | Skluzak testified that he did not rely upon Exhibit 40 when choosing to invest in GenAudio. Ex. 85 (Skluzak Depo.) 61:21–62:10. | Undisputed for purposes of the motion, but irrelevant. |
| 211 | Mahabub's intent in sending Ex. 40 to Skluzak was in furtherance of his attempts to get Skluzak to join GenAudio's board of directors, not to induce Skluzak to purchase any GenAudio stock. Mahabub Decl. ¶ 8; Ex. 87 (Mahabub Depo. Vol. 1) 60:17–24, 61:5–17. | Disputed.  *See* SEC Resp. SOF ¶ 181. |
| 212 | Mahabub wanted Skluzak on GenAudio's board because of Skluzak's business experience and track record. Mahabub Decl. ¶ 8. | Undisputed for purposes of the Motion, but irrelevant. |
| 213 | Mattos communicated with potential investors (friends and family) by phone or by email. Ex. 86 (Mattos Depo.) 29:11–13. If by phone, no notes. *Id.* at 29:14–19. If by email, he used his GenAudio email, which he produced to the SEC. *Id.* at 29:25–30:6. | Undisputed. |

**Summary Judgment Table Of Statements Of Facts, Responses, And Replies**

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defs. SOF |
|---|---|---|
| 214 | In its MSJ, the SEC did not produce any evidence that Mattos ever actually forwarded one of the GenAudio Team internal emails to potential investors, or communicated any of the facts within them to potential investors. SOF ¶¶ 5–6, 10–11, 43–44, 57–60, 68, 72, 75. | The SEC disputes that Mattos never "communicated any of the facts [within the GenAudio Team emails] to potential investors." The record reflects that Mattos may have, but he has been unable to recall specific conversations. *See* Response to SOF ¶ 187; *see also* Ex. 6, Mattos Dep. 70:20 – 24 (Q. Okay. Would you provide those potential shareholders with the information that Mr. Mahabub was providing to you about Apple? A. Perhaps, but again, I don't recall any specific conversations."); *id.* at 72:3 – 8 (testifying that he believed the information Mahabub provided in Ex. 47). |
| 215 | All of the GenAudio Team Emails were sent while the NDA between Apple and GenAudio was in effect. Mahabub Decl. ¶ 14; Ex. 84 (NDA). | Undisputed for purposes of the Motion. |
| 216 | Pursuant to the NDA, "Confidential Information" includes information concerning "the nature of [the parties'] business relationship, including, if applicable, the fact that one party provides or may provide goods or services to the other, and the parties' discussions concerning the "Project." Further, "Project" is defined as GenAudio's "AstoundSoundTM and AstoundStereoTM software processing for integration into Apple products." Ex. 84 at ¶ 1. | Undisputed for purposes of the Motion. |
| 217 | Each of the GenAudio Team Emails concerned the business relationship between GenAudio and Apple; the possibility that GenAudio might provide goods or services to Apple, and/or the integration of GenAudio's software into Apple products. Mahabub Decl. ¶ 13; Exs. 8, 9, 10, 40, 42, 44, 46, 47, 49, 51, 57, 60, 61, 64, 73. | Disputed because many material statements within the emails were untrue and/or falsified and therefore did not accurately reflect "the business relationship between GenAudio and Apple; the possibility that GenAudio might provide goods or services to Apple, and/or the integration of GenAudio's software into Apple products." *See* Mot. SOF ¶¶ 57 – 60, 63, 67 – 68, 72, and 75. |
| 218 | Mahabub had personal relationships with many investors, and knew them to be accredited. Mahabub Decl. ¶ 5. | Undisputed for purposes of the Motion as to the general statement, but the SEC does dispute that Mahabub had personal relationships with all investors or a basis to reasonably believe that all investors were accredited, including Marvin. *See* Second Declaration of George Marvin; Exs. 26 and 220; Ex. 235, Mahabub Dep. at 468:1-11. |