IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 15-cv-2118-WJM-MLC

SECURITIES & EXCHANGE COMMISSION,

    Plaintiff,

v.

TAJ JERRY MAHABUB, and
GENAUDIO, INC.,

    Defendants.

# ORDER DENYING MOTION TO STRIKE AND DENYING
# MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE

This is a securities fraud case that Plaintiff Securities and Exchange Commission ("SEC") has brought against Taj "Jerry" Mahabub ("Mahabub") and the company he founded, GenAudio, Inc. ("GenAudio") (together, "Defendants"). This case is deceptively complicated because, although it is beyond dispute that Mahabub sometimes lied about certain of GenAudio's business relations, it is not always clear how these lies fit within the framework of the various theories of liability the SEC asserts.

Currently pending before the Court are two substantive motions: (1) the SEC's Motion for Summary Judgment, seeking to establish Defendants' liability on all causes of action, leaving only remedies for further consideration (ECF No. 53); and (2) Mahabub's Motion to Strike Exhibits Submitted with Plaintiff's Reply in Support of Summary Judgment ("Motion to Strike") (ECF No. 75), which GenAudio has joined (ECF

No. 77). Also before the Court is GenAudio's Request for Oral Argument on Summary Judgment (ECF No. 67) and Mahabub's Joinder in and Request for Oral Argument on Summary Judgment (ECF No. 69).

For the reasons explained below, the Motion to Strike will be denied. As for the Motion for Summary Judgment, the Court reluctantly must send the parties back to the proverbial drawing board. There are too many problems with both parties' briefs that the Court has no confidence it can make a well-informed, well-supported decision on the current record—and these problems are too extensive to be sorted out simply through oral argument. Accordingly, the SEC's Motion for Summary Judgment will be denied without prejudice to re-filing, and Defendants' requests for oral argument will be denied as moot.

## I. EVIDENTIARY OBJECTIONS & THE MOTION TO STRIKE

Summary judgment turns on whether material facts are genuinely disputed. Defendants have attempted to create factual disputes through an extended series of evidentiary objections, and through their Motion to Strike, which seeks to prevent the SEC from addressing Defendants' evidentiary objections.

As required by WJM Revised Practice Standard III.E.3, the SEC's Motion for Summary Judgment included a statement of material facts in numbered paragraphs, with citations to supporting evidence. (ECF No. 53 at 9–30.)[1] And, as required by WJM Revised Practice Standard III.E.4, Defendants included in their respective response briefs a section admitting or denying the SEC's various asserted facts. (ECF No. 58 at

---

[1] All ECF page citations are to the page number in the ECF header, which does not always match the document's internal pagination.

5–15; ECF No. 60 at 6–19.)[2]  However, the vast majority of Defendants' denials are solely "on the basis [that] the evidence is inadmissible."  (*See id.*, *passim.*)  As to these denials, Defendants cite to a separate, 19-page document[3] ("Objections Brief") that GenAudio attached to its response brief.  (*See* ECF No. 58-71.)

The Objections Brief explains in detail Defendants' evidentiary objections.[4]  The majority of these objections are highly technical, often having to do with authentication, such as the failure to include the shorthand reporter's signed certification page at the end of an exhibit comprising deposition excerpts (*id.* at 5–6); or, as to documentary evidence, the fact that "Plaintiff has not cited to anything in the record properly authenticating the [document]," including many documents that Defendants produced from their own files (*id.* at 9–19).  Defendants also object that the SEC's Federal Rule of Evidence 1006 summary exhibits are based on documents that were not themselves introduced into the summary judgment record (*id.* at 6–8), although that Rule only requires the proponent to make the underlying documents "available for examination . . . at a reasonable time and place."  Defendants nonetheless frame these Rule 1006 exhibits as "violat[ing] the best evidence rule," referring to Rule 1002.  (ECF No. 58-71 at 6–8.)  Finally, Defendants assert a number of hearsay objections, mostly regarding e-mails sent or received by persons expected to be witnesses at any trial in this case.

