# EXCERPTED

# EXHIBIT 28

Page 1

```
 1              UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
 2
 3
    SECURITIES AND EXCHANGE    )
 4  COMMISSION,                )
                               )
 5          Plaintiff,         )
                               )
 6            vs.              ) 1:16-CV-02118-WJM-CBS
                               )
 7  TAJ JERRY MAHABUB, GENAUDIO,)
    INC., et al,               )
 8                             )
            Defendants.        )
 9
10
11
12
13
                 DEPOSITION OF MARK THOMAS BOBAK
14
                TAKEN ON BEHALF OF THE DEFENDANTS
15
                       FEBRUARY 2, 2017
16
```

Veritext Legal Solutions
866 299-5127

Page 3

```
 1              UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
 2
 3
    SECURITIES AND EXCHANGE    )
 4  COMMISSION,                )
                               )
 5        Plaintiff,           )
                               )
 6           vs.               ) 1:16-CV-02118-WJM-CBS
                               )
 7  TAJ JERRY MAHABUB, GENAUDIO,)
    INC., et al,               )
 8                             )
          Defendants.          )
 9
10       DEPOSITION OF MARK THOMAS BOBAK, produced, sworn
11  and examined on FEBRUARY 2, 2017, between the hours of
12  nine o'clock in the forenoon and five o'clock in the
13  afternoon of that day, at the offices of Veritext
14  Legal Solutions, 515 Olive Street, St. Louis, Missouri
15  63101, before Jeanne M. Pedrotty, a Certified Court
16  Reporter (MO) and Certified Shorthand Reporter (IL),
17  in a certain cause now pending in the United States
18  District Court, District of Colorado, between
19  SECURITIES AND EXCHANGE COMMISSION, Plaintiff, vs. TAJ
20  JERRY MAHABUB, GENAUDIO, INC., et al, Defendants; on
21  behalf of the Defendants.
```

Veritext Legal Solutions
866 299-5127

Page 2

```
 1          I N D E X   O F   E X A M I N A T I O N
 2                                          Page
 3       Questions by Mr. Holmes. . . . . . .   5
         Questions by Ms. Hughes. . . . . . .  90
 4       Further Questions by Mr. Holmes. . . 139
 5
            I N D E X   O F   E X H I B I T S
 6
         Exhibit 233 (Private Placement memo)  50
 7       Exhibit 234 (Board of Directors
             Written consent). . . . . . . .   97
 8       Exhibit 235 (Board of Directors
             Minutes. . . . . . . . . . . . . 101
 9       Exhibit 236 (2-11-09 e-mail). . . . 102
         Exhibit 237 (2-11-09 e-mail). . . . 104
10       Exhibit 238 (Board of Directors
             Minutes. . . . . . . . . . . . . 104
11       Exhibit 239 (Matos E-mail). . . . . 109
         Exhibit 240 (6-17-09 e-mail). . . . 113
12       Exhibit 241 (6-17-09 e-mail). . . . 115
         Exhibit 242 (7-3-09 e-mail). . . . .117
13       Exhibit 243 (7-1-09 e-mail). . . . .119
         Exhibit 244 (Board of Directors
14           Minutes). . . . . . . . . . . . .128
         Exhibit 245 (5-25-10 e-mail). . . . 131
15       Exhibit 246 (12-8-10 e-mail). . . . 135
16
            Previously Marked Exhibits Attached
```

Veritext Legal Solutions
866 299-5127

Page 4

```
 1                  A P P E A R A N C E S
 2
         For the Plaintiff:
 3
             Leslie H. Hughes
 4           Trial Counsel
             United States Securities & Exchange
 5           Commission
             1961 Stout Street
 6           Denver, CO  80294
 7
         For the Defendant Mahabub:
 8
             Andrew B. Holmes
 9           Holmes, Taylor & Jones
             617 S. Olive Street
10           Los Angeles, CA  90014
11
12       For the Defendant GenAudio:
13           David J. Aveni
             Wilson, Elser, Moskowitz, Edelman &
14           Dicker
             655 W. Broadway
15           San Diego, CA  92101
16
         For the Witness:
17
             Robert J. Bassett
18           Williams, Venker & Sanders
             100 S. Fourth Street
19           St. Louis, MO  63102
20
21  Court Reporter:
    Jeanne M. Pedrotty, CCR/CSR
22  Missouri CCR #618
    Illinois CSR #084-003893
23  Veritext Legal Solutions
    515 Olive Street
24  St. Louis, Missouri 63101
    (314) 203-2987
25  Www.veritext.com
```

