**E**XCERPTED

# EXHIBIT 30

# In The Matter Of:

*Securities and Exchange Commission v.*
*Taj Jerry Mahabub, et al.*

*Charles Ben Huber*
*August 12, 2016*

*Behmke Reporting and Video Services, Inc.*
*160 Spear Street, Suite 300*
*San Francisco, California  94105*
*(415) 597-5600*

Original File 29895Huber.txt
**Min-U-Script® with Word Index**

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Charles Ben Huber
August 12, 2016

Page 1

```
 1           IN THE UNITED STATES DISTRICT COURT

 2               FOR THE DISTRICT OF COLORADO

 3

 4  - - - - - - - - - - - - - - - -

 5  SECURITIES AND EXCHANGE          )

 6  COMMISSION,                      )

 7        Plaintiff,                 )  CASE NO.

 8  v.                               )  1:15-cv-02118-CBS-WJM

 9  TAJ JERRY MAHABUB, GENAUDIO,     )

10  INC., and ASTOUND HOLDINGS,      )

11  INC.,                            )

12        Defendants.                )

13  - - - - - - - - - - - - - - - -

14

15

16

17         VIDEOTAPED DEPOSITION OF CHARLES BEN HUBER

18               THURSDAY, AUGUST 12, 2016

19

20

21                  BEHMKE REPORTING AND VIDEO SERVICES, INC.

22                          BY:  BARBARA J. CASTILLO

23                         160 SPEAR STREET, SUITE 300

24                    SAN FRANCISCO, CALIFORNIA 94105

25                                    (415) 597-5600
```

Page 2

```
 1

 2

 3

 4

 5

 6

 7

 8      Videotaped deposition of CHARLES BEN HUBER,

 9  taken on behalf of the Plaintiff, at 1961 Stout Street,

10  Denver, Colorado, commencing at 9:09 A.M., FRIDAY,

11  AUGUST 12, 2016, before Barbara J. Castillo, Registered

12  Merit Reporter, Certified Realtime Reporter and Notary

13  Public within and for the State of Colorado.

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 3

```
 1  APPEARANCES OF COUNSEL:

 2  FOR PLAINTIFF:

 3      SECURITIES AND EXCHANGE COMMISSION

 4      BY: DANIELLE R. VOORHEES, ATTORNEY AT LAW

 5         LESLIE HENDRICKSON HUGHES, ATTORNEY AT LAW

 6      1961 Stout Street, Suite 1700

 7      Denver, Colorado 80294

 8      Telephone: (303) 844-1000

 9      Email: voorheesd@sec.gov

10

11  FOR DEFENDANT, TAJ JERRY MAHABUB - (TELEPHONICALLY):

12      HOLMES, TAYLOR & JONES, LLP

13      BY: ANDREW B. HOLMES, ATTORNEY AT LAW

14      617 South Olive Street, Suite 1200

15      Los Angeles, California 90014

16      Telephone:  (213) 985-2200

17      Email:  abholmes@htjlaw.com

18

19  FOR DEFENDANT GENAUDIO, INC.:

20      WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP

21      BY: DAVID J. AVENI, ATTORNEY AT LAW

22      655 West Broadway, Suite 900

23      San Diego, California 92101

24      Telephone:  (619) 881-3326

25      Email: david.aveni@wilsonelser.com
```

Page 4

```
 1  APPEARANCES OF COUNSEL - (CONTINUED):

 2  FOR THE WITNESS:

 3      JENNER & BLOCK

 4      BY: HOWARD S. SUSKIN, ATTORNEY AT LAW

 5      353 N. Clark Street

 6      Chicago, Illinois 60654

 7      Telephone: (312) 222-9350

 8      Email: hsuskin@jenner.com

 9

10  ALSO PRESENT:

11      PAULA WOLFF, VIDEOGRAPHER

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Securities and Exchange Commission v.                                      **Charles Ben Huber**
Taj Jerry Mahabub, et al.                                                  **August 12, 2016**

Page 5

```
 1                        INDEX
 2     FRIDAY, AUGUST 12, 2016
 3    CHARLES BEN HUBER                                PAGE
 4        Examination by MS. HUGHES                     13
 5    P.M. SESSION                                      96
 6        Examination resumed by MS. HUGHES             96
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 7

```
 1              EXHIBITS - (CONTINUED)
 2                  CHARLES BEN HUBER
 3    Number              Description              Page
 4    Exhibit 70 Confidential Private Placement
 5           Memorandum for GenAudio, Inc.,
 6           3/25/09; Bates Nos. GA 007367
 7           through 007453 - 87 pages              55
 8
 9    Exhibit 71 E-mail string, top message from
10           Barry Corlett to Jerry Mahabub,
11           6/30/09; Bates Nos.
12           SEC-TiscarenoV-E 0000114 through
13           0000118 - 4 pages                      57
14
15    Exhibit 72 GenAudio, Inc. Board of
16           Directors September 25, 2009
17           Telephonic Meeting Minutes,
18           Bates Nos. GA 006254 - 1 page          64
19
20    Exhibit 73 E-mail string, top message from
21           Jim Mattos to Jim Devine,
22           11/25/09; Bates Nos. GA 006678
23             through 006691 - 14 pages            74
24
25
```

Page 6

