# EXHIBIT 48

GENAUDIO, INC. BOARD OF DIRECTORS
February 12, 2010 Telephonic Meeting Minutes



GOVERNMENT EXHIBIT
2-27-97 DS
D-03450

Date: February 12, 2010
Present on Call: Directors Ted Cohen, Mark Bobak, Elliott Mazer, Jerry Mahabub, Paul Powers, and VP of Finance and Secretary, Jim Devine.

At 5:00 central time, the meeting was called to order and the following matters were discussed:

1. Finance Report – Jim Devine, VP of Finance, reported on the financial statements circulated to the Board members, the amount of the Company's note to Mr. Mahabub, third party payables, accrued employee remuneration, and the status of preparing past due tax returns.

2. Legal Settlements - Paul Powers reported on the settlements with Ngage, GMR, Diesel, and Chalice.

3. Management Incentive Compensation Program Warrant Status – Paul Powers reported on the status of the warrants available under the general MICP warrant pool and under the CEO warrant portion thereof, as shown in the table sent to the Board members which is set forth on Exhibit A to the First Amendment to Management Incentive Compensation Program attached to these minutes as Appendix 1. It was noted that the Company's loan from Mr. Mahabub for the period from December 17, 2008 to February 12, 2010 had reached $1,536,622 which exceeds the 1MM ceiling on the CEO warrants established at the November 9, 2009 Board meeting.

4. Sublease – Paul Powers reported on the leasing arrangements for the studio space in the AIX Records building. It was explained to the Board that the Company had invested substantial sums in the build out of the studio space but only had a month to month lease with the landlord and that the landlord had demanded a 3 year lease commitment. Due to the Company's financial condition, it was determined that contractually committing the Company to a three year financial obligation would expose the Company to potentially significant liability if it failed to pay the rent. In order to remove this financial risk from the Company and still protect the Company's existing investment in the build out of the space, Mr. Mahabub entered into the lease for the space with the landlord individually and agreed to sublease the space to the Company for the same rental amount. Mr. Mahabub reported that the studio is nearly complete and should be fully operational in March, 2010 at an additional cost of less than $60,000.

In addition, Mr. Mahabub expressed his willingness to purchase studio improvements and certain studio equipment at a price equal to the Company's cost basis (without depreciation) with payment as an offset against the Company's indebtedness to Mr. Mahabub and in exchange for a warrant with a $5.00 strike price for each dollar of equipment purchased (but excluding any dollars subject to the CEO warrants from his loans to the Company so as to avoid the receipt of double warrants). It was noted that the sale of the studio improvements and equipment at cost rather than a depreciated/used basis maximizes the reduction in the indebtedness of the Company to Mr. Mahabub while the warrants only become valuable after the per share price of the Company exceeds $5.00. This action was also deemed helpful in improving the Company's financial statements in anticipation of a new offering.

The amount of equipment and tenant improvements for the AIX studio and the studio improvements at the Venice beach studio space total $860,848, of which $516,063 would be eligible for warrants ($344,785 being included in the loan indebtedness of the Company to Mr. Mahabub and therefore already counted towards the CEO Warrants). Payment would be made as a reduction in the amount of the Company's indebtedness to Mr. Mahabub reducing such indebtedness from $1,536,622 to $675,774 -- a reduction of $860,848. An Asset Transfer Schedule detailing the assets to be transferred and the warrant calculation is attached to the form

FOIA CONFIDENTIAL TREATMENT REQUESTED BY I EQUITY CORP. GA001877

of Sublease and Sale Agreement which was circulated to the Board prior to the meeting, and which Sublease and Sale Agreement is attached to these minutes as Appendix 2.

In summary, it was noted that the Sublease enables the Company to protect its studio improvements at the AIX studio without a long term contractual commitment, and still use the studio and the sold equipment on a first priority basis. The Sublease further provides for Mr. Mahabub to pay the subrentals and have them added to the Company's note to Mr. Mahabub if the Company is unable to pay such subrentals, until such time as the net operating income of the Company exceeds $1,000,000. After discussion, all directors other than Mr. Mahabub who abstained from voting due to the conflict of interest, approved the sublease and sale arrangements.

5. Approval of the First Amendment to Management Incentive Compensation Program – After discussing the Sublease and the First Amendment to Management Incentive Compensation Program, Messrs. Bobak, Cohen, and Mazer, constituting the three independent directors of the Board, recognized the value of Mr. Mahabub's loans to the Company so as to continue Company operations in the absence of the Company's fund raising, and further recognized the value to the Company of receiving such loans on an interest free basis in exchange for the CEO warrants at a $5.00 strike price (which strike price represents the highest warrant price held by any investors and therefore only causes dilution after $5.00 per share and thereafter at 4.97%).

