# EXHIBIT 49

GENAUDIO, INC. BOARD OF DIRECTORS

March 5, 2010 Telephonic Meeting Minutes

Present on Call: Directors Ted Cohen, Elliott Mazer, Jerry Mahabub, Paul Powers, and VP of Finance and Secretary, Jim Devine.

At 3:30 P.M. central time, the meeting was called to order and the following matters were discussed:

1. **Studio Agreement** – Paul Powers reported on the current status of the use arrangement for the studio space in the AIX Records building. This topic was discussed at the February 12, 2010 meeting of the Board and a form of Sublease was approved. However, since the date of the February 12, 2010 Board meeting, Mr. Mahabub has agreed to allow the Company to use the Studio Equipment and the Studio on a first priority basis without any subrental or any other charges so the form of agreement was changed from a sublease to a Studio Agreement, the form of which was circulated to the Board members in advance of this meeting and is attached to these minutes as Appendix 1. The form of Sublease approved at the February 12, 2010 Board meeting was never signed and it should be considered superseded by the Studio Agreement. As detailed in the Studio Agreement, the primary use of the Studio shall be for use by the Company on a first priority basis (i.e. any Company project has use priority over any non-Company project), and the Company shall be paid its standard third party rates and fees for the use of any Company employee and for the use of any Company technology in connection with any independent project. After discussion, all directors other than Mr. Mahabub who abstained from voting due to the conflict of interest, approved the Studio Agreement.

2. **Approval of the Second Amendment to Management Incentive Compensation Program** – The Board then discussed the Second Amendment to Management Incentive Compensation Program ("MICP") provided to the Board members and attached to these minutes as Appendix 2. Messrs. Cohen and Mazer, constituting a majority of the three independent directors of the Board, discussed the need to increase the thresholds for the establishment and payment of any cash bonus in conjunction with a sale of the Company due to the increase in the number of fully diluted shares and the reserve of additional shares for a new Company stock offering. It was noted that the threshold needed to represent a sale disposition that resulted in a significant percentage return to investors. The independent directors then approved the form of the Second Amendment to Management Incentive Compensation Program in the form submitted to them and attached hereto as Appendix 2.

3. **New Offering** – The Board members present unanimously authorized the issuance of 1,000,000 common shares to be sold at $3.00 per share pursuant to a private placement memorandum to be submitted to the Board.

4. **Tax Returns, Advances & Loans** – Mr. Devine reported on the filing of the Company's past due tax returns and discussions with the Company's outside tax counsel, Steve Anderson, and outside Certified Public Accountant, Steve Yobst about two suspense accounts. It was explained that the first suspense account was for advances to Mr. Mahabub in the early years of the Company and the second suspense account was for the undocumented expenses identified in the March, 2009 Board meeting. These accounts need to be allocated to appropriate accounting categories to finalize the accounting in advance of the filing of the Company's past due tax returns.  Mr. Mahabub agreed to eliminate half of his reimbursement request for the undocumented expenses since he has not had time to secure receipts, and the Company agreed to secure receipts for the portions thereof the Company would be allocating.  It was also noted that the Company's tax attorney and CPA suggested that an agreement be signed between Mr. Mahabub and the Company to confirm consistent accounting and tax treatment for the advances

*JM*

FOIA CONFIDENTIAL TREATMENT REQUESTED BY JERRY MAHABUB                    Mahabub002861

made to Mr. Mahabub in the early years of the Company as loans that have been repaid in full. Such agreement will be prepared and submitted to the Board for its review and approval.

5. **Employment Issues** - Mr. Mahabub reiterated that Brent Kaviar would be starting as a full time employee effective as of March 1, 2010, and that Steve Bagwell would no longer be an employee the Company as of March 1, 2010. However, Mr. Bagwell would be available to the Company as a consultant and Mr. Powers explained the terms of the consultant arrangement. Mr. Mahabub explained that this would make keep employee compensation level with the addition of Mr. Kaviar and was needed due to the Company's change in its marketing strategy away from direct marketing of the ASE product and towards hardware integrations requiring the hardware manufacturers to handle marketing.

6. **Updates** – Mr. Mahabub reported on the creation of a "C" software programming library which will exactly emulate the real Astound library, only it will have a series of 4 presets that are not sound localization based filters for Apple to test the technology their products without exposing the Company's core technology.

