EXCERPTED

EXHIBIT 220

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-02118-WJM-CBS

SECURITIES AND EXCHANGE
COMMISSION,

                          Plaintiff,

            v.

TAJ JERRY MAHABUB, GENAUDIO, INC., and
ASTOUND HOLDINGS, INC.,

                          Defendants.

## PLAINTIFF'S RESPONSES TO DEFENDANT GENAUDIO, INC.'S INTERROGATORIES TO PLAINTIFF (SET ONE)

Plaintiff Securities and Exchange Commission ("SEC" or "Commission") submits

its responses to the interrogatories of defendant GenAudio Inc. ("GenAudio") that were

received on December 9, 2016.

### GENERAL OBJECTIONS

The Commission objects to the proffered instructions, definitions, and discovery

requests to the extent they require the Commission to do anything other than that

required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and

Orders entered in this matter.  The Commission further objects to the proffered

definitions to the extent they purport to define any word or phrase as having other than

its ordinary meaning.

Discovery is ongoing and the Commission continues to learn additional facts

supporting its claims.  The Commission reserves the right to amend or supplement its

1

responses if further information comes to light, and reserves the right to present additional facts or evidence in support of its contentions at trial.

The Commission incorporates these General Objections into each response, below. The Commission has not withheld any information based on these General Objections.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:** IDENTIFY each and **every false and misleading statement** YOU allege GENAUDIO made including but not limited to the date the false and misleading statement was made, the IDENTITY of each individual to whom the false and misleading statement was made, and the means by which the false and misleading statement was transmitted.

**RESPONSE:** In addition to its General Objections, the Commission objects to this Interrogatory that requests "each and every" false and misleading statement, the date it was made, each individual to whom it was made, and the means by which it was transmitted as unnecessary, overly burdensome, and not proportional to the needs of the case.  There may be additional false and misleading statements made by GenAudio. The Commission reserves the right to identify additional false and misleading statements.

Subject to its objections and additional information that may be developed through discovery, the Commission identifies the following as the principal, false and misleading, statements that GenAudio made that are relevant to this litigation:

1. From September 2009 through at least June 4, 2011, GenAudio represented in emails to shareholders and prospective investors that it was **participating**

2

**in negotiations with Apple Inc.** to either acquire GenAudio or to license its technology for use in Apple's products worldwide. The shareholders are identified on GenAudio, Inc.'s Common Stock Transfer Ledger and other documents produced by GenAudio. [Complaint ¶ 2, see all the communications listed below; GA001816]

2. On **September 25, 2009**, Mahabub, as the CEO of GenAudio, told Ted Cohen, Mark Bobak, Elliott Mazer, and Paul Powers during a telephonic conference call that a **deal with Apple was highly probable** based on the many meetings and Apple's response to date. [Complaint ¶ 42; GA006254]

3. Mahabub, as the CEO of GenAudio, sent an email on **October 2, 2009**, to Paul Powers, Walt Horat, Greg Morgenstein, Brent Kaviar, Steve Bagwell, **Jim Mattos**, Gary Smith, Jim Devine, Elliot Mazer, Ted Cohen, Mark Bobak, Paul Savio, Ian Esten, Bob Coover and Melissa Gonzales. Mahabub claimed that, among other things, that **he had met with Apple's Senior Vice President for Worldwide Marketing**, Phil Schiller, and demonstrated GenAudio's technology to him, that the he "was very impressed," and **requested additional demonstrations** from Mahabub. Mahabub also stated in the email: "[m]y confidence level is at **80% as of now that we will be doing a $weet deal with Apple**.... I am supposed to meet with the big man [the CEO of Apple] in two to three weeks...." [Exh. 57]

4. On **October 19, 2009**, GenAudio and Mahabub wrote to his team of employees forwarding an October 18, 2009, email to which he falsely stated

3

he had sent the email to Timothy Cook and Phillip Schiller [Exh. 119 and Exh. 120]

5.  On **November 9, 2009**, GenAudio and Mahabub sent a letter to all GenAudio shareholders by email.  In this letter, Mahabub wrote that "there is a strong possibility that the Company may **be acquired within the next 6 months** in light of our extensive discussions with a global industry leader in consumer electronics."  Mahabub's reference to "a global industry leader in consumer electronics" was to Apple. [Complaint ¶ 52; Exh. 58]  On **November 9, 2009**, GenAudio through Mattos told Derek Eldridge, and other shareholders that GenAudio would be acquired by Apple within the next 6-8 weeks. [GA006819]

6.  On **February 12, 2010**, Mahabub emailed Walt Horat, Gary Smith, Greg Morgenstein, Brent Kaviar, Jim Mattos, Melissa Gonzales, Jim Devine, Paul Powers, Steve Bagwell, Ian Esten, Bob Coover, Paul Savio, Recy Pilloud, and Stephan M. Bernsee stating, among other things, that he had a great meeting with Phil Schiller and it looks like a **Christmas rollout is the new target for Astound release** in Apple products.  [Exh. 59]

7.  On or about **March 15, 2010**, Mahabub and GenAudio sent the 2010 Offering Materials, consisting of Mahabub's letter to Shareholders, the Private Placement Memorandum, and Technology Valuation Analysis report of Inavisis, Inc. to all shareholders by email and later sent it to other prospective investors.  [Complaint ¶ 56]  GenAudio and Mahabub made false and misleading statements in the letter among other things that the Valuation Analysis report from Inavasis stated that the "fair market value" of GenAudio's

technology is worth north of 1B USD, and that it was **raising funds "to provide bridge capital until we can 'ink' a deal with a large consumer electronics company** (referred to as the 'LCEC' throughout the PPM) with whom we have had over 15 meetings with marketing and technical management and will start the embedded level integration process within the next 30 days." [Complaint ¶ 56; Exh. 5 letter, Exh. 6 PPM ]

8. With respect to Apple, GenAudio and Mahabub wrote in the 2010 PPM that: "Although the Company is prohibited from disclosing any further information about the identity of the LCEC and the status of **current negotiations** with it, the Company is optimistic that **the LCEC will eventually want access to our AstoundSound** Technology for their products. It is unclear what structure such access would take but the Company believes the LCEC would either (i) **integrate a portion** of our AstoundSound Technology…into multiple product lines through a licensing arrangement or (ii) **acquire all of our** AstoundSound Technology or, at the least, that portion the LCEC deems necessary for its integration plans." [Complaint ¶ 60; Exh. 6 at p. 21]

