**In The Matter Of:**

*Securities and Exchange Commission v.*
*Taj Jerry Mahabub, et al.*

---

*Taj Jerry Mahabub*
*Vol. 1*
*January 19, 2017*

---

*Behmke Reporting and Video Services, Inc.*
*160 Spear Street, Suite 300*
*San Francisco, California 94103*
*(415) 597-5600*

Original File 30906Mahabub.txt
Min-U-Script® with Word Index

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub – Vol. 1
January 19, 2017

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2             FOR THE DISTRICT OF COLORADO
 3     - - - - - - - - - - - - - -
 4
 5   SECURITIES AND EXCHANGE      )
 6   COMMISSION,                  )
 7             Plaintiff,         )
 8                                ) CASE NO.
 9   V.                           ) 1:15-cv-02118-CBS-WJM
10                                )
11   TAJ JERRY MAHABUB, GENAUDIO, )
12   INC., and ASTOUND HOLDINGS,  )
13   INC.,                        )
14             Defendants.        )
15     - - - - - - - - - - - - - -
16
17      VIDEOTAPED DEPOSITION OF TAJ JERRY MAHABUB
18          THURSDAY, JANUARY 19, 2017
19          PAGES 1 - 256; VOLUME 1
20
21         BEHMKE REPORTING AND VIDEO SERVICES, INC.
22        BY: PAULA A. PYBURN, CSR NO. 7304, RPR, CLR
23              160 SPEAR STREET, SUITE 300
24           SAN FRANCISCO, CALIFORNIA 94105
25                          (415) 597-5600
```

Page 2

```
 1
 2
 3
 4
 5
 6
 7
 8      Videotaped deposition of TAJ JERRY MAHABUB,
 9   VOLUME 1, taken by Plaintiff, at 444 South Flower
10   Street, Suite 900, Los Angeles, California,
11   commencing at 10:17 a.m., on THURSDAY, JANUARY 19,
12   2017, before Paula A. Pyburn, Certified Shorthand
13   Reporter No. 7304, RPR, CLR, pursuant to Notice.
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1   APPEARANCES OF COUNSEL:
 2   FOR PLAINTIFF SECURITIES AND EXCHANGE COMMISSION:
 3      SECURITIES AND EXCHANGE COMMISSION
 4      BY:  DANIELLE R. VOORHEES, TRIAL COUNSEL
 5           LESLIE HENDRICKSON HUGHES, TRIAL COUNSEL
 6      1961 Stout Street, Suite 1700
 7      Denver, Colorado 80294
 8      Telephone: (303) 844-1000
 9      Email: voorheesd@sec.gov
10             hugheslj@sec.gov
11
12   FOR DEFENDANT TAJ JERRY MAHABUB:
13      HOLMES, TAYLOR & JONES LLP
14      BY:  ANDREW B. HOLMES, ATTORNEY AT LAW
15      617 South Olive Street, Suite 1200
16      Los Angeles, California 90014
17      Telephone:  (213) 985-2200
18      Email:  abholmes@htjlaw.com
19
20
21
22
23
24
25
```

Page 4

```
 1   APPEARANCES OF COUNSEL - (CONTINUED):
 2   FOR DEFENDANT GENAUDIO, INC.:
 3      WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
 4      BY:  MICHAEL P. MCCLOSKEY, ATTORNEY AT LAW
 5      655 West Broadway, Suite 900
 6      San Diego, California 92101
 7      Telephone: (619) 881-3326
 8      Email:  michael.mccloskey@wilsonelser.com
 9
10   FOR DEFENDANT ASTOUND HOLDINGS, INC.
11   - (A.M. SESSION):
12      BENZ LAW GROUP
13      BY:  JEFFREY BENZ, ATTORNEY AT LAW
14      12021 Wilshire Boulevard, Suite 256
15      Los Angeles, California 90025
16      Telephone: (310) 570-2774
17      Email:  jeffreybenz@gmail.com
18
19   ALSO PRESENT:
20      CASEY HOWELL, VIDEOTAPE OPERATOR
21
22
23
24
25
```

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub - Vol. 1
January 19, 2017

---

Page 5

```
 1                    INDEX
 2  THURSDAY, JANUARY 19, 2017
 3  TAJ JERRY MAHABUB - VOLUME 1            PAGE
 4      Examination by MS. VOORHEES           14
 5  P.M. SESSION                            153
 6      Examination resumed by MS. VOORHEES  153
 7
 8
 9                    -OOO-
10
11
12  QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER:
13              PAGE        LINE
14                  NONE.
15
16
17
18
19
20
21
22
23
24
25
```

---

Page 7

```
 1                 EXHIBITS - (CONTINUED)
 2           TAJ JERRY MAHABUB - VOLUME 1
 3  Number          Description              Page
 4  Exhibit 203   EMAIL CHAIN, BATES NOS.
 5               SEC-TISCARENOV-E-0000325
 6               THROUGH SEC-TISCARENOV-
 7               E-0000326 - 2 pages              68
 8
 9  Exhibit 204   8/10/09 EMAIL FROM JERRY
10               MAHABUB TO GARY SMITH, ETC.,
11               BATES NOS. SEC-MAHABUBJ-E-
12               0022806 THROUGH
13               SEC-MAHABUBJ-E-0022882
14               - 78 pages                       69
15
16  Exhibit 205   EMAIL CHAIN, BATES NOS.
17               347APL-00000608 THROUGH
18               347APL-00000621 - 14 pages       81
19
20  Exhibit 206   EMAIL CHAIN, BATES NOS.
21               SEC-MAHABUBJ-E-0023716
22               THROUGH SEC-MAHABUBJ-
23               E-0023729 - 14 pages             81
24
25
```

---

Page 6

