# EXCERPTED

# EXHIBIT 222

### Page 1

1  UNITED STATES SECURITIES AND EXCHANGE COMMISSION
2
3  In the Matter of:           )
4                              ) File No. D-03450-A
5  GENAUDIO, INC.              )
6
7  WITNESS:  Victor Tiscareno
8  PAGES:    1 through 180
9  PLACE:    Securities and Exchange Commission
10           Byron G. Rogers Federal Building
11           1961 Stout Street
12           Denver, Colorado 80294
13 DATE:     Wednesday, December 3, 2014
14
15     The above-entitled matter came on for hearing,
16 pursuant to notice, at 9:10 a.m.
17
18
19
20
21
22
23
24     Diversified Reporting Services, Inc.
25            (202) 467-9200

### Page 2

1  APPEARANCES:
2
3  On behalf of the Securities and Exchange Commission:
4      JENNIFER OSTROM, Senior Counsel
5      U.S. Securities and Exchange Commission
6      Denver Regional Office
7      Byron G. Rogers Federal Building
8      1961 Stout Street, Suite 1700
9      Denver, Colorado 80294
10     Telephone: (303) 844-1049
11     E-mail: ostromj@sec.gov
12
13     KURT L. GOTTSCHALL, Staff Attorney
14     U.S. Securities and Exchange Commission
15     Denver Regional Office
16     Byron G. Rogers Federal Building
17     1961 Stout Street, Suite 1700
18     Denver, Colorado 80294
19     Telephone: (303) 844-1049
20     E-mail: gottschallk@sec.gov
21
22
23
24
25

### Page 3

1  APPEARANCES (continued):
2
3  On behalf of the Witness:
4      JOHN R. ELTRINGHAM, ESQ
5      Martin, Davis, PLLC
6      1200 Westlake Avenue North
7      Suite 604
8      Seattle, Washington 98109
9      Telephone: (206) 829-8619
10     E-mail: jeltringham@martindavislaw.com

### Page 4

1                 C O N T E N T S
2  WITNESS:                                PAGE
3  Victor Tiscareno                          5
4
5  EXHIBITS   DESCRIPTION                IDENTIFIED
6  1       Commission Supplemental            7
7          Information Form
8  2       Copy of the Subpoena               7
9  3       Bates numbered GA3660-3662, Apple, 52
10         Inc. Confidentiality Agreement,
11         dated July 1, 2009
12 4       Bates numbered SEC1-SEC5, an      108
13         e-mail dated August 30, 2013
14 5       Bates GA140, a letter dated March 151
15         15, 2010
16 6       Bates numbered GA487-634, private 155
17         placement memorandum for GenAudio,
18         dated March 15, 2010
19 7       Bates GA5351-5353, letter to      163
20         shareholders of GenAudio,
21         August 1st of 2010, from
22         Mr. Mahabub
23 8       Bates GA3572-3574, chain of       171
24         e-mails to Mr. Mahabub to
25         Ron Isaac

Page 5

1      PROCEEDINGS
2      MS. OSTROM: Let's go on the record at
3  9:10 a.m., on December 3, 2014. Would you
4  please raise your right hand? Do you swear to tell
5  the truth, the whole truth, and nothing but the
6  truth?
7      THE WITNESS: I do.
8  Whereupon,
9      VICTOR M. TISCARENO
10 was called as a witness and, having been first duly
11 sworn, was examined and testified as follows:
12      EXAMINATION
13      BY MS. OSTROM:
14  Q   And would you please state and spell your
15 full name for the record?
16  A   Victor Manuel Tiscareno, V-I-C-T-O-R,
17 M-A-N-U-E-L, Tiscareno, T-I-S-C-A-R-E-N-O.
18  Q   And my name is Jennifer Ostrom, and with me
19 today is Kurt Gottschall. We are officers of the
20 Commission for purposes of this proceeding. And
21 this is an investigation by the United States
22 Securities and Exchange Commission in GenAudio,
23 Inc., to determine whether there have been
24 violations of certain provisions of the federal
25 securities laws.

