# EXCERPTED

# EXHIBIT 223

```
 1                UNITED STATES DISTRICT COURT
 2               FOR THE DISTRICT OF COLORADO
 3                        ---o0o---
 4
 5    SECURITIES AND EXCHANGE        )
 6    COMMISSION,                    )
 7             Plaintiff,            )
 8      vs.                          )   No. 1:15-CV-2118
 9                                   )       WJM-CBS
10    TAJ JERRY MAHABUB, GENAUDIO,   )
11    INC. and ASTOUND HOLDINGS,     )
12    INC.,                          )
13             Defendants.           )
14    _____)
15
16
17              DEPOSITION OF RONALD ISAAC
18                 FRIDAY, JANUARY 13, 2017
19
20
21
22
23
24    PAGES 1 - 214
25
```

Page 1

## Page 2

9  Deposition of RONALD ISAAC, taken on behalf of
10 Defendants, at 2765 Sand Hill Road, Menlo Park,
11 California, commencing at 10:25 a.m., Friday,
12 January 13, 2017, before Kelli Combs, CSR 7705.

## Page 3

1  APPEARANCE OF COUNSEL:
2  FOR PLAINTIFF:
3      SECURITIES AND EXCHANGE COMMISSION
4      BY: LESLIE J. HUGHES, ESQ.
5      1961 Stout Street, Suite 1700
6      Denver, Colorado 80294-1961
7      303.844.1000
8      hughes.j@sec.gov
9
10 FOR DEFENDANT ASTOUND HOLDINGS:
11     BENZ LAW
12     BY: JEFFREY G. BENZ, ESQ.
13     12021 Wilshire Blvd., Suite 256
14     Los Angeles, California 90025
15     310.570.2774
16     jeffreybenz@gmail.com
17
18 FOR DEFENDANT TAJ JERRY MAHABUB:
19     HOLMES TAYLOR & JONES, LLP
20     BY: ANDREW B. HOLMES, ESQ.
21     617 South Olive Street, Suite 1200
22     Los Angeles, California 90014
23     abholmes@htjlaw.com

## Page 4

1  APPEARANCES OF COUNSEL CONTINUED:
2      WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
3      BY: DAVID AVENI, ESQ.
4      655 West Broadway, Suite 900
5      San Diego, California 92101
6      619.321.6200
7      david.aveni@wilsonelser.com
8
9
10 FOR THE WITNESS:
11     O'MELVENY & MYERS
12     BY: CLAY MARQUEZ, ESQ.
13     Two Embarcadero Center, 28th Floor
14     San Francisco, California 94111
15     415.984.8700
16     cmarquez@omm.com

## Page 5

```
                    I N D E X
January 13, 2017

RONALD ISAAC
EXAMINATION                             PAGE

        (BY MR. AVENI)        9, 207
        (BY MR. HOLMES)       178, 208
        (BY MS. HUGHES)       184

                    I N D E X
            EXHIBITS FOR IDENTIFICATION
EXHIBIT NO.                             PAGE
Exhibit 157  Email chain Bates stamped    59
             347APL-00000608 through
             -621
Exhibit 158  Email from Mr. Mahabub to    78
             Ronald Isaac and Vic
             Tiscareno dated
             September 15, 2009, Bates
             stamped
             SEC-Tiscaareno-V-E-0000526

Exhibit 159  Email from Jerry Mahabub to  81
             Victor Tiscareno and others
             dated October 19, 2009,
             Bates stamped
             SEC-TiscarenoV-E-0000635
             and -636
Exhibit 160  E-mail exchange between      82
             Mr. Tiscareno and Jerry
             Mahabub dated October 22,
             2009, Bates stamped
             SEC-TiscarenoV-E-0000645
```

2 (Pages 2 - 5)


Case 1:15-cv-02118-WJM-SKC   Document 91-5   Filed 04/20/18   USDC Colorado   Page 4 of 7

INDEX
EXHIBITS FOR IDENTIFICATION

| EXHIBIT NO. | | PAGE |
|---|---|---|
| Exhibit 161 | Email string Bates stamped SEC-TiscarenoV-E-0000649 and -650 | 85 |
| Exhibit 162 | Email chain Bates stamped 347APL-00000537 through -541 | 88 |
| Exhibit 163 | Email chain dated October 30, 2009 | 103 |
| Exhibit 164 | Email string Bates stamped SEC-TiscarenoV-E-0000750 and -751 | 116 |
| Exhibit 165 | Email chain dated January 4, 2010, Bates stamped SEC-TiscarenoV-E-0000956 | 121 |
| Exhibit 166 | Email from Jerry Mahabub to Ronald Isaac dated June 8, 2010, Bates stamped SEC-TiscarenoV-E-0001184 | 137 |
| Exhibit 167 | Email string Bates stamped SEC-TiscarenoV-E-0001421 and -1422 | 160 |
| Exhibit 168 | Email string Bates stamped SEC-TiscarenoV-E-0001742 and -1743 | 161 |
| Exhibit 169 | Email string Bates stamped 347APL-0000095 through -097 | 169 |
| Exhibit 170 | Email string Bates stamped 347APL-00000066 through -069 | 173 |
| Exhibit 171 | Photocopy of stick-on badges from Apple | 185 |

