EXCERPTED

# EXHIBIT 227

```
                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLORADO

     ------------------------------------------------------

     SECURITIES AND EXCHANGE    )
     COMMISSION,                )
                                )
                Plaintiff,      )
                                )
          vs.                   ) No. 1:15-cv-02118-WJM-CBS
                                )
     TAJ JERRY MAHABUB, GENAUDIO,)
     INC., and ASTOUND HOLDINGS,)
     INC.,                      )
                                )
                Defendants.     )
     ------------------------------------------------------

                 DEPOSITION UPON ORAL EXAMINATION
                              OF
                       VICTOR TISCARENO
     ------------------------------------------------------
                        Martin Davis PLLC
                1200 Westlake Avenue North, Suite 802
                       Seattle, Washington 98109




     DATE:  December 16, 2016
        REPORTED BY:  Olivia Pennella
                      Washington CCR 3337

                                                   Page 1
```

```
              A P P E A R A N C E S

     FOR PLAINTIFF:

              LESLIE H. HUGHES
              DANIELLE R. VOORHEES
              United States Securities and Exchange
                 Commission
              1961 Stout Street, Suite 1700
              Denver, Colorado 80294
              303-844-1086
              303-844-1108
              HughesLJ@sec.gov
              voorheesd@sec.gov
     FOR DEFENDANT TAJ JERRY MAHABUB:
              ANDREW B. HOLMES
              Holmes, Taylor & Jones LLP
              617 South Olive Street, Suite 1200
              Los Angeles, California 90014
              213-985-2200
              abholmes@htjlaw.com

     FOR DEFENDANT GENAUDIO, INC.:

              DAVID J. AVENI
              Wilson Elser Moskowitz Edelman &
                 Dicker, LLP
              655 West Broadway, Suite 900
              San Diego, California 92101
              619-321-6200
              david.aveni@wilsonelser.com

     FOR WITNESS:

              JOHN R. ELTRINGHAM
              Martin Davis PLLC
              1200 Westlake Avenue North, Suite 802
              Seattle, Washington 98109
              206-650-6560
              jeltringham@martindavislaw.com



                                                   Page 2
```

```
                  E X A M I N A T I O N
     WITNESS          MR. AVENI   MR. HOLMES   MS. HUGHES
     VICTOR TISCARENO      8         280          307
                          340         329          343


                      E X H I B I T S
     No.    Description                             Page
     Exhibit 79     Email Correspondence            46
            (SEC-TiscarenoV-E-0001883-1884)

     Exhibit 80     Email Correspondence
            (SEC-TiscarenoV-E-0001875-1876)         48
     Exhibit 81     Email Correspondence            53
            (SEC-TiscarenoV-E-0001842-1843)

     Exhibit 82     GenAudio In-Person Meetings     55

     Exhibit 83     Email Correspondence            57
            (SEC-TiscarenoV-E-0001840)
     Exhibit 84     Email Correspondence            62
            (SEC-TiscarenoV-E-0001812-1815)

     Exhibit 85     Email Correspondence            68
            (SEC-TiscarenoV-E-0000056-57)
     Exhibit 86     Email Correspondence            71
            (SEC-TiscarenoV-E-0000095-96)

     Exhibit 87     Email Correspondence            75
            (SEC-TiscarenoV-E-0000101)
     Exhibit 88     Email Correspondence            81
            (SEC-TiscarenoV-E-0000161-164)

     Exhibit 89     Email Correspondence            84
            (SEC-TiscarenoV-E-0000249-250)
     Exhibit 90     Email Correspondence            88
            (SEC-TiscarenoV-E-0000284)

                                                   Page 3
```

```
              E X H I B I T S (Continued)
     No.    Description                             Page
     Exhibit 91     Email Correspondence            92
            (SEC-TiscarenoV-E-000300-301)

     Exhibit 92     Email Correspondence            99
            (SEC-TiscarenoV-E-0001611-1612)
     Exhibit 93     Demo With MH                    99
            (347APL-00000046)


     Exhibit 94     Email Correspondence            111
            (SEC-TiscarenoV-E-0000336-37)
     Exhibit 95     AstoundSound Demo               113
            (347APL-00000047)

     Exhibit 96     GenAudio Demo (Astound)         114
            (347APL-00000051)
     Exhibit 97     Email Correspondence            117
            (SEC-TiscarenoV-E-0000376)

     Exhibit 98     Email Correspondence            120
            (SEC-TiscarenoV-E0001639)
     Exhibit 99     Email Correspondence            124
            (SEC-TiscarenoV-E-0000400)

     Exhibit 100    Email Correspondence            126
            (SEC-TiscarenoV-E-0000412-414)
     Exhibit 101    Email Correspondence            136
            (SEC-TiscarenoV-E-0000534)

     Exhibit 102    Email Correspondence            138
            (SEC-TiscarenoV-E-0000556)
     Exhibit 103    Email Correspondence            138
            (SEC-TiscarenoV-E-0000557)

     Exhibit 104    Email Correspondence            140
            (SEC-TiscarenoV-E-0000581)
     Exhibit 105    Email Correspondence            141
            (SEC-TiscarenoV-E-0001731)

                                                   Page 4
```

```
              E X H I B I T S (Continued)
No.        Description                                    Page
Exhibit 106     Email Correspondence                      148
                (347APL-00000526-527)

Exhibit 107     Email Correspondence                      154
                (SEC-TiscarenoV-E-0000756-757)
Exhibit 108     Email Correspondence                      157
                (SEC-TiscarenoV-E-0000770)

Exhibit 109     Email Correspondence                      159
                (SEC-TiscarenoV-E-0000946-954)
Exhibit 110     Email Correspondence                      178
                (SEC-TiscarenoV-E-0000984)

Exhibit 111     Email Correspondence                      180
                (347APL-00000333-336)
Exhibit 112     Email Correspondence                      182
                (SEC-TiscarenoV-E-0001560-1561)

Exhibit 113     Email Correspondence                      187
                (SEC-TiscarenoV-E-0001018-1020)
Exhibit 114     Letter dated March 15, 2010               193
                (GA000140)

Exhibit 2       GenAudio, Inc., Confidential Private      202
                Placement Memorandum
                (GA000487-540)

Exhibit 115     Email Correspondence                      208
                (SEC-TiscarenoV-E-0001052-1053)
Exhibit 116     Apple Organizational Chart                212
Exhibit 117     Email Correspondence                      214
                (SEC-TiscarenoV-E-0001114)

Exhibit 118     Email Correspondence                      217
                (SEC-TiscarenoV-E-0001129-1130)
Exhibit 119     Email Correspondence                      223
                (SEC-TiscarenoV-E-0001187-1188)
```
Page 5

