# EXHIBIT 230

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 1 | GenAudio is a Colorado corporation with its principal place of business in Centennial, Colorado and it engages in the development and marketing of software that creates three-dimensional audio, which it calls "AstoundSound." *See* Answers ¶ 19. | Undisputed. | |
| 2 | GenAudio has never registered an offering of securities under the Securities Act. Answers ¶¶ 19, 130, 131; Ex. 1, SEC Attestations (Feb. 29, 2016 and Mar. 16, 2017). | Undisputed. | |
| 3 | Mahabub is the founder of GenAudio. He served as GenAudio's Chief Executive Officer ("CEO") and Chairman of the Board of Directors ("Board") from 2009 to 2012. Answers ¶ 18. Ex. 2, Mahabub Dep. 459:24 – 460:5 (Jan. 19 and Feb. 8, 2017). | Undisputed. | |
| 4 | Between November 2009 and April 2012, Mahabub had the right to vote a majority of GenAudio's securities and controlled GenAudio's Board. *See* Ex. 3 at 9 and GA000523; Ex. 4 at 9 and 43. | Undisputed. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 5 | Between November 2009 and April 2012, some members of GenAudio's Board were also GenAudio shareholders. *See* Ex. 3 at GA000523 (listing Directors who were also shareholders). | Undisputed. | |
| 6 | Between 2009 and May 2012, Jim Wei-Kung Mattos was the Support Services Manager of GenAudio and his "primary functions [for GenAudio] were to continue to raise money for the company, reaching out through friends and family [and] to manage company records …." Ex. 5, Mattos Inv. 19:8-10 (Feb. 9, 2015); Ex. 6, Mattos Dep. 24:15-22 (July 22, 2016). | Undisputed. | |
| 7 | Mattos and Mahabub were primarily responsible for bringing in investors to GenAudio, including through the sales of Mahabub's personal stock. Ex. 6, Mattos Dep. 69:18 - 70:3 (addressing Ex. 7), 155:24 – 156:19, and 159:17-25. | Undisputed. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 8 | Between 2009 and 2012, James T. Devine was GenAudio's Vice President of Finance and his job duties included accounting, issuing stock certificates, and maintaining GenAudio's stock transfer ledger. Ex. 8, Devine Dep. 49:25 – 50:8 (July 19, 2016). | Undisputed. | |
| 9 | Between 2009 and 2012, GenAudio financed its operations primarily through the sale of debt and equity securities to investors. *See* Answers ¶ 24. | Undisputed. | |
| 10 | Between 2009 and 2012, GenAudio was consistently insufficiently funded. Ex. 2, Mahabub Dep. at 155:12-15. | Undisputed. | |
| 11 | GenAudio needed investors' funds to continue to develop technology and to permit Mahabub to travel and attend conferences. *Id.* at 65:15-20 (addressing July 2009 email correspondence) and 153:15 – 155:11 (addressing Ex. 9). | Undisputed. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|-----|-----------|---------------------------|------------------------------|
| **12** | In explaining why he made certain statements encouraging GenAudio's employees, contractors, and Board (collectively, the "GenAudio Team") to assist in fundraising, Mahabub testified: <br><br> *I mean, it takes money to do business. You can't -- certainly can't fly for free and stay in hotel rooms for free with team members, or attend Game Developer Conference or CES for free either. Those all cost money. And in order to have money, you usually have to either raise money or you're independently wealthy, and I burned through all my money already.* <br><br> *Id.* at 173:5 – 12; *see also* 171:18-173:12 (addressing Ex. 9) (emphasis added). | Undisputed. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 13 | Leading up to the offerings at issue in this case, Mahabub conditioned the market by touting GenAudio's compatibility with Apple products and its relationship with Apple. For example, in December 11, 2008 and March 25, 2009 offering documents, GenAudio claimed, "*[o]ver the past several years, [GenAudio] has established excellent relationships with both senior management and software developers at Apple*" and explained that it developed its software and products to be compatible with Apple products. Ex. 10 at 18 (GA006507); Ex. 11 at 26 (GA007392). | It is disputed that Mahabub conditioned the market but undisputed that the quoted statement is true. | |
| 14 | Similarly, in a cover email distributing the March 25, 2009 offering document, Mahabub claimed that a GenAudio product was among the top downloads on Apple's website and "[*t]he selection to be the featured product came from internal Apple staff and has nothing to do with any of our paid marketing programs or advertising.*" Ex. 12 at 1. | Disputed. *See* Mahabub Decl. ¶ 29. | |
| 15 | In May 2009, Mahabub renewed his contact with Apple and reintroduced AstoundSound to Apple. Ex. 13 at 1. | Undisputed. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 16 | From 2009 through 2012, Mahabub was GenAudio's primary point of contact with Apple and controlled the dissemination of the information about dealings with Apple to GenAudio's Board, employees, shareholders, and prospective investors. Answers ¶¶ 38, 124. | Undisputed. | |
| 17 | Mahabub's primary contact at Apple was Victor Tiscareno, who was a senior audio and acoustic engineer at Apple until February 2011. Ex. 14, Tiscareno Inv. 11:5-9, 11:15-23, and 12:20-25 (Dec. 3, 2014 and Apr. 29, 2015); Ex. 15, Mahabub Inv. 70:2-5 (Feb. 5 and 12, 2015). | Undisputed. | |
| 18 | Mahabub also met and communicated with Michael Hailey, who was a product market manager with Apple for the iPod, iPhone, and iPad product lines, and Ronald Isaac, who was a signal processing engineer and acoustician technologist with Apple. Ex. 16, 10:24-12:9, 16:7-19, and 17:6-9 (Apr. 21, 2015); Ex. 17, Isaac Inv. 8:17- 25 (Apr. 15, 2015); Ex. 15, Mahabub Inv. 69:23-70:5 (regarding Isaac) and 153:23-154:2 (regarding Hailey). | Undisputed. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| **19** | On or about July 1, 2009, Mahabub executed Apple's standard nondisclosure agreement ("NDA") on behalf of GenAudio. *See* Answers ¶ 29. | Undisputed. | |
| **20** | Beyond the July 2009 NDA, GenAudio never entered into any agreements with Apple. *See* Ex. 15, Mahabub Inv. 102:25-105:15. | Undisputed. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 21 | Apple never told Mahabub or GenAudio that it planned to incorporate GenAudio's technology in any of its new product roll-outs. Ex. 18, Tiscareno Dep. at 313:4-11, 314:12 – 315:17 (Dec. 16, 2016); Ex. 19, Isaac Dep. 193:24 – 194:11 (Jan. 13, 2017); Ex. 20, Hailey Dep. 97:1 – 98:3, 151:19-22 and 154:11-17 (Jan. 23, 2017). | Disputed. Mahabub testified he spoke with Tiscareno regarding a Christmas product roll-out. Ex. 150, Mahabub Dep. 143:24-144:1, 310:21-311:11; *see also* SOF ¶¶ 129, 131, 168. | The evidence cited in Response does not contradict or otherwise dispute the stated fact. Mahabub provided vague, unclear testimony regarding Tiscareno's possible use of the phrase "Christmas product roll-out," including testifying:<br><br>Q:      So I just want to make sure I understand. Your testimony is that Mr. Tiscareno told you that Apple may want to use your technology for a Christmas product rollout?<br><br>A:      *It wasn't specifically that. It was – it was something along the lines of, you know, we – if we do this and we do this right there is – we might be able to make it into a Christmas product rollout. It was something – something kind of like – again, very vague.*  \*\*\*<br><br>Q:      But you recall Mr. Tiscareno using those words [Christmas product roll out] in a communication with you?<br><br>A:      *Might not have specifically been exact – he might have said a rollout during the holidays. I mean, whatever. I mean, who knows exactly what – the words he would have said was, but the interpretation would be a Christmas product rollout is what I would have interpreted that as, you know.*<br><br>Ex. 150, Mahabub Dep. at 310:21 – 311:5 and 312:10 – 17; *see also id.* at 310:6 – 313:12. Tiscareno, on the other hand, was clear, testifying: "Q: Okay. And did you ever have any discussions about a Christmas product rollout under any circumstances with Mr. Mahabub? A: No." Ex. 222, Tiscareno Inv. Tr. at 206:25 – 207:3. |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 22 | Apple never indicated that it was interested in licensing GenAudio's technology or acquiring GenAudio or GenAudio's technology. Ex. 14, Tiscareno Inv. 73:9 – 74:5; Ex. 16, Hailey Inv. 29:7 – 30:3; Ex. 17, Isaac Inv. 36:24 – 39:11. | Disputed. Mahabub testified he had a conversation with Isaac about licensing. Ex. 150, Mahabub Dep. 95:9-97:16. Mahabub also reasonably believed for *many* reasons that Apple was interested in acquiring its technology. *See, e.g.,* SOF ¶¶ 133-135, 138, 139, 141, 142, 147-152, 166, 168, 170-172, 174-175, 177. | **The evidence cited in Response does not contradict or otherwise dispute the stated fact. Mahabub testified that Isaac told him that Apple would not pay a per-unit royalty, not that Apple would engage in any licensing of GenAudio or its technology. Mahabub testified:** <br><br> ***Because I had asked Ron, I was like, "Well, you know, what – what do we do? How do we – we're going to do this, obviously we need to figure out how we're going to license this to you; right?" And he said, "Well, we're not going to pay you a per unit royalty, you know that." That's exactly what he said, quote-unquote, to me. \*\*\* And I told him, I said, "That's okay." And he said, "Well, when we get to that stage, we'll figure it out." That's exactly what he told me in the conference room.*** <br><br> **Ex. 221, Mahabub Dep. at 96:14-20 and 97:8 – 11. Isaac testified, "we never discussed business opportunities with Jerry, never." Ex. 223, Isaac Dep. 32:3-32:13; *see also* Ex. 19, Isaac Dep. at 189:8-12, 191:2-6, 191:20 – 192:23.** |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 23 | Apple and GenAudio did not negotiate about Apple licensing GenAudio's technology or acquiring GenAudio or its technology. Ex. 18, Tiscareno Dep. 166:17-20, 173:3-6, 307:19-308:10, 312:4-313:21, and 317:5-318:8; Ex. 14, Tiscareno Inv. 73:9- 74:5; Ex. 19, Isaac Dep. 184:11-21, 189:8-192:23, 195:15-25; Ex. 20, Hailey Dep. 90:8-20, 91:8-18, 93:7-19, 149:1-150:7, and 155:9-156:13. | Disputed. Mahabub testified he had conversations with Tiscareno and Isaac regarding licensing and product rollout. Ex. 150, Mahabub Dep. 95:9-97:16, 143:24-144:1, 310:21-311:11; *see also* SOF ¶ 168 (Mahabub sending negotiation emails to Apple); Tiscareno and Isaac never told Mahabub they would not be the ones to negotiate any deal with GenAudio. SOF ¶¶ 139, 140. | *See* Reply SOF ¶¶ 21-22. |
| 24 | In August and September 2009, Mahabub emailed the GenAudio Team and represented that GenAudio was close to entering into licensing negotiations and a "big licensing deal" with Apple, and he altered emails from Apple to make it appear as if Mahabub had been in contact with Philip Schiller ("Schiller") and other high-level Apple employees. *Compare* Ex. 21 at 2-3 to Ex. 22 at 1; *compare* Ex. 23 at 4 to Ex. 24 at 1-2; *see also* Demo. 2 at 1-3. | Undisputed that the relevant emails in Exs. 21, 22, 23, and 24 identify Jerry Mahabub and Ron Isaac as the sender, and the contents of these emails speak for themselves. | The Response "the contents of these emails speak for themselves" fails to comply with the Court's Practice Standards requirement that the Response "admit[] or deny[] the asserted material fact set forth by the movant" (§ III.E.4); therefore, the SEC requests that the fact be deemed admitted. |
| 25 | During 2009, 2010, and 2011, Schiller was the Senior Vice President of Worldwide Marketing at Apple. *See* Ex. 18, Tiscareno Dep. 211:21-23. | Undisputed. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 26 | Mahabub never met or communicated with Schiller regarding GenAudio or its technology. Ex. 2, Mahabub Dep. 432:20-433:2 (discussing Sept. 30, 2011 email correspondence); Ex. 18, Tiscareno Dep. 311:1-14; Ex. 16, Hailey Inv. 22:25-24:6; Ex. 17, Isaac Inv. 29:14-17. | Undisputed. | |
| 27 | During a September 25, 2009 Board meeting, "*Mahabub noted that a deal with Apple is highly probable based on the many meetings and Apple's responses to date.*" Ex. 25. | Undisputed. | |
| 28 | On October 2, 2009, Mahabub emailed GenAudio's Board of Directors that "*when the time comes, I will bring on the legal team, that being Paul [Powers], Mark [Bobak], Ben [Huber] and Craig [Hemenway], to assist me with finalizing the deal with Apple.*" Ex. 7 at 2. | Undisputed. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 29 | Mahabub never brought on the "legal team" to finalize a deal with Apple or otherwise negotiate with Apple. *See* Ex. 27, Powers Inv. 25:15-28:7; 32:8-17; 46:1-25; 56:13-25; 70:1-71:13; 74:5-19; 86:8-91, 125:18-129:15 (Feb. 27, 2015); Ex. 28, Bobak Dep. 130:5-9, 137:4-8 (Feb. 2, 2017); Ex. 29, Bobak Inv. 41:22 – 42:15 (Mar. 3, 2015); Ex. 30, Huber Dep. 61:5-63:12; 65:5-13; 66:14-20; 72:20-73:1; 82:21-24; 87:19-25 (Aug. 12, 2016). | Undisputed | |
| 30 | In October 2009, Mahabub emailed the GenAudio Board, employees, and contractors false and altered emails that made it appear that he had communicated with Apple executives Schiller and Timothy Cook ("Cook"), that GenAudio had received "*the green light*" on "*the technical … side of the coin*," and that Mahabub would be meeting with Apple CEO, Steve Jobs ("Jobs"). Ex. 7 at 1; c*ompare* Ex. 31 at 3-4 to Ex. 32 at 1; *see also* Demo. 2 at 4. *See also* Ex. 2, Mahabub Dep. 61:10 – 19 and 72:1 – 7 (explaining he always blind carbon copied the Board on updates to the GenAudio Team). | Undisputed that the relevant emails in Exs. 31 and 32 identify Jerry Mahabub as the sender, and the contents of these emails speak for themselves. | The fact should be deemed admitted. *See* Reply SOF ¶ 24. |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 31 | During 2009, 2010 and part of 2011, Cook was the Chief Operating Officer of Apple; he became Apple's CEO in August 2011. *See* Ex. 14, Tiscareno Inv. 189:20- 190:2. | Undisputed. | |
| 32 | Mahabub never met or communicated with Cook regarding GenAudio or its technology. Ex. 2, Mahabub Dep. 31:2-11; Ex. 14, Tiscareno Inv. 190:11-191:8; Ex. 18, Tiscareno Dep. 311:15-20; Ex. 16, Hailey Inv. 22:22-24:6; Ex. 17, Isaac Inv. 29:25- 30:2. | Undisputed | |
| 33 | During 2009, 2010, and until August 24, 2011, Jobs was the CEO of Apple. *See* Ex. 19, Isaac Dep. 184:7-10 and 196:1-3.[1] | Undisputed. Objection pursuant to Fed. R. Evid. 801 *et seq.*: Ex. 33 is an email from Apple employee, Tiscareno, and is inadmissible hearsay offered to prove that Apple employees did not discuss GenAudio with Jobs. | |

_____

[1] GenAudio's Response does not accurately copy the text of the SEC's Statement of Facts Nos. 33, 72, or 88.  Counsel for the SEC raised this issue with counsel for the Defendants on April 10, 2018; however, the SEC did not receive a response prior to filing its Reply.

