**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-02118-WJM-SKC

SECURITIES AND EXCHANGE
COMMISSION,
        Plaintiff,

        v.

TAJ JERRY MAHABUB, and
GENAUDIO, INC.,

        Defendants.

---

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MOTION FOR FINAL JUDGMENT SEEKING REMEDIES
AGAINST DEFENDANTS TAJ JERRY MAHABUB AND GENAUDIO, INC.
AND TO ESTABLISH A FAIR FUND**

---

Plaintiff Securities and Exchange Commission ("SEC") requests that the Court enter Final Judgment and permanently enjoin Defendants Taj Jerry Mahabub ("Mahabub") and GenAudio, Inc. ("GenAudio") (collectively "Defendants") from future violations of the securities registration provisions of Section 5(a) and (c), and the anti-fraud provisions of Section 17(a)(2) of the Securities Act of 1933 ("Securities Act"), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5(b) adopted thereunder, 15 U.S.C. §§ 77e(a) and (c), 77q(2), 78j(b), and 17 C.F.R. § 240.10b-5(b); order Mahabub and GenAudio to pay disgorgement of their ill-gotten gains, prejudgment interest thereon, and third-tier civil penalties equal to their gross pecuniary gain; establish a Fair Fund; and bar Mahabub, GenAudio's Chief Executive Officer ("CEO"), from serving as an officer and director of any public company.

On October 4, 2018, the Court granted in part the SEC's motion for summary judgment, finding the defendants violated the federal securities laws listed above in the offer and sale of the securities of GenAudio. [*See* Order Granting in Part and Denying In Part SEC's Revised Motion for Summary Judgment dated October 4, 2018, ECF No. 95 (referred to as "Summary Judgment Order" and cited as "ECF No. 95").] The Court found that the Mahabub and GenAudio made six misrepresentations in violation of the anti-fraud provisions, and three and two violations, respectively, of the registration provisions. [*Id. at* 2, 6, 8, 20-33, & 43-44, (the ECF page citations are to the page number in the ECF header, which does not always match the document's internal pagination).] On November 27, 2018, the SEC voluntarily withdrew the claims for relief that were not resolved in the Summary Judgment Order, and agreed to submit a motion for remedies. [ECF No. 99.] The SEC incorporates the undisputed facts stated in the

Summary Judgment Order, the SEC's Revised Motion for Summary Judgment and supporting documents, Declaration of Tracy Bowen ("Bowen Decl."), and its Reply in support of Revised Motion for Summary Judgment [ECF Nos. 95, 84, 84-93, and 91]; and submits the Declaration of Meaghan McDevitt ("McDevitt Decl.") with Exhibits 1, 2 and 3, and Second Declaration of Tracy Bowen ("Second Bowen Decl.") with Exhibits 4 through 9 in support of this motion. "Once the district court has found federal securities law violations, it has broad equitable powers to fashion appropriate remedies." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474-75 (2d Cir. 1996).

I.     **Factual Background**

The following undisputed facts, from the Summary Judgment Order or the SEC's Revised Motion for Summary Judgment, establish the basis for the remedies that the SEC seeks. GenAudio is a Colorado corporation that "engages in the development and marketing of software that creates three-dimensional audio, called 'AstoundSound.'" [ECF No. 95 at 3.] Mahabub founded GenAudio, served as its CEO and its Chairman of the Board from 2009 to 2012. [*Id.* at 3.] "Between November 2009 and April 2012, Mahabub had the right to vote a majority of GenAudio's securities and controlled GenAudio's Board." [*Id.* at 4.]

This case centers on Mahabub's attempts to secure a deal with Apple, Inc., to integrate AstoundSound into Apple products. Between August 2009 and February 2010, Mahabub forwarded several of his e-mails to or from his Apple contacts (mostly Victor Tiscareno) to a group the parties refer to as the "GenAudio Team," meaning "GenAudio's employees, contractors, and Board." [*Id.* at 3-4.] Mahabub altered the forwarded versions of these e-mails. [*Id.* at 4.] These alterations generally conveyed

the impression that Mahabub had met with Phil Schiller and Tim Cook, Apple's officers, that Apple's then-CEO Steve Jobs was being apprised of the GenAudio discussions, that progress toward a deal was proceeding swiftly and they anticipated a 2010 roll out of GenAudio-enhanced Apple products. [*Id*. at 4.] In truth, Mahabub had not met with— and never would meet with—Jobs, Cook, or Schiller, and Apple employees never brought GenAudio to Jobs's attention. [*Id*. at 4-5.] Forwarding altered e-mails to the GenAudio Team continued to be Mahabub's *modus operandi* in coming months and years. [*Id.* at 5.]

