IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:15-cv-02118-WJM-CBS

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

TAJ JERRY MAHABUB, GENAUDIO,
INC., and ASTOUND HOLDINGS, INC.,

    Defendants.

---

**DEFENDANT GENAUDIO INC.'S OPPOSITION TO
PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MOTION FOR FINAL JUDGMENT SEEKING REMEDIES AGAINST TAJ
JERRY MAHABUB AND GENAUDIO, INC.**

---

## I. INTRODUCTION

In its Motion for Final Judgment Seeking Remedies ("Remedies Motion"), the Securities and Exchange Commission ("Plaintiff") has requested, against GenAudio, Inc. ("GenAudio"), (1) disgorgement in the amount of $4,503,000 plus $1,495,091 of prejudgment interest thereon; (2) third tier civil penalties in the amount of $4,503,000; and (3) an injunction prohibiting GenAudio from future violations of the Securities Act and the Exchange Act. In the aggregate, Plaintiff seeks $10,501,091 from GenAudio.

In ruling on Plaintiff's Motion for Summary Judgment, this Court already held there is only evidence of *a single purchase of GenAudio securities* causally linked to the 2010 and 2011 Misrepresentations. The Court held this stock purchase totaled only $15,000. (Order Granting In Part And Denying In Part SEC's Revised Motion For Summary Judgment, dated October 4, 2018 ("MSJ Order") at 37.) In support of its Remedies Motion, Plaintiff does not offer *any* further evidence linking the 2010 and 2011 Misrepresentations to any purchases of securities. Plaintiff simply ignores the Court's finding regarding this sole purchase, and asserts, without any further evidence or argument, that every penny GenAudio raised during the 2010 and 2011 Offerings was linked to the misrepresentations and should be disgorged. There is simply no basis for Plaintiff's stance, particularly in light of the Court's prior finding on this issue, to seek disgorgement for the Securities Act § 17(a)(2) and Securities Exchange Act § 10(b) claims beyond this $15,000 amount. Plaintiff simply has done nothing to establish that any amount beyond $15,000 is a reasonable approximation of GenAudio's profit from the misrepresentations and omissions.

Similarly, any civil penalty tied to the Section 10(b) and Section 17(a)(2) violations also must be capped at $15,000, because, based on the Court's prior finding, the amount GenAudio gained from that one stock sale would be the "gross amount of pecuniary gain" from the

misrepresentations. In short, Plaintiff could not seek more than a total of $30,000 in disgorgement and penalties tied to the 2010 and 2011 Misrepresentations.

The remainder of the disgorgement, penalties, and interest Plaintiff seeks from GenAudio – a total of $10,471,091 – could only relate to the only other claim on which Plaintiff prevailed, its claim that GenAudio offered and sold unregistered securities in violation of Securities Act § 5. That is a technical, non-scienter-based violation stemming from the fact a GenAudio employee overlooked some incomplete questionnaires from investors, and that as a result, several unaccredited investors were included in the 2010 and 2011 Offerings.

As detailed below, Plaintiff has only offered evidence that six unaccredited investors participated in the 2010 and 2011 Offerings, and that their purchases of GenAudio stock totaled $237,900. *At most*, disgorgement on the Section 5 claim should be limited to this amount, which would be the most reasonable approximation of GenAudio's gain from the Section 5 violation. Further, GenAudio's disgorgement and civil penalties should be reduced far below that figure because GenAudio no longer has any ongoing operations, nor does it have any funds that could be used to pay any amounts assessed against it. GenAudio is not operating, and has no real chance of ever engaging in business operations again. Similarly, because GenAudio is a defunct corporation, injunctive relief is not warranted.

## II. PLAINTIFF HAS NOT ESTABLISHED THAT THE REASONABLE APPROXIMATION OF GENAUDIO'S GAINS FROM THE VIOLATIONS IS ANYWHERE NEAR THE AMOUNT IT SEEKS

### A. The disgorgement tied to the fraud claims is limited to $15,000

Disgorgement is an equitable remedy designed to prevent a wrongdoer's unjust enrichment and deter future violations of the securities laws. *SEC v. McDuffie*, 2014 WL 4548723, *11 (citing *United State v. Nacchio*, 573 F.3d 1062, 1080 (10th Cir. 2009)). Because disgorgement is an equitable remedy, the Court has broad discretion in determining the amount

to be disgorged. *Id.* (citing *SEC v. Maxxon, Inc.*, 465 F.3d 1174, 1179 (10th Cir. 2006)). The Plaintiff, however, is only entitled to disgorgement for the amount it proves as a <u>reasonable approximation of GenAudio's ill-gotten gains</u>. *See SEC v. Curshen*, 372 Fed. Appx. 872, 883 (10th Cir. 2010). The requested disgorgement must be a "reasonable approximation of profits causally connected to the violation," *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 413 (5th Cir. 2007) (quoting *SEC v. First City Fin. Corp.*, 890 F.3d 1215, 1231 (D.C. Cir. 1989)).

