**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No.:  1:15-cv-02118

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.

TAJ JERRY MAHABUB, GENAUDIO,
INC., and ASTOUND HOLDINGS, INC.,

      Defendants.

---

**DEFENDANT TAJ JERRY MAHABUB'S OPPOSITION TO PLAINTIFF SECURITIES
AND EXCHANGE COMMISSION'S MOTION FOR FINAL JUDGMENT SEEKING
REMEDIES AGAINST TAJ JERRY MAHABUB AND GENAUDIO, INC.**

---

I.      INTRODUCTION

In its motion, the SEC seeks (among other things) $1,280,900 in disgorgement (plus prejudgment interest) from Defendant Taj Jerry Mahabub ("Mahabub") for the sale of his personal shares between March 2010 and March 2012 in violation of § 5 of the Securities Act of 1933 ("Securities Act").[1] The SEC also seeks a third-tier civil penalty of $1,280,900 (an amount equal to the disgorgement amount).

This Court sits in equity when it considers disgorgement and penalties, and has broad discretion to fashion appropriate remedies. *SEC v. McDuffie*, 2014 WL 4548723, *11 (citing *United State v. Nacchio*, 573 F.3d 1062, 1080 (10th Cir. 2009)). And, as this Court is no doubt aware, there is no longer a meaningful distinction between a "disgorgement" and "penalties." The Supreme Court in *Kokesh v. SEC*, 137 S.Ct. 1635 (2017) found that "disgorgement" is really just another kind of penalty. As such, the Court has discretion adjust the appropriate penalties for both the "disgorgement penalty" and the "penalty penalty" the SEC seeks.

In light of the foregoing, and as set forth herein, the starting point for an appropriate "penalty penalty" here should be no more than the first tier statutory maximum of $5,000 (adjusted for inflation). Indeed, even if the starting amount the Court uses is much higher, after application of the *SEC v. McDuffie* factors, and based on Mr. Mahabub's demonstrated near-insolvency, we ask that the Court exercise its discretion to issue a total monetary order of no more than $5,000, as adjusted for inflation (representing a statutory penalty and no "disgorgement penalty") for Mr. Mahabub's violation of § 5 of the Securities Act.[2]

---

[1] With regard to all of the "joint and several" disgorgement arguments (including Mr. Mahabub's antifraud violations and GenAudio's registration violations) Mr. Mahabub hereby expressly adopts, incorporates, and joins in the arguments contained in GenAudio's separate Opposition to the SEC's remedies motion.

[2] All of the *SEC v. McDuffie* factors also apply to the $15,000 in sales tied to the anti-fraud violation, as described in GenAudio's separate Opposition.

## II.   ARGUMENT

### A.   <u>Mr. Mahabub Should Not Be Jointly Liable for GenAudio's Registration Violations</u>

While Mr. Mahabub agrees that disgorgement for the anti-fraud violation may be joint and several, he disagrees that the disgorgement tied to GenAudio's registration violation should be. The SEC's Remedies motion "lumps" the disgorgement amounts attributable to the anti-fraud and registration violations together, and argues that Mr. Mahabub and GenAudio are jointly and severally liable for both.

First, as set out in GenAudio's separate Opposition (and incorporated herein), the amount subject to disgorgement for the anti-fraud violations is no more than $15,000, and is by no means co-extensive with the registration violation-related disgorgement. As such, they must be considered separately.

Second, the Court should "exercise…discretion in reducing or rejecting joint-tortfeasor liability when particular defendants…have received different amounts of 'illicit profits' from those violations." *SEC v. E-Smart Technologies*, 139 F.Supp.3d 170, 189 (D.C. 2015). Such different amounts must be shown with "concrete evidence—that the ill-gotten gains [each] benefited from may clearly and easily be segregated from [the] overall profits." *Id.*, 188. The SEC's own Remedies Motion clearly identifies separate amounts received by Mr. Mahabub and by GenAudio as a result of each of their registration violations. As such, Mr. Mahabub should not be liable for GenAudio's registration violations. This conclusion is consistent with the Court's order on the SEC's Summary Judgment Motion. (ECF 95).[3]

///

///

///

---

[3] In the event the Court disagrees, and imposes joint and several liability on Mr. Mahabub for GenAudio's registration violations, Mr. Mahabub incorporates GenAudio's argument that the amount should be no more than $237,900.

