IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No.:  1:15-cv-02118

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.

TAJ JERRY MAHABUB, GENAUDIO,
INC., and ASTOUND HOLDINGS, INC.,

      Defendants.

**DECLARATION OF DEFENDANT TAJ JERRY MAHABUB**

# DECLARATION OF TAJ JERRY MAHABUB

I, Taj Jerry Mahabub, declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the following statements are true and correct, that this declaration is made on my personal knowledge, and that I am competent to testify as to the matters stated herein:

1. I make this declaration in my personal capacity as a defendant in the SEC's lawsuit.

2. It is my understanding that, due at least in part to the SEC lawsuit, the previous banks and financial institutions I worked with chose to close my accounts. I had a great deal of difficulty finding a bank willing to allow me to open an account which caused me great financial distress.

3. Attached hereto as **Exhibit A** are true and correct copies of redacted bank statements for the most recent two months from KeyBank, the only bank account in my name or for my benefit.

4. While I (through Astound Studios, LLC) built out a high-end professional studio facility for the sole benefit of GenAudio, for mastering, mixing, developing, and testing audio technology in California, I did not own the building the studio facility was in. In or about early 2018, I learned the owner of the building took control of the studio facility. Moreover, even the equipment I had purchased and/or that was previously used there is no longer in my possession.

5. I don't have any credit cards.

6. I do not own or have any beneficial interest in any real property domestically or abroad.

7. While I would love to someday have one, I do not now, nor have I ever, owned a yacht.

8. I have experimented with trading in foreign currencies (forex), but despite short—lived increases in account value, my forex trading was not profitable. I no longer trade in forex and don't have a forex account.

9. I have turned my attention to crypto currencies, and am currently working on software for cryptocurrency mining and data forecasting. I have yet to make any money with that software, and, as it is in development, it still faces development costs (programming, etc.) prior to being able to truly test and/or use it.

10. I am surviving through the generosity of my fiancée and friends, who have been supporting me as I attempt to rebuild my devastated finances.

11. I understand that certain of my personal GenAudio stock sales were found to be in violation of § 5 of the Securities Act of 1933. I am also informed that my subjective state of mind is not a factor in determining whether I violated the law. That said, I'm not a lawyer, and think it is important to point out my subjective understandings about those sales.

12. First, the sales of my personal GenAudio stock were largely completed in order to provide funds I could put right back into GenAudio so that the employees could be paid, keep the business alive, and build out the California studio facility. The money was not used by me to line my pockets or live an extravagant lifestyle.

13. I had no idea the sales of my personal stock were in violation of any law. I was under the impression that – so long as GenAudio's Board of Directors was aware of and approved my stock sales (especially since there were business attorneys on the Board), that the sales were "approved" and legal.

14. In fact, it was GenAudio's Board of Directors who encouraged me to sell my personal shares in order to lend money to the company – including the attorneys on the Board. Moreover, those attorneys were the first to buy my shares – and even did so while GenAudio's PPM was effective, so they bought from me rather than through GenAudio's concurrent offering.

15. The sales of my personal GenAudio holdings were discussed with and specifically approved by GenAudio's Board of Directors (as documented in the minutes from those meetings), and in fact, my personal stock sales and related loans to GenAudio were disclosed in the PPMs sent to investors. I truly thought I was not in violation of any law pertaining to the registration of this stock or its sale.

16. Finally, my concern remains with obtaining some kind of value for the shareholders for their investment in GenAudio. GenAudio has no revenue, no bank accounts, and has ceased all operations. Unfortunately, a group of opportunistic and hostle former board members have begun to raid GenAudio's intellectual property. While I believe GenAudio would have meritorious (and valuable) claims against these former board members, neither GenAudio nor I have the financial ability to bring legal action against them. So they may get away with it.

17. I have reported the IP theft and infringement to the FBI on more than one occasion, but due to the non-public nature of their investigations, I don't know what – if anything – they are doing to follow-up on my report. My fear is that – since I've been labeled such a bad actor – that anything I point out as the independent bad acts of other is looked at dimly, and not given the attention it may otherwise deserve. I hope that someone is able to go after these individuals in order to obtain at least some value for GenAudio's shareholders.

18. This same group has been targeting GenAudio's technology since at least 2013, and they first attempted a hostile takeover in an effort to put GenAudio into a Chapter 11 bankruptcy in 2014. After the counsel I had retained at that time were able to have their effort defeated, they tried again, and tried to force GenAudio into Chapter 7 involuntary bankruptcy later that year. My then attorneys were able to defeat that effort, as well. But all of this had taken a toll on my and GenAudio's finances, as the funds we were forced to expend on these legal maneuvers could not be used to position GenAudio for success, and was the beginning of the end. We received the SEC's first subpoena shortly thereafter, and that sealed GenAudio's fate.

By so effectively hobbling GenAudio, this group clearly sought to obtain the IP (the company's most valuable asset) at fire sale prices during an anticipated bankruptcy.

19. I would ask that the Court consider that – while I am working hard to create a future for me and my family – I have no ability to pay anything toward any penalty (disgorgement or otherwise), and ask that the Court exercise its discretion due to my dire financial situation and inability to pay.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of March, 2019 at Westminster, Colorado.

_____
Taj Jerry Mahabub

# CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2019 a true and correct copy of the foregoing was served as follows:

| Electronically via CM/ECF to the following: | Pursuant to D.C.COLO.LCivR 6.1(c): |
|---|---|
| Leslie J. Hughes, Trial Counsel<br>Danielle R. Voorhees, Trial Counsel<br>SECURITIES AND EXCHANGE COMMISSION<br>1961 Stout Street, Suite 1700<br>Denver, CO 80294-1961<br>Ph: (303) 844-1000<br>Email: HughesLJ@sec.gov<br>Email: VoorheesD@sec.gov<br>*Attorneys for Plaintiff*<br>*Securities and Exchange Commission* | Taj Jerry Mahabub<br>9743 Carr Circle<br>Westminster, CO 80021<br>Email: t.rextrad@yahoo.com<br>*Defendant* |
| Michael P. McCloskey<br>David J. Aveni<br>WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP<br>401 West A Street, Suite 1900<br>San Diego, CA 92101<br>(619) 321-6200<br>(619) 321-6201 (fax)<br>michael.mccloskey@wilsonelser.com<br>david.aveni@wilsonelser.com<br>*Attorneys for Defendant GenAudio, Inc.* | |

By: s/ Andrew B. Holmes
Andrew B. Holmes, Esq.
HOLMES, TAYLOR, SCOTT & JONES LLP
The Oviatt Building
617 South Olive Street, Suite 1200
Los Angeles, CA 90014
Telephone: (213) 985-2200
Facsimile: (213) 973-6282
Email: abholmes@htsjlaw.com
*Attorneys for Defendant Taj Jerry Mahabub*