**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-02118-WJM-SKC

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

        v.

TAJ JERRY MAHABUB, and
GENAUDIO, INC.,

        Defendants.

---

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
REPLY IN SUPPORT OF MOTION FOR FINAL JUDGMENT SEEKING REMEDIES
AGAINST DEFENDANT GENAUDIO, INC. AND TO ESTABLISH A FAIR FUND**

---

Plaintiff Securities and Exchange Commission ("SEC") requests that the Court reject the arguments of GenAudio Inc. ("GenAudio") [ECF No. 111, "GenAudio Brief"], which are not supported by fact or law; order GenAudio, jointly and severally with Taj Jerry Mahabub ("Mahabub"), to disgorge $4,503,000 raised in the unregistered 2010 and 2011 Offerings, plus prejudgment interest on that amount; order GenAudio to pay a civil penalty equal to its gross pecuniary gains of $4,503,000; and permanently enjoin GenAudio against future violations of the federal securities laws.  The SEC will submit a separate reply to Mahabub's opposition to remedies.[1]

The Court granted in part the SEC's motion for summary judgment against GenAudio and Mahabub finding that they violated the securities registration and anti-fraud provisions of Sections 5(a), 5(c) and 17(a)(2) of the Securities Act of 1933 ("Securities Act"), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5(b) [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)(2), and 78j(b) and 17 C.F.R. § 240.10b-5(b)] [ECF No. 95, referred to as "Summary Judgment Order"].  As the Court found, GenAudio made repeated, false representations about its prospects of being acquired by Apple Inc. and raised $4,503,000 from investors in two unregistered offerings.  GenAudio's conduct warrants the remedies requested by the SEC that are necessary to prevent the unjust enrichment of the defendants, to return as much money as possible to investors, and to deter others from attempting similar violations of the securities laws.

---

[1] To the extent Mahabub adopted GenAudio's arguments by reference in his reply, these arguments jointly apply to Mahabub and are incorporated by reference herein.

I. <u>Disgorgement of $4,503,000 Raised in the 2010 and 2011 Offering is Appropriate for the Section 5 Claim</u>.

There is no dispute that GenAudio and Mahabub violated the registration requirements of Section 5 as to both the 2010 and 2011 Offerings. *Summary Judgment Order* at 23, 27. After the SEC established the *prima facie* case, the burden shifted to GenAudio to prove that each offering was exempt. *SEC v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953). GenAudio failed to meet its burden. *Summary Judgment Order* at p. 24-27. "It is undisputed that 'GenAudio is unable to provide information as to the number or sophistication of investors it solicited to invest' in either the 2010 or 2011 Offerings," and failed to provide the information disclosure required including an audited balance sheet with the 2010 or 2011 Offerings. Id. at 25. Accordingly, both offerings violated Section 5.

The SEC's request for disgorgement of $4,503,000 is a reasonable approximation of GenAudio's ill-gotten gains from its unregistered 2010 and 2011 Offerings that violated Section 5 of the Securities Act, because Defendants do not dispute that they raised $4,503,000 in the offerings. Id. at 17, 21. "This amount of disgorgement is proper both for violations of the registration provisions and the fraud violations, because it constitutes the total amount raised from the sale of securities." *SEC v. McDuffie*, 2014 U.S. Dist. LEXIS 128664, *31 (D. Colo. 2014). GenAudio argues that $4,503,000 is not reasonable approximation, and instead, disgorgement should be limited to the $237,900 raised from the six, unaccredited investors[2] who

---

[2] GenAudio's assertion depends on its incorrect premise that *only* six investors were unaccredited. While the record shows that six were unaccredited. GenAudio failed to prove that no more than 35 investors were unaccredited. Indeed, the Court found GenAudio was unable to

2

participated in the 2010 and 2011 Offerings. GenAudio Brief at 4-5. However, GenAudio identifies no cases that support its argument that the Court should abandon legal precedent, such as *McDuffie,* that the *total amount* raised from the sale of securities is the appropriate measure of disgorgement.

