**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-02118-WJM-CBS

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

                v.

TAJ JERRY MAHABUB, and
GENAUDIO, INC.,

                Defendants.

---

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
REPLY IN FURTHER SUPPORT OF ITS MOTION FOR FINAL JUDGMENT SEEKING
REMEDIES AGAINST DEFENDANT TAJ JERRY MAHABUB AND TO ESTABLISH A
FAIR FUND**

---

I.   **INTRODUCTION**

Plaintiff Securities and Exchange Commission ("SEC") hereby submits its Reply in further of support of its Motion for Final Judgment Seeking Remedies Against Defendant Taj Jerry Mahabub ("Mahabub") and to Establish a Fair Fund (D.E. # 110).[1] In Mahabub's response, he conceded that a permanent officer and director bar is appropriate (*see* D.E. # 112 at 3), did not give any reason why the Court should not impose a permanent injunction against him, and did not contest the disgorgement amount relating to his personal sales (subject to his dubious argument that the Court should reduce his disgorgement amount due to his financial condition).  Mahabub did, however, contest whether the Court should hold him jointly and severally liable with GenAudio's disgorgement and he claims that, at most, he should be jointly and severally liable with GenAudio for $15,000 of disgorgement for the 17(a)(2) anti-fraud violation[2] and $237,900 for GenAudio's registrations provisions, and that his disgorgement amount should be reduced based on his financial condition.  *See id.*, at 2 & 6-7.  Mahabub also claims that the Court should not impose or should dramatically reduce his penalty amount, based on his claim that he has demonstrated an inability to pay and he did not act with scienter as to the Section 5 violations.  *See id.*, at 3-6.

For several reasons, the Court should reject each of Mahabub's arguments and grant the SEC's Motion for Final Judgment.  First, the case law is clear that this is

---

[1] The Defendants submitted separate responses to the SEC's Motion for Final Judgment.  *See* D.E. #'s 111-12.  Accordingly, we are filing separate replies and we incorporate by reference the legal memorandum contained in the SEC's Reply in Further Support of its Motion for Final Judgment Seeking Remedies Against Defendant GenAudio, Inc. ("GenAudio") regarding joint and several liability and the proper disgorgement amounts for GenAudio's Section 5 and the Defendants' anti-fraud violations.

[2] Mahabub fails to address or even acknowledge that the Court found he had violated Section 10(b) and Rule 10b-5(b) of the Securities Exchange Act of 1934 ("Exchange Act") on at least six separate occasions.  *See* D.E. # 95 at 31-34.

exactly the type of situation, where Mahabub and GenAudio collaborated and have a very close relationship, in which joint and several liability is appropriate.  Second, numerous courts have found that an inability to pay is not a basis to reduce disgorgement.  Third, the Court should reject any attempt to limit the Defendants' disgorgement for Section 5 violations to only GenAudio's sales to unaccredited investors where the Court expressly found that an exemption does not apply.[3]  Simply put, Defendants are improperly trying to shift the burden of proof for Section 5 violations.  To establish a violation of Section 5, it is the SEC's burden to show that offers and sales were unregistered, which we did for all sales, then it is the Defendants' burden to show to there was an exemption from registration, which they completely failed to do.  Hence, every offer and sale made by the Defendants violated Section 5, so the Court should require them to disgorge all the proceeds the Defendants received from the unregistered securities sales.  Fourth, the Court should also impose a significant penalty against Mahabub, who acted egregiously by fabricating documents and defrauding and causing substantial losses to investors.  Mahabub has also not rebutted the SEC's evidence that he has assets that he is trying to hide.  Lastly, regardless of Mahabub's financial condition, the Court should impose a significant penalty against him to punish him and deter others from engaging in similar misconduct.

---

[3] Notably, for Mahabub's personal sales this argument does not even apply, since he was not the issuer, so he did not have any basis to claim an exemption from registration.  *See* D.E. # 95 at 24.

