APPEAL,MJ CIV PP,NDISPO,TERMED

# U.S. District Court – District of Colorado
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: <u>1:15–cv–02118–WJM–SKC</u>

| | |
|---|---|
| Securities & Exchange Commission v. Mahabub et al | Date Filed: 09/25/2015 |
| Assigned to: Judge William J. Martinez | Date Terminated: 09/16/2019 |
| Referred to: Magistrate Judge S. Kato Crews | Jury Demand: Both |
| Cause: 15:78 Securities Exchange Act | Nature of Suit: 850 Securities, Commodities, Exchange |
| | Jurisdiction: U.S. Government Plaintiff |

**Plaintiff**

| | | |
|---|---|---|
| **Securities & Exchange Commission** | represented by | **Leslie J. Hughes** |
| | | U.S. Securities & Exchange Commission–Denver |
| | | 1961 Stout Street |
| | | Byron G. Rogers Federal Building |
| | | Suite 1700 |
| | | Denver, CO 80294–1961 |
| | | 303–844–1000 |
| | | Fax: 303–844–1068 |
| | | Email: <u>hugheslj@sec.gov</u> |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Christopher Everett Martin** |
| | | U.S. Securities & Exchange Commission–Denver |
| | | 1961 Stout Street |
| | | Byron G. Rogers Federal Building |
| | | Suite 1700 |
| | | Denver, CO 80294–1961 |
| | | 303–844–1106 |
| | | Fax: 303–297–3529 |
| | | Email: <u>martinc@sec.gov</u> |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Danielle Renee Voorhees** |
| | | U.S. Securities & Exchange Commission–Denver |
| | | 1961 Stout Street |
| | | Byron G. Rogers Federal Building |
| | | Suite 1700 |
| | | Denver, CO 80294–1961 |
| | | 303–844–1108 |
| | | Email: <u>VoorheesD@sec.gov</u> |
| | | *TERMINATED: 12/13/2018* |

1

V.

**Defendant**

**Taj Jerry Mahabub**  represented by  **Andrew Bryan Holmes**
Holmes Taylor Scott & Jones LLP
617 South Olive Street
The Oviatt Building
Suite 1200
Los Angeles, CA 90014
213–985–2200
Fax: 213–973–6282
Email: abholmes@holmestaylor.com
*ATTORNEY TO BE NOTICED*

**Michael Patrick McCloskey**
Wilson Elser Moskowitz Edelman &
Dicker, LLP–San Diego
401 West A Street
Suite 1900
San Diego, CA 92101
619–321–6200
Email: michael.mccloskey@wilsonelser.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**GenAudio Inc.**  represented by  **Michael Patrick McCloskey**
Wilson Elser Moskowitz Edelman &
Dicker LLP–San Diego
401 West A Street
Suite 1900
San Diego, CA 92101
619–321–6200
Email: michael.mccloskey@wilsonelser.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Astound Holdings Inc.**  represented by  **Jeffrey George Benz**
*TERMINATED: 05/22/2017*  Benz Law Group
12021 Wilshire Boulevard
Suite 256
Los Angeles, CA 90025
310–570–2774
Fax: 310–975–1214
Email: jeffreybenz@gmail.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 09/25/2015 | 1 | | COMPLAINT against All Defendants Attorney Leslie J. Hughes added to party Securities & Exchange Commission(pty:pla), filed by Securities & |

| | | | |
|---|---|---|---|
| | | | Exchange Commission. (Attachments: # 1 Civil Cover Sheet, # 2 Summons for Astound Holdings Inc., # 3 Summons for GenAudio Inc., # 4 Summons for Taj Jerry Mahabub)(Hughes, Leslie) (Entered: 09/25/2015) |
| 09/25/2015 | 2 | | Case assigned to Magistrate Judge Craig B. Shaffer. Text Only Entry (sphil, ) (Entered: 09/25/2015) |
| 09/25/2015 | 3 | | SUMMONS issued by Clerk. Magistrate Judge Consent Form issued pursuant to Magistrate Judge Pilot Project to Assign Civil Cases to Full Time Magistrate Judges (Attachments: # 1 Magistrate Judge Consent Form) (sphil, ) (Entered: 09/25/2015) |
| 10/05/2015 | 4 | | MINUTE ORDER setting a Scheduling Conference set for 1/8/2016 at 9:00 AM in Courtroom A 402 before Magistrate Judge Craig B. Shaffer. ORDERED that parties shall adhere to the deadlines and instructions as set forth in  Preparation for Rule 16(b) Scheduling Conference, located on the court's website under "Judicial Officers." FURTHER ORDERED that on or before DECEMBER 28, 2015, the parties shall complete and file the Pilot Program Consent Form (see Docket No. 3−1) indicating either unanimous consent of the parties or that consent has been declined. Text Only Entry by Magistrate Judge Craig B. Shaffer on 10/5/15. (cbssec) (Entered: 10/05/2015) |
| 10/14/2015 | 5 | | WAIVER OF SERVICE Returned Executed by Securities & Exchange Commission. Taj Jerry Mahabub waiver sent on 9/25/2015, answer due 11/24/2015. (Hughes, Leslie) (Entered: 10/14/2015) |
| 10/27/2015 | 6 | | WAIVER OF SERVICE Returned Executed by Securities & Exchange Commission. GenAudio Inc. waiver sent on 9/25/2015, answer due 11/24/2015. (Hughes, Leslie) (Entered: 10/27/2015) |
| 10/27/2015 | 7 | | CERTIFICATE of Mailing/Service *of Filed Waivers for Mahabub and GenAudio* by Plaintiff Securities & Exchange Commission. (Hughes, Leslie) (Entered: 10/27/2015) |
| 10/27/2015 | 8 | | CERTIFICATE of Mailing/Service *of Docket #s 3−1 and 4* by Plaintiff Securities & Exchange Commission. (Hughes, Leslie) (Entered: 10/27/2015) |
| 11/04/2015 | 9 | | SUMMONS Returned Executed by Securities & Exchange Commission. Astound Holdings Inc. served on 11/3/2015, answer due 11/24/2015. (Hughes, Leslie) (Entered: 11/04/2015) |
| 11/05/2015 | 10 | | CERTIFICATE of Mailing/Service *of Proof of Service of Astound Holdings LLC Docket #9 and of Docket #s 1, 3, 3−1 and 4 to Astound Holdings LLC* by Plaintiff Securities & Exchange Commission. (Hughes, Leslie) (Entered: 11/05/2015) |
| 11/24/2015 | 11 | | NOTICE of Entry of Appearance by Michael Patrick McCloskey on behalf of GenAudio Inc.Attorney Michael Patrick McCloskey added to party GenAudio Inc.(pty:dft) (McCloskey, Michael) (Entered: 11/24/2015) |
| 11/24/2015 | 12 | | STIPULATION for Extension of Time to Answer or Respond to the Complaint by Defendants GenAudio Inc., Astound Holdings Inc., Taj Jerry Mahabub. All Defendants. (Attachments: # 1 Proposed Order (PDF Only))(McCloskey, Michael) (Entered: 11/24/2015) |
| 12/07/2015 | 13 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE of Entry of Appearance by Danielle Renee Voorhees on behalf of Securities & Exchange CommissionAttorney Danielle Renee Voorhees added to party Securities & Exchange Commission(pty:pla) (Voorhees, Danielle) (Entered: 12/07/2015) |
| 12/08/2015 | 14 | | *Defendant GenAudio's* ANSWER to 1 Complaint, by GenAudio Inc..(McCloskey, Michael) (Entered: 12/08/2015) |
| 12/08/2015 | 15 | | ANSWER to 1 Complaint, Attorney Andrew Bryan Holmes added to party Taj Jerry Mahabub(pty:dft) by Taj Jerry Mahabub.(Holmes, Andrew) (Entered: 12/08/2015) |
| 12/11/2015 | 16 | | CONSENT to Jurisdiction of Magistrate Judge by Plaintiff Securities & Exchange Commission All parties do not consent.. (Voorhees, Danielle) (Entered: 12/11/2015) |
| 12/11/2015 | 17 | | CASE REASSIGNED pursuant to 16 Consent to Jurisdiction of Magistrate Judge. All parties do not consent. This case is reassigned to Judge Wiley Y. Daniel. All future pleadings should be designated as 15–cv–02118–WYD. (Text Only Entry) (nmarb, ) (Entered: 12/11/2015) |
| 12/16/2015 | 18 | | MEMORANDUM RETURNING CASE by Senior Judge Wiley Y. Daniel. (rkeec) (Entered: 12/16/2015) |
| 12/16/2015 | 19 | | CASE REASSIGNED pursuant to 18 Memorandum Returning Case. This case is reassigned to Judge William J. Martinez. All future pleadings should be designated as 15–cv–02118–WJM–CBS. (Text Only Entry) (rkeec) (Entered: 12/16/2015) |
| 12/16/2015 | 20 | | ORDER REFERRING CASE to Magistrate Judge Craig B. Shaffer. Magistrate Judge Shaffer is designated to conduct NDISPO proceedings pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed.R.Civ.P. 72(a) and (b). Court sponsored alternative dispute resolution is governed by D.C.COLO.LCivR 16.6. On the recommendation or informal request of the Magistrate Judge or on the request of the parties by motion, the court may direct the parties to engage in an early neutral evaluation, a settlement conference, or another alternative dispute resolution proceeding. SO ORDERED by Judge William J. Martinez on 12/16/2015. Text Only Entry (wjmsec, ) (Entered: 12/16/2015) |
| 12/22/2015 | 21 | | MOTION for Entry of Default as to *Astound Holdings, Inc.* by Plaintiff Securities & Exchange Commission. (Attachments: # 1 Affidavit of Danielle R. Voorhees, # 2 Proposed Order (PDF Only) [proposed] for Clerk's Entry of Default Against Astound)(Voorhees, Danielle) Modified on 12/23/2015 to correct event (athom, ). (Entered: 12/22/2015) |
| 12/23/2015 | 22 | | VACATED: Clerk's ENTRY OF DEFAULT as to Astound Holdings Inc., by Clerk. Text Only Entry (athom, ) Modified on 1/27/2016 to Vacate Entry pursuant to 35 Court Order on 33 Motion to Vacate. (nmarb, ). (Entered: 12/23/2015) |
| 12/30/2015 | 23 | | Proposed Scheduling Order by Plaintiff Securities & Exchange Commission. (Voorhees, Danielle) (Entered: 12/30/2015) |
| 12/31/2015 | 24 | | Unopposed MOTION for Leave to Appear *Telephonically* by Defendant GenAudio Inc.. (Attachments: # 1 Proposed Order (PDF Only))(McCloskey, |

4

| | | | |
|---|---|---|---|
| | | | Michael) (Entered: 12/31/2015) |
| 12/31/2015 | 25 | | MEMORANDUM regarding 24 Unopposed MOTION for Leave to Appear *Telephonically* filed by GenAudio Inc.. Motions referred to Magistrate Judge Craig B. Shaffer by Judge William J. Martinez on 12/31/2015. Text Only Entry (wjmsec, ) (Entered: 12/31/2015) |
| 01/04/2016 | 26 | | Unopposed MOTION for Leave to Appear *by Telephone* by Defendant Taj Jerry Mahabub. (Attachments: # 1 Proposed Order (PDF Only))(Holmes, Andrew) (Entered: 01/04/2016) |
| 01/04/2016 | 27 | | MEMORANDUM regarding 26 Unopposed MOTION for Leave to Appear *by Telephone* filed by Taj Jerry Mahabub. Motions referred to Magistrate Judge Craig B. Shaffer by Judge William J. Martinez on 01/04/2016. Text Only Entry (wjmlc2, ) (Entered: 01/04/2016) |
| 01/04/2016 | 28 | | ORDER granting 24 and 26 Motions for Leave to Appear. ORDERED that Messrs. Holmes and McCloskey may appear at the Scheduling Conference on January 8, 2015 by telephone. *Counsel shall first initiate a conference call among themselves before contacting the court (303.844.2117) at the scheduled time.* Text Only Entry by Magistrate Judge Craig B. Shaffer on 1/4/16.(cbssec) (Entered: 01/04/2016) |
| 01/07/2016 | 29 | | MINUTE ORDER resetting the 1/8/16 Scheduling Conference due to a last minute conflict on the court's calendar. ORDERED that the conference has been reset to 1/21/2016 at 11:00 AM in Courtroom A 402 before Magistrate Judge Craig B. Shaffer. Out–of–state counsel may still appear by phone by first initiating a conference call among themselves before contacting the court (303.844.2117) at the scheduled time. Text Only Entry by Magistrate Judge Craig B. Shaffer on 1/7/16. (cbssec) (Entered: 01/07/2016) |
| 01/15/2016 | 30 | | CERTIFICATE of Mailing/Service *of Plaintiffs Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)* by Plaintiff Securities & Exchange Commission. (Voorhees, Danielle) (Entered: 01/15/2016) |
| 01/21/2016 | 31 | | NOTICE of Entry of Appearance by Jeffrey George Benz on behalf of Astound Holdings Inc.Attorney Jeffrey George Benz added to party Astound Holdings Inc.(pty:dft) (Benz, Jeffrey) (Entered: 01/21/2016) |
| 01/21/2016 | 32 | | COURTROOM MINUTES/MINUTE ORDER for proceedings held before Magistrate Judge Craig B. Shaffer: Scheduling Conference held on 1/21/2016. Discovery due by 9/9/2016. Telephone Status Conference set for 5/26/2016 10:00 AM before Magistrate Judge Craig B. Shaffer. Parties participating in the hearing shall initiate a conference call among themselves and call the court (303.844.2117) at the scheduled time. FTR: Courtroom A–402. (amont, ) (Entered: 01/21/2016) |
| 01/21/2016 | 33 | | Unopposed MOTION to Vacate 22 Clerk's Entry of Default *against Astound Holdings Inc.* by Plaintiff Securities & Exchange Commission. (Attachments: # 1 Proposed Order (PDF Only) to Vacate Default Entered Against Astound Holdings Inc)(Hughes, Leslie) (Entered: 01/21/2016) |
| 01/22/2016 | 34 | | MEMORANDUM regarding 33 Unopposed MOTION to Vacate 22 Clerk's Entry of Default *against Astound Holdings Inc.* filed by Securities & Exchange Commission. Motions referred to Magistrate Judge Craig B. Shaffer |

| | | | |
|---|---|---|---|
| | | | by Judge William J. Martinez on 01/22/2016. Text Only Entry (wjmsec, ) (Entered: 01/22/2016) |
| 01/26/2016 | 35 | | ORDER granting 33 Motion to Vacate 22 Clerk's Entry of Default. ORDERED that the entry of default against Astound Holding Inc. is vacated. Text Only Entry by Magistrate Judge Craig B. Shaffer on 1/26/16.(cbssec) (Entered: 01/26/2016) |
| 02/05/2016 | 36 | | ANSWER to 1 Complaint, by Astound Holdings Inc..(Benz, Jeffrey) (Entered: 02/05/2016) |
| 05/26/2016 | 37 | | COURTROOM MINUTES/MINUTE ORDER for proceedings held before Magistrate Judge Craig B. Shaffer: Telephone Status Conference held on 5/26/2016. Joint Status Report due by 6/9/2016. FTR: Courtroom A–402. (amont, ) (Entered: 05/26/2016) |
| 06/09/2016 | 38 | | STATUS REPORT on Discovery by Plaintiff Securities & Exchange Commission. (Hughes, Leslie) (Entered: 06/09/2016) |
| 06/09/2016 | 39 | | Joint STATUS REPORT on Discovery by all Defendants by Defendant GenAudio Inc.. (McCloskey, Michael) (Entered: 06/09/2016) |
| 06/16/2016 | 40 | | Joint STATUS REPORT on Discovery by Defendants Astound Holdings Inc., GenAudio Inc., Taj Jerry Mahabub. (Attachments: # 1 Continuation of Main Document Certificate of Service)(McCloskey, Michael) (Entered: 06/16/2016) |
| 07/25/2016 | 41 | | MINUTE ORDER. On the plaintiff's unopposed request, a telephone discovery conference is set for 7/27/2016 at 03:00 PM in Courtroom A 402 before Magistrate Judge Craig B. Shaffer. Counsel shall initiate a conference call amongst themselves before calling the court at (303) 844–2117 at the scheduled time. By Magistrate Judge Craig B. Shaffer on 7/25/2016. Text Only Entry (cbslc1) (Entered: 07/25/2016) |
| 07/27/2016 | 42 | | COURTROOM MINUTES for Telephonic Discovery Hearing held on 7/27/2016 before Magistrate Judge Craig B. Shaffer. ORDERED: Defendant Mahabub shall produce responsive materials in native format to Plaintiff's discovery requests, as discussed, within two weeks. FTR: CBS A402. (sgrim) (Entered: 07/27/2016) |
| 08/10/2016 | 43 | | MOTION to Amend/Correct/Modify 42 Discovery Hearing, *To Allow More Time to Comply* by Defendant Taj Jerry Mahabub. (Attachments: # 1 Declaration of Andrew B. Holmes, # 2 Proposed Order (PDF Only))(Holmes, Andrew) (Entered: 08/10/2016) |
| 08/10/2016 | 44 | | MEMORANDUM regarding 43 MOTION to Amend/Correct/Modify 42 Discovery Hearing, *To Allow More Time to Comply* filed by Taj Jerry Mahabub. Motions referred to Magistrate Judge Craig B. Shaffer by Judge William J. Martinez on 08/10/2016. Text Only Entry (wjmsec, ) (Entered: 08/10/2016) |
| 08/10/2016 | 45 | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 43 MOTION to Amend/Correct/Modify 42 Discovery Hearing, *To Allow More Time to Comply* filed by attorney Andrew Holmes. The format for the attorneys signature block is not correct. **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCivR 5.1(a) and 4.3(d) of the Electronic Case |

| | | | |
|---|---|---|---|
| | | | Filing Procedures (Civil Cases). (Text Only Entry) (cthom, ) (Entered: 08/11/2016) |
| 08/11/2016 | 46 | | BRIEF in Opposition to 43 MOTION to Amend/Correct/Modify 42 Discovery Hearing, *To Allow More Time to Comply* filed by Plaintiff Securities & Exchange Commission. (Attachments: # 1 Exhibit 1 Transcript, # 2 Exhibit 2 GenAudio Response 1st RFP, # 3 Exhibit 3 RE_ SEC v Mahabub, et al. – Discovery responses, # 4 Exhibit 4 2016–08–11 Declaration of DRV for Opp'n for More Time, # 5 Exhibit Ex. 5 RE_ SEC v. Mahabub – image of computer)(Voorhees, Danielle) (Entered: 08/11/2016) |
| 08/15/2016 | 47 | | MINUTE ORDER: A Telephone Discovery Conference is set for 8/19/2016 at 03:00 PM in Courtroom A 402 before Magistrate Judge Craig B. Shaffer. The parties shall initiate a conference call amongst themselves prior to calling the court (303.844.2117) at the scheduled time. If the parties require the court to review any materials prior to the conference, they shall be submitted to Shaffer_chambers@cod.uscourts.gov by the close of business on 8/18/2016. By Magistrate Judge Craig B. Shaffer on 8/15/2016. Text Only Entry (cbslc2) (Entered: 08/15/2016) |
| 08/18/2016 | 48 | | TRANSCRIPT of Telephonic Discovery Hearing held on July 27, 2016 before Magistrate Judge Shaffer. Pages: 1–15.<br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Stevens–Koenig Reporting, ) (Entered: 08/18/2016) |
| 08/19/2016 | 49 | | COURTROOM MINUTES/MINUTE ORDER for proceedings held before Magistrate Judge Craig B. Shaffer: Telephonic Discovery Hearing held on 8/19/2016. FTR: CBS – Courtroom A402. (cpear) (Entered: 08/22/2016) |
| 02/22/2017 | 50 | | STATUS REPORT by Plaintiff Securities & Exchange Commission. (Voorhees, Danielle) (Entered: 02/22/2017) |
| 02/23/2017 | 51 | | MINUTE ORDER re: 50 Status Report filed by Securities & Exchange Commission. In light of the parties' representations and requests in their Status Report, Dispositive Motions are due by 3/24/2017. Responses shall be due on 4/28/2017, and Replies shall be filed by 5/12/2017. Further, a Telephone Status Conference is set for 3/17/2017 at 02:30 PM in Courtroom A 402 before Magistrate Judge Craig B. Shaffer. The parties shall initiate a conference call amongst themselves prior to calling the court at 303.844.2117. By Magistrate Judge Craig B. Shaffer on 2/23/2016. Text Only Entry (cbslc2) (Entered: 02/23/2017) |
| 03/17/2017 | 52 | | COURTROOM MINUTES for proceedings held before Magistrate Judge Craig B. Shaffer: Telephonic Status Conference held on 3/17/2017. FTR: Courtroom A–402. (slibi, ) (Entered: 03/17/2017) |