---

[2] This portion of Mahabub's response brief (ECF No. 60) duplicates verbatim the corresponding portion of GenAudio's response brief (ECF No. 58).  For simplicity, the Court will henceforth only cite to ECF No. 58 when discussing Defendants' attempts to dispute the SEC's asserted material facts.

[3] Calculated according to WJM Revised Practice Standard III.C.1.

[4] There is no basis in the undersigned's Revised Practice Standards for a filing like the Objections Brief.  Defendants effectively granted themselves, without leave, another 19 pages of summary judgment briefing—something which the Court does not permit nor tolerate.

(*See, e.g., id.* at 11–12, 14–15, 16–17.)

The SEC, in its summary judgment reply brief, attached a separate document responding to the Objections Brief. (ECF No. 66-27.) The SEC also attached evidence filling in the purported gaps asserted by Defendants, such as shorthand reporter certifications and additional deposition excerpts showing that various witnesses had authenticated the e-mails and other documentary evidence attached to the opening brief. (*See* ECF Nos. 66-1 through 66-23 & 66-25 through 66-26.)

Defendants then filed their Motion to Strike, opening with the following lines: "'Do-over,' 'reboot,' and 'second bite of the apple' are all terms that could be applied to the SEC's Reply in Support of Summary Judgment. . . . [N]o provision of FRCP 56, governing motions for summary judgment, provides for such an extreme 'mulligan.'" (ECF No. 75 at 3.) Defendants argue that the SEC's newly attached evidentiary excerpts should be stricken, or that Defendants should at least be permitted to file surreplies. (*Id.* at 4, 10.)

Defendants' attorneys apparently choose to ignore Federal Rule of Civil Procedure 56(c)(2): "A party may object that the material cited to support or dispute a fact *cannot* be presented in a form that *would be admissible* in evidence" (emphasis added). This is the only appropriate basis on which to raise an evidentiary objection at the summary judgment phase. To be sure, there exist legitimate evidentiary objections, including authenticity objections, that a party might raise against summary judgment evidence. But, unless "apparent from the context," the objection must "state[] the specific ground," Fed. R. Evid. 103(a)(1)(B), or in other words, explain why the proponent of the evidence will have no way of authenticating it at trial (*e.g.*, lack of a

4

competent witness to testify about the document's creation). Defendants' objections uniformly fail this requirement. The Court could find no objection where it was apparent from the context why the SEC could not present the content of an exhibit in an admissible form at trial. Thus, Defendants had a duty to state the specific ground for believing as much. They nowhere did so—thus tacitly admitting that they had no good faith basis for such an objection, and were interposing it simply to avoid admitting the SEC's factual assertions. In other words, Defendants' attorneys, rather than taking their role as officers of the Court seriously and assisting it in "secur[ing] the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, decided instead to play a purely procedural game—and, moreover, to play according to the wrong rules, having disregarded Rule 56(c)(2).

The Motion to Strike, for its part, doubles down on these juvenile tactics. To begin, the undersigned enforces no restriction against attaching evidence to a reply brief. "[E]vidence attached to a reply brief rarely eliminates a dispute over a material fact. But there is no blanket procedural exclusion of such evidence." *Olivero v. Trek Bicycle Corp.*, 2017 WL 5495817, at *6 (D. Colo. Nov. 16, 2017).

Defendants are correct that there may be instances when reply-brief evidence raises a genuinely new issue to which the summary judgment opponent should be given an opportunity to respond, if the evidence is not stricken. (*See* ECF No. 75 at 6 & n.6.) But Defendants nowhere explain how the SEC's reply-brief evidence prejudices them, or what they could possibly address by way of a surreply to something like a shorthand reporter's certificate.

For all of these reasons, the Motion to Strike will be denied. Normally, the Court

would also deem Defendants to have admitted any statement to which their only objection was evidentiary inadmissibility. However, for reasons independent from Defendants' improper objections, the SEC's statement of material facts needs reworking, as explained in Part II, below. Because the SEC must file a new statement of facts, Defendants will have an opportunity to file a proper response. In so doing, the Court calls the parties' attention to the undersigned's Revised Practice Standards, as recently updated, which provide as follows regarding responses to statements of material fact:

> The opposing party may not "deny" an assertion on grounds of evidentiary inadmissibility or other reasons for inadmissibility (including irrelevance, lack of authenticity, lack of foundation, incompleteness, waiver, or estoppel). The opposing party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible at trial," Fed. R. Civ. P. 56(c)(2), and any party so objecting must include a concise explanation of its objection, but the party must still admit or deny the factual substance of the assertion, unless doing so would violate a recognized privilege.
>
> * * *
>
> All of the [foregoing] requirements . . . apply to th[e] Response Concerning Additional Disputed Facts [contained in a reply brief].