Veritext Legal Solutions
866 299-5127

```
                                                    Page 129
 1      A.   No.
 2      Q.   In March of 2010, did you believe that
 3   GenAudio was going to ink a deal with a large consumer
 4   electronics company?
 5      A.   I believed that there was a good
 6   possibility that we would reach some kind of agreement
 7   with Apple.
 8      Q.   And that belief that there was a good
 9   possibility, was that based on conversations you had
10   with Jerry Mahabub?
11      A.   Yes.
12      Q.   Was it based on the updates he gave to the
13   Board?
14      A.   Yes.
15      Q.   Was it based on e-mails that he sent to
16   you?
17      A.   Yes.
18      Q.   Was it based on his false representations
19   that he had met with Phil Schiller?
20           MR. HOLMES:  Objection; assumes facts not
21   in evidence.
22           MR. AVENI:  Join.
23           THE WITNESS:  Yes.
24      Q.   (By Ms. Hughes)  Was it based on his false
25   representations that he was communicating with Tim
```

```
                                                    Page 131
 1      Q.   If you look at the last two pages of
 2   Exhibit 233, this includes a profit and loss statement
 3   and a balance sheet, do you see that?
 4      A.   5123 and 5124?
 5      Q.   Yes.
 6      A.   Okay.  Yes, I see it.
 7      Q.   Is there any indication on either of these
 8   pages that those documents are audited?
 9      A.   No.
10      Q.   When you look at these summaries of
11   GenAudio's financials as of December 31, 2009, did the
12   company have enough income to cover its expenses?
13      A.   No.
14      Q.   As of that point in time, it had a net
15   operating loss of $4,664 -- no  -- $4,664,328.52?
16      A.   That is correct.
17           MR. HOLMES:  For the record, this is, I
18   think, an attachment to the Inavisis report as opposed
19   to the PPM itself.  I know it's included, but to the
20   extent it makes a difference.  I wanted to clarify
21   that.
22      Q.   Okay.
23           (Whereupon, Exhibit 245 was marked for
24   identification.)
25           MR. HOLMES:  Is this shading something you
```

```
                                                    Page 130
 1   Cook?
 2           MR. HOLMES:  Same objection.
 3           MR. AVENI:  Join.
 4           THE WITNESS:  Yes.
 5      Q.   (By Ms. Hughes)  And at this point in March
 6   of 2010, you, as a Board member, had not seen a term
 7   sheet, a letter of intent, or a draft contract with
 8   Apple?
 9      A.   That is correct.
10      Q.   So if you would look at Exhibit 233, this
11   is the March 2010 private placement.  It's the really
12   fat document at the bottom of the pile?
13      A.   March 2010?
14      Q.   Correct.  Now, when GenAudio decided to
15   offer these securities to investors, did it file a
16   registration statement with the Securities and
17   Exchange Commission?
18      A.   I don't know.
19      Q.   You, as part of the Board of Directors, did
20   they vote to submit a registration statement with the
21   Securities and Exchange Commission?
22      A.   I don't recall.
23      Q.   Did GenAudio hire an accountant to audit
24   its financial statements?
25      A.   It may have.  I don't recall.
```

```
                                                    Page 132
 1   added?
 2      Q.   (By Ms. Hughes)  The shading is something I
 3   added.  So -- and I apologize because this copy
 4   doesn't have a Bates number on it.  So if we look at
 5   bottom third of the first page, it indicates that on
 6   May 25th, 2010, you wrote this e-mail.  And it talks
 7   about -- and I'm looking at the highlighted portion.
 8   I guess you wrote the e-mail that says, "Dolby brings
 9   a brand name they can charge for and a recognized
10   licensing experience, which is suitable to the masses'
11   uneducated ear.
12           MR. HOLMES:  It says "listening" not
13   "licensing".
14           MR. AVENI:  Leslie, you're suddenly much
15   quieter.  Can I have that read back?  I'm generally
16   hearing very well, but I couldn't hear you.
17      Q.   (By Ms. Hughes)  Sure.  I was just quoting
18   from the quote.  On May 25th, 2010, Mr. Bobak appears
19   to have written, "Dolby brings a brand name they can
20   charge for.  And a recognized listening experience
21   which is suitable to the masses' uneducated ear."  Do
22   you recall sending this e-mail Mr. Bobak?
23      A.   Yes.
24      Q.   And then below that had you received an
25   e-mail from Mr. Mahabub in which he wrote, "Even
```

Page 137

```
 1    Q.   What's that one consideration in your
 2  decision to withdraw as a director in January of 2011?
 3    A.   That was one of many considerations, yes.
 4    Q.   As of December 2010, about a month before
 5  you withdraw, had you seen a term sheet, a letter of
 6  intent, or draft complaint -- or draft contract with
 7  Apple and GenAudio?
 8    A.   No, I had not.
 9    Q.   Had they, meaning Apple, requested copies
10  of GenAudio's patents?
11    A.   Not that I'm aware of.
12    Q.   Had they requested to come and do due
13  diligence, a meeting at GenAudio's facilities?
14    A.   No.
15    Q.   When you resigned as a director, was
16  GenAudio still in dire financial straits?
17    A.   Yes.
18    Q.   Are you aware of Mr. Mahabub having income
19  other than from his sales of GenAudio's shares in that
20  time frame from 2008 through 2011, while you were a
21  director.
22    A.   No.
23    Q.   Did Mr. Mahabub ever tell you that he had
24  offshore accounts?
25    A.   Yes.
```