```
 1                      EXHIBITS
 2                  CHARLES BEN HUBER
 3    Number              Description              Page
 4    Exhibit 64 Articles of Amendment for
 5           GenAudio, Inc., 8/3/06 - 4 pages       24
 6
 7    Exhibit 65 Amended and Restated Articles of
 8           Incorporation of GenAudio, Inc.,
 9           10/1/03 - 6 pages                      25
10
11    Exhibit 66 Bylaws of GenAudio, Inc., a
12           Colorado corporation, 7/5/06;
13           Bates Nos. SEC-ELLIOTT-E 0002733
14           through 0002745 - 13 pages            26
15
16    Exhibit 67 Form D for GenAudio, Inc.,
17           10/3/06 - 9 pages                      30
18
19    Exhibit 68 Form D for GenAudio, Inc.,
20           5/25/07 - 9 pages                      31
21
22    Exhibit 69 Confidential Private Placement
23           Memorandum for GenAudio, Inc.,
24           12/11/08; Bates Nos. GA 006483
25           through 006585 - 103 pages             35
```

Page 8

```
 1              EXHIBITS - (CONTINUED)
 2                  CHARLES BEN HUBER
 3    Number              Description              Page
 4    Exhibit 74 GenAudio, Inc. Stock certificate
 5           and attachment for George
 6           William Marvin; Bates Nos.
 7           Mahabub 001659 through 001671
 8           - 13 pages                             76
 9
10    Exhibit 75 GenAudio, Inc. Board of
11           Directors February 12, 2010
12           Telephonic Meeting Minutes;
13           Bates Nos. GA 001877 through
14           001882 - 9 pages                       85
15
16    Exhibit 76 Letter from Jerry Mahabub to
17           Shareholders, 3/15/10; Bates
18           Nos. GA 0000140 - 1 page               86
19
20    Exhibit 77 GenAudio, Inc. Board of
21           Directors Meeting Minutes,
22           4/5/12; Bates Nos. Mahabub
23           003092 through 003099 - 8 pages        96
24
25
```

Securities and Exchange Commission v.                                                    **Charles Ben Huber**
Taj Jerry Mahabub, et al.                                                                   August 12, 2016

```
                                                   Page 9
 1                  EXHIBITS - (CONTINUED)
 2                     CHARLES BEN HUBER
 3   Number              Description              Page
 4   Exhibit 78 Letter from Ben Huber to Jeffrey
 5             Benz, 1/23/14; Bates Nos.
 6             SEC-Skluzak-E 0000621 through
 7             0000630 - 10 pages                   104
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                  Page 11
 1            PREVIOUSLY MARKED EXHIBITS - (CONTINUED)
 2                     CHARLES BEN HUBER
 3   Number              Description              Page
 4   Exhibit 16 E-mail string, top message from
 5             Victor Tiscareno to Dell
 6             Skluzak, 10/30/13; Bates Nos.
 7             SEC 0000001 through 0000005
 8             - 5 pages                            98
 9
10   Exhibit 21 E-mail from Jerry Mahabub to
11             multiple people, 10/2/09; Bates
12             Nos. JM 002096 through 2098
13             - 4 pages                            65
14
15   Exhibit 22 E-mail from Jim Mattos to Jerry
16             Mahabub, 10/19/09; Bates Nos. GA
17             006846 through 6850 - 5 pages        70
18
19   Exhibit 24 E-mail string, top message from
20             Jim Mattos to Joni Iverson,
21             11/13/09; Bates Nos. GA 006774
22             through 6814 - 41 pages              72
23
24      (Previously marked exhibits retained by counsel.)
25
```

```
                                                  Page 10
 1               PREVIOUSLY MARKED EXHIBITS
 2                     CHARLES BEN HUBER
 3   Number              Description              Page
 4   Exhibit 2  Confidential Private Placement
 5             Memorandum for GenAudio, Inc.,
 6             3/15/10; Bates Nos. GA 000487
 7             through 000634 - 148 pages           88
 8
 9   Exhibit 4  SEC Attestation and Form D for
10             GenAudio, Inc., 8/19/10; Bates
11             Nos. SEC 334 - 7 pages               90
12
13   Exhibit 5  SEC Attestation and Form D for
14             GenAudio, Inc., 11/19/10; Bates
15             Nos. SEC 334 - 7 pages               92
16
17   Exhibit 10 SEC Attestation and Form D for
18             GenAudio, Inc., 11/19/10; Bates
19             Nos. SEC 334 - 7 pages               93
20
21   Exhibit 11 SEC Attestation and Form D for
22             GenAudio, Inc., 5/16/11; Bates
23             Nos. SEC 334 - 7 pages               94
24
25
```

```
                                                  Page 12
 1        THURSDAY, AUGUST 12, 2016; 9:09 A.M.
 2           THE VIDEOGRAPHER: Here begins DVD
 3   Number 1 in the deposition of Charles Ben Huber in
 4   the matter of Securities and Exchange Commission
 5   versus Jerry Mahabub, et al., in the United States
 6   District Court for the District of Colorado, Case
 7   Number 1:5-CV-02118-CBS-WJM.  Today's date is
 8   August 12th, 2016.  The time on the video monitor is
 9   9:09 a.m.  The video operator today is Paula Wolff
10   contracted by Behmke Reporting & Video Services,
11   Incorporated, 160 Spear Street, Suite 300, San
12   Francisco, California.  This video deposition is
13   taking place at 1961 Stout Street, Denver, Colorado
14   and was noticed by Leslie Hughes, Esquire of the
15   Securities and Exchange Commission -- Commission.
16   Counsel please voice identify yourself and state whom
17   you represent.
18           MS. HUGHES: I am Leslie Hughes, and I
19   represent the Securities and Exchange Commission.
20   With me today is Danielle Voorhees, who's my
21   co-counsel.
22           MR. AVENI: My name is David Aveni.  I
23   represent defendant GenAudio, Incorporated.
24           MS. HUGHES: Andrew, do you want to --
25           MR. HOLMES: This is -- yeah.  Sorry.
```

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Charles Ben Huber
August 12, 2016

Page 61