The independent directors then approved the form of the First Amendment to Incentive Compensation Program in the form submitted to them, including the authorization of an increase in the general MICP warrant pool by 1,014,685 from 1,500,000 warrants to 2,514,685 warrants which general MICP warrant pool increase includes an increase in CEO Warrants from 1,000,000 warrants to 2,052,685 warrants. Messrs. Mahabub and Powers did not vote due to their eligibility for such warrants as employees in the Management Incentive Compensation Program. The independent directors directed that a cashless exercise warrant agreement be prepared in favor of Mr. Mahabub for the sum of 2,052,685 warrants at a $5.00 strike price for a 5 year period commencing February 12, 2010 and directed Mr. Devine to sign such Warrant Agreement as the VP of Finance of the Company. It was noted that the 2,052,685 warrants are comprised of 1,536,622 warrants representing the current balance of the interest free loan from Mr. Mahabub to the Company and 516,063 warrants representing the $516,063 portion of the $860,847 of studio equipment and studio improvements qualifying for warrants since it is not already included in the Mahabub loan amount, all as more particularly described in the First Amendment to Management Incentive Compensation Program attached as Appendix 2. The balance of the warrants constituting the total of 2,514,685 consist of the 340,000 warrants issued at the November 9, 2009 Board meeting and the 122,000 warrants described below.

In addition, as part of the increase in the general compensatory warrant pool under the Management Incentive Compensation Program, the Board specifically approved 122,000 warrants to be issued to Mr. Devine (20,000) and Mr. Mattos (102,000) at a $3.00 strike price in connection with loans made to the Company in February and March, 2008 when the stock price was at or below $3.00 per share, and directed Mr. Powers to prepare a cashless exercise warrant agreement for such employees.

The foregoing warrant authorizations will fully deplete the incentive compensation pool, and further issuances will need to be approved by the Board. No new authorization was made in order to consider all alternatives in the future.

6. Travel and Expense Policy Amendment – Mr. Mahabub explained that he often uses a hotel suite in order to avoid the need to obtain a conference room for audio demonstrations or meetings and therefore has a unique need to have an exception to the Company's Travel and Expense Policy based on 150% of the hotel room cost amount permitted by the Government Accounting Office ("GAO"). Accordingly, the four members of the Board other than Mr. Mahabub approved an

exception to the GenAudio Travel and Expense Policy in the form of the First Amendment to GenAudio Travel and Expense Policy attached to these minutes as Appendix 3 stating that:

*Notwithstanding the foregoing GAO limitation, the Chief Executive Officer of the Company shall be entitled to be reimbursed in full for the cost of a hotel suite whenever the CEO determines that a suite is needed for the purpose of business development, work space collaboration with employees or contractors engaged in business with the Company, or audio demonstrations to potential investors or licensees.*

Mr. Mahabub confirmed that the exception was needed for the room itself and not for personal charges of any type. This change was made retroactive to March 11, 2009, the effective date of the GenAudio Travel and Expense Policy, as set forth in Appendix 3

7. Apple - Mr. Mahabub provided a summary of the discussions with Apple, the Inavasis report, Micasa, the ASE, the professional plug-ins, and the AIX studio build-out. Mr. Bobak emphasized the need to get the ASE product compatible with the new Microsoft and Apple operating systems and to allocate company resources towards this effort in order to create near term revenues. Mr. Mahabub reported on the status of these efforts. There was discussion of the Inavasis report and it was determined that the Inavasis report would not be given to Apple until the Board reviewed the report and agreed upon the appropriate use and timing of delivery of such report to Apple.

8. New Offering – The need for a Company stock offering was discussed and Mr. Mahabub and Mr. Powers were directed to prepare a draft of a private placement memorandum for the Board's review contemplating an offering at $3.00 per share but without warrant coverage.

The meeting was adjourned at 6:30 P.M. central time.

Jim Devine, Secretary & Paul Powers, Assistant Secretary

Appendix 1 – First Amendment to Management Incentive Compensation Program
Appendix 2 – Sublease and Sale Agreement
Appendix 3 – First Amendment to GenAudio Travel and Expense Policy

Confirmation of Approval:

_____          _____
Mark Bobak                                Paul Powers

_____          _____
Ted Cohen                                 Elliot Mazer

_____
Jerry Mahabub

**FOIA CONFIDENTIAL TREATMENT REQUESTED BY I EQUITY CORP.**          **GA001879**

Mahabub reported on the status of these efforts. There was discussion of the Inavasis report and it was determined that the Inavasis report would not be given to Apple until the Board reviewed the report and agreed upon the appropriate use and timing of delivery of such report to Apple.

8. New Offering – The need for a Company stock offering was discussed and Mr. Mahabub and Mr. Powers were directed to prepare a draft of a private placement memorandum for the Board's review contemplating an offering at $3.00 per share but without warrant coverage.