The meeting was adjourned at 4:15 P.M. central time.

Jim Devine, Secretary & Paul Powers, Assistant Secretary

Appendix 1 – Studio Agreement
Appendix 2 – Second Amendment to Management Incentive Compensation Program

Confirmation of Approval:

_____          _____
Ted Cohen                                                    Paul Powers

_____          _____
Jerry Mahabub                                             Elliot Mazer

FOIA CONFIDENTIAL TREATMENT REQUESTED BY JERRY MAHABUB                Mahabub002862

made to Mr. Mahabub in the early years of the Company as loans that have been repaid in full. Such agreement will be prepared and submitted to the Board for its review and approval.

5. **Employment Issues** - Mr. Mahabub reiterated that Brent Kaviar would be starting as a full time employee effective as of March 1, 2010, and that Steve Bagwell would no longer be an employee the Company as of March 1, 2010. However, Mr. Bagwell would be available to the Company as a consultant and Mr. Powers explained the terms of the consultant arrangement. Mr. Mahabub explained that this would make keep employee compensation level with the addition of Mr. Kaviar and was needed due to the Company's change in its marketing strategy away from direct marketing of the ASE product and towards hardware integrations requiring the hardware manufacturers to handle marketing.

6. **Updates** – Mr. Mahabub reported on the creation of a "C" software programming library which will exactly emulate the real Astound library, only it will have a series of 4 presets that are not sound localization based filters for Apple to test the technology their products without exposing the Company's core technology.

The meeting was adjourned at 4:15 P.M. central time.

Jim Devine, Secretary & Paul Powers, Assistant Secretary

Appendix 1 – Studio Agreement
Appendix 2 – Second Amendment to Management Incentive Compensation Program

Confirmation of Approval:

_____                    _____
Ted Cohen                                   Paul Powers

_____                    _____
Jerry Mahabub                               Elliot Mazer

FOIA CONFIDENTIAL TREATMENT REQUESTED BY JERRY MAHABUB          Mahabub002863

made to Mr. Mahabub in the early years of the Company as loans that have been repaid in full. Such agreement will be prepared and submitted to the Board for its review and approval.

5. **Employment Issues** - Mr. Mahabub reiterated that Brent Kaviar would be starting as a full time employee effective as of March 1, 2010, and that Steve Bagwell would no longer be an employee the Company as of March 1, 2010. However, Mr. Bagwell would be available to the Company as a consultant and Mr. Powers explained the terms of the consultant arrangement. Mr. Mahabub explained that this would make keep employee compensation level with the addition of Mr. Kaviar and was needed due to the Company's change in its marketing strategy away from direct marketing of the ASE product and towards hardware integrations requiring the hardware manufacturers to handle marketing.

6. **Updates** – Mr. Mahabub reported on the creation of a "C" software programming library which will exactly emulate the real Astound library, only it will have a series of 4 presets that are not sound localization based filters for Apple to test the technology their products without exposing the Company's core technology.

The meeting was adjourned at 4:15 P.M. central time.

Jim Devine, Secretary & Paul Powers, Assistant Secretary

Appendix 1 – Studio Agreement
Appendix 2 – Second Amendment to Management Incentive Compensation Program

Confirmation of Approval:

_____          _____
Ted Cohen                                Paul Powers

_____          _____
Jerry Mahabub                            Elliot Mazer

FOIA CONFIDENTIAL TREATMENT REQUESTED BY JERRY MAHABUB          Mahabub002864



*Appendix 1 to March 5, 2010 minutes*

# STUDIO AGREEMENT

This Studio Agreement (this "Agreement") is made and entered into by and between AstoundStudios, L.L.C., a Colorado limited liability company ("ASL") and GenAudio, Inc., a Colorado corporation ("GA") effective as of March 1, 2009.