9. GenAudio and Mahabub included in the 2010 Offering Materials the valuation report of Inavisis Inc. that **valued GenAudio's technology at $1 billion**. The valuation report made clear that the valuation was based upon the assumption that a large consumer electronic company would license or otherwise acquire rights to GenAudio's technology for integration into all of Apple's products worldwide. [Complaint ¶ 62; PPM and report on LCEC Exh. 6 at p. GA000560; compare to Exhibit 15, original report discussing Apple]

10. In an email to several GenAudio employees on or about **March 18, 2010**,
    Mahabub attached the 2010 Offering Materials and the cover letter and
    stated: "it should be smooth sailing into a HUGE deal with the LCEC as we
    are within days of the LCEC actually starting to embed our tech into their
    devices and prepare for product integration level testing…. Time to go back
    into fund raising mode, and if any of you feel like helping out with this effort, I
    would certainly appreciate it. It's not like you are doing your friends and
    family a bad thing by getting them into GenAudio at this stage in the game.
    **We are all in the same boat, and now I need you all to keep me from
    drowning.**" (Emphasis is in original.) [Complaint ¶ 111]

11. On **March 21, 2010**, GenAudio and Mahabub sent an email to GenAudio
    employees stating that he was forwarding the latest correspondence with the
    fruit company. He attached a March 21, 2010, email in which he falsely
    indicated he had sent the email to Phillip Schiller, Barry Corlett and Jeff
    Tenneboe. [Exh. 61 and Exh. 121]

12. On **April 30, 2010**, GenAudio and Mahabub sent an email to prospective
    investors including Martin Cohen that claimed in relevant part: "I have been
    on the phone all morning with the large consumer electronics company (the
    'LCEC') **looking to acquire GenAudio's tech for integration into their
    entire lineup of product offerings,** of which, embedded level integration
    testing for all product offerings of the LCEC have already been tested
    successfully, and we are now **waiting to when we will initiate negotiations,
    pending the CEO of the LCEC to approve the integrated product rollout**

6

**strategy** and the technical implementation strategy that will be presented to the CEO next week!!!" [Complaint ¶ 67; JM002048]

13. On **May 6, 2010**, Mahabub, as the Chairman and CEO of GenAudio sent an email to **Dell Skluzak**, Bob Coover, Brent Kaviar, Gary Smith, Ian Esten, Jim Devine, **Jim Mattos**, Paul Powers, Paul Savio, Stephan Bernsee, Walt Horat, Abbey Laudadio, Recy Pilloud, Melissa Gonzales, and Greg Morgenstein, falsely representing that he recorded and transcribed a conversation with Victor Tiscareno, in which among other things Mr. Tiscareno purportedly said "we have a green light to continue moving forward from this point however, now for the bad news, it will take a lot of time before you and Apple get to the business side." Mahabub on behalf of GenAudio also falsely stated that Tiscareno said "Steve [Jobs] thought the technology was so extraordinary. . . . I believe he wants to explode this technology into the world and he stated he needs some time to figure out the plan and when to launch this. . . . [H]e instructed all of us to be in a no radio period." [Complaint ¶ 115, Exh. 4 at p. 2]

14. On **June 2, 2010**, GenAudio sent an audio presentation narrated by Mahabub to its existing shareholders and made a similar presentation to prospective investors at least ten road shows identified in a June 2, 2010 email. In the audio presentation and road shows, Mahabub stated in relevant part that: "Perhaps the biggest part of the entire presentation is that we have attracted a very large consumer electronics company of which, as of a couple of days ago and after building a two year relationship with my management team contacts, in almost one year of technology

integration, software optimization and marketing strategy planning, **the CEO of the LCEC finally met with senior marketing and technical management and we have the green light to move forward.**" In addition Mahabub on behalf of GenAudio stated the Inavisis valuation report for GenAudio is north of $1 billion. [Complaint ¶ 69; Exh. 29 email and Exh. 89, transcript of presentation p. 54 at line 2 - 25]

15. On or about **August 1, 2010**, GenAudio sent a letter to shareholders seeking additional investments,  in which it represented as follows: "In the very near future, it has **been requested by the LCEC's CEO to have a 'hand-shake' meeting with myself alongside meeting with the LCEC's expert in acoustic physics** and others . . . .  It has been requested that we sign an **even more restrictive NDA** with the LCEC." [Complaint ¶ 72; Exh. 7]

16. In August 2010, GenAudio through Jim Mattos represented to at least one investor, Gary Allen that Mahabub had met the CEO of the LCEC.  [Exh. 77]

17. On or about **August 2, 2010**, GenAudio through Jim Mattos sent an email to Adam Skorecki with the 2010 Private Placement Memorandum and valuation report, and stated in part, "The bottom line is that we are rapidly approaching a massive liquidity event which is a culmination of our efforts over the last 14 months with the LCEC, the massive and critical advances with the movie industry, etc.  The benefit will be a very, very large payout for all investors." [Exh. 71]

18. On or about **August 28, 2010**, GenAudio and Mahabub sent a letter to shareholders by email asking them to invest in the 2010 Offering, and representing in part that: "The offering must close on August 31, 2010. . . . We are moving forward with confidence with the LCEC. . . . [W]e hope you understand that **our position grows stronger with each passing day.  I can say that our anticipation of a buyout would be the most probable case** when and if we ink a deal and come to terms with the LCEC." [Complaint ¶ 75; Exh. 73 letter at p. 1 & 4]

19. On or about **December 8, 2010**, GenAudio and Mahabub as CEO of GenAudio sent a letter to all shareholders falsely stating that Mahabub "**met with their CEO** [of the LCEC] and gave him a demo of our technology, and he stated, 'I really like your technology and look forward to seeing you again in the future.'" [Complaint ¶ 80; Exh. 35 at p. GA004931]  They also falsely stated that "our new valuation analysis as of today puts our net present **value at 3.3 Billion** USD."  [Complaint ¶ 82 ; Exh. 35 at p. GA004935]

20. In a **February 26, 2011,** letter to shareholders, GenAudio and Mahabub falsely stated among other things that Apple remained interested in acquiring GenAudio's technology by stating in relevant part: "[o]ur discussions with the confidential LCEC that I have previously advised you about in prior communications are ongoing. . . .  [M]y primary point of contact has recently retired from the LCEC . . . .  [T]he LCEC  . . . continue[s] to be very interested in integrating our technology across their entire line-up of product offerings." [Complaint ¶ 86; Exh. 36 at GA005331]