```
 1                    EXHIBITS
 2           TAJ JERRY MAHABUB - VOLUME 1
 3  Number          Description              Page
 4  Exhibit 199   DECEMBER 11, 2008, CONFIDENTIAL
 5               PRIVATE PLACEMENT MEMORANDUM,
 6               GENAUDIO, INC., BATES NOS.
 7               GA006483 THROUGH GA006585
 8               - 103 pages                      35
 9
10  Exhibit 200   March 25, 2009, Confiden
11               CONFIDENTIAL PRIVATE
12               PLACEMENT MEMORANDUM,
13               GENAUDIO, INC., BATES NOS.
14               GA007367 THROUGH GA007453
15               - 87 pages                       40
16
17  Exhibit 201   EMAIL CHAIN, BATES NOS.
18               SEC-ELLIOTT-E-0002589
19               THROUGH SEC-ELLIOTT-E-000292
20               - 4 pages                        40
21
22  Exhibit 202   EMAIL CHAIN, BATES NOS.
23               SEC-MAHABUBJ-E-0007972
24               THROUGH SEC-MAHABUBJ-
25               E-0007979 - 8 pages              49
```

---

Page 8

```
 1                 EXHIBITS - (CONTINUED)
 2           TAJ JERRY MAHABUB - VOLUME 1
 3  Number          Description              Page
 4  Exhibit 207   EMAIL CHAIN, BATES NOS.
 5               GA006846 THROUGH GA006850,
 6               - 5 pages                       111
 7
 8  Exhibit 208   EMAIL CHAIN, BATES NOS.
 9               SEC-TISCARENOV-E-0000946
10               THROUGH SEC-TISCARENOV-
11               E-0000954 - 9 pages             125
12
13  Exhibit 209   EMAIL CHAIN, BATES NOS.
14               SEC-MAHABUBJ-E-0023474
15               THROUGH SEC-MAHABUBJ-
16               E-0023489 - 16 pages            126
17
18  Exhibit 210   EMAIL CHAIN, BATES NOS.
19               JM000378 THROUGH JM000380
20               - 3 pages                       138
21
22  Exhibit 211   EMAIL CHAIN, BATES NOS.
23               JM000727 THROUGH JM000279
24               - 3 pages                       173
25
```

---

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub - Vol. 1
January 19, 2017

Page 9

```
 1              EXHIBITS - (CONTINUED)
 2         TAJ JERRY MAHABUB - VOLUME 1
 3    Number         Description         Page
 4    Exhibit 212  EMAIL CHAIN, BATES NOS.
 5                 SEC-TISCARENOV-E-0001047
 6                 THROUGH SEC-TISCARENOV-
 7                 E-0001048 - 2 pages         183
 8
 9    Exhibit 213  EMAIL CHAIN, BATES NOS.
10                 SEC-MAHABUBJ-E-0019545
11                 THROUGH SEC-MAHABUBJ-
12                 E-0019549 - 5 pages         183
13
14    Exhibit 214  EMAIL CHAIN, BATES NOS.
15                 JM002048 THROUGH JM002052
16                 - 5 pages                   197
17
18    Exhibit 215  EMAIL CHAIN, BATES NOS.
19                 SEC-TISCARENOV-E-0001119
20                 THROUGH SEC-TISCARENOV-
21                 E-0001120 - 2 pages         209
22
23    Exhibit 216  EMAIL CHAIN, BATES NOS.
24                 JM002045 THROUGH JM002046
25                 - 2 pages                   218
```

Page 10

```
 1              EXHIBITS - (CONTINUED)
 2         TAJ JERRY MAHABUB - VOLUME 1
 3    Number         Description         Page
 4    Exhibit 217  5/6/10 EMAIL FROM JERRY
 5                 MAHABUB TO BOB COOVER, ETC.,
 6                 BATES NOS. JM002017 THROUGH
 7                 JM002020 - 4 pages          223
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 11

```
 1           PREVIOUSLY MARKED EXHIBITS
 2         TAJ JERRY MAHABUB - VOLUME 1
 3    Number         Description         Page
 4    Exhibit 16   EMAIL CHAIN, BATES NOS.
 5                 SEC0000001 THROUGH
 6                 SEC0000005 - 5 pages        244
 7
 8    Exhibit 21   EMAIL CHAIN, BATES NOS.
 9                 JM002096 THROUGH JM002099
10                 - 4 pages                   105
11
12    Exhibit 23   10/19/09 EMAIL FROM JERRY
13                 MAHABUB TO VICTOR TISCARENO,
14                 ETC., BATES NOS.
15                 SEC-TISCARENOV-E-0000635
16                 THROUGH SEC-TISCARENOV-
17                 E-0000636 - 2 pages         112
18
19    Exhibit 27   EMAIL CHAIN, BATES NOS.
20                 SEC-TISCARENOV-E-0000992
21                 THROUGH SEC-TISCARENOV-E
22                 - 0000993 - 2 pages         138
23
24
25
```

Page 12

```
 1     PREVIOUSLY MARKED EXHIBITS - (CONTINUED)
 2         TAJ JERRY MAHABUB - VOLUME 1
 3    Number         Description         Page
 4    Exhibit 28   EMAIL CHAIN, BATES NOS.
 5                 JM001041 THROUGH JM001046
 6                 - 6 pages                   153
 7
 8    Exhibit 30   3/21/10 EMAIL FROM JERRY
 9                 MAHABUB TO VICTOR TISCARENO,
10                 ETC., BATES NOS.
11                 347APL-00000315 THROUGH
12                 347APL-00000316 - 2 pages   173
13
14    Exhibit 71   EMAIL CHAIN WITH ATTACHMENT,
15                 BATES NOS.  SEC-
16                 TISCARENOV-E-0000114 THROUGH
17                 SEC-TISCARENOV-E-0000118
18                 - 5 pages                    31
19
20    Exhibit 72   GENAUDIO, INC., BOARD OF
21                 DIRECTORS TELEPHONIC MEETING
22                 MINUTES FROM SEPTEMBER 25TH,
23                 2009, BATES NO. GA006254
24                 - 1 page                    100
25
```