Page 6

1      However, the facts developed in
2  this investigation might constitute violations of
3  other federal or state civil or criminal laws.
4      And prior to the opening of the record, you
5  were provided with a copy of the formal order of
6  investigation in this matter and it will be
7  available for your examination during the course of
8  this proceeding.
9      And, Mr. Tiscareno, have you had an
10 opportunity to review the formal order?
11  A   This one here?
12  Q   Yes.
13  A   Briefly, yes.
14  Q   Do you want to read it again?
15  A   Well, we just went over -- I mean, this is
16 the first time I've seen it.
17  Q   Yes. Are you okay? You've seen it?
18  A   Yes.
19      MR. ELTRINGHAM: Yes.
20      BY MS. OSTROM:
21  Q   And then also prior to the opening of the
22 record you were provided with a copy of the
23 Commission Supplemental Information Form, and a
24 copy of that notice has now been marked as Exhibit
25 Number 1.

Page 7

1      (SEC Exhibit No. 1 was marked
2      for identification.)
3      MS. OSTROM:
4  Q   And, Mr. Tiscareno, have you had the
5  opportunity to read Exhibit Number 1?
6  A   Yes.
7  Q   And do you have any questions concerning
8  the notice?
9  A   No.
10  Q   And, Mr. Tiscareno, are you represented by
11 counsel today?
12  A   Yes, I am.
13      MS. OSTROM: And would counsel please
14 identify himself for the record?
15      MR. ELTRINGHAM: John Eltringham.
16      MS. OSTROM: Could you please spell your
17 last name for the record?
18      MR. ELTRINGHAM: Sure. E-L-T-R-I-N-G-H-A-M.
19      MS. OSTROM: And could you tell us what
20 firm you're with and an address?
21      MR. ELTRINGHAM: Of counsel at the firm
22 Martin Davis, 1200 Westlake Avenue North, Suite
23 604, Seattle, Washington 98109.
24      MS. OSTROM: Thank you. And Mr. Eltringham,
25 are you representing counsel for Mr. Tiscareno

Page 8

1  today?
2      MR. ELTRINGHAM: I am, yes.
3      MS. OSTROM: Thank you.
4      BY MS. OSTROM:
5  Q   And if you want to go off the record,
6  Mr. Tiscareno, please advise me that you want to,
7  and I'll decide at that time whether to ask the
8  reporter to do so. She won't go off the record at
9  your request or your counsel's, but only at our
10 request. So if you need to speak with your counsel
11 or take a break just make sure you tell me. Okay?
12  A   Sure.
13  Q   And then the other thing is I'm going to be
14 asking a lot of questions today. And if you don't
15 understand something or don't hear something that I
16 ask, please tell me. I'll rephrase it, repeat it,
17 whatever we need, to make sure we understand each
18 other.
19      And the other thing is, please allow me to
20 ask the question completely before you answer so we
21 don't talk over each other for the record, and then
22 also if you could please speak audibly when you
23 answer, saying yes or no with an answer, rather
24 than a nod of the head so that again it shows up on
25 the transcript. Okay?

Page 177

1  Q  And has he spoken to you since then about
2  the investigation at any point?
3  A  Absolutely not.
4  Q  And other than your wife and your counsel,
5  have you spoken with anyone regarding the fact that
6  you are appearing here today?
7  A  No.
8  Q  And have you -- do you know of anyone else
9  who has been subpoenaed or testified in this
10 investigation?
11 A  No.
12 Q  And, Mr. Tiscareno, we have no further
13 questions at this time.  We may, however, call you
14 again to testify in this investigation and should
15 this be necessary we will contact you through your
16 counsel.  And is there anything that you would wish
17 to clarify or add to the statements you have made
18 today?
19 A  Circle back to my e-mails, I gave you my
20 main e-mail.  I have some very, very old accounts I
21 didn't think were important.
22 Q  You mean, your actual e-mail addresses?
23 A  Yeah.
24 Q  That's fine.  If we need those, we'll
25 contact you.