Page 6

INDEX
EXHIBITS FOR IDENTIFICATION

| EXHIBIT NO. | | PAGE |
|---|---|---|
| Exhibit 172 | Photograph of Steve Jobs | 195 |
| Exhibit 173 | Photograph of Tim Cook | 196 |
| Exhibit 174 | Photograph of Phil Schiller | 196 |
| Exhibit 175 | Photograph of Greg Joswiak | 197 |
| Exhibit 176 | Photograph of Victor Tiscareno | 198 |

PREVIOUSLY MARKED EXHIBITS

| EXHIBIT | PAGE |
|---|---|
| 96 | 50 |
| 99 | 57 |
| 105 | 107 |
| 106 | 113 |
| 112 | 129 |
| 113 | 131 |
| 119 | 141 |
| 120 | 143 |
| 121 | 144 |
| 123 | 148 |
| 125 | 149 |
| 126 | 150 |

Page 7

PREVIOUSLY MARKED EXHIBITS

| EXHIBIT | PAGE |
|---|---|
| 130 | 152 |
| 131 | 153 |
| 132 | 165 |
| 133 | 168 |

* * * *

Page 8

RONALD ISAAC,
after having been duly sworn, testified as follows:
---oOo---

EXAMINATION

BY MR. AVENI:

Q  Good morning, Mr. Isaac. So my name is David Aveni, and I represent GenAudio, the company in this case.

Thank you very much for taking time for this deposition today.

MR. AVENI: Do we want to do appearances?

THE REPORTER: (Shakes head.)

BY MR. AVENI:

Q  I know you testified during the administrative proceeding in this case.

Have you -- other than that, have you ever had your deposition taken?

A  That was my first.

Q  The first time?

A  Yeah.

Q  And I'm sure your attorney has walked through how depositions work. Just to make it easy and make sure we're all on the same page, I'll run through kind of the standard instructions that everybody gives in

**Page 30**

1  this, that would probably hand-carry something if --
2  if -- if to garner kind of like I was mentioning before
3  without a process.
4        And -- and so if I were involved in any one of
5  these, I do not recall at any time in my career there,
6  quite honestly, that I brought a vendor in and had to go
7  through a process like that.  So I wouldn't know
8  exactly, because such a breadth of the compass, so huge
9  and so big, that there wasn't even a group that was
10 responsible in saying, Okay, I will bring technology in
11 and this is the path it will go and stuff like that.
12       So let me answer that question from my point
13 of view.  I never witnessed that.
14    Q   Okay.
15       But from a vendor's perspective, software
16 vendor's perspective, I mean, that's the whole purpose
17 in talking to you, right, is to see whether ultimately
18 Apple is interested in licensing or acquiring the
19 technology?
20       MR. MARQUEZ:  Objection to the extent it calls
21 for speculation.
22       If you know, you can answer.
23 BY MR. AVENI:
24    Q   You can answer.
25    A   I mean, there are many -- this would fall in

**Page 31**

1  the guessing category again.  Quite honestly.  I mean,
2  from a business point of view, I would -- if I were to
3  speculate, I don't know, right?  I mean, if I was
4  rendering services and stuff like that, I'm not sure if
5  that's the intent.
6        There might be many, many intents in business.
7  Some of them could be acquisition strategy, some of them
8  could be licensing opportunities, some of them could be
9  explore and -- and get an opinion for marketing
10 purposes, right?
11    Q   That certainly seems to be a common motive for
12 them to -- for a vendor to talk to Apple, though, right?
13    A   I'm not sure.  I've seen -- I've seen many,
14 many varieties.  I've seen ones where they come to get
15 an Apple badge of acceptance, for example.  You know,
16 some of them, even though the NDAs clearly claim that
17 you cannot -- you cannot disclose that you were here, we
18 have seen some situations where people come and say, You
19 know, even Apple liked it.
20       So it's -- it's very, very hard to tell what
21 the motives are of these different engagements are, and
22 I wouldn't want to be in that position, quite honestly,
23 because my title and my -- my rank just did not give me
24 any opportunity to explore any of that.
25    Q   Okay.

**Page 32**

1        So let's talk a little more specific about
2  GenAudio, then.
3     Q   Is it fair to say from all of your
4  communications with Jerry Mahabub at GenAudio that it
5  seemed to be his motive in his discussions with you at
6  Apple that he was hoping it would lead to a license of
7  his technology or an inquiring of his technology?
8     A   We never discussed business opportunities with
9  Jerry, never.
10    Q   But he mentioned it a number of times, right?
11    A   I do not recall that, and I wouldn't have even
12 actually entertained it; not to the -- to the least of
13 it.
14    Q   Okay.
15        So -- so you're saying you're not aware that
16 he had that motive?
17    A   No.
18    Q   Okay.
19        Could you describe for me the evaluation
20 process as a general matter that you would go through to
21 look at a vendor's software.  What are the steps along
22 the way?
23    A   I will describe to you what I engaged GenAudio
24 with and many others specifically.  Even though the role
25 was to explore during that time period that you