Veritext Legal Solutions
866 299-5127

```
              E X H I B I T S (Continued)
No.        Description                                    Page
Exhibit 120     Email Correspondence                      228
                (SEC-TiscarenoV-E-0001218-1221)

Exhibit 121     Email Correspondence                      233
                (SEC-TiscarenoV-E-0001230)
Exhibit 122     Email Correspondence                      236
                (SEC-TiscarenoV-E-0001233)

Exhibit 123     Email Correspondence                      237
                (SEC-TiscarenoV-E-0001237)
Exhibit 124     Email Correspondence                      242
                (SEC-TiscarenoV-E-0001240-1241)

Exhibit 125     Email Correspondence                      242
                (SEC-TiscarenoV-E-0001242-1243)
Exhibit 126     Email Correspondence                      244
                (SEC-TiscarenoV-E-0001554-1555)

Exhibit 127     Email Correspondence                      245
                (SEC-TiscarenoV-E-0001255)
Exhibit 37      Letter dated August 1, 2010               247
                (GA005351-5353)

Exhibit 128     Email Correspondence                      248
                (SEC-TiscarenoV-E-0001263)
Exhibit 129     Email Correspondence                      250
                (SEC-TiscarenoV-E-0001266-1267)

Exhibit 130     Email Correspondence                      252
                (SEC-TiscarenoV-E-0001276-1278)
Exhibit 131     Email Correspondence                      255
                (SEC-TiscarenoV-E-0001416-1418)

Exhibit 132     Email Correspondence                      258
                (SEC-TiscarenoV-E-0001752-1753)
Exhibit 133     Email Correspondence                      260
                (SEC-TiscarenoV-E-0001767)
```
Page 6

Veritext Legal Solutions
866 299-5127

```
              E X H I B I T S (Continued)
No.        Description                                    Page
Exhibit 134     Email Correspondence                      263
                (SEC-TiscarenoV-E-0001775-1776)

Exhibit 135     Email Correspondence                      265
                (SEC-TiscarenoV-E-0001778)
Exhibit 136     Email Correspondence                      272
                (2 pages)

Exhibit 137     Email Correspondence; GenAudio            275
                Presents AstoundSound
Exhibit 138     Email Correspondence                      290
                (9 pages)

Exhibit 139     Email Correspondence                      290
                (4 pages)
Exhibit 16      Email Correspondence                      343
                (SEC0000001-5)

(Exhibit -2, 16, and 37 were marked previous in prior
deposition(s).)
```
Page 7