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 34 | Mahabub never met with Jobs regarding GenAudio or its technology. Ex. 15, Mahabub Inv. 144:8 – 12 ("Q: Did you ever meet with Steve Jobs? A: No. Q: Ever? A: No."); Ex. 2, Mahabub Dep. 29:25 – 30:2 ("Q: Mr. Mahabub, you never met Steve Jobs, the former CEO of Apple; correct? A: That's correct.") and 417:6-7 (never met with Jobs regarding AstoundSound). *But see* Ex. 2, Mahabub Dep. at 417:3 – 432:5 (describing a chance encounter with Jobs in the Apple cafeteria, which did not involve any substantive communication). | Undisputed | |
| 35 | Jobs was not involved in Apple's dealings with GenAudio, and Apple employees did not discuss GenAudio with Jobs. *See* Ex. 14, Tiscareno Inv. 137:5-7, 139:23 – 140:5, 194:17-19, and 235:17-24; Ex. 18, Tiscareno Dep. 311:21-25 (Dec. 16, 2016); Ex. 16, Hailey Inv. 24:7 – 25:5; Ex. 17, Isaac Inv. 30:3 – 31:4; Ex. 33 at 1. | Undisputed | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|-----|-----------|---------------------------|------------------------------|
| **36** | At a November 9, 2009 Board meeting, Mahabub "*expressed optimism about the high likelihood of an integration deal with Apple, most likely a technology acquisition, but that a license arrangement remains a possibility.*" Ex. 34 at 1-2. | Undisputed. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|-----|-----------|---------------------------|------------------------------|
| 37 | On November 9, 2009, Mahabub, through Mattos, sent GenAudio's shareholders an email prepared and electronically signed by Mahabub, which stated, in part:<br><br>*Finally, we have made our … product compatible with the new Apple Snow Leopard operating system . . . . It should be kept very confidential and nothing is assured yet, but as shareholders you should be aware that there is a strong possibility that the Company may be acquired within the next 6 months in light of our extensive discussions with a global industry leader in consumer electronics. In anticipation of this possibility, I have personally interviewed several independent valuation specialists and firms. As of November 6, 2009 I selected a firm and engaged this firm to immediately begin working on this assignment. Today the Board . . . approved this measure.*<br><br>Ex. 35 at 2; *see also* Answers at ¶ 52 (emphasis added). | Undisputed | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 38 | An investor forwarded to Mattos the November 9, 2009 email, thanked Mattos for "meeting with me and my friends and family the other evening" and explained, "[w]e are all so very appreciative of your time with us and dedication to Gen Audio [sic]. Here is a list of investors." Ex. 42 at 1. | Objection pursuant to Fed. R. Evid. 801 *et seq.*: Ex. 42 is an email from an outside investor, Donaghue, and is inadmissible hearsay; it is undisputed the content of the email is as quoted. | Defendants' hearsay objection is not a sufficient basis for denial for the reasons stated in Reply SOF ¶ 44. |
| 39 | Numerous of the investors listed in the email purchased Mahabub's stock shortly thereafter. *See* Attach. 1 to Bowen Dec. at rows 11, 20, 22, 23, 24, 25, 26, and 30 (reflecting Nov. 15, 2009 agreements and Jan. 2010 stock certificates) and row 46 (reflecting a Jan. 2010 stock certificate for the investor who sent the email in Ex. 42). | Objection pursuant to Fed. R. Evid. 801 *et seq.*: Ex. 42, to which this statement relies, is an email from an outside investor, Donaghue, and is inadmissible hearsay; it is undisputed the content of the email is as quoted. | Defendants' hearsay objection is not a sufficient basis for denial for the reasons stated in Reply SOF ¶ 44. |
| 40 | In communications with investors, Mahabub and GenAudio used the term "LCEC" to refer to Apple. Answers ¶ 57. | Undisputed | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 41 | Numerous investors knew that "the LCEC" was Apple. *See, e.g.*, <u>Ex. 31</u>, Powers Inv. 110:2 – 111:14; <u>Ex. 32</u>, Skluzak Inv. 52:8 – 53:2 and 55:4 – 56:6 (Dec. 15, 2014); <u>Ex. 33</u>, Elliott Inv. 24:16-23 ("everybody just knew it was Apple"). Ex. 5, Mattos Inv. 145:16-147:1 (vast majority of shareholders knew LCEC was Apple). | Undisputed | |
| 42 | In late 2009, Mahabub attended a GenAudio shareholders' meeting in Seattle and told shareholders that "*he was positive that, supposedly I guess it was by the end of the year or something that Apple was going to be buying us out and we'd better get in now ….*" Ex. 39, Eldridge Inv. at 17:7 – 10 (Apr. 6, 2015). | Undisputed that Mahabub attended a GenAudio shareholders' meeting in Seattle and spoke to shareholders. Disputed as to the content of what Mahabub said because the witness's statement is speculative. | The testimony of the witness is not speculative. While the witness could not recall Mahabub's exact quote on the timing of the alleged "buyout," the witness was clear that Mahabub was "positive" that "Apple was going to be buying us out and we'd better get in now." <u>Ex. 39</u>, Eldridge Inv. at 17:7-10. |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 43 | As a result of Mahabub's statements at this meeting, shareholders purchased additional shares of GenAudio stock from Mahabub personally and referred new investors. *See* Attach. 1 to Bowen Dec. at rows 13-14 (reflecting a purchase of 88,000 and 80,000 shares with agreements dated of Nov. 15, 2009); Ex. 39, Eldridge Inv. at 17:1 – 19:9 (describing the share purchase process); Ex. 40 at 2 (Nov. 13, 2009 email reflecting an investor referring friends); Ex. 41 at 1 (Nov. 15, 2009 email from Mahabub to investor regarding buying stock before GenAudio is acquired). | Disputed. Objection pursuant to Fed. R. Evid. 801 *et seq.*: Ex. 40 is an email from outside investors Dean & Linda Eldridge and is inadmissible hearsay offered to prove Mahabub sold his personal shares and that outside investors referred new investors. | By making an admissibility objection and failing to provide a brief factual explanation of the reasons for their denial, with a specific reference to admissible evidence, Defendants have failed to comply with the Court's Practice Standards § III.E.4.b and c; therefore the SEC requests that this fact be deemed admitted. |
| 44 | After making these false statements to prospective investors, Mahabub, with the assistance of Mattos, sold Mahabub's personal shares of GenAudio to investors. Ex. 42 at 1; Ex. 43 at 2 (Mahabub writing, "Mattos brought in 225k, and I have brought in over 750K USD from previous round investors and some new ones"). | Disputed. The cited Exhibits do not support the proposition that Mahabub sold his personal shares of GenAudio to investors. Objection pursuant to Fed. R. Evid. 801 *et seq.*: Ex. 42 is an email from an outside investor, Donaghue, and is inadmissible hearsay offered to prove Mahabub sold his personal shares to investors. | In Exhibit 43 at 2, Mahabub explicitly states that personal shares have been sold. Defendants' hearsay objection is not a sufficient basis for denial because it fails to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible at trial," Fed. R. Civ. P. 56(c)(2), as required by the Court's Practice Standards III.E.4.c. |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 45 | Between November 2009 and April 2012, Mahabub offered and sold at least 3,391,300 shares of GenAudio stock to at least 85 investors, raising approximately $2.6 million ("Mahabub Sales"). Bowen Dec. at ¶ 7 and Attach. 1 at row 11. | Undisputed | |
| 46 | GenAudio mailed share certificates to Mahabub Sales investors. Ex. 8, Devine Dep. 162:10-18. | Undisputed | |
| 47 | No registration statement was filed or in effect for Mahabub's offers or sales of GenAudio securities. Ex. 1 2. | Undisputed | |
| 48 | On December 16, 2009, in response to Mahabub's November 28, 2009 email about a potential "deal" between Apple and GenAudio, Apple employee Hailey stated, in part, *"[w]e're making progress and building our story, but this is not something we can execute overnight. The business side of things would come into play after we have exec buy-in on the product side."* Ex. 44 at 2. | Disputed. *See* SOF ¶¶ 129, 143, 168; Objection pursuant to Fed. R. Evid. 801 *et seq.*: Ex. 44 is an email from Apple employee Hailey and is inadmissible hearsay offered to prove that no deal would be occurring anytime soon. | Defendants' cited SOFs do not dispute that this is an accurate quote from Hailey's email. Defendants' SOF ¶ 141 includes the same quote. Defendants' hearsay objection is not a sufficient basis for denial for the reasons stated in Reply SOF ¶ 44. Further, the email is also offered as evidence of the notice provided to Mahabub by Apple. |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 49 | On January 5, 2010, Hailey responded to another email from Mahabub and informed him that "*[w]ith respect to timeframe, we are pretty serious about looking at audio quality across the board and this will take time – definitely more than a couple of months.*" Ex. 45 at 2. | Disputed. *See* SOF ¶¶ 129, 143, 168; Objection pursuant to Fed. R. Evid. 801 *et seq.*: Ex. 45 is an email from Apple employee Hailey and is inadmissible hearsay offered to prove that no deal would be occurring anytime soon. | Defendants' cited SOFs do not dispute that this is an accurate quote from Hailey's email. Defendants' hearsay objection is not a sufficient basis for denial for the reasons stated in Reply SOF ¶ 44. Further, the email is also offered as evidence of the notice provided to Mahabub by Apple. |
| 50 | On February 12, 2010, before a Board meeting, Mahabub sent the Board false and altered emails that made it appear that he had met with Schiller who discussed a "*project … for Christmas product roll-out*"; that "*Apple is still very interested in licensing Astound for their products*"; and that Apple's employees were working towards getting a deal "*ok'd by the big man.*" *Compare* Ex. 46 at 1-2 to Ex. 47 at 1; *see also* Demo. 2 at 5. | Undisputed that the relevant emails in Exs. 46 and 47 forwarding the Tiscareno email identifies Jerry Mahabub as the sender, and the contents of these emails speak for themselves. | The fact should be deemed admitted. *See* Reply SOF ¶ 24. |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| **51** | At that February 12, 2010 Board meeting, Mahabub then provided a "*summary of the discussions with Apple*" and a valuation report, after which the Board agreed there was "*[t]he need for a Company stock offering … and Mr. Mahabub and[another Director] were directed to prepare a draft of a private placement memorandum for the Board's review ….*" Ex. 48 at 3. | Undisputed. | |
| **52** | On March 5, 2010, the Board approved the 2010 Offering. Ex. 49 at 1, ¶ 3. | Undisputed. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 53 | On March 10, 2010, Mahabub emailed 15 shareholders the valuation report that was to be included in the upcoming company stock offering, which reported the fair market value of GenAudio was above $1 billion, and offered to sell 250,000 of his personal shares at $0.50 per share while falsely representing, "*we are starting to discuss the business side with the LCEC, and I expect to have a very substantial licensing deal in place for their Christmas Product Rollout. . . .*" Ex. 50 at 3. | Disputed. The valuation report concluded GenAudio *technology* may be worth $1 billion under certain express conditions, which were assumed, and included cautionary language regarding those findings. Ex. 3 at 39. There was no finding the company, GenAudio, was worth $1 billion and Mahabub's statement makes it clear he is referring to the technology. Ex. 50 at 3. Further Mahabub clarifies that this number does not necessarily reflect the negotiated price for an acquisition or license. *Ibid.*; Additionally, Mahabub's representations were not falsely represented. Ex. 150, Mahabub Dep. 95:9-97:16, 143:24-144:1, 310:21-311:11; SOF ¶¶ 133-135, 138, 139, 141, 142, 147-152, 166, 168, 170-172, 174-175, 177. | Mahabub's representations were false for the reasons stated in SOF ¶¶ 21-23 and Reply SOF ¶¶ 21-23. |
| 54 | From approximately March 15, 2010 to August 31, 2010, GenAudio offered and sold at least 1,171,000 common shares of stock to more than 70 investors in various states, raising approximately $3,513,000 (the "2010 Offering"). *See* Answers ¶¶ 35, 78, 130; Ex. 3 at 1; Ex. 51 at 1-4; Ex. 8, Devine Dep. 136:4-19 (Devine prepared Ex. 51). | Undisputed. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 55 | No registration statement was filed or in effect for the securities transactions in the 2010 Offering. See Answers 130; Ex. 1 at 1. | Undisputed. | |
| 56 | GenAudio used the means of interstate commerce to offer and sell the 2010 Offering to prospective investors by, among other things, disseminating, via email, a private placement memorandum ("PPM") and letter signed by Mahabub dated March 15, 2010 (collectively, "2010 Offering Materials"). Answers ¶ 36, 135; Ex. 3; Ex. 52. | Undisputed. | |
| 57 | To complete the sales, Devine mailed the stock certificates to investors. Ex. 8, Devine Dep. 116:4-24, 120:11-121:16. | Undisputed. | |
| 58 | Mahabub was a necessary participant and substantial factor in the offers and sales made in the 2010 Offering because he assisted with the preparation of the 2010 Offering Materials, reviewed those Offering Materials, and was a member of the Board that approved those Offering Materials. Answers ¶ 37. | Undisputed | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 59 | During 2010, GenAudio used an investor relations firm to send email blasts to invite prospective investors to attend road shows for GenAudio. GenAudio did not maintain records of email recipients, blasts, or any research reports that were disseminated to prospective investors. Ex. 26, GenAudio Resp. to Request No. 5. | Disputed. The cited Ex. 26 does not state that GenAudio used an investor relations firm to send email blasts or that GenAudio didn't maintain records that were disseminated to prospective investors. | Exhibit 26 is GenAudio's discovery response that establishes that GenAudio did not maintain records related to Alan Stone or identifying investors to whom public email blasts were sent. Mahabub testified that he used an investment firm, Alan Stone, to locate investors through road shows. Ex. 224, Mahabub Inv. at 364:11-25, 367:11-369:6; 373:2-376:25 (discussing Ex. 54, which lists ten road shows). In his May 18, 2010 email, Mahabub admits to forwarding an email blast that went out to Alan Stone's contacts for the upcoming road show presentations. Ex. 225. In a September 6, 2010 email, Mahabub admits to raising $150,000 from strangers who attended the road show tour. Ex. 57, at JM005125, fourth paragraph. |
| 60 | During the 2010 Offering, Mahabub solicited potential investors at public presentations called "road shows." Ex. 54 at 1; Ex. 55 at 1, ¶ 6; Ex. 56 at 1; Ex. 57 at 5. | Undisputed. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 61 | GenAudio is unable to provide information as to the number or sophistication of investors it solicited to invest in its 2010 Offering. Ex. 53, GenAudio Resp. to Request No. 1 (GenAudio unable to locate and produce emails, metadata, or numbered PPMs evidencing investors solicited during the 2010 and 2011 Offerings); Ex. 8, Devine Dep. 94:10 – 95:1. | Undisputed. | |