Mahabub and GenAudio made at least six false and misleading statements to investors in connection with GenAudio's 2010 and 2011 Offerings of securities, including, for example, that GenAudio was starting to do business with the LCEC, which investors generally understood to be a reference to Apple, and that Mahabub expected a substantial license deal in place for the LCEC's Christmas Product Rollout. [*Id.* at 31-34.] Mahabub also told investors in an August 1, 2010 letter that Steve Jobs had requested a handshake meeting with Mahabub in the near future, which "was a blatant lie." [*Id.* at 33.] Mahabub's and GenAudio's six misrepresentations violated Section 10(b) of the Exchange Act and Rule 10b-5(b), and at least one of the misrepresentations also violated Section 17(a)(2). Mahabub acted with scienter; as a matter of law, because he was at least reckless. [*Id.* at 36.]

The Court also found that Mahabub and GenAudio are liable for sale of unregistered securities in the 2010 and 2011 Offerings, and Mahabub is liable for his personal sales. [*Id.* at 6, 23-24, 27.] Mahabub's sales of his personal shares between November 2009 and April 2012 yielded about $2.6 million in the aggregate from at least

3

85 investors. [*Id.* at 21.] The 2010 Offering yielded approximately $3.5 million. [*Id.*] The 2011 Offering yielded $990,000. [*Id.*]

## II. Legal Standards

A.   Injunction – Section 20(b) of the Securities Act and Section 21(d) of the Exchange Act provide that the SEC may seek a permanent injunction against future violations of the federal securities laws. 15 U.S.C. §§ 77t(b) and 78u(d)(1). To obtain an injunction, the SEC must demonstrate that a defendant either violated or is about to violate a provision of the federal securities laws, and there is a reasonable likelihood the defendant will violate the securities laws in the future if not enjoined. *See SEC v. McDuffie*, 2014 US Dist. LEXIS 128664, *29 (D. Colo. Sept. 15, 2014) (citations omitted); *SEC v. Pros Int'l, Inc.*, 994 F.2d 767, 769 (10th Cir. 1993). Whether a likelihood of future violations exists depends on the "totality of the circumstances surrounding the defendant and his violations." *SEC v. McDuffie*, 2014 U.S. Dist. LEXIS 128664, *30 (quoting SEC v. *Murphy*, 626 F.2d 633, 655 (9th Cir.1980)). "[T]he likelihood of future illegal conduct is 'strongly suggested' by past illegal activity." *SEC v. American Bd. of Trade*, 750 F. Supp. 100, 104 (S.D.N.Y. 1990); *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975). In determining the likelihood of future violations, courts consider the following factors: (1) the fact that the defendant has been found liable for illegal conduct; (2) whether the infraction was an isolated incident or systematic wrongdoing, *(see SEC v. Cavanaugh*, 155 F.3d 129, 135 (2d Cir. 1998)); (3) "the seriousness of the violation, [4] the degree of scienter, [5] whether defendant's occupation will present opportunities for future violations and [6] whether defendant has recognized his wrongful conduct and gives sincere assurances against future

violations." *Pros Int'l, Inc.*, 994 F.2d at 769 (citations omitted); see also *McDuffie,* 2014 U.S. Dist. LEXIS 128664, *30.  Although no single factor is determinative, the degree of scienter "bears heavily" on the determination.  *Pros Int'l Inc., 994 F.2d at 769*.