In its request for disgorgement, Plaintiff fails to provide any evidence of a causal connection between the misrepresentations found by the Court as violations of the securities laws. (*See* ECF No. 95 at 31-34.) Rather, Plaintiff relies solely on the total amounts raised in the 2010 and 2011 Offerings of $3,513,000 and $990,000 respectively. (ECF No. 110 at 11.) These amounts, however, are not a reasonable approximation of profits causally connected to a violation of the securities laws.

This Court, in its October 4, 2018 Order, found that "[o]n this record…, only one of the 2010 Misrepresentations shows a causal link between the misrepresentation and GenAudio's receipt of money, namely, Mahabub's April 30, 2010 e-mail regarding the scope of the upcoming "exec buy-in" meeting, which prompted the recipient to purchase 5,000 shares for $15,000." (MSJ Order, ECF No. 95, at 37.) The Court found no causal link between the other five misrepresentations and violations of the securities laws. (*See id.*) Because Plaintiff "voluntarily withdrew the claims for relief that were not resolved in the Summary Judgment Order," the only evidence of a causal connection to a violation of the securities laws exists as set forth in this Court's October 4, 2018 Order. (ECF No. 110 at 1.) Furthermore, Plaintiff, in its Motion for Final Judgment Seeking Remedies, did not offer any supplemental evidence or argument as to why any other investor purchases of GenAudio stock were tied to any of the 2010 or 2011 Misrepresentations. (*See* generally ECF No. 110.) Plaintiff simply asserts in a

conclusory fashion that the *entire* amount of the 2010 and 2011 Offerings should be disgorged as a reasonable approximation of GenAudio's gains from the fraud.

Because Plaintiff's evidence of a causal link between the misrepresentations and GenAudio's stock sales is limited to $15,000, and Plaintiff declined to add any new evidence on this issue, the proper amount of disgorgement for the violations of Section 10(b) and 17(a)(2) is capped at $15,000.00.

## B. Civil Penalties Tied To The Misrepresentations Similarly Must Be Capped At $15,000

In its Remedies Motion, Plaintiff asks this Court to set the amount of civil penalties at an amount equal to the "gross pecuniary gain" from their violations. (*See, e,g.*, Remedies Motion at 1.) As detailed above, Plaintiff has only demonstrated that GenAudio received $15,000 in stock sales from the 2010 and 2011 Misrepresentations. Thus, the gross amount of pecuniary gain from the misrepresentations also would be capped at that amount. In short, Plaintiff cannot obtain more than $15,000 in civil penalties from GenAudio based on the 2010 and 2011 Misrepresentations.

## C. Disgorgement From The Section 5 Claim Should Be Capped At $237,900.

Plaintiff also asserts that the entire amount of the 2010 and 2011 Offerings, more than $4.5 million, should be disgorged as a result of the Section 5 violation, and that an equal amount should be assessed against GenAudio as a civil penalty for that violation. Again, however, as Plaintiff recognizes, the appropriate amount of disgorgement is that which is a "reasonable approximation" of GenAudio's ill-gotten gains from the Section 5 violation. While Plaintiff seeks disgorgement of every penny raised during the 2010 and 2011 Offerings, there is a much more reasonable approximation of the amount GenAudio gained from the violation – namely the amount GenAudio gained from the unaccredited investors who participated in the 2010 and 2011 offerings.

Plaintiff's Section 5 claim is based on the fact GenAudio did not qualify for the Rule 506 exemption from registration of its securities. This Court found "GenAudio's system for ensuring investor accreditation" was flawed, as the GenAudio employee responsible for checking the investor questionnaires overlooked some questionnaires that were incomplete. (MSJ Order, at 25-26.) As part of its Motion for Summary Judgment, Plaintiff provided evidence that six investors' forms were incomplete, and that GenAudio thus could not demonstrate those investors were accredited, as required. (*See* Plaintiff's SOF 64, 65, 111, ECF No. 84.)

Putting aside these six investors, there is no dispute the remaining investors in the 2010 and 2011 Offerings were accredited, and Plaintiff has not offered any evidence to the contrary. Said differently, if GenAudio's employee Jim Mattos had not overlooked the incomplete questionnaires submitted by these six investors, GenAudio would have qualified for the Rule 506 exemption to registration. As a result, the most reasonable approximation of GenAudio's ill-gotten gains from the Section 5 violation is not the full amount raised in the offerings, but rather the amount GenAudio raised from these six investors in the offerings. The exhibits Plaintiff provided in support of its Motion for Summary Judgment related to these six investors shows they purchased a total of $237,900 in GenAudio stock in the challenged offerings.[1] It is this amount – the specific amount raised from investors that were not properly vetted for their accredited investor status – that constitutes the best approximation of GenAudio's gain from the Section 5 violation. At most, disgorgement on the Section 5 claim should be limited to this amount.