**B.  The Court should not impose penalties because you can't squeeze blood from a stone**

The Court should not impose, or at the very least drastically reduce, sanctions pursuant to Section 20(d) of the Securities Act (15 U.S.C. § 77t(d)) and Section 21(d)(3) of the Exchange Act (15 U.S.C. § 78u(d)(3)). The extreme penalties sought by the SEC are not warranted here. Common factors considered by courts in the 10th Circuit when determining whether, and to what extent, a penalty is appropriate are:

> (1) the egregiousness of the violations at issue; (2) the degree of the defendant's scienter; (3) whether the violations were isolated or recurrent; (4) defendants' failure to admit wrongdoing; (5) whether the defendants' conduct created substantial losses or the risk of substantial losses to investors; (6) defendants' lack of cooperation and honesty with authorities; and (7) whether an otherwise appropriate penalty should be reduced due to the defendants' demonstrated current and future financial condition.

*SEC v. McDuffie*, 2014 U.S. Dist. LEXIS 128664, at *32-33 (D. Colo. Sep. 15, 2014), citing *SEC v. United American Ventures, LLC*, 2012 U.S. Dist. LEXIS 51978, [WL] at *25 citing, *SEC v. Universal Express, Inc.* 646 F.Supp.2d 552, 568 (S.D.N.Y. 2009).

An analysis of these factors—particularly the lack of scienter required for a violation of § 5 of the Securities Act and Mr. Mahabub's demonstrated inability to pay—militate in favor of either no penalty at all or an amount significantly less than the millions of dollars the SEC seeks.

**1.  Mr. Mahabub Does Not Contest the Officer and Director Bar Sought by the SEC**

Mr. Mahabub understands that the SEC seeks a public company officer and director bar, and does not oppose that remedy. This should demonstrate that, notwithstanding Mr. Mahabub's arguments regarding his inability to pay and the appropriate penalties, he understands and accepts that this remedy appropriately follows the Court's order on the SEC's summary motion.

**2.  Mr. Mahabub Did Not Act With Scienter With Regard To His Personal Stock Sales**

A violation of § 5 of the Securities Act does not require any scienter. In fact, as stated in this Court's Order on the SEC's Summary Judgment:

> A prima facie case of violation comprises the following elements: "(1) no registration statement was in effect as to the securities, (2) the defendant sold or offered to sell these securities, and (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale." *SEC v. Cont'l Tobacco Co.*, 463 F.2d 137, 155 (5th Cir. 1972).

(ECF 95, p.23.) And Mr. Mahabub lacked any intent to violate § 5 of the Securities Act, as his many open discussions and disclosures of his sales indicate. See, e.g., Declaration of Taj Jerry Mahabub ("Mahabub Decl.") at ¶¶ 11-15. Indeed, disclosure of Mr. Mahabub's personal stock sales – primarily to fund the operations of GenAudio – was repeatedly and openly disclosed in GenAudio's PPMs:

> It was openly discussed in the March 15, 2010 PPM:

> As of March 1, 2010, Mr. Mahabub has sold 3,464,750 of his personal shares of Company Common Stock to investors at varying prices […] The purpose of these [personal stock] sales has been, among other things, for Mr. Mahabub to raise funds to loan to the Company for purposes of financing the Company's operations…

(GenAudio Inc.'s Confidential Private Placement Memorandum dated March 15, 2010 (Dkt No. ECF 84-3; filed as an Exhibit in support of the SEC's Motion for Summary Judgment) at ECF p. 53 (internal p. 49)). And it was again openly discussed in the April 22, 2011 PPM:

> As of March 31, 2011, Mr. Mahabub has sold approximately 5,980,100 of his personal shares of Company Common Stock to investors at varying prices […] The purpose of these sales has been, among other things, for Mr. Mahabub to raise funds […] to loan to the Company for purposes of financing the Company's operations at various times over the past few years when the Company experienced shortages of funds.