In addition, GenAudio fails to address or distinguish the numerous cases cited in the SEC's brief in which the amount of disgorgement ordered in a Section 5 case is the total amount raised from the unregistered sales of securities. *See, e.g., SEC v. Reynolds*, 2013 U.S. Dist. LEXIS 100941, *23 (N.D. Tex. July 19, 2013) ("Once the SEC has established that a defendant violated securities laws, a court may order the defendant to disgorge a sum of money equal to all the illegal payments he received" while violating Section 5.); *SEC v. Elliott*, 2012 U.S. Dist. LEXIS 82992, *30-33 (S.D.N.Y. June 12, 2012) (violations of Section 5); *SEC v. First Pacific Bancorp,* 142 F.3d 1186, 1192 (9th Cir. 2010); *SEC v. Universal Express, Inc.*, 475 F. Supp. 2d 412, 428 (S.D.N.Y. 2007), *aff'd* 2008 U.S. App. LEXIS 23408 (2d Cir. Nov. 13, 2008); *SEC v. Parkersburg Wireless Ltd. Liability Co.*, 991 F. Supp. 6, 9 n.4 (D.D.C. 1997) (finding it "entirely appropriate" to require disgorgement of the full amount of money received from investors to prevent unjust enrichment and to return as much money as possible to investors).

The purpose of disgorgement is to force "a defendant to give up the amount by which he was unjustly enriched." *SEC v. Commonwealth Chemical Securities, Inc.*, 574

---

provide information as to the number of investors it solicited, let alone their accreditation, and failed to provide the disclosure required including an audited balance sheet with the 2010 or 2011 Offerings. *Summary Judgment Order* at 25. Based on this record, Defendants cannot argue that only six investors were unaccredited, and so the entire offerings were unlawful.

3

F.2d 90, 102 (2d Cir. 1978).  "Once the Commission has established that a defendant has violated the securities laws, the district court possesses the equitable power to grant disgorgement without inquiring whether, or to what extent, identifiable private parties have been damaged by [the] fraud."  *SEC v. Tome*, 833 F.3d 1086, 1096 (2d Cir. 1987), *cert. denied*, 486 U.S. 1014 (1988). Therefore GenAudio's argument to limit disgorgement to particular unaccredited investors should be rejected, and it should be ordered to disgorge the full amount of $4,503,000, its ill-gotten gains raised in the 2010 and 2011 Offerings that violated Section 5.   As co-participants in the unregistered offers and sales, GenAudio and Mahabub, as a "substantial factor," *Summary Judgment Order* at 23, should be jointly and severally liable for the full amount of disgorgement plus prejudgment interest thereon.  *See SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1475 (2d Cir. 1996) (owner and chief executive officer held joint and severally liable for disgorgement).

    II.    <u>GenAudio's Disgorgement as a Result of Fraud Should Not Be Reduced</u>.

GenAudio argues disgorgement for both of the SEC's fraud claims should be limited to $15,000 based on a "single purchase of GenAudio's securities causally linked to the 2010 and 2011 Misrepresentations."  GenAudio Brief at 1, citing Summary Judgment Order at 37.  However, GenAudio misconstrues the Court's holding and ignores SEC's claim 2, which the Defendants violated.  The Court found one of the 2010 Misrepresentations showed a causal link between the misrepresentation and the receipt of money establishing Defendants' liability as a matter of law on the SEC's Claim 2, which alleged violation of Section 17(a)(2) of the Securities Act.  Summary Judgment Order at 37.  But that factual finding does not apply to the SEC's Claim 4, which alleged

violations of Exchange Act Section 10(b) and Rule 10b-5(b).  On the Section 10(b) claim, the Court found "The 2010 and 2011 Misrepresentations establish Defendants' liability as a matter of law on Claim 4." *Id.*  A claim under Section 10(b) of the Exchange Act does not contain the same requirement as Section 17(a)(2) that a person "obtain money or property by means of any untrue statement of a material fact."  Therefore, GenAudio and Mahabub should disgorge the total amount of $4,503,000 raised through the 2010 and 2011 Misstatements that violated Section 10(b) of the Exchange Act and Rule 10b-5(b).  The $4,503,000 is the same amount of disgorgement that the SEC seeks for GenAudio's unregistered sales made in the 2010 and 2011 Offerings that violated Section 5 of the Securities Act.