II.  **LEGAL MEMORANDUM**

   A. *Kokesh* **Does Not Overrule Long Standing Precedent that Disgorgement is an Equitable Remedy that is Not Reduced Due to the Defendant Dissipating His Ill-Gotten Gains**

"Disgorgement is designed to deprive a wrongdoer of unjust enrichment" and to make violations unprofitable. *U.S. v. Nacchio*, 573 F.3d 1062, 1080 (10th Cir. 2009) (citation omitted). The court has "broad equitable powers to order disgorgement of ill-gotten gains obtained through the violation of the securities laws." *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (internal citations omitted); *see also SEC v. Maxxon, Inc.*, 465 F.3d 1174, 1179 (10th Cir. 2006) (broad discretion to award disgorgement as an equitable remedy). *U.S v. Telluride*, 146 F.3d 1241, 1247 (10th Cir. 1998) (disgorgement is an equitable remedy that is akin to a "restorative injunction").[4] Nor is there any doubt that after the Supreme Court's decision in *Kokesh v. SEC*, 137 S.Ct. 1635 (2017) (which held that there was a five-year statute of limitations on disgorgement) that disgorgement is an appropriate remedy. Indeed, on remand from the Supreme Court in *Kokesh*, the Tenth Circuit directed the district court to order disgorgement. *SEC v. Kokesh*, 884 F.3d 979, 985 (10th Cir. 2018) (instructing the District Court to enter an order requiring Defendant to <u>disgorge</u> $5,004,773). And the Ninth Circuit has rejected the exact argument that defendants make here regarding *Kokesh*. *SEC v. Liu*, 2018 WL 5308171, at *3 (9th Cir. Oct. 25, 2018).

---

[4] Contrary to Defendants' specious claim that disgorgement is nothing more than a penalty, disgorgement and civil penalties are distinct remedies that fulfill different policy objectives. As further explained below, disgorgement is an equitable remedy that is designed to restore the status quo by ordering the defendant to return his ill-gotten gains, while a civil penalty is a statutory remedy designed to punish the defendant for violating the law and to deter others from violating the federal securities laws.

This precedent is reinforced by statutory provisions that presuppose the existence of the remedy.  For example, in enacting the Securities Law Enforcement Remedies Act of 1990, Congress noted "[c]ourts in civil proceedings currently may order disgorgement under their equitable powers." S. Rep. No. 101-337, at 8, n.7, 10 (1990); *SEC v. Palmisano*, 135 F.3d 860, 865 (2d Cir. 1998) (discussing history). Sarbanes Oxley Section 308(c), 15 U.S.C. § 7246(c), directed the Commission to study how to "improve the collection rates for . . . disgorgements."  Also, within Exchange Act Section 20A(b)(2), Congress allowed defendants in private actions to offset damages obtained by private plaintiffs by the amounts defendants are "required to disgorge" in a SEC enforcement action. Congress also acknowledged the remedy when it excepted "disgorgement payment[s]" ordered in SEC enforcement actions from discharge under the bankruptcy code. 11 U.S.C. § 523(a)(19).  Such legislation, and Congress's retention of the statutory language that courts have relied on in ordering disgorgement, is "convincing support for the conclusion that Congress accepted and ratified the unanimous holdings of the Courts of Appeals" endorsing that remedy. *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Comm. Project, Inc.*, 135 S.Ct. 2507, 2520 (2015).

In the face of this insurmountable precedent, Defendants' claim after the Supreme Court decision in *Kokesh* that disgorgement is now nothing more than a penalty and thus, the Court should consider the Defendants' financial condition as a mitigating factor to lower the disgorgement amount.  Notably, Defendants cite to no authority supporting their contention.  In fact, every court that has considered whether anything has changed regarding disgorgement after *Kokesh* (besides disgorgement now having a five-year statute of limitations) has rejected it.  As one court observed,

"*Kokesh* made clear it was addressing a narrow issue—whether disgorgement is a 'penalty within the meaning' of the statute of limitations in § 2462—and explicitly warned that '[n]othing in this opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings.'" *SEC v. Ahmed*, 2018 WL 4266081, at *5 (D. Conn. Sept. 6, 2018); *SEC v. Camarco*, 2018 WL 6620878, at *2 & n. 2 (D. Colo. Dec. 18, 2018) ("At least 15 federal courts have ruled that *Kokesh* did not overrule the long-standing precedent that courts possess authority to order disgorgement in SEC enforcement proceedings" and "numerous federal courts have rejected the argument that *Kokesh* reclassified disgorgement as a penalty"). Numerous other courts agree:

- *SEC v. Mapp*, 2018 WL 3570920, at *7 (E.D. Tex. Jul. 25, 2018) ("Mapp asserts that because such disgorgement is a penalty, it is no longer a remedial or compensatory exercise of the Court's equity power. … Mapp's interpretation expands beyond the clear decision in *Kokesh*, which provides no basis that would compel the Court to abandon precedent of permitting the SEC to obtain disgorgements in civil enforcement actions.");

- *SEC v. Present*, 2018 WL 1701972 at *2 (D. Mass. Mar. 20, 2018) ("*Kokesh's* holding on the scope of Section 2462 does not undermine First Circuit precedent supporting a court's equitable power to prevent unjust enrichment by ordering disgorgement. Moreover, no court has understood *Kokesh* to call such authority into question. This Court likewise concludes that its equitable power to order disgorgement remains intact.");

- *SEC v. Revolutions Medical Corp.*, 2018 WL 2057357, at *3 (N.D. Ga. Mar. 16, 2018) ("every court to address this argument has found that nothing in *Kokesh* has affected the SEC's legal authority to seek disgorgement. Because the Eleventh Circuit has expressly recognized disgorgement as a proper remedy in SEC enforcement actions, the Court declines to find that *Kokesh* has undermined that authority."); and

- *SEC v. Brooks*, 2017 WL 3315137, at *8 (S.D. Fla. Aug. 30, 2017) *("Kokesh*'s holding cannot be plucked from the statutory context that gives it force. *Kokesh* is about statutes of limitations, and its holding is embedded in this context. Its first paragraph could not make this sentiment plainer.").

Moreover, well established precedent has repeatedly rejected the Defendants' contention that their disgorgement amount should be reduced due to their financial condition. The recipient of fraudulent proceeds may be held liable for disgorgement even if they no longer possess the proceeds of the fraud. *SEC v. World Capital Market, Inc.*, 864 F.3d 996, 1007 (9th Cir. 2017); *see also SEC v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1113 (9th Cir. 2006) (How the recipient of ill-gotten funds choses to spend the illegally obtained funds has no relevance to the disgorgement calculation.); *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) (Disgorgement order appropriate even when fraudulent proceeds were "paid over to others" after their receipt).[5] Thus, to fulfill the underlying policy objective of disgorgement, the Court should use its well-established equitable authority to require the Defendants to disgorge all their ill-gotten gains irrespective whether the Defendants have spent down their ill-gotten gains.

### B. The Court Should Impose a Significant Penalty Against Mahabub to Punish Him and Deters Others from Violating the Law

The Court should impose a significant penalty against Mahabub, who acted egregiously by fabricating documents and defrauding investors. In fact, the Court found that Mahabub lied and acted with scienter by committing at least six violations of the antifraud provisions. D.E. # 95 at 31-34. His conduct was also egregious because Mahabub repeatedly lied about GenAudio's dealings with Apple over two years, helped

---

[5] *See also SEC v. Free*, No.06–14891, 2011 WL 5143201, at *3 (E.D. Mich. Oct.31, 2011) ("Unlike disgorgement, imposition of civil penalty requires a court to consider defendant's financial condition."); *SEC v. Universal Express, Inc.*, 646 F.Supp.2d 552, 565 (S.D.N.Y. 2009) ("In deciding a motion for disgorgement, a court is not bound to consider a defendant's claims of financial hardship."); *SEC v. Inorganic Recycling Corp.,* 2002 WL 1968341 at *4 (S.D.N.Y. Aug. 23, 2002) ("claims of poverty cannot defeat the imposition of a disgorgement order or civil penalty ... to withhold the remedy of disgorgement or penalty simply because the swindler claims that she has already spent all the loot and cannot pay would not serve the purposes of the securities laws.")

6

GenAudio raise from investors $4,503,000 from two unregistered securities offerings, and he obtained an additional $1,280,900 from investors from his personal securities sales in unregistered transactions. [ECF No. 95 at 31-34.] Mahabub's misconduct created substantial losses to investors as the Defendants' dissipated all of the $5,783,900 obtained in the unregistered securities transactions.