| 03/24/2017 | 53 | | MOTION for Summary Judgment *Against Defendants Mahabub and GenAudio, Inc.* by Plaintiff Securities & Exchange Commission. (Attachments: # 1 Envelope 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42, # 43 Exhibit 43, # 44 Exhibit 44, # 45 Exhibit 45, # 46 Exhibit 46, # 47 Exhibit 47, # 48 Exhibit 48, # 49 Exhibit 49, # 50 Exhibit 50, # 51 Exhibit 51, # 52 Exhibit 52, # 53 Exhibit 53, # 54 Exhibit 54, # 55 Exhibit 55, # 56 Exhibit 56, # 57 Exhibit 57, # 58 Exhibit 58, # 59 Exhibit 59, # 60 Exhibit 60, # 61 Exhibit 61, # 62 Exhibit 62, # 63 Exhibit 63, # 64 Exhibit 64, # 65 Exhibit 65, # 66 Exhibit 66, # 67 Exhibit 67, # 68 Exhibit 68, # 69 Exhibit 69, # 70 Exhibit 70, # 71 Exhibit 71, # 72 Exhibit 72, # 73 Exhibit 73, # 74 Exhibit 74, # 75 Exhibit 75, # 76 Exhibit 76, # 77 Exhibit 77, # 78 Exhibit 78, # 79 Exhibit 79, # 80 Exhibit 80, # 81 Exhibit 81, # 82 Exhibit 82, # 83 Exhibit 83)(Voorhees, Danielle) (Entered: 03/24/2017) |
| 03/24/2017 | 54 | | DECLARATION of *Danielle R. Voorheese* by Plaintiff Securities & Exchange Commission. (Attachments: # 1 Exhibit Table of Exhibits)(Voorhees, Danielle) (Entered: 03/24/2017) |
| 03/24/2017 | 55 | | DECLARATION of *Tracy Bowen* regarding MOTION for Summary Judgment *Against Defendants Mahabub and GenAudio, Inc.* 53 by Plaintiff Securities & Exchange Commission. (Voorhees, Danielle) (Entered: 03/24/2017) |
| 04/24/2017 | 56 | | Unopposed MOTION to Withdraw as Attorney *for Astound Holdings, Inc.* by Defendant Astound Holdings Inc.. (Benz, Jeffrey) (Entered: 04/24/2017) |
| 04/25/2017 | 57 | | MEMORANDUM regarding 56 Unopposed MOTION to Withdraw as Attorney *for Astound Holdings, Inc.* filed by Astound Holdings Inc.. Motions referred to Magistrate Judge Craig B. Shaffer by Judge William J. Martinez on 4/25/2017. Text Only Entry (wjmsec, ) (Entered: 04/25/2017) |
| 04/28/2017 | 58 | | BRIEF in Opposition to 53 MOTION for Summary Judgment *Against Defendants Mahabub and GenAudio, Inc.* filed by Defendant GenAudio Inc.. (Attachments: # 1 Exhibit 150, # 2 Exhibit 151, # 3 Exhibit 152, # 4 Exhibit 153, # 5 Exhibit 154, # 6 Exhibit 155, # 7 Exhibit 156, # 8 Exhibit 157, # 9 Exhibit 158, # 10 Exhibit 159, # 11 Exhibit 160, # 12 Exhibit 161, # 13 Exhibit 162, # 14 Exhibit 163, # 15 Exhibit 164, # 16 Exhibit 165, # 17 Exhibit 166, # 18 Exhibit 167, # 19 Exhibit 168, # 20 Exhibit 169, # 21 Exhibit 170, # 22 Exhibit 171, # 23 Exhibit 172, # 24 Exhibit 173, # 25 Exhibit 174, # 26 Exhibit 175, # 27 Exhibit 176, # 28 Exhibit 177, # 29 Exhibit 178, # 30 Exhibit 179, # 31 Exhibit 180, # 32 Exhibit 181, # 33 Exhibit 182, # 34 Exhibit 183, # 35 Exhibit 184, # 36 Exhibit 185, # 37 Exhibit 186, # 38 Exhibit 187, # 39 Exhibit 188, # 40 Exhibit 189, # 41 Exhibit 190, # 42 Exhibit 191, # 43 Exhibit 192, # 44 Exhibit 193, # 45 Exhibit 194, # 46 Exhibit 195, # 47 Exhibit 196, # 48 Exhibit 197, # 49 |

| | | |
|---|---|---|
| | | Exhibit 198, # 50 Exhibit 199, # 51 Exhibit 200, # 52 Exhibit 201, # 53 Exhibit 202, # 54 Exhibit 203, # 55 Exhibit 204, # 56 Exhibit 205, # 57 Exhibit 206, # 58 Exhibit 207, # 59 Exhibit 208, # 60 Exhibit 209, # 61 Exhibit 210, # 62 Exhibit 211, # 63 Exhibit 212, # 64 Exhibit 213, # 65 Exhibit 214, # 66 Exhibit 215, # 67 Exhibit 216, # 68 Exhibit 217, # 69 Exhibit 218, # 70 Exhibit 219, # 71 Evidentiary Objections, # 72 Declaration of David J. Aveni, # 73 Table of Exhibits to Declaration of David J. Aveni, # 74 Declaration of Julie Eastwood, # 75 Declaration of George Marvin)(McCloskey, Michael) (Entered: 04/28/2017) |
| 04/28/2017 | 59 | JOINDER re 58 Brief in Opposition to Motion,,,,,,, *Joinder in Evidentiary Objections* by Defendant Taj Jerry Mahabub. (Holmes, Andrew) (Entered: 04/28/2017) |
| 04/28/2017 | 60 | BRIEF in Opposition to 53 MOTION for Summary Judgment *Against Defendants Mahabub and GenAudio, Inc.* filed by Defendant Taj Jerry Mahabub. (Holmes, Andrew) (Entered: 04/28/2017) |
| 04/28/2017 | 61 | DECLARATION of *Taj Jerry Mahabub* regarding Brief in Opposition to Motion 60 by Defendant Taj Jerry Mahabub. (Holmes, Andrew) (Entered: 04/28/2017) |
| 04/28/2017 | 62 | DECLARATION of *Andrew B. Holmes* regarding Brief in Opposition to Motion 60 by Defendant Taj Jerry Mahabub. (Attachments: # 1 Deposition Excerpts Exhibit 85, # 2 Deposition Excerpts Exhibit 86, # 3 Deposition Excerpts Exhibit 87)(Holmes, Andrew) (Entered: 04/28/2017) |
| 05/03/2017 | 63 | Unopposed MOTION for Leave to *Consolidate Reply Briefs in Support of Motion for Summary Judgement* by Plaintiff Securities & Exchange Commission. (Voorhees, Danielle) (Entered: 05/03/2017) |
| 05/03/2017 | 64 | MINUTE ORDER re: 56 Unopposed MOTION to Withdraw as Attorney *for Astound Holdings, Inc.*. A Telephone Status Conference is set for 5/22/2017 at 01:30 PM in Courtroom A 402 before Magistrate Judge Craig B. Shaffer. In addition to counsel, Taj Jerry Mahabub MUST appear for this conference. The participants shall initiate a conference call amongst themselves prior to calling the court (303.844.2117) at the scheduled time. By Magistrate Judge Craig B. Shaffer on 5/3/2017. Text Only Entry (cbslc2) (Entered: 05/03/2017) |
| 05/08/2017 | 65 | ORDER granting Plaintiff Security and Exchange Commission's Unopposed Motion to Consolidate Reply Briefs in Support of Motion for Summary Judgment 63 . The Plaintiff's motion is GRANTED for good cause shown. Plaintiff is granted leave to file one, consolidated reply brief, in support of its motion for summary judgment, not to exceed 40 pages, exclusive of signature blocks and certificate of service. SO ORDERED by Judge William J. Martinez on 5/8/2017. Text Only Entry (wjmsec, ) (Entered: 05/08/2017) |
| 05/12/2017 | 66 | REPLY to Response to 53 MOTION for Summary Judgment *Against Defendants Mahabub and GenAudio, Inc.* filed by Plaintiff Securities & Exchange Commission. (Attachments: # 1 Exhibit 220, # 2 Exhibit 221, # 3 Exhibit 222, # 4 Exhibit 223, # 5 Exhibit 224, # 6 Exhibit 225, # 7 Exhibit 226, # 8 Exhibit 227, # 9 Exhibit 228, # 10 Exhibit 229, # 11 Exhibit 230, # 12 Exhibit 231, # 13 Exhibit 234, # 14 Exhibit 235, # 15 Exhibit 236, # 16 Exhibit 237, # 17 Exhibit 238, # 18 Exhibit 239, # 19 Exhibit 240, # 20 Exhibit 241, # 21 Exhibit 242, # 22 Exhibit 243, # 23 Exhibit 244, # 24 |

| | | | |
|---|---|---|---|
| | | | Exhibit 245, # 25 Affidavit Second Declaration of Marvin, # 26 Affidavit Hughes Declaration, # 27 SEC Response to Evidence Objections)(Voorhees, Danielle) (Entered: 05/12/2017) |
| 05/19/2017 | 67 | | MOTION for Order to *hear Oral Argument on Plaintiff's Motion for Summary Judgment* by Defendant GenAudio Inc.. (McCloskey, Michael) (Entered: 05/19/2017) |
| 05/19/2017 | 68 | | ORDER: This matter is before the Court on Defendant GenAudio's Request for Oral Argument on Summary Judgment 67 . Plaintiff is DIRECTED to file a Response to the Request on or before **Monday, May 22, 2017**. No Reply will be accepted without prior leave or order of Court. SO ORDERED by Judge William J. Martinez on 5/19/2017. Text Only Entry (wjmsec, ) (Entered: 05/19/2017) |
| 05/19/2017 | 69 | | MOTION for Joinder re 67 MOTION for Order to *hear Oral Argument on Plaintiff's Motion for Summary Judgment And Request for Oral Argument* by Defendant Taj Jerry Mahabub. (Holmes, Andrew) (Entered: 05/19/2017) |
| 05/19/2017 | 70 | | STIPULATION of Dismissal of Party *Astound Holdings, Inc.* by Plaintiff Securities & Exchange Commission. (Hughes, Leslie) (Entered: 05/19/2017) |
| 05/22/2017 | 71 | | RESPONSE to 67 MOTION for Order to *hear Oral Argument on Plaintiff's Motion for Summary Judgment* filed by Plaintiff Securities & Exchange Commission. (Voorhees, Danielle) (Entered: 05/22/2017) |
| 05/22/2017 | 72 | | Party Astound Holdings Inc. terminated pursuant to 70 the notice of dismissal or stipulation to dismiss filed in this case on 5/19/2017. Text Only Entry (angar, ) (Entered: 05/22/2017) |
| 05/22/2017 | 73 | | NOTICE *NOTICE OF MOOTNESS RE MOTION TO WITHDRAW* by Defendant Astound Holdings Inc. (Benz, Jeffrey) (Entered: 05/22/2017) |
| 05/22/2017 | 74 | | ORDER finding as moot 56 Motion to Withdraw as Attorney for Defendant Astound Holdings, Inc. In light of Defendant Astound Holdings, Inc. being dismissed from this action, the motion to withdraw as attorney is denied as moot. The telephone status conference set for today on that motion before Magistrate Judge Craig B. Shaffer is VACATED. By Magistrate Judge Craig B. Shaffer on 5/22/2017. Text Only Entry (cbslc1) (Entered: 05/22/2017) |
| 05/22/2017 | 75 | | MOTION to Strike 66 Reply to Response to Motion,,, *Motion to Strike Evidence Submitted with Reply to Response to Motion* by Defendant Taj Jerry Mahabub. (Holmes, Andrew) (Entered: 05/22/2017) |
| 05/23/2017 | 76 | | NOTICE of Change of Address/Contact Information by Michael Patrick McCloskey (McCloskey, Michael) (Entered: 05/23/2017) |
| 06/06/2017 | 77 | | JOINDER re 75 MOTION to Strike 66 Reply to Response to Motion,,, *Motion to Strike Evidence Submitted with Reply to Response to Motion* by Defendant GenAudio Inc.. (McCloskey, Michael) (Entered: 06/06/2017) |
| 06/07/2017 | 78 | | BRIEF in Opposition to 75 MOTION to Strike 66 Reply to Response to Motion,,, *Motion to Strike Evidence Submitted with Reply to Response to Motion and GenAudio's 77 Joinder to the Motion* filed by Plaintiff Securities & Exchange Commission. (Hughes, Leslie) (Entered: 06/07/2017) |

| | | | |
|---|---|---|---|
| 11/08/2017 | 79 | | REASSIGNING MAGISTRATE JUDGE: During Magistrate Judge Shaffer's unavailability, this case is reassigned to Magistrate Judge Mark L. Carman of the District of Wyoming, who is substituted as the referral judge. All future pleadings should reference Magistrate Judge Carman at the end of the civil action number (such as 17–cv–0001–MSK–MLC). Unless otherwise ordered, the dates and times for all scheduled matters will be maintained. Parties shall continue to communicate with Magistrate Judge Shaffer's chambers regarding this case. (Text only entry – no document attached) (angar, ) (Entered: 11/08/2017) |
| 12/22/2017 | 80 | | ORDER Denying 75 Motion to Strike and Denying 53 Motion for Summary Judgment without Prejudice. GenAudio's Request for Oral Argument on Summary Judgment (ECF No. 67 ) is DENIED AS MOOT. Mahabub's Joinder in and Request for Oral Argument on Summary Judgment (ECF No. 69 ) is DENIED AS MOOT. ORDERED by Judge William J. Martinez on 12/22/2017. (angar, ) (Entered: 12/22/2017) |
| 01/09/2018 | 81 | | Joint MOTION for Extension of Time to *in Connection with the Revised Motion for Summary Judgment* by Defendant GenAudio Inc.. (Attachments: # 1 Proposed Order (PDF Only))(McCloskey, Michael) (Entered: 01/09/2018) |
| 01/09/2018 | 82 | | NOTICE of Change of Address/Contact Information *regarding change of firm name and email address* by Andrew Bryan Holmes (Holmes, Andrew) (Entered: 01/09/2018) |
| 01/11/2018 | 83 | | ORDER granting the Parties' Joint Motion for Extension of Time in Connection with Revised Motion for Summary Judgment 81 . The Parties' Joint Motion is GRANTED for good cause shown. On or before **February 16, 2018**, the SEC may file its revised summary judgment motion of up to 60 pages; on or before **March 16, 2018**, the Defendants may each file a response up to 60 pages; and on or before **April 6, 2018**, the SEC may file a consolidated reply up to 40 pages. All page limits are exclusive of attorney signature blocks and certificates of service. SO ORDERED by Judge William J. Martinez on 1/11/2018. Text Only Entry (wjmsec, ) (Entered: 01/11/2018) |
| 02/16/2018 | 84 | | Renewed MOTION for Summary Judgment *against Defendants Taj Jerry Mahabub and GenAudio Inc.* by Plaintiff Securities & Exchange Commission. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit, # 25 Exhibit, # 26 Exhibit, # 27 Exhibit, # 28 Exhibit, # 29 Exhibit, # 30 Exhibit, # 31 Exhibit, # 32 Exhibit, # 33 Exhibit, # 34 Exhibit, # 35 Exhibit, # 36 Exhibit, # 37 Exhibit, # 38 Exhibit, # 39 Exhibit, # 40 Exhibit, # 41 Exhibit, # 42 Exhibit, # 43 Exhibit, # 44 Exhibit, # 45 Exhibit, # 46 Exhibit, # 47 Exhibit, # 48 Exhibit, # 49 Exhibit, # 50 Exhibit, # 51 Exhibit, # 52 Exhibit, # 53 Exhibit, # 54 Exhibit, # 55 Exhibit, # 56 Exhibit, # 57 Exhibit, # 58 Exhibit, # 59 Exhibit, # 60 Exhibit, # 61 Exhibit, # 62 Exhibit, # 63 Exhibit, # 64 Exhibit, # 65 Exhibit, # 66 Exhibit, # 67 Exhibit, # 68 Exhibit, # 69 Exhibit, # 70 Exhibit, # 71 Exhibit, # 72 Exhibit, # 73 Exhibit, # 74 Exhibit, # 75 Exhibit, # 76 Exhibit, # 77 Exhibit, # 78 Exhibit, # 79 Exhibit, # 80 Exhibit, # 81 Exhibit, # 82 Exhibit, # 83 Exhibit, # 84 Exhibit, # 85 Exhibit, # 86 Exhibit, # 87 Exhibit, # 88 Exhibit, # |

| | | | |
|---|---|---|---|
| | | | 89 Exhibit, # 90 Exhibit, # 91 Exhibit DEMONSTRATIVE 1, # 92 Exhibit DEMONSTRATIVE 2, # 93 Affidavit DECLARATION of Tracy W. Bowen, # 94 Affidavit DECLARATION of George Marvin, # 95 Affidavit DECLARATION OF Danielle R. Voorhees, # 96 Appendix Table of Exhibits)(Voorhees, Danielle) (Entered: 02/16/2018) |
| 03/01/2018 | 85 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 84 Renewed MOTION for Summary Judgment *against Defendants Taj Jerry Mahabub and GenAudio Inc.* by Defendant Taj Jerry Mahabub. (Holmes, Andrew) (Entered: 03/01/2018) |
| 03/02/2018 | 86 | | ORDER denying Defendant Taj Jerry Mahabub's Unopposed Motion for Extension of Time to File Briefs in Connection with Plaintiff's Revised Motion for Summary Judgment 85 . Defendant's Motion is DENIED without prejudice to refiling given Defendant's counsel's failure to serve a copy of the Motion for Extension on his client, as required by D.C.COLO.LCivR 6.1(c). The Court requires that the certificate of service specifically confirm that service has been made upon moving counsel's client(s) and, if appropriate, identifies the individual who has received service of the motion on behalf of any party which is not a natural person. SO ORDERED by Judge William J. Martinez on 3/2/2018. Text Only Entry (wjmsec, ) (Entered: 03/02/2018) |
| 03/02/2018 | 87 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 84 Renewed MOTION for Summary Judgment *against Defendants Taj Jerry Mahabub and GenAudio Inc. – Revised with Service on Client –* by Defendant Taj Jerry Mahabub. (Holmes, Andrew) (Entered: 03/02/2018) |
| 03/05/2018 | 88 | | ORDER granting Defendant Taj Jerry Mahabub's Unopposed Motion for Extension of Time to File Briefs in Connection with Plaintiff's Revised Motion Summary Judgment 87 . Defendants Mahabub and GenAudio Inc. are granted leave, for good cause shown, to file each of their Responses to Plaintiff's Revised Motion for Summary Judgment on or before **March 30, 2018** not to exceed 60 pages, and the Plaintiff may file a consolidated reply no later than **April 20, 2018**, not to exceed 40 pages. All page limits are exclusive of attorney signature blocks and certificates of service. SO ORDERED by Judge William J. Martinez on 3/5/2018. Text Only Entry (wjmsec, ) (Entered: 03/05/2018) |
| 03/30/2018 | 89 | | BRIEF in Opposition to 84 Renewed MOTION for Summary Judgment *against Defendants Taj Jerry Mahabub and GenAudio Inc.* filed by Defendant GenAudio Inc.. (Attachments: # 1 Affidavit Declaration of Michael P. McCloskey, # 2 Affidavit Declaration of Julie A. Eastwood, # 3 Affidavit Declaration of George Marvin, # 4 Appendix Table of Exhibits, # 5 Exhibit 150, # 6 Exhibit 151, # 7 Exhibit 152, # 8 Exhibit 153, # 9 Exhibit 164, # 10 Exhibit 166, # 11 Exhibit 167, # 12 Exhibit 168, # 13 Exhibit 169, # 14 Exhibit 170, # 15 Exhibit 171, # 16 Exhibit 172, # 17 Exhibit 173, # 18 Exhibit 174, # 19 Exhibit 176, # 20 Exhibit 177, # 21 Exhibit 178, # 22 Exhibit 179, # 23 Exhibit 180, # 24 Exhibit 181, # 25 Exhibit 185, # 26 Exhibit 188, # 27 Exhibit 189, # 28 Exhibit 190, # 29 Exhibit 191, # 30 Exhibit 192, # 31 Exhibit 193, # 32 Exhibit 194, # 33 Exhibit 195, # 34 Exhibit 196, # 35 Exhibit 197, # 36 Exhibit 198, # 37 Exhibit 199, # 38 Exhibit 201, # 39 Exhibit 202, # 40 Exhibit 203, # 41 Exhibit 204, # 42 Exhibit 205, # 43 Exhibit 206, # 44 Exhibit 208, # 45 Exhibit 209, # 46 |

|  |  |  |  |
|---|---|---|---|
|  |  |  | Exhibit 210, # 47 Exhibit 211, # 48 Exhibit 212, # 49 Exhibit 214, # 50 Exhibit 215, # 51 Exhibit 216, # 52 Exhibit 218, # 53 Exhibit 219, # 54 Exhibit 220)(McCloskey, Michael) (Entered: 03/30/2018) |
| 03/30/2018 | 90 |  | BRIEF in Opposition to 84 Renewed MOTION for Summary Judgment *against Defendants Taj Jerry Mahabub and GenAudio Inc.* filed by Defendant Taj Jerry Mahabub. (Attachments: # 1 Affidavit of Taj Jerry Mahabub, # 2 Affidavit of Andrew B. Holmes, # 3 Exhibit Exhibit 91, # 4 Deposition Excerpts Exhibit 92, # 5 Deposition Excerpts Exhibit 93, # 6 Deposition Excerpts Exhibit 94, # 7 Exhibit Exhibit 95)(Holmes, Andrew) (Entered: 03/30/2018) |
| 04/20/2018 | 91 |  | REPLY to Response to 84 Renewed MOTION for Summary Judgment *against Defendants Taj Jerry Mahabub and GenAudio Inc.* filed by Plaintiff Securities & Exchange Commission. (Attachments: # 1 Affidavit Leslie J. Hughes Declaration –Exhibits, # 2 Exhibit Reply Table of Exhibits, # 3 Exhibit 221, # 4 Exhibit 222, # 5 Exhibit 223, # 6 Exhibit 224, # 7 Exhibit 225, # 8 Exhibit 226, # 9 Exhibit 227, # 10 Exhibit 228, # 11 Exhibit 229, # 12 Exhibit Summary SOF Chart)(Hughes, Leslie) (Entered: 04/20/2018) |
| 04/20/2018 | 93 |  | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES:re: 91 Reply to Response to Motion, filed by attorney **Danielle R. Voorhees**. The s/signature did not match the filers name on the account for which the login and password are registered. **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCivR 5.1(a) and 4.3(c) of the Electronic Case Filing Procedures (Civil cases).(Text Only Entry) (sphil, ) (Entered: 04/24/2018) |
| 04/23/2018 | 92 |  | Unopposed MOTION for Hearing/Conference re 84 Renewed MOTION for Summary Judgment *against Defendants Taj Jerry Mahabub and GenAudio Inc.* by Plaintiff Securities & Exchange Commission. (Hughes, Leslie) (Entered: 04/23/2018) |
| 08/07/2018 | 94 |  | REASSIGNING MAGISTRATE JUDGE. This action is reassigned to Magistrate Judge S. Kato Crews, upon his appointment. All future pleadings should reference Magistrate Judge Crews at the end of the civil action number (such as 15–cv–00001–PAB–SKC). Unless otherwise ordered, the dates and times for all previously scheduled matters will be maintained and will now be handled by Magistrate Judge Crews in Courtroom C–204. His chambers are located in Room C–253 of the Byron G. Rogers Courthouse. His telephone number is 303–335–2117. (Text only entry) (agarc, ) (Entered: 08/07/2018) |
| 10/04/2018 | 95 | 18 | ORDER: 1. The SEC's Revised Motion for Summary Judgment 84 is GRANTED to the following extent, but otherwise DENIED: (a) summary judgment is granted in the SEC's favor and against both Defendants on the SEC's Claim 8; and (b) on the misrepresentations described in the attached document as the "2010 Misrepresentations" and "2011 Misrepresentations," summary judgment is granted in the SEC's favor and against both Defendants on the portion of the SEC's Claim 2 alleging a violation of Securities Act § 17(a)(2) and on the SEC's Claim 4; 2. The SEC's Request for Oral Argument 92 is DENIED AS MOOT; 3. On or before **October 26, 2018**, the SEC shall file a status report explaining whether it wishes to go to trial to establish Defendants' liability on claims for which the Court has not granted summary judgment and/or on a broader base |