WJM Revised Practice Standards III.E.4.c & III.E.6.b (effective Dec. 1, 2017).

## II. PROBLEMS WITH THE STATEMENT OF MATERIAL FACTS

Most of this case is fundamentally a question of "what happened when." Inexplicably, however, the SEC presents most of its material facts out of chronological order. (ECF No. 53 at 9–30.) This has made it very difficult and extraordinarily time-consuming for the Court to evaluate what Mahabub did or did not know, or what he

6

should have known, at any given time.  Accordingly, in the SEC's revised summary judgment motion, it should endeavor to present its statement of material facts in precise chronological order as much as possible, and Defendants should do the same in any statement of additional disputed facts.

The Court recognizes that some assertions do not fit neatly onto a timeline, such as facts based on summaries of many stock transactions over the course of months or years.  (*See* ECF No. 53 at 12, ¶ 15.)  The Court therefore does not mandate chronological order in every possible respect.  A few matters are perhaps best organized topically rather than chronologically.  But for the most part, the significance of the parties' factual assertions would be much more readily discernible if presented in strict chronological order.

### III.  PROBLEMS WITH THE MERITS

#### A.    The SEC's General Approach

As currently framed, the SEC's Motion for Summary Judgment essentially argues that a cloud of misrepresentations and omissions collectively satisfies a cloud of liability theories.  (*See* ECF No. 53 at 32–45.)  To be sure, the various forms of liability under Securities Act § 17(a) (15 U.S.C. § 77q(a)), Exchange Act § 10(b) (15 U.S.C. § 78j(b)), and Rule 10b-5 (17 C.F.R. § 240.10b-5) share common elements, but the Court has no power to give the SEC a "general verdict" at summary judgment.  If the Court finds for the SEC at all, the Court must be able to explain precisely *which* statements, collections of statements, or other actions violated *which* provisions of Securities Act § 17(a), Exchange Act § 10(b), and/or Rule 10b-5.

The Court requires something more formulaic from the SEC.  The Court does not

wish to precisely dictate how the SEC should present its arguments. The Court can, however, envision a mode of presentation that would likely be helpful. The SEC would first set forth the elements of each distinct theory of liability, *i.e.*, the elements of a Securities Act § 17(a)(1) violation, the elements of a Securities Act § 17(a)(2) violation, and so forth.[5] Then the SEC would set forth a particular statement, collection of statements, action, or series of actions that the SEC believes satisfies the elements of at least one of these theories, with argument as to each contested element under each theory.[6] Then the SEC would move on to the next statement, collection of statements, etc., and repeat the process.

Again, the Court does not order that the SEC present its arguments in this format. There may be other sensible ways to accomplish the Court's objective. But the SEC must keep that objective in mind—the Court must be able to understand precisely which actions allegedly violated which portion(s) of the securities laws.

## B. Elemental Considerations

Given the Court's emphasis on elements, above, it is only fair to state what the Court believes the elements to be, as well as to point out some unresolved questions. If a party disagrees with the Court's statement of the elements or other analysis in this regard, the party should so state in its revised summary judgment filings, and explain why the Court's view is incorrect.

---

[5] As will become clear below, the Court sees more distinctions in these various theories than is normally evident in the case law.

[6] In some cases, it is beyond dispute that Mahabub made a knowingly false statement. And in all cases, it appears there is no dispute regarding the "jurisdictional" element, *i.e.*, interstate commerce or the mails has been satisfied.