Veritext Legal Solutions
866 299-5127

Page 138

```
 1    Q.   What did he tell you?
 2    A.   At some point he told me that he was either
 3  in the Cayman Islands or somewhere in the Caribbean
 4  and he had set up offshore accounts to put the
 5  proceeds from either his stock sales or the sale of
 6  GenAudio to the LCEC or Apple in offshore accounts to
 7  avoid paying significant taxes on those proceeds.  And
 8  he encouraged me to do the same.
 9    Q.   Did he ever provide you any documents to
10  show that he had offshore accounts?
11    A.   No.
12    Q.   Did he ever tell you he was related to a
13  wealthy person?
14    A.   Yes.
15    Q.   Who was that person?
16    A.   Kirk Krekorinan.
17    Q.   Are you aware whether or not Mr. Krekorinan
18  ever invested in GenAudio?
19    A.   I don't believe he did.
20    Q.   Did you ever see any documents that would
21  support Mr. Mahabub's statement he was related to Kirk
22  Krekorinan?
23    A.   No.
24    Q.   Do you still hold the shares that you
25  bought in GenAudio?
```

Veritext Legal Solutions
866 299-5127

Page 139

```
 1    A.   Yes.
 2    Q.   I have no further questions.
 3         MR. HOLMES:  I don't think I do.  Can we
 4  take a minute off the record.
 5         (Whereupon, a short break was taken.)
 6              FURTHER EXAMINATION
 7  QUESTIONS BY MR. HOLMES:
 8    Q.   So I did have just a couple or one, I hope,
 9  question to clarify.  You said that there was, in
10  response to Ms. Hughes' question, there was a growing
11  dissatisfaction amongst shareholders.  Where did you
12  get that information from?
13    A.   Friends and family.
14    Q.   Who were shareholders?
15    A.   Yes.
16    Q.   Anyone outside of friends and family?
17    A.   There may have been other shareholders who
18  were not friends and family who were contacting me and
19  saying where's this thing going.
20    Q.   And why would they contact you?
21    A.   Because they either played golf with me or
22  residents of St. Louis and they knew that I was
23  involved.
24    Q.   And what time period given we've looked at
25  thing and established more of a time line?
```

Veritext Legal Solutions
866 299-5127

Page 140

```
 1    A.   Well, you can start in 2008, '09, '10, '11,
 2  '12, '13, until I got out.  I mean for some period it
 3  was because I was a shareholder and involved and
 4  brought friends and family in initially.  And then as
 5  we got into late 2013, it was clear that the company
 6  wasn't going anywhere.  People became very
 7  dissatisfied.  And, you know, I got more and more
 8  contacts from the book right (phonetic) creditors and
 9  were very upset at the way things stood because we
10  weren't paying our bills.
11    Q.   We've been looking at the last few
12  documents that Ms. Hughes showed you were from the end
13  of 2010?
14    A.   Right.
15    Q.   You were getting that kind of investor
16  dissatisfaction feedback at that time?
17    A.   Yes.
18    Q.   I don't think I have any other questions.
19  David, do you have anything else?
20         MR. AVENI:  Hang on one second.  I have no
21  further questions.
22         MS. HUGHES:  Mr. Bobak, thank you so much
23  for your time today.  Would you and you counsel like
24  the opportunity to review the transcript and make any
25  changes if necessary?
```

Veritext Legal Solutions
866 299-5127

```
                                                    Page 141
 1            THE WITNESS:  I'll defer to my counsel on
 2   that.
 3            MR. BASSETT:  We'll waive signature.
 4            (WHEREIN, the deposition was concluded at
 5   2:01.)
```

```
                                                    Page 142
 1                  CERTIFICATE OF REPORTER
 2     STATE OF MISSOURI  )
                          ) ss.
 3     CITY OF ST. LOUIS  )
 4     I, Jeanne M. Pedrotty, a Certified Court Reporter (MO)
 5     and Certified Shorthand Reporter (IL), do hereby
 6     certify that the witness whose testimony appears in
 7     the foregoing deposition was duly sworn by me; that
 8     the testimony of said witness was taken by me to the
 9     best of my ability and thereafter reduced to
10     typewriting under my direction; that I am neither
11     counsel for, related to, nor employed by any of the
12     parties to the action in which this deposition was
13     taken, and further that I am not a relative or
14     employee of any attorney or counsel employed by the
15     parties thereto, nor financially or otherwise
16     interested in the outcome of the action.
17     DATED: 2/17/2017
18
19
20
21     Jeanne M. Pedrotty
22
23
24
25
```