```
 1   vague recollections, but I don't want to testify to
 2   them because I just -- I don't know if they're right
 3   or wrong.  I'm thinking maybe Victor wasn't at Apple
 4   any longer, but -- but I could be wrong about that.
 5       Q    Did you ever see the executed agreement,
 6   the confidentiality agreement that was attached to
 7   Exhibit 71?
 8       A    I don't recall.
 9       Q    During the summer of 2009 did you ever
10   speak with Tim Butzow, B-u-t-z-o-w, from Apple?
11       A    No.
12       Q    Did you ever speak with Ron Isaac of
13   Apple?
14       A    No.
15       Q    Did you speak with Michael Haley from
16   Apple?
17       A    No.
18       Q    Did you speak with Phillip Schiller from
19   Apple?
20       A    No.
21       Q    Did you speak with Tim Cook from Apple?
22       A    No.
23       Q    Did you speak with Steve Jobs from Apple?
24       A    No.
25       Q    Did you speak with Andrew Bright from
```

Page 62

```
 1   Apple?
 2       A    No.
 3       Q    Did you speak with Jesse Dorogusker,
 4   D-o-r-o-g-u-s-k-e-r from Apple?
 5       A    No.  No.
 6       Q    Did you speak with Scott Forstal?
 7       A    No.
 8       Q    Or Tony Fadell, F-a-d-e-l-l, from Apple?
 9       A    No, I don't think so.
10       Q    Or did you ever speak with Sina Tamaddon,
11   T-a-m-a-d-d-o-n from Apple?
12       A    No.
13       Q    Now my series of questions about those
14   gentlemen were -- were related to the summer of 2009.
15   Did you ever speak with any of them during the time
16   that you were counsel for Apple?
17       A    No.  I have no recollection of speaking
18   with anybody from Apple.
19       Q    Did you ever prepare a term sheet to give
20   to Apple for negotiations between GenAudio and it?
21       A    I don't recall.  I don't think so.  Again,
22   I prepared a lot of term sheets for them to enter
23   into various licensing and other development
24   arrangements with a lot of different companies, but I
25   don't think I did one for Apple.
```

Page 63

```
 1       Q    Did you ever prepare any letters of intent
 2   for GenAudio to give to Apple?
 3       A    Not that I recall.
 4       Q    Did you ever prepare any licensing
 5   agreements for GenAudio to give to Apple?
 6       A    Same answer as before.  I don't think so,
 7   but I did a lot of these for a lot of different
 8   companies, so it's possible, but I just don't recall.
 9       Q    Did you prepare any agree- -- agreements
10   related to Apple conducting due diligence for the
11   acquisition of GenAudio?
12       A    No.
13       Q    If you prepared any of those kinds of
14   documents, term sheets, letters of intent, licensing
15   agreements or other agreements related to due
16   diligence for GenAudio -- GenAudio's dealings with
17   Apple, do you retain a file of those agreements?
18       A    Usually.
19       Q    Has counsel for GenAudio requested any
20   agreements that you may have prepared related to the
21   dealings between GenAudio and Apple, Inc.?
22       A    No.
23       Q    Has he requested that of your counsel?
24       A    I don't think so.
25           MS. HUGHES: I'd like to ask the court
```

Page 64