The meeting was adjourned at 6:30 P.M. central time.

Jim Devine, Secretary & Paul Powers, Assistant Secretary

Appendix 1 – First Amendment to Management Incentive Compensation Program
Appendix 2 – Sublease and Sale Agreement
Appendix 3 – First Amendment to GenAudio Travel and Expense Policy

Confirmation of Approval:

_____
Mark Bobak

_____
Paul Powers

_____
Ted Cohen

_____
Jerry Mahabub

_____
Elliot Mazer

**FOIA CONFIDENTIAL TREATMENT REQUESTED BY I EQUITY CORP.**                                                                                                                      GA001880

exception to the GenAudio Travel and Expense Policy in the form of the First Amendment to GenAudio Travel and Expense Policy attached to these minutes as Appendix 3 stating that:

*Notwithstanding the foregoing GAO limitation, the Chief Executive Officer of the Company shall be entitled to be reimbursed in full for the cost of a hotel suite whenever the CEO determines that a suite is needed for the purpose of business development, work space collaboration with employees or contractors engaged in business with the Company, or audio demonstrations to potential investors or licensees.*

Mr. Mahabub confirmed that the exception was needed for the room itself and not for personal charges of any type. This change was made retroactive to March 11, 2009, the effective date of the GenAudio Travel and Expense Policy, as set forth in Appendix 3.

7. Apple – Mr. Mahabub provided a summary of the discussions with Apple, the Inavasis report, Micasa, the ASE, the professional plug-ins, and the AIX studio build-out. Mr. Bobak emphasized the need to get the ASE product compatible with the new Microsoft and Apple operating systems and to allocate company resources towards this effort in order to create near term revenues. Mr. Mahabub reported on the status of these efforts. There was discussion of the Inavasis report and it was determined that the Inavasis report would not be given to Apple until the Board reviewed the report and agreed upon the appropriate use and timing of delivery of such report to Apple.

8. New Offering – The need for a Company stock offering was discussed and Mr. Mahabub and Mr. Powers were directed to prepare a draft of a private placement memorandum for the Board's review contemplating an offering at $3.00 per share but without warrant coverage.

The meeting was adjourned at 6:30 P.M. central time.

Jim Devine, Secretary & Paul Powers, Assistant Secretary

Appendix 1 – First Amendment to Management Incentive Compensation Program
Appendix 2 – Sublease and Sale Agreement
Appendix 3 – First Amendment to GenAudio Travel and Expense Policy

Paul Powers

Elliot Mazer

Jerry Mahabub

exception to the GenAudio Travel and Expense Policy in the form of the First Amendment to GenAudio Travel and Expense Policy attached to these minutes as Appendix 3 stating that:

*Notwithstanding the foregoing GAO limitation, the Chief Executive Officer of the Company shall be entitled to be reimbursed in full for the cost of a hotel suite whenever the CEO determines that a suite is needed for the purpose of business development, work space collaboration with employees or contractors engaged in business with the Company, or audio demonstrations to potential investors or licensees.*

Mr. Mahabub confirmed that the exception was needed for the room itself and not for personal charges of any type. This change was made retroactive to March 11, 2009, the effective date of the GenAudio Travel and Expense Policy, as set forth in Appendix 3.

7. Apple – Mr. Mahabub provided a summary of the discussions with Apple, the Inavasis report, Micasa, the ASE, the professional plug-ins, and the AIX studio build-out. Mr. Bobak emphasized the need to get the ASE product compatible with the new Microsoft and Apple operating systems and to allocate company resources towards this effort in order to create near term revenues. Mr. Mahabub reported on the status of these efforts. There was discussion of the Inavasis report and it was determined that the Inavasis report would not be given to Apple until the Board reviewed the report and agreed upon the appropriate use and timing of delivery of such report to Apple.

8. New Offering – The need for a Company stock offering was discussed and Mr. Mahabub and Mr. Powers were directed to prepare a draft of a private placement memorandum for the Board's review contemplating an offering at $3.00 per share but without warrant coverage.

The meeting was adjourned at 6:30 P.M. central time.

Jim Devine, Secretary & Paul Powers, Assistant Secretary

Appendix 1 – First Amendment to Management Incentive Compensation Program
Appendix 2 – Sublease and Sale Agreement
Appendix 3 – First Amendment to GenAudio Travel and Expense Policy

Confirmation of Approval:

_____          *Paul B. Powers*
Mark Bobak                           Paul Powers

_____          _____
Ted Cohen                            Elliot Mazer

_____
Jerry Mahabub

FOIA CONFIDENTIAL TREATMENT REQUESTED BY I-EQUITY CORP.         GA001882