## Preliminary Statements

Whereas, GA previously leased a studio room (the "Premises") located at 2050 Granville Avenue, Venice, California 90291 on a month-to-month basis from Mark and Mona Waldrep (collectively, the "Lessor"), but GA was unwilling to commit to a lengthy lease term of the Premises with Lessor due to GA's precarious financial condition; and

Whereas, in order to preserve the right to use the Premises and the studio improvements made therein by GA, Jerry Mahabub, the CEO and principal shareholder of GA, entered into a Lease dated as of July 1, 2009 with Lessor individually and has or will assign the Lease to ASL, which is a limited liability company wholly owned by Jerry Mahabub; and

Whereas, GA has paid for various tenant improvements to the Premises and to the studio located at 43 Ozone, #A, Venice, California 90291 (collectively, the "Tenant Improvements") and purchased certain equipment (the "Sound Equipment") which are more particularly described on Schedule 1 to the Bill of Sale attached as Exhibit A attached hereto and made a part hereof (the "Bill of Sale"); and

Whereas, GA desires to sell to ASL, and ASL desires to purchase from GA, such Tenant Improvements and Sound Equipment, and to provide GA with the use of the hereinafter described Studio in accordance with this Agreement.

## Agreement

Now therefore, in consideration of the mutual covenants of this Agreement and other valuable considerations, the receipt and sufficiency of which GA and ASL hereby acknowledge, ASL and GA agree as follows:

1. <u>Studio Use</u>. Given the relationship between ASL and GA, and as further consideration for the sale of the "Property" described in the Bill of Sale, ASL agrees that GA shall be entitled to the first priority use of the Premises, Tenant Improvements, and Sound Equipment, including all improvements and equipment hereafter owned by ASL (collectively, the "Studio"), but on a non-exclusive basis, all in accordance with the terms of this Agreement. Subject to GA's first priority use, it is expressly agreed that the Studio may be used by ASL or rented to third parties for independent projects and that all proceeds from such other projects shall belong to ASL except that (a) the use of any GA technology shall only be used with GA's approval and only upon the same terms and conditions as shall be applicable to unrelated third parties on an "arms length" basis with license fees payable to GA in the customary amount for such license, and (b) any time spent by any GA employees for ASL or third party work shall be charged at no less than the rates GA would charge for such employees' time to unrelated third parties on an "arms length" basis with payment to GA in accordance with GA's customary billing practice. GA shall be entitled to review the records of ASL upon reasonable advance notice from time to time in order to verify any billing allocations. In addition, Astound Studios will not perform any research and development to create product offerings that directly compete with GenAudio, its current product offerings, or any anticipated future product offerings, unless approved by GenAudio's Board of Directors.

2. **Name License.** GA hereby acknowledges that ASL's use of the work "Astound" in conjunction of the Studio is intended to provide GA with business exposure and is not in violation of the rights of GA. To the extent of its rights therein and without representation or warranty of any kind, GA hereby grants to ASL a non-exclusive, perpetual license to the name "Astound" for its use in conjunction with the Studio.

3. **Lease.** ASL shall perform all of the obligations of the tenant under the Lease, including all payment obligations thereunder. GA shall comply with all terms of the Lease respecting GA's use of the Premises and GA shall use all reasonable efforts to cooperate with ASL in connection with the Lease.

4. **Rent & Expenses.** ASL shall be responsible for paying the rent and all costs, expenses, charges or any amounts due under the Lease; provided, however, that the security deposit previously paid to the Lessor by GA shall be deemed transferred to ASL at the time of the full execution of this Agreement in recognition of GA's free use of the Studio.

5. **Term.** The term of this Agreement shall be co-terminous with the term of the Lease. In the event ASL extends the term of the Lease, then the term of this Agreement shall automatically extend for the same period of time. ASL shall use all good faith and commercially reasonable efforts to keep the Studio subject to the terms of this Agreement, including the exercise of any renewal options respecting the Lease.

6. **Sale of Sound Equipment and Tenant Improvements.** Effective as of the date hereof, GA and ASL have executed and delivered a Bill of Sale providing for the transfer of the Tenant Improvements and Sound Equipment at cost basis from GA to ASL in exchange for a corresponding reduction in the amount of indebtedness from GA to Jerry Mahabub, all as more particularly described in the Bill of Sale. The foregoing transfer was made in conjunction with the issuance of CEO Warrants to Jerry Mahabub pursuant to the Management Incentive Compensation Program adopted by GA's Board of Directors on November 9, 2009 as authorized by GA's Board of Directors in conjunction with the approval of this Agreement.

7. **Notices.** All notices and demands under this Agreement shall be given in accordance with the following addresses:

   If to GA:         GenAudio, Inc.
                     8200 South Quebec Street, Box A3250
                     Centennial, CO 80112

   If to ASL:        AstoundStudios L.L.C.
                     43 Ozone Avenue, Unit #A
                     Venice, CA 90291

   Either party may change its address for notices and demands under this Agreement by notice to the other parties.