9

21. On or about **March 29, 2011,** GenAudio and Mahabub sent an email to all shareholders including Elisa DiNallo and Chip Benson, falsely represented among other things that GenAudio and the LCEC were to sign a new set of "evaluation and development" agreements that would prohibit GenAudio's team members and him from disclosing any further information about the LCEC. This email created the false impression that GenAudio's negotiations with Apple were ongoing. [Complaint ¶ 89; Exh. 78 at JM007211, Exh. 79]

22. On **March 30, 2011,** GenAudio through Jim Mattos sent emails falsely stating among other things that the LCEC called Mahabub into a meeting at which Mahabub gave them a very professional yet stern "it's time to shit or get off the pot" speech, and that led to GenAudio entering into another contractual phase with the LCEC. [Exh. 79]

23. On or about **April 22, 2011,** GenAudio and Mahabub prepared and sent shareholders a letter and private placement memorandum in which they made a false and misleading representation that GenAudio's new valuation report contains the "updated [ ] net present value of the Company's technology [is] approximately $3.3 Billion." [Complaint ¶ 97; Exh. 34 at GA004770; Exh. 17 at p. 3]

24. On **June 4, 2011,** GenAudio and Mahabub sent to all shareholders an email that falsely and misleading stated that "Dr. Khoury's IP Valuation analysis is currently at 3.3B USD. . . . The bottom line is that by September 2012, we expect to have some form of liquidity event. This could happen via company or asset acquisition, IPO/reverse merger, or some other form of liquidity

10

event." This email omitted to disclose material information that the valuation report assumed GenAudio's software would be licensed to Apple or another consumer electronic company when there was no reasonable basis for that assumption. [SEC-BanksJ-000086.pdf]

25. On or about **March 16, 2012**, GenAudio and Mahabub made a presentation to shareholders and potential investors at which Mahabub stated GenAudio was still pursuing licensing deals with several companies including Samsung, Toshiba, Motorola and Apple. [Merrill interview 9/16/16]

**INTERROGATORY NO. 2:** State all facts in support of YOUR contention the statements YOU IDENTIFIED in YOUR response to Interrogatory No. 1 herein were false and misleading.

**RESPONSE:** In addition to its General Objections, the Commission objects that this interrogatory requests "all facts" in support of the statements made in response to Interrogatory 1 because it is overly broad, burdensome and not proportional to the needs of the case. The Commission submits the following principal facts support its response in Interrogatory No. 1. There may be additional facts that support the Commission's response to Interrogatory No. 1 that are not identified below. The Commission reserves the right to identify additional facts.

1. Between 2009 and 2012, GenAudio did not engage in negotiations with Apple. GenAudio did not exchange any offers, term sheets, letters of intent, or draft acquisition or licensing agreements with Apple. GenAudio did not discuss with Apple any terms for the acquisition or licensing of its software. GenAudio only demonstrated its technology and participated in technical

11

discussions with a few, mid-level Apple personnel, none of whom indicated that Apple was interested in acquiring GenAudio or licensing its technology. GenAudio sent its communications about its purported negotiations with Apple to all of its existing shareholders through emails usually sent by Jim Mattos.  The list of shareholders is identified on GenAudio, Inc.'s Common Stock Transfer Ledger and other lists of shareholders produced by the Company.  Each of the communications identified in Interrogatory 1 that indicates it was sent to shareholders refers to the Ledger as it existed on the date of the communication.

2. As described in the Commission's Response to Interrogatory No. 1, Mahabub, acting on behalf of GenAudio, falsely modified emails received from Apple personnel, then circulated them to others.  Mahabub also provided false information to other members of GenAudio's board of directors regarding Apple's purported interest in licensing GenAudio's technology. Mahabub actively encouraged other GenAudio board members and employees to solicit their friends and family to invest in the company, and to repeat his false and misleading updates as to Apple's supposed interest in acquiring GenAudio's technology.

3. As of September 25, 2009, Mahabub had no basis to represent that a deal with Apple was highly probable.  Between June 18, and September 25, 2009, Mahabub principally met Victor Tiscareno, an acoustic engineer from Apple, to demonstrate development of GenAudio's software on approximately six occasions.  See Mahabub visitor badges. [GA002889] During those meetings

12

there were no discussions of Apple acquiring GenAudio or a license for its software. GenAudio's Board of Directors and attorneys never participated in negotiations with Apple or reviewed documents related to a potential deal to either acquire GenAudio or to license its technology for use in Apple's products worldwide.

4.  On October 1, 2010, Mahabub met with Victor Tiscareno and Michael Hailey at Apple to demonstrate changes to GenAudio's software.  He did not meet with Phil Schiller.  Schiller did not request that Mahabub prepare two additional film title release or state that when Mahabub meets Steve Jobs, "Sparks will be flying."  At the meeting, Tiscareno and Healey did not discuss introducing Mahabub to Steve Jobs, the CEO of Apple, in two or three weeks. The discussions at the meeting did not address Apple doing a deal with GenAudio.  GenAudio never exchanged a letter of intent, term sheet, or draft contract for Apple to either acquire GenAudio or to license its technology for use in Apple's products worldwide.  GenAudio never negotiated terms for Apple to either acquire GenAudio or to license its technology for use in Apple's products worldwide.  Mahabub did not meet with Apple's CEO Steve Jobs, Chief Operating Officer Tim Cook or Senior Vice President of Worldwide Marketing Philip Schiller.  These Apple senior executives were not advocating for Apple to acquire GenAudio's technology. While Mahabub had attended meetings with mid-level Apple engineers during the summer of 2009 and signed a nondisclosure agreement in July 2009, he knew that no discussions about a potential deal with Apple occurred during those meetings

and that he had no reasonable basis for his statement to the Board of
Directors that a deal with Apple was highly probable.

5. On **October 19, 2009**, Mahabub sent an email to Tiscareno, Hailey and Isaac
   about the Warsow game Open AL. However, when he forwarded that email to
   the Gen Audio team he falsely stated that he sent the same email to Timothy
   Cook and Phillip Schiller when in fact he had not.