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub - Vol. 1
January 19, 2017

Page 57

1      MR. HOLMES: Huh-uh.
2      THE WITNESS: I don't think so.
3   BY MS. VOORHEES:
4      Q.  So you do not have the drives?
5      A.  No.
6      Q.  And you have not gotten rid of the drives?
7      A.  I don't believe so.
8          Right?
9      Q.  Okay.
10     MR. HOLMES: No.  They're maintained.
11     MS. VOORHEES: Okay.
12     Q.  Mr. Mahabub, why didn't you produce these
13  emails to the SEC's investigative staff?
14     A.  I did not realize they existed on my
15  computer until after the computer had fried, you
16  know?  And then I sent it in to Andrew, and there
17  was mail identities that were on there that were --
18  like, showed deeply hidden.
19         You know, the thing is, is, whenever you
20  have a laptop, you only have so much hard drive
21  space.  And as you -- like, already my computer is
22  running out of hard -- my new one is running out.
23  I got to go get a larger drive for it.
24         So as you -- as you run out of space, you
25  certainly can't go and import in other identities

Page 58

1   or even search for them to import them in because
2   you don't have the space to do it.
3          So what I usually would do is zip up the
4   mail identities and put them in a folder.  And
5   then, as my desktop would become cluttered, I'd
6   collapse it down, call it "Desktop," slam it into a
7   folder and -- so there are, like, folders within
8   folders within folders, basically.  It's -- not
9   very organized.
10         So I didn't realize that they were there,
11  or else I would have -- I would have produced them.
12     Q.  Okay.
13     A.  Yeah.
14     Q.  When did you realize they were there?
15     A.  Not until afterwards.  After my computer
16  fried, then I -- I knew that they were there.
17     Q.  When was that?
18     THE WITNESS: When was that, Andrew?  Do you
19  remember?
20     MS. VOORHEES: Andrew cannot testify.
21     MR. HOLMES: Yeah.  You have -- you have to
22  give the best testimony you can.  If you can't
23  remember --
24     THE WITNESS: I don't remember, yeah.
25  ///

Page 59

1   BY MS. VOORHEES:
2      Q.  Did you remember prior to the summer?
3   Prior to the summer of 2016?
4      A.  No.
5      Q.  All right.  If you can now focus on
6   Exhibit 202, Mr. Mahabub.  So these emails are a
7   little difficult to read because of the way they
8   were produced to us; so this is the best we've got.
9          If you could go down to the paragraph that
10  begins, "I had a few calls with Apple last week."
11         Do you see that?
12     A.  I do, yes.
13     Q.  Okay.  So it says (as read):
14            I had a few calls with Apple last
15         week, and aside from Victor and myself
16         working on the strategy-related
17         topics, one of the new contacts I was
18         recently introduced to will be the
19         person who decides how we move forward
20         after reviewing the technical
21         disclosure document our dev, d-e-v,
22         team is preparing.
23         Do you see that?
24     A.  I do.
25     Q.  Who was the new contact?

Page 60

1      A.  I don't remember.
2      Q.  The very top, I think, the top of this
3   email starts about halfway down the page with (as
4   read):
5             Hello, Team.  This email and all of
6          its content is to be considered
7          company confidential.
8          Do you see where I'm at?
9      A.  No.
10     Q.  Okay.  If you go down under -- do you see
11  where it says "Forward:  Wednesday at 11:30 a.m.
12  Pacific"?
13     A.  Oh, yes.
14     Q.  Okay.  You see where it starts with
15  "Hello, Team"?
16     A.  Yes.
17     Q.  Based on that, can you tell me who you
18  would be sending this email to?
19     A.  Any emails that I ever sent that were
20  related to Apple were sent to team members.  Or
21  every -- there might have been once or twice where
22  I would have sent it out to someone who I was
23  interested in soliciting to join the board of
24  directors.  That's it.
25     MR. HOLMES: She wants identification of who

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub - Vol. 1
January 19, 2017

---

Page 61

```
1    the team is.
2         THE WITNESS: Oh.
3         MR. HOLMES: Make sure you listen to the
4    question.
5         THE WITNESS: I -- I can't even tell you.
6    Melissa Gonzales, Jim Mattos, Paul Powers,
7    Mark Bobak -- it would have been team members and
8    board members.
9    BY MS. VOORHEES:
10        Q.   When you say "team members," you mean
11   people who worked for GenAudio?
12        A.   Or on the board of GenAudio, yeah.
13        Q.   And that could include people who are
14   actually employed by GenAudio or who were
15   contracting --
16        A.   Or consultants, exactly, full-time
17   consultants.
18        Q.   Okay.
19        A.   Yeah, you bet.
20        Q.   All right.  So if you could go to the next
21   page, then, of Exhibit --
22        A.   But consultants were all under, you know,
23   heavy NDAs with us or had software -- developer
24   agreements executed with us that would have
25   prevented them from -- if I said, "Keep this
```

---

Page 62

```
1    internal and confidential," that meant keep it
2    internal and confidential.
3         Q.   All right.  If you could take a look at
4    the second page.  I'm starting in sort of the end
5    of what I think is the first paragraph --
6         A.   Yep.
7         Q.   -- where you see it says (as read):
8              Most likely I will have one or two
9         additional calls with Apple after
10        their review, and if I get the green
11        light, actual integration development
12        and testing will commence.
13        A.   Yeah.
14        Q.   Do you see that?
15        A.   I do.
16        Q.   All right.  "Actual integration
17   development and testing," was that work that was to
18   be done by Apple?
19        A.   No.  By us.
20        Q.   Okay.  If you go down to the next
21   sentence, it says (as read):
22              I believe this could realistically
23        happen within two to four weeks.
24        Do you see that?
25        A.   The integration test, yes.
```