Page 178

1  A  Okay.
2  Q  Don't worry about -- that's fine.
3  A  I can't think of anything else unless you
4  have other questions.
5      MS. OSTROM:  No, I think that's it.  So we
6  will go off the record at 2:40 p.m., on December 3rd
7  of 2014.
8      (Whereupon, at 2:40 p.m. the proceedings
9  concluded.)
10            * * * * *

Page 179

1  REPORTER'S CERTIFICATE
2
3
4  I, Theresa L. Mendez, reporter, hereby certify that the
5  foregoing transcript of 180 pages is a complete, true and
6  accurate transcript of the testimony indicated, held on
7  December 3, 2014, at Denver, Colorado. in the matter of:
8  Genaudio, Inc..
9
10
11 I further certify that this proceeding was recorded by me,
12 and that the foregoing transcript has been prepared under my
13 direction.
14
15
16
17           Date: _____
18           Official Reporter: _____
19           Diversified Reporting Services, Inc.

Page 180

1  PROOFREADER'S CERTIFICATE
2
3  In the Matter of:   GENAUDIO, INC.
4  Witness:            VICTOR TISCARENO
5  File Number:        D-03450-A
6  Date:               DECEMBER 3, 2014
7  Location:           DENVER, CO
8
9
10     This is to certify that I, Beth Roots,
11 (the undersigned), do hereby swear and affirm
12 that the attached proceedings before the U.S.
13 Securities and Exchange Commission were held
14 according to the record and that this is the
15 original, complete, true and accurate transcript
16 that has been compared to the reporting or recording
17 accomplished at the hearing.
18
19
20
21 _____    _____
22 (Proofreader's Name)    (Date)

Page 179

1                REPORTER'S CERTIFICATE
2
3
4    I, Theresa L. Mendez, reporter, hereby certify that the
5    foregoing transcript of 180 pages is a complete, true and
6    accurate transcript of the testimony indicated, held on
7    December 3, 2014, at Denver, Colorado. in the matter of:
8    Genaudio, Inc..
9
10
11   I further certify that this proceeding was recorded by me,
12   and that the foregoing transcript has been prepared under my
13   direction.
14
15
16
17                      Date: 12/9/14
18              Official Reporter: [signature]
19              Diversified Reporting Services, Inc.
20
21
22
23
24
25

Page 180

1  PROOFREADER'S CERTIFICATE
2
3  In the Matter of:    GENAUDIO, INC.
4  Witness:             VICTOR TISCARENO
5  File Number:         D-03450-A
6  Date:                DECEMBER 3, 2014
7  Location:            DENVER, CO
8
9
10      This is to certify that I, Beth Roots,
11  (the undersigned), do hereby swear and affirm
12  that the attached proceedings before the U.S.
13  Securities and Exchange Commission were held
14  according to the record and that this is the
15  original, complete, true and accurate transcript
16  that has been compared to the reporting or recording
17  accomplished at the hearing.
18
19
20
21  _____        12/9/14
22  (Proofreader's Name)           (Date)
23
24
25

Page 181

THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION

In the Matter of:          )
                           ) File No. D-03450-A
GENAUDIO, INC.             )

WITNESS: Victor Tiscareno

PAGES:   181 through 254

PLACE:   Martin Davis, PLLC
         1200 Westlake Avenue North, Suite 604
         Seattle, WA 98109

DATE:    Wednesday, April 29, 2015

The above entitled matter came on for hearing, pursuant to notice, at 1:05 p.m.

Diversified Reporting Services, Inc.