**Page 33**

1  mentioned, my manager asked me to prepare -- prepare a
2  software package that would allow vendors to drop in
3  their software into a Macintosh platform so we can hear
4  the benefits and the experience enhancements that it
5  would implement on a Macintosh platform with the
6  hardware built in.
7        There were some issues, of course, because the
8  way the speaker drivers were implemented on the
9  Macintosh had to do with the kernel, which is the team
10 that I was in, and the kernel, I would go in there in a
11 little detail to describe what it is exactly, because it
12 does have an interesting distinction of its difficulty.
13       If this was not in the kernel, then any other
14 vendor could just open up an SDK from Apple without even
15 approaching Apple, implement their algorithms and -- and
16 would be able to come in with a Mac and just demonstrate
17 it.
18       Unfortunately, because these were hardware
19 devices that these algorithms were going to influence,
20 they had to go through sort of an exploration with us to
21 basically allow them to drop their software in there so
22 they can control the speakers.
23       This is a -- this is a huge difference from,
24 for example, a software piece that will change the
25 voices of a human being to something like Star Wars, for

9 (Pages 30 - 33)

1  When we sell a Macintosh CPU, the -- the rule
2  of thumb is to never allow it to be consuming more than
3  3 percent from what the customer bought. So we -- we
4  make sure that 97 percent of the processing power is
5  what the customer is buying.
6  So if we were to integrate a technology and we
7  like the experience and it was consuming 25 percent, we
8  would not make a big deal about it because it's just an
9  evaluation. But had we -- had we were to decide to move
10 to the next level, we would ask the -- the partner or
11 the vendor to basically optimize their software to make
12 sure that it's not consuming as much power as -- as
13 would be.
14  Q  Okay.
15     Did you have any of that conversation with
16 Mr. Mahabub?
17  A  No, we would not have. And it's just
18 customary not to have that conversation until -- because
19 it exerts a ton of work on the -- on the vendor, and
20 that was never our intentions for the evaluation.
21     MR. HOLMES: I don't have any further
22 questions.
23     MS. HUGHES: I have no more questions.
24     Thank you so much for the time you spent with
25 us today.

Page 210

1     THE WITNESS: Appreciate it. Thank you very
2  much.
3     MR. MARQUEZ: Before we close the deposition,
4  I'll just state for the record, earlier this morning the
5  witness expressed some concerns regarding his
6  confidentiality obligations as a former employee at
7  Apple.
8     During the break we spoke, and I understand
9  that there is not a protective order that has been
10 entered in this case, but the parties have agreed that
11 once the deposition transcript has been prepared, we
12 will have an opportunity to review that and identify any
13 potential confidential information that should not be
14 subject to public disclosure, at which point, if we
15 identify any such information, the parties agree that we
16 will confer to see if something can be done about that
17 in terms of a motion to seal or protective order or some
18 other means of protecting that confidential information.
19     MR. HOLMES: Sounds right.
20     MR. AVENI: So while we were off the record,
21 counsel for all parties discussed the manner for
22 handling the transcript, and we stipulated that the
23 court reporter would send the original transcript to the
24 witness' counsel, and from receipt, the witness will
25 have 30 days to review the testimony, the transcript,

Page 211

1  rather, and provide an errata with any changes.
2     Anything else?
3     MR. HOLMES: If the original is lost or
4  stolen --
5     MR. AVENI: A copy can be used for all
6  purposes.
7     So stipulated?
8     MR. HOLMES: So stipulated.
9     MR. MARQUEZ: So stipulated.
10    MS. HUGHES: Yes.
11    MR. AVENI: We're off the record. Thank you.
12    (Time noted: 4:38 p.m.)

Page 212

7  I, RONALD ISAAC, do hereby declare under penalty of
8  perjury that I have read the foregoing transcript; that
9  I have made any corrections as appear noted, in ink,
10 initialed by me; that my testimony as contained herein,
11 as corrected, is true and correct.
12    EXECUTED this_____day of_____, 2017, at
13 _____,_____.
14 (city)      (State)

17         _____
              RONALD ISAAC

Page 213

```
 1        I, the undersigned, a Certified Shorthand
 2  Reporter of the State of California, do hereby certify:
 3        That the foregoing proceedings were taken
 4  before me at the time and place herein set forth; that
 5  any witnesses in the foregoing proceedings, prior to
 6  testifying, were administered an oath; that a record of
 7  the proceedings was made by me using machine shorthand
 8  which was thereafter transcribed under my direction;
 9  that the foregoing transcript is a true record of the
10  testimony given.
11        Further, that the foregoing pertains to the
12  original transcript of a deposition in a Federal Case,
13  before completion of the proceedings, a review of the
14  transcript [X] was [ ] was not requested.
15        I further certify I am neither financially
16  interested in the action nor a relative or employee of
17  any attorney or any party to this action.
18        IN WITNESS WHEREOF, I have this date
19  subscribed my name.
20
21  Dated: 1/19/2017
22
23
24     *Kelli Combs*
       KELLI COMBS
25     CSR No. 7705
```

Page 214