Veritext Legal Solutions
866 299-5127

         Seattle, Washington, Friday, December 16, 2016
                        8:59 a.m.
         -----------------------------------
VICTOR TISCARENO,       witness herein, having been duly
                   sworn by the Certified Court
                   Reporter, testified as follows:
             E X A M I N A T I O N
BY MR. AVENI:
     Q.   Good morning, Mr. Tiscareno.
     A.   Yes.
     Q.   My name is David Aveni.  And I represent, as
you know, GenAudio --
     A.   Yes.
     Q.   -- the company in this matter.  I appreciate
you taking time today to meet with us and answer
questions.  I know that you've given testimony a few
times before, during the SEC's investigation in this
matter.
          Have you ever had your deposition taken in a
civil dispute?
     A.   Never.  This is it.
     Q.   This is it.  And you testified twice during
the SEC's investigation; is that correct?
     A.   Correct.
     Q.   So, those are those only times you've been

Page 8

```
 1      Q.   You don't know?
 2      A.   I don't know.
 3      Q.   Okay.  Now, when you -- so after the meeting
 4   with Greg --
 5      A.   Joswiak, yeah.
 6      Q.   -- Joswiak -- I mean, I will represent to you
 7   that we have not seen any email where you talked to him
 8   about the result of that meeting.
 9      A.   Yeah, there wasn't any communication.  It was
10   him to Michael, Michael to me, as far as I --
11      Q.   I'm sorry, who to Michael?
12      A.   Well, I -- I only got the verbal.  Michael
13   Hailey.
14      Q.   Okay.
15      A.   Okay.  Sorry.
16      Q.   Are you saying that Michael Hailey told Jerry
17   the --
18      A.   Yeah.
19      Q.   -- results of the meeting?
20      A.   No, no.  Told me.
21      Q.   Yep.
22      A.   And I probably told Jerry.
23      Q.   Okay.  So, you say you probably told Jerry?
24      A.   Yeah, probably.  I don't know.
25      Q.   Do you know?
```

Page 225

```
 1           At the time -- adding that -- people were
 2   starting to watch movie on their -- on their displays,
 3   you know.  They were getting a lot better.  Some people
 4   were using them as their TV.  So, it was not out of the
 5   question to have that be your -- the -- the stereo
 6   system or the sound, you know, instead of having a sound
 7   bar that -- this would be -- a better sound could be
 8   made on the iMac.
 9           So I suggested, "Hey, Jerry, you know, you
10   can -- you know, you got the sound expander.  It's hard
11   to control that sound just out of two speakers.  You're
12   trying to create a full surround -- 5.1 system with --
13   with just two speakers."
14           He says it's -- and the voices walking all
15   over -- you know, for the center channel -- is walking
16   all over.  You've got this phantom center.  "It'd be
17   better if you come up with -- can you come up with
18   something that's a left channel, center channel, and
19   right channel?"
20           And so he worked on -- and he got this metal
21   box.  He got three little computer-type desktop speakers
22   about the size of this cup -- coffee cup.  And he
23   created an LCR -- left, center, right -- channel
24   system that would take the expanded signal and run it
25   through these --
```

Page 227

```
 1      A.   I don't know.  I don't know.
 2      Q.   Do you recall ever sending him an email about
 3   the results of the meeting?
 4      A.   I don't recall any of them.
 5      Q.   So --
 6      A.   Yeah.
 7           MR. AVENI:  Okay.
 8           MR. ELTRINGHAM:  I think he may have said
 9   earlier a phone -- it might have been a phone call.
10           MR. AVENI:  Yeah.  But he's saying he doesn't
11   remember.
12      Q.   (By Mr. Aveni)  If you don't remember --
13      A.   I don't remember.  I mean, it could be any
14   number of things.  I do know internally myself that
15   what -- what our meeting was all about -- we had a
16   follow-up meeting with -- that had nothing to do with
17   this.  And I don't know if this has to do with that --
18   is --
19           There was a meeting, where Jerry was still
20   working with Ron Isaac across the way.  And -- and I
21   made the -- made a statement or suggested to him that --
22   and this is for an iMac.  So, you know what those look
23   like.  They're flat screen -- speakers are on -- coming
24   out -- blasting out the bottom -- stereo -- left
25   channel, right channel -- reflect off the table.
```