| 62 | GenAudio did not have a set procedure to review whether investors completed the Confidential Subscriber Questionnaire ("Questionnaire") or to verify investor accreditation before it sent out the stock certificates and did not keep a list identifying its non-accredited investors. Ex. 8, Devine Dep. 123:5 -126:9; 127:25-128:19 (regarding 2010 Offering); Ex. 5, Mattos Inv. 42:25-43:13. | Disputed. Mattos reviewed the Questionnaires to ensure investor qualified as accredited and if Questionnaire incomplete, normally contact the investor to complete it. Ex. 6, Mattos Dep. 169:23-171:4. | GenAudio did not have an *effective* procedure to review Questionnaires and verify all investors were accredited. While Mattos testified that he generally reviewed the Questionnaires, he admitted to overlooking some Questionnaires that were not complete. Defendants did not keep a list identifying non-accredited investors. SOF ¶¶ 64, 65 and USOF ¶ 66. |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|-----|-----------|---------------------------|------------------------------|
| 63 | Beyond sending and receiving the Questionnaires, GenAudio did nothing to determine whether investors were accredited. *See* Ex. 2, Mahabub Dep. At 488:24 - 489:24 and 490:25 – 491:23; Ex. 6, Mattos Dep. 169:18 – 170:7 (addressing investor file documents) and 171:17-19; Ex. 8, Devine Dep. 127:25 – 128:3 and 178:14-19. | Disputed. Mattos reviewed the Questionnaires to ensure investor qualified as accredited and if Questionnaire incomplete, normally contact the investor to complete it. Ex. 6, Mattos Dep. 169:23-171:4. | |
| 64 | In connection with the 2010 Offering, at least one GenAudio investor wrote "N/A" on the portion of the Questionnaire that addressed accreditation and investment experience. Ex. 58 at 4-5. | Undisputed the Questionnaire has "N/A" written on a portion of the document. Disputed the document demonstrated the investor was unaccredited | Defendants do not dispute N/A was written in response to questions about accreditation, but dispute whether the document demonstrates the investor was unaccredited. This Questionnaire is the only evidence Defendants put forward on this investor's qualification. Without more evidence, GenAudio cannot establish it had a reasonable belief that the investor was accredited. |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 65 | In connection with the 2010 Offering, other GenAudio investors failed to complete the portion of the Questionnaire that addressed accreditation. *See* Ex. 59 at 4-5; Ex. 60 at 4-5; Ex. 61 at 4; Ex. 62 at 4; Ex. 63 at 4; Dec. of Marvin at ¶¶ 7-10 (May 5, 2017) (referring to Ex. 220, which is ECF No. 66-1 and contains documents substantially similar to Ex. 63). *See also* Ex. 2, Mahabub Depo at 468:1-11 (Mahabub does not know investor Marvin). | Undisputed as to the contents of the document as the document speaks for itself. Disputed the documents demonstrate investors were unaccredited. | Defendants do not dispute that some investors left portions of the Questionnaire blank, but dispute whether the documents demonstrate the investors were unaccredited. Without more evidence, GenAudio cannot establish it had a reasonable belief that the investors were accredited. Marvin testifies he was not accredited when he invested in the 2010 and 2011. ECF No. 84-89 ¶¶ 7-10. |
| 66 | Mattos admitted that he "overlooked" a few Questionnaires that were not completed. Ex. 6, Mattos Dep. 169:18 – 170:20. | Undisputed. | |
| 67 | GenAudio and Mahabub admitted in the 2010 and 2011 Offering materials that since 2003, the Company has sold securities to accredited and non-accredited 'friends and family' investors," which may not qualified for exemption from registration. Ex. 3 at 44-45; Ex. 4 at 53-54; Ex. 10 at 46; Ex. 11 at 52. | Disputed. The 2010 and 2011 Offering materials do not establish the selling of securities since 2003 only that the "company commenced operations in 2003." Ex. 3 at 44-45; Ex. 4 at 53-54; Ex. 10 at 46; Ex. 11 at 52. | GenAudio and Mahabub disclose in the PPMs that prior to the 2010 and 2011 Offerings, GenAudio sold securities to investors who were not accredited. The exact time frame of those sales is not relevant or in dispute. Ex. 3 at 44-45; Ex. 4 at 53-54. Defendants did not keep a list of the un-accredited investors. SOF ¶ 62 |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 68 | GenAudio was willing to accept investments from non-accredited investors. *See* Ex. 64 ("new investors are required to be accredited investors; however, those restrictions do not apply to current investors"); Ex. 65 ("any group investments on your family's behalf should be kept track [sic] internally. GenAudio cannot [sic] officially know anything about it due to SEC laws regulating unaccredited investors"). | Disputed. The cited evidence demonstrates GenAudio's allegiance to the accredited investor requirement. Ex. 64 (Rosenblatt was a prior investor already known to be accredited, thus the reference to new investors required to be accredited); Ex. 65 (Mattos acknowledging SEC regulations in reference to aggregate investment by family pooling). | Defendants do not dispute the statements in the email. Rather they argue about the conclusions to be drawn, and so this fact should be deemed admitted. Rosenblatt initially acquired shares in a transfer from another shareholder on 9/12/2005. *See* Ex. 226 at 2 (excerpt from GenAudio Shareholder List). He then acquired additional shares on 7/14/10 in the 2010 Offering. *Id.* at 4. GenAudio produced no accreditation Questionnaires related to Rosenblatt's purchases in either September 2005 or July 2010. |
| 69 | GenAudio did not provide an audited balance sheet to any investors in the 2010 Offering. Answers ¶ 137. | Undisputed. | |
| 70 | The 2010 Offering Materials included a March 15, 2010 cover letter that represented, *"[t]his offering is being conducted to provide bridge capital until we can 'ink' a deal with a large consumer electronics company (referred to as the 'LCEC' throughout the PPM)..."* that was emailed to investors Ex. 52. | Disputed that it was sent to prospective investors as the letter is addressed only to current shareholders to secure bridge capital. Ex. 14. | All GenAudio shareholders were also prospective investors, as GenAudio relied on its shareholder base to make repeated investments, as is evidenced by the 2010 and 2011 Offering Materials being sent to current shareholders. *See* Ex. 79 at 3 (the 2010 Offering "has been very successful thus far with the vast majority of investments coming from our existing shareholders .... Many of you have continued to invest over and over again ...."). Defendants also distributed the 2010 PPM to new investors. *See, e.g.*, Ex. 74 at 4 (Mahabub attaching a PPM to an email to a new investor). |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 71 | The 2010 Offering Materials also included a March 15, 2010 PPM in which GenAudio and Mahabub represented:<br><br>*[T]he Company is optimistic that the LCEC will eventually want access to our AstoundSound Technology for their products. It is unclear what structure such access would take, but the Company believes the LCEC would either (i) integrate a portion of our AstoundSound Technology, namely ASE, into multiple product lines through a licensing arrangement or (ii) acquire all of our AstoundSound Technology or, at least, that portion the LCEC deems necessary for its integration plans.*<br><br>Ex. 3 at 21 | Undisputed. | |
| 72 | In the 2010 Offering, GenAudio and Mahabub failed to inform investors that Apple and GenAudio had no negotiations to license GenAudio's technology or to acquire GenAudio or its technology. *See generally* Ex. 3; *supra* at SOF ¶¶ 20-23, 29, 101. | GA's Response:<br>Disputed. Mahabub testified he had a conversation with Isaac about licensing. Ex. 150, Mahabub Dep. 95:9-97:16. Mahabub also reasonably believed for *many* reasons that Apple was interested in acquiring its technology. *See, e.g.,* SOF ¶¶ 133, 134, 135, 138, 139, 141, 142, 147-165, 166, 168, 170-172, 174, 175, 177, 184-186. | The cited evidence does not dispute the fact that this omission occurred. *See also* Reply SOF ¶ 21-22. |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 73 | On March 19, 2010, Mahabub provided the GenAudio Team, including Mattos, with a copy of the March 15, 2010 cover letter that was sent to investors, touted an investment in GenAudio as a good investment, and encouraged them to assist GenAudio in raising money from investors by stating:<br><br>*Time to get some $$$ …. And someone would not want to invest at this stage in the game, or increase there [sic] shareholder position because why? There is no answer to this question … if any of you feel like helping out with this effort, I would certainly appreciate it. It's not like you are doing your friends and family a bad thing by getting them into GenAudio ….*<br><br>Ex. 9 at 1, 3. | Undisputed. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 74 | Two days later, on March 21, 2010, Mahabub sent the GenAudio Team, including Mattos, a false and altered email that made it appear as if he was communicating with Schiller; Schiller was "*hoping for – a fall product rollout*"; and Apple and Mahabub had discussed an *"embedded level integration process"*. *Compare* Ex. 66 at 1 to Ex. 67 at 1; *see also* Demo. 2 at 6. | Undisputed that the relevant emails in Exs. 66 and 67 identify Jerry Mahabub as the sender, and the contents of these emails speak for themselves. | The fact should be deemed admitted. *See* Reply SOF ¶ 24. |
| 75 | Mahabub also stated to the GenAudio Team, "*[l]et's get some fuel for the ship. Any help from all of you with this financing effort would be great.*" Ex. 66 at 1. | Undisputed. | |
| 76 | In early April 2010, Mahabub became aware of the scheduling of an internal meeting at Apple regarding GenAudio's technology. *See* Ex. 68 at 2 (Mahabub writing, "*[i]n an effort to get 'two thumbs up' from your meeting so we can continue to move forward …*"). 77. | Disputed. Mahabub was aware of the internal meeting long before April 2010. Mahabub and Tiscareno worked on demos to be used at that meeting in late 2009. Ex. 203 (Tiscareno and Mahabub discussing with Mahabub the preparation of demos to be shown to "the man", Ex. 152, Tiscareno Dep. 140:18-141:21 (Tiscareno confirming Ex. 203 relates to preparation of demos to be shown at the internal meeting). | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 77 | In correspondence between Mahabub and Tiscareno, neither indicated that the meeting would involve Jobs, Schiller, or Cook; instead, Mahabub referenced Tiscareno's upcoming meeting with an "*exec.*" *Id.* at 1; Ex. 69; Ex. 70; Ex. 71 at 2. | Disputed. Mahabub and Tiscareno used several terms in their correspondence to describe the individual who would receive the presentation on May 6, 2010, including "the exec.", "the big exec.", and "the man." *See* SOF ¶ 155. Mahabub also testified Tiscareno and Hailey told him the meeting was with "Jobs." SOF ¶ 157. Tiscareno and Hailey may have intended to tell him the meeting was with "Joz." SOF ¶ 156. Prior to this litigation, Mahabub did not know anyone named "Jozwiak" or "Joz" worked at Apple. | Please see Argument §§ IV.B and IV.C regarding the reasonableness of Mahabub's conduct and his scienter. |
| 78 | On April 8, 2010, Mahabub sent a few members of the GenAudio Team false and altered emails that made it appear that Tiscareno stated "*Phil [Schiller] let us know earlier that this might be postponed until early next week. Apparently Steve [Jobs] is planning on going out of town with his family for the weekend*" and that Mahabub stated "*[t]oo bad … although, that might be better given that Steve will be relaxed from having a weekend getaway with his family. Perhaps this is why Phil is rescheduling for next week.*" *Compare* Ex. 72 at 1-2 to Ex. 73 at 1; *see also* Demo. 2 at 7-9. | Undisputed that the relevant emails in Exs. 72 and 73 identify Jerry Mahabub and Victor Tiscareno as the sender, and the contents of these emails speak for themselves. | Please see Argument §§ IV.B and IV.C regarding the reasonableness of Mahabub's conduct and his scienter. |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 79 | On April 30, 2010, while he was attending a conference for investment bankers and broker-dealers, Mahabub sent prospective investors an email that falsely stated that the LCEC was "*looking to acquire GenAudio's tech for integration into their entire lineup of product offerings*" and "*we are now waiting to when [sic] we will initiate negotiations, pending the CEO of the LCEC to approve the integrated product rollout strategy and the technical implementation strategy that will be presented to the CEO next week!!!*" Ex. 74 at 4. | Disputed. The email was sent to one investor only. Other than Cohen, Mahabub only speculates as to who else may have received the email. Ex. 150, Mahabub Dep., 200:12-202:10. Mahabub's email was not false as he believed the statements were reasonable under the circumstances. *Id.*, 205:2-19 (reasonable to believe Apple looking to acquire GenAudio technology for integration); 207:4-20 (reasonable to believe awaiting CEO approval of integrated product rollout strategy and technical implementation strategy). *See* SOF ¶ 142, 147, 149, 150, 151, 153-159. | The record does not reflect that the "email was sent to one investor only." Instead, it reflects that Mahabub cannot recall to whom he sent the email. Ex. 150, Mahabub Dep. 200:12 – 202:10. Mahabub's email was false, as the CEO of Apple was not involved in any aspect of Apple's work with GenAudio. *See* USOF ¶ 35. Please see Argument §§ IV.B and IV.C regarding the reasonableness of Mahabub's conduct and his scienter. |
| 80 | After receiving the email, an investor purchased 5,000 shares for $15,000. *See id.* at 1-2; Ex. 51 at 2, row 4 (Cohen, shares issued on May 20, 2010). | Disputed. Objection pursuant to Fed. R. Evid. 801 *et seq.*: The email from the investor in Ex. 74 and Ex. 51 are inadmissible hearsay as an out of court statement offered to prove the truth of the matter asserted. The email states, "Thanks, I will mail the subscription agreement" and is being offered to prove a subscription agreement was sent. | Exhibit 51 is a business record of GenAudio that was authenticated by Devine. *See* USOF ¶ 54. The email is not offered to prove the subscription agreement was sent, but that the investor was influenced by Mahabub's false statements and purchased securities. Defendants' hearsay objection is not a sufficient basis for denial for the reasons stated in Reply SOF ¶ 44. |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 81 | On May 5, Mahabub sent Tiscareno materials that he suggested Tiscareno use at the meeting with "*the exec*," and he offered to attend the meeting; however, Tiscareno declined the offer, explaining "*this is not that kind of demo. [Hailey] and I are pitching this as a concept ….*" and "*[o]nce we get the go ahead that this is a great idea, then the questions will be, 'well, what about the other technologies, have we reviewed them? etc.' Then we sort of start over internally…. We have to get to first base….*" Ex. 70; Ex. 71 at 1 (emphasis added). | Disputed. Mahabub and Tiscareno used several terms in their correspondence to describe the individual who would receive the presentation on May 6, 2010, including "the exec.", "the big exec.", and "the man." *See* SOF ¶ 155. Mahabub also testified Tiscareno and Hailey told him the meeting was with "Jobs." SOF ¶ 157. Tiscareno and Hailey may have intended to tell him the meeting was with "Joz." SOF ¶ 156. Prior to this litigation, Mahabub did not know anyone named "Jozwiak" or "Joz" worked at Apple. Objection pursuant to Fed. R. Evid. 801 *et seq.*: Ex. 71 is an email from Apple employee Tiscareno and is inadmissible hearsay. | None of the cited evidence or argument disputes the stated fact. Defendants' hearsay objection is not a sufficient basis for denial for the reasons stated in Reply SOF ¶ 44. |