      B.      <u>Disgorgement and Prejudgment Interest</u> - "Once the SEC has established that a defendant violated securities laws, a court may order the defendant to disgorge a sum of money equal to all the illegal payments he received."  *SEC v. Reynolds*, 2013 U.S. Dist. LEXIS 100941, *23 (N.D. Tex. July 19, 2013) (imposing disgorgement for violations of Section 5) (citations omitted).  The court has broad equitable powers to order disgorgement of ill-gotten gains obtained through the violation of the securities laws.  *SEC v. Maxxon, Inc.*, 465 F.3d 1174, 1179 (10th Cir. 2006).  "Disgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter violations of the securities laws" by making violations unprofitable.  *McDuffie, *31 (citations omitted).*  Disgorgement need only be a "reasonable approximation of defendants' ill-gotten gains."  *SEC v. Curshen*, 372 Fed. Appx. 872, 883 (10th Cir. 2010) (ordering undisputed amount of disgorgement).  Once the SEC meets its burden of showing that "its disgorgement figure reasonably approximates the amount of unjust enrichment," the burden shifts to the defendant to "demonstrate that the disgorgement figure was not a reasonable approximation." *Id*.

Joint and several liability for disgorgement is appropriate in securities cases where, as in this case, "two or more individuals or entities collaborated or have a close relationship in engaging in violations of the securities laws."  *SEC v. United American Ventures, LLC,* 2012 U.S. Dist. LEXIS 51978, *18 (D.N.M. 2012)).  "Where a firm has received gains through its unlawful conduct, [and] where its owner and chief executive

5

officer has collaborated in that conduct and has profited from the violations . . . it is within the discretion of the court to determine that the owner-officer too should be subject on a joint and several basis, to the [remedial] order." *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1475 (2d Cir. 1996).

     C.     <u>Civil Penalties</u> - Section 20(d)(1) of the Securities Act and Section 21(d)(3)(A) of the Exchange Act provide that when any person violates a provision of the Act, the SEC may seek a penalty against any person who has violated the securities laws.  15 U.S.C. §§ 77t(d)(1), 78u(d)(3)(A). These statutes provide three tiers of penalties with the amount of penalty to be determined by the court in light of the facts and circumstances. 15 U.S.C. §§ 77t(d)(2)(A), 78u(d)(3)(B)(i).  Third tier penalties may be assessed against a natural person or company if the violation involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons."  15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii).  The amount of the civil penalty for any of the three tiers may equal the amount of the "gross amount of pecuniary gain" to each defendant as a result of the violation.  *Id.*; *McDuffie*, 2014 U.S. Dist. LEXIS 128644, *32.

    In assessing civil penalties, the court may consider: (1) the egregiousness of the violations at issue; (2) the degree of the defendant's scienter; (3) whether the violations were isolated or recurrent; (4) defendants' failure to admit wrongdoing; (5) whether the defendants' conduct created substantial losses or the risk of substantial losses to investors; (6) defendants' lack of cooperation and honesty with authorities; and (7) whether an otherwise appropriate penalty should be reduced due to the defendants'

demonstrated current and future financial condition. *McDuffie*, 2014 U.S. Dist. LEXIS 128644, at *32-33 (citations omitted).

    D.    <u>Officer and Director Bar</u> - Section 21(d)(2) of the Exchange Act authorizes the Court to prohibit, conditionally or unconditionally, and permanently or for a period of time it shall determine, any person from serving as an officer and director of a public company, if the person violated Section 10(b) of the Exchange Act and the person's conduct demonstrates unfitness to serve as an officer or director of any public company. 15 U.S.C. § 78u(d)(2) (2002). *See SEC v. Patterson*, 2006 WL 770626,*3 (N.D. Okla. Mar. 23, 2006) (O&D bar entered for generation falsified invoices and misrepresenting company financial condition); *SEC v. Wolfson*, 2006 U.S. Dist. LEXIS 29543, *28 (D. Utah May 4, 2006), *aff'd* 249 Fed. Appx. 701 (10th Cir. 2007), (citing *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995)).[1] In *Patterson, Wolfson* and *Patel*, the courts identified six non-exclusive factors that were "useful in making the unfitness assessment": (1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur. In *SEC v. Bankosky*, 716 F.3d 45, 48 (2d Cir. 2013), the court held that the *Patel* factors are still relevant to determining the imposition of an officer and director bar. However, *Bankosky* emphasized "the *Patel*

---

[1] In *Patel,* the court interpreted an earlier version of Section 21(d)(2), which permitted a ban only "if the person's conduct demonstrates *substantial unfitness* to serve as an officer or director." *Id*. at 140-141 (emphasis added) (quoting 15 U.S.D. § 78u(d)(2) (1990). In 2002, Congress replaced "substantial unfitness" with a lower standard of "unfitness." *See* Sarbanes-Oxley Act of 2002 § 305(a), Pub. L. No. 107-204, 116 Stat. 745, 778-79 (2002) (amending 15 U.S.C. § 78u(d)(2))).