**D. Civil Penalties From The Section 5 Claim Also Should Be Capped At $237,900.**

---

[1] Plaintiff, in support of its revised motion for summary judgement, submitted subscriber questionnaires for a total of six (6) individual investors for the 2010 and 2011 Offerings (*See Plaintiff's* SOF paragraphs 64, 65, 111 (ECF No. 84); Exs. 58 – 63.) The investment amounts for each of the six (6) investors are as follows: i) $4,500; ii) $22,200; iii) $149,400; iv) $5,100; v) $10,800; and vi) ($5,100; $12,900; $3,900; $3,000; $21,000). The total investment in GenAudio for these six (6) investors equals $237,900.

1949309v.2  5

For the same reason, civil penalties tied to the Section 5 claim also should be capped at $237,900. Again, Plaintiff has asked the Court to set the amount of civil penalties at an amount equal to the "gross pecuniary gain" from their violations. (*See, e,g.*, Remedies Motion at 1.) Because, as detailed above, the most reasonable approximation of GenAudio's gain from the Section 5 violation is $237,900, the maximum civil penalty should be no more than the same amount. Thus, disgorgement and civil penalties from GenAudio's Section 5 violation should be no more than a total of $475,800.

## III.   RECENT SUPREME COURT PRECEDENT ESTABLISHES DISGORGEMENT IS A PENALTY

### A. Mitigating Factors Should Factor Into Determining Disgorgement Amounts

In *Kokesh v. SEC*, the Supreme Court unanimously held that disgorgement in the context of a securities enforcement case is a "penalty." *Kokesh v. SEC*, 137 S.Ct. 1635, 1639, 1643, 1645 (2017). The Supreme Court noted that Securities and Exchange Commission disgorgement actions since 1970 had been rooted in a federal court's equitable powers. *Id.* at 1640. In *Kokesh*, the Supreme Court acknowledged that "as demonstrated by this case, SEC disgorgement sometimes is ordered without consideration of a defendant's expenses that reduced the amount of illegal profit…,'result[ing] in a punitive sanction that the law of restitution normally attempts to avoid.'" *Id.* at 1644-45 (quoting the Restatement (Third) of Restitution). Because there is no statutory authorization for Plaintiff to seek disgorgement as a remedy, now that the Supreme Court has found disgorgement relief sought by the SEC constitutes a penalty, it is far from clear that the SEC may continue to seek disgorgement in civil actions. *See U. S. v. Parkinson*, 240 F.2d 918, 922 (9th Cir. 1956) ("Anything which savors of a penalty should not be permitted unless Congress has expressly so provided, since the spirit of equity abhorred such punitive measures). Recognizing that this ruling alters the traditional landscape within which Plaintiff has normally operated with respect to disgorgement related to Securities Act § 17(a)(2), Securities

Exchange Act § 10(b), and Securities Act § 5 violations, the Court should refrain from adopting Plaintiff's penalty sought by way of disgorgement.

The Court, in its discretion, should fashion an equitable remedy based on a reasonable approximation of GenAudio's profit from the one misrepresentation that resulted in a stock purchase and the six unaccredited investors in the 2010 and 2011 Offerings. Doing so avoids any implication the disgorgement is a penalty unsupported by statutory authority and comports with the mandate that any disgorgement amount be a reasonable approximation of profits causally connected to the violation. As set forth above and given this framework, the proper disgorgement amount, at most, is $252,900 ($15,000 + $237,900) plus prejudgment interest on that amount.

Although this disgorgement amount of $252,900 is a reasonable approximation of GenAudio's profits causally linked to the securities violations, in light of *Kokesh*, the Court should consider mitigating factors and order a lower disgorgement amount. *Kokesh*, affirmatively established disgorgement awards in SEC enforcement actions constituted a penalty. *Kokesh*, 137 S.Ct. at 1639, 1643, 1645. As a penalty, the Court is allowed to consider mitigating circumstances when determining the amount of the penalty to be assessed. *McDuffie*, 2014 WL 4548723 at *11 (citations omitted). GenAudio respectfully request the Court deny Plaintiff's requested disgorgement and prejudgment interest amount and apply an equitable remedy given the facts and circumstances of this case and based on a reasonable approximation of GenAudio profits tied to a violation of at most $252,900.