GenAudio Inc.'s Confidential Private Placement Memorandum dated April 22, 2011 (Dkt No. ECF 84-4; filed as an Exhibit in support of the SEC's Motion for Summary Judgment) at ECF pp.62-63 (internal pp. 58-59).

These are hardly the acts of someone who was knowingly violating the registration requirements of the securities laws.

### 3.  Mr. Mahabub Lacks the Ability to Pay Anything – Let Alone Substantial Penalties

Most importantly, any penalty would be excessive given Mr. Mahabub's inability to pay. This has been described as "one of the most important factors" to be considered in the context of assessing a penalty. *SEC v. Gunn*, No. 08-CV-1013-G, 2010 U.S.Dist. LEXIS 88164, at *44-*45 & n.25 (N.D.Tex. Aug. 25, 2010) (collecting cases). Mr. Mahabub has a single bank account with a balance, as of March 7, 2019, of $4.94. Mahabub Decl., ¶ 3 and Exh. A. He has no other ban or brokerage accounts and owns no real property. He is financially dependent on his friends and family while he tried to rebuild his life. Mahabub Decl., ¶¶ 2-10.

In sum, the Court should not impose penalty because Mr. Mahabub lacks the funds to pay it. Such a result would not be an outlier. Faced with a similar situation, courts have declined to assess a penalty. For example, in *SEC v. Druffner*, 517 F.Supp.2d 502 (D. Mass. 2007), the defendant's "total assets [were] worth less than $30,000 and he does not have the means to pay any civil penalties." *Id.* at 513. Based on those facts, the court found that penalties were unwarranted. *Id.* Likewise, in *SEC v. Hollenbeck*, No. 1:05-CV-1272-WBH, 2008 U.S. Dist. LEXIS 129895, at *16-*17 (N.D.Ga. July 9, 2008), the court found that it was very likely that the defendant "cannot pay a civil fine," due to the order of disgorgement in that action and the various other civil and criminal liabilities the defendant had incurred. Mr. Mahabub's financial situation is similarly precarious and the court should make a similar finding here.

In sum, any effort to collect a penalty from Mr. Mahabub, never mind a substantial one like the SEC seeks here, would be like squeezing blood from a stone. If the SEC and the Court want there to be a reasonable possibility of Mr. Mahabub paying any amount ordered, then the amount should not be so far out of reach as to be unattainable. Given the amount of disgorgement sought by the SEC in this case, a penalty does not serve any rational purpose, as a deterrent or otherwise.

At most, the Court should exercise its discretion and award no more than the statutory amount of $5,000 (as adjusted for inflation) for first tier penalties for the § 5 violations. 15 U.S.C. § 77t(d)(2)(A). While the SEC seeks third tier penalties, only first tier penalties are available with respect to non-scienter based § 5 violations because the SEC can't demonstrate "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." 15 U.S.C. §§ 77t(d)(2)(B), (C). Further, capping the penalties to the first tier statutory amount is justified given Mr. Mahabub's precarious financial situation. As described above, Mr. Mahabub's "financial condition is such that he is unlikely to be able to satisfy the court's order of disgorgement, much less pay whatever penalty is imposed." *Gunn*, 2010 U.S.Dist. LEXIS 88164, at *51-*53 (limiting penalty to $50,000 when the SEC sought a third tier penalty). Accordingly, Mr. Mahabub respectfully submits that, if the Court does assess a penalty in addition to disgorgement, that it be limited to the statutory tier one penalty of $5,000, as adjusted for inflation. 15 U.S.C. §§ 77t(d)(2)(C).