    III.    <u>GenAudio's Disgorgement and Civil Penalties Should Not Be Reduced</u>.

GenAudio also argues that its disgorgement and civil penalties should be reduced because GenAudio no longer has any ongoing operations, nor does it have any funds to pay any amounts assessed against it.  *GenAudio Brief* at p. 2, 8.  In deciding a motion for disgorgement, courts do not consider a defendant's claims of financial hardship.  See discussion in SEC's Reply in Further Support of its Motion for Final Judgment Seeking Remedies Against Defendant Taj Jerry Mahabub at 9; *see also SEC v. McCaskey*, 2002 U.S. Dist. LEXIS 4915, *17-18 (S.D.N.Y. Mar. 26, 2002) ("Court may order disgorgement in the amount of the wrongdoer's total gross profits, without giving consideration to whether or not the defendant may have squandered and/or hidden the ill-gotten profits."); *SEC v. Thomas James Assoc., Inc.*, 738 F. Supp. 88, 95 (W.D.N.Y. 1990) ("Nor may a securities law violator avoid or diminish his responsibility to return his ill-gotten gains by establishing that he is no longer in possession of such funds due to

subsequent, unsuccessful investments or other forms of discretionary spending."). The primary purpose of disgorgement as a remedy for violations of the securities laws is to deprive violators of their ill-gotten gains. *McCaskey,* at *8-9. Entry of a disgorgement judgment is appropriate "despite a defendant's inability to pay, given that the defendant may subsequently acquire the means to satisfy the judgment." *SEC v. Grossman*, 1997 U.S. Dist. LEXIS 6225, 1997 WL 231167 at *10 (S.D.N.Y. May 6, 1997). GenAudio obtained ill-gotten gains of $4,503,000 through repeated violations of the securities registration and antifraud provisions. GenAudio should be ordered to disgorge the full amount of its ill-gotten gains.

While demonstrated financial condition is a factor courts consider in assessing civil penalties, see *McDuffie*, 2014 WL 4548723 at *11, GenAudio fails to put forward credible evidence demonstrating its financial inability to pay disgorgement or a civil penalty, submitting instead the uncorroborated declaration of Mahabub, whom the Court previously found to be a liar.   [ECF No. 80 at 1; ECF No. 95 at 31-33.] Furthermore, Mahabub's declaration does not address the company's assets that include several patents. GenAudio represented in its 2010 Offering Memorandum and attached valuation report that it owned AstoundSound Technology, consisting of associated patents, know-how and trade secrets, that "has the potential to create gross licensing based revenues of over One Billion Dollars" and listed three patents that it owned. Skluzak Declaration at ¶¶ 3-4. GenAudio also reported obtaining additional patents in April 2016. *Id.* at ¶ 5. GenAudio and Mahabub have not notified its shareholders that the company is defunct. *Id.* at ¶ 7.   Public records obtained by the SEC from the U.S. Patent and Trademark Office's website show that GenAudio is the registered assignee

of five patents and one application, but one patent has expired. *See* Blomgren Declaration at ¶¶ 2-7. Where GenAudio has failed to demonstrate its financial inability, it is appropriate to order it to pay third tier civil penalties.

      IV.     <u>Entry of a Permanent Injunction Is Appropriate.</u>

GenAudio argues that the Court should not enter a permanent injunction claiming there is not a reasonable probability the defendant will engage in future violations, because GenAudio is a defunct corporation. As discussed above, Defendants have not put forward credible evidence that the company is defunct. GenAudio has not advised its shareholders that the company is defunct. Skluzak Declaration at ¶ 7. It has not taken steps to liquidate its assets and distribute them to its creditors and shareholders. *Id.* Mahabub remains its chief executive officer. *Id.* at ¶¶ 5, 7 & 8. GenAudio is the assignee of at least four patents, with maintenance fees due on three. Blomgren Declaration at ¶¶ 3-7. Based on GenAudio's repeated violations over several years, Mahabub's continued control of the company and its assets, there is a strong likelihood of future violations.