Here, the SEC has requested that the Court impose a gross pecuniary gain penalty of $1,280,900 against Mahabub, which the Court is authorized to do regardless of which tier applies to his misconduct.[6] The amount of the penalty is to be determined by the Court "in light of the facts and circumstances," and the penalty for any one violation may not exceed the greater of (i) "the gross amount of pecuniary gain" or (ii) the amount listed in the applicable "penalty tier." Both the Securities Act of 1933 ("Securities Act") and the Exchange Act establish the same three penalty tiers: Tier I applies to all violations; Tier II violations involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement;" and Tier III applies to violations satisfying the Tier II requirements but that additionally "resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 77t(d)(2); 15 U.S.C. § 78u(d)(3)(B). The maximum penalty for each violation (applicable unless the defendant's pecuniary gain is higher) has been adjusted upward over time to

---

[6] Mahabub's assertion that he did not act with scienter in violating Section 5 is a red herring, because scienter is not an element of Section 5. As further explained below, under any of the penalty tiers the Court can order him to pay a penalty equal to "the gross amount of his pecuniary gain." Also, by violating Section 5 through a "reckless disregard of regulatory requirement" **(**which he did by selling more than $1.28 million of unregistered securities from his personal holdings without any basis to claim an exemption from registration (*see* D.E. # 95 at 24)) and causing substantial losses, third-tier penalties are appropriate for his Section 5 violations. In addition, there is no dispute that he acted with scienter by committing fraud by violating Section 10(b) and Rule 10b-5(b) of the Exchange Act on at least six separate occasions and he caused substantial losses to investors. *See* D.E. # 95 at 31-34. Hence, third-tier penalties are also appropriate for Mahabub's anti-fraud violations.

7

reflect inflation. For violations during the period at issue in this case, the maximums under both the Securities Act and the Exchange Act are set out at 17 C.F.R. § 201.1004, 17 C.F.R. Pt. 201, Subpt. E, Tbl. IV.[7] The per-violation penalties under both statutes for a natural person are: $7,500 for each Tier I violation; $75,000 for each Tier II violation; and $150,000 for each Tier III violation. Thus, under the "First Tier" the Court may impose a gross amount of pecuniary gain penalty of $1,280,900 or a penalty of up to $7,500 on Mahabub for *each* of his 113 unregistered sales in violation of Section 5 (ECF No. 84-93, Declaration of Tracy W. Bowen at ¶ 7), which would total $847,500, and under the "Third Tier", the Court may impose a gross amount of pecuniary gain penalty of $1,280,900 or a penalty of up to $150,000 on Mahabub for *each* of his six violations of the anti-fraud provisions, which would total $900,000 (the Court found Mahabub violated the anti-fraud provisions at least six times).

Also, Mahabub has not rebutted the SEC's evidence that he has substantial assets that he is trying to hide from SEC. In its Motion for Final Judgment, the SEC cited to a declaration from an accountant that Mahabub befriended, who swore under oath that Mahabub told her that he had assets worth "over $10 million," he was a millionaire, "but must hide his assets because of the SEC's lawsuit against him and GenAudio," and he had made money in Bitcoin by selling it "at its peak," and he "hid his trading profits by depositing them onto [a card] that was not tracked by the government." *See* D.E. # 110-1, ¶¶ 2 & 5-6. In his Response, Mahabub provided a declaration where

---

[7] The statutory adjustment for inflation increased the penalty amount for conduct occurring after March 3, 2009. *See* 17 C.F.R. 201.1004, 17 C.F.R. Pt. 201, Subpt. E, Tbl. IV. The conduct at issue in this case occurred after March 3, 2009; therefore, this adjustment for inflation is the appropriate rate for this case.

he claims he is broke, but he does not address the crucial components of the accountant's declaration.  For example, he claims he used to trade in Forex (which is not the same as Bitcoin), but he does not address whether he hides the proceeds from his Bitcoin sales on a card not tracked by the government.  See D.E. # 112-1, ¶ 8.[8]  Also, besides his declarations, he only provides a highly redacted bank account statement (for a single month), which clearly does not provide a full or complete picture of his finances and he does not address his future earnings potential.

Lastly, regardless of Mahabub's financial condition, the Court should impose a significant penalty against him to punish him and deter others from engaging in similar misconduct.  Monetary penalties serve the dual functions of punishment and deterrence. See SEC v. K.W. Brown & Co., et al., 555 F.Supp.2d 1275, 1314 (S.D. Fla. 2007) (quoting SEC v. Lybrand, 281 F.Supp.2d 726, 729–30 (S.D.N.Y. 2003)). As explained in Lybrand, 281 F.Supp.2d at 729-30 (citations omitted):

> A monetary penalty is designed to serve as a deterrent against securities law violations.  As set forth in H.R. Report No. 616--the Report of the Committee on Energy and Commerce of the U.S. House of Representatives on the Remedy Act,
>
>> [T]he money penalties proposed in this legislation are needed to provide financial disincentives to securities law violations . . .