| | | | |
|---|---|---|---|
| | | | of facts than the Court accepted when granting summary judgment, or, alternatively, whether it is willing to proceed directly to the remedies phase of this case (abandoning those claims that would otherwise need to go to trial on liability); and<br>4. After receiving the SEC's status report, the Court will determine whether it needs a response from Defendants, and will otherwise set appropriate deadlines.<br>SO ORDERED by Judge William J. Martinez on 10/04/2018. (wjmlc1) (Entered: 10/04/2018) |
| 10/04/2018 | 96 | | Utility Setting/Resetting Deadlines/Hearings: Text Only Entry Status Report due by 10/26/2018. (dhans, ) (Entered: 10/09/2018) |
| 10/12/2018 | 97 | | Unopposed MOTION for Extension of Time to *SUBMIT STATUS REPORT* by Plaintiff Securities & Exchange Commission. (Voorhees, Danielle) (Entered: 10/12/2018) |
| 10/12/2018 | 98 | | ORDER granting Plaintiff Securities and Exchange Commission's Unopposed Motion for an Extension of Time to Submit Status Report 97 . Plaintiff is granted leave, for good cause shown, to file said Status Report on or before **November 30, 2018**. SO ORDERED by Judge William J. Martinez on 10/12/2018. Text Only Entry (wjmsec, ) (Entered: 10/12/2018) |
| 11/27/2018 | 99 | | STATUS REPORT *NOTICE OF DISMISSAL OF CERTAIN CLAIMS, AND REQUEST TO SET BRIEFING SCHEDULE* by Plaintiff Securities & Exchange Commission. (Voorhees, Danielle) (Entered: 11/27/2018) |
| 11/28/2018 | 100 | | ORDER: Before the Court is Plaintiff Securities and Exchange Commission's Status Report, Notice of Dismissal of Certain Claims, and Request to Set Briefing Schedule 99 . In light of this status report, the claims listed in paragraph 2 of the report are deemed DISMISSED and the Court accepts the parties' proposed schedule for remedy briefing, namely: the SEC shall file its opening remedies brief on or before **January 15, 2019**; Defendants shall file their response briefs on or before **February 12, 2019**; and the SEC may file its reply brief on or before **March 12, 2019**. All briefs, including the SEC's reply brief, may comprise up to 15 pages as calculated according to WJM Revised Practice Standard III.C.1. SO ORDERED by Judge William J. Martinez on 11/28/2019. Text Only Entry (wjmlc1) (Entered: 11/28/2018) |
| 12/07/2018 | 101 | | MOTION to Withdraw as Attorney *Danielle R. Voorhees* by Plaintiff Securities & Exchange Commission. (Voorhees, Danielle) (Entered: 12/07/2018) |
| 12/12/2018 | 102 | | MEMORANDUM regarding 101 MOTION to Withdraw as Attorney *Danielle R. Voorhees* filed by Securities & Exchange Commission. Motions referred to Magistrate Judge S. Kato Crews By Judge William J. Martinez on 12/12/2018. Text Only Entry (wjmsec, ) (Entered: 12/12/2018) |
| 12/13/2018 | 103 | | ORDER granting 101 Motion to Withdraw as Attorney. Attorney Danielle Renee Voorhees is terminated as counsel of record for the Securities & Exchange Commission. The Clerk of Court shall remove Ms. Voorhees from the electronic notification system for this case. By Magistrate Judge S. Kato Crews on 12/13/2018. Text Only Entry (skclc1) (Entered: 12/13/2018) |
| 12/27/2018 | 104 | | |

| | | | Emergency MOTION to Continue *All Pending Deadlines in Light of Partial Government Shutdown Unopposed* by Plaintiff Securities & Exchange Commission. (Hughes, Leslie) (Entered: 12/27/2018) |
|---|---|---|---|
| 12/27/2018 | 105 | | MEMORANDUM regarding 104 Emergency MOTION to Continue *All Pending Deadlines in Light of Partial Government Shutdown Unopposed* filed by Securities & Exchange Commission. Motions referred to Magistrate Judge S. Kato Crews by Judge William J. Martinez on 12/27/2018. Text Only Entry (wjmsec, ) (Entered: 12/27/2018) |
| 12/27/2018 | 106 | | ORDER granting 104 Motion to Continue. The briefing schedule is stayed. Within 72 hours of resuming normal business operations, the parties shall file a joint status report proposing a new briefing schedule. By Magistrate Judge S. Kato Crews on 12/27/2018. Text Only Entry (skclc1) (Entered: 12/27/2018) |
| 01/31/2019 | 107 | | Joint STATUS REPORT *Proposing New Briefing Schedule* by Plaintiff Securities & Exchange Commission. (Hughes, Leslie) (Entered: 01/31/2019) |
| 02/04/2019 | 108 | | ORDER: Before the Court is the parties' Joint Status Report, Proposing New Briefing Schedule 107 . The Court ADOPTS the proposed briefing schedule. Plaintiff shall file its opening remedies brief on or before **February 15, 2019**; Defendants shall file their response briefs on or before **March 15, 2019**; and Plaintiff may file a reply brief on or before **April 5, 2019**. If the question of remedies will involve disputed facts, the parties shall follow the formatting requirements and page limitations for summary judgment motions found in WJM Revised Practice Standard III.E. Otherwise, the motion and responses shall not exceed 15 pages, and the reply shall not exceed 10 pages, calculated according to WJM Revised Practice Standard III.C.1. SO ORDERED by Judge William J. Martinez on 02/04/2019. Text Only Entry (wjmlc1) (Entered: 02/04/2019) |
| 02/13/2019 | 109 | | NOTICE of Entry of Appearance by Christopher Everett Martin on behalf of Securities & Exchange CommissionAttorney Christopher Everett Martin added to party Securities & Exchange Commission(pty:pla) (Martin, Christopher) (Entered: 02/13/2019) |
| 02/15/2019 | 110 | | MOTION for Judgment re 108 Order,,, *for Final Judgment seeking remedies and establishment of a Fair Fund*, MOTION for Permanent Injunction by Plaintiff Securities & Exchange Commission. (Attachments: # 1 Affidavit Meaghan McDevitt, # 2 Affidavit Tracy Bowen – Second Declaration, # 3 Exhibit 1 Mahabub email 7–18–2017 redacted, # 4 Exhibit 2 Antigua Cryptex Exchange Proposal, # 5 Exhibit 3 Wolfram–Zap Statement of Work redacted, # 6 Exhibit 4 Prejudgment interest calculation for Mahabub, # 7 Exhibit 5 Prejudgment interest calculation for GenAudio 2010 Offering, # 8 Exhibit 6 Prejudgment Interest calculation for GenAudio 2011 Offering, # 9 Exhibit 7 GenAudio Bank statement 5–2015 redacted, # 10 Exhibit 8 Mahabub bank statement 7–2012 redacted, # 11 Exhibit 9 Mahabub deposition excerpt 1–19–17)(Hughes, Leslie) (Entered: 02/15/2019) |
| 03/15/2019 | 111 | | BRIEF in Opposition to 110 MOTION for Judgment re 108 Order,,, *for Final Judgment seeking remedies and establishment of a Fair Fund* MOTION for Permanent Injunction filed by Defendants GenAudio Inc., Taj Jerry Mahabub. (Attachments: # 1 Declaration, # 2 Certificate of Service)(McCloskey, Michael) (Entered: 03/15/2019) |

| 03/15/2019 | 112 | | RESPONSE to 110 MOTION for Judgment re 108 Order,,, *for Final Judgment seeking remedies and establishment of a Fair Fund* MOTION for Permanent Injunction filed by Defendant Taj Jerry Mahabub. (Attachments: # 1 Affidavit Declaration of Taj Jerry Mahabub, # 2 Exhibit Exhibit A)(Holmes, Andrew) (Entered: 03/15/2019) |
|---|---|---|---|
| 04/05/2019 | 113 | | REPLY to Response to 110 MOTION for Judgment re 108 Order,,, *for Final Judgment seeking remedies and establishment of a Fair Fund* MOTION for Permanent Injunction *Against GenAudio Inc.* filed by Plaintiff Securities & Exchange Commission. (Attachments: # 1 Affidavit of Dell Skluzak, # 2 Exhibit 1 GenAudio Private Placement Memorandum and Inavisis Valuation Report excerpts, # 3 Exhibit 2 GenAudio Shareholders Progress Letter 4–8–2016, # 4 Affidavit of Elinor Blomgren, # 5 Exhibit 3 Patent Assignment Search Report, # 6 Exhibit 4 Patent Assignment Abstracts, # 7 Exhibit 5 Patent Maintenance Fee Reports)(Hughes, Leslie) (Entered: 04/05/2019) |
| 04/05/2019 | 114 | | REPLY to Response to 110 MOTION for Judgment re 108 Order,,, *for Final Judgment seeking remedies and establishment of a Fair Fund* MOTION for Permanent Injunction *as to Taj Jerry Mahabub* filed by Plaintiff Securities & Exchange Commission. (Martin, Christopher) (Entered: 04/05/2019) |
| 09/05/2019 | 115 | 63 | ORDER granting in part and denying in part Plaintiff's Motion for Final Judgment Seeking Remedies Against Defendants Taj Jerry Mahabub and GenAudio, Inc. and to Establish a Fair Fund 110 , and requiring submission of an updated prejudgment interest calculation, by Judge William J. Martinez on 09/05/2019. (wjmlc1) (Entered: 09/05/2019) |
| 09/13/2019 | 116 | | NOTICE re 115 Order on Motion for Judgment, *Notice of Filing Prejudgment Interest Calculations* by Plaintiff Securities & Exchange Commission (Attachments: # 1 Affidavit Third Declaration of Tracy W. Bowen, # 2 Exhibit 1 Prejudgment Interest Calculation on $1,280,900, # 3 Exhibit 2 Summary chart on $1,280,900, # 4 Exhibit 3 Prejudgment Interest Calculation on $3,513,000, # 5 Exhibit 4 Summary chart on $3,513,000, # 6 Exhibit 5 Prejudgment Interest Calculation on $574,970, # 7 Exhibit 6 Summary chart on $574,970, # 8 Exhibit 7 Prejudgment Interest Calculation on $990,000, # 9 Exhibit 8 Summary Chart on $990,000, # 10 Exhibit 9 Prejududgment Interest Calculation on $397,783, # 11 Exhibit 10 Summary chart on $397,783)(Hughes, Leslie) (Entered: 09/13/2019) |
| 09/16/2019 | 117 | 84 | ORDER Directing Entry of Judgment and Enjoining Defendants. Entered by Judge William J. Martinez on 9/16/2019. (afran) (Entered: 09/16/2019) |
| 09/16/2019 | 118 | 86 | FINAL JUDGMENT in favor of Plaintiff Securities & Exchange Commission and against Defendants GenAudio Inc. and Taj Jerry Mahabub pursuant to 117 Order Directing Entry of Judgment and Enjoining Defendants. Entered by Clerk on 9/16/2019. (afran) (Entered: 09/16/2019) |
| 09/16/2019 | 119 | 88 | AMENDED FINAL JUDGMENT in favor of Plaintiff Securities & Exchange Commission against Defendants GenAudio Inc. and Taj Jerry Mahabub pursuant to 117 Order Directing Entry of Judgment and Enjoining Defendants. Entered by Clerk on 9/16/2019. (afran) (Entered: 09/16/2019) |
| 09/19/2019 | 120 | | Unopposed MOTION to Amend/Correct/Modify 117 Order *Directing Entry of Judgment and Enjoining Defendants* by Plaintiff Securities & Exchange Commission. (Hughes, Leslie) (Entered: 09/19/2019) |

| 09/30/2019 | 121 | | ORDER Granting 120 Plaintiff's Unopposed Motion to Amend the Order Directing Entry of Judgment and Enjoining Defendants. Entered by Judge William J. Martinez on 9/30/2019. (afran) (Entered: 09/30/2019) |
|---|---|---|---|
| 09/30/2019 | 122 | 90 | AMENDED ORDER Directing Entry of Judgment and Enjoining Defendants. Entered by Judge William J. Martinez on 9/30/2019. (afran) (Entered: 09/30/2019) |
| 09/30/2019 | 123 | 93 | SECOND AMDENDED JUDGMENT pursuant to 122 Amended Order Directing Entry of Judgment and Enjoining Defendants. Entered by Clerk on 9/30/2019. (afran) (Entered: 09/30/2019) |
| 11/26/2019 | 124 | | NOTICE OF APPEAL as to 115 Order on Motion for Judgment, 80 Order on Motion for Summary Judgment,, Order on Motion for Order,, Order on Motion for Joinder,, Order on Motion to Strike, 95 Order on Motion for Summary Judgment,,,,,, Order on Motion for Hearing/Conference,,,,, 123 Judgment by Defendant GenAudio Inc. (Filing fee $ 505, Receipt Number 1082–7017262) (McCloskey, Michael) (Entered: 11/26/2019) |
| 11/27/2019 | 125 | | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 124 Notice of Appeal, filed by GenAudio Inc. to the U.S. Court of Appeals. ( Retained Counsel, Fee paid,) (Attachments: # 1 Preliminary Record and Docket Sheet)(angar, ) (Entered: 11/27/2019) |
| 11/29/2019 | 126 | 95 | NOTICE OF APPEAL as to 115 Order on Motion for Judgment, 95 Order on Motion for Summary Judgment,,,,,, Order on Motion for Hearing/Conference,,,,, 118 Judgment, 121 Order on Motion to Amend/Correct/Modify, 123 Judgment, 119 Judgment, 117 Order, 122 Order by Defendant Taj Jerry Mahabub (Filing fee $ 505, Receipt Number 1082–7020340) (Holmes, Andrew) (Entered: 11/29/2019) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-2118-WJM-SKC

SECURITIES & EXCHANGE COMMISSION,

Plaintiff,

v.

TAJ JERRY MAHABUB, and
GENAUDIO, INC.,

Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
SEC'S REVISED MOTION FOR SUMMARY JUDGMENT**

---

This is a securities fraud case that Plaintiff Securities and Exchange Commission ("SEC") has brought against Taj "Jerry" Mahabub ("Mahabub") and the company he founded, GenAudio, Inc. ("GenAudio") (together, "Defendants"). The SEC asserts various theories of liability under the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77a *et seq.*, and the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78a *et seq.*

Currently pending before the Court is the SEC's Revised Motion for Summary Judgment. (ECF No. 84.) The SEC requests judgment as a matter of law on all of its causes of action, leaving only remedies for further consideration. (*Id.* at 8 & n.1.)[1] GenAudio and Mahabub, represented separately, each filed responses (ECF Nos. 89,

---

[1] All ECF page citations are to the page number in the ECF header, which does not always match the document's internal pagination, particularly in exhibits and in briefs with separately numbered prefatory material such as a table of contents.

90), and the SEC filed a combined reply (ECF No. 91).

For the reasons explained below, the Court finds that a subset of facts—more limited than the set of facts proffered by the SEC—entitles the SEC to summary judgment on its claims brought under Securities Act § 17(a)(2) and Rule 10b-5(b).  The SEC is also entitled to summary judgment on its claim for sale of unregistered securities under Securities Act § 5(a) and (c).  Beyond that, judgment as a matter of law is not appropriate on this record.  The Court will order the SEC to file a status report regarding whether a trial on liability is needed, or whether the foregoing is enough to support the remedies the SEC intends to seek.

## I.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right

to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. FACTS

The following facts are undisputed unless attributed to a party or otherwise
noted.

### A. GenAudio & Mahabub

GenAudio is a Colorado corporation headquartered in Centennial, Colorado.
(ECF No. 84 at 9, ¶ 1.) "[I]t engages in the development and marketing of software that
creates three-dimensional audio, which it calls 'AstoundSound.'" (*Id.*)

Mahabub founded GenAudio, served as its CEO and its Chairman of the Board
from 2009 to 2012. (*Id.* ¶ 3.) "Between November 2009 and April 2012, Mahabub had
the right to vote a majority of GenAudio's securities and controlled GenAudio's Board."
(*Id.* ¶ 4.)

During the same timeframe (2009 to 2012), GenAudio primarily financed itself
through selling debt and equity securities in private offerings, but it was nonetheless
"consistently insufficiently funded." (*Id.* at 10, ¶¶ 9–10.) GenAudio had an employee,
Jim Wei-Kung Mattos, who spent most of his time trying to raise money for the
company. (*Id.* ¶ 6.)

### B. Communications About Apple from July 2009–March 2010

#### 1. The Beginnings of the Apple Relationship

This case centers around Mahabub's attempts to secure a deal with Apple, Inc.,
to integrate AstoundSound into Apple products. GenAudio began discussing
AstoundSound with Apple in late 2006. (ECF No. 89 at 16, ¶ 108.) The relationship
between GenAudio and Apple over the next two-and-a-half years is unclear. However,
on July 1, 2009, Mahabub executed Apple's standard non-disclosure agreement

("NDA") on behalf of GenAudio.  (ECF No. 84 at 12, ¶ 19.)

Mahabub's primary point of contact at Apple was Victor Tiscareno, a senior audio

and acoustic engineer.  (*Id.* ¶ 17.)  Mahabub also met and communicated with Michael

Hailey, a product market manager for the iPod, iPhone, and iPad product lines; and

Ronald Isaac, a "signal processing engineer and acoustician technologist."  (*Id.* ¶ 18.)

Tiscareno was Mahabub's point of contact with the iPhone/iPod/iPad division, and Isaac

was Mahabub's point of contact with the Mac division.  (ECF No. 89 at 20, ¶ 124.)

### 2.     The First Wave of Altered E-Mails

Between August 2009 and February 2010, Mahabub forwarded several of his

e-mails to or from his Apple contacts (mostly Tiscareno) to a group the parties refer to

as the "GenAudio Team," meaning "GenAudio's employees, contractors, and Board."

(ECF No. 84 at 10, ¶ 12.)  Mahabub altered the forwarded versions of these e-mails.

(*See generally* ECF No. 84-92.)  These alterations generally conveyed the impression,

or claimed outright, that:

- Mahabub had met with Phil Schiller, Apple's senior vice president of
  worldwide marketing, and Tim Cook, then Apple's chief operating officer;

- Apple's then-CEO Steve Jobs was being apprised of the GenAudio
  discussions;

- Mahabub was scheduled to meet with Jobs personally;

- progress toward a deal with Apple had generally been swift; and

- Schiller was targeting a late 2010 rollout of GenAudio-enhanced Apple
  products.

(*Id.*; ECF No. 84 at 13–14, ¶¶ 24–25, 30–31, 33.)  In truth, Mahabub had not met with—

Case 1:15-cv-02118-WJM-SKC Document 95 Filed 10/04/18 Page 5 of 45

and never would meet with—Jobs, Cook, or Schiller, and Apple employees never brought GenAudio to Jobs's attention. (*Id.* ¶¶ 26, 32, 34–35.)

    As will be seen below, forwarding altered e-mails to the GenAudio Team continued to be Mahabub's *modus operandi* in coming months and years. Mahabub suggests he made these alterations only to maintain morale among GenAudio's overworked and inconsistently paid employees, not as a means of encouraging investment. (ECF No. 89 at 4; ECF No. 90 at 9, ¶¶ 212–13.)

    3.    <u>Other Events Coinciding with the Altered E-Mails</u>

    Other events potentially material to this case occurred in this same timeframe as the first set of altered e-mails (August 2009 through February 2010). On September 25, 2009, Mahabub told the GenAudio Board that a deal with Apple was "highly probable." (ECF No. 84 at 13, ¶ 27.) On November 9, 2009, Mattos (GenAudio's full-time fundraiser) sent an e-mail, authored and signed by Mahabub, to GenAudio's investors, informing them that "nothing is assured yet, but as shareholders you should be aware that there is a strong possibility that the Company may be acquired within the next 6 months in light of our extensive discussions with a global industry leader in consumer electronics." (ECF No. 84-35 at 3.) He requested that investors "[p]lease continue to tell people about our Company and direct[] them to our website." (*Id.*) A few days later, a recipient of this e-mail named Donaghue replied to Mattos with a "list of investors," and each of the listed investors purchased GenAudio shares soon afterward. (ECF No. 84 at 16, ¶¶ 38–39.)[2]

_____

[2] Defendants object to the Donaghue e-mail as hearsay (*see* ECF No. 89 at 7, ¶¶ 38–39), but Defendants do not explain why they believe that the content of the e-mail "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). In any event, the following non-hearsay facts remain relevant: the transmission of and words written in

Around this same time, Mahabub began selling his personal GenAudio shares to investors. (*Id.* at 17, ¶ 44.)[3] The sales continued through April 2012. (*Id.* ¶ 45.) No registration statement was filed or in effect for these sales. (*Id.* at 18, ¶ 47.)