8

1. <u>Exchange Act § 10(b)/Rule 10b-5</u>

Exchange Act § 10(b) declares,

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange * * * [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement[,] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Acting under its rulemaking authority, the SEC promulgated Rule 10b-5:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
>   (a) To employ any device, scheme, or artifice to defraud,
>
>   (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
>   (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

The commonly stated elements of an Exchange Act § 10(b)/Rule 10b-5 claim are as follows: (1) a misrepresentation or omission (2) of material fact (3) made with scienter (4) in connection with the purchase or sale of a security (5) using any means of

9

interstate commerce or the mails. *SEC v. Wolfson*, 539 F.3d 1249, 1256 (10th Cir. 2008). Notably missing from these elements is reliance or injury: "The SEC is not required to prove reliance or injury in enforcement actions." *Geman v. SEC*, 334 F.3d 1183, 1191 (10th Cir. 2003). However, only Rule 10b-5(b) addresses material misstatements or omissions. Accordingly, the first and second elements of a Rule 10b-5(a) claim should require, instead of a material misstatement or omission, employment of any device, scheme, or artifice to defraud. Similarly, the first and second elements of a Rule 10b-5(c) should require, instead of a material misstatement or omission, an act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

2. Securities Act § 17(a)

Securities Act § 17(a) makes it

> unlawful for any person in the offer or sale of any securities[,] . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly
>
> (1) to employ any device, scheme, or artifice to defraud, or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).

Given the obvious similarities between Rule 10b-5 and Securities Act § 17(a), it

10

is often said that § 17(a) claims proceed under the same elements as an Exchange Act § 10(b)/Rule 10b-5 claim, except that 17(a)(2) and (3) do not require scienter. *See, e.g.*, *SEC v. Arcturus Corp.*, 171 F. Supp. 3d 512, 534–35 (N.D. Tex. 2016) ("To establish a prima facie case under Section 17(a), the SEC must essentially prove the same elements as for Section 10 and Rule 10b-5 violations, except scienter is not an element under Section 17(a)(2) or 17(a)(3)."). But, says the case law, in no case must the SEC prove reliance by an investor on the misrepresentations or omissions. *Wolfson*, 539 F.3d at 1264 n.17.

The lack of a scienter requirement as to § 17(a)(2) and (3) is beyond question. *See Aaron v. SEC*, 446 U.S. 680, 697 (1980) ("the language of § 17(a) requires scienter under § 17(a)(1), but not under § 17(a)(2) or § 17(a)(3)"). However, it would also seem beyond question that § 17(a)(2) requires a showing of reliance and injury. Its plain language addresses alleged violators who "obtain money or property by means of any untrue statement of a material fact or [a material] omission." 15 U.S.C. § 77q(a)(2). Consequently, there must be injury to some person (*i.e.*, transferring "money or property" to the defendant) caused by that person's reliance on (*i.e.*, "by means of") the defendant's material misstatements or omissions.

In addition, as with the three forms of liability under Rule 10b-5, the three forms of liability under Securities Act § 17(a) should influence the elements of those claims, with only § 17(a)(2) requiring a material misstatement or omission. *Cf. United States v. Naftalin*, 441 U.S. 768, 774 (1979) ("[E]ach subsection of [Securities Act § 17(a)] proscribes a distinct category of misconduct. Each succeeding prohibition is meant to cover additional kinds of illegalities—not to narrow the reach of the prior sections."

11

(footnote omitted)).

In sum, in the Court's view, the Securities Act § 17(a) elements are as follows:

- for § 17(a)(1), (i) any device, scheme, or artifice to defraud (ii) employed with scienter (iii) in connection with the purchase or sale of a security[7] (iv) using any means of interstate commerce or the mails;

- for § 17(a)(2), (i) a misrepresentation or omission (ii) of material fact (iii) in connection with the purchase or sale of a security (iv) using any means of interstate commerce or the mails, (v) on which misrepresentation or omission some party relies when deciding to transfer money or property to the defendant, and (vi) actual transfer of that money or property to the defendant; and

- for § 17(a)(3), (i) a transaction, practice, or course of business (ii) which operates or would operate as a fraud or deceit upon the purchaser (iii) in connection with the purchase or sale of a security (iv) using any means of interstate commerce or the mails.