```
 1   reporter to mark this as Exhibit 73.
 2           (Exhibit Number 72 was marked.)
 3           THE REPORTER: It's 72.
 4           MS. HUGHES: 72.  72.
 5       Q    (BY MS. HUGHES)  Mr. Huber, what I've
 6   handed you are September 25th, 2009, meetings --
 7   minutes of the meeting of GenAudio's board of
 8   directors.  It's marked with GenAudio Number GA
 9   006254.  Do you recognize the minutes of this meeting
10   that was held in September of 2009?
11       A    Not specifically.
12       Q    In this time frame, September of 2009, did
13   you have any discussions with Mah- -- Mr. Mahabub
14   that a deal with Apple was highly probable?
15           MR. AVENI: Objection on the basis of
16   attorney/client privilege and attorney work product.
17   You can answer -- can I have the question read back.
18   I'm sorry.
19       Q    (BY MS. HUGHES)  In this time frame,
20   September of 2009, did you have any discussions with
21   Mr. Mahabub that a deal with Apple was highly
22   probable?
23           MR. AVENI: If you can answer that
24   question to the extent that it does not call for
25   attorney/client privilege or attorney work product
```

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Charles Ben Huber
August 12, 2016

Page 65

1    you can answer it.  But to the extent that they are
2    private discussions between you and Mr. Mahabub I'd
3    instruct you not to answer.
4       A    I don't recall.
5       Q    (BY MS. HUGHES)  At this point,
6    September 25th, 2009, had you participated in any
7    meetings with GenAudio and Apple?
8       A    No, I don't think so.  I don't recall any.
9       Q    Had you reviewed any written responses
10   from Apple to GenAudio as of that time frame?
11      A    I don't think so.  I mean, this is --
12   especially if you're narrowing it down on the time
13   frame.  I don't . . .
14      Q    I'm going you show you what has been
15   previously marked as Exhibit 21.  This is an
16   October 2nd, 2009, e-mail from Mr. Mahabub to a
17   number of people at GenAudio.  I don't see you copied
18   on this e-mail string.  If you take a few moments,
19   let me know whether or not you saw this e-mail.
20      A    Let me read it real quick.
21      Q    Please do.
22      A    I don't recall seeing this.  It's possible
23   it was sent to me, but it's not ringing a bell.
24      Q    Did Mr. Mahabub tell you in or about
25   October of 2009 that he planned to meet Steve Jobs,

Page 66

1    the CEO of Apple?
2           MR. AVENI: Objection, attorney/client
3    privilege.  I instruct you not to answer to the
4    extent it involves private discussions between you
5    and Mr. Mahabub that would be covered by the
6    attorney/client privilege.
7       A    Can you reread the question.
8       Q    (BY MS. HUGHES)  Did Mr. Mahabub tell you
9    in or about 2009 that he planned to meet Steve Jobs,
10   the CEO of Apple?
11          MR. AVENI: Same objection.  Instruct you
12   not to answer it.
13          THE DEPONENT: Okay.
14      Q    (BY MS. HUGHES)  Did Mr. Mahabub ever tell
15   you that he had met with Phil Schiller in or about
16   October 2009?
17      A    Not that I recall.
18      Q    Did Mr. Mahabub ask you to be part of a
19   legal team to finalize a deal with Apple?
20      A    Not that I recall.  I don't think so.
21      Q    And -- and I'd like to focus that
22   question.  First, in October of 2009 did he ask you
23   to be on a legal team to finalize a deal with Apple?
24          MR. HOLMES: I'm going to object on the
25   basis of attorney/client privilege.  That's seeking

Page 67

1    counsel on something, so I object on that basis.
2           MR. AVENI: I'll join.
3           THE DEPONENT: Am I being instructed not
4    to answer?
5           MR. SUSKIN: You are.  But I wonder if we
6    might take a quick break to see if we might be able
7    to resolve some of this.
8           MS. HUGHES: Sure.  We'll go off the
9    record.
10          THE VIDEOGRAPHER: We're going off the
11   record.  The time is 10:54 a.m.
12          (Recess from 10:54 to 11:14 a.m.)
13          THE VIDEOGRAPHER: We're back on the
14   record.  The time is 11:14 a.m.
15      Q    (BY MS. HUGHES)  All right.  So we're back
16   on the record.  I think the last question I asked
17   was, in October of 2009 did Mr. Mahabub ask you to be
18   on a legal team to finalize a deal with Apple?
19          MR. AVENI: Objection on the basis of
20   attorney/client privilege.  Instruct the witness not
21   to answer.
22      Q    (BY MS. HUGHES)  Did Mr. Mahabub ever ask
23   you subsequent to October of 2009 to join a legal
24   team to finalize a deal with Apple?
25          MR. AVENI: Same objection.

Page 68

1       Q    (BY MS. HUGHES)  Did Mr. Mahabub ever tell
2    you he had met Steve Jobs?
3           MR. AVENI: Objection on the basis of
4    attorney/client privilege.  Instruct you not to
5    answer.
6       Q    (BY MS. HUGHES)  Were you ever in a place
7    with third parties and Mr. Mahabub in which he said
8    he had met Steve Jobs?
9       A    Not that I recall.
10      Q    Were you ever in a place with third
11   parties and Mr. Mahabub in which Mr. Mahabub said he
12   had met Phil Schiller?
13      A    Not that I recall.
14      Q    Were you ever in a room with third parties
15   and Mr. Mahabub in which he told you he had met Tim
16   Cook?
17      A    Not that I recall.
18          MR. HOLMES: Sorry.  This is Andrew.  I
19   can no longer hear Mr. Huber.
20          THE DEPONENT: I'll speak up.  Is that
21   better?
22          MR. HOLMES: Yes.  Thank you very much.
23      Q    (BY MS. HUGHES)  Looking at Exhibit 21
24   again, which was that October 2nd, 2009 e-mail, and
25   it should be in --

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Charles Ben Huber
August 12, 2016

Page 69

1    A    Which exhibit?
2    Q    21?
3    A    Did we look at it before?
4    Q    I thought we had.
5    A    Oh, right.
6    Q    What, if anything, did you discuss with
7    Mr. Mahabub about him exchanging his personal shares
8    with Craig Hemenway in exchange for Mr. Hemenway
9    providing legal work through Dorsey & Whitney?
10       MR. AVENI: Where are you looking?  I'm
11   sorry.
12       MS. HUGHES: I am looking at the second
13   page of Exhibit 21.  It's the middle paragraph that
14   begins with Also, because Craig.
15       MR. AVENI: Okay.  Thank you.  Could I
16   have the question read back.
17    Q    (BY MS. HUGHES)  What, if anything, did
18   you discuss with Mr. Mahabub about him exchanging his
19   personal shares with Craig Hemenway in exchange for
20   Mr. Hemenway providing legal work through Dorsey &
21   Whitney?
22       MR. AVENI: I'm going to object on the
23   basis of attorney/client privilege to the extent it
24   covers any privileged communications on behalf of
25   GenAudio.  I'm not sure I understand the conversation

Page 70

1    that's being asked about.  So to extent that your
2    answer would disclose any privileged communications
3    between yourself and a representative of GenAudio, I
4    instruct you not to answer; otherwise you can answer
5    the question.
6    A    Nothing that I recall.
7    Q    (BY MS. HUGHES)  In October of 2009 did
8    you have discussions with Mr. Mahabub about him
9    selling his personal shares to raise money for
10   GenAudio's expenses?
11       MR. AVENI: Same objection -- or same
12   instruction, rather.
13    A    No.
14    Q    (BY MS. HUGHES)  Let me have you again