8. **Entire Agreement.** This Agreement and the Bill of Sale attached hereto contain all of the agreements, conditions, warranties and representations relating to the use of the Premises and may be amended or modified only by written instruments executed by ASL and GA. This Agreement supersedes in all respects the form of Sublease that was discussed at the February 12, 2010 Board of Directors meeting but never signed.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY JERRY MAHABUB          Mahabub002866

9. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of such counterparts shall constitute one and the same instrument. A facsimile transmission of a signed counterpart of this Agreement shall be sufficient to bind the party or parties whose signature(s) appear on them.

10. **Governing Law.** All matters relating to the interpretation, construction, validity and enforcement of this Agreement shall be governed by the internal laws of the State of Colorado.

IN WITNESS WHEREOF, ASL and GA have executed this Agreement as of the date first written above.

"ASL"

ASTOUNDSTUDIOS, L.L.C.

By _____
Name: _____
Title: _____

"GA"

GENAUDIO, INC.

By: _____
Name: _____
Title: _____

The undersigned guarantees ASL's obligations hereunder, agrees to assign the Lease to ASL, transfer the Tenant Improvements and Sound Equipment to ASL and apply the cost of the Tenant Improvements and Sound Equipment at cost basis as on offset against the indebtedness of GA to the undersigned, in exchange for the sale of the Tenant Improvements and Sound Equipment and the undersigned's receipt of the CEO warrants described herein.

_____
Jerry Mahabub

FOIA CONFIDENTIAL TREATMENT REQUESTED BY JERRY MAHABUB        Mahabub002867

*Appendix 2 to March 5, 2010 Minutes*

## Second Amendment to Management Incentive Compensation Program

Due to a change in the value of the studio equipment subject to the Studio Agreement between the Company and Mr. Mahabub between the February 12, 2010 Board of Directors meeting and the March 5, 2010 Board of Directors meeting, and due to the issuance of additional warrants at both of such Board of Directors meetings as well as the contemplation of additional stock issuances, and to enhance the incentive to maximize the amount of any disposition transaction, the Board of Directors desires to (a) increase the initial threshold for the establishment of a cash bonus pool from Fifty Million Dollars ($50,000,000) to One Hundred Fifty Million Dollars ($150,000,000), (b) increase the balance of the gross transaction price thresholds by Fifty Million Dollars ($50,000,000) each, and (c) increase the maximum bonus pool amount from Five Million Dollars ($5,000,000) to Ten Million Dollars ($10,000,000). Accordingly, the Management Incentive Compensation Program is amended as follows:

1. **Threshold Increases.** Section 3 of the Management Incentive Compensation Program is hereby deleted in its entirety and the following is substituted in lieu thereof:

    3. **Cash Bonus Retention.** In the event the Company sells substantially all of its assets or there is a change of control of the Company with a gross transaction price as set forth below, the Board of Directors hereby agrees to retain the following sum from the gross transaction price of such disposition transaction for the purpose of awarding cash bonuses to directors, officers, employees, and key contractors after the closing of such transaction, subject to a maximum bonus pool of $10,000,000:

    | Gross Transaction Price | Bonus % | Cash Range |
    | --- | --- | --- |
    | >150MM - 200MM | 1% | 1.5MM – 2MM |
    | >200MM - 250MM | 1.5% | 3MM – 3.75MM |
    | >250MM - 300MM | 2.0% | 5MM – 6MM |
    | >300MM | 2.5% | 7.5MM -10MM |

    Bonus allocation recommendation shall be made by the CEO, and approved by the Company's Budget Committee except that the CEO's bonus shall be determined by the independent directors of the Board of Directors in the exercise of their sole discretion. The Directors' bonuses shall be determined by the Budget Committee after obtaining the advice of an independent compensation advisor. No pool shall be created unless the gross transaction price is more than One Hundred Fifty Million Dollars ($150,000,000). In no event shall the total cash bonus pool exceed Ten Million Dollars ($10,000,000). The foregoing program shall not apply to any license arrangement.

2. **Ratification.** Except as amended hereby, the Management and Incentive Compensation Program adopted by the Board of Directors of the Company as of November 9, 2009 and as previously amended as of February 12, 2010, is hereby ratified and confirmed as of March 5, 2010.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY JERRY MAHABUB        Mahabub002868