6. Mahabub knew or was reckless in not knowing that his description in the
   November 9, 2009, email of GenAudio's discussions as having been
   "extensive" was materially misleading because by that point in time, he had
   participated in approximately eight demonstrations with mid-level Apple
   employees.  Mahabub had no reasonable basis for his statement that there
   was "a strong possibility that the Company may be acquired within the next 6
   months" because nobody at Apple had expressed *any* desire to acquire
   GenAudio, let alone within six months. [Complaint ¶ 53] Mahabub had told
   Mattos that he was highly confident that Apple would acquire GenAudio thin
   the next 6-12 weeks.  When Mahabub knew there was no basis in fact for that
   statement.  Mahabub also knew that Mattos was speaking with investors to
   raise money for the company.

7. Mahabub stated in the email on February 12, 2010, that he had a great
   meeting with Phil Shiller yesterday and it looks like a Christmas rollout is the
   target for Astound release in Apple products.  Mahabub admitted he never
   met with Schiller.  Mahabub fabricated an email from Tiscareno that
   purportedly stated Apple had set a Christmas rollout at the target for an

Astound release in Apple products.  Mahabub also knew from a December 16, 2009, email from Hailey that the business side of things would come into play after Apple executives buy-in on the product side. [SEC-Tiscareno-E-000938]  Mahabub knew from his discussions with Tiscareno that had not occurred.

8. In the March 15, 2010, cover letter that GenAudio sent with the 2010 Private Placement Memorandum, Mahabub stated this offering is being conducted to provide a bridge capital until we can ink a deal with a large consumer electronics company. From Mahabub's limited dealings with Apple marketing and technical management through March 2010, Mahabub knew, or was reckless in not knowing, that GenAudio was not close to "ink[ing]" any transaction with Apple.  Mahabub knew that no Apple executives had bought into the idea of using GenAudio's software, no one at Apple had requested to review GenAudio's patents which Mahabub considered to be the next step, and no term sheets, letters of intent, potential terms of an agreement had been exchanged. [Complaint ¶ 58]  Mahabub knew, or was reckless in not knowing, from his participation in meetings with Apple that GenAudio had not entered into any negotiations with Apple.  Mahabub had no reasonable basis for the stated belief that Apple sought to license or acquire GenAudio's technology. [Complaint ¶ 61]

9. In the 2010 Private Placement Memorandum, GenAudio represented that among other things that the Company had entered into a non-disclosure agreement with the LCEC and was working to integrate AstoundSound

15

Technology into several of the LCEC's products to demonstrate its viability. In addition, GenAudio represented it was optimistic that the LCEC would eventually want to access AstoundSound Technology for their products and enter into either a licensing agreement or acquisition. As stated above, Mahabub knew from his participation in meetings with Apple that GenAudio had not entered into any negotiations with Apple, no documents discussing terms had been exchanged, and as of March 2010 Apple's executives had not agreed to consider using GenAudio's software in any of its products.

10. GenAudio included with the 2010 Private Placement Memorandum the valuation report of Inavasis, Inc. which valued GenAudio's technology at over $1 billion. This valuation was misleading because it was based on the undisclosed assumption that Apple would use GenAudio's technology in all of its products worldwide. Mahabub knew, or was reckless in not knowing, that Apple had never indicated that it sought to acquire GenAudio's technology or that it planned to integrate the technology into all of its products. [Complaint ¶ 64]

11. While Mahabub had sent a March 21, 2010, email to Victor Tiscareno, Michael Hailey and Ronald Isaac, he did not send the email to Phillip Schiller, Barry Corlett and Jeff Tenneboe. [Exh. 61 and Exh. 121]

12. On April 30, 2010, GenAudio represented in an email that the LCEC was looking to acquire GenAudio's technology for their entire line of products and 'we are waiting to initiate negotiations after a presentation to the CEO next week.' Mahabub knew that as of this date Apple was not going to acquire

GenAudio's technology to integrate into all of its products.  Tiscareno did not tell Mahabub that Apple's CEO was scheduled to evaluate a product rollout and technical implementation strategy relating to GenAudio's technology in early May 2010.   [Complaint ¶ 68]

13. On May 6, 2010, Mahabub sent a fabricated transcript of a conversation that he purportedly had with Tiscareno.  Tiscareno did not make the statements that Mahabub attributed to him in the May 6, 2010 email and fake transcript. [Exh. 4]

14. At presentations to investors made between April and June 2010, GenAudio through Mahabub represented that the CEO of the LCEC met with the senior marketing and technical management and gave the green light to move forward with GenAudio, and begin negotiations.  Mahabub knew that Steve Jobs did not meet with Tiscareno and Hailey to discuss GenAudio's technology, and did not give a green light for Apple to move forward with negotiating a deal with GenAudio.  GenAudio through Mahabub also represented the valuation of GenAudio was over $1 billion based on the Inavisis report, but failed to disclose the material information that the value was based on the assumption that Apple would license and use GenAudio on all of its products.

15. In August 2010, GenAudio represented that the CEO of the LCEC had requested a handshake meeting with Mahabub, and requested a more restrictive non-disclosure agreement.  These statements were not true because no one at Apple told Mahabub that Apple's CEO had requested to

meet him, nor had Apple requested that GenAudio sign a more restrictive non-disclosure agreement.

16. In August 2010, GenAudio through Mattos represented to at least one investor, Gary Allen, that Mahabub had met the CEO of the LCEC. This statement was not true, because Mahabub never met Steve Jobs.

17. On August 2, 2010, GenAudio through Mattos represented to at least one investor that GenAudio was approaching a massive liquidity event which is the culmination of all the efforts with the LCEC and will benefit the investors with a very large payout. This statement was not true because GenAudio had not engaged in any negotiations or exchanges of draft agreements with Apple. Tiscareno, Hailey and Isaac did not contemplate that Apple would enter into an agreement with GenAudio in August 2010.

18. On August 28, 2010, GenAudio represented it was moving forward with the LCEC and a buyout was anticipated. There was no factual basis for this statement as no acquisition negotiations had occurred.