---

Page 63

```
1         Q.   Okay.  What was your basis for saying
2    that?
3         A.   We had already ported the code to run
4    across about every platform -- or every operating
5    system that they had at that time.  So getting
6    handed a -- an API or a kext, as Ron Isaac handed
7    to us --
8         THE REPORTER: Or a what?
9         THE WITNESS: A kext, k-e-x-t.  It's called a
10   kernel extension, which is an embedded way to embed
11   into a Macintosh product line.
12        MR. HOLMES: Jerry -- Jerry, when she does
13   that, she just wants you to repeat exactly what you
14   said.  If you add more things, it's more than she
15   needed.
16        THE WITNESS: Okay.  Okay.
17              So I'm not sure exactly what your question
18   is.  I think -- I think my point that I'm making
19   here is that we're pretty much self-ported; so
20   to -- to tighten down the nuts and bolts into a
21   kernel extension or into any type of API that we
22   might receive for OSX or iOS would be a matter of
23   weeks, is the point I was making there.
24   BY MS. VOORHEES:
25        Q.   Okay.  If you could skip down, there's a
```

---

Page 64

```
1    series of sentences that say, "Do I believe."
2              If you could go down to the one that says
3    (as read):
4              Do I believe that Apple could be a
5         strong potential buyer of GenAudio in
6         its entirety?  Yes.
7         A.   Absolutely.
8         Q.   Do you see that?
9         A.   Yes.
10        Q.   Okay.  What was your basis for that?
11        A.   Discussions that I had had and, you know,
12   they seemed to be very interested in the
13   technology.  I had written several emails to Victor
14   and Ron and other contacts that I had.  And, you
15   know, they -- they certainly didn't go against
16   anything that I was saying to them; that's for
17   sure.
18        Q.   All right.  The next -- if you skip down
19   two, it says (as read):
20              Do I believe that if someone does
21        not invest at this point in time that
22        they are foolish?  Yes.
23              And what did you mean by that?
24        A.   That means that at the time, I honestly
25   believed that we were going to be doing a deal with
```

---

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub - Vol. 1
January 19, 2017

Page 65

1 Apple based on the communications I had with my
2 points of contact that I was working with there.
3     Q. Okay. And that's as of July of 2009, you
4 thought that?
5     A. Yep, exactly. But, you know, like I said,
6 this was meant to go to internal team members; this
7 wasn't meant to be distributed to anyone external
8 to the team, or else it would have been.
9     Q. If you go down to the next paragraph, it
10 says (as read):
11         We need investors and need them
12         now.
13     A. Yep.
14     Q. Why were you writing that?
15     A. Because we were out of money. And in
16 order to port code and hire on the right team and
17 the right dev staff, and there were a couple other
18 additional software engineering people that I
19 needed to bring on board at the time, and you can't
20 bring those people on unless you have money.
21     Q. Okay. If you could go to the next page.
22 So I'm now on the Bates page 7974.
23     A. Yeah.
24     Q. And go down to what I think is the first
25 full paragraph. It says (as read):

Page 66

1         Everyone keep their eye on the
2         prize and, if possible, bring
3         potential investors to the table,
4         please, preferably through the common
5         stock offering.
6         Do you see that?
7     A. Yes.
8     Q. All right. So you were asking your team
9 to help bring potential investors to the table;
10 correct?
11     A. Through the common stock offering. What
12 I'm saying is, don't bring them to the table
13 through anything here. They have to read the
14 common stock offering, the risk factors associated
15 with the offering; that this is -- you know, this
16 is internal team member confidential stuff, but if
17 you know anyone that might be interested in
18 investing, you know, give them the common stock
19 or -- at the time, the logistics were, you know, go
20 to Jim Mattos, and Mattos would then forward them
21 the common stock offering.
22     Q. Okay. So when -- so your parenthetical
23 that says "preferably through the common stock
24 offering," you're referring to the process by which
25 the investors would be provided with the offering

Page 67

1 documents?
2     A. With information to determine whether or
3 not it was an investment that they want to invest
4 in or not, because this obviously isn't surrounded
5 by the appropriate risk factors and disclaimers in
6 the language that are needed.
7     Q. Okay. You say "preferably." Was there
8 another alternative?
9     A. Yeah, a term share. So if there's a
10 potential that someone knew someone that wanted to
11 invest something, a little larger amounts, you
12 know, maybe the company would look at what's called
13 a term sheet, if I remember, is what it's referred
14 to as.
15         So if -- if someone wanted to -- you know,
16 one of our employees said, "Hey, Jerry, here is my
17 Uncle Joe. You know, he wants to invest
18 $10 million." Right? Which never happened. But
19 if it ever happened, you know, we'd -- we'd
20 entertain a term sheet at that time.
21         So it would either be through a common
22 stock offering or through a potential for a term
23 sheet. Again, you know, we never had any term
24 sheet offers to the table; it was all through the
25 offerings.

Page 68

1     Q. Okay. So you never had any term sheets?
2     A. No.
3     Q. Okay. Were there any other alternatives
4 other than term sheet and common stock offering?
5     A. No. No. There was a term sheet with a
6 group called GenAudio Term Sheet Investment Group,
7 which is a B.S. group set up by Mark Bobak and
8 Dell Skluzak in a -- a way for them to start their
9 hostile takeover when they were -- but that's the
10 only term sheet group, as far as I remember.
11     Q. Okay.
12     THE WITNESS: Slow down? Okay, yeah, sorry.
13         (Whereupon, Exhibit 203 was marked for
14         identification by the Court Reporter.)
15     THE WITNESS: Oh, you guys dug these up, huh?
16 This is great.
17 BY MS. VOORHEES:
18     Q. All right. Mr. Mahabub, you've been
19 handed what's been marked as Exhibit 203. It's
20 email correspondence. The first page is Bates
21 labeled SEC-TiscarenoV-E-000325.
22         Do you recognize Exhibit 203?
23     A. Yes.
24     Q. Okay. And this is email correspondence
25 between you and Victor Tiscareno; correct?