(202) 467 9200

Page 182

```
 1     APPEARANCES:
 2
 3     On behalf of the Securities and Exchange Commission:
 4         JENNIFER OSTROM, ESQ. (Via telephone)
 5         Securities and Exchange Commission
 6         1801 California Street
 7         Suite 4800
 8         Denver, Colorado
 9         (303) 844-1047
10
11     On behalf of the Witness:
12         JOHN R. ELTRINGHAM, ESQ.
13         MartinDavis, PLLC
14         1200 Westlake Avenue North, Suite 604
15         Seattle, Washington 98109
16         (206) 829-8619
```

Page 183

```
 1                C O N T E N T S
 2
 3     WITNESS:                    EXAMINATION
 4     Victor Tiscareno                185
 5
 6     EXHIBITS:   DESCRIPTION         IDENTIFIED
 7     125         Email string        199
 8     126         Email string        219
 9     127         Email string        224
10     128         Email string        227
11     129         Email string        238
```

Page 184

```
 1                P R O C E E D I N G S
 2          MS. OSTROM:  Let's go on the record at
 3     1:05 p.m. on April 29th of 2015.  My name is
 4     Jennifer Ostrom.  And I am an officer of the
 5     United States Securities and Exchange Commission
 6     for purposes of this proceeding.  We are today
 7     resuming the examination of Victor Tiscareno
 8     which was adjourned on December 3rd of 2014.
 9          Would counsel please identify himself.
10          MR. ELTRINGHAM:  Good afternoon.
11     John R. Eltringham, E-l-t-r-i-n-g-h-a-m, attorney
12     for Mr. Tiscareno.
13          MS. OSTROM:  The testimony today is
14     pursuant to a Commission subpoena, which has been
15     previously marked as Exhibit Number 2.
16          And, Mr. Tiscareno, do you understand
17     that you remain under oath?
18          MR. TISCARENO:  Yes.
19          MS. OSTROM:  Let the record reflect
20     that a copy of the formal order of investigation
21     in this matter will be available for examination
22     during the course of this proceeding today.
23     Whereupon,
24              VICTOR TISCARENO
25     was recalled as a witness and, having been
```

Page 185

```
 1     previously duly sworn, was examined and testified
 2     further as follows:
 3                  EXAMINATION
 4          BY MS. OSTROM:
 5       Q   And, Mr. Tiscareno, did provide to your
 6     counsel some documents to produce to us?
 7       A   Yes.
 8       Q   And could you please describe the
 9     documents that you produced to us, just in
10     general?
11       A   They were copies of my emails I
12     received while working for Apple.
13       Q   And where were these documents located?
14       A   They were on an archive hard disk that
15     I had, external archive.
16       Q   And did you withhold any documents from
17     us?
18       A   No.
19       Q   Jerry Mahabub testified that from 2009
20     through when you left Apple in February of 2011
21     you and he had almost daily phone calls; is that
22     accurate?
23       A   I don't know about daily.  Often.
24       Q   Okay.  More than weekly?
25       A   I would say weekly would be fair.
```

Page 206

1  SF still? Call me any time.
2      And that is, again, a modification of
3  your email; is that correct?
4      A   That's correct.
5      Q   Okay. So, that what was added in here
6  is there any basis in fact for any of this that
7  Mr. Mahabub added to your email?
8      A   There is not.
9      Q   Jerry Mahabub testified that you told
10  him that you expected Apple and GenAudio to have
11  a license deal in place so that GenAudio's
12  technology would be in Apple products in time for
13  the Christmas 2010 product rollout.
14      Did you ever tell him that?
15      A   I don't believe so. I'm going to say
16  no.
17      Q   Did you ever tell Mr. Mahabub that you
18  expected Apple and GenAudio to have a license
19  deal in place at any point in time?
20      A   No. As a -- as a firm discussion, no.
21      Q   Okay. To your knowledge, did Michael
22  Hailey or Ron Isaac ever discuss a Christmas
23  product rollout with Jerry Mahabub?
24      A   I'm not aware of any discussion.
25      Q   Okay. And did you ever have any