Page 226

```
 1           And we would get a more immersive, more
 2   accurate sound field.  And so he worked on that very
 3   hard.  We had this meeting, and I had -- I invited some
 4   colleagues, some friends -- people that might be
 5   interested in -- in the -- in the product.
 6      Q.   Okay.  But you don't remember what you told
 7   Jerry, if anything, about the Greg Joswiak meeting,
 8   right?
 9      A.   I don't remember anything.  I don't have
10   anything to back it up with, the --
11           MR. AVENI:  Okay.  Let's mark that one as
12   Exhibit-120.
13           (Exhibit-120 marked for identification.)
14      A.   ==One of the things I want to mention to you --==
15   ==if I may go back -- is that it's not always Apple policy==
16   ==to talk about an internal discussion, tell them -- you==
17   ==know, the most that we would say is, "Hey, it's been==
18   ==great.  Thank you very much."==
19           ==But to say that the executive didn't -- the==
20   ==executive didn't like it or any of their gut feelings==
21   ==-- we just wouldn't probably say that.==
22      Q.   ==(By Mr. Aveni)  Okay.==
23      A.   ==Okay.  We'd say, "Hey, it's -- you know,==
24   ==it's -- this is where we're going to have to stop.  And==
25   ==thank you very much."  And if they ask -- you know, it==
```

Page 228

Veritext Legal Solutions
866 299-5127

```
 1   just depends -- but generally try not to discuss
 2   internal business with an -- outside vendors.
 3       Q.   So, as far as you know, you didn't discuss --
 4       A.   I --
 5       Q.   -- the meeting?
 6       A.   -- I don't know.
 7       Q.   Okay.
 8       A.   I'm -- I'm just -- all I'm saying is, is
 9   that --
10       Q.   That's a possibility?
11       A.   -- that may have -- that's a possibility, that
12   we -- but if you're asking what I did, which is what
13   I've told you, is that I -- I knew that for us -- that
14   was the end of the road for us.
15       Q.   So, in your head, you knew that was the end of
16   the road.  You just don't know --
17       A.   I don't know if I expressed that --
18       Q.   -- what you communicated to Jerry, if
19   anything?
20       A.   Right.
21       Q.   Okay.
22       A.   So, my -- I continued to expose my friends to
23   the product in other departments.  And that basically
24   was probably the -- and that may have been what I
25   said -- I mean, again, trying to reconstruct what
                                                    Page 229
```

Veritext Legal Solutions
866 299-5127

```
 1   another document you produced; is that right?
 2              MR. HOLMES:  July 2nd.
 3              MR. AVENI:  I said July 2nd, didn't I?
 4   July 2, 2010.
 5       Q.   (By Mr. Aveni)  This is another email you
 6   produced, right?
 7       A.   That's what it indicates down here.
 8       Q.   Okay.  And then if you look at the bottom of
 9   Page 1, you write to Jerry Mahabub -- you say:  "Hi
10   Jerry, I have to meet on Wednesday July 7 ... Is that a
11   good time for you?"
12              And then Mr. Mahabub responds, at the top of
13   the page, "Green on my screen!  See you at 11 a.m. on
14   Wednesday, July 7th"; is that right?
15       A.   Yeah, correct.
16       Q.   Do you recall that meeting?
17       A.   But let's go back again -- so, you're trying
18   to get me to --
19       Q.   I'm just establishing the date of the meeting.
20   You guys met -- you met with Mr. Mahabub on July 7th.
21       A.   Okay.  Got it.
22       Q.   Is that true?
23       A.   Yes.  I'll probably --
24       Q.   And is there any reason to think you didn't
25   meet on July 7th?
                                                    Page 231
```

Veritext Legal Solutions
866 299-5127

```
 1   happened --
 2       Q.   Okay.
 3       A.   -- six, seven years ago --
 4       Q.   All right.
 5       A.   -- is that I may have gone back and said,
 6   "Hey, look, let's do this.  This is for Ron.  I can
 7   invite some people here and see if we get more traction
 8   on the product, but this might be it."
 9       Q.   But you don't know that, right?  You're --
10       A.   Well, I don't know if I followed on --
11   let's -- let's see what it says.  You've got all --
12   you've got the power here.
13       Q.   Well, I haven't seen anything.
14       A.   Okay.
15       Q.   We're not going to go through any emails where
16   you say anything like that, so --
17       A.   Okay.
18       Q.   -- I don't want you to speculate you may have
19   said that, if you haven't.
20       A.   I -- I don't know.
21       Q.   Okay.
22       A.   I don't know what I've said.
23       Q.   All right.  Let's look at Exhibit-120.
24       A.   Mm-hmm.
25       Q.   It's an email chain dated July 20, 2010.  It's
                                                    Page 230
```