| 82 | In the morning and early afternoon of May 6, 2010, Mahabub sent emails to the GenAudio Team regarding the upcoming meeting at Apple, which falsely represented that Schiller and Jobs were involved. Ex. 75 at 1-2. | Disputed. Mahabub honestly and reasonably believed Schiller and Jobs were involved. Mahabub Decl., ¶ 23-24; *See* SOF ¶¶ 142, 147, 149, 150, 151, 153-159. | These statements were false. USOF ¶¶ 26, 35. Please see Argument §§ IV.B and IV.C regarding the reasonableness of Mahabub's conduct and his scienter. |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 83 | Late in the evening of May 6, 2010, Mahabub sent the GenAudio Team, including Mattos, a purported "transcription" of a phone call between him and Tiscareno. After repeatedly instructing that the email be deleted, Mahabub set forth his purported conversation with Tiscareno, which included representations that Tiscareno stated that "*Steve thought the technology was so extraordinary …. I believe he wants to explode this technology into the world*" and "*[Steve] instructed all of us to be in a no radio period*" and "*I can say that [Steve] is anxious to meet you in person when we have things figured out on our end.*" Mahabub then concluded the email by stating "*[a]t least we have some time to put our strategy together and get our pawns in order for the asset acquisition or licensing battle.*" Ex. 33 at 2-5. | Undisputed that the relevant emails in Ex. 33 identifies Jerry Mahabub as the sender, and the contents of these emails speak for themselves. | The fact should be deemed admitted. *See* Reply SOF ¶ 24. |
| 84 | Mahabub then forwarded the email that contained the false "transcription" to an investor. *Id.* at 1. | Undisputed that Mahabub forwarded an email to Skluzak. Objection pursuant to Fed. R. Evid. 801 *et seq.*: The email from Tiscareno in Ex. 33 is inadmissible hearsay as an out of court statement offered to prove the truth of the matter asserted in the email that the transcription was false. | Defendants' hearsay objection is not a sufficient basis for denial for the reasons stated in Reply SOF ¶ 44. |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 85 | On or about May 21, 2010, the investor purchased 40,000 shares of GenAudio stock for $120,000 through the 2010 Offering. Ex. 51 at 2, row 6 (Skluzak IRA). | Undisputed. | |
| 86 | The investor purchased GenAudio stock in May of 2010 because Mahabub orally represented to the investor that Jobs "*stated to Mr. Mahabub that he was very impressed with [GenAudio's] technology,*" and because "*the level of interaction Mr. Mahabub was having at Apple Computer was extensive and high level.*" Ex. 37, Skluzak Dep. at 29:12 – 30:1. | Disputed. Ex. 218, Skluzak Dep., 59:23-60:5 ("I had already made my determination ... prior to this date, sometime in April, that I was going to invest.") Additionally, Mahabub did not tell the investor (Skluzak) that he had personally spoken with Jobs, or that Jobs personally told him that Jobs was very impressed with GenAudio's technology. Rather, Mahabub told Skluzak that Tiscareno told him that Jobs was shown the technology and that he liked it. Tiscareno might have said "Joz" or "Jaws," in reference to another Apple executive named Jozwiak. But, since Mahabub had never heard of "Jaws" before, and until this litigation didn't know that an executive by that name even existed, his understanding was that Tiscareno was referring to Steve "Jobs." Mahabub Decl. ¶¶ 24, 28. | Please see Argument §§ IV.B and IV.C regarding the reasonableness of Mahabub's conduct and his scienter. |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 87 | Further, receipt of the false "transcript" "*affirmed [the investor's] willingness to purchase 40,000 shares of stocks*" in the 2010 Offering, because "*[i]t just confirmed that the decision I had made to purchase the stocks was a good decision.*" *Id.* at 134:9-14 (addressing Ex. 33). | Disputed. Skluzak did not rely on the "transcription" to purchase shares as he had purchased prior to receiving the email from Mahabub. Ex. 218, Skluzak Dep., 59:23-60:5 ("I had already made my determination ... prior to this date, sometime in April, that I was going to invest.") | The cited evidence does not contradict the stated fact. Skluzak did testify that the transcription confirmed the decision he had made. |
| 88 | Tiscareno has explained that the "transcription" was false, stating: "*I never discussed anything about Steve Jobs or any other board member at Apple. I never discussed this with Steve Jobs. Period!*" and "*This letter is pure fabrication.*" Ex. 33 at 1. | Disputed. Objection pursuant to Fed. R. Evid. 801 *et seq.*: The email from Tiscareno in Ex. 33 is inadmissible hearsay as an out of court statement offered to prove the truth of the matter asserted in the email that Tiscareno never discussed anything with Steve Jobs and that the transcription was false. | Defendants' hearsay objection is not a sufficient basis for denial for the reasons stated in Reply SOF ¶ 44. |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 89 | In May 2010, Mahabub and GenAudio created an investor presentation that was emailed to investors; during the presentation, Mahabub falsely stated that "*the CEO of the LCEC finally met with senior marketing and technical management and we have the green light to move forward.*" Ex. 76 at 54:8-10 (emphasis added). *See also* Ex. 54 (email transmitting presentation). The presentation and email also discussed GenAudio's 2010 Offering and encouraged investors to review the PPM and attached valuation report. *See* Ex. 76 at 54-55; Ex. 54 at 1. | Disputed. Mahabub reasonably believed his statement about the LCEC's CEO was true. *See* SOF ¶¶ 142, 147, 149-151, 153-159. | Please see Argument §§ IV.B and IV.C regarding the reasonableness of Mahabub's conduct and his scienter. |
| 90 | On July 2, 2010, Mahabub emailed the GenAudio Team false and altered emails that made it appear that Jobs wanted to meet with Mahabub and Jobs was involved in evaluating GenAudio's technology. *Compare* Ex. 77 to Ex. 78; *see also* Demo. 2 at 10-11. | Undisputed that the relevant emails in Ex. 77 and 78 identify Jerry Mahabub and Victor Tiscareno as the sender, and the contents of these emails speak for themselves. | The fact should be deemed admitted. *See* Reply SOF ¶ 24. |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 91 | On or about August 1, 2010, GenAudio sent investors a letter that was electronically signed by Mahabub and stated, in part, that the LCEC's CEO had requested a "*hand-shake*" meeting, and "*I can say that we are still moving forward with confidence and plan on carrying it through all the way to the end, which could result in a significant revenue generating license deal or the potential for acquisition of the technology or the company.*" Ex. 79 at 2; Answers ¶ 72 (admitting Mahabub sent a letter to GenAudio shareholders on or about August 1, 2010). | Undisputed. | |
| 92 | Mahabub also explained in this letter that the 2010 Offering would be closing at the end of August, "*and it has been very successful thus far with the vast majority of investments coming from our existing shareholders.… Many of you have continued to invest over and over again….*" Ex. 79 at 3. | Undisputed. | |
| 93 | The 2010 Offering concluded on or about August 31, 2010 with GenAudio selling a total of 1,171,000 common shares. *See* ¶ 54 (above). | Undisputed. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 94 | In 2010, using money raised from investors, GenAudio provided Mahabub with compensation and expense reimbursement, including loaning him $48,401 and paying him $50,415 in reimbursement for his home, $60,000 in rent for a sound studio, and $416,154 in salary. *See* Ex. 80; Ex. 8, Devine Dep. at 276:22 – 281:25 (discussing Ex. 80). *See also* Ex. 3 at GA000634 (Balance Sheet as of Dec. 31, 2009, reflecting approximately $28,000 in bank accounts prior to the 2010 Offering) | Undisputed. | |
| 95 | On or about September 23, 2010, Mahabub attended a demonstration at Apple with Dr. Andrew Bright, who was an Apple employee with a Ph. D. in Acoustics, Tiscareno, and Isaac. *See* Ex. 81 at 1. | Undisputed that Mahabub attended a demonstration at Apple. Objection pursuant to Fed. R. Evid. 801 *et seq.*: The email from Tiscareno in Ex. 81 is inadmissible hearsay as an out of court statement offered to prove the truth of the matter asserted in the email. | Defendants' hearsay objection is not a sufficient basis for denial for the reasons stated in Reply SOF ¶ 44. |
| 96 | The meeting did not go well due to an argument between Mahabub and Bright, and was Mahabub's last substantive meeting with Apple. *See id.*; Ex. 14, Tiscareno Inv. 68:14-71:7; Ex. 18, Tiscareno Dep. 232:5-9; 255:10-21 (regarding Ex. 81 and Ex. 82); Ex. 19, Isaac Dep. 146:1-147:2; 158:10-159:18. | Disputed. The meeting was not Mahabub's last substantive meeting with Apple. Mahabub continued to work substantively with both the iPhone/iPod/iPad division and the Mac division, and had many more substantive discussions with them in-person, by email, and by phone. SOF ¶¶ 134, 174, 175, 179-181, 184. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 97 | On or about December 8, 2010, GenAudio sent shareholders a letter that was drafted and electronically signed by Mahabub and in a section entitled "The LCEC," stated, in part, "*I met with their CEO and gave him a demo of our technology, and he stated, 'I really like your technology and look forward to seeing you again in the future. Although they are moving very slow, we are still on their radar screen, and remain very optimistic for a deal in the second or third quarter of 2011.*" Ex. 83 at 11. | Undisputed. | |
| 98 | Mahabub did not meet with the CEO and give him a demo of any technology. Ex. 15, Mahabub Inv. 507:9 -19 (addressing Ex. 83). *See also* Ex. 18, Tiscareno Dep. 323:21 – 324:12. | Undisputed. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 99 | On February 26, 2011, GenAudio and Mahabub sent shareholders a progress report that advised:<br><br>*Although my primary contact has recently retired from the LCEC, . . . he advised me that his replacement would continue to promote and push the technology in an effort to consummate a significant transaction. . . . We have been working with the LCEC for over 2 years now and while progress has been slower than we would like, they have not cut us loose and continue to be very interested in integrating our technology across their entire line-up of product offerings.*<br><br>Ex. 84 at 15-16. | Undisputed. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 100 | On March 29, 2011, GenAudio and Mahabub, through Mattos, sent GenAudio's shareholders an email about "The LCEC" and stated that GenAudio would be signing a new set of "*evaluation and development*" agreements with the LCEC, which would "*completely prohibit*" Mahabub and GenAudio from disclosing any further information about the LCEC, or even using the term "LCEC." Mahabub then explained, "*[a]ll references to the LCEC will be deleted from the business plan section of the new offering*" and requested "*please refrain from asking the GenAudio team or myself any questions about the LCEC.*" Mahabub told shareholders about a new offering to raise up to $2.1 million at $3.00 per share. He then concluded: "*Believe me when I tell all of you that I wish I could disclose what is going on, however, the fact of the matter is I cannot.*" Ex. 85 at 5-6. | Undisputed. | |
| 101 | GenAudio never signed "evaluation and development" agreements with the LCEC. Ex. 2, Mahabub Dep. 401:10-15; 402:20-404:6. | Undisputed. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 102 | From April 2011 to April 2012, GenAudio offered $2,100,000 of common shares of GenAudio and sold at least 330,000 shares to at least 20 investors in various states, raising approximately $990,000. Answers ¶¶ 94; 131; Ex. 4 at 1; Ex. 51 at 5-6. | Undisputed. | |
| 103 | From April 2011 to April 2012 GenAudio offered and sold GenAudio stock when no registration statement was filed or in effect for the transactions ("2011 Offering"). Answers ¶ 131. | Undisputed. | |
| 104 | GenAudio used telephones, the Internet, and the mails in connection with the 2011 Offering. Answers 135. | Undisputed. | |
| 105 | GenAudio and Mahabub solicited prospective investors for the 2011 Offering through the March 29, 2011 email to shareholders (see ¶ 98 above), a letter to investors electronically signed by Mahabub, and a PPM dated April 22, 2011 ("2011 Offering Materials") that was emailed to investors. *See* Answers ¶¶ 95-96; Ex. 86; Ex. 4. | Disputed. Ex. 85, which contains the March 29, 2011 email to shareholders, makes it clear "the new offering [PPM of April 22, 2011] will be limited to our existing accredited shareholders, and we plan on raising up to 2.1 MM USD at 3.00 USD per share." Ex. 85, p.6. | All GenAudio shareholders were also prospective investors. *See* Reply SOF ¶ 70. |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 106 | Mahabub was a necessary participant and substantial factor in the 2011 Offering. He assisted with the preparation of the 2011 Offering Materials, reviewed those Offering Materials, and was a member of the Board that approved those Offering Materials. Answers ¶ 96. | Undisputed. | |
| 107 | During the 2011 Offering, Mahabub solicited potential investors at public presentations he called "road shows." Ex. 87 at 5 (investor writing, "at the SEA roadshow I was told GenAudio was in great need of Cash or things could get ugly by May"). | Disputed. Objection pursuant to Fed. R. Evid. 80 *et seq.*: Ex. 87 is an email from an outside investor and is inadmissible hearsay offered to prove that potential investors were solicited during road shows. | Defendants' hearsay objection is not a sufficient basis for denial for the reasons stated in Reply SOF ¶ 44. |
| 108 | GenAudio is unable to provide information about to the number or sophistication of investors it solicited to invest in the 2011 Offering. Ex. 53, Resp. to Request No. 1 (GenAudio unable to locate and produce emails, metadata, or numbered PPMs evidencing investors solicited); Ex. 8, Devine Dep. 94:10 – 95:1. | Undisputed. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 109 | During the 2011 Offering, GenAudio did not have a set procedure to review whether investors completed the Questionnaire and provided information demonstrating an investor was accredited before it sent out the stock certificates and did not keep a list identifying its non-accredited investors. Ex. 8, Devine Dep. 177:14-178:24 (regarding 2011 Offering); Ex. 5, Mattos Inv. 42:25-43:13. | Disputed. Mattos reviewed the Questionnaires to ensure investor qualified as accredited and if Questionnaire incomplete, normally contact the investor to complete it. Ex. 6, Mattos Dep. 169:23-171:4. | *See* Reply SOF ¶ 62. |
| 110 | Beyond sending and receiving the Questionnaires, GenAudio did nothing to determine whether investors were accredited. *See* Ex. 2, Mahabub Dep. at 488:24 - 489:24 and 490:25 – 491:23; Ex. 6, Mattos Dep. 169:18 – 170:7 (addressing investor file documents) and 171:17-19; Ex. 8, Devine Dep. 127:25 – 128:3, 178:14-19. | Disputed. Mattos reviewed the Questionnaires to ensure investor qualified as accredited and if Questionnaire incomplete, normally contact the investor to complete it. Ex. 6, Mattos Dep. 169:23-171:4. | GenAudio presents no evidence that it contemporaneously obtained information about the status of investors' accreditation aside from the Questionnaires, some of which were not properly completed. For the Questionnaires marked "N/A" or that were blank, GenAudio did not follow up. To the contrary, investor Marvin was not accredited when he purchased in the 2010 and 2011 offerings. SOF ¶ 111, Ex. 63 at 9, 14, 19 and 24; Marvin Dec., ECF No. 84-89 ¶ 7-10. |