7

factors are neither mandatory nor exclusive; a district court may determine that some of those factors are inapplicable in a particular case and it may take other relevant factors into account…." *Bankosky*, 716 F.3d at 48.  Section 308(a) of the Sarbanes-Oxley Act of 2002, as amended, authorizes any civil penalties collected to be added to disgorgement funds for distribution to harmed investors. 15 U.S.C. § 7246(a).

### III.     The Court Should Enter Permanent Injunctions Against the Defendants.

To obtain an injunction, the SEC must demonstrate that a defendant either violated or is about to violate a provision of the federal securities laws, and there is a reasonable likelihood the defendant will violate the securities laws in the future if not enjoined, as discussed in Section II.A.  Both elements are easily met here.  The Court found that between March 2010 and March 2011, Mahabub and GenAudio made six misrepresentations in violation of Section 10(b) and Rule 10b-5(b) of the Exchange Act and one violation of Section 17(a)(2) of the Securities Act in connection with the 2010 and 2011 Offerings.  [ECF No. 95 at 27-33, 36-37 & 43-44]  Mahabub acted with a high degree of scienter, and lied to investors. [ECF No. 95 at 33, 36]  Mahabub also "lied about certain of GenAudio's business relations."  [ECF No. 80, Order Denying Motion to Strike and Denying Motion for Summary Judgment Without Prejudice at 1.]  The scienter of Mahabub, the CEO of GenAudio, is imputed to GenAudio.  *SEC v. Mantria Corp.*, 2011 U.S. Dist. LEXIS 86539, *14-15 (D. Colo. Aug. 5, 2011).  In addition, the Court found that Mahabub and GenAudio committed three and two violations respectively of the securities registration provisions of Section 5(a) and 5(c) of the Securities Act.  [*Id.* at 2, 6, 8, 20-27, 44.]  In total, Mahabub committed nine, and GenAudio committed eight violations of the federal securities laws.

8

Considering the factors discussed in Section II.A., there is a reasonable likelihood the Defendants will violate the securities laws in the future. Defendants committed serious and repeated violations of the antifraud and registration provisions of the federal securities laws. The violations were not isolated incidents, but rather a calculated course of fraudulent conduct occurring over at least a two-year period during which Mahabub, acting as the CEO of GenAudio, made at least six misrepresentations that created the false impression that GenAudio would be acquired by Apple Inc. to persuade investors to purchase GenAudio's securities. In addition, GenAudio admitted in its 2010 and 2011 Offering materials that since 2003, the company has sold securities to accredited and non-accredited 'friends and family' investors which may not qualify for exemption from registration. [ECF No. 84 at 21, ¶ 67.] Their violations deprived investors of material information about the investment, and their misconduct caused substantial losses of over $5.7 million. *See infra* at p. 12. Mahabub, as the CEO and holder of the majority of the stock voting rights of GenAudio,[2] has the opportunity for future violations of the registration and anti-fraud provisions, because he controls the business activities of the company, its processes for raising money from investors, and the information that GenAudio distributes to investors. [ECF No. 91-12, SFO ¶¶ 3, 4, 7, 9, 16, 36, 37, 42, 44, 45, 47, 50-52, 54-58, 60, 102-104, 106.]