## IV. SIGNIFICANT MITIGATING FACTORS WEIGH AGAINST ASSESSMENT OF PENALTIES

### A. Any civil penalty should be based on the lower amount causally connected to the violation

Plaintiff is seeking third tier penalties against GenAudio in the amount of $4,503,000, which Plaintiff asserts is the amount of its gross pecuniary gain. (ECF No. 110 at 13.) As

discussed above at II.B., Plaintiff's approximation of profits attributable to GenAudio was flawed and failed to adhere to this Court's October 4, 2018 Order, finding the only causal connection with a violation of the securities laws resulted in a $15,000 pecuniary gain to GenAudio. Similarly, the civil penalties assessed for the Securities Act § 5 violation should be capped at $237,900 as set forth at II.D. above.[2] Accordingly, the proper amount to be assessed as a civil penalty, if any, should be capped at $252,900.

### B. The circumstances and facts of this case mitigate in favor of reduced penalties

In assessing civil penalties, the Court may consider (1) the egregiousness of the violations at issue; (2) the degree of the defendant's scienter; (3) whether the violations were isolated or recurrent; (4) defendants' failure to admit wrongdoing; (5) whether the defendants' conduct created substantial losses or the risk of substantial losses to investors; (6) defendants' lack of cooperation and honesty with authorities; and (7) whether an otherwise appropriate penalty should be reduced due to the defendants' demonstrated current and future financial condition. *McDuffie*, 2014 WL 4548723 at *11 (citations omitted).

In connection with GenAudio, the Court should consider the following significant mitigating factors. GenAudio's current and future financial position is such that it does not have the ability to pay a civil penalty in any amount. (Declaration of Taj Jerry Mahabub ("Mahabub Decl."), ¶¶ 3, 4.) In addition, GenAudio is a defunct corporation that has ceased all business operations and is no longer engaged in the sale of securities. (Mahabub Decl., ¶ 5.)

Based on these factors, the Court is urged to use its discretion in assessing a civil penalty against GenAudio, and because GenAudio is a defunct corporation, there is also no risk of future violations.

---

[2] Third tier penalties are not available to Plaintiff with respect to non-scienter based Section 5 violations because Plaintiff cannot demonstrate "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." 15 U.S.C. §§ 77t(d)(2)(C).

In further support of its third-tier penalty request, Plaintiff provides purported new evidence regarding Mr. Mahabub's continued involvement in corporate fundraising in a new entity unrelated to GenAudio and his current financial condition. (ECF No. 110 at 9-10, 14.) This new evidence, however, has no bearing on mitigating factors relevant to *GenAudio's* ability to pay an assessed penalty. Simply put, GenAudio is a defunct corporation with zero ($0) funds available to pay a civil penalty. Accordingly, in light of GenAudio's mitigating factors, the Court should not assess civil penalties against GenAudio, or in the alternative, assess them in the amount no greater than $252,900 proven to be causally linked to a securities violation.

## V. INJUNCTIVE RELIEF IS NOT WARRANTED AGAINST GENAUDIO

### A. There is no reasonable likelihood of future violations

The Court may enjoin GenAudio from violating securities laws if Plaintiff demonstrates that a violation of the securities laws has occurred and that there is a reasonable probability of the defendants engaging in future violations if not enjoined. *McDuffie*, 2014 WL 4548723 at *10 (citations omitted). Plaintiff cannot demonstrate there is a reasonable probability GenAudio will engage in future violations of securities laws.

As discussed above in IV.B., GenAudio is a defunct corporation that has ceased operations and is no longer engaged in the sale of securities. The new evidence regarding Mr. Mahabub's alleged involvement in corporate fundraising is irrelevant to the injunctive relief analysis. Thus, Plaintiff cannot establish the second prong required to seek an injunction. Accordingly, the Court should deny Plaintiff's request for injunctive relief.

## V. CONCLUSION.

For the reasons outlined above, Plaintiff's Motion for Final Judgment Seeking Remedies should be modified so that (a) any requested disgorgement is denied or greatly reduced, in light of mitigating factors, to an amount reasonably approximated to the alleged improper gains, i.e., $252,900; (b) civil penalties not be awarded or be set by the Court to match the actual gross

pecuniary gain attributable to GenAudio as a reasonable approximation causally connected to securities violations and taking into consideration GenAudio's inability to pay and the other significant mitigating factors described above; and (c) injunctive relief be denied since there is no reasonable probability of future violations of securities laws.

Dated:  March 15, 2019                    Respectfully submitted,

WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP

By: s/ Michael P. McCloskey
    Michael P. McCloskey
    WILSON ELSER MOSKOWITZ
      EDELMAN & DICKER, LLP
    401 West A Street, Suite 1900
    San Diego, CA  92101
    (619) 321-6200 (tel)
    (619) 321-6201 (fax)
    michael.mccloskey@wilsonelser.com
    *Attorneys for Defendant GENAUDIO, INC.*