### C.  The Court may also consider Mr. Mahabub's ability to pay disgorgement

In the past, some courts have distinguished between disgorgement and penalties, finding that ability to pay was not a proper consideration as to the former. *See, e.g., SEC v. Druffner*, 517 F.Supp.2d 502, 512-13 (D. Mass 2007). However, that artificial restriction should be reconsidered in light of the Supreme Court's recent ruling in *Kokesh v. SEC*, 137 S.Ct. 1635 (2017). There, the Court held that "[d]isgorgement, as it is applied in SEC enforcement proceedings, operates as a penalty under [28 U.S.C.] § 2462" (the "catchall" statute of limitations for actions to enforce a penalty). *Id.* at 1645. In so doing, the Court noted that the purpose of SEC disgorgement is to serve as a penalty:

> In such cases, disgorgement does not simply restore the status quo; it leaves the defendant worse off. The justification for this practice given by the court below demonstrates that disgorgement in this context is a punitive, rather than a remedial, sanction: Disgorgement, that court explained, is intended not only to "prevent the wrongdoer's unjust enrichment" but also "to deter others' violations of the securities laws." App. to Pet. for Cert. 43a.

*Id.* Given the Court's analysis, that the purpose of disgorgement in an SEC action is punitive rather than remedial, the defendant's ability to pay is a proper consideration.

As with the statutory penalties, no purpose is served in issuing a disgorgement order that is far beyond Mr. Mahabub's ability to pay off. To be practical, Mr. Mahabub respectfully submits that the "disgorgement" portion of the order should be drastically reduced and/or eliminated.

## III.   CONCLUSION

For the foregoing reasons, the monetary remedies sought by the SEC as against Mr. Mahabub should be reduced to an amount that Mr. Mahabub might actually be able to pay in his lifetime – an amount in the lower six figures would have the same effect on Mr. Mahabub that a multi-million dollar amount might have on a wealthy defendant. We ask that this Court, sitting in equity, exercise its discretion to issue such a monetary remedy here.

Respectfully submitted,

Dated:  March 15, 2019

By:  /s/  Andrew B. Holmes
Andrew B. Holmes
HOLMES, TAYLOR, SCOTT & JONES LLP
The Oviatt Building
617 South Olive Street, Suite 1200
Los Angeles, CA 90014
Telephone:  (213) 985-2200
Facsimile:  (213) 973-6282
Email:  abholmes@htsjlaw.com
*Attorneys for Defendant Taj Jerry Mahabub*

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2019 a true and correct copy of the foregoing was served as follows:

| Electronically via CM/ECF to the following: | Per D.C.Colo.LCivR 6.1(c): |
|---|---|
| Leslie J. Hughes, Trial Counsel<br>Danielle R. Voorhees, Trial Counsel<br>SECURITIES AND EXCHANGE COMMISSION<br>1961 Stout Street, Suite 1700<br>Denver, CO 80294-1961<br>Ph: (303) 844-1000<br>Email: HughesLJ@sec.gov<br>Email: VoorheesD@sec.gov<br>*Attorneys for Plaintiff*<br>*Securities and Exchange Commission* | Taj Jerry Mahabub<br>9743 Carr Circle<br>Westminster, CO 80021<br>Email: t.rextrad@yahoo.com<br>*Defendant* |
| Michael P. McCloskey<br>David J. Aveni<br>WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP<br>401 West A Street, Suite 1900<br>San Diego, CA 92101<br>(619) 321-6200<br>(619) 321-6201 (fax)<br>michael.mccloskey@wilsonelser.com<br>david.aveni@wilsonelser.com<br>*Attorneys for Defendant GenAudio, Inc.* | |

By:  s/ Andrew B. Holmes
Andrew B. Holmes, Esq.
HOLMES, TAYLOR, SCOTT & JONES LLP
The Oviatt Building
617 South Olive Street, Suite 1200
Los Angeles, CA 90014
Telephone:  (213) 985-2200
Facsimile:  (213) 973-6282
Email:  abholmes@htsjlaw.com
*Attorneys for Defendant Taj Jerry Mahabub*

8