      V.     <u>An Award of Civil Penalties Equal to $4,503,000 is Appropriate.</u>

The SEC requests that the Court order GenAudio to pay civil penalties equal to its gross pecuniary gain of $4,503,000 received from it two unregistered securities offerings, which is the same amount obtained through its 2010 and 2011 Misstatements. GenAudio argues civil penalties for its violations of the antifraud provisions of Securities Act Section 17(a)(2), Exchange Act Section 10(b) and Rule 10b-5(b) should be capped at $15,000. GenAudio Brief at 4. As discussed above, GenAudio misconstrues the Court's decision, which found a single transaction causally connected to a violation of

Section 17(a)(2).  The Court also found all the sales made through the 2010 and 2011 Misstatements violated Exchange Act Section 10(b).  Summary Judgment Order at 37.

GenAudio also argues that civil penalties for its Section 5 violations should be capped at $237,900.  GenAudio Brief at 4.  As discussed above, GenAudio's gross pecuniary gain from violating the registration provisions are the total of all its securities sales made in the 2010 and 2011 Offerings.  GenAudio did not meet its burden of establishing any exemption from registration applied, so its gross pecuniary gain from the unregistered sales was $4,503,000, all the proceeds from the two offerings.

Securities Act Section 20(d)(2) and Exchange Act Section 21(d)(3), 15 U.S.C. §§ 77t(d)(2) and 78u(d)(3), provide for three tiers of civil penalties, which have been adjusted for inflation for conduct occurring after March 3, 2009, 17 C.F.R. § 201.1004.  A first tier penalty for each violation shall not exceed the greater of $75,000 for an entity, or the gross pecuniary gains as a result of the violation.  The amounts under second and third tiers penalties for an entity increase, respectively, to $375,000 and $725,000, or the gross amount of pecuniary gain.  Second tier penalties are appropriate if the violation involved "fraud, deceit, manipulation or reckless disregard of a regulatory requirement." 15 U.S.C. 77t(d)(2)(B), 78u(d)(3)(B)(ii). Third tier penalties add a requirement that the violations directly or indirectly resulted in in substantial losses or created significant risk of losses to other persons.  GenAudio's conduct involved fraud because it violated Securities Act Section 17(a)(2), Exchange Act Section 10(b) and Rule 10b-5(b), and reckless disregard of the regulatory requirement of registering its 2010 and 2011 Offerings when it violated Securities Act Section 5.  It also resulted in investors losing the entire $4,503,000 raised in the two offerings.  A third tier penalty

equal to the gross pecuniary gain of $4,503,000 is appropriate. GenAudio committed at least 90 violations related to each of its sales in the 2010 and 2011 Offerings which would equal first tier penalty of $6,750,000. [ECF No. 84, SOF 54, 102.] GenAudio's unsubstantiated financial condition does not support reducing the civil penalty amount.

    VI.    <u>*Kokesh* Does Not Support GenAudio's Argument that Disgorgement is Not Authorized</u>.

GenAudio and Mahabub[3] ask this Court to refrain from ordering the company to pay disgorgement, arguing disgorgement is a penalty "not authorized by Congress," and that the SEC must have statutory authorization to seek disgorgement as a remedy, citing *Kokesh v. SEC*, 137 S. Ct. 1635, at 1639, 1643, 1645 (2017), and *U.S. v. Parkinson*, 240 F.2d 918, 922 (9th Cir. 1956). GenAudio Brief at pp. 6-7. However, these cases do not support Defendant's argument. In *Kokesh*, the Supreme Court held that disgorgement is a penalty only "within the meaning" of the five year statute of limitations provided by 28 U.S.C. § 2462. 137 S.Ct. at 1639, 1643. "At least 15 federal courts have ruled that Kokesh did not overrule the long-standing precedent that courts possess authority to order disgorgement in SEC enforcement proceedings." *SEC v. Camarco*, 2018 U.S. Dist. LEXIS 212816, *5 (D. Colo. Dec. 18, 2018); *see also SEC v. Jammin Java Corp.*, No. 2:15-cv-08921, 21017 U.S. Dist. LEXIS 157730, 2017 WL 4286180, at *3 (C.D. Cal. Sept. 14, 2017); *SEC v. Mapp*, 2018 U.S. Dist. LEXIS 125352 (E.D. Tex. Jul. 25, 2018). The Ninth Circuit has likewise rejected the exact argument that defendants make here regarding *Kokesh*. *SEC v. Liu*, 2018 WL 5308171, at *3 (9th