---

[8] Mahabub's extensive misconduct in this case demonstrates that he is more than willing to lie (see D.E.#'s 80 at 1 & 95 at 31-33); therefore, the Court should not place any weight on the declarations he has submitted.  Also, as explained by the court in SEC v. Integrity Financial AZ, LLC, 2012 WL 176228 at *10 (N.D. Ohio Jan. 20, 2012) in the context of a civil penalty, a declaration is not enough to overcome Mahabub's burden to show he has an inability to pay:

> However, a mere contention of inability to pay is not sufficient to overcome the imposition of an appropriate penalty. See Forest, 2010 WL 2077202 at *2 ("claims of financial hardship-presented only in affidavits from defendants themselves, and not considering future earning capability—are insufficient to outweigh the appropriateness of a penalty"); Inorganic, 2002 WL 1968341 at *4 ("claims of poverty cannot defeat the imposition of a disgorgement order or civil penalty"). The burden rests with the defendant to demonstrate his inability to pay."

> Disgorgement merely requires the return of wrongfully obtained profits; it does not result in any actual economic penalty or act as a financial disincentive to engage in securities fraud . . . . The Committee therefore concluded that authority to seek or impose substantial money penalties, in addition to the disgorgement of profits, is necessary for the deterrence of securities law violations that otherwise may provide great financial returns to the violator.

Based upon the dual public policy function of punishment and deterrence, a substantial penalty is necessary and appropriate to punish Mahabub for his unlawful and fraudulent activities and deter others from engaging in violations of the federal securities laws.

### C. Mahabub Admitted a Permanent Officer and Director Bar is Appropriate, and Conceded the Court Should Impose a Permanent Injunction and Require Him to Disgorge the Proceeds from His Individual Stock Sales

In Mahabub's response, he conceded that a permanent officer and director bar is appropriate (*see* D.E. # 112 at 3), did not give any reason why the Court should not impose a permanent injunction against him, and did not contest his individual disgorgement amount (subject to his claim that his disgorgement should be reduced due to his financial condition). Accordingly, the Court should find that Mahabub has conceded that this relief is appropriate and enter final judgment accordingly.[9]

## III. CONCLUSION

The SEC respectfully requests that the Court enter Final Judgment against Mahabub and permanently enjoin him and bar him from serving as an officer or director; require him to pay disgorgement of $1,280,900, and order Mahabub and GenAudio to pay disgorgement jointly and severally of $4,503,000, plus prejudgment interest; and order him to pay a third tier civil penalty of $1,280,900.

---

[9] *See e.g.*, Court's Summary Judgment Order at 24, "The SEC contends that Mahabub is rather an affiliate.... GenAudio's and Mahabub's respective briefs ignore this argument. The Court accordingly deems the argument conceded."

DATED:  April 5, 2019

        Respectfully Submitted,

        */s/ Christopher E. Martin*

        Leslie J. Hughes (Colo. Bar No. 15043)
        Christopher E. Martin (AZ Bar No. 018486)
        Securities and Exchange Commission
        1961 Stout Street, Suite 1700
        Denver, CO  80294-1961
        Telephone: (303) 844-1000
        Fax: (303) 297-3529
        Email: HughesLJ@sec.gov
        Email: MartinC@sec.gov

        *Attorneys for Plaintiff*
            *Securities and Exchange Commission*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 5, 2019, the document above was e-filed with the Court's ECF system and will be served on those listed below:

Andrew B. Holmes
Holmes, Taylor & Jones, LLP
617 South Olive Street, Suite 1200
Los Angeles, CA 90014
Telephone: 213-985-2265
Email: abholmes@htjlaw.com
*Attorney for Defendant Taj Jerry Mahabub*

Michael P. McCloskey
David J. Aveni
Wilson Elser Moskowitz Edelman & Dicker LLP
655 West Broadway, Suite 900
San Diego, CA 92101
Telephone: 619-321-6200
Email: Michael.McCloskey@wilsonelser.com
Email: David.Aveni@wilsonelser.com
*Attorneys for Defendant GenAudio, Inc.*

                                                       *s/ Elinor E. Blomgren*
                                                       Elinor E. Blomgren