On November 28, 2009, Mahabub sent Apple employees Tiscareno and Hailey a lengthy e-mail attempting to ingratiate himself to them, extolling the potential for an Apple-GenAudio partnership, suggesting that Apple's IP lawyers begin examining GenAudio's patents, and stating that "we hope Apple becomes happy with us once the deal is inked and the initial products from Apple incorporating AstoundSound . . . are brought to market." (ECF No. 84-44 at 3–10.) Hailey (the iPod/iPhone/iPad product market manager) responded on December 16, 2009, that "[w]e're making progress and building our story, but this is not something we can execute overnight. The business side of things would come into play after we have exec buy-in on the product side." (*Id.* at 3.) This response caused Mahabub to focus intensely on "exec buy-in." (ECF No. 89 at 24, ¶ 142.) In a follow-up e-mail, he asked if Hailey had "any idea as to when the exec buy-in might take place." (ECF No. 84-44 at 2.) It is not clear if Hailey responded to that e-mail. However, on January 5, 2010, Hailey responded to a separate e-mail from Mahabub. (ECF No. 84-45 at 2–3.) Hailey wrote that Apple was "pretty serious about looking at audio quality across the board and this will take time—definitely more than a couple of months." (*Id.* at 3.)

---

Donaghue's e-mail, including the list of names described as "investors"; and the purchase of GenAudio shares soon after by persons with those same names.

[3] Defendants deny this fact without explanation and therefore fail in their duties under Rule 56(c)(1) and WJM Revised Practice Standard III.E.4(b). They also object to one of the supporting e-mails as hearsay (ECF No. 84-42) but do not argue that the content cannot be presented in admissible form.

6

4.     The 2010 Offering

Mahabub recalls a conversation with Tiscareno in February 2010 or thereabouts, in which Tiscareno said something to the effect that he and Hailey were "confident" that they could get AstoundSound integration "okayed by the big man if [they played their] cards right." (ECF No. 89 at 27, ¶ 159.) Whether Tiscareno recalls this conversation is not clear, but Tiscareno testified at his deposition that if he used the term "big man," it was usually a reference to Jobs. (*Id.* at 26, ¶ 154.)

Tiscareno's alleged "big man" remark became the basis of alterations Mahabub made to a February 12, 2010 e-mail that he forwarded to GenAudio's board that same day. (*See* ECF No. 84 at 18, ¶ 50.) The original e-mail was simply about whether Mahabub had considered testing GenAudio's technology in the newest iPad model. (*See* ECF No. 84-47 at 2.) Mahabub added to that e-mail several sentences, including one in which Tiscareno purports to say that he and Hailey "are both confident that we can get this ok'd by the big man if we play our cards right." (ECF No. 84-46 at 3.) Mahabub also put into Tiscareno's mouth a mention of "the project Phil [Schiller] discussed for Christmas product rollout with you." (*Id.*) Finally, in Mahabub's commentary on Tiscareno's alleged statements, he told the GenAudio board that he had a "[g]reat meeting with Phil Schiller yesterday" who was targeting a "Christmas rollout" and had also "requested to see a copy of the [GenAudio] valuation report ASAP." (*Id.* at 2.)

Later the same day, February 12, 2010, GenAudio held a board meeting. (ECF No. 84 at 18, ¶ 51.) After a "summary of the discussions with Apple," the board agreed that GenAudio should prepare a new stock offering and directed Mahabub to prepare a

7

draft private placement memorandum for the board's review.  (*Id.*)  The board formally
approved the offering on March 5, 2010 ("2010 Offering").  (*Id.* at 19, ¶ 52.)

On March 10, 2010, Mahabub e-mailed fifteen GenAudio shareholders the
company valuation report, announcing that GenAudio would include that report in the
2010 Offering materials and that the 2010 Offering would "go live on March 15, 2010."
(*Id.* ¶ 53.)  He then gave these investors an opportunity, ahead of the formal offering, to
buy up to 250,000 of his own GenAudio shares at fifty cents per share.  (*Id.*)[4]  And he
went on to state that GenAudio was "starting to discuss the business side with the
LCEC [*i.e.*, Large Consumer Electronics Company], and I expect to have a very
substantial license deal in place for their Christmas Product Rollout."  (ECF No. 84-50
at 4.)  GenAudio's investors generally understood that "LCEC" referred to Apple.  (ECF
No. 84 at 16, ¶ 41.)

As promised in Mahabub's e-mail, the 2010 Offering commenced on March 15,
2010.  (*Id.* at 19, ¶ 54.)  It lasted through August 31, 2010.  (*Id.*)  GenAudio did not file a
registration statement for the 2010 Offering, nor did it provide an audited balance sheet
to potential investors.  (*Id.* ¶ 55; *id.* at 22, ¶ 69.)  The solicitation included a private
placement memorandum (ECF No. 84-3) with a cover letter dated March 15, 2010 and
signed by Mahabub (ECF No. 84-52).  This letter was specifically directed to current
GenAudio shareholders "to keep [them] apprised of current developments."  (*Id.* at 2.)
Mahabub represented, among other things, that the 2010 Offering was

> being conducted to provide bridge capital until we can "ink" a
> deal with a large consumer electronics company (referred to
> as the "LCEC" throughout the [private placement

---

[4] Later in the e-mail, he made explicit that this would be a bargain compared to the
$3.00/share intended for the 2010 Offering.  (ECF No. 84-50 at 5.)

> memorandum]) with whom we have had over 15 meetings
> with marketing and technical management, and will start the
> actual embedded level integration process within the next 30
> days.

(*Id.*)

     5.    <u>Fundraising Exhortations & More Altered E-Mails</u>

On March 18, 2010, Mahabub e-mailed the GenAudio Team to explain the

current state of company finances, and attached the 2010 Offering cover letter. (*Id.* at

22, ¶ 73; ECF No. 84-9 at 2–4.) The e-mail included an exhortation that it was "[t]ime to

go back into fund raising mode, and if any of you feel like helping out with this effort, I

would certainly appreciate it. It's not like you are doing your friends and family a bad

thing by getting them into GenAudio at this stage in the game." (*Id.* at 4.) The following

day, Mahabub forwarded that e-mail again to the GenAudio Team, adding some

additional information, and further stating,

> Time to get some $$$ and drive the business side of our
> company through the roof! * * * And someone would not
> want to invest at this stage in the game, or increase there
> [*sic*] shareholder position because why? There is no answer
> to this question, however, in order to truly get to where this
> ship needs to go, we need to stop for a moment and re-fuel.

(*Id.* at 2.)

On March 21, 2010, Mahabub sent an e-mail to Tiscareno, Hailey, and Isaac,

stating that he would soon be sending them certain software that would permit Apple

engineers to test AstoundSound as an embedded part of certain Apple products. (ECF

No. 84-92 at 7.) Later that same day, Mahabub forwarded an altered version of that

e-mail to the GenAudio Team. (*Id.*) Specifically, Mahabub altered the "To:" line to

make it appear that the e-mail had been sent to Schiller and other important Apple

executives. (*Id.*) Mahabub also added a paragraph to make it appear that his e-mail

9

had not simply announced his intent to send the software, but that it was actually in response to Apple's request for the software in light of specific business plans to incorporate AstoundSound into Apple's products, and that Mahabub had continued to communicate directly with Schiller:

> This [software transmittal] will be right in time for you to start the embedded level integration process as we discussed on our last conference call and will keep everything on schedule with what Phil [Schiller] is hoping for—a fall product rollout. I will be available anytime on Tuesday for a conference call to go over the [software development kit], and I believe Phil and Michael [Hailey] wanted to follow up and go over a few things with us on the marketing side in terms of the actual application integrations for Quick[T]ime, [i]Tunes, DVD Player among others...Just let me know when you are all available.

(*Id.* (ellipses in original).)

## C. Communications About the "Exec Buy-In" Meeting (April–May 2010)

### 1. Learning of the Meeting

According to the SEC, Mahabub learned in early April 2010 of an important upcoming "internal meeting at Apple regarding GenAudio's technology." (ECF No. 84 at 23, ¶ 76.) Mahabub partly disputes this, claiming that he knew "long before" April 2010 that such a meeting had been scheduled, and that he and Tiscareno had worked "in late 2009" on the "demos to be used at that meeting." (ECF No. 89 at 12, ¶ 76.) In any event, this was the meeting where Mahabub's coveted "buy-in" from an Apple "exec" would be decided. (*Id.* at 25, ¶ 150.) If an executive "did not give a 'green light' to continue with GenAudio, then discussions between GenAudio and Apple's iPhone/iPod/iPad division . . . would end." (*Id.* ¶ 151.) Mahabub understood this. (*Id.* at 26, ¶ 140.)

Case 1:15-cv-02118-WJM-SKC Document 99 Filed 10/04/18 Page 11 of 45

2.    "Jobs" vs. "Joz"

The SEC claims that none of Mahabub's Apple contacts told him the upcoming demonstration meeting would include Steve Jobs. (ECF No. 84 at 23, ¶ 77.) Mahabub claims, however, that he reasonably came to believe that Jobs would attend. Specifically, in the run-up to the meeting, Mahabub and Tiscareno had discussions about preparing the demonstration for "the executive" or "the exec." (ECF No. 89 at 26, ¶ 155.) Moreover, Mahabub claims that Tiscareno and Hailey told him over the phone that the meeting would be with "Jobs," when in fact—if they named the executive at all—they probably said that the meeting would be with "Joz." (Id. at 26–27, ¶¶ 156–57.) "Joz" (pronounced "jaws") is the nickname for Greg Joswiak, who was then "the Vice President of iPod/iPhone in the Marketing Department, [and was] among the most senior executives at Apple." (Id. at 25, ¶¶ 148–49.) But Mahabub had never heard of Joswiak and was never told that someone by that name would attend the meeting. (Id. at 27, ¶ 158.) Thus, he asserts, he reasonably understood Hailey and/or Tiscareno to be saying that "Jobs," not "Joz," would attend. (Id. at 27, ¶ 157.)

3.    Altered E-Mails and Other Statements About the Anticipated Meeting

On April 7, 2010—still in the run-up to the "exec buy-in" meeting—Tiscareno e-mailed Mahabub about delivery of certain demonstration hardware, concluding with, "No rush at the moment. I don't have a meeting date or time yet." (ECF No. 84-73 at 2.) Mahabub responded, and then forwarded an altered version of his response and Tiscareno's trailing e-mail to the GenAudio Team. (ECF No. 84-57.) Among other things, Mahabub removed from Tiscareno's e-mail the portion about not having a meeting date or time, and inserted the sentence, "Phil [Schiller] let us know earlier that

11

this [meeting] might be postponed until early next week.  Apparently Steve [Jobs] is

planning on going out of town with his family for the weekend."  (*Id.* at 3.)  To his own

response, Mahabub added that the fabricated postponement "might be better given that

Steve will be relaxed from having a weekend getaway with his family.  Perhaps this is

why Phil is rescheduling for next week.  He did say [that whether Jobs is relaxed] was a

very important factor . . . ."  (*Id.* at 2.)

On April 30, 2010, while attending a conference for investment bankers and

broker-dealers, Mahabub sent at least one investor an e-mail announcing that the LCEC

was "looking to acquire GenAudio's tech for integration into their entire lineup of product

offerings . . . and we are now waiting [for the time] when we will initiate negotiations,

pending the CEO's [approval of] the integrated product rollout strategy and the technical

implementation strategy that will be presented to the CEO next week!!!"  (ECF No. 84-

74 at 5.)  The e-mail prompted the recipient to purchase 5,000 shares for $15,000.

(ECF No. 84 at 24, ¶ 80.)[5]

At some point, Mahabub learned that the specific date of the "exec buy-in"

meeting would be May 6, 2010.  (*See* ECF No. 89 at 26, ¶¶ 153, 155.)  On May 5,

Mahabub e-mailed Tiscareno, offering to fly to Apple headquarters and attend the

meeting, and also offering to coach Tiscareno on how best to present AstoundSound.

(ECF No. 84-71 at 2–3.)  Later that day, Tiscareno replied,

> Thanks for your offer to help us, but this is not that kind of
> demo.
>
> Michael [Hailey] and I are pitching this as a concept, and our

---

[5] Defendants object to this e-mail as hearsay (*see* ECF No. 89 at 13, ¶ 80), but again fail
to explain why they believe that the content of the e-mail, or the fact which it represents, "cannot
be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).

> proof of concept is what you developed for us.
>
> I think the demo and the product will speak for itself. Once we get the go ahead that this is a great idea, then the questions will be, "[W]ell, what about the other technologies have we reviewed them? etc[.]" Then we sort of start over internally to prove that we know what we are talking about, etc.
>
> We have to get to first base...

(*Id.* at 2 (ellipses in original).)[6]

On the morning of May 6, Mahabub sent e-mails to the GenAudio Team about the meeting scheduled for that day, with statements suggesting that Schiller and Jobs would attend. (ECF No. 84-75 at 2–3.)

### 4.   The Meeting Itself & Aftermath

The "exec buy-in" meeting indeed took place later that day, but only Tiscareno, Hailey, and Joswiak attended. (ECF No. 89 at 27, ¶ 160.) At his later deposition, Hailey described Joswiak's "response" as follows: "So, I think he agreed that—he agreed that there was a value and exploring ways to enhance the listening experience for people using iPods and iPhones. * * * My recollection was that he saw value in the consumer problem we were trying to solve." (ECF No. 89-26 at 6.)

The record does not show what Tiscareno or Hailey said, if anything, to Mahabub about the outcome of the May 6 meeting. However, late in the evening of the same day, Mahabub sent an e-mail to the GenAudio Team with a purported transcript of a phone call he had supposedly just had with Tiscareno. (ECF No. 84-33.) The fact of

---

[6] Defendants again object to this e-mail as hearsay (*see* ECF No. 89 at 13–14, ¶ 81), but still fail to explain why they believe that the content of the e-mail, or the fact which it represents, "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). In addition, the e-mail is obviously relevant for its "effect on the listener," *i.e.*, Mahabub.

13

the phone call and the transcript were both fabrications.  According to the transcript, Tiscareno reported that "the meeting could not have gone any better" and that "Steve thought the technology was so extraordinary," but "it will take a lot of time before you and Apple get to the business side" because Jobs believed that the upcoming release of a new operating system version for iPhones and iPads already had many new features and AstoundSound "is too good to be rolled into a giant pool of other features.  I believe [Jobs] wants to explode this technology into the world, and he stated he needs some time to figure out the plan and when to launch this."  (*Id.* at 3–4.)  In the meantime, Jobs had "instructed all of us to be in a no radio period," *i.e.*, to cease discussions with GenAudio as Apple prepared for formal negotiations.  (*Id.* at 4.)

Following this fake transcription, Mahabub provided his own commentary, including a prediction that Apple would take "60 to 90 days," "most likely to prepare what I believe will be a buyout offer."  (*Id.* at 5.)  As for Jobs, Mahabub stated, "I can't wait to meet him for our one on one meeting, which according to [Tiscareno] is still on the radar screen for when we re-open haling [*sic*] frequencies with [Apple]."  (*Id.*)

Mahabub's e-mail included a mandate that recipients should delete it after reading it, because "[i]f this ever got out, it could kill our deal."  (*Id.* at 3.)  However, Mahabub himself forwarded it to a potential investor named Dell Skluzak, albeit with another command to delete after reading.  (*Id.* at 2.)  Mahabub says he sent the e-mail to Skluzak as part of a campaign to persuade him to join the GenAudio Board, not to invest.  (ECF No. 90 at 12, ¶¶ 231–32.)  Skluzak had decided to invest in GenAudio before receiving this e-mail and did not rely on the e-mail when, later in May 2010, he participated in the 2010 Offering.  (*Id.* at 11, ¶¶ 229–30; ECF No. 84 at 25, ¶ 85.)

14

Rather, according to Skluzak, he had twice met with Mahabub "sometime in the first four months of 2010." (ECF No. 84-37 at 5.) During those meetings, Mahabub persuaded Skluzak to invest by trumpeting Steve Jobs's supposed enthusiasm. (*Id.*) Skluzak was impressed at Mahabub's "extensive and high level" interactions with Apple. (*Id.* at 5–6.) Skluzak says that the May 6, 2010 fake-transcript e-mail "affirmed my willingness to purchase [GenAudio shares], because I still would have had the opportunity to stop the monetary transaction to purchase those stocks. It just confirmed that the decision I had made to purchase the stocks was a good decision." (*Id.* at 8.)

As for what Mahabub *actually* learned about the May 6, 2010 meeting with "Jobs"/"Joz," the record reveals nothing. Mahabub claims he assumed that the "critical 'green light'" must have been given because no one at Apple told him otherwise, and because "substantive work" with Tiscareno and other Apple engineers continued after that date. (ECF No. 89 at 27–29, ¶¶ 162, 164–65.)

**D.    Communications About Apple from May–December 2010**

    1.    Altered E-Mails and other Claims During the "No Radio" Period

Soon after May 6, 2010, GenAudio created an investor video presentation featuring Mahabub saying, among other things, "as of a couple of days ago . . . the CEO of the LCEC finally met with senior marketing and technical management and we have the green light to move forward." (ECF No. 84-76 at 55.) Mahabub also encouraged investors to review the 2010 Offering materials. (*Id.* at 55–56.) On June 2, 2010, Mattos e-mailed to potential investors a link to the video. (ECF No. 84-54.)

    2.    Alleged Resumption of Negotiations & False Claims About Steve Jobs

On July 2, 2010, Mahabub and Tiscareno had an e-mail exchange to set up a July 7 meeting between them and two others on Tiscareno's "team," including Andrew

Bright, a Ph.D. in acoustics. (ECF No. 84-78 at 2.) Mahabub then forwarded this e-mail

to the GenAudio Team, announcing that "[t]he quiet period has ended" and that "Steve

[Jobs] and his team are getting serious about the real core of the technology." (ECF

No. 84-77 at 3.) Thus, Jobs had requested that "his big phd [*sic*] in acoustic [*sic*] report

back to him." (*Id.* at 2–3.) To back up these fabrications, Mahabub altered Tiscareno's

e-mail to state that the meeting with Bright was "requested by Steve himself" and that

"Steve would like to have an initial introduction to you during this meeting, just a simple

handshake meeting with him." (*Id.* at 4.)

For unclear reasons, the meeting with Bright did not happen until late September

2010, and is described in Part II.D.3, below.

On August 1, 2010, GenAudio sent to investors a letter signed by Mahabub, and

reporting on various business developments. (ECF No. 84-79.) Among the many

statements in that letter is the following claim regarding GenAudio's relationship with the

LCEC:

> In the very near future, it has been requested by the LCEC's
> CEO to have a "hand-shake" meeting with myself alongside
> meeting with the LCEC's expert in acoustic physics and
> others. This meeting will take place within the next couple of
> weeks. As you all may already know, due to our NDA with
> the LCEC, I am not at liberty to talk about any details. I can
> say that we are still moving forward with confidence and plan
> on carrying it through all the way to the end, which could
> result in a significant revenue generating license deal or the
> potential for acquisition of the technology or the company.

(*Id.* at 3.) Toward the end of this letter, Mahabub made a reference to the ongoing 2010

Offering:

> Our current offering will be closing at the end of August and
> it has been very successful thus far with the vast majority of
> investments coming from our existing shareholders. Thank

16

you very much for your continued support.  Many of you
have continued to invest over and over again since I formed
the company back in 2003, and I am grateful and honored to
have you all as shareholders in GenAudio (including all of
our newer shareholders of course).  It is a real good sign
when your shareholders continue to invest repeatedly—[i]t
makes the entire team and myself happy and we will
continue to work very hard to maximize shareholder value.

(*Id.* at 4.)

The 2010 Offering closed on August 31, 2010, having yielded $3.513 million from

sales of 1.171 million common shares.  (ECF No. 84 at 19, ¶ 54.)

3.      The Argument with Bright

Mahabub's meeting with Bright (Apple's resident Ph.D. in acoustics) took place

on September 23, 2010.  (*Id.* at 27, ¶ 95.)  Tiscareno also attended (*id.*), as did "a senior

Apple employee" named Barry Corlett (ECF No. 89 at 30, ¶ 170).  "The meeting did not

go well due to an argument between Mahabub and Bright" that the record does not

elaborate upon.  (ECF No. 84 at 27, ¶ 96.)

Despite the argument, Tiscareno and others continued to work with GenAudio in

the ensuing months (ECF No. 89 at 31, ¶¶ 174–75), although the SEC claims that none

of this work was "substantive" (ECF No. 84 at 27, ¶ 96).

4.      Additional False Claims About Steve Jobs

On December 8, 2010, GenAudio sent to investors a letter signed by Mahabub.

(ECF No. 84-83.)  Among many other developments, Mahabub described ongoing

communication with the LCEC, and falsely claimed, "I met with their CEO and gave him

a demo of our technology, and he stated, 'I really like your technology and look forward

to seeing you again in the future.'"  (*Id.* at 12.)  Mahabub continued, "Although they are

moving very slow, we are still on their radar screen, and remain very optimistic for a

17

deal in the second or third quarter of 2011." (*Id.*)

## E.   Communications About Apple as the Relationship "Fizzles"

### 1.   Tiscareno's Departure

Tiscareno left Apple in February 2011.  (ECF No. 89 at 32, ¶ 179.)  At that time,
"he informed Mahabub that his supervisor, Jesse Dorogusker, was 'fully aware and
engaged with the project' relating to GenAudio." (*Id.*)  Mahabub had at least two
meetings with the Dorogusker, although he could not recall if they were after
Tiscareno's departure or if they happened in the lead-up to Tiscareno's anticipated
departure.  (*Id.* ¶ 180 and cited evidence.)

### 2.   An Informal Investment Solicitation

On February 26, 2011, GenAudio sent to investors a letter signed by Mahabub
describing GenAudio's current state of affairs.  (ECF No. 84-84.)  Regarding the LCEC,
Mahabub conceded that "progress has been slower than we would like," but "they have
not cut us loose and continue to be very interested in integrating our technology across
their entire line-up of product offerings." (*Id.* at 16–17.)  He further stated,

> While I wish I had more news to share on this front, I am
> relieved that they continue to take us seriously and evaluate
> our technology.  If they were not interested, they would have
> terminated the discussions by now.  We will continue to
> support the development efforts with the LCEC with the hope
> that it will lead to a major transaction for GenAudio and its
> shareholders in the not so distant future.

(*Id.* at 17.)  After discussing many other potential business opportunities, the letter
concluded with an invitation to "accredited investors" who might "like to discuss a follow-
on investment" to contact Mahabub directly.  (*Id.* at 22.)

### 3.   The "Evaluation Agreements"

In mid-March 2011, Mahabub was corresponding by e-mail with Isaac (his

primary contact in the Mac division) and another Apple employee about obtaining

broken iMacs so he could use their chassis to create a demonstration of AstoundSound

as integrated into an iMac with a custom speaker configuration.  (ECF No. 89-24.)