3. Scienter & "In Connection With"

The Court has certain overlapping concerns about the scienter and "in connection with" elements.

Scienter in this context is defined as "intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976) ("*Hochfelder*"). Interestingly, the

---

[7] "In connection with the purchase or sale of a security" is language drawn from the Exchange Act § 10(b)/Rule 10b-5 context, whereas the precise language of Securities Act § 17(a) is "in the offer or sale of any securities." However, courts have frequently treated these phrases as interchangeable, *Naftalin*, 441 U.S. at 773 n.4, and this Court sees no meaningful difference between them.

parties have not cited, nor could the Court locate, any authority establishing whether scienter requires that the defendant specifically intend to affect a decision regarding the sale or purchase of securities. If there is no such requirement, then scienter would be satisfied by any knowing falsehood, even if the accused does not know about any securities transaction, or potential transaction, that the falsehood might influence. And this brings the Court to the "in connection with" element.

The Supreme Court "has espoused a broad interpretation" of "in connection with." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006) ("*Dabit*"). Indeed, supposedly "it is enough that the fraud alleged 'coincide' with a securities transaction." *Id.* If the Court understands correctly, the SEC interprets this to mean that fraudulent statements and securities transactions simply need to be happening "at the same time." (ECF No. 66 at 5; *see also* ECF No. 53 at 40.) This would be consistent with a view of scienter that requires only an intent to mislead someone about something, not an intent to mislead buyers and sellers of securities specifically. But it also seems to violate the Supreme Court's counsel not to construe the securities fraud laws "so broadly as to convert every common-law fraud that happens to involve securities into a violation." *SEC v. Zandford*, 535 U.S. 813, 820 (2002). Indeed, if scienter requires no specific intent to influence a securities transaction, and if "in connection with" means nothing more than "coinciding with," then, for example, any lie one coworker tells to another is potentially actionable as securities fraud as long as the employer's securities happen to be for sale.

This would not be nearly as much of a concern if scienter requires intent specifically to influence a securities transaction. There seems to be no risk of

transforming all fraud into securities fraud if the evidence shows that the defendant *wanted* to influence *a securities transaction*, even if the defendant never did (*e.g.*, the SEC obtained an injunction before his conduct could have an effect on the market) or even if his conduct influenced a transaction he was not intending to influence.

On the other hand, it may well be that certain statutory bases for asserting securities fraud operate essentially as the SEC advocates. For example, as noted, Securities Act § 17(a)(3) addresses "any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser," and does not require scienter or—when enforced by the SEC—reliance. It may be beneficial for the SEC to be able to identify and stop a "transaction, practice, or course of business" that "coincides" with the buying or selling of securities, because that transaction, practice, or course of business "operates or would operate as a fraud or deceit" upon securities purchasers, even though the defendant did not know of or intend that effect. *Cf. Geman*, 334 F.3d at 1191 (rejecting the view that the SEC "should take no action until an investor has suffered actual injury even when, as is the case here, the [SEC] is aware that a broker-dealer or investment adviser is employing deceptive practices which are virtually certain to lead to investor losses").

Nonetheless, the Court is concerned that the SEC's reliance on mere coincidence is too broad. The Court is also not convinced that the Supreme Court used the word "coincide" in the sense the SEC advocates, given that the Supreme Court used the word specifically when explaining how trading on nonpublic information can be deemed a violation of Rule 10b-5. *See Dabit*, 547 U.S. at 85; *United States v. O'Hagan*, 521 U.S. 642, 656 (1997).

Stated somewhat differently, are the scienter and "in connection with" elements satisfied when a defendant makes knowingly false statements *while* securities are for sale, or only when a defendant makes such statements *because* securities are for sale? The Court requires the parties to state their views on this matter in their revised summary judgment briefs.

4. Reliance, Injury, and Causation

Defendants assert that the SEC cannot obtain summary judgment because it fails to demonstrate a causal connection between the alleged deception and the alleged injury. (ECF No. 60 at 30–31.) The parties deserve the Court's view on this issue, because it necessarily raises the sensitive subject of whether the Tenth Circuit made a mistake.