15   look at the notebook, Exhibit 22.  Exhibit 22 is an
16   October 19, 2009, e-mail from Mr. Mattos to
17   Mr. Mahabub in which he is responding to an e-mail
18   that Mr. Mahabub sent to, quote, Hello Team.  If
19   you'd just take a few minutes and look over this and
20   let me know whether or not you have seen the e-mails
21   that are part of Exhibit 22.
22    A    Any of them, all of them?
23    Q    The whole string.
24    A    Okay.  What was the question again?
25    Q    Have you seen this series of e-mails?

Page 71

1    A    They don't look familiar to me.  They may
2    have been forwarded to me but I don't recognize them.
3    Q    In October of 2009 did Mr. Mahabub advise
4    you that he was continuing to try and raise money
5    through the sale of his personal shares to give to
6    the company?
7       MR. AVENI: I'm going to make the same
8    objection and admonition.  To the extent that any
9    such conversation was a discussion between you and
10   Mr. Mahabub as a representative of GenAudio for the
11   purposes of obtaining legal advice, then I would
12   instruct you not to answer.
13    Q    (BY MS. HUGHES)  Did you represent
14   Mr. Mahabub personally in October of 2009?
15    A    No.
16    Q    Did you represent Mr. Mahabub ever in
17   giving him advice about his personal sales of
18   securities?
19    A    No.
20    Q    Did you ever apply for an exemption for
21   Mr. Mahabub's sales of his personal stock in
22   GenAudio?
23    A    No.
24    Q    Did you ever prepare a registration
25   statement for Mr. Mahabub to sell his personal shares

Page 72

1    of GenAudio?
2    A    No.
3    Q    I'd like you to look at what has been
4    previously marked as Exhibit 24.  This is -- includes
5    a November 9th, 2009, e-mail from Jim Mattos to Jerry
6    Mahabub but it's addressed to GenAudio Shareholders.
7    If you'd just take a few minutes and look at that.
8    A    Okay.
9    Q    So first focusing on the e-mail that's
10   addressed to Dear GenAudio Shareholders, did you see
11   this document prior to it being sent out on
12   November 9th, 2009?
13    A    It doesn't look familiar, but I -- I don't
14   specifically recall.  It's possible.
15    Q    Did you have a practice of reviewing the
16   letters to shareholders that were periodically sent
17   out by Mr. Mahabub?
18    A    Sometimes.  It depends if I was aware of
19   them.  Often sometimes I'd get them after the fact.
20    Q    Had you participated -- at this point in
21   time, November of 2009, had you participated in any
22   meetings with Apple?
23    A    No.
24    Q    Had you been involved in any extensive
25   discussions with Apple?

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Charles Ben Huber
August 12, 2016

Page 73

1      A    No.
2            MR. AVENI: Objection, vague.
3      Q    (BY MS. HUGHES)  Did you know of any facts
4    that indicated GenAudio might be acquired within the
5    next six months following November 2009?
6            MR. AVENI: Objection, calls for attorney/
7    client communications.  Instruct the witness not to
8    answer.
9      Q    (BY MS. HUGHES)  Attached to this e-mail
10   is a GenAudio business overview.  Did you review this
11   document before it was sent to investors?
12     A    I don't know.  It looks like a lot of the
13   other business plans, so I don't know if I reviewed
14   this specific one or not.
15     Q    All right.  If you look at Page 6782, the
16   top is a section that talks about the company's
17   dealings with Apple and Macintosh operating systems,
18   and then midway it says -- down it says, quote, To
19   achieve this objective the company has signed a
20   nondisclosure agreement, quote, NDA, end of quote,
21   with a leader in the consumer electronics industry,
22   the, quote, CE Company, end of quote, and provided
23   the CE Company with several of its own handheld
24   devices with the Astound technology incorporated into
25   the devices to explicitly show the CE Company the

Page 74

1    viability and enhanced audio experience for music,
2    movies and video games played on such handheld
3    devices.
4            Do you know who the CE Company was that
5    was referred to in this section?
6            MR. AVENI: Objection, attorney/client
7    privilege.  Instruct the witness not to answer.
8      Q    (BY MS. HUGHES)  Do you know what consumer
9    electronics industry leader the company had signed a
10   nondisclosure agreement with?
11           MR. AVENI: Same objection.
12     Q    (BY MS. HUGHES)  Does this refer to
13   GenAudio's dealings with Apple?
14           MR. AVENI: Same objection.
15           MS. HUGHES: I'll have the court reporter
16   mark this as Exhibit -- the next exhibit.
17           (Exhibit Number 73 was marked.)
18           MR. AVENI: What exhibit was the last one?
19   Sorry.
20           MR. SUSKIN: 24.
21           MR. AVENI: 24.  Oh, right.  Sorry.  Thank
22   you.
23     Q    (BY MS. HUGHES)  Exhibit 73 is an e-mail
24   from Paul Savio to Jerry Mahabub dated November 25th,
25   2009, and the Bate Number starts with GA 006678.  And

Page 75

1    included within that e-mail appears to be an e-mail
2    from Mr. Mahabub addressed to Hello Team.  If you
3    would look at -- at that part of the e-mail -- it
4    starts on Page 6679 -- and let me know if you have
5    seen Mr. Mahabub's e-mail to the team that's included
6    here.
7      A    Can you read back the question.
8      Q    I'm wondering if you've seen this e-mail
9    before.
10     A    It doesn't look familiar.
11     Q    Okay.  If you look at like the second to
12   last page, 6690, fifth line down, it says, I am
13   100 percent confident we, all caps, will, parens, I
14   can see Ben Huber cringing right now, end of parens,
15   make it now and I have done everything I can to
16   ensure our success.  After seeing that statement do
17   you have a recollection of whether or not Mr. Mahabub
18   sent this to you?
19     A    No.  I don't have a recollection.  I don't
20   recall seeing this.
21     Q    Do you know Mr. Savio's role with GenAudio
22   in November of 2009?
23     A    I do not.
24     Q    Was he on the board of directors?
25     A    I don't think so.

Page 76

1      Q    Do you know if he was an employee?
2      A    I don't recall.
3      Q    Do you know if he was a consultant?
4      A    I think he was a consultant, but I don't
5    know for sure.
6      Q    In November of 2009 did you know that
7    Mr. Mahabub had been selling over a million dollars
8    worth of his personal stock in GenAudio?
9      A    No.
10           MS. HUGHES: If the court reporter would
11   mark this as Exhibit 74.
12           (Exhibit Number 74 was marked.)
13     Q    (BY MS. HUGHES)  Exhibit 74 is a stock
14   certificate and attachments to it, including a stock
15   sale purchase -- excuse me, a stock sale and purchase
16   agreement and a, I think, proxy -- irrevocable proxy
17   agreement.  It's marked with the Bate Number Mahabub
18   001659 and it's for a shareholder named George
19   William Marvin.  Do you recognize the first two pages
20   as a stock certificate for GenAudio?
21     A    It looks like the form they used.
22     Q    And then if you turn to the third page
23   which starts with the stock sale and purchase
24   agreement, is this a form of an agreement that you
25   prepared?

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Charles Ben Huber
August 12, 2016

Page 77