19. On December 8, 2010, GenAudio represented that Mahabub had met with the CEO of the LCEC who stated that he liked GenAudio's technology. This statement was false because Mahabub never met Steve Jobs, the CEO of Apple or gave him a demonstration of GenAudio's technology, at which Mr. Jobs stated, "I really like your technology and look forward to seeing you again in the future." GenAudio and Mahabub also stated that "our new valuation analysis as of today puts our net present value at 3.3 Billion USD", which was false and misleading because it was based upon the undisclosed

18

and false assumption that Apple and numerous other industry leaders sought to license GenAudio's technology for use in each of their most popular lines worldwide. Apple and other industry leaders had not sought to license GenAudio's technology as of December 8, 2010. GenAudio's sales of ASE as of September 2010 had generated income of only $7,556.93. GenAudio reported no income from licensing during 2010 in its December 8, 2010 letter to shareholders.   [Complaint ¶ 83; see Exh. 35 at p. GA004938]

20. On February 26, 2011, GenAudio and Mahabub made false statements that discussions with the LCEC were ongoing and Apple was interested in integrating GenAudio's technology across their entire line-up of product offerings. Mahabub knew his primary contact had left Apple and no one from Apple had expressed an interest in integrating GenAudio's technology across Apple's entire lineup of products. He also knew his last significant meeting at Apple occurred on September 23, 2010, with Tiscareno and Andrew Bright, and the meeting had ended with an argument. No one at Apple represent that it was interested in integrating GenAudio's technology across the entire line of product offerings.

21. On or about March 30, 2011, GenAudio represented that Apple had requested that it sign a new set of 'evaluation and development' agreements. This statement was not true, as no one at Apple made such a request or sent any new agreements to GenAudio. The statement was also misleading as GenAudio and Mahabub represented the new agreements would prohibit Mahabub and his team from discussing any further information about the

LCEC creating the misapprehension that GenAudio was proceeding with contract negotiations with the LCEC when in fact it was not.

22. On March 30, 2011, GenAudio through Mattos represented that Mahabub had been called into a meeting with the LCEC, which led to the request for a new set of agreements. No one at the LCEC called Mahabub and requested a meeting or sent GenAudio a new set of agreements.

23. On or about April 22, 2011, GenAudio and Mahabub sent a cover letter and 2011 Private Placement Memorandum to shareholders in which they failed to disclose that the $3.3 billion valuation was based upon the unsupported assumption that Apple and other industry leaders sought to license GenAudio's technology for use in their respective products worldwide. [Complaint ¶ 99]

24. On or about June 4, 2011, GenAudio and Mahabub represented that the value of GenAudio was currently $3.3 billion but failed to disclose this valuation was based upon the unsupported assumption that Apple and other industry leaders sought to license GenAudio's technology for use in their respective products worldwide. In addition, they represented that by September 2012 some form of liquidity event such as an acquisition would occur. There was no factual basis to represent that an acquisition or other liquidity event would occur as GenAudio was not in negotiations to be acquired by any other company.

**INTERROGATORY NO. 3:** IDENTIFY any DOCUMENTS that support YOUR
contention the statements YOU IDENTIFIED in YOUR response to Interrogatory No. 1
were false and misleading.

**RESPONSE:** In addition to its General Objections, the Commission objects to
Interrogatory No. 3, because it requests "any document" that supports the response to
Interrogatory 1.  Interrogatory No. 3 is unnecessary, overly burdensome, and not
proportional to the needs of the case.  The Commission produced to the defendants in
February 2015, all the documents obtained during its investigation.  The Commission
identifies the following as the principle documents that support its Response to
Interrogatory No. 1.  There may be additional documents that support the Commission's
response to Interrogatory No. 1 that are not identified below.  The Commission reserves
the right to identify additional documents.

See the documents identified in the response to Interrogatory No. 1 which
included in the bracketed references to paragraphs of the Complaint, investigative
exhibits or bate numbers of documents that were previously produced to the
defendants.  As described in ¶¶ 25 through 34 of the Complaint, all documents
reflecting the limited nature of GenAudio's course of dealings with Apple further support
the false and misleading nature of the statements set forth in the Commission's
Response to Interrogatory No. 1.  In addition, the investigative transcripts, deposition
transcripts, and the defendants' Answers support the Commission's statements.

**INTERROGATORY NO. 4:** State all facts in support of YOUR contention the
statements YOU IDENTIFIED in YOUR response to Interrogatory No. 1 herein were
material statements.

21

**RESPONSE:** Subject to its General Objections, including its specific objections to Interrogatory No. 1, and additional information that may be developed through discovery, the Commission submits this response. The Commission has not withheld any information based on its objections.

The Commission contends that the statements identified in Interrogatory No. 1 were material, because there is a substantial likelihood that a reasonable investor would consider those statements important in making an investment decision. Investors considered GenAudio's and Mahabub's statements about the LCEC's interest in either acquiring GenAudio or licensing its technology to be important to their decisions to buy GenAudio's stock in both the 2010 and 2011 stock offerings. Investors also considered the valuation of GenAudio to be important to their decision to buy or retain the stock.

**INTERROGATORY NO. 5:** IDENTIFY any DOCUMENTS that support YOUR contention the statements YOU IDENTIFIED in YOUR response to Interrogatory No. 1 were material statements.

**RESPONSE:** Subject to its General Objections, including its specific objections to Interrogatory No. 1, and additional information that may be developed through discovery, please see Response to Interrogatory No. 3.

**INTERROGATORY NO. 6:** IDENTIFY any and all material information YOU allege GENAUDIO omitted to state that was necessary to make statements made, in light of the circumstances under which they were made, not misleading.

**RESPONSE:** In addition to its General Objections, the Commission objects Interrogatory No. 6 because it requests the Commission to identify "any and all" material information that was omitted but was necessary to make statements made not

22

misleading. This request is as unnecessary, overly burdensome, and not proportional to the needs of the case. The Commission identifies the following as the principle omissions of GenAudio that are relevant to this litigation. There may be additional omissions that support the Commission's response to Interrogatory No. 6 that are not identified below. The Commission reserves the right to identify additional omissions.

1. In the 2010 Offering Materials, 2011 Offering Materials, and shareholder communications, GenAudio and Mahabub omitted material information regarding the status of their discussions with Apple, including that:

   a. Apple did not express an interest in licensing GenAudio's technology for inclusion in any of Apple's products;

   b. Apple did not express an interest in acquiring GenAudio;

   c. Mahabub's communications with Apple personnel had been limited to a handful of mid-level engineering and marketing staff, none of whom had authority to license GenAudio's technology or acquire GenAudio;

   d. Apple and GenAudio had never begun negotiations to license GenAudio's technology or to acquire GenAudio;

   e. Apple's communications with GenAudio were at times sporadic, including periods where months elapsed between communications;

   f. In September 2010, Mahabub had conducted a demonstration to Apple personnel that went poorly, with an Apple engineer questioning the premise of GenAudio's technology;

23

g.  GenAudio's technology never got past the testing stage, and therefore
Apple never communicated that it planned to incorporate GenAudio's
technology in any of its new product roll-outs;

h.  Beyond its basic, initial confidentiality agreement, Apple did not
request that GenAudio ever enter into any additional confidentiality or
software evaluation agreements;

i.  Apple's senior management during the relevant time period, including
its CEO, COO, and Senior Vice President for Worldwide Marketing, did
not participate in demonstrations of, or meetings concerning,
GenAudio's technology, did not express interest in acquiring
GenAudio's technology, and did not request, schedule, or attend
meetings with Mahabub; and

j.   GenAudio had no substantive communications with Apple after March
2011.