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub - Vol. 1
January 19, 2017

---

Page 181

```
1    you know, Naval Warfare Center.  I worked with a
2    lot of people back then.  The United States Army in
3    Huntsville, Alabama.  Missile Research Development
4    Engineering Center.  You name it, they ended up in
5    licensing deals.
6        MR. HOLMES:  Slow down a little bit.  The
7    reporter is having a hard time keeping up.
8        THE WITNESS:  Okay.
9        Well, the point is, is when you hit this
10   particular stage, which is embedded-level
11   integration, it usually means either a sales
12   contract, a licensing deal, a hardware --
13   something, you know?
14       And, you know, that's where we were,
15   'cause, obviously, a kernel extension, a vendor
16   kernel extension, which is what we were handed by
17   Ron Isaac, is -- is basically an embedded-level
18   integration.  That is a full-blown embedded
19   integration when you get handed a kernel extension
20   into a product.
21   BY MS. VOORHEES:
22       Q.  Did you ever talk to Mr. Isaac about what
23   the term "vendor" meant in Apple parlance?
24       A.  Did not, no.  I mean, I think "vendor" --
25   everyone knows what the word "vendor" means, you
```

---

Page 182

```
1    know?  I mean, it's -- pretty common term to use in
2    business.
3        Q.  Did you ever talk to anybody at Apple
4    about what the term meant?
5        A.  No.  That -- that would kind of be like --
6    I don't know if that would be considered rude or,
7    like, condescending towards someone, you know.  A
8    vendor means vendor.  It's an English word in the
9    English dictionary.  I think everyone knows what it
10   means.
11       Q.  In your previous employment, had you ever
12   been involved in tech-based licensing with Apple?
13       A.  No.
14       Q.  If you go down to the second-to-last
15   paragraph in the email we've been looking at, that
16   first email on Exhibit 211.
17       A.  This page here?
18       Q.  Yes.  It says (as read):
19           Let's get some fuel for the ship.
20       A.  Yeah.
21       Q.  (As read):
22           Any help from all of you with this
23   financing effort would be great.
24       A.  Uh-huh.
25       Q.  What did you mean by that?
```

---

Page 183

```
1        A.  That means if you guys know anybody out
2    there that may have an interest or is an investor,
3    please introduce them to me or Jim Mattos, and we
4    will take it from there and make sure that they are
5    provided with the correct investment materials to
6    make a -- an informed investment decision.
7        But, of course, they were -- as I told
8    everyone, you're not -- if you're not Jim Mattos,
9    me, or Paul Powers, do not -- you know, just say,
10   "Hey, look, if you're interested, I can introduce
11   you to this guy or that guy."
12       And then, after the introduction is made,
13   from there we will hand them materials that they
14   can make a decision whether or not to invest.
15       That's -- that's pretty much the modis
16   operandi that -- that we did things on.  That way
17   we tried to avoid being here, sitting here with you
18   and -- apparently it didn't work.
19       We did our best.
20       Is that it for these two?
21       Q.  Yes.
22       A.  Okay.
23           (Whereupon, Exhibit 212 and
24           Exhibit 213 was marked for
25           identification by the Court Reporter.)
```

---

Page 184

```
1        MR. HOLMES:  Oh.
2        THE WITNESS:  All right.  Thanks.
3        MS. VOORHEES:  Did I give you too many?
4        MR. HOLMES:  Yeah.
5        MS. VOORHEES:  Sorry.
6        MR. HOLMES:  Give me too many things, like, I
7    get confused.
8    BY MS. VOORHEES:
9        Q.  All right.  Mr. Mahabub, you've been
10   handed two new exhibits.  The first is Exhibit 212.
11   It's an email chain Bates-labeled SEC-TiscarenoV-E-
12   0001047.
13           Do you recognize Exhibit 212?
14       A.  I do, yes.
15       Q.  Okay.
16       A.  Same answer, you know, as before.
17       Q.  Okay.  So you don't recall Exhibit 212,
18   but you have no reason to doubt that you sent and
19   received the emails as indicated?
20       A.  That's correct, yes.
21       Q.  Thank you.
22           And Exhibit 213 is email correspondence.
23   It is Bates-labeled SEC-MahabubJ-E-0019545.
24           Do you recognize Exhibit 213?
25       A.  Same answer.
```

---

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub - Vol. 1
January 19, 2017

Page 253

1    deposition of Jerry Mahabub.  The time is 3:51.
2        Please proceed.
3        MS. VOORHEES: All right.
4        Q.  Mr. Mahabub, before -- I think after we
5    actually went off the record last time, you said
6    you thought you maybe had 30 minutes left to give
7    us in the deposition?
8        A.  Around there.
9        Q.  Okay.  So given that, and given that the
10   parties have agreed that we can reconvene this
11   deposition on February 8th, 2017, in Denver, we're
12   going to go ahead and conclude the deposition for
13   today.
14       A.  Okay.  That --
15       Q.  We will issue an amended notice that will
16   have you appear at our office in Denver on
17   February 8th, 2017.
18       A.  Okay.
19       Q.  Okay?
20       A.  That's great, yeah.
21       MS. VOORHEES: All right.  Thank you.
22       Counsel, anything else?
23       MR. MCCLOSKEY: So stipulated.  We'll see you
24   on the 8th.
25       MR. HOLMES: Yeah.

Page 254

1        MS. VOORHEES: Okay.  Sounds good.  Thank you.
2        THE WITNESS: Oh, wait.  And we just pick up
3    where we left off or --
4        MR. HOLMES: Yeah.  Yeah.
5        MS. HUGHES: We also wanted to stipulate that
6    the court reporter did not need to put on her
7    address, business address and those things at the
8    beginning and end of the deposition.
9        THE REPORTER: For the federal rule read on?
10       MS. HUGHES: Yes.
11       MR. HOLMES: So stipulated.
12       MR. MCCLOSKEY: So stipulated.
13       MS. VOORHEES: Agreed.
14       THE VIDEOGRAPHER: This concludes today's
15   deposition of Jerry Mahabub.  The number of DVDs
16   used was three.  The original media will be
17   retained at Behmke Reporting & Video Services,
18   Incorporated, located at 160 Spear Street,
19   Suite 300, San Francisco, California.
20       We're going off the record.  The time is
21   3:52.
22       (Off video record.)
23       THE REPORTER: Do you guys need certified
24   copies?
25       MR. HOLMES: No, I don't.