Page 207

1  discussions about a Christmas product rollout
2  under any circumstances with Mr. Mahabub?
3      A   No.
4      Q   Who is Sina, do you know?
5      A   Yes, I do.
6      Q   And who is that?
7      A   His name is Sina Tamaddon, and he was a
8  senior VP of professional products, I think is
9  what his title was at the beginning but it was
10  software; final Cut Pro, Logic, you know,
11  applications like this that Apple sells.
12      Q   Okay. And did you ever discuss him
13  with Mr. Mahabub?
14      A   I don't recall ever having a discussion
15  with him about Sina. I don't know if I ever
16  brought up his name in conversation.
17      Q   Okay. And how about in terms of what
18  was written here about you getting them together;
19  was that ever something that you said to Mr.
20  Mahabub?
21      A   I never said that.
22      Q   Okay.
23      A   Well --
24      Q   Go ahead.
25      A   There is a trade show, and Sina

Page 208

1  Tamaddon used to -- to go to that show. And he
2  left the company. I didn't even know he left the
3  company. So, I -- you know, I don't know how Mr.
4  Mahabub knew of Sina Tamaddon. I don't know if
5  I've ever mentioned his name. I just don't think
6  I ever said I would ever set up anything with Mr.
7  Tamaddon.
8      Q   Okay. Now, Jerry Mahabub testified
9  that you told him that Apple would integrate
10  GenAudio's technology into all of Apple's
11  products or none of Apple's products.
12      Did you ever tell him that?
13      A   No.
14      Q   And then Jerry Mahabub testified that
15  you discussed with him how much Apple would pay
16  to license GenAudio's technology. Did you tell
17  him that?
18      A   I did not.
19      Q   Okay. Did you ever discuss revenue
20  models with Jerry Mahabub?
21      A   No.
22      Q   Jerry Mahabub testified that you told
23  him "just give it to us for free" and it will
24  help GenAudio in terms of branding and exposure.
25  Did you ever tell him that?

Page 209

1      A   No.
2      Q   If you could look at Exhibit Number 59.
3  And look at the first page where this email is
4  being forwarded on to Mr. Mahabub's employees.
5  Am I correct that you have never seen this
6  before?
7      A   I've never seen this before.
8      Q   Okay. If you look at the second full
9  paragraph of this email it says he also requested
10  to see a copy of the valuation report ASAP.
11      Do you see that?
12      A   I see that.
13      Q   Do you have any reason to believe that
14  Mr. Phil Schiller requested a copy of the
15  valuation report for GenAudio from Mr. Mahabub?
16      A   I -- I don't believe anything was asked
17  of him.
18      Q   Okay. Do you know of anyone at Apple
19  that ever requested Mr. Mahabub to see the
20  valuation report he's referencing?
21      A   I don't know of anyone.
22      Q   If you could look at Exhibit Number
23  121, please.
24      A   I've got it in my hand.
25      Q   Okay. And this was produced to us from

8 (Pages 206 to 209)

Page 250

1  talk to Mr. Bobak?
2     A   I don't recall him ever being on an
3  email thread, but that -- that's -- I --
4     Q   And -- and -- and that's fine, because
5  that was going to be my next question.  But did
6  you -- did you ever talk to him in that 2010/2011
7  time period?
8     A   No.
9     Q   Okay.  And since we last spoke, Mr.
10 Tiscareno, have you spoken with anyone regarding
11 this investigation?
12    A   Yes.
13    Q   And who have you spoken with other than
14 your counsel, obviously?
15    A   I have reached out to Michael Franze to
16 see if he had any emails.  Because I was looking
17 for emails.  And that's -- and I've also chatted
18 with Michael Henein if he had any information.
19 But, you know, again I was scrambling for -- I --
20 I didn't have any emails, I didn't think.
21    Q   And did -- was Mr. Henein, did he talk
22 to you about?
23    A   Well, it was -- it really was just
24 that -- that he had heard from Jerry.  But
25 that -- that, you know there was some issues