Veritext Legal Solutions
866 299-5127

```
 1       A.   I -- there's no reason for me to --
 2       Q.   Okay.
 3       A.   Yeah, it's -- and this is the meeting.
 4       Q.   It's what meeting?
 5       A.   Well, the other person is Andrew Bright.  That
 6   is the meeting, yeah.
 7       Q.   No.  Well --
 8       A.   I mean, that to me is my final meeting.  I
 9   mean, I think.
10       Q.   Okay.
11       A.   The big meeting.
12       Q.   All right.  Hear me out.  Let me ask
13   questions.
14       A.   Okay.
15       Q.   Okay.  So if you look at the bottom, you say,
16   "I have to meet on Wednesday July 7" --
17       A.   Okay.
18       Q.   -- 11 a.m.  Is that a good time for you?"  And
19   then you say underneath that, "Also, I would like to
20   arrange a meeting with a couple of guys on the team, one
21   you know, Barry Corlett.  The other person is Andrew
22   Bright (phd in acoustics)."
23       A.   Right.
24       Q.   Does it look like to you that's a separate
25   meeting?
                                                    Page 232
```

Veritext Legal Solutions
866 299-5127

## Page 237

```
1   ..."
2           Do you see that?
3       A.  Yes.
4       Q.  Does it seem to you like -- I mean, did you
5   have the understanding Mr. Mahabub still believed that
6   it was possible to continue with a deal with Apple on
7   the iPod side?
8           MS. HUGHES:  Object to the form of the
9   question.  Calls for speculation.
10      A.  I don't know what he was thinking.
11      Q.  (By Mr. Aveni)  Okay.  Did you respond to this
12  email?
13      A.  I don't know.
14      Q.  And he seems to think that the technology is
15  ready to be integrated across Apple products, right?
16      A.  Yes, we've read that before.
17          MR. AVENI:  Okay.  Okay.  Let's mark this one
18  Exhibit-122.
19          MR. ELTRINGHAM:  123.
20          (Exhibit-123 marked for identification.)
21          MR. AVENI:  My mind normally doesn't do this.
22  Okay.  You're right, 123.  Okay.
23      Q.  (By Mr. Aveni)  And, again, this reflects that
24  you produced this document -- the Bates label?
25      A.  Yes.
```

Veritext Legal Solutions
866 299-5127

## Page 239

```
1       Q.  Do you know one way or the other?
2       A.  I don't know one way or the other.  But I'm
3   saying that we had an NDA --
4       Q.  Right.
5       A.  -- already.
6       Q.  Yep.
7       A.  And I don't -- I don't think we needed another
8   one.  I mean, I can't -- I can't -- I can see -- foresee
9   the other guys needing one.
10      Q.  Where would the -- when you say, "the other
11  guys," do you mean --
12      A.  Ron Isaac --
13      Q.  -- the Mac side?
14      A.  Yeah, the Mac side.
15      Q.  Why would the Mac side need another NDA?
16      A.  They're working with that team.  And, you
17  know, Apple may -- sometimes if -- sometimes even new
18  projects would require an ND -- you have an employee NDA
19  when you sign up.  You --
20          When you're working with a firm like GenAudio,
21  you need an NDA.  And even on projects, maybe we would
22  sign another NDA just to make sure that everybody
23  understands the seriousness of what we're working on.
24          MR. AVENI:  Let's go off the record for a
25  minute.
```

Veritext Legal Solutions
866 299-5127

## Page 238

```
1       Q.  Okay.  Okay.  This is dated July 28, 2010.
2   And Mr. Mahabub writes to you, "I will get the devices
3   to you before then with the new settings I would
4   imagine.  I need the new NDA to review as well that we
5   discussed."
6           Do you recall discussing a new NDA with
7   Mr. Mahabub around this time period, July of 2010?
8       A.  I don't know.  I'm -- I'm going to say that
9   he's probably referring to an NDA that would have been
10  signed with Ron Isaac's team.  We already had an NDA --
11      Q.  Right.
12      A.  -- so --
13      Q.  Do you know one way or the other?
14      A.  I don't know one way or the other.
15      Q.  So he's saying here that you and he discussed
16  a new NDA, right?
17          He says, "I need the new NDA" -- he's writing
18  to you --
19      A.  Yes, I see that.
20      Q.  -- "I need the new NDA to review as well that
21  we discussed."  Do you remember having a discussion --
22      A.  I --
23      Q.  -- with Mr. Mahabub, in this time frame, about
24  a new NDA?
25      A.  No.
```