| 111 | At least one investor who invested in the 2011 Offering on multiple occasions repeatedly failed to complete the portion of the Questionnaire that addressed accreditation. *See* Ex. 63 at 9, 14, 19, and 24. | Undisputed as to the contents of the document as the document speaks for itself. Disputed the documents demonstrate investors were unaccredited. | Investor Marvin left his Questionnaire blank and was not accredited. SOF ¶ 111, Ex. 63 at 9, 14, 19 and 24; Marvin Dec., ECF No. 84-89 ¶ 7-10. |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 112 | Mattos admitted that he "overlooked" a few Questionnaires that were not completed. Ex. 6, Mattos Dep. 169:18 – 170:20. | Undisputed. | |
| 113 | GenAudio did not provide an audited balance sheet to any investors in the 2011 Offering. Answers ¶ 137. | Undisputed. | |
| 114 | On April 22, 2011, GenAudio and Mahabub sent investors the 2011 Offering materials. As noted in the March 29, 2011 email, the Offering materials omitted information about Apple or "the LCEC." *See generally* Ex. 4 and Ex. 86. | Disputed. Ex. 4 and Ex. 86 do not support this statement of fact as neither is an email dated March 29, 2011. | These documents show that GenAudio and Mahabub sent investors the 2011 Offering materials on April 22, 2011. Ex. 4 and Ex. 86. As represented in Mahabub's March 29, 2011 email, the 2011 PPM omits information about Apple or the LCEC. *See* USOF ¶ 100 & Ex. 85. Defendants do not present evidence to dispute this fact. |
| 115 | In the 2011 Offering Materials, Defendants did not inform investors that Mahabub's substantive communications with Apple personnel were almost always limited to mid-level engineering and marketing employees. *See supra*, SOF ¶¶ 17-18, 25-26, 31-35. | Disputed. Mahabub met with some senior Apple personnel. Mahabub also reasonably believed Tiscareno was a senior Apple employee. SOF ¶¶ 170, 171. | Defendants do not dispute the omission of this information; rather, they argue about the relevance and actionability of the omission. Please see Argument § IV.C for a discussion of the materiality of the omission. |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 116 | In the 2011 Offering Materials, Defendants did not inform investors that Apple and GenAudio had no negotiations to license GenAudio's technology or to acquire GenAudio or its technology. *See supra*, SOF ¶¶ 23, 29. | Disputed. *See* response to SOF ¶¶ 23, 29. | Defendants do not dispute the omission of this information; rather, they argue about the relevance and actionability of the omission. Please see Argument § IV.C for a discussion of the materiality of the omission. *See* Reply to SOF ¶¶ 21-22. |
| 117 | In the 2011 Offering Materials, Defendants did not inform investors that in September 2010, Mahabub conducted a demonstration to Apple personnel that went poorly. *See supra*, SOF ¶¶ 95-96. | Disputed. *See* response to SOF ¶¶ 95-96. | |
| 118 | In the 2011 Offering Materials, Defendants did not inform investors that GenAudio had not signed a new set of "evaluation and development" agreements with the LCEC. *See supra*, SOF ¶¶ 100-101. | Undisputed. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| **119** | In 2011, using money raised from investors, GenAudio provided Mahabub with compensation and expense reimbursement, including loaning him $37,535 and paying him $47,940 in reimbursement for his home, $120,000 in rent for a sound studio, and $192,308 in salary. Ex. 80. *See also* Ex. 4 at GA004807 (Financial Statement as of March 31, 2011, reflecting approximately $18,000 in bank accounts prior to the 2011 Offering). | Undisputed. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|---|---|---|---|
| 120 | Investors received and reviewed GenAudio's Offering Materials. Ex. 88, Elliott Dep. 34:19-35:22 and 65:25-66:5 (Jan. 18, 2017) (discussing 2010 PPM); Ex. 36, Skluzak Inv. 50:21-52:7 (2010 Offering) and 162:9-163:7 (2011 Offering). | Disputed. The statement is accurate only as to two investors – Elliot and Skluzak. Further, Plaintiff relies on this statement to support its assertion that "Defendants misled reasonable investors to believe that Apple was interested in either acquiring GenAudio, or acquiring or licensing its technology, facts that are obviously material to the reasonable investment decision. […] Moreover, the false and misleading statement and omissions were important to GenAudio's investors and influenced their investment decisions." (Motion for Summary Judgment at 37.) The cited portions of the transcript, however, never mention Apple or any misrepresentation regarding Apple. The cited portions only affirm that Elliot and Skluzak received and reviewed Offering Materials. | The SEC relies on this statement to support "[m]oreover, the false and misleading statement and omissions were important to GenAudio's investors and influenced their investment decisions." Mot. at 37. The false statements and omissions within the Offering Materials are discussed in SOF ¶¶ 70-72 and 115-118. Defendants provide no evidence to dispute this fact or to support their assertion that "[t]he statement is accurate only as to two investors …." By failing to provide a brief factual explanation of the reasons for their denial of this fact, with a specific reference to admissible evidence, Defendants have failed to comply with the Court's Practice Standards § III.E.4.b; therefore the SEC requests that this fact be deemed admitted. |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|-----|-----------|---------------------------|------------------------------|
| 121 | GenAudio's and Mahabub's shareholder updates were important to investors. *See* Ex. 39, Eldridge Inv. 37:15 – 38:2 (explaining he purchased additional shares because of shareholder updates regarding Apple); Ex. 38, Elliott Inv. 25:19-27:2 (based on Mahabub's representations, understood Mahabub met Jobs and there were ongoing negotiations with Apple); Ex. 29, Bobak Inv. 31:16-22 and 74:6-24 (after updates came out, shareholders would ask Bobak if they should invest additional money). | Undisputed that the testimony is as cited. Disputed that "investors" applies to more than Eldridge, Elliot, and Bobak. Objection pursuant to Fed. R. Evid. 801 *et seq.*: statements by other people to Bobak are inadmissible hearsay. | |

| SOF | SEC's SOF | Defs.' Resp. to SEC's SOF | SEC's Reply to Defs.' Resp. |
|-----|-----------|---------------------------|------------------------------|
| 122 | Investors purchased shares from Mahabub and GenAudio based on representations about Apple's alleged dealings with GenAudio, including Mahabub's oral representations. *See* Ex. 39, Eldridge Inv. 16:24-19:9 and 30:11-31:18; Ex. 37, Skluzak Dep. at 29:12-30:4. *See also* Ex. 89, Herdt Inv. 23:25-24:17 and 29:14-30:8 (Apr. 10, 2015) | Disputed because, at least from Mahabub's and GenAudio's perspective, none of the referenced stock purchases were due to a knowing dissemination of information to people who would buy stock. First, at the time these purchases occurred, GenAudio's non-disclosure agreement ("NDA") with Apple was in effect. Mahabub Decl. ¶ 12; Ex. 91. Therefore, any information related to GenAudio's relationship with Apple was confidential and should not have been used as a basis for purchasing GenAudio stock (i.e., it was insider information). Second, as to Eldridge specifically, he did not hear about Apple from Mahabub. Eldridge first heard about Apple possibly being interested in GenAudio in 2009 from his son, Derek Eldridge, who heard it from Jim Mattos. Ex. 95, Eldridge Inv. 23:9–24:13. *See also* Ex. 93, Mattos Dep. 129:5–10, 131:4–15 (corroborating Eldridge's testimony and acknowledging that Derek Eldridge "was one of [his] best friends" and they discussed Apple). | Defendants included information about GenAudio's dealings with Apple in Offering Materials, investor updates, and other direct investor communications. *See, e.g.*, USOF ¶¶ 40-41, 71, 91, 97, 99-100 and SOF ¶ 42, 70, 79, 89. Defendants' attempt to claim that GenAudio's victim investors engaged in wrong-doing is disingenuous and should be rejected. It is irrelevant that Mr. Eldridge heard about Apple through his son's communications with Mattos – the GenAudio employee responsible for soliciting investors – and not Mahabub. This bolsters the fact that investors purchased shares based on information regarding GenAudio's dealings with Apple. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| 123 | GenAudio's discussions with Apple regarding GenAudio's AstoundSound technology began in late 2006. Ex. 151; Ex. 152, Tiscareno Dep. 46:21-47:1. | Undisputed. |
| 124 | GenAudio had separate discussions with several separate product divisions at Apple: both the iPhone/iPod/iPad division and the Macintosh (or "Mac") division. Tiscareno served as GenAudio's primary point of contact for the iPhone/iPod/iPad division, and Isaac was the primary person working with GenAudio from the Mac division. Ex. 170, Isaac Inv. 13:17-14:2. | Undisputed. |
| 125 | When vendors contact Apple to engage in discussions of the vendors' technology, the ultimate goal of those discussions from the vendor's perspective is to reach an agreement with Apple to buy that technology, either through a licensing agreement, or a partnership/ acquisition, and the purpose from Apple's perspective also is the potential for such an agreement. Ex. 152, Tiscareno Dep. 30:14-23; 50:14-51:3; Ex. 171, Hailey Inv. 32:23-33:4. | Undisputed. |
| 126 | Here, from the beginning of the discussions between GenAudio and Apple, Mahabub made clear to Apple that his goal was to reach a licensing agreement or acquisition of GenAudio's technology. Ex. 172 at 2; Ex. 173, Ex. 152, Tiscareno Dep. 70:23-71-7. | Undisputed. |
| 127 | GenAudio and Apple executed a Non-Disclosure Agreement in July 2009. Mahabub Decl. ¶ 12. | Undisputed. |
| 128 | By August 2009, Tiscareno and Mahabub were working closely together regarding GenAudio's technology and the two communicated frequently. Ex. 152, Tiscareno Dep. 118:14-16, 120:5-8; Ex. 185 ("I . . . feel that we have become friends . . . ."). | Undisputed. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| 129 | Mahabub repeatedly wrote to his contacts at Apple regarding his view that most of the work needed to implement GenAudio's technology into Apple products was completed and that GenAudio's technology could be included quickly into Apple products for sale to consumers. For example, in September 2009, Mahabub told Tiscareno that as of September 2009, the work needed to implement GenAudio's technology into Apple's products was "already for the most part done. . . . [I]t is in fact a very real and attainable goal for X-Mas product rollout if we work hard and fast[]!") Tiscareno did not tell Mahabub that he disagreed with that view, which further encouraged Mahabub to believe his statements were correct. Ex. 189; Ex. 152, Tiscareno Dep. 127:10-20, 128:20-24 ("Q: Did you talk to Mr. Mahabub about whether you agreed with that statement? . . . A. No, I never called him on those things."); 130:5-8; 130:25-131:8; 134:10-16 (regarding Mahabub's frequent comments of this nature). | Disputed that Tiscareno's failure to respond to any of Mahabub's communications "encouraged Mahabub to believe his statements were correct." Please see Argument §§ IV.B and IV.C regarding the reasonableness of Mahabub's conduct and his scienter. |
| 130 | When Mahabub wrote to Tiscareno in September 2009 that "[I]t is in fact a very real and attainable goal for X-Mas product rollout if we work hard and fast[]!", Ex. 189, Tiscareno testified he thought Mahabub really appeared to believe in GenAudio's prospects for reaching a deal with Apple. Ex. 152, Tiscareno Dep. 131:14-132:7. | Undisputed. |
| 131 | In September 2009, Mahabub also wrote to Isaac, his primary contact in Apple's Mac division, regarding his optimism that Apple's interest in, and evaluation of, GenAudio's technology was sufficiently advanced that a deal between Apple and GenAudio could be imminent. Mahabub wrote, "I hope we can get this done on the fast track – potentially for inclusion in Apple's X-Mas product rollout strategy?" Ex. 192 at 13. Isaac testified he did not read this portion of Mahabub's email and did not respond to it, nor did he tell Mahabub that he disagreed with Mahabub's view. Ex. 169, Isaac Dep. 71:13-72:11. | Undisputed. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| 132 | On November 3, 2009, Mahabub also wrote Tiscareno, his primary contact in Apple's iPhone/iPod/iPad division, and again expressed optimism and belief that a deal between Apple and GenAudio would be completed in the short term. Mahabub said, "Hopefully Mac Division signs off on this and we can get moving on to the next step, especially if there is any hope of having this done by MacWorld from the Marketing side, it would only make sense that we start to figure out the MacWorld deal structure between Apple and GenAudio sooner rather than later." Ex. 193. MacWorld is a conference that was held each year in January, so Mahabub was suggesting a transaction could be completed sufficiently quickly for GenAudio's technology to be integrated into Apple products and on the market by January, three months later. Ex. 152, Tiscareno Dep. 143:1-12. Tiscareno did not respond to Mahabub's comment, and he did not tell Mahabub his statement about the short timeline for a possible deal was unrealistic. Ex. 152, Tiscareno Dep. 144:10-16, 145:1-12. | Disputed. The cited evidence also does not support the arguments that Mahabub "again expressed optimism and belief that a deal between Apple and GenAudio would be completed in the short term" or "Mahabub was suggesting a transaction could be completed sufficiently quickly for GenAudio's technology to be integrated into Apple products and on the market by January, three months later." The email refers to having an undefined "this" completed "from the Marketing side" by MacWord and reflects Mahabub's belief that "it would make sense _that we start_ to figure out the deal structure between Apple and GenAudio sooner rather than later." Ex. 193 (emphasis added). |
| 133 | By November 2009, the discussions between GenAudio and Apple regarding GenAudio's technology were extensive. Ex. 152, Tiscareno Dep. 152:2-154:14 (Tiscareno saying there were "a lot" of communications with GenAudio by November 2009). | Disputed as to the characterization that discussions with Apple were "extensive." Mahabub ultimately engaged in "fairly extensive" communications with Tiscareno; however, he only met with Isaac three or four times, met with Hailey two to four times over the course of approximately a year, and never met with Schiller, Cook, or Jobs regarding GenAudio. Ex. 152, Tiscareno Dep. 267:20 – 23; Ex. 17, Isaac Inv. Tr. 14:16 – 20; Ex. 16, Hailey Inv. Tr. 16:15 – 22; USOF ¶¶ 26, 32, 34. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| 134 | By November 2009, Mahabub had met *in-person* with Apple personnel at Apple's offices at least 10 times. Ex. 153 (prepared during testimony of Victor Tiscareno to reflect the dates of at least 15 in-person meetings, based on emails, calendar entries, and deposition testimony, and showing at least 10 in-person meetings by November 2009). | Undisputed. |