Mahabub recently engaged, as the CEO of a company, in developing automated cryptocurrency trading software and offering investments for that business. He solicited at least one investor to invest in this business, which also presents the opportunity for

---

[2] Mahabub continues to serve as GenAudio's CEO. [Exhibit 9, Mahabub Depo. Jan. 19, 2017 at 18:16-18; Second Bowen Decl. at ¶ 8.]

future violations. [McDevitt Decl. at ¶¶ 7, 11-13; Exh. 2 & 3 at p. 6.] This evidence shows that Mahabub intends to remain in the market soliciting investors. In light of Mahabub's history of presenting investors with false and misleading information, an injunction is necessary to protect investors in the future. Finally, neither Mahabub nor GenAudio acknowledge their wrongful conduct or give sincere assurances against future violations. After considering these factors, the Court should enter permanent injunctions prohibiting Mahabub and GenAudio from future violations of Sections 5 and 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5(b).

## IV. The Court Should Order Mahabub and GenAudio to Pay Disgorgement and Prejudgment Interest.

The SEC requests that the Court order Mahabub and GenAudio to pay disgorgement of their ill-gotten gains, as discussed in Section II.B., received from the sale of securities in violation of the registration and antifraud provisions.[3] Between November 2009 and April 2012, Mahabub offered and sold at least 3,391,300 shares of GenAudio stock of his personal stock, and from these personal sales he received $2,593,900. [ECF No. 95 at 21; ECF No. 84-93, Bowen Decl. at ¶ 7]. The SEC is seeking disgorgement from Mahabub of the $1,280,900 that he received from his personal sales from March 2010 through March 2012.[4] [Second Bowen Decl. at ¶ 2]. In addition, the SEC requests that the Court order Mahabub and GenAudio to pay

---

[3] The Defendants do not dispute the amounts that they raised from their unregistered securities sales. [ECF No. 95 at 21.]

[4] From his personal sales, the SEC is not seeking for Mahabub to disgorge the $1,313,000 of sales that occurred before the five year statute of limitations and the application of a tolling agreement between the parties. [ECF No. 1, 14, 15, Complaint & Answers at ¶1 6-17.]

disgorgement of $4,503,000 jointly and severally, which is their ill-gotten gains from the sales of securities in unregistered and fraudulent transactions in the 2010 and 2011 Offerings of $3,513,000 and $990,000 respectively. [ECF No. 95 at 17, 21].

It is appropriate to order disgorgement of the total proceeds that GenAudio and Mahabub received for selling securities without registration. *SEC v. Universal Express, Inc.*, 475 F. Supp. 2d 412, 428 (S.D.N.Y. 2007), *aff'd* 2008 U.S. App. LEXIS 23408 (2d Cir. Nov. 13, 2008); *SEC v. Elliott*, 2012 U.S. Dist. LEXIS 82992, *30-33 (S.D.N.Y. June 12, 2012) (court has broad discretion to impose disgorgement for violations of the securities registration provisions of Section 5).

Similarly, "[t]his amount of disgorgement is proper both for violations of the registration provisions and the fraud violations because it constitutes the total amount raised from the sale of securities." *McDuffie*, 2014 U.S. Dist. LEXIS 128665, *31; *SEC v. First Pacific Bancorp,* 142 F.3d 1186, 1192 (9th Cir. 2010) (in a fraud case, CEO liable for disgorgement of total amount raised from investors). The Court should order Mahabub and GenAudio to pay disgorgement jointly and severally of $4,503,000 because it constitutes the gross amount of ill-gotten gains from Mahabub's and GenAudio's sale of securities in the 2010 and 2011 Offerings. As GenAudio's CEO and controlling shareholder, Mahabub prepared, reviewed and approved the offering materials, and made fraudulent misrepresentations in connection with the sales of securities in the 2010 and 2011 Offerings. [ECF No. 84 at 20, 29 at ¶¶ 58, 106.] The Court found Mahabub was a "substantial factor" in the offer or sale of unregistered securities, and made numerous misrepresentations. [ECF No. 95 at 23, 31-34.] For example, in March 2010 Mahabub wrote to potential investors, "we are starting to

11

discuss the business side of the LCEC, and I expect to have a very substantial license deal in place for their Christmas Product Rollout" and in another letter that the 2010 Offering was "being conducted to provide bridge capital until we can 'ink' a deal with . . . the 'LCEC'." [ECF No. 84-50 at 4; ECF No. 84-52 at 2.] In addition, Mahabub received nearly a million dollars of the proceeds from the 2010 and 2011 Offerings. [ECF No. 84 at ¶¶ 10-12, 94, 119.][5] *See e.g., First Pacific Bancorp,* 142 F.3d at 1192 (CEO who received benefits of fraudulent offering jointly liable for disgorgement). Based on their collaboration and close relationship in engaging in the violations, it is appropriate to hold Mahabub and GenAudio jointly and severally liable for disgorgement and prejudgment interest of the amounts raised in GenAudio's 2010 and 2011 Offerings.