---

[3] The SEC addresses Mahabub's arguments on *Kokesh* in its separate reply, which it incorporated by reference herein.

9

Cir. Oct. 25, 2018).

The Supreme Court recognized that disgorgement is an equitable remedy that has been imposed by courts since the 1970's, and that Congress was aware of that practice when it authorized the Commission to seek additional monetary civil penalties in 1990. *Kokesh*, 137 S.Ct. at 1638, 1640; *citing SEC v. Texas Gulf Sulphur Co.*, 312 F. Supp. 77, 91 (S.D.N.Y. 1970), *aff'd in part and rev'd in part*, 446 F.2d 1301 (2d Cir. 1971). In the *Texas Gulf* case, the court rejected the holding in *U.S. v. Parkinson*, and concluded the court could "fashion an appropriate remedy to effectuate" the congressional purpose of the securities acts by requiring "the defendants to give up profits realized in the transactions which violated Section 10(b) and Rule 10b-5." *Id*. at 92-93. *Kokesh* provides no basis for the Court to abandon precedent of permitting the SEC to obtain disgorgement in civil enforcement actions. *See SEC v. Sample*, No. 3:14-cv-1218-B, 2017 U.S. Dist. LEXIS 191025, 2017 WL 5569873, at *2 (N.D. Tex. Nov. 20, 2017) ("*Kokesh* had no effect on how courts apply disgorgement principles.") The Court should reject Defendants' request to refrain from imposing disgorgement because it is a penalty.

VII. Conclusion

GenAudio engaged in repeated security fraud, and two unregistered offerings that caused investors to lose their entire investment of $4,503,000. It is appropriate to order GenAudio to disgorge the total amount of $4,503,000 plus prejudgment interest of $1,495,091, to pay a civil penalty equal to its gross pecuniary gain of $4,503,000, and enjoin it from future violations of Sections 5(a) and 5(c), 17(a)(2) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5(b).

DATED:  April 5, 2019,

        Respectfully Submitted,

        */s/ Leslie J. Hughes*

        Leslie J. Hughes (Colo. Bar No. 15043)
        Christopher E. Martin (AZ Bar No. 018486)
        Securities and Exchange Commission
        1961 Stout Street, Suite 1700
        Denver, CO  80294-1961
        Telephone: (303) 844-1000
        Fax: (303) 297-3529
        Email: HughesLJ@sec.gov
        Email: MartinC@sec.gov

        *Attorneys for Plaintiff*
        *Securities and Exchange Commission*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2019, the document above was e-filed with the Court's ECF system and will be served on those listed below:

Andrew B. Holmes
Holmes, Taylor & Jones, LLP
617 South Olive Street, Suite 1200
Los Angeles, CA 90014
Telephone: 213-985-2265
Email: abholmes@htjlaw.com
*Attorney for Defendant Taj Jerry Mahabub*

Michael P. McCloskey
David J. Aveni
Wilson Elser Moskowitz Edelman & Dicker LLP
655 West Broadway, Suite 900
San Diego, CA 92101
Telephone: 619-321-6200
Email: Michael.McCloskey@wilsonelser.com
Email: David.Aveni@wilsonelser.com
*Attorneys for Defendant GenAudio, Inc.*

          *s/ Elinor E. Blomgren*
          Elinor E. Blomgren