Isaac replied that Mahabub should work with another Apple employee (copied on the

e-mail) "to sign all the necessary evaluation agreements."  (*Id*. at 3.)

No evidence in the record shows whether Mahabub sought details on what these

evaluation agreements actually encompassed or entailed.  In their current summary

judgment briefing, Defendants allege that Mahabub: (1) perceived these agreements to

be additional NDAs; (2) assumed that they must be even more restrictive than the NDA

already on file between Apple and GenAudio, because otherwise there would be no

need for more; and (3) inferred from the foregoing two premises that Apple's interest in

GenAudio was increasing.  (ECF No. 89 at 32, ¶ 178.)

Defendants say that these assumptions explain a March 29, 2011 e-mail, signed

by Mahabub, informing GenAudio investors of the following:

> This email is to notify all existing shareholders that what we
> commonly refer to as the "LCEC" . . . and GenAudio are
> going to be signing a new set of "evaluation and
> development" agreements.  This will completely prohibit
> myself or any of GenAudio's team members [from]
> disclos[ing] any further information about the LCEC,
> including even the abbreviation LCEC in any future
> shareholder correspondence. . . .  All references to the
> LCEC will be deleted from the business plan section of the
> new offering [*i.e.*, the 2011 Offering, described below].  Said
> offering will be limited to our existing accredited
> shareholders . . . .
>
> . . . I have no idea how much time will elapse before I can
> mention what is happening or has happened with the LCEC.
>
> . . . Believe me when I tell all of you that I wish I could
> disclose what is going on, however, the fact of the matter is I

19

cannot.

(ECF No. 84-85 at 7.)  GenAudio, however, never signed any evaluation agreements, or any additional NDAs.  (ECF No. 84 at 29, ¶ 101.)

### 4.    The 2011 Offering

Beginning in April 2011 and continuing through April 2012, GenAudio again solicited equity investment ("2011 Offering").  (*Id.* at 29, ¶ 102.)  GenAudio did not file a registration statement for the 2011 Offering, nor did it provide an audited balance sheet to prospective investors.  (*Id.* at 29–30, ¶¶ 103, 113.)

### 5.    "Interest . . . Slowly Fizzled Out"

Ultimately, GenAudio never reached a deal with Apple.  "[W]hile some within Apple were supportive of that type of technology, others at Apple were not.  As a result, interest in GenAudio's technology slowly fizzled out over time."  (ECF No. 89 at 32, ¶ 182.)  However, no one in "[t]he Mac division [ever] explained to Mahabub that interest in GenAudio's technology had fizzled out and that the Mac division would not be continuing to move forward with GenAudio."  (*Id.* ¶ 183.)[7]

## F.    Additional Information Regarding the Various Sales of GenAudio Shares

As previously noted, no registration statement was in effect for Mahabub's sales of his own GenAudio shares, for the 2010 Offering, or for the 2011 Offering.  Further, GenAudio did not include an audited balance sheet in the information given to potential investors about the 2010 and 2011 Offerings.

The SEC claims that GenAudio did nothing to determine investor accreditation besides sending and receiving potential investor questionnaires, and investors often left

---

[7] The record is not clear about why or precisely when the iPod/iPhone/iPad division lost interest.

the accreditation portion of the questionnaires blank.  (*Id.* at 20, ¶¶ 62–65; *id.* at 30,

¶¶ 110–11.)  Defendants counter that Mattos reviewed the questionnaires to ensure

investors qualified as accredited, and if a questionnaire was incomplete, he would

normally contact the investor to complete it.  (ECF No. 89 at 10, ¶ 63; *id.* at 17, ¶ 110.)

Mattos admitted, however, that he overlooked some incomplete questionnaires.  (ECF

No. 84 at 21, ¶ 66.)  The 2010 and 2011 Offering materials also state that GenAudio

had "sold securities to accredited and non-accredited 'family and friends' investors."  (*Id.*

¶ 67.)

Finally, GenAudio and Mahabub used means of interstate commerce, such as

mail and e-mail, to solicit investment in the 2010 and 2011 Offerings, and in Mahabub's

personal shares.  (*Id.* at 8–9, 18–19, 29 ¶¶ 37–39, 50–51, 56, 104.)

Mahabub's sale of his personal shares between November 2009 and April 2012

yielded about $2.6 million in the aggregate from at least 85 investors.  (*Id.* at 17, ¶ 45.)

As noted previously, the 2010 Offering yielded approximately $3.5 million.  (*Id.* at 19,

¶ 54.)  The 2011 Offering yielded $990,000.  (*Id.* at 29, ¶ 102.)

### III.  ANALYSIS

The SEC alleges eight claims for relief against Defendants.  (*See* ECF No. 1 at

34–40.)  They are:

- Claim 1—scheme to defraud in the offer or sale of securities, in violation of
  Securities Act § 17(a)(1), 15 U.S.C. § 77q(a)(1).

- Claim 2—obtaining money or property by false statements in the offer or
  sale of securities, in violation of Securities Act § 17(a)(2) & (3), 15 U.S.C.
  § 77q(a)(2) & (3).

21

Case 1:15-cv-02118-WJM-SKC Document 99 Filed 10/04/18 Page 22 of 45

- Claim 3—scheme to defraud in the purchase or sale of securities, in violation of Exchange Act § 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5(a) and (c), 17 C.F.R. § 240.10b-5(a) & (c).

- Claim 4—fraudulent statements in the purchase or sale of securities, in violation of Exchange Act § 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b).

- Claim 5—aiding and abetting violations of Claims 3 and 4 (alleged against Mahabub only, in the alternative to primary liability).

- Claim 6—aiding and abetting violations of Claims 1 and 2 (alleged against Mahabub only, in the alternative to primary liability).

- Claim 7—control person liability under 15 U.S.C. § 78t(a) (alleged against Mahabub only, in the alternative to primary liability).

- Claim 8—offer and sale of unregistered securities, in violation of Securities Act § 5(a) and (c), 15 U.S.C. §§ 77e(a) & 77e(c).

The SEC moves for summary judgment in its favor on all of these claims. The Court will analyze these claims in the order presented by the SEC in its summary judgment motion. As will become clear below, each claim requires a nexus to interstate commerce or the mails, but the Court will say nothing more about that matter because it is undisputed.

**A.     Claim 8: <u>Sale of Unregistered Securities</u> [15 U.S.C. §§ 77e(a) & 77e(c)]**

1.     *Prima Facie* Case

Subject to certain exceptions discussed below, "it shall be unlawful for any person, directly or indirectly," to use means of interstate commerce or the mails to sell a

security not registered with the SEC. 15 U.S.C. § 77e(a). A prima facie case of

violation comprises the following elements: "(1) no registration statement was in effect

as to the securities, (2) the defendant sold or offered to sell these securities, and

(3) interstate transportation or communication and the mails were used in connection

with the sale or offer of sale." *SEC v. Cont'l Tobacco Co.*, 463 F.2d 137, 155 (5th Cir.

1972). Defendants do not dispute that the SEC has stated a *prima facie* case against

GenAudio. Nor do Defendants dispute that the SEC has stated a *prima facie* case

against Mahabub personally for being a "substantial factor" in the offer or sale of

unregistered securities. *SEC v. Calvo*, 378 F.3d 1211, 1215 (11th Cir. 2004) (internal

quotation marks omitted).

### 2. Defendants' Affirmative Defenses

Defendants' Third Affirmative Defense argues that registration was not required

under the "private offering" exemption codified at 15 U.S.C. § 77d(a)(2), and under

"Rule 506" of the SEC's "Regulation D," *i.e.*, 17 C.F.R. § 230.506. (*See* ECF No. 14 at

35; ECF No. 15 at 28.) The private offering exemption states that the Securities Act's

registration provisions "shall not apply to * * * transactions by an issuer not involving any

public offering." 15 U.S.C. § 77d(a)(2). Rule 506 states that if "an issuer . . . satisf[ies]

the conditions" set forth in that Rule, the relevant "[o]ffers and sales of securities . . .

shall be deemed to be transactions not involving any public offering within the meaning

of [15 U.S.C. § 77d(a)(2)]." 17 C.F.R. § 230.506(a). But Rule 506 is not the only path

to that exemption. A party that fails to meet all of Rule 506's conditions may

nonetheless qualify for the private offering exemption directly under 15 U.S.C.

§ 77d(a)(2). *See* 7B J. William Hicks, *Exempted Transactions Under the Securities Act*

*of 1933* § 11:3 (Sept. 2018 update) ("[Rule 506] is not exclusive" and so "those factors

that an issuer should consider" under the statute itself remain important) ("*Exempted*

*Transactions*").

The SEC's summary judgment motion explicitly argues that Mahabub cannot

invoke either the private offering exemption or Rule 506 because the statute and

regulation both apply specifically to the "issuer," and GenAudio, not Mahabub, was the

issuer of GenAudio's securities.  (ECF No. 84 at 36.)  The SEC contends that Mahabub

is, rather, "[a]n affiliate of an issuer" under SEC regulations.  (*Id.* (citing 17 C.F.R.

§ 230.144(a)(1)).)  GenAudio's and Mahabub's respective response briefs ignore this

argument.  (*See* ECF No. 89 at 57–58; ECF No. 90 at 14–15.)  The Court accordingly

deems the argument conceded.  Mahabub cannot rely on the private offering exemption

or Rule 506, so summary judgment is appropriate in favor of the SEC and against

Mahabub on the SEC's claim that Mahabub sold unregistered securities.

Turning to GenAudio, the SEC asserts that Defendants lack any evidence from

which a reasonable jury could conclude that either exemption applies.  (ECF No. 84 at

35–37.)  *See also SEC v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953) (issuer of

unregistered securities bears the burden of proof to demonstrate an exemption).  The

Court will discuss the two potential exemptions in turn, but will start with Rule 506

because a party that satisfies Rule 506 is automatically deemed to satisfy the private

offering exemption.

        a.    *Rule 506*

Among Rule 506's many requirements is that the issuer "satisfy all the terms and

conditions of . . . [17 C.F.R. §] 230.502."  17 C.F.R. § 230.506(b)(1).  That cross-

referenced section requires the issuer to, among other things, "furnish" an audited balance sheet to "any purchaser that is not an accredited investor." *Id.* § 230.502(b)(1) & (b)(2)(i)(B)(1). GenAudio did not provide an audited balance sheet with the 2010 or 2011 Offerings. (ECF No. 84 at 22, ¶ 69; *id.* at 30, ¶ 113.) Accordingly, if GenAudio solicited nonaccredited investors, Rule 506 cannot apply.

As relevant here an "accredited investor" means any person who actually had, or whom the issuer "reasonably believe[d]" to have, an "individual net worth, or [a] joint net worth with that person's spouse, exceed[ing] $1,000,000" "at the time of the sale of the securities to that person." 17 C.F.R. § 230.501(a)(5). It is undisputed that "GenAudio is unable to provide information as to the number or sophistication of investors it solicited to invest" in either the 2010 or 2011 Offerings. (ECF No. 84 at 20, 30, ¶¶ 61, 108.) GenAudio thus cannot satisfy Rule 506 by proving to the jury that all of the investors in the 2010 and 2011 Offerings were, in fact, accredited. It must therefore establish a reasonable belief that all of its investors were accredited.

The Court agrees with the SEC that GenAudio does not have the evidence from which a reasonable jury could find that GenAudio had such a belief. (*See id.* at 37.) GenAudio's system for ensuring investor accreditation involved sending and receiving questionnaires, at least some of which provided no relevant information about the investor's accreditation. (ECF No. 84 at 20–21, ¶¶ 62–65.)[8] Mattos would "normally" contact an investor who did not provide the needed information on the questionnaire (ECF No. 89 at 9–10, ¶¶ 62–63), but Mattos admittedly overlooked at least some of

---

[8] Mahabub, although not GenAudio, objects to the questionnaires as generically "inadmissible." (ECF No. 90 at 14.) Mahabub does not provide a legal basis for this objection and so forfeits it.

those incomplete questionnaires (ECF No. 84 at 21, ¶ 66). Given this admission, it must necessarily follow that GenAudio cannot prove that it reasonably believed that *all* of the 2010 and 2011 Offering investors were accredited. The SEC is accordingly entitled to summary judgment on GenAudio's Rule 506 defense, and the Court must turn to the private offering exemption itself.

### b. *The Private Offering Exemption*

Again, the private offering exemption states that the Securities Act's registration provisions "shall not apply to * * * transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(a)(2). "An offering is considered private only if limited to investors who have no need for the protection provided by registration." *United States v. Arutunoff*, 1 F.3d 1112, 1118 (10th Cir. 1993). "To determine if an offering is sufficiently limited courts focus on such factors as: (1) the number of offerees; (2) the sophistication of the offerees, including their access to the type of information that would be contained in a registration statement; and (3) the manner of the offering." *Id.*

As noted, "GenAudio is unable to provide information as to the number or sophistication of investors it solicited to invest" in either the 2010 or 2011 Offerings. (ECF No. 84 at 20, 30, ¶¶ 61, 108.) Given this, the SEC argues that GenAudio cannot produce evidence from which a reasonable jury could find for GenAudio under the relevant factors. (*Id.* at 37.) GenAudio recognizes this argument for what it is: "[The SEC] argues GenAudio could not identify the offerees, the relationship with GenAudio, or the nature, size, type and manner of the offering." (ECF No. 89 at 57.) GenAudio counters that "[the SEC's] argument demonstrates the fact-intensive nature of the analysis the resolution of which is the province of the trier of fact." (*Id.*)

26

GenAudio is correct in the sense that "the determination of what constitutes a public offering [versus a private offering] is essentially a question of *fact*, in which all of the surrounding circumstances are of significance."  7B *Exempted Transactions* § 11:190 (emphasis in original).  However, courts may resolve fact questions as a matter of law if the party that bears the burden of proof on a fact question lacks evidence from which a reasonable jury could find in its favor on that question.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  Here, GenAudio declares the private offering exemption to create a fact question, but it does not describe any evidence it may introduce to persuade a jury that the relevant factors favor application of the exemption in its favor.

The Seventh Circuit often refers to summary judgment as "the 'put up or shut up' moment in a lawsuit."  *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1077 (7th Cir. 2016).  GenAudio fails to "put up" the necessary evidence, and the record is otherwise clear that it cannot.  The SEC is entitled to summary judgment that GenAudio's private offering exemption defense fails, and is consequently also entitled to summary judgment that GenAudio is liable for sale of unregistered securities in the 2010 and 2011 Offerings.

**B.**    **Claim 2 [partial] & Claim 4:** <u>**Fraud, and Untrue and Misleading Statements and Omissions**</u> **[Securities Act § 17(a)(2), Exchange Act § 10(b), and Rule 10b-5(b)]**

1.    <u>Elements</u>

The SEC's Claim 2 alleges a violations of Securities Act § 17(a)(2), which declares it

> unlawful for any person in the offer or sale of any securities[,] . . . by the use of any means or instruments of transportation

27

> or communication in interstate commerce or by use of the
> mails, directly or indirectly * * * to obtain money or property
> by means of any untrue statement of a material fact or any
> omission to state a material fact necessary in order to make
> the statements made, in light of the circumstances under
> which they were made, not misleading . . . .

15 U.S.C. § 77q(a)(2).[9]

The SEC's Claim 4 alleges violations of 15 U.S.C. § 78j(b), more commonly

known as "Exchange Act § 10(b)."  It states:

> It shall be unlawful for any person, directly or indirectly, by
> the use of any means or instrumentality of interstate
> commerce or of the mails, or of any facility of any national
> securities exchange * * * [t]o use or employ, in connection
> with the purchase or sale of any security registered on a
> national securities exchange or any security not so
> registered . . . any manipulative or deceptive device or
> contrivance in contravention of such rules and regulations as
> the Commission may prescribe as necessary or appropriate
> in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

Claim 4 specifically alleges violations of one portion of § 10(b)'s implementing

regulation, 17 C.F.R. § 240.10b-5, more commonly known as "Rule 10b-5."  The

relevant portion of Rule 10b-5—specifically, subsection (b)—states:

> It shall be unlawful for any person, directly or indirectly, by
> the use of any means or instrumentality of interstate
> commerce, or of the mails or of any facility of any national
> securities exchange * * * [t]o make any untrue statement of a
> material fact or to omit to state a material fact necessary in
> order to make the statements made, in the light of the
> circumstances under which they were made, not misleading
> * * * in connection with the purchase or sale of any security.

---

[9] As pleaded, Claim 2 appears to assert a combined violation of § 17(a)(2) and (3).  (*See*
ECF No. 1 at 35.)  However, the SEC's summary judgment motion addresses § 17(a)(2) and (3)
in separate arguments.  (*See* ECF No. 84 at 39–50, 56–58.)  The Court analyzes § 17(a)(3)
below in Part III.C.

17 C.F.R. § 240.10b-5(b).

"In an SEC enforcement action such as this one," the elements of a Rule 10b-5(b) violation are: (1) a misrepresentation or omission (2) of material fact (3) made with scienter[10] (4) in connection with the purchase or sale of a security (5) using any means of interstate commerce or the mails.  *SEC v. Wolfson*, 539 F.3d 1249, 1256 (10th Cir. 2008).  Reliance by some party on the misrepresentations or omissions is *not* required in an SEC enforcement action.  *Id.*

Typically, courts employ the same elements employed to analyze whether a Securities Act § 17(a)(2) violation occurred, except negligence may substitute for scienter.  *Id.* (stating that violations of Securities Act § 17(a) require "substantially similar proof" as that required to establish a Rule 10b-5(b) violation, with "[t]he principal difference" being that § 17(a)(2) and (3) do not require scienter); *SEC v. Smart*, 678 F.3d 850, 857 (10th Cir. 2012) ("negligence is sufficient" for liability under § 17(a)(2) and (3)).

Although scienter versus negligence is usually stated as the only difference between Securities Act § 17(a)(2) and Rule 10b-5(b) violations, there is some question under Securities Act § 17(a)(2) whether the SEC must prove reliance and injury on the part of some person who acted on the misstatements or omissions.  Speaking of § 17(a) generically, the Tenth Circuit endorses the view that the SEC "need not prove reliance in a civil enforcement action."  *Wolfson*, 539 F.3d at 1264 n.17.  In a prior order, however, this Court questioned that view as to § 17(a)(2) specifically:

---

[10] Exchange Act § 10(b) and Rule 10b-5(b) do not explicitly require scienter, but the Supreme Court has held that scienter is nonetheless required for liability.  *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976) ("*Hochfelder*").

> [I]t would . . . seem beyond question that § 17(a)(2) requires
> a showing of reliance and injury. Its plain language
> addresses alleged violators who "obtain money or property
> by means of any untrue statement of a material fact or
> [a material] omission." 15 U.S.C. § 77q(a)(2).
> Consequently, there must be injury to some person (*i.e.*,
> transferring "money or property" to the defendant) caused by
> that person's reliance on (*i.e.*, "by means of") the defendant's
> material misstatements or omissions.

*SEC v. Mahabub*, 2017 WL 6555039, at *5 (D. Colo. Dec. 22, 2017) (ECF No. 80). The

Court nonetheless invited "a[ny] party [that] disagrees with the Court's statement of the

elements or other analysis in this regard . . . [to] so state in its . . . summary judgment

filings, and explain why the Court's view is incorrect." *Id.* at *4.

The SEC accepted the Court's invitation and now argues that the Court should

not require reliance and injury. (ECF No. 84 at 47–49.) The SEC highlights the Tenth

Circuit's blanket statement in *Geman v. SEC* that "[t]he SEC is not required to prove

reliance or injury in enforcement actions" because those elements would prevent the

SEC from taking action to prevent investor losses before they happen. 334 F.3d 1183,

1191 (10th Cir. 2003). The SEC nonetheless

> agrees that the language "obtain money" and "by means of"
> requires a causal link between the violator's deceptive
> statements and receipt of money or property. . . . But, the
> plain language of Section 17(a)(2) does not require an
> investor's reliance on the statement or a direct transfer of
> money between a purchaser and the violator.

(ECF No. 84 at 49.) The SEC notes that money from investors would satisfy this

causation standard but that is not the *only* sort of money or property that might qualify.

(*Id.* at 49 & n.14 (citing cases where courts have ordered disgorgement of fees paid to

promoters).)

Defendants say nothing about this issue—either in response to the Court's

statement that reliance and injury appear to be elements of § 17(a)(2), or to the SEC's
arguments to the contrary.

The SEC's arguments persuade the Court that the statutory language does not
demand reliance and injury on the part of any purchaser, but only "a causal link
between the violator's deceptive statements and receipt of money or property." (*Id.*)
Accordingly, the Court holds that the elements of a § 17(a)(2) claim are as follows: (1) a
misrepresentation or omission (2) of material fact (3) made at least negligently (4) in the
offer or sale of any securities (5) using any means of interstate commerce or the mails,
and (6) a causal link between the violator's deceptive statements and receipt of money
or property.

The Court will discuss, in turn, the disputed elements the SEC's Securities Act
§ 17(a)(2) claim and its Rule 10b-5(b) claim, combining that discussion under a single
heading where appropriate.

2.    Misrepresentation or Omission [§ 17(a)(2) & Rule 10b-5(b)]

The SEC compiles a significant catalog of Mahabub's misrepresentations and
allegedly material omissions. (ECF No. 84 at 39–44.) Among those, the Court will
focus on the following statements because, as will become clear, their liability-creating
character is beyond reasonable dispute:[11]

- Mahabub's March 10, 2010 e-mail to GenAudio shareholders where he
  claimed that GenAudio was "starting to discuss the business side with the
  LCEC," which investors generally understood to be a reference to Apple.
  (ECF No. 84-50 at 4; ECF No. 84 at 16, ¶ 41.) Mahabub knew from

---

[11] The statements and omissions the SEC proffers beyond these raise genuine disputes
as to at least one element of liability.

Hailey's December 16, 2009 e-mail that "[t]he business side of things would come into play after [Apple engineers obtained] exec buy-in on the product side." (ECF No. 84-44 at 3–10.) Mahabub further knew that "exec buy-in" had not yet happened. Consequently, this claim regarding "business side" discussions with Apple was knowingly false.