Defendants' causation argument derives from the Tenth Circuit's *Wolfson* decision. The major question at issue in *Wolfson* was whether "a non-employee consultant [who] causes misstatements or omissions within periodic financial reports submitted to the [SEC], knowing that those misstatements or omissions will reach investors, . . . can be held primarily liable under the antifraud provisions of the federal securities laws." 539 F.3d at 1251. One of the defendant's arguments against such liability was that the act of drafting financial reports is not done "in connection with the purchase or sale of any security." *Id.* at 1261. The Tenth Circuit addressed this argument first by noting the Supreme Court's "coincide" language, discussed above; then by repeating the preference for broad, flexible interpretations of "in connection with"; and finally by noting the following: "In this circuit, we have held that this element requires only that there be 'a causal connection between the allegedly deceptive act or

15

omission and the alleged injury.'  *Arst v. Stifel, Nicolaus & Co., Inc.*, 86 F.3d 973, 977 (10th Cir. 1996) (citations omitted)."  *Id.*

The Tenth Circuit then went on to introduce a standard adopted by other circuits, namely, that "in connection with" is satisfied through public dissemination of a document "on which an investor would presumably rely," such as a press release, annual report, or prospectus.  *Id.* (internal quotation marks omitted).  The Tenth Circuit decided to adopt this standard, once again invoking the "causal connection" principle: "Because this interpretation of the 'in connection with' element is consistent with the Supreme Court's relatively broad construction and our circuit's own requirement that there be a causal connection between the fraud and the injury, we join those circuits that have adopted this analysis."  *Id.*

Based on this, Defendants understandably argue that *Wolfson* created or affirmed a causation requirement even in SEC enforcement suits, because *Wolfson* itself was an SEC enforcement suit.  (ECF No. 60 at 30.)  But the problem should be immediately apparent.  It is settled that the SEC is not required to prove reliance or injury—indeed, the Tenth Circuit says as much six pages earlier in the *Wolfson* opinion: "Unlike private litigants proceeding under § 10(b), the SEC is not required to prove reliance or injury in enforcement actions."  539 F.3d at 1256 (internal quotation marks omitted; alterations incorporated).  So what relevance does "a causal connection between the fraud and the injury" have in an SEC enforcement suit?

The answer, of course, should be "none."  And ultimately, the Tenth Circuit's invocation of causation and injury—which it derived from *Arst*, a suit about private enforcement actions—was unnecessary to its ultimate holding that "in connection with"

16

is satisfied when a defendant makes a statement in a document on which an investor would presumably rely. This Court is therefore confident that the Tenth Circuit, if it could revisit *Wolfson*, would clarify that any discussion of causation and injury was meant as a reference to private enforcement lawsuits, and not as a new limitation on SEC enforcement actions.

Accordingly, it is the Court's view that the SEC need not prove reliance, injury, or causation, save for any claim it brings under Securities Act § 17(a)(2), which explicitly requires the defendant to have "obtain[ed] money or property by means of any untrue statement of a material fact or [a material] omission."

## IV. CONCLUSION

For the reasons set for above, the Court ORDERS as follows:

1. The SEC's Motion for Summary Judgment (ECF No. 53) is DENIED WITHOUT PREJUDICE;

2. Mahabub's Motion to Strike Exhibits Submitted with Plaintiff's Reply in Support of Summary Judgment (ECF No. 75) is DENIED;

3. GenAudio's Request for Oral Argument on Summary Judgment (ECF No. 67) is DENIED AS MOOT;

4. Mahabub's Joinder in and Request for Oral Argument on Summary Judgment (ECF No. 69) is DENIED AS MOOT;

5. On or before **January 19, 2018**, the SEC may file a revised summary judgment motion of up to **60** pages,[8] which conforms to the Court's requirements stated

---

[8] All page limits specified in this Order are governed by WJM Revised Practice Standard III.C.1.

above;

6. On or before **February 9, 2018**, Defendants may each file a response of up to **60** pages, which conforms to the Court's requirements stated above; and

7. On or before **February 23, 2018**, the SEC may file a consolidated reply of up to **40** pages.

Dated this 22nd day of December, 2017.

BY THE COURT:

_____
William J. Martinez
United States District Judge