```
 1     A    I think so but I don't know for sure.
 2     Q    At some point in time did you prepare a
 3   stock sale and purchase agreement for Mr. Mahabub to
 4   use in his personal sales of GenAudio stock?
 5     A    Yes.
 6     Q    Attached to this is an irrevocable proxy
 7   agreement.  At some point in time did you prepare an
 8   irrevocable proxy agreement for Mr. Mahabub to use in
 9   his personal sales of GenAudio stock?
10     A    Yes.
11     Q    When I look at the stock sale and purchase
12   agreement it doesn't have any investor questionnaire
13   to determine whether an individual is accredited.  Is
14   that missing or was that not part of the stock
15   purchase agreement?
16     A    I don't recall.
17     Q    You don't recall preparing an investor
18   questionnaire to use with the private stock sale
19   agreements?
20     A    Correct.
21          THE DEPONENT: Is there a way we could
22   take a break real quick.
23          MS. HUGHES: Yes.  We may go off the
24   record.
25          THE VIDEOGRAPHER: We're going off the
```

Page 78

```
 1   record.  The time is 11:38 a.m.
 2          (Recess from 11:38 to 11:44 a.m.)
 3          THE VIDEOGRAPHER: We're back on the
 4   record.  The time is 11:45 a.m.
 5     Q    (BY MS. HUGHES)  Mr. Huber, I understand
 6   there's something you wanted to clarify about your
 7   last testimony.  What is that?
 8     A    Yes.  In connection with the preparation
 9   of the form of the stock sale agreement and the proxy
10   I just wanted to clarify that I prepared that for one
11   very isolated transaction at the beginning of 2009
12   with five individuals who we knew were accredited
13   investors.
14     Q    And who were those five individuals?
15          MR. AVENI: I'm going to move to strike
16   that answer as potentially divulging information
17   learned in communications through GenAudio and
18   instruct you to not ask discuss any details of any
19   other transaction to the extent that you learned them
20   for the purposes of providing legal advice.
21          MR. SUSKIN: And we'll -- we'll honor that
22   instruction.  But just for clarification, Ben, were
23   you at all involved in the transaction with
24   Mr. Marvin that Ms. Hughes showed you the
25   documentation for?
```

Page 79

```
 1          THE DEPONENT: No.
 2          MR. AVENI: Could we go off the record
 3   again for one second?
 4          MS. HUGHES: Really, counsel?
 5          MR. AVENI: Okay.  Fine.  I won't do it.
 6   I mean, I'm trying to help here because that's okay.
 7   Fine.  Never mind.  I mean you're taking a deposition
 8   of an attorney.  It's difficult.  Surely you
 9   recognize that.  I'm not trying to be difficult.  I'm
10   trying to be very cooperative in this deposition.
11          MS. HUGHES: Let's go off the record.
12          MR. AVENI: No.  I don't need it.  That's
13   okay.  I just wanted to make sure that everybody was
14   on the same page as to how we dealt with I think a
15   difficult situation, but if that's not needed I will
16   not do it.
17     Q    (BY MS. HUGHES)  All right.  Mr. Huber,
18   when you prepared the initial stock sale and purchase
19   agreement for a specific transaction with five
20   individuals, it was on behalf of Mr. Mahabub as an
21   individual, correct?
22     A    No.
23     Q    All right.  Who were the five individuals
24   that that transaction involved?
25          MR. AVENI: Objection on the basis of the
```

Page 80