2.  During 2010, GenAudio represented GenAudio was valued at over $1 billion
based upon the report of Inavisis Inc., but omitted to disclose the material
information that the value was based on the unsupported assumption that
Apple would license and use GenAudio's technology on all of its products.
GenAudio failed to disclose that it had no reasonable basis to believe that
Apple would enter into a licensing agreement or acquisition of GenAudio.

3.  During 2011, GenAudio represented GenAudio was valued at $3.3 billion, but
omitted to disclose the material information that the value was based upon
the unsupported assumption that Apple and other industry leaders would

24

license and use GenAudio's technology for use in all of their respective products worldwide.

**INTERROGATORY NO. 7:** State all facts in support of YOUR contention the information YOU IDENTIFIED in YOUR response to Interrogatory No. 6 herein was necessary in order to make statements GENAUDIO made, in light of the circumstances under which they were made, not misleading.

**RESPONSE:** Subject to its General Objections, including its specific objections to Interrogatory No. 6, and additional information that may be developed through discovery, the Commission submits the following response. There may be additional omissions that support the Commission's response to Interrogatory No. 6 that are not identified below. The Commission reserves the right to identify additional omissions.

1. See responses to Interrogatory No. 1 and 2. GenAudio made numerous false statements about the status of its relationship with Apple. GenAudio omitted to disclose facts showing the true status of that relationship.

2. If GenAudio had disclosed that its discussions with Apple personnel were limited to mid-level engineering and marketing staff without authority to agree to license or acquire GenAudio's technology, that no negotiations of acquisition or licensing terms with Apple had begun, that meetings were sporadic, GenAudio's demonstrations never got beyond the testing stage, or that the last meeting with Apple in September 2010 ended with an argument and there were no more substantive communications, investors would have known the statements about the LCEC acquiring GenAudio were merely

speculation or the company's wishful thinking, and highly unlikely to occur in the short term.

3. If GenAudio had disclosed that its $1 billion valuation was based upon Apple using its technology in all of its products worldwide, and that GenAudio had no contract to license its technology to Apple, then investors would have known these projections were not based in fact but were merely based on unsupported assumptions.

4. If GenAudio had disclosed that its $3.3 billion valuation was based upon Apple and other consumer electronic companies using its technology in all of its products worldwide, and that GenAudio had no contracts to license its technology to Apple or other consumer electronic companies, then investors would have known these projections were not based in fact but were merely based on unsupported assumptions.

**INTERROGATORY NO. 8:** IDENTIFY any DOCUMENTS that support YOUR contention the information YOU IDENTIFIED in YOUR response to Interrogatory No. 6 was necessary to make statements made, in light of the circumstances under which they were made, not misleading.

**RESPONSE:** Subject to its General Objections, including its specific objections to Interrogatory No. 6, and additional information that may be developed through discovery, the Commission identifies the following as the principle documents that support its Response to Interrogatory No. 6. There may be additional facts that support the Commission's response to Interrogatory No. 6 that are not identified below. The Commission reserves the right to identify additional documents.

26

See Answer to Interrogatory No. 3.

**INTERROGATORY NO. 9:** State all facts in support of YOUR contention the information YOU IDENTIFIED in YOUR response to Interrogatory No. 6 herein was material information.

**RESPONSE:** Subject to its General Objections, including its specific objections to Interrogatory No. 6, and additional information that may be developed through discovery, the Commission submits the following principal facts support its response in Interrogatory No. 6. There may be additional facts that support the Commission's response to Interrogatory No. 6 that are not identified below. The Commission reserves the right to identify additional facts.

Reasonable investors considered GenAudio's and Mahabub's statements and omissions about the LCEC's either acquiring GenAudio or licensing its technology to be important to their decisions to buy GenAudio's stock in both the 2010 and 2011 stock offerings. Reasonable investors also considered the valuation of GenAudio and omission of the facts that the assumptions used in the calculation of the values were baseless, to be important to their decision to buy or retain the stock.

**INTERROGATORY NO. 10:** IDENTIFY any DOCUMENTS that support YOUR contention the information YOU IDENTIFIED in YOUR response to Interrogatory No. 6 was material information.

**RESPONSE:** Subject to its General Objections, including its specific objections to Interrogatory No. 6, and additional information that may be developed through discovery, please see Response to Interrogatory No. 8.

27

**INTERROGATORY NO. 11:** State all facts in support of YOUR contention

GENAUDIO violated Section 17 of the Securities Act as YOU allege in paragraphs 152,

156, and 172 in YOUR first, second, and sixth claims for relief of the COMPLAINT.

**RESPONSE:** Subject to its General Objections, the Commission also objects to

Interrogatory No. 11 because it request that the Commission "[s]tate all facts", which is

unnecessary, overly burdensome, and not proportional to the needs of the case.

Subject to its objections and additional information that may be developed through

discovery, please see Responses to Interrogatories No. 1 and 6, and the Commission

contends that the following are additional, principle facts supporting its claims:

See responses to Interrogatories 1, 2, 6, and 7.

- Mahabub as the CEO of GenAudio encouraged GenAudio board members and
  employees to assist with finding appropriate investors for the company. (Answer
  ¶ 11.)

- Mahabub as the CEO of GenAudio controlled the dissemination of the
  information about GenAudio's dealings with Apple to GenAudio's directors and
  employees. Mahabub was a member of the board of directors that controlled
  dissemination of the information about GenAudio's dealings with Apple to
  GenAudio's shareholders and prospective investors. (Answer ¶ 124.)

- GenAudio received "roughly" $4.5 million total from its sale of stock in the 2010
  Offering and 2011-2012 Offering.  GenAudio provided compensation to
  Mahabub using funds received from these stock offerings. (Answer ¶ 128.)