Page 255

1        Do you want -- are you getting a certified
2    copy?
3        MR. MCCLOSKEY: You guys get the original.
4        MS. VOORHEES: We noticed it.  We will get the
5    original.
6        MR. MCCLOSKEY: Yes, I want a certified copy.
7        THE REPORTER: Does anyone need a rough draft?
8        MS. VOORHEES: Whatever our order is.  We'll
9    have to get back to you on that.
10       (At 3:54 p.m., the deposition
11       proceedings adjourned to February 8,
12       2017.)
13
14
15
16   _____
17       TAJ JERRY MAHABUB
18
19
20
21
22
23
24
25

Page 256

1    STATE OF CALIFORNIA      )
2                            ) ss
3    COUNTY OF RIVERSIDE      )
4        I hereby certify that the witness in the
5    foregoing deposition, TAJ JERRY MAHABUB,, was by me
6    duly sworn to testify to the truth, the whole truth and
7    nothing but the truth, in the within-entitled cause;
8    that said deposition was taken at the time and place
9    herein named; and that the deposition is a true record
10   of the witness's testimony as reported by me, a duly
11   certified shorthand reporter and a disinterested
12   person, and was thereafter transcribed into typewriting
13   by computer.
14       I further certify that I am not interested in
15   the outcome of the said action, nor connected with nor
16   related to any of the parties in said action, nor to
17   their respective counsel.
18       IN WITNESS WHEREOF, I have hereunto set my
19   hand this 27th day of January, 2017.
20   Reading and Signing was:
21   _X_ requested ___ waived ___ not requested
22
23
24
25       PAULA A. PYBURN, CSR NO. 7304, RPR, CLR

**In The Matter Of:**

*Securities and Exchange Commission v.*
*Taj Jerry Mahabub, et al.*

---

*Taj Jerry Mahabub*
*Vol. 2*
*February 8, 2017*

---

*Behmke Reporting and Video Services, Inc.*
*160 Spear Street, Suite 300*
*San Francisco, California  94105*
*(415) 597-5600*

Original File 31006MahabubV2.txt
Min-U-Script® with Word Index

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub – Vol. 2
February 8, 2017

Page 257

```
 1              IN THE UNITED STATES DISTRICT COURT
 2              FOR THE DISTRICT OF COLORADO
 3
 4     - - - - - - - - - - - - - - -
 5   SECURITIES AND EXCHANGE      )
 6   COMMISSION,                  )
 7              Plaintiff,        )
 8                                ) CASE NO.
 9   v.                           ) 1:15-cv-02118-CBS-WJM
10                                )
11   TAJ JERRY MAHABUB, GENAUDIO, )
12   INC., and ASTOUND HOLDINGS,  )
13   INC.,                        )
14              Defendants.       )
15     - - - - - - - - - - - - - - -
16
17         VIDEOTAPED DEPOSITION OF TAJ JERRY MAHABUB
18            WEDNESDAY, FEBRUARY 8, 2017
19            PAGES 257 - 541; VOLUME 2
20
21          BEHMKE REPORTING AND VIDEO SERVICES, INC.
22             BY:  BARBARA J. CASTILLO, RMR, CRR
23                160 SPEAR STREET, SUITE 300
24              SAN FRANCISCO, CALIFORNIA 94105
25                   (415) 597-5600
```

Page 258

```
 1
 2
 3
 4
 5
 6
 7
 8        Videotaped deposition of TAJ JERRY MAHABUB,
 9   VOLUME 2, taken by Plaintiff, at 1691 Stout Street
10   Street, Suite 1700, Denver, Colorado, commencing
11   at 9:23 A.M., on WEDNESDAY, FEBRUARY 8, 2017,
12   before Barbara J. Castillo, Registered Merit Reporter,
13   Certified Realtime Reporter and Notary Public within
14   and for the State of Colorado, pursuant to Notice.
15
16
17
18
19
20
21
22
23
24
25
```

Page 259

```
 1   APPEARANCES OF COUNSEL:
 2   FOR PLAINTIFF SECURITIES AND EXCHANGE COMMISSION:
 3       SECURITIES AND EXCHANGE COMMISSION
 4       BY:  DANIELLE R. VOORHEES, TRIAL COUNSEL
 5            LESLIE HENDRICKSON HUGHES, TRIAL COUNSEL
 6       1961 Stout Street, Suite 1700
 7       Denver, Colorado 80294
 8       Telephone: (303) 844-1000
 9       Email:  voorheesd@sec.gov
10               hugheslj@sec.gov
11
12   FOR DEFENDANT TAJ JERRY MAHABUB:
13       HOLMES, TAYLOR & JONES LLP
14       BY:  ANDREW B. HOLMES, ATTORNEY AT LAW
15       617 South Olive Street, Suite 1200
16       Los Angeles, California 90014
17       Telephone:  (213) 985-2200
18       Email:  abholmes@htjlaw.com
19
20
21
22
23
24
25
```

Page 260

```
 1   APPEARANCES OF COUNSEL - (CONTINUED):
 2   FOR DEFENDANT GENAUDIO, INC.:
 3       WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
 4       BY:  MICHAEL P. MCCLOSKEY, ATTORNEY AT LAW
 5       655 West Broadway, Suite 900
 6       San Diego, California 92101
 7       Telephone: (619) 881-3326
 8       Email:  michael.mccloskey@wilsonelser.com
 9
10   ALSO PRESENT:
11       WALT MATHERN, VIDEOGRAPHER
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub - Vol. 2
February 8, 2017

---

Page 261