Page 251

1  that had developed.
2     Q   Did he say in any detail what those
3  issues were?
4     A   Well, that -- that -- that, apparently,
5  there was some investigation of this -- on this?
6     Q   Okay.  And did Mr. Henein give you
7  anything?
8     A   No, he didn't actually.
9     Q   Okay.
10    A   I mean not that -- you know, that
11 wasn't -- you -- you might appreciate this,
12 that -- that, you know, at -- at -- when GenAudio
13 had gone -- apparently, had some issues with
14 their board, then Mr. Skluzak was reaching out to
15 all parties.  And then as far as this goes, you
16 know, this is before we -- anyone knew that --
17 you know, anyway we just - - the -- the -- the
18 discussion never went down to details, I'll say
19 it that way.
20    Q   Okay.  And prior to your seeing the
21 emails that Mr. Mattos produced to us from
22 GenAudio, did you know that Mr. Mahabub had
23 modified so many of your emails?
24    A   I had no idea.
25    Q   And, Mr. Tiscareno, at this time is

Page 252

1  there anything that you want to add to what
2  you've already said today or clarify?
3     A   Actually, you know, it's a
4  disappointment really.  That's -- that's all I can
5  add.
6     Q   What in particular are you referring
7  to?
8     A   Well, I'm disappointed that -- that
9  this - - this was done -- well, that -- that so
10 many people are involved in something that, you
11 know, that -- I don't know what to say.  There
12 was this undercurrent that was going on, and
13 unbeknownst to probably a lot of people and --
14 and here I am learning about this with -- with
15 these emails.  I had no idea.
16        MS. OSTROM:  And, Mr. Tiscareno we have
17 no further questions at this time.  We may,
18 however, call you again to testify in this
19 investigation.  And should this be necessary we
20 will contact you through your counsel.
21        And we will go off the record at
22 2:37 p.m. on April 29th of 2015.
23        (Whereupon, at 2:37 p.m., the
24 examination was concluded.)
25            * * * * *

Page 253

1            PROOFREADER'S CERTIFICATE
2
3  In the Matter of:   GENAUDIO, INC.
4  Witness:       Victor Tiscareno
5  File Number:    D-03450-A
6  Date:          Wednesday, April 29, 2015
7  Location:      Seattle, WA 98109
8
9     This is to certify that I, Donna S. Raya,
10 (the undersigned), do hereby swear and affirm that
11 the attached proceedings before the U.S. Securities
12 and Exchange Commission were held according to the
13 record and that this is the original, complete, true
14 and accurate transcript that has been compared to the
15 reporting or recording accomplished at the hearing.
16
17 _____     _____
18 (Proofreader's Name)      (Date)

Page 253

1                    PROOFREADER'S CERTIFICATE
2
3    In the Matter of:   GENAUDIO, INC.
4    Witness:            Victor Tiscareno
5    File Number:        D-03450-A
6    Date:               Wednesday, April 29, 2015
7    Location:           Seattle, WA 98109
8
9              This is to certify that I, Donna S. Raya,
10   (the undersigned), do hereby swear and affirm that
11   the attached proceedings before the U.S. Securities
12   and Exchange Commission were held according to the
13   record and that this is the original, complete, true
14   and accurate transcript that has been compared to the
15   reporting or recording accomplished at the hearing.
16
17   _____          _____5/12/15_____
18   (Proofreader's Name)                 (Date)
19
20
21
22
23
24
25

```
 1                          CERTIFICATE
 2
 3        I,         J.P.           , do hereby certify that
 4   pursuant to the Rules of Civil Procedure, the witness
 5   named herein appeared before me at the time and place
 6   set forth in the caption herein; that at the said
 7   time and place, I reported all testimony adduced and
 8   other oral proceedings had in the foregoing matter;
 9   and that the foregoing transcript pages constitute a
10   full, true and correct record of such testimony
11   adduced and oral proceeding had and of the whole
12   thereof.
13
14        IN WITNESS HEREOF, I have hereunto set my hand
15   this    6th    day of         May         ,  2015 .
16
17
18
19        JP
20   _____
         J.P
21
22
23
24
25
```