Veritext Legal Solutions
866 299-5127

## Page 240

```
1           (Recess taken from 3:48 p.m. to 3:51 p.m.)
2       Q.  (By Mr. Aveni)  Okay.  So, looking back at
3   Exhibit-123, I think the question you raised was whether
4   or not the NDA that's referenced in this exhibit refers
5   to whether or not an NDA is needed for the work Ron
6   Isaac was doing on the Mac side?
7       A.  Yeah.
8       Q.  Okay.  Do you recall an email discussion in
9   October 2009 that related to that question, whether
10  there is an NDA needed on the Mac side for Ron Isaac?
11  Do you remember that discussion?
12      A.  I remember a discussion.  I don't know the
13  exact dates.  I'll take your word for it.  You're
14  probably going to show me.  But I'm saying I thought the
15  question came up about needing an NDA across the street,
16  what I call --
17      Q.  Right.
18      A.  -- across the street, the Mac hardware guys.
19  As far as the exact date --
20      Q.  So, I mean, I will represent to you that there
21  is an email from October 2009 -- for the record, it's
22  APL573 --
23      A.  Mm-hmm.
24      Q.  -- where Ron Isaac says the current NDA is
25  okay, and there's no need for another one.
```

Veritext Legal Solutions
866 299-5127

```
 1         A.   Okay.
 2         Q.   So, the question I have is:  Given that, is
 3   there any way Exhibit-123 is about an NDA for Ron
 4   Isaac's work as opposed to something else?
 5         A.   I --
 6         Q.   You just don't know?
 7         A.   I just don't know.
 8         Q.   What information would you need to know what
 9   this NDA was about?
10         A.   Maybe more -- "We need an NDA to cover this
11   project or name or people."  I -- I don't know.  I --
12         Q.   Okay.
13         A.   I mean, what --
14         Q.   Okay.  Fair enough.  Now, if the NDA was for
15   Ron Isaac's work, in any event, why would Mr. Mahabub be
16   talking about that with you as opposed to Ron Isaac?
17         A.   Only -- I -- I -- the only thing I could think
18   of, to answer your question, is that I -- I was looped
19   in -- made the friendly introduction.  And I don't think
20   that -- based on all these conversations we're having
21   here, the fact that I'm looped in on the emails -- that
22   I made it very clear to Mr. Mahabub that we are really
23   two separate -- they were operating two separate
24   divisions.  And that our businesses are separate.
25              MR. AVENI:  Okay.
                                                      Page 241
                    Veritext Legal Solutions
                         866 299-5127
```

```
 1         Q.   Well, I can't answer that.  I have not seen
 2   anything that reflect that.
 3         A.   Rhetorically speaking.
 4         Q.   Okay.  Rhetorically speaking.  But I don't
 5   want you to speculate.
 6              Do you know what this NDA is about?
 7         A.   I don't.  Not today.
 8         Q.   Okay.  Fair enough.
 9         A.   Okay.  I'm glad we're signing NDAs, though.
10         Q.   But Apple -- according to this email,
11   Mr. Mahabub is saying to you, "Can you send the NDA to
12   me" -- meaning Jerry Mahabub.  So, you were going send
13   it to Jerry Mahabub, right?
14              So, it was something that Apple was going to
15   draft?
16         A.   But I don't know if -- not -- did -- based on
17   what you said earlier, did Ron Isaac already answer that
18   question?  He's asking a different question here.  I'm a
19   little bit mixed up here, because you said in a previous
20   one that you confirmed that Ron Isaac said that the
21   current NDA that's in place with them was okay.
22              So, I don't -- I really don't know what this
23   other NDA -- if he's -- if -- who's messed up on this --
24   it was me, Ron, or Jerry.
25         Q.   Okay.  You just don't know?
                                                      Page 243
                    Veritext Legal Solutions
                         866 299-5127
```

```
 1              (Exhibit-124 marked for identification.)
 2         Q.   (By Mr. Aveni)  Okay.  Exhibit-124 is another
 3   document, the Bates number of which reflects that you
 4   produced it.
 5         A.   Mm-hmm.
 6         Q.   Does that seem right to you?
 7         A.   I'll take -- I'll skim it here.  But if I said
 8   I sent it, I sent it.
 9              MR. AVENI:  Okay.  You can put that aside,
10   actually.  Let's go on with this one.
11              (Exhibit-125 marked for identification.)
12         Q.   (By Mr. Aveni)  Okay.  And you produced this
13   document as well, right?
14         A.   Yep.
15         Q.   Okay.  And you see in the middle of the page
16   Jerry Mahabub is writing to you.  And he says again, on
17   August 2nd:  "What about the NDA?  Can you get that sent
18   to me ASAP so we can review it on our end?  I would like
19   to get that signed and in place before the meeting if
20   possible."
21              Does that refresh your recollection at all
22   about another NDA being discussed with Mr. Mahabub?
23         A.   I mean, is this an NDA proposed from
24   GenAudio's viewpoint because they're bringing in a newer
25   technology?
                                                      Page 242
                    Veritext Legal Solutions
                         866 299-5127
```

```
 1         A.   I -- I just don't know.
 2         Q.   You don't remember?
 3         A.   But I just want to clarify that I don't
 4   know -- we didn't number them NDA 1, 2, 3.  I wish we
 5   did -- had done that -- in the conversation.
 6              MR. AVENI:  Okay.
 7              THE WITNESS:  Okay.
 8              (Exhibit-126 marked for identification.)
 9         Q.   (By Mr. Aveni)  Okay.  Exhibit-126 is another
10   document that you produced, right?
11         A.   Yeah, yes.
12         Q.   Okay.  And if you look at your email at the
13   top, the second paragraph, you say the -- you're talking
14   about two meetings.  You say, "The first meeting should
15   be regarding AstoundSound in general.  The second
16   meeting to discuss an idea we have, but this one will
17   require a signed NDA on this alone."
18              Do you see that?
19         A.   Okay.
20         Q.   Do you recall this discussion about an NDA,
21   that's reflected in this email?
22         A.   I still don't know why -- what the project is.
23   But we're getting closer.  I --
24         Q.   You don't remember?
25         A.   I don't remember.
                                                      Page 244
                    Veritext Legal Solutions
                         866 299-5127
```

```
 1     Q.   Can you tell whether this is even the same NDA
 2  as the previous emails we just looked at?
 3     A.   I don't know.
 4     Q.   You don't know.  Do you have any way of
 5  recalling what the idea that you refer to in this
 6  paragraph is?
 7     A.   No.
 8          MR. AVENI:  Okay.  Okay.  I don't want to beat
 9  a dead horse.  We're going to do one more email talking
10  about NDAs, and we'll move on.
11          THE WITNESS:  Okay.
12          (Exhibit-127 marked for identification.)
13          MS. HUGHES:  So, are you close to wrapping up
14  because we do have cross-examination?  You've almost run
15  through the entire seven hours.
16          MR. AVENI:  I don't think I'm here seven.
17          MR. HOLMES:  Do you know how much time has
18  elapsed?
19          THE COURT REPORTER:  Yes.  We started at 8:59
20  a.m., and it's now 4:01 p.m.
21          MR. AVENI:  Right.
22          MR. HOLMES:  Have you been tracking breaks?
23          THE COURT REPORTER:  Yes, I have.
24          MR. HOLMES:  Okay.  So, do you know what the
25  elapsed time is?
```