| 135 | Mahabub and Apple personnel also had extensive other contacts, including many phone calls and emails. Ex. 152, Tiscareno Dep. 25:25-26:5; 29:17-30:3; Ex. 169, Isaac Dep. 46:1-2, 47:2-5; Ex. 150, Mahabub Dep. 92:11-15. | Disputed as to the characterization as "extensive." *See* SEC Resp. SOF ¶ 126. |
| 136 | By November 2009, GenAudio had successfully worked with Apple to accomplish full embedded level integration of GenAudio's technology into the most complicated line of Apple products in the Mac division, such that minimal effort would be needed to integrate the technology onto other Apple computers. Ex. 169, Isaac Dep. 44:1-11, 117:16-118-24 (Isaac acknowledging GenAudio accomplished full embedded level integration by November 2009), 136:3-9, 175:21-176:21 (integration of GenAudio's technology was completed on the most complicated line of Mac computers and minimal effort would be needed to integrate the technology onto other types of Mac computers); Ex. 174 (deposition exhibit number 164 discussed by Isaac in his testimony, and setting the timeframe for full embedded level integration). | Undisputed. |
| 137 | In November 2009, Mahabub hired an intellectual property valuation specialist to value GenAudio's technology under several scenarios in anticipation of negotiations with Apple over a licensing agreement or acquisition for that technology. Ex. 198 at 39. | Undisputed. |
| 138 | On November 28, 2009, Mahabub sent his contacts at Apple a lengthy email in which he sought to negotiate the terms of a transaction with Apple for GenAudio's technology, including its architecture, price, patent ownership, and timing of its close. Ex. 190; Ex. 152, Tiscareno Dep. 173:3-7 (discussing Ex. 190: "Q: So [Mahabub's] trying to negotiate with you. You're just not negotiating back. A: Yeah."). | Undisputed. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| 139 | After Tiscareno received Mahabub's November 28, 2009 email, Tiscareno ignored it; he did not tell Mahabub that his attempt to negotiate a deal with Apple was premature or that his understanding of Apple's intent was misplaced. Ex. 152, Tiscareno Dep. 164:13-165:8, 167:17, 25-168:6; 173:3-7. Tiscareno also did not tell Mahabub that Tiscareno would not be responsible for any negotiation on behalf of Apple. Ex. 152, Tiscareno Dep. 174:22-175:24; Mahabub Decl. ¶ 26. | Undisputed. |
| 140 | Isaac never told Mahabub that Isaac lacked the authority to make a decision about any business deal with GenAudio on the Mac side. Ex. 169, Isaac Dep. 160:22-161:10 ("[M]aking business decisions was way above my pay grade, and that remains a very accurate statement. Q: Do you recall ever telling that to Mr. Mahabub? A: No, I do not."). | Undisputed. |
| 141 | Hailey did respond to Mahabub's November 28, 2009 email. In Hailey's response, he confirmed Apple is "interested in [GenAudio's] technology" and said "[w]e're making progress and building our story, but this is not something we can execute overnight. The business side of things would come into play after we have exec buy-in on the product side." Ex. 190 at 2. | Undisputed. |
| 142 | Following Hailey's response to the November 28, 2009 email, Mahabub was focused on what Hailey had referred to as the "executive buy-in" as a "final milestone" to be reached before a deal with Apple could be reached for GenAudio's technology. Ex. 201; Ex. 152, Tiscareno Dep. 178:18-179:9 ("final milestone"); Ex. 190 at 1 (Mahabub asking when "exec buy-in might take place" and asking for a "ball park figure" on timing). | Disputed. The phrase "final milestone" was used by counsel for GenAudio, not Tiscareno or Mahabub. Ex. 152, Tiscareno Dep. 175:3-6. Mahabub's conduct establishes that his "focus" was on falsifying documents and lying to the GenAudio Board about his communications with Apple. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| **143** | After Hailey's response, Mahabub still believed "executive buy-in" at Apple could be obtained within the next few months. Ex. 188, Hailey Dep. 100:24-101:22 (Q: And you wrote that because it seems Mr. Mahabub thought the time frame would be faster than a couple of months, right? A: Correct."); see also Ex. 164 at 2 (Mahabub thanking Hailey for disclosing "the more realistic timeframe" and suggesting he still thought it could occur within 3-6 months). | Disputed. Mahabub's response to Hailey states that Mahabub understands that Apple and GenAudio have entered a "'*cooling our heels' stage*" and states "*[i]f you have any idea as to when the exec buy-in might take place, that would help me out (a ball park figure, such as within 90 days, within 180 days, within the year, etc.). Perhaps you really have no idea as to when this will take place, and no worries if you do not ….*" Ex. 190. Similarly, Exhibit 164 does not establish that Mahabub communicated that he still believed 3 to 6 months was realistic, he writes "much appreciated you disclosing to me the more realistic timeframe. *This will help me to determine the forward direction of GenAudio over the next 3 to 6 months*. Of course, if anything changes, and the timeline is compressed/shortened, please inform me ASAP about this as Apple takes priority over everything else we are doing …." (Emphasis added); *see also* Ex. 188, Hailey Dep. 100:24-101:22. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| 144 | On March 15, 2010, GenAudio sent a cover letter to potential investors stating that GenAudio's 2010 stock offering "is being conducted to provide bridge capital until we can 'ink' a deal with a large consumer electronics company (referred to as the 'LCEC' throughout the PPM)." Tiscareno testified that there was nothing inaccurate regarding that statement. Ex. 152, Tiscareno Dep. 194:5-6, 195:4-21, 199:20-25 (discussing SEC Ex. 52). | Disputed. Tiscareno did not agree that there was nothing inaccurate about the statement and he lacks foundation to testify as to the truth or falsity of GenAudio's offering materials, which is indicated by the cited testimony and the testimony surrounding the cited testimony including: "Q. Is there anything else, looking at this, that you find inaccurate? A. Well, it's I mean, I'd have to sit down and read everything line by line. Q. I'm just talking about the second paragraph. A. Oh. No. Q. Ok. A. … I mean, … I can think of opinions that you didn't ask about. But it's just opinions that the document – that I've never read before, really." Ex. 152, Tiscareno Dep. 199:20 – 200:5; *see generally id.* at 194:5 – 200:10. |
| 145 | GenAudio's March 15, 2010 Private Placement Memorandum similarly states as follows:<br><br>[GenAudio] is optimistic that the LCEC will eventually want access to our AstoundSound technology for their products. It is unclear what structure such access would take, but the Company believes the LCEC would either (i) integrate a portion of our AstoundSound Technology, namely ASE, into multiple product lines through a licensing arrangement or (ii) acquire all of our AstoundSound Technology or, at least, that portion the LCEC deems necessary for its integration plans<br><br>Again, Tiscareno testified these statements are accurate. Ex. 152, Tiscareno Dep. 203:11-13, 204:6-7, 205:2-207:22 (discussing SEC Ex. 3 at 21). | Disputed. Tiscareno's testimony begins with describing this section of the PPM as "[p]retty generous statements" and concludes with "[y]eah, I guess" as to their fairness and accuracy, demonstrating his lack of foundation and lack of complete agreement with the statements. Ex. 152, Tiscareno Dep. 205:4 – 206:15. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| 146 | GenAudio's March 15, 2010 Private Placement Memorandum, and the March 15, 2010 letter that accompanied it, included meaningful cautionary language regarding the risks facing GenAudio, including that GenAudio had not consummated any deal with Apple, and the specific fact there was no guarantee that such deal would be reached in the future. Ex. 198 at 5, 21, 39 (discussing the valuation report prepared in anticipation of negotiations for a deal with the LCEC, and stating, "there is no guarantee or assurance that any actual transactions will occur or that consummated transactions will result in the revenues projected in the Valuation Report, and the Company and its management make no representations or warranties concerning the same"), 40-49; SEC Ex. 52 (March 15, 2010 letter accompanying the Private Placement Memorandum). | Disputed that the 2010 Offering Materials included "meaningful cautionary language." This is a legal conclusion. As discussed in the Argument section, *infra*, GenAudio's documents did not include cautionary language that was "meaningful" or sufficient to nullify Defendants' misstatements and omissions made during the relevant period, including prior to and during March 2010. |
| 147 | On May 6, 2010, Tiscareno and Hailey gave a demonstration of GenAudio's technology to a senior executive at Apple named Greg Joswiak. Ex. 152, Tiscareno Dep. 214:10-215:20 (confirming the meeting occurred on May 6, 2010). | Undisputed. |
| 148 | Greg Joswiak, who was the Vice President of iPod/iPhone in the Marketing Department, is among the most senior executives at Apple. Ex. 216 (org. chart showing top Apple executives as of 2011, including Joswiak in the same role as in 2010); Ex. 152, Tiscareno Dep. 211:11-21, 212:3-214:2 (Tiscareno acknowledging "it doesn't get any higher than that"). | Undisputed. |
| 149 | Greg Joswiak is known at Apple by the nickname "Joz," and both Tiscareno and Hailey refer to Joswiak using the "Joz" nickname. Ex. 152, Tiscareno Dep. 180:4, 208:21, 210:9-21; Ex. 188, Hailey Dep. 15:20-21, 144:25-145:10; Ex. 171, Hailey Inv. 18:5-7. | Undisputed. |
| 150 | This May 6, 2010 meeting was when the critical "executive buy-in" at Apple would be determined. Ex. 152, Tiscareno Dep. 179:3-180:8. | Undisputed. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| 151 | As a result, the May 6, 2010 presentation to Greg Joswiak was a "make-or-break" meeting regarding Apple's interest in GenAudio. If Joswiak did not give a "green light" to continue with GenAudio, then discussions between GenAudio and Apple's iPhone/iPod/iPad division regarding potential use of GenAudio's technology in iPhone/iPod/iPad devices would end. Ex. 152, Tiscareno Dep. 218:13-17, 219:6-14. | Undisputed. |
| 152 | Tiscareno also needed the May 6, 2010 meeting to result in a green light for Tiscareno to keep spending time related to GenAudio. Ex. 152, Tiscareno Dep. 221:1-222:7. | Undisputed. |
| 153 | Mahabub's contacts at Apple told him how important this May 6, 2010 meeting was, and Mahabub understood discussions with the iPhone/iPod/iPad division would end if the meeting did not result in a green light for the project. Ex. 202 ("Trying to line you up with as much fire power as possible so we get a green light to continue to move forward!"), Ex. 152, Tiscareno Dep. 179:3-180:8, 219:6-14 | Undisputed. |
| 154 | Tiscareno testified if he used a term such as "the big man" Tiscareno probably meant it as a reference to Steve Jobs without expressly using Steve Jobs' name. Ex. 152, Tiscareno Dep. 156:2-16. ("And, you know, if I – if I used them myself, it was probably – that's wink-wink – that's who it is.") | Undisputed. |
| 155 | Mahabub worked with Tiscareno to prepare for the May 6, 2010 presentation. During those discussions, Tiscareno and Mahabub referred to the executive who would receive the presentation as "the man", "the executive", "the exec.", and "the big exec." (as an abbreviation for the "big executive"). Ex. 203 (Tiscareno discussing with Mahabub the preparation of demos of GenAudio's technology for someone at Apple whom Tiscareno refers to as "the man"); Ex. 202 ("the executive"), Ex. 204 ("the exec."), Ex. 205 ("the exec at Apple"), Ex. 206 ("the big exec at Apple"), Ex. 152, Tiscareno Dep. 208:19-209:7; Ex. 150, Mahabub Dep. 188:22-189:1 ("the big man"). | Disputed that Tiscareno referred to the executive as "the big exec." Exhibit 206 contains that reference, but is an email written by Mahabub. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| 156 | Tiscareno and Hailey may also have told Mahabub that the meeting was with "Joz", without using Greg Joswiak's actual name. Ex. 171, Hailey Inv. 33:11-17 ("We may have said that we – that we were going to pitch to Jaws.") | Undisputed for purposes of the Motion that they "may" have told him, though the evidence also supports the inference that they may not have told him. See also SOF ¶ 158 (Defendants asserting that Mahabub was not told that the May 6, 2010 meeting was with Joswiak). |
| 157 | Mahabub testified that when he spoke with Tiscareno and Hailey by phone in advance of the May 6 meeting, he had understood they told him the meeting was with "Jobs", meaning Steve Jobs, and Mahabub believed the May 6 presentation was to Steve Jobs. Ex. 150, Mahabub Dep. 189:1-3, 190:7-21, 221:19-223:7, 227:14-228:2; Ex. 219, Mahabub Dep. 290:12-291:3, 323:2-22. | Undisputed. |
| 158 | Mahabub has never heard the name Greg Joswiak, and was not told the May 6, 2010 meeting was with someone with that name. Ex. 150, Mahabub Dep. 217:13-25, 252:12-15. | Undisputed. |
| 159 | Mahabub testified that around February 2010, he also had a conversation with Tiscareno in which Tiscareno said words to the effect that "Michael [Hailey] and I want to make sure we have no hang-ups when we push this to the top, and we both are confident that we can get this okayed by the big man if we play our cards right." Ex. 150, Mahabub Dep. 142:15-143:2. | Undisputed. |
| 160 | The only individuals present during the May 6, 2010 meeting were Tiscareno, Hailey, and Greg Joswiak. Mahabub was not invited to attend and did not participate. Ex. 152, Tiscareno Dep. 217:22-25. | Undisputed. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| **161** | At the May 6 meeting, Joswiak "agreed that there was value in exploring ways to enhance the listening experience for people using iPods and iPhones" and thought there was value in continuing the exploration Ex. 188, Hailey Dep. 114:20-115:4, 117:15-19 | Undisputed for purposes of the Motion, but Hailey's description of Joswiak's response is hearsay and Joswiak's response does not suggest that Apple moved forward with GenAudio. |