The SEC also requests that the Court impose prejudgment interest on the disgorgement "based on the rate of interest used by the Internal Revenue Service for the under payment of federal income taxes set forth in 26 U.S.C. § 6621(a)(2)." *McDuffie*, 2014 U.S. Dist. LEXIS 128664 at *31. Prejudgment interest calculated on $1,280,900 from April 1, 2012, after Mahabub made his last personal sale at issue in this case, through February 28, 2019, is $357,508. [*See* Second Bowen Decl. at ¶ 3.] Prejudgment interest calculated on $3,513,000 from October 1, 2010, after GenAudio completed the 2010 Offering, through February 28, 2019, is $1,221,866. [*Id.* at ¶ 4.] Prejudgment interest on $990,000 from May 1, 2012, after GenAudio completed the 2011 Offering, through February 28, 2019, is $273,225. [*Id.* at ¶ 5.]

Accordingly, the Court should require Mahabub disgorge $1,280,900 and pay

---

[5] GenAudio paid Mahabub at least $574,970 of the proceeds from the 2010 Offering, and $397,783 from the 2011 Offering. [ECF No. 91-12 ¶ 94, 119]

$357,508 of prejudgment interest thereon on his personal sales, and hold Mahabub and GenAudio jointly and severally liable for $4,503,000 of disgorgement and $1,495,091 of prejudgment interest thereon. [Second Bowen Decl. at ¶ 5.]

## V.     Third Tier Penalties are Proper Against Mahabub and GenAudio.

The SEC requests that the Court order Mahabub and GenAudio to pay third tier civil penalties of $1,280,900 and $4,503,000, respectively, which is the amount of their gross pecuniary gain, for their violations of Sections 5 and 17(a)(2) of the Securities Act, and Section 10(b) of the Exchange Act, and Rule 10b-5(b). Considering the factors and facts in Sections II.C and III, third tier civil penalties are warranted by the Defendants' conduct. Mahabub and GenAudio committed at least six violations of the antifraud provisions. Their conduct was egregious because Mahabub repeatedly lied about GenAudio's dealings with Apple over two years, obtained $4,503,000 from GenAudio's two unregistered securities offerings, and an additional $1,280,900 from Mahabub's personal securities sales in unregistered transactions. [ECF No. 95 at 31-34.]

Defendants' conduct also created substantial losses or the risk of substantial losses to investors. GenAudio and Mahabub spent or dissipated all of the $5,783,900 obtained in the unregistered securities transactions, creating substantial losses or the risk of substantial losses to investors. GenAudio's financial statement reflected that only $18,000 of the $3,513,000 raised in the 2010 Offering remained in the bank account as of March 31, 2011 [ECF No. 91-12 at ¶ 119], and its subsequent bank statement dated May 31, 2015 listed an ending balance of $107.86, reflecting GenAudio had spent nearly all of the $990,000 raised in the 2011 Offering. [*See* Exhibit 7 and Second Bowen Decl. at ¶ 6.] Mahabub's personal bank statement dated July 18, 2012,

13

listed an ending balance of $0, indicating all the funds he received from his personal stock sales have been dissipated.  [*See* Exhibit 8, and Second Bowen Decl. at ¶ 7.]