- Mahabub's statement in the same March 10, 2010 e-mail that he "expect[ed] to have a very substantial license deal in place for [the LCEC's] Christmas Product Rollout." (ECF No. 84-50 at 4.) This statement is merely an extension of Mahabub's fabrication in a February 12, 2010 forwarded e-mail to the GenAudio board in which Mahabub altered Tiscareno's words to make it appear that Mahabub had recently discussed a "Christmas product rollout" with Phil Schiller. (*See* ECF No. 84-46.) Thus, in his March 10, 2010 e-mail to shareholders, Mahabub had no truthful basis to make a Christmas product rollout prediction. Couching the statement in terms of an expectation, rather than a certainty, does not take it out of the realm of falsity: "[C]autionary language does not protect material misrepresentations or omissions when defendants knew they were false when made." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996).

- Mahabub's March 15, 2010 cover letter accompanying the 2010 Offering materials, which stated that the offering was "being conducted to provide bridge capital until we can 'ink' a deal with . . . the 'LCEC.'" (ECF No. 84-52 at 2.) Mahabub had no reasonable basis to expect that a deal with

Apple was imminent enough that the 2010 Offering could be "bridge
capital."

- Mahabub's April 30, 2010 e-mail to an investor stating that the LCEC was
"looking to acquire GenAudio's tech for integration into their entire lineup
of product offerings . . . and we are now waiting [for the time] when we will
initiate negotiations, pending the CEO's [approval of] the integrated
product rollout strategy and the technical implementation strategy that will
be presented to the CEO next week!!!"  (ECF No. 84-74 at 5.)  The Court
may assume without deciding that the "Jobs"/"Joz" misunderstanding
(a) actually happened and (b) created a mistaken but reasonable
misimpression in Mahabub's mind about the attendees at the upcoming
"exec buy-in" meeting.  Even so, Mahabub had no reasonable basis to
claim that the upcoming meeting would encompass an "integrated product
rollout strategy and [a] technical implementation strategy."

- Mahabub's August 1, 2010 investor letter claiming that Steve Jobs had
requested "a 'hand-shake' meeting" with Mahabub "[i]n the very near
future."  (ECF No. 84-79 at 3.)  This was a blatant lie.

The Court will refer to all of the foregoing as the "2010 Misrepresentations."

The Court additionally finds that the false character of Mahabub's March 29,
2011 investor e-mail is also beyond dispute.  For symmetry, the Court will refer to this
e-mail as the "2011 Misrepresentations."[12]  Leading up to the 2011 Misrepresentations,

---

[12] As with the SEC's proffer regarding the 2010 Offering, any statements or omissions
the SEC proffers regarding the 2011 Offering beyond the March 29, 2011 e-mail raise a genuine
dispute as to at least one element of liability.

Mahabub asked Isaac for broken-down iMacs on whose chassis GenAudio could experiment, and Isaac replied that GenAudio would need to sign certain "evaluation agreements" first.  (ECF No. 89-24.)  With nothing but assumptions regarding these evaluation agreements—which, again, Isaac mentioned in the context of *responding to Mahabub's request for broken-down iMacs*—Mahabub turned around teased shareholders in his March 29, 2011 e-mail that these new agreements would completely prohibit mentioning the LCEC in future correspondence, including the upcoming 2011 Offering.  (ECF No. 84-85.)  For good measure, he added, "Believe me when I tell all of you that I wish I could disclose what is going on, however, the fact of the matter is I cannot."  (*Id.* at 7.)

Mahabub cannot avoid the falsity of the 2011 Misrepresentations through his claim that he believed the evaluation agreements to be significant because GenAudio already had an NDA with Apple.  (*See* ECF No. 89 at 32, ¶ 178.)  It is not enough that the speaker "believes [his own] opinion (however irrationally)[.] . . . [I]t [must also] fairly align[] with the information in the [speaker's] possession at the time."  *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1329 (2015).  No reasonable jury could conclude that Mahabub fairly reached the inferences he now claims motivated the 2011 Misrepresentations.

3.  Materiality [§ 17(a)(2) & Rule 10b-5(b)]

The materiality element is satisfied "if a reasonable investor would consider [the misrepresentation or omission] important in determining whether to buy or sell stock," when considered alongside "other information already available to the market." *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997).  However, "vague

34

statements of corporate optimism" and "mere puffing" are deemed immaterial as a
matter of law. *Id*. (internal quotation marks omitted). Similarly immaterial are
statements hedged "with sufficiently specific risk disclosures or other cautionary
statements concerning the subject matter of the statements at issue to nullify any
potentially misleading effect." *Id*. at 1120.[13] However, "the cautionary statements must
be substantive and tailored to the specific future projections, estimates or opinions
which the plaintiffs challenge." *Id*. (internal quotation marks omitted; alterations
incorporated). And again, "cautionary language does not protect material
misrepresentations or omissions when defendants knew they were false when made."
*In re Prudential*, 930 F. Supp. at 72.

In this case, both the 2010 and 2011 Misrepresentations were material because
a reasonable investor would undoubtedly consider the (fabricated) news about the rapid
and/or rosy progress of discussions with Apple to be important in any decision to buy or
sell the subject securities.[14]

4. Scienter [Rule 10b-5(b)] or Negligence [§ 17(a)(2)]

Scienter in this context is defined as "intent to deceive, manipulate, or defraud."
*Hochfelder*, 425 U.S. at 193. Scienter may be satisfied by a showing of recklessness,
meaning "conduct that is an extreme departure from the standards of ordinary care, and
which presents a danger of misleading buyers or sellers that is either known to the

---

[13] This is often known as the "bespeaks caution" doctrine. *Id*.

[14] Specifically with respect to the August 1, 2010 investor letter and its claim that
Mahabub would soon have a handshake meeting with Steve Jobs, GenAudio argues that "[a]
genuine issue of material fact exists whether a reasonable investor would care about whether
Mahabub personally interacted with Steve Jobs." (ECF No. 89 at 50.) This contention is frankly
laughable, but the Court could exclude the August 1, 2010 investor letter from the 2010
Misrepresentations and the § 17(a)(2) and Rule 10b-5(b) analyses would be the same.

defendant or is so obvious that the actor must have been aware of it." *City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1258 (10th Cir. 2001) (internal quotation marks omitted).

Defendants' argue that the SEC has not established scienter as a matter of law because a jury could reasonably accept that Mahabub reasonably believed what he said when he said it. (ECF No. 89 at 35–51.) More particularly, Defendants claim that Mahabub could reasonably believe a deal with Apple was likely, and soon at hand, because he was constantly proposing deal terms, even if Apple personnel were not: "Mahabub was negotiating with Tiscareno and Hailey, he just did not understand they were not negotiating back." (*Id.* at 55.)

This argument stretches credulity, but in any case it does not evade the charge of scienter in the context of the 2010 and 2011 Misrepresentations. For the reasons already explained in Part III.B.2, Mahabub had no reasonable basis to believe that any of those misrepresentations matched any perception of reality beyond the one he fabricated in his own mind. He could not have reasonably failed to perceive that he was simply making things up as he wrote the relevant documents. As a matter of law, he was *at least* reckless. *Cf. SEC v. Infinity Grp. Co.*, 212 F.3d 180, 193 (3d Cir. 2000) ("Even if we indulge the defendants and assume arguendo that they believed in these guarantees, we nevertheless must examine the foundation such a belief would have rested upon. A good faith belief is not a 'get out of jail free card.' It will not insulate the defendants from liability if it is the result of reckless conduct.").

Considering that Defendants were at least reckless, the Court need not examine whether they were also negligent.

5.    <u>"In the Offer or Sale of Any Securities" [§ 17(a)(2) & Rule 10b-5(b)]</u>

The 2010 and 2011 Misrepresentations were closely connected to the 2010 and

2011 Offerings, respectively.  Accordingly, the connection to an offer or sale of

securities exists as a matter of law.

6.    <u>Causal Link Between the Deceptive Statements and Receipt of Money or
Property [§ 17(a)(2) only]</u>

The final element of a Securities Act § 17(a)(2) claim is the causal connection

between the misrepresentations or omissions in the receipt of money or property, *i.e.*,

"obtain[ing] money or property by means of any untrue statement of a material fact or

[a material] omission."  15 U.S.C. § 77q(a)(2).  The SEC's argument in this regard is

thin, mostly relying on statements from 2009 that the Court has not included in the 2010

Misrepresentations, or on an implicit *post hoc ergo propter hoc* contention that stock

purchases *following* one of the 2010 Misstatements were *because of* the deceptive

statements.  (*See* ECF No. 84 at 46.)  On this record, however, only one of the 2010

Misrepresentations shows a causal link between the misrepresentation and GenAudio's

receipt of money, namely, Mahabub's April 30, 2010 e-mail regarding the scope of the

upcoming "exec buy-in" meeting, which prompted the recipient to purchase 5,000

shares for $15,000.  (ECF No. 84 at 24, ¶ 80.)

7.    <u>Synthesis</u>

The 2010 and 2011 Misrepresentations establish Defendants' liability as a matter

of law on Claim 4.  One of the 2010 Misrepresentations (the April 30, 2010 e-mail)

establishes Defendants' liability as a matter of law on that part of Claim 2 alleging a

Securities Act § 17(a)(2) violation.  The remaining 2010 and 2011 Misrepresentations

do not.  However, to the extent this matter may still proceed to trial to prove additional

37

liability under Securities Act § 17(a)(2), all elements apart from causation are

"established in the case" as to the remaining 2010 and 2011 Misrepresentations, and

therefore those elements will not be dispute.  Fed. R. Civ. P. 56(g).

**C.      Claim 1, Claim 2 [partial], & Claim 3: <u>Scheme Liability</u> [Securities Act
§ 17(a)(1) & (3), Exchange Act § 10(b), and Rule 10b-5(a) & (c)]**

The SEC's Claim 1, the remainder of Claim 2, and Claim 3 raise common issues

and will be analyzed jointly.

**1.      <u>Elements</u>**

Claims 1 and 2 allege violations of Securities Act § 17(a)(1) and (3), which

declares it

> unlawful for any person in the offer or sale of any securities[,]
> . . .  by the use of any means or instruments of transportation
> or communication in interstate commerce or by use of the
> mails, directly or indirectly * * * (1) to employ any device,
> scheme, or artifice to defraud, or * * * (3) to engage in any
> transaction, practice, or course of business which operates
> or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).

The SEC's Claim 3 alleges violations of Exchange Act § 10(b) as implemented

through Rule 10b-5(a) and (c):

> It shall be unlawful for any person, directly or indirectly, by
> the use of any means or instrumentality of interstate
> commerce, or of the mails or of any facility of any national
> securities exchange * * * (a) [t]o employ any device, scheme,
> or artifice to defraud, [or] * * * (c) [t]o engage in any act,
> practice, or course of business which operates or would
> operate as a fraud or deceit upon any person, in connection
> with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

Violations of Securities Act § 17(a)(1) and (3) and Rule 10b-5(a) and (c) may all

be proven by demonstrating that the violator (1) directly or indirectly employed a device,

38

scheme, or artifice to defraud (2) with scienter (3) in the offer or sale of a security

(4) using interstate commerce or the mails.  *SEC v. St. Anselm Expl. Co.*, 936 F. Supp.

2d 1281, 1298 (D. Colo. 2013); *see also SEC v. Sullivan*, 68 F. Supp. 3d 1367, 1377 n.8

(D. Colo. 2014) (§ 17(a)(1) elements can satisfy § 17(a)(3) and Rule 10b-5(a) and (c)).

If scienter is lacking, the SEC may nonetheless prove a Securities Act § 17(a)(3)

violation by demonstrating that the violator (1) engaged in acts, practices, or courses of

dealing which did or would operate as a fraud or deceit (2) in the offer or sale of

securities, (3) with negligence, and (4) using interstate commerce or the mails.

*St. Anselm*, 936 F. Supp. 2d at 1298.

The prevailing view among the district courts of this circuit is that liability under

the foregoing provisions—often called "scheme liability"—may not be based simply on

the same misstatements or material omissions that support a Securities Act § 17(a)(2)

claim or Rule 10b-5(b) claim.  *See, e.g.*, *Sullivan*, 68 F. Supp. 3d at 1377; *St. Anselm*,

936 F. Supp. 2d at 1299; *SEC v. Goldstone*, 952 F. Supp. 2d 1060, 1205 (D.N.M.

2013).  That said, "scheme liability does not preclude, outright, claims based upon a

scheme to misrepresent or omit material facts."  *Id.* at 1206.  The Court accepts this

statement of the law.

### 2.    Device, Scheme, or Artifice to Defraud

The SEC describes Defendants' alleged scheme to defraud as a scheme to

solicit investment "by lying and creating a series of fabricated emails to create the false

appearance that GenAudio was a legitimate takeover target or licensing partner of

Apple."  (ECF No. 84 at 51.)  The SEC contends that the scheme comprised all of the

false and misleading statements and omissions included in its argument for § 17(a)(2)

and Rule 10b-5(b) liability (a broader set of documents than the Court accepted as the
2010 and 2011 Misstatements), as well as (1) Mahabub's overstatements to the
GenAudio board about progress with Apple, (2) Mahabub's regular alteration of e-mails
to the GenAudio Team (including the falsified Tiscareno transcript), and (3) Mahabub's
communications with investors between the end of the 2010 Offering and the beginning
of the 2011 Offering, including the 2011 Misstatements and also Mahabub's December
8, 2010 investor letter in which he claimed that he met with the LCEC's CEO (*i.e.*, Jobs).
(*Id.* at 51–52.)  As already stated, the Court finds that there are reasonable disputes as
to the character of some of the statements and omissions included in the SEC's
argument for § 17(a)(2) and Rule 10b-5(b) liability.[15]  In analyzing the current claims,
therefore, the Court will limit itself to the 2010 and 2011 Misstatements and the three
additional categories the SEC proffers.

Solely as to the question of whether the foregoing amounts to one or more
schemes to defraud *of some sort*, or a practice that would operate as a fraud *of some
sort*, there is no reasonable dispute.  Whether it amounts to a scheme or practice *to
defraud securities purchasers* implicates the "in connection with" element, so the Court
will discuss that next.

3.    <u>"In the Offer or Sale of Any Securities" [§ 17(a)(1) & (3)] or "In Connection
with the Purchase or Sale of Any Security" [Rule 10b-5(a) & (c)]</u>

Before the Court may analyze this element, it must address the relevance of the
many alleged misrepresentations not transmitted beyond the GenAudio Team, mostly
comprising Mahabub's alterations to e-mails.

In a prior order, the Court required the parties to explain their views on whether

---

[15] *See* nn.11 & 12, above.

the "in connection with" element is "satisfied when a defendant makes knowingly false

statements *while* securities are for sale, or only when a defendant makes such

statements *because* securities are for sale?" *Mahabub*, 2017 WL 6555039, at *7

(emphasis in original). The tension arose, the Court explained, from the following:

> The Supreme Court "has espoused a broad interpretation" of
> "in connection with." *Merrill Lynch, Pierce, Fenner & Smith
> Inc. v. Dabit*, 547 U.S. 71, 85 (2006) ("*Dabit*"). Indeed,
> supposedly "it is enough that the fraud alleged 'coincide' with
> a securities transaction." *Id.* . . . But [this] seems to violate
> the Supreme Court's counsel not to construe the securities
> fraud laws "so broadly as to convert every common-law
> fraud that happens to involve securities into a violation."
> *SEC v. Zandford*, 535 U.S. 813, 820 (2002). Indeed, . . . if
> "in connection with" means nothing more than "coinciding
> with," then, for example, any lie one coworker tells to another
> is potentially actionable as securities fraud as long as the
> employer's securities happen to be for sale.

*Id.* at *6.

The Court is most persuaded by Defendants' argument to apply the standard set

forth in *Anixter v. Home-Stake Production Co.*, 77 F.3d 1215, 1226 (10th Cir. 1996).

(*See* ECF No. 90 at 16–17.) In *Anixter*, the Tenth Circuit addressed "in connection with"

liability for an accountant who prepared data for documents that would go to investors,

but who did not communicate that data directly to any investor. *Id.* at 1225. The Tenth

Circuit announced in that circumstance that "there must be a showing that he knew or

should have known that his representation would be communicated to investors

because § 10(b) and Rule 10b-5 focus on fraud made 'in connection with the sale or

purchase' of a security." *Id.* at 1226. The Court finds this situation reasonably

analogous to Mahabub's, and so adopts this articulation of the "in connection with"

requirement.

The Court finds, on this record, that the SEC has not established beyond reasonable dispute that Mahabub knew or should have known that the GenAudio Team e-mails would reach investors. Aside from Mahabub's fabricated Tiscareno transcript and accompanying commentary, which Mahabub forwarded to Skluzak, it is not clear how many (if any) altered or fabricated communications reached investors.

The Court further finds, on this record, that a reasonable dispute of fact exists whether the collection of communications alleged by the SEC, minus the GenAudio Team e-mails (but including the Skluzak e-mail), may fairly be described as connected to the purchase or sale of securities. The Court thus may not enter summary judgment for the SEC on the "in connection with" element.

### 4. Scienter [§ 17(a)(1) and Rule 10b-5(a) & (c)] or Negligence [§ 17(a)(3) only]

In the Court's previous order, it discussed the "in connection with" and scienter elements as if essentially overlapping. *See Mahabub*, 2017 WL 6555039, at *6–7. But having now adopted *Anixter*'s "in connection with" standard, it is clear that there is no necessary overlap. If a party possesses some sort of "intent to deceive, manipulate, or defraud," *Hochfelder*, 425 U.S. at 193, *and* the party "knew or should have known that his representation would be communicated to investors," *Anixter*, 77 F.3d at 1226, there is no risk of "convert[ing] every common-law fraud that happens to involve securities into a violation," *Zandford*, 535 U.S. at 820.

Here, scienter conceivably exists as a matter of law. The GenAudio team e-mails contain undisputed fabrications, and for scienter purposes, it would not matter that Mahabub sincerely intended the GenAudio Team e-mails solely as an in-house motivational tool *if* the SEC can prove that Mahabub "knew or should have known that

his representation would be communicated to investors." *Anixter*, 77 F.3d at 1226. But the Court finds it imprudent to rule on scienter in this summary judgment posture. Because the "in connection with" element is unresolved, the scope of communications for which Mahabub's state of mind must be analyzed is also unresolved. For this same reason, a ruling on negligence as a matter of law, *see St. Anselm*, 936 F. Supp. 2d at 1298, is imprudent at this stage.

     5.   <u>Synthesis</u>

Because the "in connection with" and scienter/negligence elements cannot be established as a matter of law on this record, the Court must deny summary judgment on the SEC's Claim 1, on the portion of Claim 2 alleging a violation of Securities Act § 17(a)(3), and on Claim 3.

**D.    Claims 5, 6, and 7: <u>Alternative Theories Against Mahabub Personally</u>**

The SEC's Claims 5–7 allege various alternative ways in which Mahabub could be personally liable for the conduct underlying Claims 1–4. The SEC's summary judgment motion specifically seeks such liability in the alternative. (ECF No. 84 at 63 n.17, 67.) Neither GenAudio's nor Mahabub's respective response briefs challenge this alternative argument. More importantly, neither Defendant makes any argument that Mahabub's liability should be analyzed separately from GenAudio's.

In this light, the liability the Court has found as a matter of law under Claim 2 and Claim 4 (*see* Part III.B, above) attaches to Mahabub directly, so the SEC's request for an alternative form of personal liability is moot. As to Claim 1, the relevant part of Claim 2, and Claim 3, where liability cannot be judged as a matter of law on this record (*see* Part III.C, above), any analysis of Mahabub's alternative personal liability is premature.

For these reasons, the Court must deny the SEC's alternative request for judgment as a
matter of law on Claims 5–7.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      The SEC's Revised Motion for Summary Judgment (ECF No. 84) is GRANTED
        to the following extent, but otherwise DENIED:

        a.      Summary judgment is granted in the SEC's favor and against both
                Defendants on the SEC's Claim 8; and

        b.      On the misrepresentations described in this Order as the "2010
                Misrepresentations" and "2011 Misrepresentations," summary judgment is
                granted in the SEC's favor and against both Defendants on the portion of
                the SEC's Claim 2 alleging a violation of Securities Act § 17(a)(2) and on
                the SEC's Claim 4;

2.      The SEC's Request for Oral Argument (ECF No. 92) is DENIED AS MOOT;

3.      On or before **October 26, 2018**, the SEC shall file a status report explaining
        whether it wishes to go to trial to establish Defendants' liability on claims for
        which the Court has not granted summary judgment and/or on a broader base of
        facts than the Court accepted when granting summary judgment, or,
        alternatively, whether it is willing to proceed directly to the remedies phase of this
        case (abandoning those claims that would otherwise need to go to trial on
        liability); and

4.      After receiving the SEC's status report, the Court will determine whether it needs
        a response from Defendants, and will otherwise set appropriate deadlines.

Dated this 4th day of October, 2018.

BY THE COURT:

William J. Martínez
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## Judge William J. Martínez

Civil Action No. 15-cv-2118-WJM-SKC

SECURITIES & EXCHANGE COMMISSION,

     Plaintiff,

v.

TAJ JERRY MAHABUB, and
GENAUDIO, INC.,

     Defendants.

---

## ORDER GRANTING IN PART AND DENYING IN PART
## PLAINTIFF'S REMEDIES MOTION

---

This is a securities fraud case that Plaintiff Securities and Exchange Commission ("SEC") brought against Taj "Jerry" Mahabub ("Mahabub") and the company he founded, GenAudio, Inc. ("GenAudio") (together, "Defendants"). The SEC asserted various theories of liability under the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77a *et seq.*, and the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78a *et seq.* The SEC moved for summary judgment on all theories of liability, and the Court granted that motion in part ("Summary Judgment Order"). *See SEC v. Mahabub*, 343 F. Supp. 3d 1022 (D. Colo. 2018) (ECF No. 95). The Court then ordered the SEC to state "whether it wishes to go to trial to establish Defendants' liability on claims for which the Court has not granted summary judgment and/or on a broader base of facts than the Court accepted when granting summary judgment," or, on the other hand, "whether it is willing to proceed directly to the remedies phase of this case

(abandoning those claims that would otherwise need to go to trial on liability)." *Id.* at 1050. The SEC chose the latter course. (*See* ECF No. 99.)