```
 1   attorney/client privilege and the attorney work
 2   product doctrine.  Instruct you not to answer.
 3     Q    (BY MS. HUGHES)  Do you know the date of
 4   that transaction?
 5     A    It was either the very end of 2008 or
 6   early in 2009.
 7     Q    Was it related to the closing of the 2008
 8   offering that we looked at earlier this morning?
 9     A    I'm not entirely sure what you're asking.
10     Q    Okay.  My understanding was that
11   Exhibit 69, which we looked at, the private placement
12   memoranda for December 11, 2008, it has a minimum
13   offering amount of $1 million, correct?
14     A    Uh-huh.
15     Q    Is that a yes or a no?
16     A    Yes.  Yes.
17     Q    All right.  And for GenAudio to be
18   entitled to that money it actually had to raise a
19   million dollars from investors.
20     A    Correct.
21     Q    If it didn't raise that amount all the
22   money goes back to the initial investors.
23     A    Correct.
24          MR. AVENI: Objection, calls for a legal
25   conclusion.
```

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Charles Ben Huber
August 12, 2016

Page 81

1    Q    (BY MS. HUGHES)  Was the private
2    transaction that you were involved in at all
3    connected to GenAudio making that minimum investment
4    amount?
5    A    No.
6    Q    If you look at Exhibit 74 and the stock
7    sale -- stock sale and purchase agreement that's
8    included in it, are there any terms in that agreement
9    that identify whether or not the purchaser is an
10   accredited investor?
11        MR. AVENI: Objection, the document speaks
12   for itself and calls for a legal conclusion.
13   A    I don't see anything in the agreement that
14   suggests that's the case.
15   Q    (BY MS. HUGHES)  Did you authorize
16   Mr. Mahabub to use the stock purchase agreements in
17   other transactions he had for the personal -- his
18   personal sales of securities?
19   A    No.
20   Q    In February of 2010 did you travel to San
21   Francisco and participate in any meetings Mr. Mahabub
22   had with Apple and Phil Schiller?
23   A    No.
24   Q    Were you advised in February of 2000 that
25   Apple was going to roll out Astound for release in

Page 82

1    Apple's products?
2        MR. AVENI: Objection, attorney/client
3    privilege.  Instruct the witness not to answer.
4    Q    (BY MS. HUGHES)  Were you asked in
5    February of 2009 to prepare any documents for Apple's
6    acquisition of GenAudio?
7        MR. AVENI: Objection, lacks foundation.
8    A    What was the question?  I'm sorry.
9    Q    (BY MS. HUGHES)  Were you asked in
10   February of 2009 to prepare any documents for Apple's
11   acquisition of GenAudio?
12   A    No.
13        MR. SUSKIN: Just, I'm sorry, a quick
14   clarification.  Your prior question I believe about
15   whether he went to San Francisco I thought you said
16   February 2010 and now we're talking about
17   February 2009.  I just want to make sure that you
18   meant those two different years.
19        MS. HUGHES: Thank you, counsel.  That --
20   those are inaccurate questions.
21   Q    (BY MS. HUGHES)  Let me start again.  Were
22   you asked in February of 2010 to prepare any
23   documents for Apple's acquisition of GenAudio?
24   A    No.
25   Q    Were you asked in 2010 to provide any

Page 83

1    licensing agreements for GenAudio to license its
2    technology to Apple?
3    A    Not that I recall, but it's possible.
4    Q    It's possible?
5    A    Yeah.  Like -- I did so many license
6    agreements for them.  I don't think I did one for
7    Apple.  I mean, if you had one or showed me it, but I
8    don't recall.
9    Q    If you prepared a licensing agreement
10   between GenAudio and Apple, do you retain a copy of
11   that in your business files?
12   A    Yeah, I would.  Like I said, I don't think
13   I did, but . . .
14   Q    Were you aware that GenAudio hired a
15   company called Inavasis, Inc. to prepare a valuation
16   report?
17   A    I became aware after they did it.
18   Q    Roughly what time frame did you become
19   aware of it?
20   A    I don't recall.
21   Q    Were you involved at all in the decision
22   to hire Inavasis?
23   A    No.
24   Q    Were you involved in providing any of the
25   factual information to Inavasis?

Page 84

1    A    No.
2    Q    Were you involved in preparing or
3    providing the assumptions that were used in that
4    report?
5    A    No.
6    Q    Did you have any conversations with the
7    gentleman who worked for Inavasis, Sam Khoury,
8    related to him preparing the report for GenAudio?
9    A    No.
10   Q    Were you aware in the fall of 2009 that
11   GenAudio had given up its business lease?
12   A    I became aware at some point, but I don't
13   know when.
14   Q    That it no longer had an office space.
15   A    Yeah.
16   Q    Okay.  Were you aware in the fall of 2009
17   that GenAudio had financial difficulties paying its
18   employees?
19   A    Again, I don't know when I became aware,
20   but I -- they often had difficulties.  I don't recall
21   when that started though.
22   Q    Did GenAudio ever have difficulties paying
23   your legal fee bills?
24   A    Yes.
25   Q    Are you aware of Mr. Mahabub having any

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Charles Ben Huber
August 12, 2016

Page 85

1    employment outside of GenAudio during this time frame
2    2009/2010?
3        A    No.  Let me just clarify.  No, other than
4    he had Astound Studios on the side, and I don't know
5    exactly what was going on with that, but . . .
6        Q    So Astound Studios was a business that
7    Mr. Mahabub was associated with?
8        A    Yeah.  We had spun that out of GenAudio.
9    I mean, the bulk -- as I understood it, the bulk of
10   the work they were doing was for GenAudio and was
11   related to GenAudio, but he may have been doing some
12   other things, mixing for, you know, separately