- From March through August 2010, GenAudio offered and sold approximately
  1,171,000 common shares in the 2010 Offering, raising approximately
  $3,513,000. GenAudio further admits it sold the shares to more than seventy
  investors, and that the accredited investor forms submitted by those investors
  reflect that they live in various states. (Answer ¶ 35.)

- GenAudio solicited prospective investors for the 2010 Offering by, among other
  things, disseminating, via email, a private placement memorandum ("PPM") and
  letter signed by Mahabub dated March 15, 2010 (collectively, "GenAudio's 2010
  Offering Materials"). (Answer ¶ 36.)

- GenAudio sent the 2010 Offering Materials to GenAudio's shareholders by email
  and later sent it to other prospective investors. (Answer ¶ 56.)

28

- GenAudio used telephones, the Internet, and the mails in connection with the 2010 Offering and the 2011-2012 Offering.  (Answer ¶ 135.)

- Mahabub used the term "LCEC" in some shareholder communications to refer to Apple.  (Answer ¶ 57.)

- Answering Paragraph 62 of the Complaint, GenAudio admits at Mahabub's direction, GenAudio included in the 2010 Offering Materials a third party's valuation report that purported to value GenAudio's technology at around $1 billion, based on certain assumptions and conditions.  (Answer ¶ 62.)

- From approximately March through August 2010, GenAudio offered and sold approximately 1,171,000 common shares in the 2010 Offering, obtaining approximately $3,513,000.  (Answer ¶ 78.)

- From approximately April 2011 through April 2012, GenAudio offered $2,100,000 of common shares of GenAudio and sold approximately 330,000 shares in the 2011-2012 Offering to around twenty investors. The accredited investor forms submitted by those investors reflect that they live in various states, and GenAudio raised approximately $990,000 from the offering.  (Answer ¶ 94.)

- Mahabub did not meet in-person with Apple's CEO.  (Answer ¶ 81.)

**INTERROGATORY NO. 12:**  IDENTIFY any DOCUMENTS that support YOUR contention GENAUDIO violated Section 17 of the Securities Act as stated in YOUR response to Interrogatory No. 6 herein.

**RESPONSE:**  In addition to its General Objections, the Commission objects to the request to "[i]dentify any documents" as unnecessary, overly burdensome, and not proportional to the needs of the case.  Subject to General objections, including its specific objections to Interrogatory No. 11, and additional information that may be developed through discovery, the Commission identifies the following as some of the principle documents that support its claim that GenAudio violated Section 17(a) of the Securities Act:

See answer to Interrogatory No. 3.

**INTERROGATORY NO. 13:** State all facts in support of YOUR contention GENAUDIO violated Section 10(b) of the Exchange Act and Rule l0b-5 as YOU allege in paragraphs 159, 162, and 166 in YOUR third, fourth, and fifth claims for relief of the COMPLAINT.

**RESPONSE:** In addition to its General Objections, the Commission objects to the request to "[s]tate all facts" as unnecessary, overly burdensome, and not proportional to the needs of the case.

See responses to Interrogatory No. 1, 2, 6, 7 and 11.

**INTERROGATORY NO. 14:** IDENTIFY any DOCUMENTS that support YOUR contention GENAUDIO violated Section 10(b) of the Exchange Act and Rule l0b-5 as stated in YOUR response to Interrogatory No. 8 herein.

**RESPONSE:** In addition to its General Objections, the Commission objects to the request to "[i]dentify any documents" as unnecessary, overly burdensome, and not proportional to the needs of the case. The Commission also objects to the form of the interrogatory because it requests documents in support of your contentions as stated in your response to Interrogatory No. 8 rather than Interrogatory No. 13. Subject to its General Objections, including its specific objections to Interrogatory No. 13, and additional information that may be developed through discovery, the Commission identifies the following as the principle documents that support its claim that GenAudio violated Section 10(b) of the Exchange Act and Rule 10b-5. There may be additional documents that support the Commission's response to Interrogatory No. 14 that are not identified below. The Commission reserves the right to identify additional documents.

See Answer to Interrogatory No. 3.

30

**INTERROGATORY NO. 15:** State all facts in support of YOUR contention GENAUDIO violated Section 5 of the Securities Act as YOU allege in paragraph 180 in YOUR eighth claim for relief of the COMPLAINT.

**RESPONSE:** In addition to its General Objections, the Commission objects to the request to "[s]tate all facts" as unnecessary, overly burdensome, and not proportional to the needs of the case. Subject to its General Objections, including its specific objections to Interrogatory No. 15, and additional information that may be developed through discovery, the Commission identifies the following as the principle facts that support its claim that GenAudio violated Section 5 of the Securities Act. There may be additional facts that support the Commission's response to Interrogatory No. 15 that are not identified below. The Commission reserves the right to identify additional facts.

1. From approximately March through August 2010, GenAudio offered and sold approximately 1.1 million shares of common stock to more than seventy investors in numerous states and raised approximately $3.5 million from the sales (the "2010 Offering").

2. GenAudio did not file a registration statement with the Securities and Exchange Commission to register its offer and sale of the 1.1 million shares in the 2010 Offering.

3. GenAudio used interstate commerce and the mails in the offer and sale of its securities during the 2010 Offering, including sending the offering documents to investors by email, directing investors to wire transfer funds to the bank

31

account of GenAudio for the purchase of the securities and the mailing of the stock certificates to investors.

4. From approximately April 2011 through April 2012, GenAudio and Mahabub offered and sold approximately 330,000 shares in the 2011/2012 Offering to more than twenty investors in Colorado and numerous other states, and raised approximately $990,000 from the sales ("2011 Offering").

5. GenAudio did not file a registration statement with the Securities and Exchange Commission to register its offer and sale of the 330,000 shares in the 2011 Offering.

6. GenAudio used interstate commerce and the mails in the offer and sale of its securities during the 2011 Offering, including sending the offering documents to investors by email, directing investors to wire transfer funds to the bank account of GenAudio for the purchase of the securities and the mailing of the stock certificates to investors.

7. From approximately March 2010 to August 2010, during GenAudio's 2010 Offering, GenAudio offered and sold GenAudio stock when no registration statement was filed or in effect for the transactions. GenAudio raised roughly $3.5 million from more than seventy investors, and the accredited investor forms submitted by those investors reflect that they live in various states. (*See* Answer ¶ 130.)