```
 1                    INDEX
 2   WEDNESDAY FEBRUARY 8, 2017
 3   TAJ JERRY MAHABUB - VOLUME 2         PAGE
 4      Examination By MS. VOORHEES       270
 5   P.M. SESSION                         386
 6      Examination resumed by MS. VOORHEES  386
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 262

```
 1                  EXHIBITS
 2          TAJ JERRY MAHABUB - VOLUME 2
 3   Number       Description             Page
 4   Exhibit 262  Email string, top message
 5                from Jerry Mahabub to
 6                littlebadass19@yahoo.com,
 7                5/29/10; Bates Nos.
 8                SEC-MahabubJ-E-0023379
 9                through 0023389 - 11 pages    288
10
11   Exhibit 263  Audio Transcription, Pages 1
12                through 56 - 56 pages         296
13
14   Exhibit 264  Letter from Jerry Mahabub to
15                Shareholder, 8/28/10; Bates
16                Nos.  SEC0000006 through
17                0000009 - 4 pages             339
18
19   Exhibit 265  Email from Jerry Mahabub to
20                Victor Tiscareno, 9/6/10;
21                Bates No.
22                SEC-TiscarenoV-E-0001264
23                - 1 page                      376
24
25
```

Page 263

```
 1           EXHIBITS - (CONTINUED)
 2          TAJ JERRY MAHABUB - VOLUME 2
 3   Number       Description             Page
 4   Exhibit 266  Email string, top message
 5                from Jerry Mahabub to Paul
 6                Powers and Mark Bobak,
 7                9/7/10; Bates No.
 8                SEC-MahabubJ-E-0005677
 9                through 0005680 - 4 pages     376
10
11   Exhibit 267  GenAudio Shareholder
12                Progress Report, February
13                26, 2011; Bates Nos.
14                GA005317 through 005339
15                - 23 pages                    393
16
17   Exhibit 268  Email string, top message
18                from Jerry Mahabub to Jay
19                Rifkin and Phil Rodriguez,
20                9/30/11; Bates No.
21                SEC-MahabubJ-E-0020185
22                through 0021086 - 2 pages     413
23
24
25
```

Page 264

```
 1           EXHIBITS - (CONTINUED)
 2          TAJ JERRY MAHABUB - VOLUME 2
 3   Number       Description             Page
 4   Exhibit 269  Transcript of audio file
 5                - 32 pages                    435
 6
 7   Exhibit 270  Printout of slides; Bates
 8                Nos. SEC-Skluzak-E-0000392
 9                through 0000425 - 34 pages    446
10
11   Exhibit 271  Affidavit of Jerry Mahabub
12                in Support of Plaintiff's
13                Response - 12 pages           458
14
15   Exhibit 272  Defendant Astound Holdings,
16                Inc.'s Response to Plaintiff
17                Securities and Exchange
18                Commission's Second Request
19                for Production of Documents
20                and First Interrogatories
21                Dated November 10, 2016
22                - 7 pages                     494
23
24
25
```

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub – Vol. 2
February 8, 2017

Page 265

```
1                    PREVIOUSLY MARKED EXHIBITS
2               TAJ JERRY MAHABUB - VOLUME 2
3       Number          Description              Page
4    Exhibit 31      Email string, top message
5                    from Gary Smith to
6                    psavio@genaudioinc.com;
7                    5/25/10; Bates No. JM002158
8                    through 002167 - 10 pages      273
9
10   Exhibit 32      Email string, top message
11                   from Jerry Mahabub to Victor
12                   Tiscareno, 5/25/10; Bates
13                   Nos.
14                   SEC-TiscarenoV-E-0001158
15                   though 0001162 - 5 pages       273
16
17   Exhibit 34      Email string, top message
18                   from Jim Mattos to Jerry
19                   Mahabub, 10/27/14; Bates
20                   Nos. JM002515 through 002518
21                   - 4 pages                      315
22
23
24
25
```

Page 266

```
1            PREVIOUSLY MARKED EXHIBITS - (CONTINUED)
2               TAJ JERRY MAHABUB - VOLUME 2
3       Number          Description              Page
4    Exhibit 35      Email string, top message
5                    from Jerry Mahabub to Victor
6                    Tiscareno, 7/2/10; Bates
7                    Numbers
8                    SEC-TiscarenoV-E-0001218
9                    through 0001221 - 4 pages      315
10
11   Exhibit 37      Letter from Jerry Mahabub to
12                   GenAudio Shareholders,
13                   8/1/10; Bates No. GA005351
14                   through 005353 - 3 pages       330
15
16   Exhibit 40      Email string, top message
17                   from Dell Skluzak to
18                   Jennifer Ostrom, 11/20/14;
19                   Bates Nos.
20                   SEC-Scluzak-E-0000905
21                   through 0000911 - 7 pages      404
22
23
24
25
```

Page 267

```
1            PREVIOUSLY MARKED EXHIBITS - (CONTINUED)
2               TAJ JERRY MAHABUB - VOLUME 2
3       Number          Description              Page
4    Exhibit 74      Compilation exhibit of a
5                    stock certificate and other
6                    documents; Bates Nos.
7                    Mahabub001659 through 001671
8                    - 13 pages                     468
9
10   Exhibit 138     Email string, top message
11                   from Jerry Mahabub to Victor
12                   Tiscareno, 9/1/10 - 9 pages    350
13
14   Exhibit 139     Email string, top message
15                   from Jerry Mahabub - 4 pages   361
16
17   Exhibit 170     Email string, top message
18                   from Richard DeVaul to Jerry
19                   Mahabub, 4/6/11; Bates Nos.
20                   347APL-00000066 through
21                   00000069 - 4 pages             397
22
23
24
25
```