Page 245

```
 1          MR. AVENI:  Let's go off the record.
 2          (Discussion held off the record.)
 3          MR. AVENI:  So, let's get back on the record.
 4     Q.   (By Mr. Aveni)  So Exhibit-127 is another
 5  email you produced, right?  Do you have that?
 6     A.   Yes.
 7     Q.   Okay.  It says, "Could you please send me the
 8  NDA that we discussed?"  Again, this is on August 26th.
 9  He says, "Would like to get that signed so we can setup
10  (hopefully) firm meeting times in the next week or two
11  with Andrew and Barry."
12          You understand him to be referring to Andrew
13  Bright and Barry Corlett?
14     A.   Yes.
15     Q.   Okay.  So, does that help refresh your
16  recollection that the NDA that was being discussed was
17  tied to the meeting that you were trying to set up with
18  those two individuals?
19     A.   We can -- I'm not going to say, because I
20  really don't --
21     Q.   You don't recall?
22     A.   I don't recall for sure.
23     Q.   Okay.  I just wanted to see if that would
24  trigger any recollection.
25     A.   No.
```

Page 246

```
 1     Q.   Okay.  I'm handing you what's been previously
 2  marked as Exhibit-37, which is an August 1, 2010,
 3  GenAudio Shareholder Update.  Turn to Page 2 of this
 4  document.
 5          You'll see on the third paragraph, from the
 6  bottom -- about midway through -- it says:  "It has been
 7  requested that we sign an even more restrictive NDA with
 8  the LCEC.  I expect to review (sic) this NDA within the
 9  next couple of weeks."  Do you see that?
10     A.   Yeah.
11     Q.   Do you have any reason -- based on the emails
12  we just talked about, do you have any reason to think
13  that's not fair and accurate?
14     A.   Well, it seems to tie -- tie in to what we've
15  been talking about.  I'm going to still estimate that
16  it's the speaker system I told you about, the LCR --
17  left channel, center channel, right channel -- because
18  that was an idea that we cobbled together.  And I asked
19  GenAudio to attempt to create -- create that, because it
20  would be one of the only ones on the market -- for
21  demonstration.
22     Q.   Okay.
23     A.   But so -- I mean, but -- am I 100 percent
24  sure?  No.
25     Q.   You don't know one way or the other?
```