| **162** | After the May 6, 2010 meeting, Tiscareno and Mahabub continued to engage in substantive work in connection with possible use of GenAudio's technology on products for Apple's iPod/iPhone/iPad division. Ex. 152, Tiscareno Dep. 223:23-224:18; Ex. 208; Ex. 166 (Mahabub email to Tiscareno in July 2010 regarding work on a revised demonstration application); Ex. 176; Ex. 209; Ex. 178 (discussing continued work on the app for the iPad; Ex. 195; Ex. 167; Ex. 152, Tiscareno Dep. 253:11-16 (discussing Ex. 167 and admitting it reflects additional work being done in connection with GenAudio's technology in September 2010 related to the iPad); Ex. 168; Ex. 152, Tiscareno Dep. 258:18-259:9 ("Q: Does this reflect that there was still some more work being done on the iPad and iPod side? A: That's what it says here."); Ex. 197; Ex. 152, Tiscareno Dep. 260:1-18; Ex. 210; Ex. 152, Tiscareno Dep. 263:17-265:2 (Tiscareno admitting he was performing work connected to GenAudio technology in January 2011 and that it appears the work related to the iPad); Ex. 211; Ex. 169, Isaac Dep. 147:11-148:8 (Mahabub presentation given to Andrew Bright and Barry Corlett on September 23, 2010 was to demonstrate GenAudio's technology on both the iPad side and the Mac side; Corlett worked on audio architecture in the iPod division; the meeting was held in the iPod building); | Disputed. Tiscareno testified that he did not keep moving forward with GenAudio after May 6, 2010 and "I can't say 100 percent, but I believe at that point we were dead in the water," and "Q: Did you ever tell that to Jerry Mahabub? A: I – oh, he knew." He also testified that any work done may have related to "Ron [Isaac]." <u>Ex. 152</u>, Tiscareno Dep. 219:15 – 220:17 and 228:14-230:8. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| 163 | Any belief by Tiscareno that all of his post-May 6 work regarding GenAudio technology could have involved work for the Mac division rather than for the iPhone/iPod/iPad division is mistaken. Ex. 169, Isaac Dep. 141:22-142:12 (Isaac does not believe Ex. 208 relates to work done in connection with the Mac division); 148:12-149:2 (The potential NDA discussed in Ex. 176 does not relate to work being done on the Mac side); 165:22-166:8; 161:16-162:6 (same for Ex. 211); 150:21-152:4 (same for Ex. 178); 152:6-153:20 (same for Ex. 167). Tiscareno was not substantively involved in the discussions between GenAudio and Apple's Mac division or in the Mac division's evaluation of GenAudio's technology and integration of GenAudio's technology into Mac products. Ex. 152, Tiscareno Dep. 110:5-14, 22-24, 150:6-8; Ex. 169, Isaac Dep. 49:5-16. | Disputed. *See* SEC Resp. SOF ¶ 162. |
| 164 | Mahabub believed the May 6, 2010 meeting had resulted in the critical "green light" to continue toward a transaction regarding GenAudio's technology and that discussions with the iPhone/iPod/iPad division were still moving forward. Ex. 219, Mahabub Dep. 300:22-301:15; Ex. 194 (Mahabub writing in July 2010 that "This would be a phenomenal time for Apple to consider putting out an Astound integrated set of product offerings for their Christmas product rollout"); Ex. 209; Ex. 197; Ex. 152, Tiscareno Dep. 262:17-263:7. | Disputed. Please see Argument §§ IV.B and IV.C regarding the reasonableness of Mahabub's conduct and his scienter. The SEC objects to the citation to Tiscareno's deposition on the basis that Tiscareno has no foundation to consider or testify as to Mahabub's state of mind. *See* Ex. 152, Tiscareno Dep. 262:16 ("I don't know what he was thinking"). |
| 165 | Tiscareno does not recall ever telling Mahabub that based on the May 6, 2010 meeting, in Tiscareno's view, the discussions between GenAudio and the iPhone/iPod/iPad division at Apple had come to an end and would not continue. Ex. 152, Tiscareno Dep. 225:3-226:4, 228:6-229:20. | Undisputed. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| 166 | In fact, on multiple occasions in July and August 2010, Tiscareno discussed with Mahabub the potential need for GenAudio to sign additional non-disclosure agreements with Apple. Ex. 176 ("I need the new NDA to review as well that we discussed"); Ex. 177 at 1; Ex. 178 at 1; Ex. 179 | Disputed. Tiscareno did not recall discussing additional NDAs with Mahabub and was confused about the various correspondence on the issue. Isaac sent Mahabub an email (Ex. 181 at 2) referring Mahabub to another Apple employee regarding "all the necessary evaluation agreements," but did not otherwise communicate with Mahabub about such agreements. Ex. 227, Tiscareno Dep. 238:1 – 246:25; Ex. 169, Isaac Dep. 171:23 – 173:24. |
| 167 | Mahabub believed because GenAudio had already signed Apple's standard non-disclosure agreement, the fact Apple wanted GenAudio to execute further non-disclosure agreements meant those additional proposed agreements would be even more restrictive, and indicated Apple was interested in a licensing agreement or acquisition of GenAudio's technology. Ex. 150, Mahabub Dep. 97:17-20, 98:18-21; Mahabub Decl. ¶ 25. | Disputed. See Resp. SOF ¶ 129; *see also* Ex. 223, Isaac Dep. 32:3 – 13 ("A: We never discussed business opportunities with Jerry, never. Q: But he mentioned it a number of times, right? A: I do not recall that, and I wouldn't have even actually entertained it; not to the -- to the least of it."); *Id.* 189:8 – 16; Ex. 228, Hailey Dep. 157:4 - 9. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| **168** | Throughout 2010, including on numerous occasions after the May 6, 2010 meeting, Mahabub continued to write to his contacts at Apple regarding his understanding that Apple's interest in GenAudio's technology, and its evaluation of GenAudio's technology was sufficiently advanced that a license agreement or acquisition would be completed between GenAudio and Apple in the near future, or that he was optimistic such a deal would take place soon. Again, GenAudio's contacts at Apple did not tell Mahabub that they disagreed with his view, which further encouraged Mahabub to believe his statements were correct. Ex. 191 at 3 (*March 21, 2010:* Mahabub stating the path forward is simple: "1. Ink a licensing deal . . . 2. Hand over the actual AstoundAPI . . . 3. Ready to Ship."); Ex. 194 (*July 18, 2010:* Mahabub stating "This would be a phenomenal time for Apple to consider putting out an Astound integrated set of product offerings for their Christmas product rollout"); Ex. 195 (*September 6, 2010*); Ex. 196 (*September 8, 2010*); Ex. 152, Tiscareno Dep. 250:2-251:15 (Tiscareno agrees that in September 2010 Mahabub appeared to believe discussions between GenAudio and Apple were moving forward in a manner that was "optimistic" for GenAudio); Ex. 169, Isaac Dep. 134:23-25 (Isaac did not pay attention to many of Mahabub's emails); Ex. 169, Isaac Dep. 207:10-19 (Isaac confirming he never discussed with Mahabub how long it might take to incorporate GenAudio's technology into Apple products); Ex. 152, Tiscareno Dep. 128:16-130:8 (Tiscareno acknowledging he glossed over Mahabub's many optimistic comments in emails about the status of GenAudio's relationship with Apple and did not respond to them), 133:11-134:16 (similar), 165:6-16 (similar), 167:7-168:6 (similar); Ex. 150, Mahabub Dep. 64:4-17, 143:24-144:33 (Mahabub had discussion with Tiscareno regarding a Christmas product rollout); Ex. 219, Mahabub Dep. 310:21-311:11 (same). | Disputed. Please see Argument §§ IV.B and IV.C regarding the reasonableness of Mahabub's conduct and his scienter. *See also* Resp. SOF ¶ 129; *see also* Reply SOF ¶¶ 21-22. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| 169 | Mahabub also testified he also had a conversation with Isaac in which Mahabub said "we need to figure out how we're going to license this to you; right?" and that Isaac responded "Well, we're not going to pay you a per unit royalty, you know that." This conversation led Mahabub further to believe a licensing deal would be reached with Apple. Ex. 150, Mahabub Dep. 95:9-97:16. | Disputed. Please see Argument §§ IV.B and IV.C regarding the reasonableness of Mahabub's conduct and his scienter. *See also* Reply SOF ¶ 22. |
| 170 | On September 23, 2010, Mahabub made a presentation to a number of Apple employees, including Andrew Bright, who was a very senior Apple employee, and Barry Corlett, who also was a senior Apple employee. Ex. 169, Isaac Dep. 146:1-3, 147:3-16; Ex. 152, Tiscareno Dep. 255:10-21. | Undisputed. |
| 171 | Mahabub understood Tiscareno also was a senior employee at Apple. Ex. 150, Mahabub Dep. 38:3-7; Ex. 152, Tiscareno Dep. 20:3-15 (Tiscareno's title was "Senior Engineer" for Audio and Acoustic) | Undisputed for purposes of the Motion, though Mahabub's conduct in falsifying correspondence and making untrue statements about Apple executives evidences that he understood that Tiscareno was not senior enough to enter into a licensing or acquisition transaction with GenAudio. Please see Argument §§ IV.B and IV.C regarding the reasonableness of Mahabub's conduct and his scienter. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| 172 | After the September 23, 2010 meeting, nobody at Apple ever said to Mahabub that the Mac division had decided to end discussions with GenAudio or end further evaluation of GenAudio's technology. Ex. 169, Isaac Dep. 158:10-159:24. | Disputed. Isaac testified that he could not recall one way or the other if he told Mahabub that Mahabub's exchange with Bright "was not a very good exchange to be had with a senior Apple engineer." Isaac further explained that Mahabub's exchange with Bright "was a huge red flag … and it's not something I would have been proud of and would have retreated me quite a bit, quite honestly, to the point even that I wouldn't have wanted [Bright] seeing me exchange or mention [Mahabub]." <u>Ex. 19</u>, Isaac Dep. 158:20 – 25 and 159:8 – 18. |
| 173 | Immediately after the September 23, 2010 meeting, Mahabub proposed Apple and GenAudio proceed to execute a "more serious development agreement" that was stronger than the standard Non-Disclosure Agreement the parties had signed in July 2009. Mahabub said this was necessary so that GenAudio could go ahead and give Apple its real software development kit, or "SDK," as the next step toward a commercial licensing agreement. Thus Mahabub continued to believe following the September 23, 2010 meeting that the discussions with Apple remained on track toward a deal. Ex. 180 at 2-3 | Undisputed |
| 174 | After the September 2010 meeting with Bright and Corlett, Apple and GenAudio continued to conduct work in connection with GenAudio's technology related to the Mac division. Ex. 212; Ex. 169, Isaac Dep. 162:17-165:15; Ex. 168; Ex. 169, Isaac Dep. 166:10-21; Ex. 197 ("I can now update the iPad/iPod and Mac side apps with the new processing that solves many issues we had with the current implementations you have . . . .") | Undisputed. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| **175** | After September 2010, work also continued between GenAudio and Tiscareno on the iPhone/iPod/iPad side. Ex. 168; Ex. 152, Tiscareno Dep. 258:18-259:9; Ex. 169, Isaac Dep. 165:22-166:8; Ex. 197; Ex. 152, Tiscareno Dep. 260:1-18; Ex. 210; Ex. 152, Tiscareno Dep. 263:17-265:2. | Undisputed. |
| **176** | In a December 13, 2010 email to his contacts at Apple, Mahabub continued to express his belief that a deal would be reached, and expressed his surprise that reaching a deal had taken this long. Mahabub's contacts at Apple did not respond to the email to tell Mahabub that Apple had decided not to proceed with GenAudio. Ex. 197 ("I was hoping to have Apple products with our tech inside by now. [P]erhaps with these updates we will be working on for you, we can finally cross the bridge and ink an actual license deal"); Ex. 152, Tiscareno Dep. 262:17-263:7 (discussing Ex. 197); Ex. 169, Isaac Dep. 169:16-170:19 (Isaac did not respond to Ex. 197) | Disputed that this evidence supports the assertion that Mahabub "expressed his surprise that reaching a deal had taken this long." Mahabub's email merely states "*I was hoping to have Apple products with our tech inside by now.*" Ex. 197. |
| **177** | In early 2011, Apple's Advanced Technology Group conducted a further evaluation of audio technology in connection with Mac computers, including GenAudio's technology, and discussed that evaluation with GenAudio, including the possibility of signing an "evaluation agreement" with GenAudio. Ex. 181; Ex. 169, Isaac Dep. 170:24-173:24 | Disputed. Isaac testified that he does not recall whether or not GenAudio was part of the evaluation by the "Advanced Technology Group" and no further agreements were ever sent by Apple to GenAudio. Ex. 169, Isaac Dep. 174:1 – 8; SOF ¶¶ 100-101. |
| **178** | Mahabub continued to believe because GenAudio had already signed Apple's standard non-disclosure agreement, the fact Apple wanted GenAudio to execute a further evaluation agreement meant that proposed agreement would be even more restrictive, and indicated Apple remained interested in proceeding toward a deal with GenAudio. Ex. 150, Mahabub Dep. 97:17-20, 98:18-21; Mahabub Decl. ¶ 25. | Disputed. Please see Argument §§ IV.B and IV.C regarding the reasonableness of Mahabub's conduct and his scienter. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| **179** | When Tiscareno left Apple in February 2011, he informed Mahabub that his supervisor, Jesse Dorogusker, was "fully aware and engaged with the project" relating to GenAudio. Ex. 214. | Disputed that Mahabub and Isaac scheduled a time to talk by phone. The cited exhibit consists of Mahabub asking Isaac what his schedule looks like for a phone call, but does not schedule a call. <u>Ex. 215</u>. |
| **180** | Mahabub testified he met with Dorogusker on two occasions regarding GenAudio's technology. Ex. 219, Mahabub Dep. 394:25-396:24. | Undisputed. |
| **181** | Mahabub was scheduled to meet again with Isaac on March 14, 2011. Although Mahabub went to Apple's campus for the meeting as scheduled, Isaac was unable to attend because he was delayed by car trouble. Instead, Isaac and Mahabub scheduled a meeting to talk by phone. Ex. 215. | Undisputed |
| **182** | Apple's Mac division ultimately did not reach a deal with GenAudio for its technology because while some within Apple were supportive of that type of technology, others at Apple were not. As a result, interest in GenAudio's technology slowly fizzled out over time. Ex. 169, Isaac Dep. 176:22-177:23. | Undisputed. |
| **183** | The Mac division never explained to Mahabub that interest in GenAudio's technology had fizzled out and that the Mac division would not be continuing to move forward with GenAudio. Ex. 169, Isaac Dep. 177:20-178:16. | Undisputed. |
| **184** | Ultimately, the discussions between GenAudio and Apple regarding GenAudio's technology were extensive. Ex. 151, Tiscareno Dep. 152:2-154:14 (Tiscareno saying there were "a lot" of communications with GenAudio by November 2009), 267:20-23 (the discussions were "fairly extensive"), 269:2-6 (Tiscareno demonstrated GenAudio's technology to a lot of Apple employees); Ex. 150, Mahabub Dep. 206:13-16. | Disputed. *See* Resp. SOF ¶ 133. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| 185 | Over the course of GenAudio's relationship with Apple, Mahabub met in-person with Apple personnel at Apple's offices at least 15 times, the last of which was on December 1, 2010. Ex. 153 (prepared during testimony of Victor Tiscareno to reflect the dates of at least 15 in-person meetings, based on emails, calendar entries, and deposition testimony),3 Ex. 152, Tiscareno Dep. 56:4-20; Meeting 15: Ex. 168, Ex. 152, Tiscareno Dep. 259:13-25. | Undisputed. |
| 186 | Mahabub and Apple personnel had extensive other contacts, including many phone calls, and exchanged hundreds upon hundreds, if not thousands of emails regarding GenAudio's technology. Ex. 152, Tiscareno Dep. 25:25-26:5; 29:17-30:3; Ex. 169, Isaac Dep. 46:1-2, 47:2-5; Ex. 150, Mahabub Dep. 92:11-15. | Undisputed. |
| 187 | Mahabub believed GenAudio was going to reach a deal with Apple for GenAudio's technology. Ex. 150, Mahabub Dep. 64:20-65:5, 94:24-95:1, 109:23-24, 110:2-4, 103:6-16, 181:9-20, 205:2-19. | Disputed. Please see Argument §§ IV.B and IV.C regarding the reasonableness of Mahabub's conduct and his scienter. |
| 188 | GenAudio investors knew in 2011 that a deal with the LCEC, or Apple, had not been consummated. Investors knew this because of the passage of time without an announcement a deal had been reached. Investors' purchases of stock after that time were not based on any statements from GenAudio regarding discussions with, or a potential deal with Apple. That there would be no deal with Apple also was made clear during presentations to investors in early 2012. Declaration of George Marvin dated April 27, 2017, ¶ 3; Mahabub Decl., ¶ 27. | Disputed that, as a blanket statement, "[i]nvestors' purchases of stock after [2011] were not based on any statements from GenAudio regarding discussions with, or a potential deal with Apple." In March 2011, Mahabub falsely claimed that GenAudio and Apple would be entering into a new set of agreements that would prohibit them from update investors regarding the LCEC and the Defendants then issued the 2011-2012 Offering Materials, which made material omissions. *See* USOF ¶¶ 100-10, 118 and SOF ¶¶ 114-117. |