Moreover, Mahabub and GenAudio have failed to admit their wrongdoing in violating the securities registration and antifraud provisions of the securities laws.  [ECF No. 95 at 23-27, 34, 36.]  In addition, Mahabub has not cooperated or been honest with authorities.  [ECF No. 91-12, SOF ¶ 34-35; ECF No. 91-3 at 537:17-539:15, *e.g.,* Mahabub's testimony about meeting Jobs was not consistent with his Answer; ECF No. 95 at 4-5 (Mahabub never met with Jobs).]  Similarly, Mahabub failed initially to produce the fabricated emails that he sent to the GenAudio Team.  [ECF No. 42]  Lastly, Defendants have not demonstrated their current and future financial condition.  However, Mahabub represented in the past eighteen months that he is a millionaire and hiding his assets from the SEC.  [McDevitt Decl. at ¶ 2, 4-6.]  Accordingly, the SEC requests that the Court order Mahabub and GenAudio to pay third tier civil penalties of $1,280,900 and $4,503,000, respectively.[6]

## VI. The Court Should Permanently Bar Mahabub from Serving as an Officer and Director.

Mahabub is unfit to serve as an officer or director and the Court should permanently bar him from acting in either of these roles.  Considering the factors and facts in Sections II.D, III and IV, his actions, including fabricating emails and lying to investors, were egregious.  Mahabub as the CEO was primarily responsible for creating

---

[6] For the benefit of investors, the SEC requests that Court establish a Fair Fund, under Section 308(a) of the Sarbanes-Oxley Act of 2002, to authorize any civil penalties collected to be added to disgorgement funds for distribution to harmed investors. 15 U.S.C. § 7246(a).

the misrepresentations, and authorizing the unregistered sales.  He also had a substantial economic stake in the violations receiving all the proceeds from his personal sales and nearly a million dollars of the proceeds from GenAudio's sales.  [ECF No. 91-12 ¶¶ 94, 119.]  He remains the CEO of GenAudio, and he fails to recognize that he engaged in illegal conduct; therefore, there is a strong likelihood the violations will recur.  Thus, the Court should permanently bar Mahabub from serving as an officer or director of any public company.  *See e.g.*, *Wolfson*, 2006 U.S. Dist. LEXIS 29543, *28 (imposing officer and director bar); *SEC v. Intelliquis Int'l., Inc.*, 2003 U.S. Dist. LEXIS 27131, *57-59 (D. Utah Dec. 10, 2003) (same).

## VII.     CONCLUSION

Based on the above, the SEC requests that the Court enter Final Judgement and an Order: (1) permanently enjoining Mahabub and GenAudio from future violations of Section 5(a) and (c), and Section 17(a)(2) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5(b), 15 U.S.C. §§ 77e(a) and (c), 77q(2), 78j(b), and 17 C.F.R. § 240.10b-5; (b) requiring Mahabub to pay disgorgement of his ill-gotten gains $1,280,900 on his personal sales and $357,508 of prejudgment interest thereon, and order Mahabub and GenAudio to pay disgorgement jointly and severally of $4,503,000 for the 2010 and 2011 Offerings and $1,495,091 of prejudgment interest thereon; (3) requiring Mahabub and GenAudio to pay third tier civil penalties of $1,280,900 and $4,503,000, respectively; and creating a Fair Fund under 15 U.S.C. § 7246; and (4) permanently barring Mahabub from serving as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act.

DATED:  February 15, 2019,

                Respectfully Submitted,

                */s/ Leslie J. Hughes*

                Leslie J. Hughes (Colo. Bar No. 15043)
                Christopher E. Martin (AZ Bar No. 018486)
                Securities and Exchange Commission
                1961 Stout Street, Suite 1700
                Denver, CO  80294-1961
                Telephone: (303) 844-1000
                Fax: (303) 297-3529
                Email: HughesLJ@sec.gov
                Email: MartinC@sec.gov

                *Attorneys for Plaintiff*
                *Securities and Exchange Commission*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 15, 2019, the document above was e-filed with the Court's ECF system and will be served on those listed below:

Andrew B. Holmes
Holmes, Taylor & Jones, LLP
617 South Olive Street, Suite 1200
Los Angeles, CA 90014
Telephone: 213-985-2265
Email: abholmes@htjlaw.com
*Attorney for Defendant Taj Jerry Mahabub*

Michael P. McCloskey
David J. Aveni
Wilson Elser Moskowitz Edelman & Dicker LLP
655 West Broadway, Suite 900
San Diego, CA 92101
Telephone: 619-321-6200
Email: Michael.McCloskey@wilsonelser.com
Email: David.Aveni@wilsonelser.com
*Attorneys for Defendant GenAudio, Inc.*

                    *s/ Elinor E. Blomgren*
                    Elinor E. Blomgren