Currently before the Court is the SEC's Motion for Final Judgment Seeking Remedies Against Defendants Taj Jerry Mahabub and GenAudio, Inc. and to Establish a Fair Fund. (ECF No. 110.) Defendants, represented separately, each filed a response (ECF Nos. 111, 112), and the SEC then filed separate replies (ECF Nos. 113, 114). For the reasons explained below, the Court grants the remedies the SEC requests except that the Court will limit Mahabub's joint and several liability with GenAudio to the amounts the SEC has shown to be Mahabub's profits from GenAudio's stock sales. The Court will also require the SEC to submit a new prejudgment interest calculation.

## I. BACKGROUND

The Court's findings of fact and conclusions of law in the Summary Judgment Order are extensive and need not be repeated here. The Court incorporates them by reference and offers the following summary, for context.

GenAudio developed and marketed "AstoundSound," a software-based system for processing normal stereo audio to make it sound three-dimensional (*e.g.*, as if the sound is coming from behind listener, from far away, etc.). *Summary Judgment Order*, 343 F. Supp. 3d at 1028. Mahabub is GenAudio's founder and served as its CEO and Chairman of the Board from 2009 to 2012. *Id.*

Beginning in July 2009 or thereabouts, and continuing for roughly the next three years, Mahabub had various levels of discussions with engineers at Apple, Inc., about integrating AstoundSound into Apple's computers and portable devices. *Id.* at 1029–37.

No one higher than mid-level executives at Apple ever became aware of these discussions. *Id.* at 1032–36. However, when communicating with GenAudio employees, investors, and prospective investors, Mahabub routinely exaggerated or fabricated details about Apple's interest. *See id.* Mahabub claimed, for example, that Apple's senior vice president of worldwide marketing, Phil Schiller, was making specific plans to incorporate AstoundSound into particular product rollouts, and that CEO Steve Jobs had taken a personal interest in AstoundSound. *Id.* at 1030–36. Ultimately, Apple and GenAudio never reached any deal. *Id.* at 1037.

In the Summary Judgment Order, the Court found no genuine dispute that Mahabub, acting on GenAudio's behalf, knowingly or recklessly made six materially false or misleading statements in connection with two offerings of GenAudio securities, in violation of Exchange Act § 10(b) (15 U.S.C. § 78j(b)), and Rule 10b-5(b) (17 C.F.R. § 240.10b-5(b)). Because this is an SEC enforcement action, the SEC did not need to prove that anyone relied to his or her detriment on those statements. *See SEC v. Wolfson*, 539 F.3d 1249, 1256 (10th Cir. 2008). However, the SEC nonetheless demonstrated a lack of genuine dispute that one of those six misrepresentations prompted a $15,000 investment in GenAudio. *Summary Judgment Order*, 343 F. Supp. 3d at 1046. That representation was therefore also a violation of Securities Act § 17(a)(2) (15 U.S.C. § 77q(a)(2)). *See id.* at 1042–43 (holding that Securities Act § 17(a)(2) contains a causation requirement, even in an SEC enforcement action). The SEC claimed that numerous other statements made by Mahabub were likewise violations of the Exchange Act or the Securities Act, or both, but the Court found that all statements beyond the six just noted raised genuine, material factual disputes. *Id.* at

3

1043–44 nn.11–12.

Finally, the Court held that GenAudio and Mahabub had both sold unregistered GenAudio securities without qualifying for any registration exemption. *Id.* at 1039–41. Accordingly, they had violated Securities Act § 5(a) and (c) (15 U.S.C. §§ 77e(a) & 77e(c)). These unregistered securities offerings were the same securities offerings that the Court found to be infected by the misleading statements for which Defendants were liable under Exchange Act § 10(b), Rule 10b-5(b), and Securities Act § 17(a)(2). *See Summary Judgment Order*, 343 F. Supp. 3d at 1039–41.

## II. ANALYSIS

### A. Injunction Against Further Violations

The SEC first asks the Court to enjoin Defendants from further violations of federal securities laws. (ECF No. 110 at 9–11.)[1]

#### 1. Legal Standard

Securities Act 20(b) states that, "upon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond" against a person whom the SEC proves to have "engaged . . . in any acts or practices which constitute or will constitute a violation of the provisions of [the Securities Act]." 15 U.S.C. § 77t(b). Using materially identical language, Exchange Act § 21(d)(1) similarly authorizes an injunction against violations of the Exchange Act and its implementing regulations. *See* 15 U.S.C. § 77u(d)(1).

The "proper showing" required by these statutes places the burden on the SEC

---

[1] All ECF page citations are to the page number in the CM/ECF header, which does not always match the document's internal pagination, particularly in briefs with unnumbered caption pages.

to demonstrate

> a reasonable and substantial likelihood that the defendant, if
> not enjoined, will violate securities laws in the future.
> Determination of the likelihood of future violations requires
> analysis of several factors, such as the seriousness of the
> violation, the degree of scienter, whether defendant's
> occupation will present opportunities for future violations and
> whether defendant has recognized his wrongful conduct and
> gives sincere assurances against future violations. Although
> no single factor is determinative, [the Tenth Circuit has]
> previously held that the degree of scienter bears heavily on
> the decision. A knowing violation of [Exchange Act §] 10(b)
> or [Securities Act §] 17(a)(1) will justify an injunction more
> readily than a negligent violation of [Securities Act] §
> 17(a)(2) or (3). However, if there is a sufficient showing that
> the violation is likely to recur, an injunction may be justified
> even for a negligent violation of § 17(a)(2) or (3).

*SEC v. Pros Int'l, Inc.*, 994 F.2d 767, 769 (10th Cir. 1993) (citations and internal

quotation marks omitted).

    2.   <u>Application to Mahabub</u>

The SEC argues:

- Mahabub's violations were "serious and repeated," given the multiplicity of

  false statements and the length of time over which he made them;

- the sale of unregistered securities was also serious given that it had been

  ongoing for many years;

- Mahabub's misrepresentations were "calculated";

- Mahabub continues to serve as GenAudio's CEO, and he is now also the

  CEO of a new company for which he has solicited investment; and

- Mahabub has never acknowledged his wrongful conduct or given

  assurances against future violations.

(ECF No. 110 at 10–11.)

Mahabub never directly responds to any of these accusations. The only portion of his response brief that comes close is an argument related to the penalties the SEC seeks (addressed in Part II.C.2, below), where admission of wrongdoing is also a factor. (*See* ECF No. 112 at 4.) In that context, he notes that he "does not oppose" the director-officer bar (another remedy the SEC seeks, addressed in Part II.D, below). (*Id.*) This non-opposition, he says, shows that "he understands and accepts that [the director-officer bar] appropriately follows the Court's order on the SEC's summary [judgment] motion." (*Id.*)

To the extent this was also meant to address (indirectly) the request for an injunction, it is decidedly *not* an acknowledgment of wrongful conduct. It is, rather, a carefully worded attempt to sound contrite without admitting anything other than uncontroversial proposition that a director-officer bar is often an appropriate remedy against those who violate securities laws.

Given Mahabub's failure to address the factors relevant to an injunction, or to contest the SEC's argument in this regard, the Court finds that Mahabub has conceded that the SEC has made a proper showing for an injunction against him. The Court will therefore award the requested injunction against Mahabub.

3. Application to GenAudio

The SEC argues that its showing as to Mahabub applies equally to GenAudio because Mahabub acted on GenAudio's behalf and can continue to do so, as its CEO. (ECF No. 110 at 10–11.) GenAudio responds that there can be no reasonable likelihood of a future violation because "GenAudio is a defunct corporation that has ceased operations and is no longer engaged in the sale of securities." (ECF No. 111 at 10.) GenAudio supports this assertion with a declaration from Mahabub explaining

6

that he is the only remaining GenAudio employee, that GenAudio does not have any

open bank accounts, and that GenAudio is no longer operating or engaging in the sale

of securities.  (ECF No. 111-1.)  The SEC replies with a declaration from GenAudio

shareholder Dell Skluzak that no one from GenAudio has ever notified him that "the

company is defunct and no longer has any ongoing operations."  (ECF No. 113-1 ¶ 7.)

Moreover, Skluzak says that GenAudio still has assets (at least three recently-issued

patents) and that a third-party valuation report from 2010 values a non-exclusive

AstoundSound licensing regime at slightly more than $1 billion.  (*Id.* ¶¶ 3–5.)

Although the 2010 valuation report is of questionable value today, the Court is

persuaded that there remains at least a reasonable probability that GenAudio will

operate again and will sell securities.  Accordingly, the Court will issue the requested

injunction against GenAudio.

**B.    Disgorgement & Prejudgment Interest**

The SEC next seeks disgorgement and prejudgment interest on the disgorged

amounts.  (ECF No. 110 at 11–14.)

1.    Disgorgement, Penalties, and *Kokesh*

Disgorgement is not a remedy provided for in the Securities Act or Exchange Act,

but is instead a remedy the SEC routinely seeks through district courts' inherent equity

jurisdiction.  *See Kokesh v. SEC*, 137 S. Ct. 1635, 1640 (2017).  It is usually calculated

according to the profits the violator earned through the securities violations.  *See SEC v.

Maxxon, Inc.*, 465 F.3d 1174, 1179 (10th Cir. 2006); *SEC v. Curshen*, 372 F. App'x 872,

883 (10th Cir. 2010).  Defendants argue, however, that the Supreme Court's *Kokesh*

decision mandates reducing or eliminating disgorgement.

The question presented in *Kokesh* was whether equitable disgorgement in an

SEC enforcement action is a "penalty" within the meaning of the general federal statute of limitations for "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise." 28 U.S.C. § 2462. The Supreme Court's answer was "yes." 137 S. Ct. at 1639. The Supreme Court reasoned that disgorgement in SEC enforcement cases is usually imposed for punitive purposes, is not treated as compensatory, and sometimes exceeds the violator's ill-gotten gains. *Id.* at 1643–45. Accordingly, "[d]isgorgement, as it is applied in SEC enforcement proceedings, operates as a penalty under § 2462." *Id.* at 1645.

Here, the SEC is seeking both disgorgement and a statutory penalty. (*See* Parts II.B & II.C, below.) In light of *Kokesh*, however, Mahabub argues that "there is no longer a meaningful distinction between a 'disgorgement' and 'penalties.'" (ECF No. 112 at 2.) Thus, he says, the Court should only order one penalty, not "both the 'disgorgement penalty' and the 'penalty penalty.'" (*Id.*; *see also id.* at 7–8.) GenAudio, for its part, argues "it is far from clear [after *Kokesh*] that the SEC may continue to seek disgorgement in civil actions," given that disgorgement was never explicitly authorized in the first place and it is now deemed a "penalty." (ECF No. 111 at 7.) GenAudio thus urges the Court to "refrain from adopting [a] penalty sought by way of disgorgement." (*Id.* at 8.)

The SEC responds that *Kokesh* was only deciding whether 28 U.S.C. § 2462 provided the statute of limitations for disgorgement, not whether disgorgement is a penalty for all purposes. (ECF No. 113 at 10–11.) An interesting *Kokesh* footnote provides direct support for the SEC's position, but also some indirect support for Defendants' position:

> Nothing in this opinion should be interpreted as an opinion
> on whether courts possess authority to order disgorgement
> in SEC enforcement proceedings or on whether courts have
> properly applied disgorgement principles in this context.  The
> sole question presented in this case is whether
> disgorgement, as applied in SEC enforcement actions, is
> subject to § 2462's limitations period.

137 S. Ct. at 1642 n.3.  In other words, the Supreme Court has left open the possibility

that disgorgement is not a proper remedy but has also specified that *Kokesh* itself has

nothing to say on that subject.  This Court will take the Supreme Court at its word on

that matter.  Because Defendants' arguments in this regard are entirely based on doubt

supposedly cast by *Kokesh*, and because *Kokesh* disclaims all intent to cast doubt, the

Court rejects Defendants' argument that disgorgement is no longer a proper remedy.

*Cf*. *SEC v. Camarco*, 2018 WL 6620878, at *2 (D. Colo. Dec. 18, 2018) ("If the Supreme

Court leaves open a question of law, I must follow settled precedent.  Although the

Tenth Circuit has yet to rule on the issue since the Supreme Court decided *Kokesh*, at

least 15 federal courts have ruled that *Kokesh* did not overrule the long-standing

precedent that courts possess authority to order disgorgement in SEC enforcement

proceedings.").

Moreover, Defendants' implicit premise—*i.e.*, that there cannot be two kinds of

penalties in the same case—is unsupported and otherwise unfounded.  Even if

disgorgement is a "penalty" for all purposes, not just for statute-of-limitations purposes,

it does not necessarily follow that the Court cannot award both a disgorgement penalty

and a statutory penalty.  For this additional reason, the Court rejects Defendants'

argument that disgorgement is no longer an available remedy.

2.      Measure of Disgorgement

Defendants argue, in the alternative, that disgorgement must be limited to

9

71

$15,000 (plus prejudgment interest) because that was the only investment that the SEC has proven to be causally connected to Mahabub's misrepresentations. (ECF No. 111 at 4–5, 8; ECF No. 112 at 3.) The SEC responds that it is entitled to seek disgorgement of all "ill-gotten gains," meaning whatever the violator earned while the fraud was ongoing, as distinct from amounts the violator never would have earned but for the misrepresentation. (ECF No. 113 at 3–5.)

The Tenth Circuit has made statements on both sides of this argument. In an unpublished decision, it said that disgorgement should be assessed through "a reasonable approximation" of the violator's "ill-gotten gains." *Curshen*, 372 F. App'x at 883. In an earlier, published decision, it said, "Disgorgement being remedial rather than punitive, some end-date determination is certainly necessary so that the defendant is not required to disgorge profits not causally connected to the violation." *Maxxon*, 465 F.3d at 1179.

*Maxxon*'s premise—that disgorgement is remedial, not punitive—might not be good law after *Kokesh*. It is hard to tell because *Kokesh* said that its decision was limited to the statute-of-limitations question before it. *See* 137 S. Ct. at 1642 n.3. Technically speaking, then, *Maxxon* could still be good law if one accepts that there is such a thing as a penalty for statute-of-limitations purposes (at issue in *Kokesh*) as distinct from penalty more generally (at issue in *Maxxon*). Yet *Kokesh* resolved the question before it by looking to its prior case law on what distinguishes a penalty from a compensatory remedy. *Id.* at 1642–45. In other words, although the Supreme Court insisted it was only interpreting "penalty" in the context of the statute of limitations, the Court did not ask, "What counts as a 'penalty' in the context of a statute of limitations?"

or "What did Congress mean when it said 'penalty' in 28 U.S.C. § 2462?"  It only asked, "What counts as a 'penalty'?"  Viewed from that perspective, *Maxxon*'s punitive/remedial premise appears flawed.  And if the premise is flawed, then perhaps so is the conclusion that the amount of disgorgement must be causally connected to the violation.

Ultimately, the Court need not decide whether *Kokesh* abrogated *Maxxon* on this point because the Court is confident that *Maxxon*'s causal-connection language was not meant as a contrast to the broader idea of ill-gotten gains.  This is so for four reasons.

First, *Maxxon* refers in different ways to the disgorgement amount ordered in that case, including "illegal profits gained by [the defendant] through sales of stock," "ill-gotten profits resulting from the securities violations," and "the entire proceeds of [the defendant's] stock gain."  465 F.3d at 1177, 1178 & n.8.  When it uses the phrase "profits . . . causally connected to the violation," it is actually quoting a treatise.  *Id.* at 1179 (internal quotation marks omitted).  Regardless, it appears the Tenth Circuit was simply trying to offer linguistic variety, without having in mind the trouble that "causally connected" might create if construed strictly.

Second, speaking of such trouble, it is well-settled that the SEC—in contrast to a private securities fraud litigant—need never prove that a securities buyer or seller relied to its detriment on the violator's misleading statements.  *See Wolfson*, 539 F.3d at 1256.[2]  There is no hint in *Maxxon* that it meant to alter this principle—*i.e.*, to hold that the SEC need not prove reliance *unless it intends to seek disgorgement* (as it nearly

---

[2] As the Court stated in the Summary Judgment Order, a Securities Act § 17(a)(2) violation requires proof, even in an SEC action, that the defendant obtained something by means of its unlawful conduct, but it need not be profits obtained at the expense of those relying upon the defendant's misrepresentations.  *See* 343 F. Supp. 3d at 1042–43.

always does).

Third, *Maxxon* generally describes some of the defendant's misrepresentations but never connects them to any particular securities transactions. *See* 465 F.3d at 1176. It instead notes, without hint of disapproval, that the district court had calculated disgorgement based on all profits from stock sales over a particular time period. *Id.* at 1178 n.8.

Fourth, the weight of authority in other circuits is that disgorgement need not be calculated according to those transactions that can be causally linked to a misrepresentation. *See SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir. 1987) (citing cases for, and agreeing with, the proposition that "[o]nce the Commission has established that a defendant has violated the securities laws, the district court possesses the equitable power to grant disgorgement without inquiring whether, or to what extent, identifiable private parties have been damaged by [the] fraud. Whether or not any investors may be entitled to money damages is immaterial." (internal quotation marks and citation omitted; alterations in original)). To the Court's knowledge, the Tenth Circuit has never stated that it takes a different approach than the various other circuits.

For all these reasons, the Court holds that it may properly focus on "ill-gotten gains," meaning (in this case) the amounts earned in the securities offerings infected by the misleading statements, which (in this case) is the same as the amounts earned from selling unregistered securities. In other words, given the facts established in the Summary Judgment Order, the Court need not distinguish between unregistered securities offerings and securities offerings infected by misrepresentations.

3. Application to Mahabub's Personal Sales

Mahabub earned $2,593,900 from sales of his personal GenAudio shares but, of

that amount, the SEC only seeks $1,280,900, on account of the statute of limitations and a tolling agreement. (ECF No. 84-93 ¶ 7; ECF No. 110 at 11 & n.4.) The SEC asks that Mahabub be ordered to disgorge at least this amount, plus prejudgment interest from April 1, 2012 (the date of Mahabub's last personal sale) calculated according to the rate of interest used by the Internal Revenue Service for underpayment of federal income taxes set forth at 26 U.S.C. § 6621(a)(2). (*Id.* at 11, 13.) Aside from his argument that the maximum amount assessed against him should be $15,000, which the Court rejected above, Mahabub does not contest the SEC's disgorgement request as against him personally. (*See* ECF No. 112 at 3.) Accordingly, the Court will order Mahabub to disgorge $1,280,900, plus prejudgment interest in an amount to be calculated under 26 U.S.C. § 6621(a)(2).

    4.    <u>Application to GenAudio's Sales</u>

GenAudio's two share offerings during the relevant time period (the "2010 Offering" and "2011 Offering") yielded $3,513,000 and $990,000, respectively. (ECF No. 110 at 12.) Like Mahabub, GenAudio argues that the maximum disgorgement amount should be $15,000, but the Court has rejected GenAudio's reasoning. GenAudio does not otherwise contest the SEC's calculations. (*See* ECF No. 111 at 3–5.) Accordingly, the Court will order GenAudio to disgorge $3,513,000 and $990,000, plus prejudgment interest to be separately calculated on each of those amounts under 26 U.S.C. § 6621(a)(2).

    5.    <u>Mahabub's Joint and Several Liability with GenAudio</u>

The SEC further requests that Mahabub be held jointly and severally liable for GenAudio's disgorgement. (ECF No. 110 at 11–12.) The Second Circuit holds, and this Court agrees, that

13

> where a firm has received gains through its unlawful
> conduct, where its owner and chief executive officer has
> collaborated in that conduct and has profited from the
> violations, and where the trial court has, within the proper
> bounds of discretion, determined that an order of
> disgorgement of those gains is appropriate, it is within the
> discretion of the court to determine that the owner-officer too
> should be subject, on a joint and several basis, to the
> disgorgement order.

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1475 (2d Cir. 1996).

Mahabub does not challenge the concept of joint and several liability, but instead

cites a case from the United States District Court for the District of the District of

Columbia noting that courts have rejected joint and several liability "when particular

defendants have differing levels of culpability for securities-law violations or have

received different amounts of illicit profits from those violations." *SEC v. E-Smart*

*Techs., Inc.*, 139 F. Supp. 3d 170, 189 (D.D.C. 2015). (*See also* ECF No. 112 at 3.)

Here, Mahabub and GenAudio do not have differing levels of culpability. All of

the deceptions in question were perpetrated by Mahabub on GenAudio's behalf as its

CEO. As for different amounts of illicit profits, the SEC argues—and Defendants

nowhere contest—that "GenAudio paid Mahabub at least" $574,970 from the

$3,513,000 earned in the 2010 Offering, and $397,783 from the $990,000 earned in the

2011 Offering. (ECF No. 110 at 13 & n.5.) The Court, in its discretion, finds that

Mahabub should be held jointly and severally liable (including a proportional share of

the prejudgment interest) only to the extent of the $574,970 and $397,783 Mahabub

earned from the two offerings.[3]

---

[3] The Court recognizes that the SEC's claim that Mahabub profited from GenAudio's earnings "at least" to this extent means that Mahabub could have received more than the two sums noted. However, no party has requested an evidentiary on this (or any) matter, so the Court will rely on the uncontested figures.

## C. Civil Penalties

In addition to disgorgement, the SEC seeks statutory penalties against

Defendants.  (ECF No. 110 at 14–15.)

1. <u>Legal Standard</u>

Securities Act § 20(d)(1) (15 U.S.C. § 77t(d)(1)) and Exchange Act § 21(d)(3)(A)

(15 U.S.C. § 78u(d)(3)(A)) authorize the SEC to seek a penalty against any person who

has violated those acts.  Both statutes establish three penalty "tiers," which are

described identically save for cross-references and certain formatting choices, so the

Court will quote only the Securities Act version:

> **(A) First tier**
>
> The amount of the penalty shall be determined by the court in light of the facts and circumstances.  For each violation, the amount of the penalty shall not exceed the greater of (i) $5,000 for a natural person or $50,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation.
>
> **(B) Second tier**
>
> Notwithstanding subparagraph (A), the amount of penalty for each such violation shall not exceed the greater of (i) $50,000 for a natural person or $250,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation, if the violation [at issue] involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement.
>
> **(C) Third tier**
>
> Notwithstanding subparagraphs (A) and (B), the amount of penalty for each such violation shall not exceed the greater of (i) $100,000 for a natural person or $500,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation, if—
>
> > (I) the violation [at issue] involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and

(II) such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.