13   through that company for other people.
14       Q    Let me show you -- or have the court
15   reporter mark Exhibit 77.
16           (Exhibit Number 75 was marked.)
17       Q    (BY MS. HUGHES)  Exhibit 75.  Excuse me.
18   Exhibit 75 was marked during investigative testimony
19   as Exhibit 97 and it has the Bate numbers starting
20   with GA 001877.  These are board of directors
21   meetings for a telephonic meeting that occurred on
22   February 12th, 2010.  If you would take a few minutes
23   and look at these and tell me then whether or not you
24   recognize them.
25       A    Yes, I recognize it.

Page 86

1        Q    Does this board of directors minutes
2    include a discussion of transferring the studio to
3    Mr. Mahabub?
4        A    Yes.
5        Q    And are those terms in essence at the
6    bottom of the first page carrying over into the
7    second page?
8        A    Yes.
9        Q    And were those the terms adopted by the
10   board for the transfer of the studio?
11       A    Yes.
12           MS. HUGHES: I'd like the court reporter
13   to mark this as Exhibit 76.
14           (Exhibit Number 76 was marked.)
15       Q    (BY MS. HUGHES)  Exhibit 76 is a May 15
16   (sic), 2010, shareholder letter on GenAudio
17   letterhead.  It was previously marked during the
18   investigation as investigative Exhibit 5 and it has
19   Bate Number GA 00140.
20           MR. SUSKIN: Just I think you said May but
21   it looks like it's March is the date.
22       Q    (BY MS. HUGHES)  It is dated March 15th,
23   2010.
24           MS. HUGHES: And I did misspeak.  Thank
25   you, counsel.

Page 87

1        Q    (BY MS. HUGHES)  Mr. Huber, do you
2    recognize this letter?
3        A    It looks familiar.
4        Q    Did you prepare this letter?
5        A    No.
6        Q    Did you review it before it was sent to
7    shareholders?
8        A    I'm sure I did.
9        Q    In the lower left-hand corner are the
10   initials DEN 97159474.  Do you recognize those
11   numbers?
12       A    Not specifically, but that's our typical
13   footer.
14       Q    So that's a way your law firm keeps track
15   of documents that have come into your -- your firm?
16       A    Yeah.  I suppose this could have been sent
17   afterwards and uploaded onto the system, but I think
18   I probably reviewed this.
19       Q    At this point in March of 2010 had
20   participated in any negotiations with Apple, Inc.?
21       A    No.
22       Q    Had you drafted any agreements for
23   GenAudio to either be acquired by or sell its license
24   -- sell a license to Apple?
25       A    No, not to my recollection.

Page 88

1        Q    Now I'll have a look at a document we
2    previously marked.  It's Exhibit 2 in the -- in the
3    folder.  So Exhibit 2 is a confidential placement
4    memoranda for GenAudio.  It's dated March 15th, 2010.
5    Have you seen this document before?
6        A    It looks familiar.  Have I seen this exact
7    one?  I don't know for sure, but it looks like the
8    private placement memorandum for their March 2010
9    offering.
10       Q    Were you involved in -- in drafting the
11   March --
12       A    Yes.
13       Q    -- private placement offering?
14       A    I would have been.
15       Q    All right.  If we turn to Page GA 4995,
16   what does this page contain?
17       A    495 or 4995?
18       Q    495.
19       A    Okay.  Investor suitability standards.
20       Q    And these are the standards for
21   determining whether someone is an accredited
22   investor?
23       A    Yeah, just like we discussed before.
24       Q    All right.  So -- so kind of this -- this
25   has the same format as the earlier offerings we

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Charles Ben Huber
August 12, 2016

Page 113

1    Mr. Benz, here are the things I am producing to you
2    on this date?
3        A    There's -- I believe there's e-mail
4    correspondence.  I don't think there was any letter.
5    Everything was done electronically, as I recall.
6        Q    Okay.
7            MS. HUGHES: At this time we don't have
8    any additional questions.  Who -- do you have any
9    questions for Mr. Huber?
10           MR. AVENI: I do not have any questions at
11   this time.
12           MS. HUGHES: Mr. Holmes, do you have any
13   questions for Mr. Huber?
14           MR. HOLMES: Sorry.  There was a fire
15   truck going by.  No, I don't.  Thank you.
16           MS. HUGHES: All right.  With that then we
17   will go off the record.
18           THE VIDEOGRAPHER: This marks the end of
19   DVD Number 3 in the deposition of Charles Ben Huber.
20   Going off the record, and the time is 1:41 p.m.
21           (The deposition concluded at 1:41 p.m. on
22           August 12, 2016.)
23
24           _____
25                CHARLES BEN HUBER

Page 114

1    STATE OF COLORADO  )
2                       ) ss.    REPORTER'S CERTIFICATE
3    COUNTY OF DENVER   )
4            I hereby certify that the witness in the
5    foregoing deposition, CHARLES BEN HUBER, was by me
6    duly sworn to testify to the truth, the whole truth,
7    and nothing but the truth, in the within-entitled
8    cause; that said deposition was taken at the time and
9    place herein named; that the deposition is a true
10   record of the witness's testimony as reported by me,
11   a duly certified shorthand reporter and a
12   disinterested person, and was thereafter transcribed
13   into typewriting by computer.
14           I further certify that I am not interested
15   in the outcome of the said action, nor connected
16   with, nor related to any of the parties in said
17   action, nor to their respective counsel.
18           IN WITNESS WHEREOF, I have hereunto set my
19   hand this 17th day of August, 2016.
20   Reading and Signing was:
21   Requested
22
23
24           BARBARA J. CASTILLO, RMR, CRR
25           STATE OF COLORADO