8. From approximately April 2011 to April 2012, during GenAudio's 2011-2012 Offering, GenAudio offered and sold GenAudio stock when no registration statement was filed or in effect for the transactions. GenAudio raised roughly

32

$990,000 from around twenty investors, and the accredited investor forms submitted by those investors reflect that they live in various states. (*See* Answer ¶131.)

9. In GenAudio's 2010 Offering and GenAudio's 2011-2012 Offering, GenAudio offered and sold stock to non-accredited and unsophisticated investors that did not have access to the types of information that would have been available in a registered offering.

10. GenAudio did not provide an audited balance sheet to investors in the 2010 Offering or the 2011-2012 Offering. (*See* Answer ¶ 137.)

**INTERROGATORY NO. 16:** IDENTIFY any DOCUMENTS that support YOUR contention GENAUDIO violated Section 5 of the Securities Act as stated in YOUR response to Interrogatory No. 10 herein.

**RESPONSE:** In addition to its General Objections, the Commission objects to the request to "[i]dentify any documents" as unnecessary, overly burdensome, and not proportional to the needs of the case. Subject to its General Objections, including its specific objections to Interrogatory No. 16, and additional information that may be developed through discovery, the Commission identifies the following as some of the principle documents that support its claim that GenAudio violated Section 5 of the Securities Act. There may be additional documents that support the Commission's response to Interrogatory No. 16 that are not identified below. The Commission reserves the right to identify additional documents.

1. GenAudio's admissions in its Answer at paragraphs 35, 78, 94, 120, and 131.

33

2.  A declaration from the custodian of records of the SEC that no registration statement was filed by GenAudio.

3.  Mahabub's sworn testimony that no registration statement was filed with the SEC and that the 2010 Offering PPM was sent by email to investors.

4.  GenAudio's private placement memorandum for the 2010 Offering.

5.  GenAudio's private placement memorandum for the 2011 Offering.

6.  GenAudio's email transmitting the 2010 Offering PPM.

7.  GenAudio's email transmitting the 2011 Offering PPM.

8.  Email correspondence with investors.

9.  GenAudio's Stock Transfer Ledger [Exh. 28, GA001816].

10. GenAudio's Schedule of Financing listing the stock sales for the 2010 and 2011 Offerings [GA000997].

11. GenAudio's bank records showing the receipt of funds from investors.

**INTERROGATORY NO. 17:**  State all facts in support of YOUR contention GENAUDIO offered and sold GENAUDIO stock to unaccredited and unsophisticated investors as YOU allege in paragraph 136 of the COMPLAINT.

**RESPONSE:**  In addition to its General Objections, the Commission objects to the request to "[s]tate all facts" as unnecessary, overly burdensome, and not proportional to the needs of the case.  Subject to its General Objections, including its specific objections to Interrogatory No. 17, and additional information that may be developed through discovery, the Commission identifies the following as the principle facts that support its claim that GenAudio violated Section 5 of the Securities Act. There may be additional facts that support the Commission's response to Interrogatory No. 17

that are not identified below. The Commission reserves the right to identify additional facts.

1. From approximately March through August 2010, GenAudio offered and sold approximately 1.1 million shares of common stock to more than seventy investors in numerous states and raised approximately $3.5 million from the sales (the "2010 Offering").

2. From approximately April 2011 through April 2012, GenAudio and Mahabub offered and sold approximately 330,000 shares in the 2011/2012 Offering to more than twenty investors in Colorado and numerous other states, and raised approximately $990,000 from the sales ("2011 Offering").

3. GenAudio offered its securities to prospective investors at roadshows at which it did not keep a list of attendees.  It did not obtain an Accredited Investor Form from each of the attendees.

4. GenAudio did not obtain or produce to the SEC an Accredited Investor Form for each of investors to whom it offered and sold securities in each of the offerings.

5. GenAudio also produced Accredited Investor Forms that were not completed and did not demonstrate a reasonable basis for GenAudio to believe that the investors were accredited.

6. Between November 2009 and April 2012, Mahabub offered and sold personal shares of GenAudio to investors for which he did not obtain any Accredited Investor Forms.

35

7. GenAudio knew of Mahabub's personal stock sales and received the benefit of the proceeds from some of these sales.

**INTERROGATORY NO. 18:** IDENTIFY any DOCUMENTS that support YOUR contention GENAUDIO offered and sold GENAUDIO stock to unaccredited and unsophisticated investors as stated in YOUR response to Interrogatory No. 12 herein.

**RESPONSE:** In addition to its General Objections, the Commission objects to the request to "[i]dentify any documents" as unnecessary, overly burdensome, and not proportional to the needs of the case. Subject to its General Objections, including its specific objections to Interrogatory No. 18, and additional information that may be developed through discovery, the Commission identifies the following the principle documents that support its contention that GenAudio offered and sold stock to unaccredited and unsophisticated investors.

1. See documents identified in response to Interrogatory No. 16.

2. Email correspondence discussing dates of various roadshows and offers to prospective investors.

3. The production by GenAudio of shareholder files which did not include an Accredited Investor Form for each investor.

The Accredited Investor Forms produced by GenAudio that were incomplete.

DATED: January 9, 2017

s/ Leslie J. Hughes
Leslie J. Hughes
Danielle R. Voorhees
Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, CO 80294-1961
Telephone: (303) 844-1000
Email: HughesLJ@sec.gov
Email: voorheesd@sec.gov
Attorneys for Plaintiff

36

## VERIFICATION

I declare under penalty of perjury that the answers provided are true and correct based upon the information currently available to the Commission staff.

DATED:  January 9, 2017

Kurt L. Gottschall
Associate Regional Director
Denver Regional Office
Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, CO  80294-1961
Telephone: (303) 844-1119
Fax: (303) 297-3529
Email: gottschallk@sec.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 9th 2017, the document above was served on those listed below:

Andrew B. Holmes
Holmes, Taylor & Jones, LLP
617 South Olive Street, Suite 1200
Los Angeles, CA 90014

*Attorney for Defendant Taj Jerry Mahabub*

Michael P. McCloskey
Wilson Elser Moskowitz Edelman & Dicker LLP
655 West Broadway, Suite 900
San Diego, CA 92101

*Attorney for Defendant GenAudio, Inc.*

Jeffrey G. Benz
Benz Law
12021 Wilshire Boulevard, Suite 256
Los Angeles, CA 90025

*Attorney for Defendant Astound Holdings, Inc.*

*s/ Elinor E. Blomgren*
Elinor E. Blomgren