Page 268

```
1            PREVIOUSLY MARKED EXHIBITS - (CONTINUED)
2               TAJ JERRY MAHABUB - VOLUME 2
3       Number          Description              Page
4    Exhibit 198     GenAudio Inc. Common Stock
5                    Transfer Ledger; Bates Nos.
6                    GA001816 through 001852 - 37
7                    - 37 pages                     462
8
9    Exhibit 242     Email string, top message
10                   from Jerry Mahabub, 7/3/09;
11                   Bates Nos.
12                   SEC-MahabubJ-E_0023817
13                   through 0023827 - 11 pages     436
14
15   Exhibit 257     Email string, top message
16                   from Jerry Mahabub to Dell
17                   Skluzak, 7/6/12; Bates No.
18                   SEC-ELLIOTT-E-0002702
19                   - 1 page                       502
20
21   Exhibit 258     Email from Jerry Mahabub to
22                   Dell Skluzak, 1/5/13; Bates
23                   No. SEC-ELLIOTT-E-0002703
24                   - 1 page                       513
25
```

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub - Vol. 2
February 8, 2017

Page 481

1  that are completed by the investors.
2  A    Yes.
3  Q    I'm not seeing that in connection with
4  your personal sales.
5  A    No sub-agreements, yeah.
6  Q    Okay.  So there's no subscription
7  agreement with your personal sales; is that correct?
8  A    I think most the people that invested in
9  my --
10  Q    I'm sorry, can you just say yes or no.  Is
11  that correct, there was no subscription agreement
12  that went along with your personal sales?
13  A    A purchase agreement, not a subscription
14  agreement, yeah.
15  Q    Okay.  An investor questionnaire where
16  they fill out the information about their
17  accreditation sales?
18  A    No.
19  Q    That doesn't happen in your personal
20  sales?
21  A    To an extent it does, but not directly.
22  Q    Okay.  No actual physical document?
23  A    No.
24  Q    Okay.  All right.  So go ahead.  Now tell
25  me how you did evaluate accreditation.

Page 482

1  A    So most of them that came and invested
2  through my personal stock sale deal had either, A,
3  invested in a company offering and filled out an
4  investor questionnaire so we knew they were
5  accredited, or, B if they didn't and I talked to
6  them, you know, I'd just make sure that it was, you
7  know -- if something went wrong it was money they
8  could lose, this, that or the other, what's their net
9  worth, was it over a million, do him -- him and their
10  spouse or whatever make 300,000 per year or him -- I
11  think it was like 200,000 per year or 300,000 per
12  year if I remember what the accreditation standards
13  were.  So I'd just ask the questions and make sure
14  they were.
15  Q    Did you do that with Mr. Marvin?
16  A    I believe so, yes.
17  Q    Was he accredit---
18  A    I think he was investing in the company
19  first.  I can't remember.
20  Q    Okay.  Was he accredited?
21  A    I think so, yeah, or else -- I believe so.
22  Q    How -- what did you do to keep track of
23  these oral conversations that you were having with
24  investors?
25  A    Not much.  I mean, they were friends and

Page 483

1  family, so it was personal stock sale.  It didn't
2  dilute the other shareholders, so, you know, it
3  pretty much didn't affect the company.  It only
4  affected me.
5  Q    Okay.  And I'm trying to just focus on the
6  accreditation point.  Is there something -- some
7  document or something that we could go look at to see
8  whether or not the investors who purchased your
9  personal shares were accredited?
10  A    I think the document you have to look at
11  there would be in the corporation files if they
12  filled out a subscription agreement.
13  Q    Okay.  If they also invested in the
14  company?
15  A    Yes.
16  Q    But otherwise there would not be a
17  document?
18  A    There would not be a document, that's
19  right.
20  Q    What -- tell me about the transfer of
21  money.  When investors purchased your personal stock
22  what happened with the money?
23  A    They would wire transfer it to my account
24  or send a check.
25  Q    Okay.  To your personal account?

Page 484

1  A    Yes.
2  Q    Which account?
3  A    I've had so many banks.  Back then I would
4  have had -- let's see, U.S. Bank would have been back
5  then and -- and also I think Wells Fargo, I believe.
6  I can't remember who I moved to after U.S. Bank.  I
7  think Wells Fargo.
8  Q    Okay.  So if investors bought your
9  personal shares, the money went into your personal
10  account?
11  A    That's right.
12  Q    Okay.  And then you would transfer it to
13  GenAudio?
14  A    Or Astound Studios.
15  Q    Or Astound Studios?
16  A    Yeah.
17  Q    Did you keep any of the money?
18  A    A little bit, yeah, obviously because I
19  wasn't paying -- getting paid.  So there was a small
20  portion that I kept, but the only reason why was
21  because of my understanding that I wasn't obligated
22  to have to loan money to the company or -- no
23  obligation to the company and the shareholders or the
24  board to have to loan my personal money to the
25  company, but that's what I chose to do with it.

Securities and Exchange Commission v.
Taj Jerry Mahabub, et al.

Taj Jerry Mahabub - Vol. 2
February 8, 2017

Page 541

```
 1   STATE OF COLORADO )
 2              )  ss.
 3   COUNTY OF DENVER  )
 4         I hereby certify that the witness in the
 5   foregoing deposition, TAJ JERRY MAHABUB, was by me
 6   duly sworn to testify to the truth, the whole truth,
 7   and nothing but the truth, in the within-entitled
 8   cause; that said deposition was taken at the time and
 9   place herein named; that the deposition is a true
10   record of the witness's testimony as reported by me,
11   a duly certified shorthand reporter and a
12   disinterested person, and was thereafter transcribed
13   into typewriting by computer.
14         I further certify that I am not interested
15   in the outcome of the said action, nor connected
16   with, nor related to any of the parties in said
17   action, nor to their respective counsel.
18         IN WITNESS WHEREOF, I have hereunto set my
19   hand this 13th day of February, 2017.
20   Reading and Signing was:
21   Requested
22
23
24
25         BARBARA J. CASTILLO, RMR, CRR
```