Page 247

```
 1     A.   I don't know one way or the other.
 2     Q.   And you don't know whether there is anything
 3  in this sentence I just read to you -- or these two
 4  sentences -- that's inaccurate as a result, right?
 5     A.   I don't know.
 6          MR. AVENI:  Okay.  You can put that aside.
 7          (Exhibit-128 marked for identification.)
 8     Q.   (By Mr. Aveni)  This is another email that you
 9  produced, right?
10     A.   Yes.
11     Q.   Okay.  Okay.  So, the top -- well, you'll see
12  there's a sentence near the top there that says:  "We
13  should have the port from our Quartz composer patch over
14  to OpenGL by the 14th completed and all parameter
15  settings exposed for Expander on the iPad."
16          Do you see that?
17     A.   Yes.
18     Q.   Is that just relating to the separate Expander
19  app, or does that have anything to do with the work that
20  you were doing in connection with GenAudio?
21          MS. HUGHES:  Object to the form of the
22  question.  I don't understand what you're asking him.
23  Could you rephrase it?
24          MR. AVENI:  Sure, I can rephrase it.
25     Q.   (By Mr. Aveni)  I'm trying to figure out if
```

Page 248

```
 1    about Mr. Mahabub's objective intent.
 2            MR. AVENI:  Join.  It's also not follow-up.
 3       Q.   (By Ms. Hughes)  And Mr. Mahabub was lying
 4    about the status of his discussions with Apple, wasn't
 5    he?
 6            MR. HOLMES:  Same objection.
 7            MR. AVENI:  Same objection.
 8       A.   Yes.
 9            MS. HUGHES:  No further questions.
10            MR. AVENI:  Let's go off the record for a
11    minute.
12            (Recess taken from 6:41 p.m. to 6:45 p.m.)
13            MR. AVENI:  Okay.  So, first of all,
14    Mr. Tiscareno, thank you again for giving us a full day
15    of your time -- which is very much appreciated.
16            And while we were off the record, Counsel
17    stipulated that once I receive a copy of the transcript,
18    I will promptly forward it to Mr. Tiscareno's counsel,
19    who will send it on to his client.  And Mr. Tiscareno
20    will have 30 days to notify us of any changes.  And it
21    would be sent back to me, and I will hold the
22    transcript.
23            MR. ELTRINGHAM:  That is correct.
24            MR. HOLMES:  So stipulated.
25            MR. AVENI:  Leslie?
                                                    Page 345
```

```
 1            MR. HOLMES:  Do you agree?
 2            MS. HUGHES:  I do agree.
 3            MR. AVENI:  Okay.  We're off the record.
 4            (Deposition concluded at 6:46 p.m.)
 5            (Signature reserved.)
 6                         -----
                                                    Page 346
```

```
 1                       S I G N A T U R E
 2
 3
 4
 5            I declare under penalty of perjury
 6    under the laws of the State of Washington that I have
 7    read my within deposition and the same is true and
 8    accurate, save and except for changes and/or
 9    corrections, if any, as indicated by me on the CHANGE
10    SHEET page hereof.
11            Signed in _____,
12    Washington, on the _____ day of _____,
13    2016.
14
15
16
17                       _____
18                       VICTOR TISCARENO
                         TAKEN:  December 16, 2016
                                                    Page 347
```

```
 1                     C E R T I F I C A T E
 2    STATE OF WASHINGTON  )
                           ) ss.
 3    COUNTY OF KING       )
 4
 5            I, the undersigned Washington Certified Court
      Reporter, hereby certify that the foregoing deposition
 6    upon oral examination of VICTOR TISCARENO was taken
      stenographically before me on December 16, 2016, and
 7    transcribed under my direction;
 8            That the witness was duly sworn by me pursuant
      to RCW 5.28.010 to testify truthfully; that the
 9    transcript of the deposition is a full, true, and
      correct transcript to the best of my ability; that I am
10    neither attorney for nor a relative or employee of any
      of the parties to the action or any attorney or counsel
11    employed by the parties hereto nor financially
      interested in its outcome.
12
13            I further certify that in accordance with
      Washington Court Rule 30(e), the witness is given the
      opportunity to examine, read, and sign the deposition
14    within thirty days upon its completion and submission
      unless waiver of signature was indicated in the record.
15
16            IN WITNESS WHEREOF, I have hereunto set my
      hand this 27th day of December, 2016.
17
18
19
20
21                       _____
22                       Olivia Pennella
23                       Washington CCR 3337
                                                    Page 348
```