| 189 | Some investors who purchased shares during 2010 to 2012 did not make their purchase decisions based on statements from GenAudio regarding discussions with, or the possibility of a deal with Apple. Declaration of Julie Eastwood dated April 28, 2017, ¶ 4. | Undisputed. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| | Paragraphs 190 through 200 are intentionally omitted by Defendants. | |
| 201 | With one possible exception, the "GenAudio Team Emails,"1 the emails that Mahabub sent out detailing his communications and interactions with Apple, were sent only to GenAudio Team members. The exceptions were sent to people "who [Mahabub] was interested in soliciting to join the board of directors." "GenAudio Team" members, as used in this context, means GenAudio employees, full-time consultants, and board members. SOF ¶¶ 57–60, 63, 67–68, 72, 75 (referring to recipients of these emails as the "GenAudio Team Mahabub Decl. ¶¶ 7–8; Ex. 94 (Mahabub Depo. Vol. 1) 60:17–24, 61:5–17. | Disputed that "[t]he exceptions were sent to people 'who [Mahabub] was interested in soliciting to join the board of directors.'" Mahabub "sponsored" Skluzak onto the GenAudio Board in 2012 and Skluzak joined the Board in April 2012 – nearly two years after Mahabub forwarded Skluzak the falsified transcription. Ex. 229, Skluzak Dep. 69:4 – 6; 89:17 – 20. Further, the GenAudio Team was involved in GenAudio's securities offerings, as some GenAudio Team members were shareholders, the Board members authorized GenAudio's 2010 offering, one GenAudio Team member was responsible for soliciting investors in GenAudio, and all GenAudio Team Members were encouraged to solicit investors for GenAudio. *See* USOF ¶¶ 5-7, 12, 73, 75 and SOF ¶ 50, 74. |
| 202 | The only exception the SEC identified is Exhibit 33, which Mahabub also forwarded to Skluzak. Mahabub Decl. ¶ 8; Ex. 33 at 1. *See also* SOF ¶¶ 229-32 (addressing Skluzak) | Undisputed. |
| 203 | The GenAudio Team Emails were not intended to be distributed beyond internal team members. *I.e.*, they were confidential. Mahabub Decl. ¶¶ 12–15; Ex. 94 (Mahabub Depo. Vol. 1) 65:5–9. | Undisputed. |
| 204 | The GenAudio Team knew they were not supposed to forward the GenAudio Team Emails to anyone else. Mahabub Decl. ¶¶ 12–15; Ex. 33 at 1, 2 ("You must delete this email after you read it" and "DELETE THIS EMAIL AFTER YOU READ IT – DO FOLLOW MY INSTRUCTIONS"). | Undisputed. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| 205 | None of the GenAudio Team Emails ask, or suggest, that the recipients forward the emails to people outside the GenAudio team, including potential investors. Exs. 7, 9, 21, 23, 31, 33, 46, 66, 72, 75, and 77. | Undisputed |
| 206 | With the possible exception of Exhibit 33, the MSJ does not identify any occasion where any recipient of Mahabub's GenAudio Team Emails forwarded the emails to non-team members or potential investors. SOF ¶¶ 43, 57–60, 63, 67–69, 72, 75. | Undisputed. |
| 207 | With the possible exception of Skluzak's purchase of GenAudio stock (SOF ¶ 70), the MSJ does not identify any GenAudio stock purchases that it alleges were based on the GenAudio Team Emails. SOF ¶¶ 84–87.; Exs. 7, 9, 21, 23, 31, 33, 46, 66, 72, 75, and 77. | Undisputed. |
| 208 | Mahabub is not aware of any instance where a recipient of the GenAudio Team Emails purchased GenAudio stock based on the emails or their contents. Mahabub Decl. ¶ 19. | Undisputed. |
| 209 | Nor did Mahabub intend for anyone to invest based on the contents of the GenAudio Team Emails. Mahabub Decl. ¶¶ 9, 20. | Disputed. The record reflects that Mahabub's falsified emails were created in connection with the Defendants' scheme, which culminated with raising investor funds. Mahabub sent the GenAudio Board falsified documents the same day the Board authorized work on the 2010 Offering, he also requested that the GenAudio Team assist in fundraising from investors and Mahabub himself distributed key content of the false emails, including telling investors that Jobs was involved in Apple's dealings with GenAudio and that a "deal" with Apple was imminent. *See, e.g.*, USOF ¶¶ 51, 73, 75 and SOF ¶¶ 42, 50, 74, 84, 86. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| 210 | The MSJ does not allege that any of Mahabub's recipients of the GenAudio Team Emails forwarded the emails to anyone who was not a member of the GenAudio Team.3 SOF ¶¶ 12, 24, 73–75, 78, 82, 83, 90, 100 (referring to recipients of these emails as the "GenAudio Team"). | Undisputed. |
| 211 | With the exception of Exhibits 9 and 66, Mahabub's primary purpose in sending the GenAudio Team Emails was to keep the GenAudio Team motivated during a difficult, and exhausting, start-up stage and software development process. Mahabub Decl. ¶¶ 9–10 | Disputed. *See* Resp. SOF ¶ 209. |
| 212 | During the 2009 to 2012 timeframe, GenAudio, like most tech sector start-ups, was characterized by a high stress work-environment. High turnover and low morale were constant problems. These problems were exacerbated by (as is typical at many start-ups) inconsistent payment of wages. Mahabub Decl. ¶ 10. | Undisputed. |
| 213 | It is common in the software development industry to go to great lengths to motivate employees. Mahabub Decl. ¶ 11. | Disputed. There is no evidence in the record to support the proposition that it is common or reasonable in any industry, including the software development industry, for CEO's to falsify documents and make untrue statements to their Board, employees, consultants, or investors in order to provide "motivation." The SEC objections to Mahabub's allegation in his Declaration as inadmissible because it is irrelevant (Fed. R. Evid. 401 and 402), confusing and misleading (Fed. R. Evid. 403), lacking foundation (Fed. R. Evid. 901), and providing impermissible opinion testimony (Fed. R. Evid. 701). |
| 214 | With the exception of Exhibits 9 and 66, the MSJ does not allege that any of the GenAudio Team Emails contain requests to GenAudio employees from Mahabub for help finding investors. SOF ¶¶ 12, 73, 75. | Undisputed. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| 215 | When a GenAudio Team member knew someone who might be interested in purchasing GenAudio stock, the company's standard practice was to have the team member tell the potential investor to contact Mahabub, Powers, or Mattos, who would provide the potential investor with the company's investment materials. Mahabub Decl. ¶¶ 18, 20; Ex. 94 (Mahabub Depo. Vol. 1) 183:1–18 (this was the company's "modis [sic] operandi"). | Undisputed. |
| 216 | None of the GenAudio Team Emails ask the recipients to forward them to potential investors. Exs. 7, 9, 21, 23, 31, 33, 46, 66, 72, 75, and 77. | Undisputed. |
| 217 | Mahabub did not intend or anticipate that the recipients of the GenAudio Team Emails to forward them to potential investors. Mahabub Decl. ¶ 13. | Undisputed. |
| 218 | With the possible (and disputed) exception of Skluzak's receipt of Exhibit 33, Mahabub was not aware, at the time, of any instance where a member of the GenAudio Team forwarded one of the GenAudio Team Emails to a potential investor. Mahabub Decl. ¶ 15. | Undisputed. |
| 219 | The GenAudio Team Emails were internal corporate communications. Mahabub Decl. ¶ 13. | Undisputed for purposes of the Motion, with the exception of Exhibit 33, which is the fabricated telephone transcript sent also sent to investor Skluzak. |
| 220 | The GenAudio Team Emails were not distributed to the public or included among materials provided to potential investors in the 2010 Offering or the 2011-2012 Offering. Mahabub Decl. ¶ 16. | Undisputed. |
| 221 | The MSJ does not identify any GenAudio Team Email where Mahabub asks for help finding investors from the GenAudio Team, except for Exhibits 9 and 66. SOF ¶¶ 12, 73, 75. | Undisputed. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| 222 | None of the GenAudio Team emails ask the recipients to invest in GenAudio. Mahabub Decl. ¶¶ 17–18; Ex. 94 (Mahabub Depo. Vol. 1) 182:14–183:20 (re Ex. 66, requests for help with financing meant, if team members knew any investors who might be interested in GenAudio, Mahabub and/or Mattos would like to talk to them). | Disputed. Nothing in the exhibits limits the solicitation to non-recipients. Exhibit 9 touts GenAudio as a good investment to the recipients and states "*[t]ime to go back into fund raising mode, and if any of you feel like helping out with this effort, I would certainly appreciate it. It's not like you are doing your friends and family a bad thing by getting them into GenAudio at this stage in the game.*" Exhibit 66 states "*Any help from all of you with this financing effort would be great.*" |
| 223 | Nothing in Exhibits 9 and 66 asked GenAudio Team members to personally invest in GenAudio. Mahabub Decl. ¶ 18; Exs. 9 and 66; Ex. 94 (Mahabub Depo. Vol. 1) 182:14–183:20 (re Ex. 66, requests for help with financing meant, if team members knew any investors who might be interested in GenAudio, Mahabub, Powers, and/or Mattos would like to talk to them). | Disputed. See response to SOF ¶ 222 above. |
| 224 | Mahabub believed all the optimistic representations in Exhibits 9 and 66 at the time he made them. Those statements, concerning his beliefs regarding the value of an investment in GenAudio, which the SEC highlights in Exhibits 9 and 66 accurately reflected Mahabub's opinions at the time he sent these emails. Mahabub Decl. ¶¶ 21–23; Ex. 9 at 1; Ex. 66 at 1. | Disputed. Mahabub's conduct in falsifying documents and making untrue statements evidences his disbelief and the exaggeration of the value of any investment in GenAudio. Please see Argument §§ IV.B and IV.C regarding the reasonableness of Mahabub's conduct and his scienter. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| 225 | The alterations that the SEC highlighted in the forwarded email in Ex. 66 were not included in the original email that Mahabub sent to Tiscareno et al. Nonetheless, they were understood by Mahabub to be factually accurate and reflected other conversations Mahabub had with Tiscareno and other Apple employees. Mahabub Decl. ¶ 23; Ex. 66 at 1; Demo. 2 at 6. | Disputed. Mahabub's conduct in falsifying documents and making untrue statements evidences his disbelief. Mahabub never communicated with Schiller regarding GenAudio, Schiller had no involvement with GenAudio, and Apple never told Defendants that it planned to incorporate GenAudio's technology in any of its new product roll-outs. *See* SOF ¶¶ 21-23. Please see Argument §§ IV.B and IV.C regarding the reasonableness of Mahabub's conduct and his scienter. |
| 226 | Nothing in Exhibits 9 and 66 asked GenAudio Team Members to convey information concerning a possible deal between GenAudio and Apple to potential shareholders. Exs. 9, 66. | Disputed. These Exhibits encourage the GenAudio team to solicit investors based on GenAudio's current status, about which Mahabub was providing material, untrue information. *See* USOF ¶¶71, 73, 75 and SOF ¶¶ 70, 72, 74. |
| 227 | Exhibit 9 does not contain any altered correspondence between Mahabub and Apple employees. Mahabub Decl. ¶ 22; Ex. 9. | Undisputed |
| 228 | While Exhibit 66 contains altered correspondence from Mahabub to Apple employees, the alterations appear within Mahabub's correspondence to Apple employees. Exhibit 66 does not contain any correspondence from Apple employees to Mahabub. Mahabub Decl. ¶ 23; Ex. 66; Demo. 2 at 6. | Undisputed. |
| 229 | Skluzak decided to invest in GenAudio in April, 2010, well before he received Ex. 40 on May 6, 2010. Ex. 92 (Skluzak Depo.) 58:3–60:5. | Undisputed. |
| 230 | Skluzak testified that he did not rely upon Exhibit 33 when choosing to invest in GenAudio. Ex. 92 (Skluzak Depo.) 61:21–62:10. | Undisputed. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| 231 | Mahabub's intent in sending Ex. 33 to Skluzak was in furtherance of his attempts to get Skluzak to join GenAudio's board of directors, not to induce Skluzak to purchase any GenAudio stock. Mahabub Decl. ¶ 8; Ex. 94 (Mahabub Depo. Vol. 1) 60:17–24, 61:5–17. | Disputed. *See* Resp. SOF ¶ 201. |
| 232 | Mahabub wanted Skluzak on GenAudio's board because of Skluzak's business experience and track record. Mahabub Decl. ¶ 8. | Undisputed. |
| 233 | Mattos communicated with potential investors (friends and family) by phone or by email. Ex. 93 (Mattos Depo.) 29:11–13. If by phone, there were no notes. Id. at 29:14–19. If by email, he used his GenAudio email, which he produced to the SEC. Id. at 29:25–30:6. | Undisputed. |
| 234 | In its MSJ, the SEC did not produce any evidence that Mattos ever actually forwarded one of the GenAudio Team internal emails to potential investors, or communicated any of the facts within them to potential investors. SOF ¶¶ 6, 7, 37, 38, 41, 44, 62, 63, 66, 73, 74, 83, 100, 109, 110, 112 (all facts referring to Mattos). | Disputed that Mattos never "communicated any of the facts [within the GenAudio Team emails] to potential investors." The record reflects that Mattos may have, but he has been unable to recall specific conversations. *See* SEC Resp. SOF ¶ 207; *see also* <u>Ex. 6</u>, Mattos Dep. 70:20 – 24 (Q: Okay. Would you provide those potential shareholders with the information that Mr. Mahabub was providing to you about Apple? A: Perhaps, but again, I don't recall any specific conversations."); *id.* at 72:3 – 8 (testifying that he believed the information Mahabub provided in Ex. 47). |
| 235 | All of the GenAudio Team Emails were sent while the NDA between Apple and GenAudio was in effect. Mahabub Decl. ¶ 14; Ex. 91 (NDA). | Undisputed. |

| SOF ¶ | Defendants' Additional Statement of Fact | SEC's Response to Defendants' SOF |
|---|---|---|
| 236 | Pursuant to the NDA, "Confidential Information" includes information concerning "the nature of [the parties'] business relationship, including, if applicable, the fact that one party provides or may provide goods or services to the other, and the parties' discussions concerning the "Project." Further, "Project" is defined as GenAudio's "AstoundSoundTM and AstoundStereoTM software processing for integration into Apple products." Ex. 91 at ¶ 1. | Undisputed. |
| 237 | Each of the GenAudio Team Emails concerned the business relationship between GenAudio and Apple; the possibility that GenAudio might provide goods or services to Apple, and/or the integration of GenAudio's software into Apple products. Mahabub Decl. ¶ 13; Exs. 7, 9, 21, 23, 31, 33, 46, 66, 72, 75, and 77 | Disputed. Many material statements within the emails were untrue and/or falsified and therefore did not accurately reflect "the business relationship between GenAudio and Apple; the possibility that GenAudio might provide goods or services to Apple, and/or the integration of GenAudio's software into Apple products." *See* SOF ¶¶ 24, 30, 50, 74-75, 78, 82-83, 90. |
| 238 | Mahabub had personal relationships with many investors, and knew them to be accredited. Mahabub Decl. ¶ 5 | Undisputed for purposes of the Motion as to the general statement, but the SEC does dispute that Mahabub had personal relationships with all investors or a basis to reasonably believe that all investors were accredited, including Marvin. *See* Marvin Dec., ECF No. 84-94; Ex. 2, Mahabub Dep. 468:1-11. |