15 U.S.C. § 77t(d)(2).

In determining the amount of the penalty, "courts typically consider" the following

seven factors:

> (1) the egregiousness of the violations at issue;
> (2) defendants' scienter; (3) the repeated nature of the
> violations; (4) defendants' failure to admit their wrongdoing;
> (5) whether defendants' conduct created substantial losses
> or the risk of substantial losses to other persons;
> (6) defendants' lack of cooperation and honesty with
> authorities, if any; and (7) whether the penalty that would
> otherwise be appropriate should be reduced due to
> defendants' demonstrated current and future financial
> condition.

*SEC v. Universal Exp., Inc.*, 646 F. Supp. 2d 552, 568 (S.D.N.Y. 2009).

2.  <u>Application</u>

The SEC argues that the Court should "order Mahabub and GenAudio to pay

third tier civil penalties of $1,280,900 and $4,503,000, respectively, which is the amount

of their gross pecuniary gain."  (ECF No. 110 at 14.)  The SEC says that such penalties

are justified because:

- "Mahabub repeatedly lied about GenAudio's dealings with Apple";

- "Defendants' conduct . . . created substantial losses or the risk of
  substantial losses to investors," because the amounts raised were quickly
  "dissipated";

- "Mahabub and GenAudio have failed to admit their wrongdoing";

- "Mahabub failed initially to produce the fabricated e-mails that he sent to
  the GenAudio team" (referring to a discovery dispute mentioned in ECF

16

No. 42); and

- "Defendants have not demonstrated their current and future financial condition," but "Mahabub represented in the past eighteen months that he is a millionaire and hiding his assets from the SEC."

(*Id.* at 14–15.)  As to that last accusation, the SEC attaches a declaration from an accountant, Meaghan McDevitt, who says that Mahabub contacted her in July 2017 seeking assistance in completing a form apparently needed to show at least $10 million in assets as a prerequisite to open a particular kind of foreign currency brokerage account.  (ECF No. 110-1 ¶ 2.)  McDevitt relates that, over the course of the next year or so, Mahabub confided in her that:

- he owns a recording studio in California worth over $10 million;

- he owns a yacht in Panama and land in Costa Rica;

- he has made significant profits trading in Bitcoin;

- he has started a new company to create software for automated cryptocurrency trading, and has contracts for work in that field; and

- he is deliberately hiding assets from the SEC.

(*Id.* ¶¶ 2, 5–7, 11, 13.)

Mahabub responds with an affidavit of his own.  (ECF No. 112-1.)  Interestingly, he nowhere denies making the claims that McDevitt reports—indeed, he does not mention McDevitt at all.  He instead directly denies owning a recording studio, a yacht, or real property; denies having profited from foreign currency trading (although he does not mention Bitcoin trading); and denies having real business prospects with his cryptocurrency software.  (*Id.* ¶¶ 5–9.)  Taking these denials as true, for argument's

sake, his failure to deny that *he claimed otherwise* to McDevitt is at least an implicit admission that he continues to lie when it suits his economic purposes.

In any event, Mahabub claims he is "surviving through the generosity of [his] fiancée and friends, who have been supporting [him] as [he] attempt[s] to rebuild [his] devastated finances." (*Id.* ¶ 10.) GenAudio, for its part, claims that it is defunct with no assets or business prospects. (ECF No. 111 at 9–10.)

Taking all of this together, the Court first notes that the distinction between first, second, and third tier penalties is immaterial if the Court orders a defendant to pay a penalty equal to "the gross amount of pecuniary gain to such defendant as a result of the violation." 15 U.S.C. § 77t(d)(2). Even a first-tier penalty—which requires no findings regarding fraud, deceit, or likelihood of causing losses to others—allows for a penalty up to that amount.

Next, the Court finds that certain factors weigh in favor of assessing a penalty against Mahabub. In particular, Mahabub repeatedly lied about GenAudio's prospects with Apple, yet Mahabub still does not concede that it was wrong for him to do so. As noted above (Part II.A.2), he attempts to sound conciliatory but only ends up admitting that a director-officer bar is a natural consequence of what this Court found in the Summary Judgment Order. (*See* ECF No. 112 at 4.) In this same vein, although Mahabub attempts to explain in his declaration that he did not know there was anything unlawful about selling his personal shares when they were unregistered (ECF No. 112 ¶¶ 11–15), he entirely ignores his dishonesty. Finally, the types of lies Mahabub was telling—about Apple (a very wealthy corporation with a customer base whose devotion at times borders on the religious) and its iconic CEO, Steve Jobs—were significantly

likely to cause investors to invest, and then lose, a substantial amount of money.

The major factor weighing against a penalty, in the Court's view, would be Mahabub's claimed financial straits. The Court has very little reason to accept Mahabub's representations as truthful, but the SEC has not asked for a hearing and so the Court feels bound to view this matter in the light most favorable to Mahabub.

Regardless, Mahabub's ability to pay is only one factor among many. In its discretion, the Court agrees with the SEC that the maximum penalty against Mahabub is warranted here, *i.e.*, the gross amount of pecuniary gain, which the SEC calculates at $1,280,900. (ECF No. 110 at 14.)[4]

Finally, because GenAudio's actions cannot be meaningfully distinguished from Mahabub's actions, the Court likewise finds that the maximum penalty against GenAudio is warranted here, *i.e.*, the gross amount of pecuniary gain from the 2010 and 2011 Offerings, totaling $4,503,000. (*Id.*)

3.      Fair Fund

The SEC requests "that the Court establish a Fair Fund" under 15 U.S.C.
§ 7246(a). (ECF No. 110 at 15 n.6.) That subsection reads as follows:

> If, in any judicial or administrative action brought by the Commission under the securities laws, the Commission obtains a civil penalty against any person for a violation of such laws, or such person agrees, in settlement of any such action, to such civil penalty, the amount of such civil penalty shall, on the motion or at the direction of the Commission, be added to and become part of a disgorgement fund or other fund established for the benefit of the victims of such violation.

---

[4] This is the amount Mahabub earned from his personal sales of GenAudio shares. (*See* Part II.B.3, above.) The SEC has not asked for a penalty that includes the amounts Mahabub received from GenAudio's earnings. (*See* Part II.B.5, above.)

Defendants do not respond to this request from the SEC and it is not clear they would have standing to oppose it anyway—how the SEC distributes what it recovers is likely not Defendants' concern.  The Court will therefore grant the requested relief.

## D.    Officer/Director Bar

Finally, the SEC asks that the Court permanently prohibit Mahabub from serving as an officer or director of a public company.  (ECF No. 110 at 15–16.)  Such relief is authorized by Exchange Act § 21(d)(2) (15 U.S.C. § 78u(d)(2)), which states that

> the court may prohibit, conditionally or unconditionally, and permanently or for such period of time as it shall determine, any person who violated section 78j(b) of this title [*i.e.*, Exchange Act § 10(b)] or the rules or regulations thereunder [*e.g.*, Rule 10b-5] from acting as an officer or director of any [publicly traded company] if the person's conduct demonstrates unfitness to serve as an officer or director of any [publicly traded company].

Mahabub does not contest this sanction and indeed, as previously noted, has conceded the appropriateness of this remedy.  (ECF No. 112 at 4.)  It will therefore be granted.

## III.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    The SEC's Motion for Final Judgment Seeking Remedies Against Defendants Taj Jerry Mahabub and GenAudio, Inc. and to Establish a Fair Fund (ECF No. 110) is GRANTED IN PART and DENIED IN PART to the extent stated above; and

2.    On or before **September 13, 2018**, the SEC shall file updated prejudgment interest calculations on the disgorgement amounts awarded above, showing the various amounts of interest that will be due as of **September 16, 2019**, **September 17, 2019**, and **September 18, 2019**.  After receiving the SEC's supplemental calculations, the Court will enter final judgment.

Case 1:15-cv-02113-WJM-SKC Document 125 Filed 09/05/19 USDC Colorado Page 21 of 21

Dated this 5th day of September, 2019.

BY THE COURT:

William J. Martínez
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 15-cv-2118-WJM-SKC

SECURITIES & EXCHANGE COMMISSION,

     Plaintiff,

v.

TAJ JERRY MAHABUB, and
GENAUDIO, INC.,

     Defendants.

---

## ORDER DIRECTING ENTRY OF JUDGMENT AND ENJOINING DEFENDANTS

---

For the reasons set forth in the Court's order dated September 5, 2019 (ECF

No. 115) and in light of Plaintiff's updated prejudgment interest calculations (ECF

No. 116), the Court ORDERS as follows:

1.    The Clerk is DIRECTED to enter judgment in Plaintiff's favor and against

    Defendants as follows:

    a.    Defendant Mahabub shall—

        i.    disgorge $1,280,900, plus prejudgment interest of $408,266.96;

            and

        ii.    pay a penalty of $1,280,900;

    b.    Defendant GenAudio shall—

        i.    disgorge $3,513,000 (of which Defendant Mahabub is jointly and

            severally liable for $574,970), plus prejudgment interest of

            $1,144,565.69 (of which Defendant Mahabub is jointly and

severally liable for $223,990.51);

    ii.    disgorge an additional $990,000 (of which Defendant Mahabub is jointly and severally liable for $397,783), plus prejudgment interest of $186,853.65 (of which Defendant Mahabub is jointly and severally liable for $125,506.85); and

    iii.    pay a penalty of $4,503,000;

c.    Postjudgment interest shall accrue on the foregoing amounts at the federal statutory rate;

d.    Plaintiff shall establish a 15 U.S.C. § 7246(a) fund to administer Defendants' penalty payments;

2.    Pursuant to 15 U.S.C. §§ 77t(b) & 77u(d)(1), Defendants are PERMANENTLY ENJOINED from any acts or practices which constitute or will constitute a violation of the securities laws or regulations of the United States; and

3.    Pursuant to 15 U.S.C. § 78u(d)(2), Defendant Mahabub is PERMANENTLY ENJOINED from serving as an officer or director of any publicly traded company;

4.    The Clerk shall TERMINATE this case; and

5.    Plaintiff shall have its costs upon compliance with D.C.COLO.LCivR 54.1.

Dated this 16th day of September, 2019.

BY THE COURT:

_____

William J. Martinez
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 15-cv-2118-WJM-SKC

SECURITIES & EXCHANGE COMMISSION,

      Plaintiff,

v.

TAJ JERRY MAHABUB, and
GENAUDIO, INC.,

      Defendants.

---

## FINAL JUDGMENT

---

      In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 54, the following Final Judgment is hereby entered.

      Pursuant to and in accordance with Fed. R. Civ. P. 58(a) and the Order Directing Entry of Judgment and Enjoining Defendants [ECF 117] entered by the Honorable William J. Martínez on September 16, 2019, and incorporated herein by reference as if fully set forth, it is

      ORDERED that final judgment is hereby entered in favor of Plaintiff Securities & Exchange Commission and against Defendants Taj Jerry Mahabub and GenAudio, Inc. as follows:

      a.     Defendants Mahabub shall-

            i.     disgorge $1,280,900, plus prejudgment interest of $408,266.96; and

            ii.     pay a penalty of $1,280,900;

      b.     Defendant GenAudio shall-

    i.    disgorge $3,513,000 (of which Defendant Mahabub is jointly and severally liable for $574,970), plus prejudgment interest of $1,144,565.69 (of which Defendant Mahabub is jointly and severally liable for $223,990.51);

    ii.    disgorge an additional $990,000 (of which Defendant Mahabub is jointly and severally liable for $397,783), plus prejudgment interest of $186,853.65 (of which Defendant Mahabub is jointly and severally liable for $125,506.85); and

    iii.    pay a penalty of $4,503,000;

c.    Postjudgment interest shall accrue on the foregoing amounts at the federal statutory rate of 1.72%.

d.    Plaintiff shall establish a 15 U.S.C. § 7246(a) fund to administer Defendants' penalty payments;

It is further ORDERED that Plaintiff Securities & Exchange Commission shall have its costs by the filing of a Bill of Costs with the Clerk of this Court within fourteen days of the entry of judgment, pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.  It is further

ORDERED that this case is closed.

DATED at Denver, Colorado this 16th day of September, 2019.

FOR THE COURT:

JEFFREY P. COLWELL, CLERK

By: s/Anna Frank
Anna Frank, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 15-cv-2118-WJM-SKC

SECURITIES & EXCHANGE COMMISSION,

     Plaintiff,

v.

TAJ JERRY MAHABUB, and
GENAUDIO, INC.,

     Defendants.

---

## <mark>AMENDED</mark> FINAL JUDGMENT

---

     In accordance with the orders filed during the pendency of this case, and
pursuant to Fed. R. Civ. P. 54, the following Final Judgment is hereby entered.

     Pursuant to and in accordance with Fed. R. Civ. P. 58(a) and the Order Directing
Entry of Judgment and Enjoining Defendants [ECF 117] entered by the Honorable
William J. Martínez on September 16, 2019, and incorporated herein by reference as if
fully set forth, it is

     ORDERED that final judgment is hereby entered in favor of Plaintiff Securities &
Exchange Commission and against Defendants Taj Jerry Mahabub and GenAudio, Inc.
as follows:

     a.     Defendants Mahabub shall-

         i.     disgorge $1,280,900, plus prejudgment interest of $408,266.96; and

         ii.     pay a penalty of $1,280,900;

     b.     Defendant GenAudio shall-

    i.    disgorge $3,513,000 (of which Defendant Mahabub is jointly and

           severally liable for $574,970), plus prejudgment interest of

           $1,144,565.69 (of which Defendant Mahabub is jointly and severally

           liable for $223,990.51);

    ii.    disgorge an additional $990,000 (of which Defendant Mahabub is

           jointly and severally liable for $397,783), plus prejudgment interest of

           $186,853.65 (of which Defendant Mahabub is jointly and severally

           liable for $125,506.85); and

    iii.    pay a penalty of $4,503,000;

c.    Postjudgment interest shall accrue on the foregoing amounts at the

    federal statutory rate of 1.81%.

d.    Plaintiff shall establish a 15 U.S.C. § 7246(a) fund to administer Defendants'

    penalty payments;

It is further ORDERED that Plaintiff Securities & Exchange Commission shall

have its costs by the filing of a Bill of Costs with the Clerk of this Court within fourteen

days of the entry of judgment, pursuant to Fed. R. Civ. P. 54(d)(1) and

D.C.COLO.LCivR 54.1. It is further

ORDERED that this case is closed.

DATED at Denver, Colorado this 16th day of September, 2019.

                    FOR THE COURT:

                    JEFFREY P. COLWELL, CLERK

                    By: s/Anna Frank
                    Anna Frank, Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-2118-WJM-SKC

SECURITIES & EXCHANGE COMMISSION,

    Plaintiff,

v.

TAJ JERRY MAHABUB, and
GENAUDIO, INC.,

    Defendants.

---

**AMENDED ORDER DIRECTING ENTRY OF JUDGMENT
AND ENJOINING DEFENDANTS**

---

For the reasons set forth in the Court's order dated September 5, 2019 (ECF

No. 115) and in light of Plaintiff's updated prejudgment interest calculations (ECF

No. 116), and to correct errors in the previous Order Directing Entry of Judgment and

Enjoining Defendants (ECF No. 117), the Court ORDERS as follows:

1.    The Clerk is DIRECTED to enter judgment in Plaintiff's favor and against

    Defendants as follows:

    a.    Defendant Mahabub shall—

        i.    disgorge $1,280,900, plus prejudgment interest of $408,266.96;

            and

        ii.    pay a penalty of $1,280,900;

    b.    Defendant GenAudio shall—

        i.    disgorge $3,513,000 (of which Defendant Mahabub is jointly and

severally liable for $574,970), plus prejudgment interest of $1,144,565.69 (of which Defendant Mahabub is jointly and severally liable for $223,990.51);

    ii.    disgorge an additional $990,000 (of which Defendant Mahabub is jointly and severally liable for $397,783), plus prejudgment interest of $186,853.65 (of which Defendant Mahabub is jointly and severally liable for $125,506.85); and

    iii.    pay a penalty of $4,503,000;

c.    Postjudgment interest shall accrue on the foregoing amounts at the federal statutory rate as of September 16, 2019;

d.    Plaintiff shall establish a 15 U.S.C. § 7246(a) fund to administer Defendants' penalty payments;

2.    Pursuant to 15 U.S.C. §§ 77t(b) & 78u(d)(1), Defendants are PERMANENTLY ENJOINED from any acts or practices which constitute or will constitute a violation of the securities laws or regulations of the United States; and

3.    Pursuant to 15 U.S.C. § 78u(d)(2), Defendant Mahabub is PERMANENTLY ENJOINED from serving as an officer or director of any publicly traded company;

4.    The Clerk shall TERMINATE this case; and

5.    Pursuant to 15 U.S.C. §§ 77v(a) and 78aa(a), Plaintiff shall bear its own costs.

Dated this 30th day of September, 2019.

BY THE COURT:

William J. Martínez
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 15-cv-2118-WJM-SKC

SECURITIES & EXCHANGE COMMISSION,

　　　　Plaintiff,

v.

TAJ JERRY MAHABUB, and
GENAUDIO, INC.,

　　　　Defendants.

---

## SECOND AMENDED FINAL JUDGMENT

---

In accordance with the orders filed during the pendency of this case, and
pursuant to Fed. R. Civ. P. 54, the following Final Judgment is hereby entered.

Pursuant to and in accordance with Fed. R. Civ. P. 58(a) and the Amended
Order Directing Entry of Judgment and Enjoining Defendants [ECF 122] entered by the
Honorable William J. Martínez on September 30, 2019, and incorporated herein by
reference as if fully set forth, it is

ORDERED that final judgment is hereby entered in favor of Plaintiff Securities &
Exchange Commission and against Defendants Taj Jerry Mahabub and GenAudio, Inc.
as follows:

　　　　a.　　　Defendants Mahabub shall-

　　　　　　　　i.　　　disgorge $1,280,900, plus prejudgment interest of $408,266.96; and

　　　　　　　　ii.　　　pay a penalty of $1,280,900;

　　　　b.　　　Defendant GenAudio shall-

     i.    disgorge $3,513,000 (of which Defendant Mahabub is jointly and severally liable for $574,970), plus prejudgment interest of $1,144,565.69 (of which Defendant Mahabub is jointly and severally liable for $223,990.51);

    ii.    disgorge an additional $990,000 (of which Defendant Mahabub is jointly and severally liable for $397,783), plus prejudgment interest of $186,853.65 (of which Defendant Mahabub is jointly and severally liable for $125,506.85); and

    iii.    pay a penalty of $4,503,000;

c.    Postjudgment interest shall accrue on the foregoing amounts at the federal statutory rate of 1.81%.

d.    Plaintiff shall establish a 15 U.S.C. § 7246(a) fund to administer Defendants' penalty payments;

It is further ORDERED that pursuant to 15 U.S.C. §§ 77(v)(a) and 78aa(a), Plaintiff shall bear its own costs. It is further

ORDERED that this case is closed.

DATED at Denver, Colorado this 30th day of September, 2019.

FOR THE COURT:

JEFFREY P. COLWELL, CLERK

By: s/Anna Frank
Anna Frank, Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.:  1:15-cv-02118

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

        v.

TAJ JERRY MAHABUB,
GENAUDIO, INC., and ASTOUND
HOLDINGS, INC.,

    Defendants.

---

## NOTICE OF APPEAL

---

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that Defendant Taj Jerry Mahabub ("Mahabub"), in the above named case, hereby appeals to the United States Court of Appeals for the Tenth Circuit from the District Court's Second Amended Final Judgment entered in this action on September 30, 2019, the underlying order granting in part and denying in part Plaintiff Securities and Exchange Commission's ("SEC") revised motion for summary judgment entered on October

4, 2018, the order granting in part and denying in part Plaintiff s remedies motion entered on September 5, 2019, and all other orders or rulings merged or incorporated therein.

          Respectfully submitted,

                        HOLMES, TAYLOR, COWAN & JONES LLP


Dated:  November 29, 2019      By:  /s/  Andrew B. Holmes
                        Andrew B. Holmes
                        HOLMES, TAYLOR, COWAN & JONES LLP
                        811 Wilshire Boulevard, Suite 1460
                        Los Angeles, CA 90017
                        Telephone:  (213) 985-2200
                        Facsimile:  (213) 973-6282
                        abholmes@holmestaylor.com

                        *Attorneys for Defendant*
                        *Taj Jerry Mahabub*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 29, 2019, a true and correct copy of the foregoing was electronically served via CM/ECF:

**NOTICE OF APPEAL**

On the following parties:

| | |
|---|---|
| Leslie J. Hughes, Trial Counsel<br>SECURITIES AND EXCHANGE<br>COMMISSION<br>1961 Stout Street, Suite 1700<br>Denver, CO 80294-1961<br>(303) 844-1000 (tel)<br>HugheslJ@sec.gov<br><br>*Attorneys for Plaintiff*<br>*SECURITIES AND EXCHANGE*<br>*COMMISSION* | Michael P. McCloskey, Esq.<br>WILSON ELSER MOSKOWITZ<br>EDELMAN & DICKER, LLP<br>401 West A Street, Suite 1900<br>San Diego, CA 92101<br>(619) 321-6200 (tel)<br>(619) 321-6201 (fax)<br>michael.mccloskey@wilsonelser.com<br><br>*Attorneys for Defendant*<br>*GENAUDIO, INC.* |

HOLMES, TAYLOR, COWAN & JONES LLP

Dated: November 29, 2019        By: /s/ Andrew B. Holmes
                                Andrew B. Holmes
                                HOLMES, TAYLOR, COWAN & JONES LLP
                                811 Wilshire Boulevard, Suite 1460
                                Los Angeles, CA 90017
                                Telephone: (213) 985-2200
                                Facsimile: (213) 973-6282
                                abholmes@holmestaylor.com

                                *Attorneys for Defendant*
                                *Taj Jerry Mahabub*